LAW OFFICES OF GEORGE FROST
GEORGE FROST (SBN 178528)
2930 Magnolia Street
Berkeley, CA  94705
Telephone No.:  510-647-8863
Email: geofrost@comcast.net

Attorneys for Plaintiff Bitstamp Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bitstamp Ltd., a foreign company,<br><br>              Plaintiff,<br><br>     vs.<br><br>RIPPLE LABS INC., a California Corporation, JACOB STEPHENSON, an individual, NANCY HARRIS, an individual, JED MCCALEB, an individual, and DOES 1 Through 10, Inclusive,<br><br>              Defendants. | Case No. 3:15-cv-1503<br><br>**COMPLAINT FOR INTERPLEADER UNDER FRCP RULE 22** |

Complaint for Interpleader                               1

Plaintiff Bitstamp Ltd. ("Bitstamp"), for its Complaint for Interpleader Under Rule 22 of the Federal Rules of Civil Procedure ("Complaint"), states and alleges as follows:

### PARTIES.

1. Bitstamp is a UK company with its registered place of business at 5 New Street Square, London EC4A 3TW, United Kingdom. Bitstamp operates a worldwide digital currency exchange and is a gateway on the Ripple protocol. With respect to the dispute at issue, Bitstamp is a disinterested stakeholder and seeks the Court's assistance in resolving ownership rights of rival claimaints to the same assets.

2. Defendant Ripple Labs Inc. ("Ripple Labs"), is a Delaware corporation maintaining its principal place of business at 300 Montgomery Street, San Francisco, California 94104.

3. On information and belief, Defendant Jed McCaleb ("McCaleb") is a co-founder, Board member and Developer of Stellar Development Foundation ("Stellar"), a virtual currency company based in San Francisco, California. On information and belief, McCaleb is a resident of San Francisco, California.

4. On information and belief, Jacob Stephenson ("Stephenson") is a resident of Arkansas, and is McCaleb's cousin.

5. On information and belief, Nancy Harris ("Harris") is a resident of Arkansas and is Stephenson's mother and McCaleb's aunt.

6. On information and belief, there are other unknown or potential defendants that have not yet asserted claims or are unknown. Does 1-10 are the fictitious names of those defendants. When such defendants are ascertained, Bitstamp will amend this Complaint by inserting true names in place of fictitious names in accordance with Rule 10 of the Federal Rules of Civil Procedure.

### JURISDICTION AND VENUE.

7. The United States District Court has jurisdiction over the subject matter of this action pursuant to Fed. R. Civ. Proc. 22 and 28 U.S.C. § 1332 because (a) the property, amount of money, or obligation to pay money involved is in excess of $75,000 and (b) Plaintiff, a foreign entity, is of diverse citizenship from each and every Defendant/claimant.

8. Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. § 1391 because Ripple Labs and McCaleb are residents of the Northern District of California and because a substantial part of the events giving rise to the claim set forth herein occurred in this district.

9. The United States District Court for the Northern District of California has or will have personal jurisdiction over all claimants/Defendants because each claimant/Defendant has sufficient minimum contact with this district.

## FACTS.

10. Ripple Labs develops open source software that implements and interacts with the Ripple "protocol", a decentralized ledger payment standard. Ripple Labs is also a holder of XRP, which is the digital currency native to the Ripple protocol. XRP is a math-based currency used only within the Ripple protocol.

11. The servers that run the Ripple protocol collectively maintain an official ledger, which tracks balances in every Ripple account, and every transaction that utilizes the Ripple protocol.

12. Among its other business functions, Bitstamp operates as a gateway for XRP, permitting the exchange of XRP for other digital currency and fiat currency, including U.S. dollars.

