1  Grant P. Fondo (SBN 181530)
   *gfondo@goodwinprocter.com*
2  Nicole L. Chessari (SBN 259970)
   *nchessari@goodwinprocter.com*
3  **GOODWIN PROCTER LLP**
   135 Commonwealth Drive
4  Menlo Park, California 94025-1105
   Tel.: 650.752.3100
5  Fax: 650.853.1038

6  Richard M. Strassberg (*Pro Hac Vice Pending*)
   *rstrassberg@goodwinprocter.com*
7  **GOODWIN PROCTER LLP**
   353 East 72nd Street 36th Floor
8  New York, NY 10021
   Tel.: 212.813.8800
9  Fax: 212.355.3333

10  Attorneys for Defendant/Cross-Plaintiff
    RIPPLE LABS INC.
11

12                **UNITED STATES DISTRICT COURT**

13               **NORTHERN DISTRICT OF CALIFORNIA**

14  BITSTAMP LTD., a foreign company,        Case No. 15-cv-01503-MEJ

15                Plaintiff,                  **ANSWER AND CROSS-COMPLAINT**

16         v.                                 **JURY TRIAL DEMANDED**

17  RIPPLE LABS INC., a California Corporation,
    JACOB STEPHENSON, an individual,
18  NANCY HARRIS, an individual, JED          Judge:        Hon. Maria-Elena James
    MCCALEB, an individual, and DOES 1
19  Through 10, Inclusive,

20                Defendant.

21

22  RIPPLE LABS INC., a California Corporation,

23                Cross-Plaintiff,

24         v.

25  JED MCCALEB, an individual, JACOB
    STEPHENSON, an individual, and DOES 1
26  Through 10, Inclusive,

27                Cross-Defendants.

28

ANSWER AND CROSS-COMPLAINT
Case No. 15-cv-01503-MEJ

1    Defendant/Cross-Claimant Ripple Labs Inc. ("Ripple Labs") hereby answers and otherwise

2   responds to the Complaint for Interpleader (the "Complaint") filed by Plaintiff Bitstamp Ltd.

3   ("Plaintiff").  Ripple Labs's responses are made without waiving, and expressly reserving, all

4   rights Ripple Labs has to file dispositive motions addressed to some or all of the claims asserted in

5   the Complaint.  Except as expressly admitted herein, each and every factual allegation in the

6   Complaint is denied.

7                                    **PARTIES.**

8    1.    Ripple Labs admits, on information and belief, that Bitstamp is a company based in

9   the United Kingdom with an office at 5  New Street Square, London EC4A 3TW.  Ripple Labs

10   admits that Plaintiff operates a worldwide digital currency exchange and is a gateway on the

11   Ripple protocol.  Ripple Labs admits that with respect to the dispute at issue, Plaintiff purports to

12   be a disinterested stakeholder and seeks the Court's assistance in resolving ownership rights of

13   rival claimants to the same assets.

14    2.    Ripple Labs admits the allegations in Paragraph 2.

15    3.    Ripple Labs admits, on information and belief, the allegations in Paragraph 3.

16    4.    Ripple Labs admits the allegations in Paragraph 4.

17    5.    Ripple Labs admits, on information and belief, the allegations in Paragraph 5.

18    6.    Ripple Labs is without knowledge or information sufficient to form a belief as to

19   the truth of the allegations in Paragraph 6, and, on this basis, denies the allegations.

20                          **JURISDICTION AND VENUE.**

21    7.    Ripple Labs admits, on information and belief, the allegations in Paragraph 7.

22    8.    Ripple Labs admits, on information and belief, the allegations in Paragraph 8.

23    9.    Ripple Labs admits, on information and belief, the allegations in Paragraph 9.

24                                    **FACTS.**

25    10.    Ripple Labs admits the allegations in Paragraph 10.

26    11.    Ripple Labs admits the allegations in Paragraph 11.

27    12.    Ripple Labs admits the allegations in Paragraph 12.

28    13.    Ripple Labs admits the allegations in Paragraph 13.

- 1 -

14.     Ripple Labs admits the allegations in Paragraph 14.

15.     Ripple Labs admits the allegations in Paragraph 15.

16.     Ripple Labs admits, on information and belief, the allegations in Paragraph 16.

17.     Ripple Labs admits that, according to the Ripple Ledger, on or around January 6, 2015, Ripple account number rUf6pynZ8ucVj1jC9bKExQ7mb9sQFooTPK ("rUf6") with Ripple name ~aluminumcans, transferred 10 million XRP to r3Q.  Ripple Labs further admits that, according to the Ripple Ledger, on or around March 20, 2015, rUf6 transferred an additional 89,999,900 XRP to r3Q.  Ripple Labs further admits, on information and belief, the remaining allegations in Paragraph 17.

18.     Ripple Labs admits the allegations in Paragraph 18.

19.     Ripple Labs admits that, according to the Ripple Ledger, immediately after the offer to sell 98,846,600 XRP was placed by r3Q, the seller entered into numerous transactions to sell small amounts of that XRP.  Ripple Labs further admits that on or around March 20, 2015, according to the Ripple Ledger, r3Q placed an order to sell 96,342,361.6 XRP for $1,038,172.  Ripple Labs further admits that, on or around March 20, 2015, Ripple Labs, through its agent, purchased 96,342,361.6 XRP from r3Q for $1,038,172.

20.     Ripple Labs admits the allegations in Paragraph 20.

21.     Ripple Labs admits the allegations in Paragraph 21.

22.     Ripple Labs admits, on information and belief, the allegations in Paragraph 22.

23.     Ripple Labs admits, on information and belief, the allegations in Paragraph 23.

24.     Ripple Labs admits, on information and belief, that on or around March 31, 2015, Bitstamp froze Ripple accounts r3Q, rvYAfWj5gh67oV6fW32ZzP3Aw4Eubs59B ("rvYA"), and rPQB4rgmwoaCjdX4BeoWikeshWL3fLMLD7 ("rPQ").  Ripple Labs is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 24, and, on this basis, denies the allegations.

