1    Jessica Nall (State Bar No. 215149)
     jnall@fbm.com
2    Christopher C. Wheeler (State Bar No. 224872)
     cwheeler@fbm.com
3    Farella Braun + Martel LLP
     235 Montgomery Street, 17th Floor
4    San Francisco, CA  94104
     Telephone:  (415) 954-4400
5    Facsimile:  (415) 954-4480

6    Attorneys for Bitstamp Ltd.

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12   BITSTAMP LTD., a foreign company,          CASE NO. 3:15-cv-1503 WHO

13                  Plaintiff,                   **BITSTAMP LTD.'S MOTION FOR AN
                                                 ORDER OF DISCHARGE OR, IN THE
14         vs.                                   ALTERNATIVE, FOR VOLUNTARY
                                                 DISMISSAL**
15   RIPPLE LABS INC., a California
     Corporation, JACOB STEPHENSON, an
16   individual, NANCY HARRIS, an
     individual, JED MCCALEB, an individual,    Date:       June 10, 2015
17   and DOES 1 Through 10, Inclusive,          Time:       2:00 p.m.
                                                Judge:      Hon. William H. Orrick
18                  Defendants.                 Courtroom:  2, 17th Floor

19

20

21

22

23

24

25

26

27

28

---

MOTION FOR AN ORDER OF DISCHARGE                                    31652\4879137.2
Case No. 3:15-cv-1503 WHO

1

## NOTICE OF MOTION AND MOTION

2   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3         **PLEASE TAKE NOTICE** that on June 10, 2015 at 2:00 p.m., or as soon thereafter as the

4   matter may be heard, in Courtroom 2 on the 17th Floor of the United States Courthouse, 450

5   Golden Gate Avenue, San Francisco, CA, 94102, before the Honorable William H. Orrick,

6   Plaintiff Bitstamp Ltd. ("Bitstamp") will move and hereby does move the Court for an order

7   discharging Bitstamp from this interpleader action or, in the alternative, for voluntary dismissal.

8

9

10

11   Dated: May 13, 2015                                FARELLA BRAUN + MARTEL LLP

12

13                                                      By:  /s/ Jessica Nall
                                                            Jessica Nall

14                                                          Attorneys for Bitstamp Ltd.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR AN ORDER OF DISCHARGE
Case No. 3:15-cv-1503 WHO                                                          31652\4879137.2

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.     INTRODUCTION

3        This is an interpleader action filed by Plaintiff Bitstamp Ltd. ("Bitstamp"), a disinterested

4    stakeholder, who now seeks, as soon as practicable, either to be discharged from this action or

5    voluntary dismissal of this action.  Bitstamp brought this interpleader action against Defendants

6    Ripple Labs Inc. ("Ripple" or "Ripple Labs"), Jacob Stephenson ("Stephenson"), Nancy Harris

7    ("Harris"), and Jed McCaleb ("McCaleb") (collectively, "Defendants") to resolve what appeared

8    to be conflicting claims as to $1,038,172 in digital currency purchase funds (the "Disputed

9    Funds").  Ripple's April 29 Cross-Complaint—which does not name Bitstamp as a Cross-

10   Defendant—indicates that the underlying issue is a contract dispute between Ripple Labs and

11   McCaleb and Stephenson that does not require Bitstamp's participation as a stakeholder.  Ripple

12   Labs can, and should, litigate its breach of contract claims against McCaleb and Stephenson

13   without Bitstamp.

14       In addition, Bitstamp has received information subsequent to filing this action relevant to

15   ownership questions attendant to transferring the Disputed Funds.  Ripple Labs does not appear to

16   face any injury if Bitstamp were to release the Disputed Funds to the recipient of the Disputed

17   Funds identified by Bitstamp (Stellar Development Foundation ("Stellar")) subsequent to the

18   filing of this action, even though Ripple claims that the funds relate to a breach of contract.

19   Ripple Labs has possession of the XRP that it received when it paid out approximately $1 million

20   in the disputed transaction.  Therefore, Ripple Labs has thus received the "benefit of the bargain"

21   from the exchange, even though it claims that the transaction itself violates a Settlement

22   Agreement between itself and Jed McCaleb.

23       In short, there is no reason for Bitstamp to remain involved in this action.  Indeed, there

24   are no claims against Bitstamp, and it lays no claim to the Disputed Funds.  Bitstamp has met all

25   the requirements for filing an interpleader action, and discharge is appropriate under the

26   circumstances.  As part of the requested discharge, Bitstamp respectfully requests that the Court

27   order that Bitstamp may release the Disputed Funds to Stellar.  In the alternative, in light of

28   Ripple's Cross-Complaint indicating that its dispute with McCaleb and Stephenson is a simple

1   contract dispute to which Bitstamp is not a party, Bitstamp requests dismissal of the action.

