1  MARK S. PARRIS (*pro hac vice forthcoming*)
   PAUL F. RUGANI (*pro hac vice forthcoming*)
2  ANDREW ARDINGER (SBN 267417)
   ORRICK, HERRINGTON & SUTCLIFFE LLP
3  701 Fifth Avenue
   Suite 5600
4  Seattle, Washington  98104-7097
   Telephone:    +1-206-839-4300
5  Facsimile:    +1 206-839-4301
   E-mail:       mparris@orrick.com
6
   GABRIEL M. RAMSEY (SBN 209218)
7  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
8  405 Howard Street
   San Francisco, California  94105-2669
9  Telephone:    +1-415-773-5700
   Facsimile:    +1 415-773-5759
10 E-mail:       gramsey@orrick.com

11 *Attorneys for Jed McCaleb,*
   *Jacob Stephenson and Nancy Harris*
12

13                   UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15

16 | BITSTAMP, LTD., a foreign company, | Case No. 15-cv-01503-WHO |
17 |               Plaintiff, | **DEFENDANTS AND CROSS-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISSOLVE OR, IN THE ALTERNATIVE, MODIFY TEMPORARY RESTRAINING ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
18 |        v. | |
19 | RIPPLE LABS, INC., a California Corporation, JACOB STEPHENSON, an individual, NANCY HARRIS, an individual, JED MCCALEB, an individual, and DOES 1 through 10, inclusive, | |
20 |               Defendants. | |
21

22 | | Date:   May 22, 2015 |
23 | RIPPLE LABS, INC., a California Corporation, | Time:   2:00 p.m.<br>Dept:   Courtroom 2, 17th Floor |
24 |               Cross-Plaintiff, | Judge:  Hon. William H. Orrick |
   |        v. | |
25 | JED MCCALEB, an individual, JACOB STEPHENSON, an individual, and DOES 1 through 10, inclusive, | |
26 | | |
27 |               Cross-Defendants. | |
28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 22, 2015, at 2 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable William H. Orrick, United States District Court for the Northern District of California, Courtroom 2 on the 17th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102, Defendants Jed McCaleb, Jacob Stephenson and Nancy Harris (collectively, "Defendants"), and Cross-Defendants Jed McCaleb and Jacob Stephenson (collectively, "Cross-Defendants") will, and hereby do, move pursuant to Fed. R. Civ. Proc. 65 and 26 to dissolve or, in the alternative, modify the temporary restraining order this Court entered on May 15, 2015, including those portions of the order directing expedited discovery of Cross-Defendants.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Terry Gross in Support of Defendants and Cross-Defendants' Motion to Dissolve or, in the Alternative, Modify Temporary Restraining Order and exhibits thereto, the concurrently filed [Proposed] Order, the documents on file with the Court, all other matters judicially noticeable, and such further evidence and argument as the Court may permit.

Dated: May 20, 2015                    ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Gabriel M. Ramsey*
GABRIEL M. RAMSEY

*Attorneys for Jed McCaleb,*
*Jacob Stephenson and Nancy Harris*

# TABLE OF CONTENTS

I. Introduction ................................................................................................................. 1

II. Background ................................................................................................................ 4

    A. The Alleged Sales of XRP ............................................................................... 4

    B. Ripple's Cross-Complaint ................................................................................ 5

    C. Ripple's *Ex Parte* Application for a Temporary Restraining Order ................ 6

III. Legal Standard ........................................................................................................... 7

    A. A Temporary Restraining Order is Extraordinary Relief
That Is Justified Only in Very Few Circumstances ......................................... 7

    B. Expedited Discovery Should Not Be Ordered On An *Ex Parte* Basis ........... 8

IV. Argument ................................................................................................................... 9

    A. Defendants Do Not Oppose A Temporary Injunction Against Bitstamp
Transferring the Disputed Funds, If Ripple Posts Sufficient Security ............. 9

    B. The Expedited Discovery Ripple Seeks is Irrelevant
to Ripple's Motion and Unduly Prejudices Defendants .................................. 11

V. Conclusion ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Alpha Theta of Alpha Delta Pi Bldg. Ass'n v. Pac. Nw. Reg'l Council of Carpenters*,
    2009 WL 3064688 (W.D. Wash. Sept. 23, 2009) .............................................................. 8

*Am. Can Co. v. Mansukhani*,
    742 F.2d 314 (7th Cir. 1984) ............................................................................................ 7

*Am. LegalNet, Inc. v. Davis*,
    673 F. Supp. 2d 1063 (C.D. Cal. 2009) ............................................................................ 8

*Facebook, Inc. v. Various, Inc.*,
    2011 WL 2437433 (N.D. Cal. June 17, 2011) ................................................................ 13

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*,
    415 U.S. 423 (1974) ..................................................................................................... 7, 8

*Interserve, Inc. v. Fusion Garage PTE, Ltd.*,
    2010 WL 143665 (N.D. Cal. Jan. 7, 2010) ..................................................................... 14

