1  MARK S. PARRIS (*pro hac vice pending*)
   PAUL F. RUGANI (*pro hac vice pending*)
2  ANDREW ARDINGER (SBN 267417)
   ORRICK, HERRINGTON & SUTCLIFFE LLP
3  701 Fifth Avenue
   Suite 5600
4  Seattle, Washington  98104-7097
   Telephone:    +1-206-839-4300
5  Facsimile:    +1 206-839-4301
   E-mail:       mparris@orrick.com
6
   GABRIEL M. RAMSEY (SBN 209218)
7  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
8  405 Howard Street
   San Francisco, California  94105-2669
9  Telephone:    +1-415-773-5700
   Facsimile:    +1 415-773-5759
10 E-mail:       gramsey@orrick.com

11 *Attorneys for Cross-Defendants*
   *Jed McCaleb and Jacob Stephenson*
12
                   UNITED STATES DISTRICT COURT
13
                  NORTHERN DISTRICT OF CALIFORNIA
14

15
   BITSTAMP, LTD., a foreign company,          Case No. 15-cv-01503-WHO
16
                      Plaintiff,               **NOTICE OF MOTION AND MOTION**
17                                             **TO COMPEL ARBITRATION AND**
        v.                                     **STAY PROCEEDINGS;**
18 RIPPLE LABS, INC., a California Corporation, **MEMORANDUM OF POINTS AND**
   JACOB STEPHENSON, an individual, NANCY      **AUTHORITIES IN SUPPORT**
19 HARRIS, an individual, JED MCCALEB, an      **THEREOF**
   individual, and DOES 1 through 10, inclusive,
20                 Defendants.

21
                                               Date:    July 1, 2015
22 RIPPLE LABS, INC., a California Corporation, Time:    2:00 p.m.
                                               Dept:    Courtroom 2, 17th Floor
                      Cross-Plaintiff,         Judge:   Hon. William H. Orrick
23
        v.
24 JED MCCALEB, an individual, JACOB
   STEPHENSON, an individual, and DOES 1
25 through 10, inclusive,

26                 Cross-Defendants.

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on July 1, 2015, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable William H. Orrick, United States District Court for the Northern District of California, Courtroom 2 on the 17th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102, Cross-Defendants Jed McCaleb and Jacob Stephenson (collectively, "Cross-Defendants") will, and hereby do, move to compel arbitration of the claims of Cross-Plaintiff Ripple Labs, Inc., pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, and to stay its claims pending completion of arbitration, pursuant to 9 U.S.C. § 3.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Andrew Ardinger in Support of Cross-Defendants' Motion to Compel Arbitration and Stay Proceedings and exhibits thereto, the concurrently filed [Proposed] Order, the documents on file with the Court, all other matters judicially noticeable, and such further evidence and argument as the Court may permit.

ORRICK, HERRINGTON & SUTCLIFFE LLP

Dated: May 22, 2015

By: */s/ Gabriel M. Ramsey*
GABRIEL M. RAMSEY

*Attorneys for Cross-Defendants*
*Jed McCaleb and Jacob Stephenson*

CROSS-DEFENDANTS' NOTICE OF JOINDER;
MOT. TO COMPEL ARBITRATION AND STAY;
MEMO. OF POINTS AND AUTHORITIES
15-CV-01503-WHO

# TABLE OF CONTENTS

I.     Introduction ...................................................................................................... 1

II.    Factual Background ......................................................................................... 3

     A.     The Arbitration Agreement Between Ripple and Jed McCaleb.............................. 3

     B.     Ripple's Allegations ................................................................. 5

III.    Legal Standard ................................................................................................ 5

IV.    Argument ........................................................................................................ 7

     A.     Ripple Must Arbitrate Its Claims Against Mr. McCaleb ......................................... 7

     B.     Ripple Is Equitably Estopped from Refusing to Arbitrate Its Claims Against Mr. Stephenson and Any As Yet Unnamed Cross-Defendants ................ 10

     C.     The Court Should Stay the Cross-Complaint ........................................ 12

V.    Conclusion ..................................................................................................... 13

- i -

CROSS-DEFENDANTS' NOTICE OF JOINDER;
MOT. TO COMPEL ARBITRATION AND STAY;
MEMO. OF POINTS AND AUTHORITIES
15-CV-01503-WHO

1

**TABLE OF AUTHORITIES**

2

**Cases**

3
*Am. Express Co. v. Italian Colors Rest.*,
   133 S. Ct. 2304 (2013) ........................................................................ 6

4
*Arthur Andersen LLP v. Carlisle*,

5
   556 U.S. 624 (2009) ....................................................................... 2, 10

6
*AT&T Mobility LLC v. Concepcion*,
   131 S. Ct. 1740 (2011) ................................................................... 6, 12

7
*Boucher v. Alliance Title Co., Inc.*,

8
   127 Cal. App. 4th 262 (2d Dist. 2005) ............................................. 11