13. On or about March 26, 2015, Bitstamp received a letter from Ripple Labs claiming that it was entitled to approximately $75,000 in Bitstamp's possession, transferred therein as a result of the sale of XRP, and demanding that Bitstamp release that $75,000 to Ripple Labs, upon the receipt of which Ripple Labs would return the corresponding amount of XRP to the account it originated from. In this letter, Ripple Labs represented that, on August 13, 2014, Ripple Labs and McCaleb (and others) entered into a contract (the "Contract") under which McCaleb agreed to abide by certain limitations regarding the sale of XRP within in his ownership and control, and pursuant to that contract, McCaleb agreed to limit sales, and that of his family members, to $10,000 XRP per week, and that this agreement had been breached by the sale of XRP by Ripple account number r3Q3B6A2giHDMef83AztzBStBm1JBmxUKX ( "r3Q").

Complaint for Interpleader    3

14.     On or about March 30, 2015, Bitstamp received a second letter from Ripple Labs claiming that it was entitled to approximately $963,000 of additional funds in Bitstamp's possession due to the breach of the Contract, and demanding that Bitstamp release a total of $1,038,172 to Ripple Labs, upon the receipt of which Ripple Labs would return the XRP to the account it originated from.

15.     The $1,038,172 demanded by Ripple Labs can be traced back to a large XRP sale made by Ripple account number r3Q3B6A2giHDMef83AztzBStBm1JBmxUKX ("r3Q").  On information and belief, r3Q is controlled by Stephenson and McCaleb.

16.     On information and belief, or around March 16, 2015, Stellar initiated an auction of its native currency, STR, in order to cover its operating expenses.  On information and belief, Stellar's unaudited quarterly financials show that its expenses were in the range of $700,000, about half of which was for payroll.  Thus, on information and belief, Stellar placed 650 million STR into an account on the Coinex gateway from which the auction would draw ("Auction STR").  On information and belief, as of March 19, 2015 -- three days into the auction -- Stellar was still left holding more than *640 million Auction STR* on the Coinex gateway.  On information and belief, the listed price for Auction STR was $0.0031 US dollars per STR.  As such, on information and belief, a few days into its auction Stellar had only raised an estimated $25,000.

17.     On or around January 6, 2015, Ripple account number rUf6pynZ8ucVj1jC9bKExQ7mb9sQFooTPK ("rUf6") with Ripple name ~aluminumcans, transferred 10 million XRP to r3Q.  On or around March 20, 2015, rUf6 transferred an additional 89,999,900 XRP to r3Q.  On information and belief, rUf6 is controlled by Harris, Stephenson and McCaleb.

18.     On or around March 20, 2015, r3Q offered to sell 98,846,600 XRP on the Bitstamp USD order book, which included the 89,999,900 XRP it received from rUf6 on or around that date and an additional 8,846,700 XRP of the 10 million XRP that r3Q had previously received from rUf6 on or around January 6, 2015.  On information and belief, this offer was made at McCaleb's direction and for McCaleb's and Stellar's benefit, with the intent to use the funds to purchase STR from the Auction STR.

Complaint for Interpleader                      4

19. On information and belief, immediately after the offer to sell was placed by r3Q, the seller entered into numerous transactions to sell small amounts of that XRP. On information and belief, on or around March 20, 2015, Ripple Labs, through its agent, purchased all of the remaining XRP offered by r3Q, which consisted of 96,342,361.6 XRP, for $1,038,172.

20. In the two letter communications to Bitstamp, Ripple Labs represents that it purchased this XRP in order to avoid and mitigate irreparable harm and damages that would have been caused to Ripple Labs by the XRP sale conducted by McCaleb, Stephenson and Harris. Ripple Labs further represents that the XRP sale was done in breach of McCaleb's Contract with Ripple Labs.

21. Ripple Labs' agent sent the $1,038,172 in purchase funds to r3Q on the Bitstamp gateway. Ripple Labs is demanding the purchase funds back, upon which it has agreed it will return the purchased XRP to rUf6.