25.     Ripple Labs admits, on information and belief, the allegations in Paragraph 25.

26.     Ripple Labs admits the allegations in Paragraph 26.

27.     Ripple Labs admits, on information and belief, the allegations in Paragraph 27

1      28.    Ripple Labs admits, on information and belief, the allegations in Paragraph 28.

2      29.    Ripple Labs admits, on information and belief, the allegations in Paragraph 29.

3      30.    Ripple Labs admits, on information and belief, the allegations in Paragraph 30.

4      31.    Ripple Labs admits that Plaintiff purports to make no claim to the Disputed Funds

5  except as to relief for costs and attorneys' fees as set forth in the Complaint.

6                    **INTERPLEADER PROPER TO DISPUTED CLAIMS.**

7      32.    Ripple Labs admits that Plaintiff purports to be a disinterested stakeholder with

8  respect to the Disputed Funds.

9      33.    Ripple Labs is without knowledge or information sufficient to form a belief as to

10  the truth of the allegations in Paragraph 33 and, on this basis, denies the allegations.  Further

11  answering, Ripple Labs states that it is entitled to the Disputed Funds.

12      34.    Ripple Labs admits, on information and belief, the allegations in Paragraph 34.

13      35.    The allegations of Paragraph 35 contain conclusions of law to which no response is

14  required.   To the extent a response is required, Ripple Labs denies the allegations.

15                          **PRAYER FOR RELIEF.**

16      36.    The allegations in Paragraph 36 are simply statements of the remedies sought by

17  Plaintiff to which no response is required.

18      37.    The allegations in Paragraph 37 are simply statements of the remedies sought by

19  Plaintiff to which no response is required.

20      38.    The allegations in Paragraph 38 are simply statements of the remedies sought by

21  Plaintiff to which no response is required.

22      39.    The allegations in paragraph 39 are simply statements of the remedies sought by

23  Plaintiff to which no response is required.

24      40.    The allegations in Paragraph 40 are simply statements of the remedies sought by

25  Plaintiff to which no response is required.

26      41.    The allegations in Paragraph 41 are simply statements of the remedies sought by

27  Plaintiff to which no response is required.

28      42.    The allegations in Paragraph 42 are simply statements of the remedies sought by

- 3 -

1  Plaintiff to which no response is required.

2  **RIPPLE LABS INC.'S CROSS-COMPLAINT**

3  Defendant and Cross-Plaintiff Ripple Labs Inc. ("Ripple Labs") hereby alleges the

4  following cross-claims against Cross-Defendants Jed McCaleb and Jacob Stephenson

5  (collectively, "Cross-Defendants").

6  **NATURE OF ACTION**

7  1.  This is an action for injunctive relief and specific enforcement to prevent McCaleb

8  from continuing to breach a settlement agreement that he entered into with Ripple Labs, which

9  governs McCaleb's right to transfer his holdings of a digital currency known as XRP (the

10  "Settlement Agreement"), following imposition of the order, and to compel him to abide by the

11  terms of the Settlement Agreement.  This is also an action for injunctive relief to preclude

12  McCaleb from selling any XRP for 150 weeks, until he catches up to the amount he was permitted

13  to sell under the Settlement Agreement, but wrongfully exceeded.  This is also an action for

14  monetary damages against Stephenson for tortuously interfering with the Settlement Agreement

15  and for an injunction to prevent Stephenson from continuing to interfere with the Settlement

16  Agreement.  The Settlement Agreement and all related Exhibits are attached as Exhibit 1.

17  2.  On or about August 13, 2014, Ripple Labs and McCaleb entered into the written

18  Settlement Agreement.  Under the terms of the Settlement Agreement, McCaleb agreed to identify

19  (1) all XRP within his ownership or control, and (2) ███████████████████████

20  ██████████████████████████████████████████████  ("Ripple

21  accounts"), to the best of his knowledge and based on a reasonable review of records and

22  information within his possession or control.  McCaleb explicitly acknowledged that such

23  information was material to the Settlement Agreement and that providing inaccurate or incomplete

24  information pertaining to his XRP holdings or XRP transfers constituted a breach of the

25  Settlement Agreement.

26  3.  Under the Settlement Agreement, McCaleb also agreed that during the first year of

27  the Settlement Agreement, he would limit sales of XRP within his own ownership or control, and

28  within his family members' ownership or control, to $10,000 worth of XRP per week, and

- 4 -

1   $20,000 worth of XRP per week in the second year.  He also agreed to provide Ripple Labs with

2   notice of all his transfers of XRP.

3   　　　　4.　　On information and belief, McCaleb owns and/or controls Ripple accounts that he

4   failed to identify in the Settlement Agreement as accounts that are within his ownership or control.

5   Additionally, McCaleb failed to identify ████████████████████████████████████████

6   ████████████████, which were known to him, that he was required to disclose under the

7   Settlement Agreement.

8   　　　　5.　　On or about August 14, 2014, one day after the Settlement Agreement was signed,

9   Ripple account r3Q3B6A2giHDMef83AztzBStBm1JBmxUKX ("r3Q"), which on information

10   and belief is within McCaleb's ownership and/or control, while represented to be owned and/or

11   controlled by Stephenson, his cousin, engaged in sales of XRP exceeding the $10,000 per week

12   limit.  r3Q regularly sold well over the $10,000 worth of XRP per week limit until September 25,

13   2014, when it ran out of XRP.

14   　　　　6.　　After noticing these unusual sales by r3Q, Ripple Labs, through its agent, notified

15   Stephenson of the existence of the Settlement Agreement between McCaleb and Ripple Labs.  On

16   information and belief, Stephenson knew that the XRP sales from r3Q and any subsequent XRP

17   sales executed by Stephenson at the direction of or for the benefit of McCaleb, which when

18   combined with any other XRP sales by or on behalf of McCaleb exceeded $10,000 worth of XRP

19   per week, constituted a breach of the Settlement Agreement.

20   　　　　7.　　Beginning on or about August 31, 2014, and continuing through all times relevant

21   to this Complaint, McCaleb sold approximately $8,000 to $10,000 worth of XRP per week,

22   through Ripple account ████████████████████████████, which he identified as

23   being within his ownership and/or control in Exhibit A of the Settlement Agreement (the

24   "McCaleb Direct Account").