2   **II.      FACTUAL AND PROCEDURAL BACKGROUND**

3          **A.      Background Regarding Bitstamp and Ripple Labs.**

4          Bitstamp is a company based in the United Kingdom that operates a worldwide digital

5   currency exchange.  (Complaint ¶ 1.)  Ripple Labs develops open source software that

6   implements and interacts with the Ripple "protocol"—a decentralized ledger payment standard.

7   (*Id.* ¶ 10.)  Ripple Labs is also a holder of XRP, which is the digital currency native to the Ripple

8   protocol.  (*Id.*)  XRP is a math-based currency used only within the Ripple protocol.  (*Id.*)

9          The servers that run the Ripple protocol collectively maintain an official ledger that tracks

10  balances in every Ripple account and every transaction that utilizes the Ripple protocol.  (*Id.*

11  ¶ 11.)  Bitstamp, among other things, operates as a gateway for XRP, permitting the exchange of

12  XRP for other digital currency and fiat currency, including U.S. dollars.  (*Id*. ¶ 12.)

13         **B.      Background of the Underlying Contract Dispute Between Ripple Labs and
            Defendants.**
14

15         On March 26, 2015, Bitstamp received a letter from Ripple Labs claiming that it was

16  entitled to approximately $75,000 in Bitstamp's possession, transferred therein as a result of the

17  sale of XRP.  (*Id.* ¶ 13.)  Ripple Labs demanded that Bitstamp release that $75,000 to Ripple

18  Labs, upon the receipt of which Ripple Labs would return the corresponding amount of XRP to

19  the account it originated from.  (*Id.*)  In this letter, Ripple Labs represented that, on August 13,

20  2014, Ripple Labs and McCaleb (and others) entered into a contract (the "Contract") under which

21  McCaleb agreed to abide by certain limitations regarding the sale of XRP within in his ownership

22  and control, and pursuant to that contract, McCaleb agreed to limit sales, and that of his family

23  members, to $10,000 XRP per week, and that this agreement had been breached by the sale of

24  XRP by account number r3Q3B6A2giHDMef83AztzBStBm1JBmxUKX ( "r3Q").  (*Id*.)

25         On March 30, 2015, Bitstamp received a second letter from Ripple Labs claiming that it

26  was entitled to approximately $963,000 of additional funds in Bitstamp's possession due to the

27  breach of contract, and demanding that Bitstamp release a total of $1,038,172 to Ripple Labs,

28  upon the receipt of which Ripple Labs would return the XRP to the account from which it

---

1    originated.  (*Id.* ¶ 14.)  The $1,038,172 can be traced back to a large XRP sale made by r3Q, the

2    ownership of which was, at the time, unclear to Bitstamp.  (*Id.* ¶ 15.)

3          McCaleb is the co-founder, Board member, and developer of Stellar Development

4    Foundation ("Stellar"), a virtual currency company that competes with Ripple.  (*Id.* ¶ 3.)  On

5    March 16, 2015, Stellar initiated an auction of its native currency, STR, in order to cover its

6    operating expenses.  (*Id.* ¶ 16.)

7          On January 6, 2015, according to information provided by Ripple Labs, Ripple account

8    number rUf6pynZ8ucVj1jC9bKExQ7mb9sQFooTPK ("rUf6") with Ripple name

9    ~aluminumcans, transferred 10 million XRP to r3Q.  (*Id.* ¶ 17.)  On March 20, 2015, rUf6

10   transferred an additional 89,999,900 XRP to r3Q.  (*Id.*)  Ripple claims that rUf6 is controlled by

11   McCaleb, Stephenson (McCaleb's cousin), and Harris (Stephenson's mother and McCaleb's

12   aunt).  (*Id.* ¶¶ 4-5, 17.)  On or around March 20, 2015, r3Q offered to sell 98,846,600 XRP on the

13   Bitstamp USD order book, which included the 89,999,900 XRP it received from rUf6 on or

14   around that date and an additional 8,846,700 XRP of the 10 million XRP that r3Q had previously

15   received from rUf6 on or around January 6, 2015.  (*Id.* ¶ 18.)  Immediately after the offer to sell

16   was placed by r3Q, the seller entered into numerous transactions to sell small amounts of that

17   XRP.  On information and belief, on or around March 20, 2015, Ripple Labs, through its agent,

18   purchased all of the remaining XRP offered by r3Q, which consisted of 96,342,361.6 XRP, for

19   $1,038,172.  (*Id.* ¶ 19.)