*KLA-Tencor Corp. v. Murphy*,
    717 F. Supp. 2d 895 (N.D. Cal. 2010) ............................................................................ 14

*Leone v. Towanda Borough*,
    2012 WL 1123958 (M.D. Penn. Apr. 4, 2012) ................................................................ 9

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
    883 F. Supp. 488 (C.D. Cal. 1995) .................................................................................. 9

*Newby v. Enron Corp.*,
    188 F. Supp. 2d 684 (S.D. Tex. 2002) ........................................................................... 11

*Qwest Commc'ns Int'l, Inc. v. Worldquest Networks, Inc.*,
    213 F.R.D. 418 (D. Colo. 2003) ..................................................................................... 13

*Reno Air Racing Ass'n, Inc. v. McCord*,
    452 F.3d 1126 (9th Cir. 2006) .......................................................................................... 7

*Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*,
    907 F. Supp. 2d 1086 (N.D. Cal. 2012) ........................................................... 8, 9, 12, 14

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
    208 F.R.D. 273 (N.D. Cal. 2002) ..................................................................................... 8

*Wang v. Silver Wing Chinese Restaurant*,
    2009 WL 1033440 (N.D. Cal. Apr. 16, 2009) ................................................................ 11

*XimpleWare Corp. v. Versata Software, Inc.*,
    2013 WL 6405979 (N.D. Cal. Dec. 6, 2013) .................................................................. 12

*Yokohama Tire Corp. v. Dealers Tire Supply Inc.*,
    202 F.R.D. 612 (D. Ariz. 2001) ........................................................................................ 9

- ii -                                                           MOT. TO DISSOLVE OR MODIFY TRO
                                                                                    15-CV-01503-WHO

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................................ 8

Fed. R. Civ. P. 65 ..................................................................................................................... 8, 10, 11

## I. INTRODUCTION

This lawsuit arises out of the sale by Jacob Stephenson to Ripple Labs, Inc. ("Ripple") of digital currency called XRP. The sale occurred inside the Ripple Network that is controlled and operated by Ripple. Ripple paid $1,038,172 to Mr. Stephenson in exchange for 96,342,361.6 XRP delivered by Mr. Stephenson to Ripple. Mr. Stephenson then used those funds to purchase STRs, a different digital currency, via Coinex, a registered Financial Services Provider in New Zealand. As a customer of Coinex, Stellar Development Foundation ("Stellar"), a not-for-profit entity, received most of those funds from Coinex. Only at that point did Ripple suddenly change its mind and effectively seek to undo the transaction, claiming that it had an interest in Stellar's money and demanding that Bitstamp freeze the account, which it did. Bitstamp also has frozen two other accounts at Ripple's behest (collectively, the "Disputed Funds"). Ripple's sole basis for demanding that Bitstamp withhold Stellar's money is its erroneous assertion that Mr. Stephenson's XRP sale breached a separate contract that Ripple entered into with Jed McCaleb. As a result of collusive actions by Ripple and Bitstamp, Ripple has retained for itself the XRP it purchased, while Stellar and Mr. Stephenson have for months been denied access to funds that they rightfully own.

Bitstamp commenced this action through a complaint for interpleader, explaining that it was freezing the Disputed Funds and seeking judicial intervention to help resolve the question where the funds should be distributed. In all of its filings with the Court, Bitstamp has made clear that it will not release the funds without a Court order permitting it to do so. Bitstamp has now filed a motion for discharge or, in the alternative, voluntary dismissal, informing the Court that it now sees no valid claim by Ripple to the funds owned by Stellar. But in any event, the Disputed Funds will not be released until after resolution of the motion for discharge or voluntary dismissal.

The day after Bitstamp's motion was filed, and with no meaningful attempt to notify Cross-Defendants in advance, Ripple made an *ex parte* application for a temporary restraining order and preliminary injunction directing Bitstamp not to transfer the Disputed Funds pending resolution of this dispute. Ripple's request is inexplicable. Essentially, Ripple has demanded a

1  temporary restraining order and injunction to order Bitstamp to do what it already is doing.
2  Ripple manufactures exigent circumstances by relying on a hearsay statement allegedly made to a
3  non-affiant that Bitstamp might not wait for a Court order to release the funds, but that statement
4  was made *before* Bitstamp filed its motion for discharge in which it reaffirmed that it would not
5  release the Disputed Funds without a Court order.  *See* Dkt. No. 23-1 ¶ 4.  Even if the concern
6  over what Bitstamp "*may*" do could justify emergency injunctive relief, that concern was put to
7  rest once Bitstamp reaffirmed, through a public filing with this Court, that it would not act
8  without judicial approval.

9  While Stellar and Mr. Stephenson understandably would like the money to which they are
10 entitled sooner rather than later, neither objects to Bitstamp's continued retention of the Disputed
11 Funds until resolution of the motion for discharge.  However, pursuant to Federal Rule 65(c),
12 Ripple should be required to post appropriate security.  That security requirement should not
13 burden Ripple, which has retained the XRP it bought throughout the relevant time period.