9
*Chiron Corp. v. Ortho Diagnostic Sys.*,
   207 F.3d 1126 (9th Cir. 2000) ..................................................... 5, 6, 7

10
*Comedy Club, Inc. v. Improv West Assocs.*,

11
   553 F.3d 1277 (9th Cir. 2009) .......................................................... 10

12
*Crook v. Wyndham Vacation Ownership, Inc.*,
   2013 U.S. Dist. LEXIS 160705 (N.D. Cal. Nov. 7, 2013) ...................... 2, 8, 10

13
*Davis v. CACH, LLC*,

14
   2015 U.S. Dist. LEXIS 25088 (N.D. Cal. Mar. 2, 2015) .................... 8

15
*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ........................................................................... 6

16
*First Options of Chicago v. Kaplan*,

17
   514 U.S. 938 (1995) ........................................................................ 6, 7

18
*Goldman v. KPMG, LLP*,
   173 Cal. App. 4th 209 (2d Dist. 2009) ......................................... 3, 11

19
*Green Tree Fin. Corp.-Ala. v. Randolph*,

20
   531 U.S. 79 (2000) ............................................................................. 7

21
*Guidewire Software, Inc. v. Chookaszian*,
   2012 U.S. Dist. LEXIS 156363 (N.D. Cal. Oct. 31, 2012) ............. 2, 7

22
*Kramer v. Toyota Motor Corp.*,

23
   705 F.3d 1122 (9th Cir. 2013) ..................................................... 2, 11

24
*Momot v. Mastro*,
   652 F.3d 982 (9th Cir. 2011) ......................................................... 7, 8

25
*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,

26
   460 U.S. 1 (1983) ........................................................................... 6, 7

27
*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2013) ............................................... 2, 11, 12

28

- ii -

CROSS-DEFENDANTS' NOTICE OF JOINDER;
MOT. TO COMPEL ARBITRATION AND STAY;
MEMO. OF POINTS AND AUTHORITIES
15-CV-01503-WHO

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
    724 F.3d 1069 (9th Cir. 2013) ..................................................................... 6, 7, 8

*Qualcomm, Inc. v. Nokia Corp.*,
    466 F.3d 1366 (Fed. Cir. 2006) .............................................................. 2, 7, 8, 9

*Rent-A-Center W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ........................................................................................... 7

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ...................................................................... 2, 10

*Tompkins v. 23andMe, Inc.*,
    2014 U.S. Dist. LEXIS 88068 (N.D. Cal. June 25, 2014) ..................... 6, 7, 8, 9

*Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*,
    497 Fed. App'x 740 (9th Cir. 2012) ............................................................. 2, 8

**Statutes**

9 U.S.C. § 2 .......................................................................................................... 6

9 U.S.C. § 3 ..................................................................................................... 3, 12

9 U.S.C. § 4 .......................................................................................................... 6

**Rules**

JAMS Comprehensive Arbitration Rules and Procedures, Rule 11 ........................... 4, 8

JAMS Comprehensive Arbitration Rules and Procedures, Rule 24 ........................... 4, 9

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3        Cross-Defendants Jed McCaleb and Jacob Stephenson seek to compel Cross-Plaintiff

4  Ripple Labs, Inc. ("Ripple") to arbitrate its claims against Cross-Defendants and staying the

5  claims pending the outcome of the arbitration.

6        All of Ripple's claims in this action are based on a confidential Settlement Agreement

7  between, among other entities, Ripple and Mr. McCaleb.  Dkt. No. 9,[1] ¶ 2 (alleging the same).

8  That Settlement Agreement has a broadly worded dispute resolution provision that requires

9  arbitration of "[a]ny dispute, claim or controversy arising out of or relating to this Agreement or

10  the breach, termination, enforcement, interpretation or validity thereof, including the

11  determination of the scope or applicability of this agreement to arbitrate."  Sett. Agmt.,[2] ¶ 11.

12  Notwithstanding this broad agreement to arbitrate, Ripple has filed a Cross-Complaint in this

13  Court asserting claims for breach of the Settlement Agreement against Mr. McCaleb and for

14  tortiously interfering with the Settlement Agreement against Mr. Stephenson.  These claims all

15  "aris[e] out of or relat[e] to" the Settlement Agreement and thus fit squarely within the terms of

16  the arbitration provision in the Settlement Agreement.

17        Through this motion, Mr. McCaleb and Mr. Stephenson seek three orders, all intended to

18  uphold the strong federal policy in favor of enforcement of arbitration agreements

19        First, Mr. McCaleb seeks an order compelling Ripple to adjudicate its claims against him

20  for alleged breach of the Settlement Agreement and its implied covenant of good faith and fair

21  dealing.  There is no question that the Settlement Agreement is a valid agreement to arbitrate and

22  that it provides for arbitration pursuant to JAMS rules, which is "'clear and unmistakable'

23

---

[1] Docket No. 9 contains both Ripple's Answer and its Cross-Complaint, each of which has
24  numbered paragraphs starting at paragraph 1.  The Cross-Complaint begins at page 4 of Docket
No. 9, and, unless otherwise noted, all references to the paragraphs of Docket No. 9 are made to
25  the paragraphs of Cross-Complaint.