22. There is thus now an issue in controversy over who is entitled to possess that $1,038,172 (the "Disputed Funds").

23. On information and belief, between March 20, 2015 and through present date, r3Q has been and continues to be attempting to "bridge out" the Disputed Funds to remove them from the Ripple Network in order to purchase additional STR. The Disputed Funds are being held in the following Ripple accounts: (1) r3Q, (2) rvYAfWj5gh67oV6fW32ZzP3Aw4Eubs59B ("rvYA"), and (3) rPQB4rgmwoaCjdX4BeoWikeshWL3fLMLD7 ("rPQ").

24. On March 31st, Bitstamp acted to "freeze" the accounts on the Ripple Network containing the Disputed Funds due to the pending ownership controversy, regulatory/AML concerns and the size and circumstances of the transfers.

25. Bitstamp is facing conflicting ownership claims from the Defendants.

26. Ripple Labs made a claim to the Disputed Funds that r3Q is attempting to remove from the Ripple Network and asked Bitstamp to transfer the Disputed Funds to Ripple Labs' Ripple account in exchange for Ripple Labs transferring the XRP back to rUf6.

27. During the relevant time period, Stephenson has made a claim to the Disputed Funds.

28. On information and belief, McCaleb, who has control of r3Q according to Ripple Labs, may make a claim to the Disputed Funds pursuant to this filing.

29. On information and belief, Harris, who purports to own and control rUf6, may also make a claim to the Disputed Funds.

30. On information and belief, other unknown individuals who may assert ownership or other rights over Ripple accounts rvYA and/or rPQ, or who may assert ownership or other rights over Stellar Accounts gBhrQHtoP3ALV1AnscvfDH7f8yEgozaXd6 and/or g3Ezpa9GidCB7RD963Y5k3WFLz39w7d63Q may make claims to the Disputed Funds.

31. As for Bitstamp itself, we make no claim to the Disputed Funds except as to relief for costs and attorneys' fees as set forth in this Complaint.

## INTERPLEADER PROPER TO DISPUTED CLAIMS.

32. With respect to the Disputed Funds, Bitstamp is a disinterested stakeholder.

33. Bitstamp does not know to which of said Defendants is entitled to the Disputed Funds.

34. Bitstamp has a real and reasonable fear of liability or vexatious, conflicting claims directed against the Disputed Funds and is not in the position to safely determine which party's claim to the Disputed Funds is meritorious without great hazard and possible multiple liability.

35. Under the provisions of Federal Rules of Civil Procedure, Rule 22, Bitstamp is entitled to join all persons asserting claims against the Disputed Funds in a single proceeding so that Bitstamp may avoid duplicative litigation and the possibility of multiple or inconsistent liability on the conflicting and adverse claims of Defendants.

## PRAYER FOR RELIEF.

**WHEREFORE**, Bitstamp prays for the following judgment:

36. That Bitstamp be allowed to continue to freeze the Disputed Funds until otherwise directed by the Court;

37. Defendants be required to interplead and assert in this proceeding and settle between themselves any and all claims which each or any of them have to the Disputed Funds and that Bitstamp be discharged from all liability relating to such benefits except to the party or parties whom

1  the Court shall judge entitled to the Disputed Funds and then only to the extent of the Disputed
2  Funds frozen by Bitstamp;

3  38. Defendants, and each of them, be permanently restrained from commencing any
4  action for the recovery of the Disputed Funds or any part thereof, or any claimed damages related
5  thereto, as against Bitstamp;

6  39. Defendants, and each of them, be permanently restrained from instituting or
7  prosecuting any proceeding in any state or United States court affecting the Disputed Funds until
8  further order of this Court;

9  40. Bitstamp be dismissed from this lawsuit and discharged from any and all liability
10 regarding the Disputed Funds or the XRP;

11 41. Bitstamp recover out of the Disputed Funds its costs and attorneys' fees incurred in
12 this action and all actions connected to the Disputed Funds; and

13 42. Awarding such other relief as the Court may deem just and equitable.

14
15 Dated: April 2, 2015

16
17                                    /s/ *George Frost*
                                      George Frost, Esq.
18                                    Attorney for Bitstamp Ltd.