25   　　　　8.　　On September 25, 2014, approximately two hours after r3Q depleted its XRP,

26   another Ripple account rnj8sNUBCw3J6sSstY9QDDoncnijFwH7Cs ("rnj8"), which on

27   information and belief is also owned and/or controlled by McCaleb, also began selling substantial

28   amounts of XRP.  rnj8 regularly sold well in excess of the $10,000 XRP per week limit, both

- 5 -

1   individually and with combined with the sales by the McCaleb Direct Account, until it ran out of

2   XRP on October 8, 2014.

3         9.      On information and belief, notwithstanding his knowledge that his XRP sales

4   breached the Settlement Agreement by McCaleb, on March 20, 2015, Stephenson sold

5   96,342,361.6 XRP for $1,038,172 from Ripple account r3Q.  On information and belief, that XRP

6   was transferred to r3Q, by or at the direction of McCaleb, from Ripple account

7   rUf6pynZ8ucVj1jC9bKExQ7mb9sQFooTPK ("rUf6").  On information and belief, the

8   96,342,361.6 XRP was sold at McCaleb's direction and for the benefit of McCaleb and his new

9   competitor company, with the intent to use the funds to purchase that company's virtual currency,

10  STR.

11        10.     By (1) failing to identify numerous Ripple accounts under his ownership or control,

12  (2) failing to provide known ███████████████████████████, (3) failing to provide

13  known ████████████████████, (4) on information and belief, directing and instructing

14  his family member(s) to sell in excess of the $10,000 worth of XRP per week limit, (5) on

15  information and belief, exceeding the agreed-upon XRP sales limits set forth in the Settlement

16  Agreement, and (6) failing to provide Ripple Labs with notice of his XRP transfers, McCaleb has

17  and continues to materially breach his obligations under the Settlement Agreement.

18        11.     By knowingly assisting McCaleb to violate the Settlement Agreement, Stephenson

19  has and continues to tortuously interfere with the Settlement Agreement.

20        12.     Ripple Labs will suffer substantial, incalculable, and irreparable harm if McCaleb

21  is not prevented from continuing to breach the Settlement Agreement by (1) enjoining him from

22  selling any XRP until the amount of XRP he sold in excess of the agreed upon weekly limit

23  catches up to and equals the amount he was permitted to sell, (2) requiring him to provide

24  information known to him that he has withheld from Ripple Labs regarding ██████████, by (3)

25  requiring McCaleb to disclose to Ripple Labs his transfers of XRP and (4) and requiring him to

26  otherwise abide by the terms of the Settlement Agreement.  The Settlement Agreement between

27  McCaleb and Ripple Labs specifically provides, at paragraph 10, "Each party acknowledges and

28  agrees that each party hereto will be irreparably damaged in the event any of the provisions of this

- 6 -

1   [Settlement] Agreement are not performed by the parties in accordance with their specific terms or

2   are otherwise breached.  Accordingly, it is agreed that each of the Company and McCaleb shall be

3   entitled to an injunction to prevent breaches of this [Settlement] Agreement, and to specific

4   enforcement of this [Settlement] Agreement and its terms and provisions . . . ."  Ripple Labs seeks

5   the specific remedies contemplated and agreed to by McCaleb in the Settlement Agreement.

6        13.     Ripple Labs will suffer substantial, incalculable, and irreparable harm if

7   Stephenson is not prevented from continuing to facilitate McCaleb's breaches of the Settlement

8   Agreement by enjoining him from selling XRP on McCaleb's behalf, at McCaleb's direction, for

9   McCaleb's benefit, and/or for McCaleb's family members.

10       14.     Ripple Labs has suffered monetary damages in an amount to be determined by the

11  Court due to Stephenson's tortious interference with the Settlement Agreement.

12                                        <u>**PARTIES**</u>

13       15.     Plaintiff Ripple Labs Inc., formerly known as OpenCoin, Inc., is a Delaware

14  corporation maintaining its principal place of business at 300 Montgomery Street, San Francisco,

15  CA 94104.  "Ripple Labs" or "the Company," as used herein, is intended to refer to Ripple Labs

16  Inc. or OpenCoin, Inc., as applicable.  Ripple Labs develops open source software that implements

17  and interacts with the Ripple protocol.  The Ripple protocol is a decentralized ledger payment

18  standard.  Ripple Labs is the holder of a significant amount of XRP, which is the digital currency

19  native to the Ripple protocol.

20       16.     Defendant Jed McCaleb is the former Chief Technology Officer, a former member

21  of the Board of Directors, and a co-founder of the Company.  McCaleb is also a co-founder of a

22  competing digital currency company, which launched in August 2014.  Upon information and

23  belief, McCaleb was, at the time of entering into the Settlement Agreement, and is currently a

24  resident of San Francisco, California.

25       17.     On information and belief, Jacob Stephenson is a resident of Arkansas, and is

26  McCaleb's cousin.

27       18.     Ripple Labs is ignorant of the true names and capacities of Defendants sued as

28  Does 1 through 10, inclusive, and therefore sues these Defendants by these fictitious names.

ANSWER AND CROSS-COMPLAINT
Case No. 15-cv-01503-MEJ

Ripple Labs will amend this Complaint to allege their true names and capacities when they have been ascertained.  Ripple Labs is informed and believes and thereon alleges that each of the fictitiously named Defendants is legally responsible in some manner for the occurrences alleged in this Complaint.

**JURISDICTION AND VENUE**

19.     The United States District Court has jurisdiction over the subject matter of this action pursuant to Fed. R. Civ. Proc. 22 and 28 U.S.C. § 1332 because (a) the property, amount of money, or obligation to pay money involved is in excess of $75,000 and (b) Cross-Plaintiff Ripple Labs, a Delaware corporation headquartered in California, is of diverse citizenship from Cross-Defendant Jacob Stephenson, who on information and belief, is a resident of Arkansas.  Subject matter jurisdiction is also proper pursuant to 28 U.S.C. § 1367.