20          Ripple Labs has claimed that it purchased this XRP in order to avoid and mitigate

21   irreparable harm and damages that would have been caused to Ripple Labs by the XRP sale

22   believed to have been conducted by McCaleb, Stephenson and Harris and that the XRP sale was

23   done in breach of McCaleb's Settlement Agreement with Ripple Labs.  (*Id.* ¶ 20.)  Ripple Labs'

24   agent sent the $1,038,172 in purchase funds to r3Q on the Bitstamp gateway. (*Id.* ¶ 21.)  Ripple

25   Labs is seeking to unwind the transaction by demanding the purchase funds back, upon which it

26   has agreed it will return the purchased XRP to rUf6.  (*Id.*)

27          Bitstamp makes no claim to the Disputed Funds, which involved a Bitstamp customer

28   account that Bitstamp believed was owned and controlled by Jacob Stephenson, a relative of Jed

---

1   McCaleb's.  (*Id.* ¶¶ 23, 31.)  When initially notified of the dispute, in an effort to satisfy its Anti-

2   Money Laundering ("AML") responsibilities, and to investigate the claims to ownership of

3   Ripple Labs, Bitstamp acted to freeze the accounts on the Ripple Network containing the

4   Disputed Funds.  Bitstamp is required under federal law to avoid facilitating suspicious

5   transactions, and to investigate and to undertake best efforts to determine the true ownership of

6   disputed funds.  It took this temporary step due to uncertainty regarding the ownership and

7   control of the accounts in question as well as other regulatory concerns including the size and

8   circumstances of the transfers.  (*Id.* ¶ 24.)

9           **C.**      **Bitstamp's Complaint for Interpleader and Ripple Labs' Cross-Complaint.**

10          On April 1, 2015, in order to avoid taking sides in this dispute, and having frozen the

11  Disputed Funds in light of uncertainty regarding ownership and control of the accounts and the

12  other AML issues, Bitstamp filed its Complaint for Interpleader against Defendants and Ripple.

13  (Dkt. 1.)  On April 29, 2015, Ripple answered the Complaint and asserted cross-claims against

14  McCaleb and Stephenson (collectively "Cross-Defendants") for breach of contract and breach of

15  the implied covenant of good faith and fair dealing, and against Stephenson for tortious

16  interference with contractual relations. (Dkt. 9.)  Ripple's Cross-Complaint contained a detailed

17  explanation and recitation of the underlying contract dispute between it and the Cross-

18  Defendants. (*Id.* at pp. 5-23.)  Ripple's Cross-Complaint seeks injunctive relief and specific

19  enforcement to prevent McCaleb from continuing to breach the Contract and to preclude

20  McCaleb from selling any XRP for 150 weeks, until he catches up to the amount he was

21  permitted to sell under the Contract. (*Id.* ¶ 1.)  The Cross-Complaint also seeks monetary

22  damages against Stephenson for tortiously interfering with the Contract and for an injunction to

23  prevent him from continuing to interfere with the Contract. (*Id.*)

24  **III.**     **ARGUMENT**

25          **A.**     **The Court Should Discharge Bitstamp from this Action.**

26          Bitstamp should be discharged from the interpleader action as there is no further benefit to

27  be served from its participation in the litigation.  "In an interpleader action, the 'stakeholder' of a

28  sum of money sues all those who might have claim to the money, deposits the money with the

1   district court, and lets the claimants litigate who is entitled to the money." *Cripps v. Life Ins. Co.*

2   *of N. Am.*, 980 F.2d 1261, 1265 (9th Cir.1992).  The stakeholder forces the potential claimants to

3   litigate who is properly entitled to the fund.  *See id.*  "Interpleader's primary purpose is not to

4   compensate, but rather to protect stakeholders from multiple liability as well as from the expense

5   of multiple litigation." *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000)

6   (citations omitted).

7          "An interpleader action typically involves two stages.  In the first stage, the district court

8   decides whether the requirements for [a] rule or statutory interpleader action have been met by

9   determining if there is a single fund at issue and whether there are adverse claimants to that

10  fund." *Lee v. West Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir. 2012) (quotation omitted).

11  Next, "[i]f the district court finds that the interpleader action has been properly brought" in the

12  second stage, "the district court will then make a determination of the respective rights of the

13  claimants." *Id*.