14 Whether or not Bitstamp continues to hold the Disputed Funds merely is a pretext for the
15 true gain Ripple sought in requesting emergency relief—an opportunity to obtain discovery into
16 the merits of its breach of contract cross-claim against Mr. Stephenson and Jed McCaleb (the
17 "Cross-Defendants") on an expedited basis, to the substantial prejudice of the Cross-Defendants.
18 Ripple demanded that *within 10 days*—far in advance of the parties' Rule 26(f) conference and
19 much sooner than Ripple would be entitled to discovery under the ordinary operation of the
20 Federal Rules—Cross-Defendants produce documents responsive to eight burdensome and
21 overbroad discovery requests and, shortly thereafter, submit to two days of deposition testimony.

22 None of the requested and ordered discovery is relevant to the limited relief sought on
23 Ripple's motion for preliminary injunction.  Ripple has not moved for a preliminary injunction
24 against Cross-Defendants—it has sought preliminary relief against Bitstamp only, and only in the
25 form of an order that Bitstamp not release the Disputed Funds.  While some of Ripple's requested
26 discovery may (at most) be relevant to Ripple's underlying breach of contract claim against
27 Cross-Defendants, none of it is relevant to the preliminary relief Ripple seeks—particularly where
28 Bitstamp has repeatedly reaffirmed that it will not release the Disputed Funds and where Cross-

Defendants and Stellar consent to Bitstamp retaining the funds until the motion to discharge is resolved. Pursuing such expansive and irrelevant discovery on an expedited and *ex parte* basis is unduly burdensome, prejudicial, and improper—simply put, it is a threat to the proper administration of justice.[1]

Ripple's application for expedited discovery is further improper because Ripple cannot demonstrate any harm that it would suffer if discovery in this action proceeded according to the ordinary civil schedule. Ripple makes no allegation—nor could it in good faith—that there is any risk of documents being destroyed or evidence being lost. Nor does it explain what harm would befall it if its request for a preliminary injunction against Bitstamp is decided based on the existing record and evidence already available to Ripple, without separate burdensome discovery from individuals who are not the subject of the injunction sought.

Finally, there are serious questions as to whether the dispute between Ripple and the Cross-Defendants belongs in this Court at all. Ripple invokes diversity jurisdiction in its cross-complaint but plainly the parties are not perfectly diverse—Ripple and Mr. McCaleb are both California citizens.[2] Moreover, the agreement that Ripple allegedly seeks to enforce contains a binding arbitration clause—a fact Ripple conveniently failed to mention when it sought the Court to order expedited civil discovery. Cross-Defendants will file, within the next several days, a motion to compel arbitration. If the Court were to grant that motion, it would necessarily moot the relief Ripple sought in its *ex parte* application. While this Court need not resolve either of these issues to dissolve the temporary restraining order, subjecting Cross-Defendants to intrusive

---

[1] The scope of Ripple's expedited discovery goes beyond any issues relevant to the case and instead seeks sensitive information concerning Stellar that would be extremely valuable for Ripple—a participant in the same digital currency community—to obtain. As a result, if the Court were to decide to authorize some expedited discovery, the Court should direct Ripple to submit narrowed requests, with specific justification for why each request is necessary to adjudication of Ripple's preliminary injunction motion. Further, given the sensitivity of the information, the Court should stay any obligation of Cross-Defendants to respond until an appropriate confidentiality order is entered. Finally, the Court should at the very least clarify its order to indicate that it is not precluding Cross-Defendants from interposing any appropriate objection, including relevance and overbreadth, to the discovery that was served.

[2] The sole reason this breach of contract dispute between non-diverse parties is in federal court is that Bitstamp interjected itself into the dispute through its complaint for interpleader. The attorney who filed that complaint on behalf of Bitstamp also represents Ripple in other matters, including in connection with the negotiation of the settlement agreement that forms the basis for Ripple's breach of contract claims.

expedited discovery on an *ex parte* basis when the dispute may not even remain before this Court (and when such discovery may not be available in the chosen arbitral forum) creates added burdens that further counsel toward dissolving the order granting expedited discovery.

For all of these reasons, as discussed in more detail herein, the Court should dissolve the temporary restraining order or, at the very least, modify the temporary restraining order to a) delete paragraphs 4-6 of the order, which pertain to expedited discovery;[3] and b) direct Ripple to post security in the amount of the Disputed Funds to protect Mr. Stephenson and Stellar from the wrongful deprivation of their money.

## II.  BACKGROUND

Cross-Defendants dispute many of the allegations made in Bitstamp's Complaint in Interpleader and Ripple's Cross-Complaint, as well as many of the factual assertions made in Ripple's *ex parte* application for a temporary restraining order.  Cross-Defendants intend to address those disputed facts more fully in their response to Ripple's motion for preliminary injunction, their response to Bitstamp's motion for discharge, and their motion to dismiss or, in the alternative, compel arbitration, all of which will be filed within the next several days.  Cross-Defendants only briefly address certain background matters in this motion to dissolve.