[2] Ripple has lodged an unredacted copy of the Settlement Agreement at issue with the Court.  *See*
26  Dkt 10 and related documents.  For ease of reference and judicial efficiency, and without waiving
any arguments or admitting any allegations, Cross-Defendants cite to that copy of the Settlement
27  Agreement.  References to the "Sett. Agmt." are to Exhibit 1 to the Cross-Complaint, lodged
under seal with the Court.

28

CROSS-DEFENDANTS' NOTICE OF JOINDER;
MOT. TO COMPEL ARBITRATION AND STAY;
MEMO. OF POINTS AND AUTHORITIES
15-CV-01503-WHO

1   evidence of the parties' intent to delegate the issue of arbitrability to the arbitrator." *Guidewire*

2   *Software, Inc. v. Cookaszian*, 2012 U.S. Dist. LEXIS 156363, at *11 (N.D. Cal. Oct. 31, 2012);

3   *see also Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*, 497 Fed. Appx. 740, 742 (9th Cir. 2012)

4   ("the parties' incorporation of the JAMS rules and their employment of a broad arbitration

5   provision establish their clear and unmistakable intent to submit the issue of arbitrability to

6   arbitration").  Accordingly, on this motion, the Court's only inquiry is "whether the assertion of

7   arbitrability is 'wholly groundless.'" *Qualcomm, Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed.

8   Cir. 2006) (applying Ninth Circuit and California law).  Mr. McCaleb's assertion that the cross-

9   claims against him are arbitrable is clearly not "wholly groundless":  the Settlement Agreement

10  provides for the arbitration of any claim, like the cross-claims, that arise out of or related to the

11  Settlement Agreement.  Although there can be no doubt that the claims are arbitrable, as this

12  Court has recognized, "[a]ny doubts concerning the scope of arbitrable issues should be resolved

13  in favor of arbitration." *Crook v. Wyndham Vacation Ownership, Inc.*, 2013 U.S. Dist. LEXIS

14  160705, at *6 (N.D. Cal. Nov. 7, 2013) (Orrick, J.) (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d

15  716, 721 (9th Cir. 1999)).  Accordingly, even if the Court were to decide the question of

16  arbitrability (and it should not), it should compel arbitration of the cross-claims against Mr.

17  McCaleb.

18        Second, Mr. Stephenson seeks an order compelling Ripple to arbitrate its claim against

19  him for alleged tortious interference with the Settlement Agreement.  Whether a non-signatory to

20  an arbitration agreement can compel arbitration is governed by state contract law.  *See Arthur*

21  *Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009).  Under applicable California law, a plaintiff

22  is equitably estopped from avoiding arbitration of its claims against a non-signatory defendant in

23  two situations.  The first is where the plaintiff's claims "rely on the terms of the written

24  agreement," or where "the claims are intimately founded in and intertwined with the underlying

25  contract." *Murphy v. DirecTV*, 724 F.3d 1218, 1229 (9th Cir. 2013) (quoting *Kramer v. Toyota*

26  *Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013)).  The second is "when the signatory alleges

27  substantially interdependent and concerted misconduct by the nonsignatory and another signatory

28

CROSS-DEFENDANTS' NOTICE OF JOINDER;
MOT. TO COMPEL ARBITRATION AND STAY;
MEMO. OF POINTS AND AUTHORITIES
15-CV-01503-WHO

1   and the allegations of interdependent misconduct are founded in or intimately connected with the

2   obligations of the underlying agreement." *Id.* Both factors are met here. Indeed, the California

3   Court of Appeal has explained that "[c]laims of tortious interference with contract are particularly

4   well suited for imposing equitable estoppel against the signatory: But for the contract containing

5   the arbitration clause, there would be no breach and no claim for interference with the contract."

6   *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 227, n.10 (2d Dist. 2009). This claim, arising

7   out of and relating to the Settlement Agreement, falls squarely within the scope of the arbitration

8   provision and squarely within the circumstances under which Ripple is equitably estopped from

9   opposing arbitration.

10        Third, Cross-Defendants also request that the Court, consistent with the Federal

11   Arbitration Act ("FAA"), 9 U.S.C. § 3, stay the Cross-Complaint pending resolution of the

12   arbitration.

13   **II.**    **FACTUAL BACKGROUND**

14       **A.**    **The Arbitration Agreement Between Ripple and Jed McCaleb**

15        Mr. McCaleb entered a Settlement Agreement with Ripple dated August 13, 2014. *See,*

16   *e.g.*, Dkt. No. 9, ¶ 2. That Settlement Agreement contains a broad dispute resolution provision

17   that reads as follows:

18
19
20
21
22
23
> <u>Dispute Resolution</u>. ***Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in San Francisco, California before one arbitrator***. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules. Judgment on the Award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction, as provided in Paragraph 10 herein.