20.     Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. § 1391 because Ripple Labs and Cross-Defendant McCaleb are residents of the Northern District of California and because a substantial part of the events giving rise to the claim set forth herein occurred in this district.

21.     The United States District Court for the Northern District of California has or will have personal jurisdiction over all Cross-Defendants because each Cross-Defendant has sufficient minimum contacts with this district.

**FACTS**

**A.     Background Information**

22.     In 2012, Arthur Britto, McCaleb (collectively, the "co-founders"), and Christian A. Larsen ("Larsen"), created both a new virtual currency, known as XRP, and the Ripple protocol, an open sourced protocol which operates on a de-centralized network of servers and can be utilized to settle funds, exchange currencies, or exchange other things of value.

23.     XRP is a math-based currency used only within the Ripple protocol.  The servers that run the Ripple Protocol collectively maintain an official ledger, which tracks every Ripple account and balance and every transaction that utilizes the Ripple protocol.

24.     In or around September 2012, the co-founders created and distributed 100 billion

- 8 -

XRP on the official ledger.  No additional XRP can ever be created.  McCaleb retained 9 billion XRP for himself, which he held in various founders' accounts on the Ripple protocol ("genesis accounts").

25.    The corporate entity that became Ripple Labs, Inc. was incorporated on September 19, 2012, in San Francisco, California.

26.    No later than July 2013, McCaleb resigned as Chief Technology Officer of Ripple Labs, and, in March 2014, he resigned from its Board of Directors.

**B.    The Settlement Agreement**

27.    Soon after McCaleb's Board resignation, he began selling large amounts of XRP, which negatively impacted the XRP market price.  On May 22, 2014, McCaleb publicly announced his intention to sell all of his remaining XRP to the public beginning on or about June 6, 2014.  He continued selling large amounts of XRP thereafter, which continued to negatively impact the XRP market price.

28.    A dispute arose between Larsen and McCaleb regarding whether McCaleb actually had legal rights to the XRP in his possession.  The parties engaged in discussions to resolve this dispute, which resulted in the culmination of the Settlement Agreement on August 13, 2014, between Ripple Labs and Larsen on one hand and McCaleb, Joyce Kim, and McCaleb's new virtual currency company on the other hand.

29.    Under the terms of the Settlement Agreement, McCaleb agreed, in relevant part, that for the first year of the Settlement Agreement, he would limit his sales of "McCaleb XRP" to $10,000 per week.  Ex. 1, ¶¶ 1-2.  "McCaleb XRP" is defined under the Settlement Agreement as "the approximately 7,500,000,000 XRP currently in the Ripple Network in accounts owned or controlled by Jed McCaleb, as reflected in Exhibit A hereto, including XRP held by or for the benefit of his children or other family members."  *Id.*, ¶ 20(c).

30.    In the Settlement Agreement, McCaleb also agreed to identify in Exhibit A thereto, all XRP within his ownership or control – specifically, ███████████████████████████ ████████████████████████████████████  *Id.*, ¶ 3, Exhibit A.

31.    McCaleb also agreed, under the terms of the Settlement Agreement, to identify in

- 9 -

1  Exhibit A thereto, ███████████████████████████████. *Id.*  He agreed

2  that, ████████████████████████, he would provide certain additional

3  information, including █████████████████████████████████████████

4  ██████ "to the best of his knowledge and with a reasonable review of records and information

5  within McCaleb's possession or control." *Id.*  Furthermore, McCaleb agreed "that Exhibit A is

6  material to this [Settlement] Agreement and that providing inaccurate or incomplete information in

7  Exhibit A constitutes a breach of this [Settlement] Agreement."  *Id.*, ¶ 3.

8       32.  McCaleb also agreed, under the terms of the Settlement Agreement, that "[a]t least

9  seven (7) business days prior to a Transfer of McCaleb XRP…McCaleb must provide Ripple with

10  written notice… that identifies the market value of the intended XRP transaction, and the one-

11  week period during which the transaction will take place." *Id.*, ¶ 2(b).

12       33.  McCaleb acknowledged and agreed, under the terms of the Settlement Agreement,

13  "that each party hereto will be irreparably damaged in the event any of the provisions of this

14  [Settlement] Agreement are not performed by the parties in accordance with their specific terms or

15  are otherwise breached.  Accordingly, it is agreed that each of the Company and McCaleb shall be

16  entitled to an injunction to prevent breaches of this Agreement, and to specific enforcement of this

17  Agreement and its terms and provisions . . . ." *Id.*, ¶ 10.

18  **D.  McCaleb's Breaches of the Settlement Agreement**

19      **Failure to Disclose Information in Exhibit A to the Settlement Agreement**

20       34.  On August 15, 2014, McCaleb provided the Company with what he represented to

21  be an accurate and complete Exhibit A to the Settlement Agreement.  McCaleb provided Ripple

22  Labs with inaccurate information in Exhibit A and omitted information that he was required to

23  include under the Agreement.  Among other things, McCaleb breached the Agreement by (1)

24  misrepresenting that ████████████████████████████████████████████

25  ████████████████ (2) failing to provide ██████████████████████, and (3) on information

26  and belief, failing to disclose multiple Ripple accounts that he owns and/or controls.

27       35.  Additionally, on information and belief, McCaleb owns and/or controls multiple

28  Ripple accounts that he failed to disclose in Exhibit A to the Settlement Agreement (the

- 10 -

"Undisclosed Accounts"), including r3Q and rnj8, noted in Paragraphs 5 and 7 above.  McCaleb's failure to disclose accounts under his ownership and/or control in Exhibit A to the Settlement Agreement constitutes a material breach of the Settlement Agreement.

**XRP Sales by McCaleb's Family Members Exceeding the Agreed-Upon Limit**

36.     Pursuant to the Settlement Agreement, the limits for the amount of XRP that could be sold applied to both XRP owned and/or controlled by McCaleb <u>and</u> XRP held by his family members.  See *Id.*, ¶ 20(c).  On information and belief, r3Q is owned and/or possessed by McCaleb's cousin, Stephenson, and/or McCaleb, and McCaleb directed and/or controlled various sales from that account.