14         As set forth below, Bitstamp's discharge from the proceedings is proper at this time.[1]

15                    **1.       Bitstamp Has Properly Pled an Interpleader Action.**

16                         **a.       The Court Has Diversity Jurisdiction.**

17         This is a "Rule interpleader" action brought pursuant to Rule 22 of the Federal Rules of

18  Civil Procedure.  (Complaint ¶ 7.)  Rule 22 is a procedural device and does not alone establish

19  subject matter jurisdiction. *Bayona*, 223 F.3d at 1033.  Thus, jurisdiction must be established

20  under statutes governing federal court jurisdiction. *Id*.

21         The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  (Complaint ¶ 7.)

22  This Section provides that the district court shall have original jurisdiction over all civil actions

23  where the matter in controversy exceeds $75,000 and is between citizens of different states.  28

24  U.S.C. § 1332(a)(1).  Bitstamp, on the one hand, is a company registered in the United Kingdom.

25  (Complaint ¶ 1.)  Defendants, on the other hand, are citizens of Delaware, California, and

26  Arkansas.  (*Id.* ¶¶ 2-5.)

27  ---
[1] "Generally, courts have discretion to award attorney fees to a disinterested stakeholder in an
    interpleader action." *Abex Corp. v. Ski's Enterprises, Inc.*, 748 F.2d 513, 516 (9th Cir.1984)
28  (citation omitted).  Bitstamp reserves the right to seek its attorney's fees for this action.

1

**b.      Bitstamp Has Legitimate Exposure to Multiple Litigation Or
Liability As To The Disputed Funds.**

2

Rule 22(a)(1), which governs interpleader actions by plaintiffs,
provides:

3

4

Persons with claims that may expose a plaintiff to double or
multiple liability may be joined as defendants and required to
interplead. Joinder for interpleader is proper even though: (A) the
claims of the several claimants, or the titles on which their claims
depend, lack a common origin or are adverse and independent
rather than identical; or (B) the plaintiff denies liability in whole or
in part to any or all of the claimants.

5

6

7

8   "Interpleader is appropriate if the stakeholder-plaintiff has 'a real and reasonable fear of double

9   liability or vexatious, conflicting claims.' ... This 'danger need not be immediate; any possibility

10  of having to pay more than is justly due, no matter how improbable or remote, will suffice.'"

11  *Prudential Ins. Co. of Am. v. Wells*, No. C09–0132 BZ, 2009 WL 1457676, at *2 (N.D. Cal. May

12  21, 2009).  Thus, "[t]he court's jurisdiction in an interpleader action extends both to potential and

13  actual claims."  *United Investors Life Ins. Co. v. Grant*, No. 2:05–CV–1716–MCE–DAD, 2006

14  WL 1282618, at *2 (E.D.Cal. May 9, 2006) (citing *Minn. Mut. Life Ins. Co. v. Ensley*, 174 F.3d

15  977, 980 (9th Cir. 1999)).

16        Bitstamp has alleged that it has a real and reasonable exposure to liability and/or

17  vexatious, conflicting claims directed against the single fund at issue, the Disputed Funds, and it

18  is not in the position to safely determine which party's claim is meritorious without hazard and

19  possible multiple liability.  (Complaint ¶¶ 22, 35.)  Specifically, Bitstamp had initially received

20  conflicting claims to the Disputed Funds Ripple Labs, Mr. Stephenson, and, later, Stellar.  (*Id.* ¶¶

21  26-27.)  At this point, Bitstamp has received relevant information regarding the ultimate recipient

22  of the Disputed Funds in the exchange, Stellar.  (Frost Decl. ¶3).  However, in light of the

23  pending action and claims, Bitstamp respectfully requests that the Court order that Bitstamp may

24  release the funds to Stellar.

25        **2.      Discharge is Proper Under the Circumstances.**

26        Once the Court determines interpleader is proper, it may discharge the stakeholder from

27  further liability. *Sun Life Assur. Co. of Canada v. Chan's Estate*, No. C-03-2205 SC, 2003 WL

28  22227881, at *2 (N.D. Cal. Sept. 22, 2003).  Interpleader is a remedial device to be liberally

1   construed. *Prudential Ins. of Am.*, 2009 WL 1457676, at *2 (citing *State Farm & Cas. Co. v.*

2   *Tashire*, 386 U.S. 523, 533, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967)). "A court should readily

3   discharge a disinterested stakeholder from further liability absent a stakeholder's bad faith in

4   commencing an interpleader action, potential independent liability to a claimant, or failure to

5   satisfy requirements of rule or statutory interpleader ." *OM Fin. Life Ins. Co. v. Helton*, No. CIV.

6   2:09-1989 WBS E, 2010 WL 3825655, at *3 (E.D. Cal. Sept. 28, 2010).