### A.  The Alleged Sales of XRP

The XRP in question was sold by Mr. Stephenson and Nancy Harris, both of whom had been given their XRP by Mr. McCaleb in December 2012.  As disclosed in the settlement agreement involving Ripple and Mr. McCaleb, that XRP had not been in Mr. McCaleb's control since the gift was made in December 2012.  The Ripple account belonging to Mr. Stephenson referred to as "r3Q."[4]  Initially, r3Q allegedly executed more than $400,000 sales of XRP between August 14, 2014 and September 25, 2014.  Subsequently, on March 20, 2015, r3Q

---

[3] Even if the Court were to decide to authorize some expedited discovery, the discovery demanded by Ripple is extremely overbroad.  The Court should direct Ripple to submit narrowed requests, with specific justification for why each request is necessary to adjudication of Ripple's preliminary injunction motion.

[4] Ripple also asserts claims in connection with certain alleged sales from an account referred to as "rnj8," allegedly owned by Mr. McCaleb.  *See* Dkt. 9 ¶ 8.

1  allegedly sold roughly 96 million XRP for $1,038,172.  Dkt. 9 ¶ 9.  The 96 million XRP allegedly
2  were transferred to r3Q from an account referred to as "rUf6."  *Id.* ¶ 42.
3       Ripple itself purchased the 96 million XRP for $1,038,172.  Dkt. 23 at 7.  The transaction
4  took place in the Ripple Network.  Mr. Stephenson's XRP were transferred to Ripple, and the
5  $1,038,172 was paid to Mr. Stephenson using U.S. dollars on deposit with Bitstamp.  Mr.
6  Stephenson then transferred these funds to another exchange, Coinex, and made a purchase via
7  Coinex of STR, which resulted in Coinex paying Stellar roughly $1 million.  Then, Coinex sent
8  these funds to Stellar on the Ripple Network using U.S. dollars on deposit with Bitstamp.  *See*
9  Dkt. 21 ¶ 4. At Ripple's demand, and in response to Ripple's threats of legal action, Bitstamp put
10  a "freeze" on this account owned by Stellar, and Bitstamp continues to maintain that freeze over
11  Stellar's funds to this day.  *See* Dkt. 1 ¶ 24.  Bitstamp filed a complaint for interpleader seeking
12  judicial assistance with the distribution of the Disputed Funds.  Bitstamp's complaint concerns
13  only the March 20 transaction, and not any of the prior sales of XRP.
14       **B.     Ripple's Cross-Complaint**
15       Ripple filed its answer and cross-complaint on April 29.  Dkt. 9.  In the cross-complaint,
16  Ripple alleges that the sales of XRP described above violated a settlement agreement entered into
17  between Ripple and Mr. McCaleb, among other parties.  The settlement agreement restricted Mr.
18  McCaleb's ability to sell "McCaleb XRP"—that is, "approximately 7,500,000,000 XRP in the
19  Ripple Network in accounts ***owned or controlled*** by Jed McCaleb," including such XRP "held by
20  or for the benefit of his children or other family members."  *Id*. ¶ 29 (emphasis added); Cross-
21  Compl. Ex. 1 ¶ 20(c).  The 7.5 billion XRP figure was arrived at during negotiations between the
22  parties to reflect only the accounts owned or controlled by Mr. McCaleb—i.e., roughly 5.5 billion
23  held in accounts owned by Mr. McCaleb and roughly 2 billion in accounts owned by Mr.
24  McCaleb's children.  *See* Cross-Compl. Ex. 1 ¶ 20(c).  Mr. McCaleb identified accounts outside
25  his control and held by others at the time, including friends, family members, and various
26  nonprofit organizations related to poverty alleviation, education, and scientific research to which
27  Mr. McCaleb had made significant donations.  *See id.* Ex. A.  These accounts contained
28

1  additional XRP that were excluded from the 7.5 billion XRP governed by the settlement

2  agreement because they were no longer owned or controlled by Mr. McCaleb.  *See id.*

3        Ripple does not allege that Jacob Stephenson and Nancy Harris were parties to the

4  settlement agreement or that they entered into any agreement with Ripple to limit their ability to

5  sell XRP.  Ripple nonetheless alleges that sales of XRP from accounts owned by Mr. Stephenson

6  that occurred beginning in August 2014 and continuing into March 2015 somehow constituted

7  breaches of the Ripple-McCaleb settlement agreement.  *See generally* Dkt. 9.

8        All told, Ripple asserts three causes of action for breach of contract and one cause of

9  action for breach of the implied covenant of good faith and fair dealing against Mr. McCaleb and

10  one cause of action for tortious interference with contract against Mr. Stephenson.  *See* Dkt. 9

11  ¶¶ 52-105.  The Cross-Complaint prays for preliminary and permanent injunctive relief against

12  Mr. McCaleb, although Ripple has not yet moved for such relief.  Nor did Ripple pursue

13  injunctive relief or a temporary restraining order in the immediate aftermath of the allegedly

14  breaching transactions that occurred in 2014.