24   Sett. Agmt., ¶ 11 (emphasis added).[3] Paragraph 10 of the Settlement Agreement permits specific

25

26
27
28
---
[3] As noted in the Declaration of Grant P. Fondo in Support of Defendant/Cross-Plaintiff Ripple Labs, Inc.'s Motion for Administrative Relief to File Documents Under Seal Pursuant to Civil Local Rules 7-11 and 79-5, the parties to the Agreement agreed to "keep this Agreement document, the terms of Paragraphs 4, 6, 7 and 8 of this Agreement, Exhibits A and B hereto, and the information in those exhibits confidential." Dkt. No. 10-1, ¶ 4. The terms of the dispute

CROSS-DEFENDANTS' NOTICE OF JOINDER;
MOT. TO COMPEL ARBITRATION AND STAY;
MEMO. OF POINTS AND AUTHORITIES
15-cv-01503-WHO

1    performance and injunctive relief "to prevent breaches of this Agreement," *id.*, ¶ 10, and

2    designates this Court or any court of the State of California with subject matter jurisdiction as the

3    venue for such an action.  By the terms of the dispute resolution provision, Paragraph 10 is

4    addressed only to "*provisional remedies in aid of arbitration* from a court of appropriate

5    jurisdiction."  *Id.*, ¶ 11 (emphasis added).  There is no language in the arbitration provision

6    limiting its breadth; it notably *does not* include any requirement that the parties to any arbitrable

7    claim be signatories of the Settlement Agreement.  *See id.*  And neither Paragraph 10 nor

8    Paragraph 11 retain for a court *exclusive* jurisdiction over any type of claim or action, whether in

9    law or equity.  *See id.*, ¶¶ 10; 11.

10       The Settlement Agreement specifically reserves *for the arbitrator* any question as to "the

11   scope or applicability of this agreement to arbitrate."  *Id.*, ¶ 11.  The Agreement also requires the

12   arbitration of claims arising out of or relating to the Agreement to be conducted under the JAMS

13   Comprehensive Arbitration Rules and Procedures (the "JAMS Rules").  The JAMS Rules

14   similarly state that "[j]urisdictional and arbitrability disputes, including disputes over the

15   formation, existence, validity, interpretation or scope of the agreement under which Arbitration is

16   sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the

17   Arbitrator," who "has the authority to determine jurisdiction and arbitrability issues as a

18   preliminary matter."  Ardinger Decl.,[4] Ex. A at 16 (JAMS Rule 11(b), eff. July 1, 2014).  The

19   JAMS Rules also permit an arbitrator to "grant any remedy or relief that is just and equitable and

20   within the scope of the Parties' agreement, including, but not limited to, specific performance of a

21   contract or any other equitable or legal remedy."  *Id.* at 28 (JAMS Rule 24(c)).

22       The parties agreed that the Settlement Agreement "shall be governed by, construed and

23   interpreted in accordance with[] the laws of the State of California, without reference to choice of

24   law principles."  Sett. Agmt., ¶ 9.

---

25   resolution provision, at paragraph 11, and the specific performance provision, at paragraph 10, are
26   not included among the terms to be kept confidential.

27   [4] References to "Ardinger Decl." refer to the Declaration of Andrew Ardinger in Support of
     Cross-Defendants' Motion to Compel Arbitration and Stay Proceedings, and the exhibit thereto,
     filed herewith.

28

CROSS-DEFENDANTS' NOTICE OF JOINDER;
MOT. TO COMPEL ARBITRATION AND STAY;
MEMO. OF POINTS AND AUTHORITIES
15-CV-01503-WHO

1

### B.      Ripple's Allegations

2      Ripple agreed to arbitrate any claim arising out of or relating to the Settlement Agreement,

3   yet asserted those claims against Cross-Defendants in this Court.[5]   Ripple alleges that Mr.

4   McCaleb agreed in the Settlement Agreement to "limit sales of [the 7.5 billion] XRP within his

5   own ownership or control, and within his family members' ownership or control, to $10,000

6   worth of XRP per week [in the first year], and $20,000 worth of XRP per week in the second

7   year," and provide notice to Ripple whenever Mr. McCaleb initiated a transfer of XRP.  Dkt. No.

8   9, ¶ 3.  Ripple alleges, broadly, that Mr. McCaleb breached the Settlement Agreement because

9   Mr. Stephenson made sales of XRP in excess of the $10,000 weekly limit.  *Id.*, ¶¶ 5-10.  Ripple

10  also alleges that Mr. McCaleb breached the Settlement Agreement by providing inaccurate

11  information as to his holdings and failing to provide notice required under the Settlement

12  Agreement.  *Id.*, ¶¶ 34-35; 45; *see also id.*, ¶¶ 52-99.  Ripple alleges that Mr. Stephenson was

13  aware of the Settlement Agreement and the limits it imposed on Mr. McCaleb's ability to transfer

14  digital currency, but that Mr. Stephenson, "directed by [Mr.] McCaleb and . . . for [Mr.]