37.     On August 14, 2014, just one day after executing the Settlement Agreement, r3Q engaged in sales of approximately $16,884 worth of XRP - well over the agreed-upon limit.

38.     r3Q continued selling from August 15, 2014, through September 25, 2014.  These sales amounted to a total of approximately $398,877 worth of XRP, with each week's sales surpassing the agreed-upon limit in the Settlement Agreement, for six consecutive weeks.  These sales by McCaleb and/or McCaleb's family member, which drastically exceeded the limits set forth in the Settlement Agreement, constitute a breach of the Agreement by McCaleb.

39.     On September 23, 2014, Ripple Labs, through its agent, called Stephenson to discuss the recent sales from r3Q.  Stephenson represented that he executed the recent sales from r3Q.  Ripple Labs, through its agent, notified Stephenson that McCaleb entered into a legal agreement with Ripple Labs, that it appeared that the XRP sales, through r3Q, violated that agreement, and stated that Ripple Labs would consider taking legal action against him unless he ceased and desisted from making further XRP sales.

**XRP Sales Controlled by McCaleb Exceeding the Agreed-Upon Limit**

40.     In addition to the approximately $398,877 worth of XRP sales over six consecutive weeks by r3Q, described above, rnj8 also exceeded the $10,000 per week limit for two consecutive weeks, ultimately selling approximately $93,400 worth of XRP over a two-week period between September 25, 2014 and October 8, 2014.

41.     McCaleb also sold, on or about August 31, 2014, and continuing through the

- 11 -

present, XRP worth approximately $8,000 to $10,000 worth of XRP per week and, collectively for that time period, approximately $59,453 worth of XRP through one of the accounts that he identified as being within his ownership and/or control in Exhibit A of the Agreement.

42.     Additionally, on or around January 6, 2015, Ripple account number rUf6pynZ8ucVj1jC9bKExQ7mb9sQFooTPK ("rUf6") with Ripple name ~aluminumcans, transferred 10 million XRP to r3Q.  On or around March 20, 2015, rUf6 transferred an additional 89,999,900 XRP to r3Q.  On information and belief, rUf6 is controlled by Nancy Harris (Stephenson's mother, and on information and belief, McCaleb's aunt), Stephenson and McCaleb.

43.     On or around March 20, 2015, r3Q offered and sold 96,342,361.6 XRP, for $1,038,172, which included the 89,999,900 XRP it received from rUf6 on or around that date and an additional 6,342,361.6 XRP of the 10 million XRP that r3Q had previously received from rUf6 on or around January 6, 2015.  On information and belief, this XRP sale was made by Stephenson at McCaleb's direction and for McCaleb's benefit.

44.     Based on the foregoing, on information and belief, between August 14, 2014 and October 8, 2014, and on March 20, 2015, McCaleb repeatedly breached the Settlement Agreement, by exceeding the agreed upon $10,000 worth of XRP per week limit.

### McCaleb's Failure to Provide Notice of His XRP Transfers

45.     Since execution of the Settlement Agreement, and upon information and belief, McCaleb, his family members, and individuals under McCaleb's control have repeatedly transferred XRP, including, but not limited to, numerous transfers to r3Q discussed above. McCaleb failed to notify Ripple Labs of each of the aforementioned transfers, in breach of the Settlement Agreement.

### McCaleb's Bad Faith Motivations for Breaching the Settlement Agreement

46.     On information and belief, McCaleb's breach of the Settlement Agreement was done in bad faith for the purpose of harming the value of XRP held by Ripple Labs to further his own competing business venture, including for the purpose of keeping the market price of XRP lower than it otherwise would be but for McCaleb's actions, and seeking to save his failing company by propping up its currency and gaining much needed funds to keep the company in

- 12 -

operation.

47.     On information and belief, at the outset of entering into the Settlement Agreement, McCaleb intentionally withheld account numbers of Ripple accounts in his control and of Ripple accounts that he transferred to others, in order to conceal his anticipated XRP sales, which he knew would be a violation of the Settlement Agreement.

48.     On information and belief, McCaleb sold the XRP in his control above the agreed-upon limit to cause the value of XRP to decrease, in order to harm Ripple Labs, to give his new digital currency company a competitive advantage over Ripple Labs,  as a means to lure XRP holders to his new company.  Indeed, McCaleb's March 20, 2015 XRP sale did, in fact, cause the value of XRP to drop.  Ripple Labs currently owns approximately 68 billion XRP.  Therefore, McCaleb's March 20, 2015 breach, which was assisted and facilitated by Stephenson, caused substantial damages to Ripple Labs.

49.     Furthermore, on information and belief, McCaleb's March 20, 2015 breach was for the specific purpose of trying to prop up the value of his company's virtual currency, and to fund and keep his company in operation.  On information and belief, or around March 16, 2015, Stellar initiated an auction of its native currency, STR, in order to cover its operating expenses.  On information and belief, Stellar's unaudited quarterly financials show that its expenses were in the range of $700,000, about half of which was for payroll.  Thus, on information and belief, Stellar placed 650 million STR into an account on the Coinex gateway from which the auction would draw ("Auction STR"). On information and belief, as of March 19, 2015 -- three days into the auction -- Stellar was still left holding more than 640 million Auction STR on the Coinex gateway.  On information and belief, the listed price for Auction STR was $0.0031 US dollars per STR.  As such, on information and belief, a few days into its auction Stellar had only raised an estimated $25,000.

50.     On information and belief, r3Q attempted to remove the majority of the proceeds from the March 20, 2015 sale from the Ripple protocol, using the Coinex gateway.  On information and belief, r3Q further attempted to move the proceeds into the Stellar protocol, through the Coinex gateway, and attempted to send the proceeds to two Stellar accounts:

ANSWER AND CROSS-COMPLAINT
Case No. 15-cv-01503-MEJ

1    gBhrQHtoP3ALV1AnscvfDH7f8yEgozaXd6 and g3Ezpa9GidCB7RD963Y5k3WFLz39w7d63Q.