7         Discharge is appropriate because Bitstamp is a disinterested stakeholder.  It has engaged

8   in no wrongdoing, and its only obligation is to pay out the Disputed Funds to the appropriate

9   claimant.  (Complaint ¶¶ 31, 34, 35.)

10              **3.       Bitstamp Need Not Deposit The Disputed Funds In Order to be**
                          **Discharged.**
11

12        Rule 22 does not require deposit of funds with the court before discharging the

13  stakeholder in a Rule interpleader action. *Transamerica Life Ins. Co. v. Shubin*, No. 1:11-CV-

14  01958-LJO, 2012 WL 2839704, at *6 (E.D. Cal. July 10, 2012) report and recommendation

15  adopted, No. 1:11-CV-01958-LJO, 2012 WL 3236578 (E.D. Cal. Aug. 6, 2012); *Herman Miller,*

16  *Inc. Ret. Income Plan v. Magallon*, No. 2:07-CV-00162-MCE-GGH, 2008 WL 2620748, at *2

17  (E.D. Cal. July 2, 2008).

18        The Court need not require a deposit at this time.  Instead, Bitstamp requests that the

19  Court order that Bitstamp release the Disputed Funds to the recipient of the Disputed Funds

20  identified by Bitstamp (Stellar) subsequent to the filing of this action, consistent with standard

21  protocol. *See Magallon*, 2008 WL 2620748 at *2 (no deposit required as a prerequisite to

22  granting motion to discharge because the plaintiff agreed to abide by the court's rulings regarding

23  the proper beneficiary of the funds).

24        **B.       Alternatively, The Court Should Order Voluntary Dismissal of this Action.**

25        In the alternative, Bitstamp should be allowed to voluntarily dismiss this action without

26  prejudice.  Generally, under Rule 41(a)(2) of the Federal Rules of Civil Procedure, a plaintiff may

27  move for dismissal of an interpleader action after the filing of an answer by order of the Court

28  "on terms that the court considers to be proper."  Fed. R. Civ. P. 41(a)(2); *Sun Life Assur. Co. of*

1   *Canada, U.S. v. Chirolo*, No. C 08-03465 WHA, 2009 WL 113009, at \*6 (N.D. Cal. Jan. 16,

2   2009) (granting motion for voluntary dismissal of interpleader action).  Where counterclaims are

3   involved, an action "may be dismissed over the defendant's objection only if the counterclaim can

4   remain pending for independent adjudication."  Fed. R. Civ. P. 41(a)(2).  But there are no

5   counterclaims here—only cross-claims.

6          Thus, dismissal should be granted "unless a defendant can show that it will suffer some

7   plain legal prejudice as a result."  *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001).  "[L]egal

8   prejudice is ... prejudice to some legal interest, some legal claim, some legal argument."

9   *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996).  It does not include the

10  threat of future litigation or uncertainty due to an unresolved dispute.  *Lenches*, 263 F.3d at 976.

11  Moreover, it "does not result merely because the defendant will be inconvenienced by having to

12  defend in another forum or where a plaintiff would gain a tactical advantage by that dismissal."

13  *Id*. (citing *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir.1982)).

14         There is no legal prejudice to any defendant from dismissal here.  No counterclaims are

15  pending against Bitstamp.  In light of Ripple's Cross-Complaint, it now appears that this is a

16  contract-based dispute between Ripple, on the one hand, and McCaleb and Stephenson, on the

17  other hand.  Ripple Labs is free to assert its contract claims against the parties to the Settlement

18  Agreement outside of this interpleader action.  Bistamp is not a party to their contract dispute and

19  should not be involved.  Indeed, the potential adverse consequences to Bitstamp of being forced

20  to remain in this suit are harsh, and disproportionate to its role as a disinterested stakeholder.  For

21  these reasons, Bitstamp requests in the alternative that the action be dismissed.

22  **IV.    CONCLUSION**

23         For the foregoing reasons, Bitstamp respectfully requests that the Court discharge it from

24  this action as soon as possible and order that Bitstamp may release the Disputed Funds to the

25  recipient of the Disputed Funds identified by Bitstamp (Stellar) subsequent to the filing of this

26  action.  In the alternative, Bitstamp requests that the action be dismissed.

27

28

1   Dated: May 13, 2015                    FARELLA BRAUN + MARTEL LLP

2

3                                          By: /s/ Jessica Nall
                                               Jessica Nall
4
                                               Attorneys for Bitstamp Ltd.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

MOTION FOR AN ORDER OF DISCHARGE
Case No. 3:15-cv-1503 WHO                    9                    31652\4879137.2