15      **C.**    **Ripple's *Ex Parte* Application for a Temporary Restraining Order**

16        On May 14, 2015, counsel for Stellar received an email from Ripple's counsel.  The email

17  stated that Ripple intended to move *ex parte* for a temporary restraining order and to seek

18  expedited discovery, but did not provide the bases for those requests.  Gross Decl.[5] ¶ 4 & Ex. A.

19  Ripple subsequently filed its *ex parte* application, seeking to enjoin Bitstamp from releasing the

20  Disputed Funds (although not to enjoin Cross-Defendants in any way) and seeking vast expedited

21  discovery from Cross-Defendants (although not from Bitstamp).  *See* Dkt. 23.  As discovery

22  purportedly pertaining to whether Bitstamp should be enjoined from releasing the Disputed

23  Funds, Ripple sought, among other things:

24      • Documents related to ***all*** XRP transfers or sales by Mr. McCaleb, Mr. Stephenson,

25        or Ms. Harris, or for the benefit of Mr. McCaleb, Mr. Stephenson, or Stellar, for a

26        ten-month period.

---

[5] References to the "Gross Decl." are to the Declaration of Terry Gross in Support of Cross-Defendants' Motion to Dissolve or, in the Alternative, Modify Temporary Restraining Order, and the attached exhibits, filed herewith.

- *All* of Mr. McCaleb's and Mr. Stephenson's bank records for a ten-month period, including records of *all* virtual currency accounts (even those that do not involve XRP).
- *All* communications by Mr. McCaleb, Mr. Stephenson, or Ms. Harris, with any virtual currency gateway (even those not involving XRP) for a ten-month period.
- *All* communications by Mr. McCaleb, Mr. Stephenson, and any Stellar personnel regarding the auction of Stellar virtual currency.

Ripple's counsel did not provide a copy of the *ex parte* application and supporting papers to Stellar's counsel, nor did Ripple serve those papers, by any means, on Cross-Defendants. Gross Decl. ¶ 5. Thus, Cross-Defendants were not served prior to the Court issuing its temporary restraining order. *Id.* Ripple purports to have served that order on Cross-Defendants by Federal Express, sending the order on May 15, 2015 for next-day delivery. *Id.* ¶ 7 & Exs. C at 2; D at 2. The next day (not the same day the order was sent) Ripple's counsel also sent Cross-Defendants an electronic copy of the order and requests for production. *Id.* Days later, Ripple also sent Cross-Defendants electronic copies of deposition notices, and purports to have served those notices by Federal Express as well.

### III. LEGAL STANDARD

#### A. A Temporary Restraining Order is Extraordinary Relief That Is Justified Only in Very Few Circumstances

As the Supreme Court recognizes, "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 438-39 (1974). The Ninth Circuit has held that there are "very few circumstances justifying the issuance of an ex parte TRO." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). They are permitted only when notice is impossible or when notice would "'render fruitless the further prosecution of the action.'" *Id.* (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)).

For that reason, Federal Rule of Civil Procedure 65 imposes "stringent restrictions" that must be satisfied before any temporary restraining order may be issued. *Granny Goose*, 415 U.S. at 438. A TRO may be issued without notice to the adverse party **only** if specific facts sworn to in an affidavit "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" **and** "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1); *see also Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1093-94 (N.D. Cal. 2012) (denying *ex parte* TRO). The movant must also post security sufficient to compensate a party that has been "wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

Rule 65 expressly authorizes a party subject to a temporary restraining order issued *ex parte* to "move to dissolve or modify the order" on 2 days' notice to the opposing party. Fed. R. Civ. P. 65(b)(4). An *ex parte* TRO is properly dissolved when the defendant appears and shows a basis for dissolution. *See Alpha Theta of Alpha Delta Pi Bldg. Ass'n v. Pac. Nw. Reg'l Council of Carpenters*, 2009 WL 3064688, at *4 (W.D. Wash. Sept. 23, 2009).

### B. Expedited Discovery Should Not Be Ordered On An *Ex Parte* Basis

The Federal Rules provide that discovery may not be obtained from any source "before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d). A party who wishes to obtain a court order allowing discovery to occur earlier bears the burden of demonstrating good cause by showing that "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). Courts typically consider factors such as: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Rovio*, 907 F. Supp. 2d at 1099 (citing *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009)). When, as here, a party seeks expedited discovery in connection with a motion for preliminary injunction, the party must show why the information sought is necessary to the

adjudication of the preliminary injunction and that the information sought is limited to only what is essential for the preliminary injunction. *Id*. at 1100 ("While Plaintiff may ultimately be entitled to much of the discovery it seeks later in the case, it has failed to demonstrate that expedited discovery is appropriate at this juncture.").