15  McCaleb's benefit," sold digital currency in excess of such limits.  *Id.*, ¶¶ 6; 11; 104.

16     Ripple's Cross-Complaint includes (a) three causes of action against Mr. McCaleb for

17  alleged breach of the Settlement Agreement (¶¶ 52-87); (b) one cause of action against Mr.

18  McCaleb for alleged breach the duty of good faith and fair dealing implied in the Settlement

19  Agreement (¶¶ 88-99); and (c) one cause of action against Mr. Stephenson for tortiously

20  interfering with the Settlement Agreement (¶¶ 100-05).

21  ### III.     LEGAL STANDARD

22     The FAA applies here because the transactions and contract at issue affect interstate

23  commerce.  *See, e.g.*, Dkt. No. 9, ¶¶ 15-17; 5-11 (alleging that the Settlement Agreement affects

24  transactions entered into by an Arkansas resident directed by a California resident that affected a

25  Delaware company headquartered in California); *see also Chiron Corp. v. Ortho Diagnostic Sys.*,

26  207 F.3d 1126, 1130 (9th Cir. 2000) ("Because the Agreement is 'a contract evidencing a

27  _____

28  [5] Cross-Defendants deny any and all claims by or liability to Ripple.

CROSS-DEFENDANTS' NOTICE OF JOINDER;
MOT. TO COMPEL ARBITRATION AND STAY;
MEMO. OF POINTS AND AUTHORITIES
15-CV-01503-WHO

transaction involving commerce,' it is subject to the FAA") (citing 9 U.S.C. § 2); *Tompkins v. 23andMe, Inc.*, 2014 U.S. Dist. LEXIS 88068, at *14-15 (N.D. Cal. June 25, 2014) (stating that the FAA "applies to arbitration agreements in any contract affecting interstate commerce").  It is "beyond dispute that the FAA was designed to promote arbitration," and the "overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749; 1748 (2011).  The FAA embodies a "liberal federal policy favoring arbitration."  *Id.* at 1245 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "[D]oubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (quoting *Moses H. Cone*, 460 U.S. at 24-25).

     To enable the parties to a contract to obtain the benefit of an arbitration provision, the FAA permits a party to obtain an order compelling arbitration.  *See* 9 U.S.C. § 4.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.  If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms."  *Chiron Corp.*, 207 F.3d at 1130 (internal citations omitted).

     "[C]ourts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes, and the rules under which that arbitration will be conducted."  *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (original emphasis, internal quotations and alterations omitted).  Parties can agree that an arbitrator will determine whether a claim is arbitrable.  *See First Options of Chicago v. Kaplan*, 514 U.S. 938, 942-43 (1995).  "[I]f there is clear and unmistakable evidence

CROSS-DEFENDANTS' NOTICE OF JOINDER; MOT. TO COMPEL ARBITRATION AND STAY; MEMO. OF POINTS AND AUTHORITIES 15-CV-01503-WHO

1   that the parties intended that questions of arbitrability be decided by the arbitrator, the arbitrator

2   should decide those issues." *See Guidewire Software*, 2012 U.S. Dist. LEXIS 156363, at *9 (N.D.

3   Cal. Oct. 31, 2012) (citing *First Options*, 514 U.S. at 943-44).  Such evidence may include, as

4   here, a statement in the arbitration provision expressly reserving the question of arbitrability for

5   the arbitrator.  *See, e.g.*, *Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 71-72 (2010); *Momot v.*

6   *Mastro*, 652 F.3d 982, 988 (9th Cir. 2011).  It also may include incorporation of an arbitration

7   facility's rules and procedures that specify that arbitrability disputes shall be decided by an

8   arbitrator.  *See, e.g.*, *Oracle Am.*, 24 F.3d at 1074 ("Virtually every circuit to have considered the

9   issue has determined that incorporation of the [AAA's] arbitration rules constitutes clear and

10  unmistakable evidence that the parties agreed to arbitrate arbitrability").  Where the parties have

11  delegated the arbitrability determination to the arbitrator, a Court considering whether to compel

12  the parties to arbitrate considers only "whether the assertion of arbitrability is 'wholly

13  groundless.'"  *Qualcomm*, 466 F.3d at 1371 (applying Ninth Circuit and California law); *see also*

14  *Tompkins*, 2014 U.S. Dist. LEXIS 88068, at *17-18 (quoting *Qualcomm*).

15       "The Arbitration Act establishes that . . . any doubts concerning the scope of arbitrable

16  issues should be resolved in favor of arbitration, whether the problem at hand is the construction

17  of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."