2         51.   Based on the foregoing, McCaleb also breached the covenant of good faith and fair

3    dealing which is implicit in the Settlement Agreement.

**FIRST CAUSE OF ACTION**
4
**BREACH OF CONTRACT FOR FAILING TO PROVIDE ACCURATE INFORMATION
IN EXHIBIT A TO THE SETTLEMENT AGREEMENT**
5
**(Against McCaleb)**
6

7         52.   Ripple Labs incorporates by reference the factual allegations in Paragraphs 1

8    through 51 of this Cross-Complaint as if fully set forth herein.

9         53.   The Settlement Agreement constitutes a valid, binding contract between Ripple

10   Labs and McCaleb.

11        54.   Ripple Labs has at all times performed its obligations under the Settlement

12   Agreement.

13        55.   The Settlement Agreement required in Paragraph 3 and Exhibit A that McCaleb

14   identify, in Exhibit A to the Settlement Agreement, all Ripple accounts within his ownership or

15   control.

16        56.   The Settlement Agreement also required in Paragraph 3 and Exhibit A that

17   McCaleb identify, in Exhibit A to the Settlement Agreement, ████████████████████████

18   ███████████████████████████████████████████████, to the

19   best of his knowledge and based on a reasonable review of records and information within his

20   possession or control.

21        57.   The Settlement Agreement provided in Paragraph 3 that failure to provide accurate

22   information in Exhibit A to the Settlement Agreement constituted a breach of the Settlement

23   Agreement and that Exhibit A is material to the Agreement.

24        58.   McCaleb breached the Settlement Agreement by failing to provide the following

25   information in Exhibit A to the Settlement Agreement which was known by him or was

26   ascertainable by him through a reasonable review of records and information within his possession

27   or control:  (1) Ripple accounts under his ownership or control, (2) ██████████████████████,

28   and (3) ██████████████████████████.

- 14 -

59.     The Settlement Agreement provided in Paragraph 10 that each party to the Settlement Agreement will be irreparably damaged in the event any of the provisions of the Settlement Agreement are not performed in accordance with their specific terms or otherwise breached.

60.     For the reasons stated heretofore, Ripple Labs has no adequate legal remedy in that money damages cannot compensate Ripple Labs for McCaleb's failure to provide accurate information in Exhibit A to the Settlement Agreement as required by Paragraph 3 and Exhibit A of the Settlement Agreement.

61.     Ripple Labs is entitled to specific performance of the terms, conditions, and provisions of Paragraph 3 and Exhibit A of the Settlement Agreement.  Ripple Labs requests that McCaleb be ordered to perform pursuant to the terms of Paragraph 3 and Exhibit A of the Settlement Agreement as more fully described in the prayer for relief below.

62.     Moreover, as evidenced by McCaleb's consistent, pervasive, and continuing breaches of the Settlement Agreement, it is clear that unless and until restrained by order of this Court McCaleb will continue to breach the Settlement Agreement and proceed in a manner that forces Ripple Labs to suffer great and irreparable harm in that the value of Ripple Labs's XRP will be reduced and McCaleb's competing company will be afforded a unfair competitive advantage.

63.     Ripple Labs is entitled to a preliminary injunction and permanent injunction commanding McCaleb to comply with Paragraph 3 and Exhibit A of the Settlement Agreement as more fully described in the prayer for relief below.

64.     As a direct and proximate result of McCaleb's breaches, Ripple Labs has been deprived of its rights and benefits due under the Settlement Agreement and has suffered, and will continue to suffer, irreparable harm if McCaleb is not enjoined from continuing to breach the Settlement Agreement.

WHEREFORE, Ripple Labs prays for judgment as set forth below.

- 15 -

**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACT FOR SELLING IN EXCESS OF THE AGREED**
**UPON LIMITS**
**(Against McCaleb)**

65.     Ripple Labs incorporates by reference the factual allegations in Paragraphs 1 through 64 of this Cross-Complaint as if fully set forth herein.

66.     The Settlement Agreement constitutes a valid, binding contract between Ripple Labs and McCaleb.

67.     Ripple Labs has at all times performed its obligations under the Settlement Agreement.

68.     The Settlement Agreement required in Paragraphs 1 and 2 that McCaleb exercise his sales of XRP within certain limits; specifically, to limit his sales of XRP and sales of XRP held by his family members to $10,000 worth of XRP each week for the first year of the Agreement.

69.     On information and belief, through accounts not disclosed as under his ownership or control, but which McCaleb actually exercised ownership or control over, McCaleb breached the Settlement Agreement by engaging in XRP sales above the agreed-upon limit for eight consecutive weeks and during the week of March 15, 2015.

70.     On information and belief, through accounts held by McCaleb's family members, McCaleb breached the Settlement Agreement his family members engaging in XRP sales above the agreed-upon limit for eight consecutive weeks and during the week of March 15, 2015, including at his direction.

71.     The Settlement Agreement provided in Paragraph 10 that each party to the Settlement Agreement will be irreparably damaged in the event any of the provisions of the Settlement Agreement are not performed in accordance with their specific terms or otherwise breached.

72.     For the reasons stated heretofore, Ripple Labs has no adequate legal remedy in that money damages cannot compensate Ripple Labs for the harm caused to Ripple Labs by McCaleb's sales of XRP above the agreed-upon limit in Paragraphs 1 and 2 of the Settlement Agreement.

- 16 -

73. Ripple Labs is entitled to specific performance of the terms, conditions, and provisions of Paragraphs 1 and 2 of the Settlement Agreement. Ripple Labs requests that McCaleb be ordered to perform pursuant to the terms of Paragraphs 1 and 2 of the Settlement Agreement as more fully described in the prayer for relief below.

74. Moreover, as evidenced by McCaleb's consistent, pervasive, and continuing breaches of the Settlement Agreement, it is clear that unless and until restrained by order of this Court McCaleb will continue to breach the Settlement Agreement and proceed in a manner that forces Ripple Labs to suffer great and irreparable harm in that the value of Ripple Labs's XRP will be reduced, McCaleb's competing company will be afforded a competitive advantage over Ripple Labs, and Ripple Labs's goodwill will be damaged.