A party who seeks expedited discovery *ex parte*, however, bears an even more heightened burden. This is because "ex parte motions are inherently unfair and they pose a threat to the administration of justice. They debilitate the adversary system." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490-91 (C.D. Cal. 1995). Thus, a party seeking discovery *ex parte* "must provide a justifiable explanation of the urgency warranting *ex parte* relief"; that is, why the circumstances were so exigent that the defendant could not have been provided notice and an opportunity to be heard on the request for expedited discovery. *Leone v. Towanda Borough*, 2012 WL 1123958, at *3 (M.D. Penn. Apr. 4, 2012). Indeed, courts have denied motions for expedited discovery solely on the basis that it was brought *ex parte* to ensure that the defendants would have an opportunity to be heard before any discovery was ordered. *See, e.g.*, *Yokohama Tire Corp. v. Dealers Tire Supply Inc.*, 202 F.R.D. 612, 613-14 (D. Ariz. 2001).

## IV. ARGUMENT

### A. Defendants Do Not Oppose A Temporary Injunction Against Bitstamp Transferring the Disputed Funds, If Ripple Posts Sufficient Security

Bitstamp started this lawsuit because it identified, in its words, "an issue in controversy over who is entitled to possess" certain funds in light of "conflicting ownership claims" from the entities and individuals it sued. Dkt. 1 ¶¶ 22, 25. Bitstamp asserted in its complaint that it had frozen the funds in question and prayed that it be "allowed to continue to freeze the Disputed Funds until otherwise directed by the Court." *Id*. ¶ 36. On May 13, Bitstamp moved for discharge, seeking an order permitting it to release the Disputed Funds. Dkt. 20. While that motion is pending, so far as Defendants are aware, Bitstamp continues to hold the Disputed Funds in the same manner as it held them when it started this lawsuit. Bitstamp plainly has no interest in disturbing the status quo until otherwise ordered by the Court. *See, e.g.*, Gross Decl., ¶¶ 2-3.

Ripple's only argument to the contrary is based on the hearsay assertion in the Fondo Declaration that Bitstamp's counsel told a non-affiant that Bitstamp "may not wait for a Court ruling and may instead decide to immediately transfer the Disputed Funds to Stellar." Dkt. 23-1 ¶ 4. Even if general assertions about what Bitstamp might do with the funds were sufficient to justify emergency relief, the conversation in question took place *before* Bitstamp filed the motion to discharge, expressly seeking a Court order to release the Disputed Funds.[6] By May 14, when Ripple filed its *ex parte* application for a temporary restraining order, Ripple did not have any reasonable basis to believe that Bitstamp would nonetheless ignore its own requests and release the funds prior to the Court's adjudication of its motion.

Ripple has no legitimate claim that it will suffer irreparable harm if a temporary restraining order is dissolved.[7] The XRP transaction that is the subject of Bitstamp's complaint for interpleader has already been fully completed, with Ripple transferring money in exchange for XRP. Moreover, Ripple does not and cannot claim that Stellar or any of the Cross-Defendants will improperly dissipate the funds if Bitstamp releases them to Stellar. Ripple is not entitled to a prejudgment attachment of funds merely because it has asserted a breach of contract claim against Cross-Defendants. As Cross-Defendants will explain more fully in their opposition to Ripple's motion for preliminary injunction, Ripple will not suffer any harm if Bitstamp is permitted to release the funds and such release would have no impact whatsoever on Ripple's breach of contract claims.

Nonetheless, although temporary relief is not necessary to preserve the status quo and Ripple will suffer no irreparable harm in the absence of temporary relief, Defendants do not object to a temporary restraining order that temporarily enjoins Bitstamp from transferring $1,038,172 in disputed funds to any person or entity, consistent with paragraph 1 of the Court's

---

[6] According to the Fondo Declaration, this conversation took place on March 12, 2014. *Id*. That date clearly is incorrect as the sales of XRP giving rise to the dispute over the funds had not yet taken place. Defendants assume that declaration simply has both the month and year wrong and that the conversation allegedly took place on May 12, 2015. Bitstamp's motion to discharge was filed the next day.

[7] Ripple also failed to satisfy Federal Rule 65(b)'s requirement that the party seeking *ex parte* relief explains the reasons why notice should not be required. The Court would be justified in dissolving the temporary restraining order on that basis alone.

order.[8]  Ripple should, however, be required to post security sufficient to compensate Stellar and Mr. Stephenson for the deprivation of funds that rightfully belong to them.  *See* Fed. R. Civ. P. 65(c); *Wang v. Silver Wing Chinese Restaurant*, 2009 WL 1033440, at *2 (N.D. Cal. Apr. 16, 2009) (denying temporary restraining order in the absence of security).  Defendants propose that the security should be the same amount as the Disputed Funds.

### B. The Expedited Discovery Ripple Seeks is Irrelevant to Ripple's Motion and Unduly Prejudices Defendants

Ripple's motion for preliminary injunction solely concerns whether Bitstamp should be enjoined from releasing the Disputed Funds to Stellar, or any other person or entity.  That motion does not require the Court to fully adjudicate the merits of Ripple's cross-complaint against Mr. McCaleb and Mr. Stephenson.  Yet the discovery Ripple pursued relates exclusively to Ripple's cross-complaint and Ripple's claims against Mr. McCaleb and Mr. Stephenson and delves into every aspect of that claim.  Effectively, Ripple seeks through its request for expedited discovery that it be permitted to engage in full litigation of its cross-complaint on an extremely expedited basis, forcing Cross-Defendants and their counsel to collect, review, and produce essentially all documents relevant to the case and to sit for depositions over less than two weeks, without engaging in any corresponding discovery itself.  Expedited discovery under such circumstances is little more than an abuse of process.