18  *Chiron Corp.*, 207 F.3d at 1131 (quoting *Moses H. Cone*, 460 U.S. at 24-25); *see also Oracle*

19  *Am.*, 724 F.3d at 1072 (quoting *Moses H. Cone*).  Due to the strong federal policy favoring

20  arbitration, "the party resisting arbitration bears the burden of proving that the claims at issue are

21  unsuitable for arbitration."  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

22  **IV.    ARGUMENT**

23       **A.    Ripple Must Arbitrate Its Claims Against Mr. McCaleb**

24       The Court should enter an order compelling Ripple to arbitrate its claims against Mr.

25  McCaleb.  Under the FAA, the Court is "limited to determining (1) whether a valid agreement to

26  arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."

27  *Chiron Corp.*, 207 F.3d at 1130; *see also Davis v. CACH, LLC*, 2015 U.S. Dist. LEXIS 25088, at

28

CROSS-DEFENDANTS' NOTICE OF JOINDER;
MOT. TO COMPEL ARBITRATION AND STAY;
MEMO. OF POINTS AND AUTHORITIES
15-CV-01503-WHO

1    *6 (N.D. Cal. Mar. 2, 2015).  Here, there is no question that Ripple and Mr. McCaleb entered a

2    valid arbitration agreement, and Ripple has not asserted otherwise.  Moreover, by both express

3    statement in the arbitration provision and by incorporation of the JAMS Rules, the parties have

4    clearly and unmistakably demonstrated that they intend the arbitrator to determine the

5    arbitrability of the claims.  Where that delegation has been made the Court inquires only as to

6    whether arbitrability of the claims at issue is "wholly groundless."  *See Qualcomm*, 466 F.3d at

7    1371; *Tompkins*, 2014 U.S. Dist. LEXIS 88068, at *17-18 (quoting *Qualcomm*).

8         The arbitration provision is an express statement by the parties to the Agreement that

9    reserves "the determination of the scope or applicability of this agreement to arbitrate" for the

10   arbitrator.  Sett. Agmt., ¶ 11.  Such an express statement is clear and unmistakable evidence that

11   the parties intended for an arbitrator "to decide the threshold question of arbitrability."  *Momot*,

12   652 F.3d at 988.

13        Additionally, the arbitration provision incorporates the JAMS Rules.  *See* Sett. Agmt.,

14   ¶ 11 ("The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration

15   Rules and Procedures and in accordance with the Expedited Procedures in those Rules. Judgment

16   on the Award may be entered in any court having jurisdiction").  The JAMS Rules, in turn,

17   provide that "[j]urisdictional and arbitrability disputes, including disputes over the formation,

18   existence, validity, interpretation or scope of the agreement under which Arbitration is sought,

19   and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the

20   Arbitrator," who "has the authority to determine jurisdiction and arbitrability issues as a

21   preliminary matter."  JAMS Rules 11(b).  Where, as here, an agreement incorporates arbitration

22   association rules that permit the arbitrator to determine arbitrability, Courts require the parties to

23   submit the scope of the arbitration clause to the arbitrator.  *See Crook*, 2013 U.S. Dist. LEXIS

24   160705, at *16-17 (Orrick, J.); *Oracle*, 24 F.3d at 1074; *Wynn Resorts*, 497 Fed. App'x at 742

25   (parties' broad arbitration provision and incorporation of JAMS Rules "establish their clear and

26   unmistakable intent to submit the issue of arbitrability to arbitration").  Because the parties have

27   shown through both an express statement in the Settlement Agreement and incorporation of the

28

CROSS-DEFENDANTS' NOTICE OF JOINDER;
MOT. TO COMPEL ARBITRATION AND STAY;
MEMO. OF POINTS AND AUTHORITIES
15-CV-01503-WHO

1    JAMS Rules that they clearly and unmistakably intend for the arbitrator to determine the scope of

2    the claims' arbitrability, the Court only inquires whether Mr. McCaleb's assertion of arbitration is

3    "wholly groundless."  *See Qualcomm*, 466 F.3d at 1371; *Tompkins*, 2014 U.S. Dist. LEXIS

4    88068, at *17-18 (quoting *Qualcomm*).

5           The assertion of arbitrability here is, of course, not "wholly groundless," but well-

6    grounded in the language of the Settlement Agreement.  The Settlement Agreement *mandates*

7    arbitration in broad terms: "Any dispute, claim or controversy arising out of or relating to this

8    Agreement or the breach, termination, enforcement, interpretation or validity thereof, including

9    the determination of the scope or applicability of this agreement to arbitrate, *shall be determined*

10   *by arbitration* in San Francisco, California before one arbitrator."  Sett. Agmt., ¶ 11 (emphasis

11   added).  The provision relates to any claim related to the Settlement Agreement; *all* of the cross-

12   claims relate to or arise out of the Settlement Agreement, including claims for breach of the

13   contract and claims to enforce its provisions.