75. Ripple Labs is entitled to a preliminary injunction and permanent injunction commanding McCaleb to comply with Paragraphs 1 and 2 of the Settlement Agreement as more fully described in the prayer for relief below.

76. As a direct and proximate result of McCaleb's breaches, Ripple Labs has been deprived of its rights and benefits due under the Settlement Agreement and has suffered, and will continue to suffer irreparable harm if McCaleb is not enjoined from continuing to breach the Settlement Agreement.

WHEREFORE, Ripple Labs prays for judgment as set forth below.

### THIRD CAUSE OF ACTION
**BREACH OF CONTRACT FOR FAILING TO DISCLOSE XRP TRANSFERS TO RIPPLE LABS**
**(Against McCaleb)**

77. Ripple Labs incorporates by reference the factual allegations in Paragraphs 1 through 76 of this Cross-Complaint as if fully set forth herein.

78. The Settlement Agreement constitutes a valid, binding contract between Ripple Labs and McCaleb.

79. Ripple Labs has at all times performed its obligations under the Settlement Agreement.

80. The Settlement Agreement required in Paragraph 2(b) that McCaleb provide Ripple

- 17 -

1   Labs with written notice of any transfers of McCaleb XRP, identifying the market value of the

2   intended transaction and approximate date it would take place, at least seven days before such

3   transfer.

4      81.     McCaleb breached the Settlement Agreement by failing to notify Ripple Labs of

5   numerous XRP transfers made by him, at his direction and/or for his benefit.

6      82.     The Settlement Agreement provided in Paragraph 10 that each party to the

7   Settlement Agreement will be irreparably damaged in the event any of the provisions of the

8   Settlement Agreement are not performed in accordance with their specific terms or otherwise

9   breached.

10      83.     For the reasons stated heretofore, Ripple Labs has no adequate legal remedy in that

11   money damages cannot compensate Ripple Labs for McCaleb's failure to notify Ripple Labs of all

12   XRP transfers made by him, at his direction, and/or for his benefit since entering into the

13   Settlement Agreement, as required by Paragraph 2(b) of the Settlement Agreement.

14      84.     Ripple Labs is entitled to specific performance of the terms, conditions, and

15   provisions of Paragraph 2(b) of the Settlement Agreement.  Ripple Labs requests that McCaleb be

16   ordered to perform pursuant to the terms of Paragraph 2(b) of Settlement Agreement as more fully

17   described in the prayer for relief below.

18      85.     Moreover, as evidenced by McCaleb's consistent, pervasive, and continuing

19   breaches of the Settlement Agreement, it is clear that unless and until restrained by order of this

20   Court McCaleb will continue to breach the Settlement Agreement and proceed in a manner that

21   forces Ripple Labs to suffer great and irreparable harm in that the value of Ripple Labs's XRP will

22   be reduced and McCaleb's competing company will be afforded a unfair competitive advantage.

23      86.     Ripple Labs is entitled to a preliminary injunction and permanent injunction

24   commanding McCaleb to comply with Paragraph 2(b) of the Settlement Agreement as more fully

25   described in the prayer for relief below.

26      87.     As a direct and proximate result of McCaleb's breaches, Ripple Labs has been

27   deprived of its rights and benefits due under the Settlement Agreement and has suffered, and will

28   continue to suffer irreparable harm if McCaleb is not enjoined from continuing to breach the

- 18 -

1   Settlement Agreement.

2          WHEREFORE, Ripple Labs prays for judgment as set forth below.

3                                   **FOURTH CAUSE OF ACTION**
       **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
4                                        **(Against McCaleb)**

5          88.     Ripple Labs incorporates by reference the factual allegations in Paragraphs 1

6   through 87 of this Cross-Complaint as if fully set forth herein.

7          89.     The Settlement Agreement constitutes a valid, binding contract between Ripple

8   Labs and McCaleb.

9          90.     Ripple Labs has at all times performed its obligations under the Settlement

10  Agreement.

11         91.     The Agreement entitles Ripple Labs to various benefits, including stability and

12  peace of mind from excessive sales of XRP by McCaleb that could harm the value of its XRP and

13  harm Ripple Labs.  Under California law, the Settlement Agreement contains an implied covenant

14  of good faith and fair dealing under which McCaleb agreed not to take any action that would

15  deprive Ripple Labs of its rights and benefits under the Settlement Agreement, and under which

16  McCaleb agreed to perform the conditions of the Settlement Agreement fairly, in good faith.

17         92.     McCaleb repeatedly unreasonably breached the covenant of good faith and fair

18  dealing and unfairly interfered with Ripple Labs's rights to receive the benefits of the Settlement

19  Agreement through the following non-exclusive list of conduct:

20             a.   Intentionally and repeatedly selling XRP in his control above the contractual limit

21                  with the intention of causing harm to the XRP price in order to harm Ripple Labs

22                  and to benefit himself;

23             b.   Intentionally and repeatedly selling XRP in his control above the contractual limit

24                  with the intention of causing harm to Ripple Labs in order to give McCaleb's new

25                  digital currency company an unfair competitive advantage over Ripple Labs for his

26                  own personal gain;

27             c.   Directing family members to sell XRP in an attempt to conceal his intentional and

28                  repeated breaches of the Settlement Agreement and in an attempt to circumvent the

- 19 -

Settlement Agreement;

    d.   Concealing and failing to disclose information regarding Ripple accounts that he owns and/or controls in order to conceal his breaches of the Settlement Agreement;

    e.   Concealing and failing to disclose information regarding Ripple accounts that he transferred to others in order to conceal his breaches of the Settlement Agreement; and

    f.   Concealing and failing to disclose XRP transfers to others in order to conceal his breaches of the Settlement Agreement.

93.    As a direct and proximate result of McCaleb's breach of the covenant of good faith and fair dealing, Ripple Labs has been deprived of rights and benefits due to it under the Settlement Agreement.