The breadth of Ripple's expedited discovery request is astonishing.  It seeks extensive financial disclosures from Cross-Defendants, demanding all of their bank records, XRP transactions, and other virtual currency records for a ten-month period.  It also seeks extensive disclosure of communications, which must be gathered through electronic document collection.[9]

---

[8] Defendants do not consent to a preliminary injunction prohibiting the distribution of funds for the pendency of the entire litigation and dispute that Ripple has shown entitlement to such relief.  *See, e.g.*, *Newby v. Enron Corp.*, 188 F. Supp. 2d 684, 708-09 (S.D. Tex. 2002).  Defendants intend to address this issue further in their response to Ripple's motion for preliminary injunction, due May 27.

[9] Ripple demands the production of electronic documents "in a Relativity database or other format compatible with Relativity, together with a description of the system from which it is derived."  Gross Decl. Exs. C at 10; D at 10.  Merely loading electronic documents into Relativity for review and then processing them for production, complete with Bates numbering, extracted text, metadata, etc., will require at least a day of machine time on each end, reducing the actual time available to Cross-Defendants to substantively respond by at least 20%.

Indeed, Ripple purports to require Cross-Defendants to gather, within ten days, materials not only in their possession, but also from any of their "employees, brokers, accountants, financial advisors, representatives, and agents." Gross Decl. Exs. C at 9; D at 9. These communications are not limited in scope to the specific sale of XRP in exchange for the Disputed Funds that are the subject of Bitstamp's complaint and Ripple's motion for preliminary injunction. Instead, they include, for a ten-month period, *every* communication involving a Cross-Defendant that concerns any of the following: Ripple, XRP, Stellar, STRs, Bitstamp, Coinex, other virtual currency gateways, or the Stellar auction. Perhaps the most egregious request demands that Mr. McCaleb—a director and officer of Stellar—produce *all* of his communications with *all* Stellar personnel regarding XRP and/or a "Stellar auction." *Id*., Ex. C at 11-12.[10] These documents have nothing to do with any alleged breach of contract—let alone the limited issues on Ripple's preliminary injunction motion—and the request serves no purpose but to compel Stellar to disclose sensitive internal documents to another participant in the digital currency community. That is a plainly improper use of any form of discovery and a particularly inappropriate use of expedited discovery obtained on an *ex parte* basis.

Most of these communications are not even relevant to the merits of Ripple's cross-claims at all; they have nothing whatsoever to do with its limited request for injunctive relief against Bitstamp. *See Rovio*, 907 F. Supp. 2d at 1099-1100 (denying *ex parte* request for expedited discovery where plaintiff "has not clearly shown that the discovery requested is narrowly tailored to obtain information relevant to a preliminary injunction determination"); *XimpleWare Corp. v. Versata Software, Inc.*, 2013 WL 6405979, at *3 (N.D. Cal. Dec. 6, 2013) (rejecting expedited discovery that was "overbroad and not narrowly tailored to obtain evidence relevant to XimpleWare's motion for preliminary injunction"). And the discovery goes far beyond the ostensible purpose claimed by Ripple, which is to "identify doe defendants" and assess whether to bring a motion for preliminary injunction. Dkt. 23 at 18, 19. Ripple hardly needs access to the

---

[10] Ripple exceeded the scope of the Court's order when it demanded the same discovery from Mr. Stephenson. *See* Gross Decl. Ex. D (RFPs 10-13). Paragraph 5(h) of the Court's order permits discovery only into communications by or among Mr. McCaleb and Stellar personnel regarding XRP sales or the Stellar auction. Dkt. 24.

- 12 -

MOT. TO DISSOLVE OR MODIFY TRO
15-CV-01503-WHO

1  Defendants' entire financial records, as well as all of their communications about Ripple, XRP,
2  Stellar, STRs, Bitstamp, Coinex, other virtual currency gateways, or the Stellar auction, to make
3  those determinations.

4  In any event, Ripple's assertion that there are other, yet-to-be identified individuals or
5  entities who also may be named as defendants to its claims is pure speculation.  Ripple—which,
6  in light of its conduct and allegations, plainly has records of every XRP transaction that occurs—
7  has not identified *any* other transaction by *any* other account that it contends is in breach of its
8  agreement with Mr. McCaleb.  Courts generally permit expedited discovery to identify unknown
9  defendants "when the plaintiff simultaneously can identify no defendants and legitimately fears
10 that information leading to their whereabouts faces imminent destruction." *Facebook, Inc. v.*
11 *Various, Inc.*, 2011 WL 2437433, at *3 (N.D. Cal. June 17, 2011) (citing cases).  Neither
12 circumstance is present here.  As in *Facebook*, Ripple "may obtain discovery to identify
13 Unnamed Defendants [if any] during the normal course of discovery" and Ripple has not argued,
14 nor can it, that "relevant information may be in danger of destruction." *Id*.