14          Paragraph 10, which permits the parties to seek certain relief from a Court in aid of

15   arbitration, does not preclude arbitration of the claims.  First, Paragraph 10 is not mandatory, nor

16   is it exclusive:  it does not state that actions seeking injunctive relief, for example, *must* be filed in

17   a court, or that an arbitrator is not empowered to hear certain types of claims or award certain

18   forms of relief.  Instead, Paragraph 11 applies to any and all disputes, claims or controversies

19   arising out of or relating to the Settlement Agreement.  Moreover, under the JAMS Rules,

20   incorporated into the Settlement Agreement, an arbitrator is permitted to "grant any remedy or

21   relief that is just and equitable and within the scope of the Parties' agreement, including, but not

22   limited to, specific performance of a contract or any other equitable or legal remedy."   Ardinger

23   Decl., Ex. A at 26 (JAMS Rule 24(c)).

24          Paragraph 11 specifically permits the parties to "seek[] *provisional remedies in aid of*

25   *arbitration* from a court of appropriate jurisdiction, as provided in Paragraph 10 herein," but the

26   Settlement Agreement in no way limits the reach of the arbitration provision.  *Id.* (emphasis

27   added).  Read together, Paragraphs 10 and 11 permit a party to obtain interim relief from a court

28

CROSS-DEFENDANTS' NOTICE OF JOINDER;
MOT. TO COMPEL ARBITRATION AND STAY;
MEMO. OF POINTS AND AUTHORITIES
15-CV-01503-WHO

1    "in aid of arbitration"; actual determination of the claims is committed to the arbitrator.[6]  *See id.*

2    (claims "shall be determined by arbitration").  While it is possible under the Settlement

3    Agreement for a claim to be arbitrated without seeking interim relief in a court, due to the

4    *mandatory* arbitration language, it is not possible for a claim to be determined without arbitration,

5    if one party invokes the right to arbitrate.  Because the parties chose to make arbitration of claims

6    relating to the Settlement Agreement mandatory, and because federal policy so strongly favors

7    arbitration, to the extent there is uncertainty—and Cross-Defendants submit there is not—the

8    Court should compel arbitration and permit the arbitrator, consistent with the Settlement

9    Agreement, to determine the scope of the arbitration.  *See Crook*, 2013 U.S. Dist. LEXIS 160705,

10   at *6 ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of

11   arbitration") (quoting *Simula, Inc.*, 175 F.3d at 721) (Orrick, J.).

12              **B.      <u>Ripple Is Equitably Estopped from Refusing to Arbitrate Its Claims Against</u>**

13                       **<u>Mr. Stephenson and Any As Yet Unnamed Cross-Defendants</u>**

14              The equitable estoppel doctrine permits Mr. Stephenson, to enforce the Settlement

15   Agreement's arbitration provisions, even though he (and any other Cross-Defendant named later)

16   is not a signatory to the Agreement.  A non-signatory's ability to compel arbitration is governed

17   by state contract law.  *See Arthur Andersen LLP*, 556 U.S. at 631.  There are two situations in

18   which California law applies equitable estoppel to prevent a signatory from avoiding arbitration

19   with a non-signatory.  First, where the plaintiff's claims "rely on the terms of the written

20

---

21   [6] Addressing a roughly similar arbitration provision, the Ninth Circuit found that "it was a
     rational interpretation of the agreement to say that the arbitrator could decide both equitable and
22   legal claims and that the provision for court jurisdiction on equitable matters was ancillary to the
     arbitration," and that the parties included language concerning a court's jurisdiction to hear
23   claims for equitable remedies as a means to "give themselves the ability to seek temporary
     equitable remedies in courts while arbitration was ongoing."  *Comedy Club, Inc. v. Improv West
24   Assocs.*, 553 F.3d 1277, 1285-86 (9th Cir. 2009).  The Court ruled that although the provision was
     "'capable of two different reasonable interpretations'" as to the arbitrability of equitable claims,
25   "[u]nder the federal presumption in favor of arbitration, because the arbitration agreement is
     ambiguous, it should be interpreted as granting arbitration coverage over 'all disputes' arising
26   from the [underlying contract]."  *Id.* at 1286 (internal citations omitted).  Even if the Court finds
     the Settlement Agreement's arbitration provision ambiguous, the strong presumption in favor of
27   arbitration—and the parties' determination that an arbitrator should decide whether claims are
     arbitrable—compels arbitration of Ripple's Cross-Complaint.