94.    The Settlement Agreement provided in Paragraph 10 that each party to the Settlement Agreement will be irreparably damaged in the event any of the provisions of the Settlement Agreement are not performed in accordance with their specific terms or otherwise breached.

95.    For the reasons stated heretofore, Ripple Labs has no adequate legal remedy in that money damages cannot adequately compensate Ripple Labs for McCaleb's breach of the implied covenant of good faith and fair dealing.

96.    Ripple Labs is entitled to specific performance of the terms, conditions, and provisions of the Settlement Agreement.  Ripple Labs requests that McCaleb be ordered to perform pursuant to the terms of the Settlement Agreement as more fully described in the prayer for relief below.

97.    Moreover, as evidenced by McCaleb's consistent, pervasive, and continuing breaches of the Settlement Agreement, it is clear that unless and until restrained by order of this Court McCaleb will continue to breach the Settlement Agreement and proceed in a manner that forces Ripple Labs to suffer great and irreparable harm in that the value of Ripple Labs's XRP will be reduced, McCaleb's competing company will be afforded a competitive advantage over Ripple Labs, and Ripple Labs's goodwill will be damaged.

- 20 -

1    98.    Ripple Labs is entitled to a preliminary injunction and permanent injunction

2    commanding McCaleb to comply with the Settlement Agreement as more fully described in the

3    prayer for relief below.

4    99.    As a direct and proximate result of McCaleb's breaches, Ripple Labs has been

5    deprived of its rights and benefits due under the Settlement Agreement and has suffered, and

6    will continue to suffer irreparable harm if McCaleb is not enjoined from continuing to breach the

7    Settlement Agreement.

8    WHEREFORE, Ripple Labs prays for judgment as set forth below.

9    **FIFTH CAUSE OF ACTION**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
10    **(Against Stephenson and Does 1-10)**

11    100.    Ripple Labs incorporates by reference the factual allegations in Paragraphs 1

12    through 99 of this Cross-Complaint as if fully set forth herein.

13    101.    The Settlement Agreement constitutes a valid, binding contract between Ripple

14    Labs and McCaleb.

15    102.    Ripple Labs has at all times performed its obligations under the Settlement

16    Agreement.

17    103.    By September 23, 2014, Stephenson became aware of the Settlement Agreement

18    between McCaleb and Ripple Labs and was aware that the sales of XRP for McCaleb, or his

19    benefit, or for McCaleb's family, may constitute a breach of the Settlement Agreement.

20    104.    Notwithstanding his knowledge of the Settlement Agreement, on March 20,

21    2015, Stephenson sold over $1 million worth of XRP.  On information and belief, this XRP sale

22    was directed by McCaleb and was for McCaleb's benefit, in violation of the Settlement

23    Agreement.  On information and belief, Stephenson knew this sale violated the Settlement

24    Agreement.

25    105.    As a direct and proximate result of Stephenson's tortious interference with the

26    Settlement Agreement, Ripple Labs has been deprived of its rights and benefits due under the

27    Settlement Agreement and has suffered damages, caused by a decrease in the value of XRP due

28

to Stephenson's and McCaleb's March 20, 2015 XRP sale, in an amount to be determined by the Court.

WHEREFORE, Ripple Labs prays for judgment as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Ripple Labs prays that the Court enter judgment in their favor and against McCaleb as follows:

a. For a preliminary and permanent injunction that requires that McCaleb (1) disclose all Ripple accounts under his ownership or control, (2) disclose account numbers and addresses of all individuals and entities to whom he has transferred XRP, ███████ ████████, (3) disclose the amount, date, value and transferee of all XRP transfers made by him, for him, or at his direction since entering into the Settlement Agreement, (4) cease all sales of XRP owned or controlled by McCaleb or his family members beyond the agreed-upon $10,000 worth of XRP per week limit and other limits set forth in the Settlement Agreement, and (5) cease and desist all sales of XRP owned or controlled by McCaleb or his family members for a 150-week period, to allow his actual XRP sale on March 20, 2015, to catch up to and become equal to the $10,000 per week worth of XRP that McCaleb was permitted to sell during that period under the Settlement Agreement;

b. For specific performance of the Settlement Agreement;

c. For general, compensatory and consequential damages from Stephenson in an amount to be determined at trial;

d. For reasonable expenses and related costs incurred in bringing and litigating this action from Stephenson;

e. For an award of pre-judgment and post-judgment interest from Stephenson on monies owed to Ripple Labs; and

f. For any and all such further or other relief as the Court may deem just and proper.

1   Dated:  April 29, 2015                          Respectfully submitted,

2                                            By:   /s/ Grant P. Fondo
                                                   Grant P. Fondo (SBN 181530)
3                                                  gfondo@goodwinprocter.com
                                                   Nicole L. Chessari (SBN 259970)
4                                                  nchessari@goodwinprocter.com
                                                   **GOODWIN PROCTER LLP**
5                                                  135 Commonwealth Drive
                                                   Menlo Park, California 94025-1105
6                                                  Tel.: 650.752.3100
                                                   Fax.: 650.853.1038
7
                                                   Richard M. Strassberg (*Pro Hac Vice Pending*)
8                                                  rstrassberg@goodwinprocter.com
                                                   **GOODWIN PROCTER LLP**
9                                                  353 East 72nd Street 36th Floor
                                                   New York, NY 10021
10                                                 Tel.: 212.813.8800
                                                   Fax.: 212.355.3333
11
                                                   Attorneys for Defendant/Cross-Plaintiff
12                                                 RIPPLE LABS INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 23 -

ANSWER AND CROSS-COMPLAINT
Case No. 15-cv-01503-MEJ

1

**CERTIFICATE OF SERVICE**

2      I, Grant P. Fondo, hereby certify that a true and correct copy of the above and foregoing

3  document has been served on April 29, 2015, to all counsel of record who are deemed to have

4  consented to electronic service via the Court's CM/ECF system per Civil L.R. 5-1(h).  Any

5  counsel of record who have not consented to electronic service through the Court's CM/ECF

6  system will be served by first class mail, facsimile and/or overnight delivery.

7

8                                    /s/ Grant P. Fondo
                                     Grant P. Fondo

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28