15 Similarly, Ripple itself admits that much of the discovery it seeks is not relevant to the
16 existing preliminary injunction motion that it has filed—which, as discussed, is limited only to
17 the question whether Bitstamp should be enjoined from releasing funds— but to "whether current
18 circumstances would require Ripple Labs to pursue a preliminary injunction."  Dkt. 23 at 19.
19 Courts usually do not find good cause "when presented with a party's mere inclination to file [a
20 motion for preliminary injunction]." *Facebook*, 2011 WL 2437433, at *3; *see also Qwest*
21 *Commc'ns Int'l, Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 420 (D. Colo. 2003).
22 Allowing Ripple early access to Cross-Defendants' records so that Ripple can figure out whether
23 it wants to pursue preliminary injunctive relief against them is inherently prejudicial.

24 Ripple has asserted breach of contract claims against Cross-Defendants.  Those claims
25 primarily involve alleged past breaches of contract for which there are no exigent circumstances
26 to justify immediate action.  Cross-Defendants, of course, dispute that any breaches occur and
27 look forward to defending their claims in the proper forum.  But, if the case proceeds in this
28 Court, they should be entitled to the ordinary time allotted under the Federal Rules and this

Court's local rules to first respond to the allegations in the Cross-Complaint, asserting appropriate defenses to those allegations, and then, if necessary, respond to discovery served after a Rule 26(f) conference and allowing the standard thirty days for responses (including the opportunity to interpose necessary and relevant objections).[11]  Forcing two individuals to gather and produce ten months' worth of electronic communications and financial records in a ten day period and then submit themselves for a deposition within the next three days, without providing the individuals any opportunity to be meaningfully heard as to good faith objections to the scope of any of these discovery demands, is extremely burdensome.[12]  It also exposes Cross-Defendants to substantial prejudice because it threatens them with resolution, on the merits, of key aspects of the claims against them without affording them adequate opportunity, time, and resources to defend themselves.[13]

## V.     CONCLUSION

Ripple's *ex parte* application for a temporary restraining order is based on supposed exigent circumstances that do not exist.  Cross-Defendants and Stellar have no objection to Bitstamp not releasing the funds until its motion to discharge is resolved (subject to Ripple

---

[11] The sole case Ripple cites to suggest that there will be no prejudice involves substantially different facts.  In that case, the plaintiff merely sought to advance the time for it to commence discovery by eight weeks; it otherwise preserved the standard 30-day response period for both interrogatories and document requests and did not seek to compel early deposition testimony.  *See Interserve, Inc. v. Fusion Garage PTE, Ltd.*, 2010 WL 143665, at *2 (N.D. Cal. Jan. 7, 2010).  Here, by contrast, Ripple has sought to compress the schedule for Cross-Defendants to respond to discovery from 30 days to 10 days *and* compel these two individuals to be deposed within three days after documents are produced.

[12] Ripple's assertion that depositions are "routinely permitted" in these situations is based on nothing more than a citation to a single district court case discussing that, in that case, expedited depositions occurred.  *See* Dkt. 23 at 18, n.8 (citing *KLA-Tencor Corp. v. Murphy*, 717 F. Supp. 2d 895, 898 (N.D. Cal. 2010)).  Expedited depositions, like all forms of expedited discovery, are far from routine and impose added burdens on the responding parties that must be justified by separate showings of necessity, which Ripple has not made.

[13] If the Court nonetheless orders Cross-Defendants to engage in discovery, the Court should direct Ripple to submit narrowed requests, with specific justification for why each request is necessary to adjudication of Ripple's preliminary injunction motion.  *See Rovio*, 907 F. Supp. 2d at 1100.  Moreover, Cross-Defendants should be entitled to the protection of a confidentiality order allowing them to designate documents for confidential and/or outside counsel only treatment.  Ripple and Stellar are participants in the same digital currency community and the documents requested could give Ripple access to highly sensitive confidential information about the way an entity in the same community operates.  Moreover, Mr. McCaleb and Mr. Stephenson are entitled to protection from public disclosure of their bank records, which contain sensitive personal information.

posting an appropriate security). And the discovery Ripple seeks has nothing to do with that limited issue, but instead broadly pursues information related to the underlying merits of Ripple's claims (and, indeed, far beyond even that subject). Accordingly, this Court should dissolve the temporary restraining order or, at the very least, modify it to strike all portions of the order compelling Cross-Defendants to participate in expedited discovery.

Dated: May 20, 2015　　　　　　　　　ORRICK, HERRINGTON & SUTCLIFFE LLP


By: */s/ Gabriel M. Ramsey*
GABRIEL M. RAMSEY

*Attorneys for Jed McCaleb, Jacob Stephenson and Nancy Harris*