28

CROSS-DEFENDANTS' NOTICE OF JOINDER;
MOT. TO COMPEL ARBITRATION AND STAY;
MEMO. OF POINTS AND AUTHORITIES
15-CV-01503-WHO

1   agreement," or where "the claims are intimately founded in and intertwined with the underlying

2   contract," a non-signatory can compel arbitration.  *Murphy*, 724 F.3d at 1229 (quoting *Kramer*,

3   705 F.3d at 1126).  Second, a signatory cannot avoid arbitration "when the signatory alleges

4   substantially interdependent and concerted misconduct by the nonsignatory and another signatory

5   and the allegations of interdependent misconduct are founded in or intimately connected with the

6   obligations of the underlying agreement."  *Id.*  "The fundamental point [of permitting a non-

7   signatory to invoke equitable estoppel to compel arbitration] is that a party may not make use of a

8   contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by

9   defining the forum in which the dispute will be resolved."  *Boucher v. Alliance Title Co., Inc.*,

10   127 Cal. App. 4th 262, 266 (2d Dist. 2005).  Both of the equitable estoppel circumstances exist

11   here in connection with the claim against Mr. Stephenson, and the Court should issue an order

12   compelling Ripple to arbitrate with him.

13         The claim against Mr. Stephenson is that he tortiously interfered with the Settlement

14   Agreement.  *See* Dkt. No. 9, ¶¶ 100-105.  "Claims of tortious interference with contract are

15   particularly well suited for imposing equitable estoppel against the signatory:  But for the contract

16   containing the arbitration clause, there would be no breach and no claim for interference with the

17   contract."  *Goldman*, 173 Cal. App. 4th at 227, n.10; *see also Murphy*, 724 F.3d at 1231, n.7

18   ("We also note that many of the California cases permitting non-signatories to compel arbitration

19   under an equitable estoppel theory involve contract-based causes of action, such as tortious

20   interference or breach of contract").

21         Specifically, Ripple alleges that Mr. Stephenson was aware of the Settlement Agreement,

22   aware that the sales of the digital currency at issue "may constitute a breach of the Settlement

23   Agreement," but sold the currency although he "knew this sale violated the Settlement

24   Agreement."  Dkt. No. 9, ¶¶ 103-104.  Ripple also alleges that it "has been deprived of its rights

25   and benefits due under the Settlement Agreement" as a result of actions allegedly taken by Mr.

26   Stephenson.  *Id.*, ¶ 104.  Mr. Stephenson, of course, denies any wrongdoing, but the fact that

27   Ripple relies *exclusively* on the terms of the Settlement Agreement to assert its tortious

28

CROSS-DEFENDANTS' NOTICE OF JOINDER;
MOT. TO COMPEL ARBITRATION AND STAY;
MEMO. OF POINTS AND AUTHORITIES
15-CV-01503-WHO

1    interference claim against Mr. Stephenson compels Ripple to arbitrate that claim.

2          Furthermore, Ripple alleges that Mr. Stephenson's sale of digital currency "was directed

3    by [Mr.] McCaleb and was for [Mr.] McCaleb's benefit, in violation of the Settlement

4    Agreement." *Id.*, ¶ 104.  In this way, Ripple, a signatory to the arbitration provision, "alleges

5    substantially interdependent and concerted misconduct by the nonsignatory [Mr. Stephenson] and

6    another signatory [Mr. McCaleb]" in which the "allegations of interdependent misconduct are

7    founded in or intimately connected with the obligations of the underlying agreement," as any

8    alleged wrongdoing by Mr. Stephenson is only related to an alleged breach of Mr. McCaleb's

9    obligations under the Settlement Agreement.  *Murphy*, 724 F.3d at 1229; *see* Dkt. No. 9 at ¶ 104.

10   Ninth Circuit and California law clearly require Ripple to arbitrate its claim based on the

11   Settlement Agreement against non-signatory Mr. Stephenson.

12          **C.      The Court Should Stay the Cross-Complaint**

13         All of Ripple's cross-claims are subject to arbitration and the Court should therefore stay

14   adjudication of the Cross-Complaint pending the resolution of the arbitration proceedings.  *See* 9

15   U.S.C. § 3; *Concepcion*, 131 S. Ct. at 1748 (noting that section 3 "requires courts to stay

16   litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of

17   the agreement'").

18         //

19         //

20

21

22

23

24

25

26

27

28

CROSS-DEFENDANTS' NOTICE OF JOINDER;
MOT. TO COMPEL ARBITRATION AND STAY;
MEMO. OF POINTS AND AUTHORITIES
15-CV-01503-WHO

1

## V.      <u>CONCLUSION</u>

2

3        For the foregoing reasons, the Court should grant Jed McCaleb and Jacob Stephenson's

4   motion to compel Ripple to arbitrate its claims against Cross-Defendants, and stay the Cross-

5   Complaint pending the completion of the arbitration proceedings.

6        Dated: May 22, 2015            ORRICK, HERRINGTON & SUTCLIFFE LLP

7

8                                       By:  */s/ Gabriel M. Ramsey*
                                        GABRIEL M. RAMSEY

9

10                                      *Attorneys for Cross-Defendants*
                                        *Jed McCaleb and Jacob Stephenson*

11

12

13

OHSUSA:762209212.6

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROSS-DEFENDANTS' NOTICE OF JOINDER;
MOT. TO COMPEL ARBITRATION AND STAY;
MEMO. OF POINTS AND AUTHORITIES
15-CV-01503-WHO