1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3    Before The Honorable William H. Orrick, Judge

4

5    BITSTAMP, LTD.                    )
                                       )
6            Plaintiff,                )
                                       )
7    vs.                               ) No. C 15-01503-WHO
                                       )
8    RIPPLE LABS, INC., et al.,        )
                                       )
9            Defendants.               )
     _____)
10
                                  San Francisco, California
11                                Friday, May 22, 2015

12    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                RECORDING 3:07 - 3:38 = 31 MINUTES
13
     APPEARANCES:
14
     For Plaintiff:
15                                Farella, Braun & Martel, LLP
                                  235 Montgomery Street
16                                17th Floor
                                  San Francisco, California
17                                   94104
                             BY:  CHRISTOPHER C. WHEELER, ESQ.
18                           BY:  JESSICA K. NALL, ESQ.

19                                Law Office of George Frost
                                  2930 Magnolia Street
20                                Berkeley, California 94705
                             BY:  GEORGE FROST, ESQ.
21
     For Defendants:
22                                Goodwin Procter, LLP
                                  135 Commonwealth Drive
23                                Menlo Park, California 94025
                             BY:  GRANT P. FONDO, ESQ.
24                           BY:  NICOLE L. CHESSARI, ESQ.

25              (APPEARANCES CONTINUED ON NEXT PAGE.)

2

1  APPEARANCES:  (Cont'd.)

2  For Defendants:
                              Orrick, Herrington, Sutcliffe
3                             701 5th Avenue, Suite 5600
                              Seattle, Washington 98104
4                     BY:    PAUL F. RUGANI, ESQ.

5                             Gross, Belsky, Alonso, LLP
                              1 Sansome Street
6                             Suite 3670
                              San Francisco, California
7                               94104
                      BY:    ADAM C. BELSKY, ESQ.

8

9  Transcribed by:            Echo Reporting, Inc.
                              Contracted Court Reporter/
10                            Transcriber
                              echoreporting@yahoo.com
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1 <u>Friday, May 22, 2015</u>                                    <u>3:07 p.m.</u>

2                     P-R-O-C-E-E-D-I-N-G-S

3                          --oOo--

4          THE CLERK:  Calling civil matter 15-1503, Bitstamp

5 Limited versus Ripple Labs, Incorporated, et al.

6      Counsel, please come forward and state your appearance.

7          MR. RUGANI:  Good afternoon, your Honor.  Paul

8 Rugani of Orrick, Herrington and Sutcliffe, on behalf Mr.

9 McCaleb, Mr. Stephenson and Ms. Harris.

10          THE COURT:  Good afternoon.

11          MR. BELSKY:  Good afternoon, your Honor.  Adam

12 Belsky of Gross, Belsky, Alonso, on behalf of proposed

13 intervener, Stellar.

14          MS. NALL:  Good afternoon, your Honor.  Jessica

15 Nall and Chris Wheeler of Farella, Braun and Martel, on

16 behalf of Plaintiff and interpleader, Bitstamp.  And our

17 client contact is also here, George Frost.

18          THE COURT:  All right.

19          MR. FONDO:  Good afternoon, your Honor.  Grant

20 Fondo from Goodwin Procter for Ripple Labs.

21          MS. CHESSARI:  Good afternoon, your Honor.  Nicole

22 Chessari of Goodwin Procter on behalf of Ripple Labs.

23          THE COURT:  Good afternoon.

24      All right.  So I've read everything that I could find.

25 Let me tell you what my scattered conclusions are, and then

4

1   we can -- and then I'll hear from everybody who wants to be

2   heard from.

3        The first thing is, I'm going to keep the status quo in

4   place until I decide the preliminary injunction motion and

5   the motion to dismiss.  If arbitration is compelled, I'm

6   still left with the interpleader and the request for

7   injunctive relief, and Mr. Stephenson is not a party to the

8   arbitration agreement.

9        To decide the preliminary injunction and Bitstamp's

10  motion, I need to understand what the likelihood of success

11  of Ripple Labs' claim is.  It seems to me that Ripple Labs

12  is going to need some discovery to explore the relationship

13  control, between McCaleb and Stephenson, to establish the

14  likelihood of success.  So if those things are true, then I

15  think there are two rational choices.

16       The first one is, for me to require you to meet and

17  confer regarding the discovery that's actually needed for

18  the preliminary injunction and the timing, with the

19  protective order in place, and the ability to object to the

20  discovery.

21       Alternatively, the parties could stipulate to the

22  injunction and mutually agree to arbitrate.  As I said, I

23  don't think Mr. Stephenson can be compelled to do that, but

24  that seems to me to be the most efficient way of proceeding.

25  It wouldn't require me to give an advisory opinion by means

5

1  of a preliminary injunction order, and instead the

2  arbitrator would be able to address the merits directly.  It

3  wouldn't require the parties to brief that issue twice.  But

4  that -- those seem to me to be the two rational

5  alternatives.  There may be others.

6       And then finally, there's the issue of the bond.  At

7  the moment, I don't have a sense of how any party is going

8  to be injured through June 10th, and I think that's the

9  period of time that I would be thinking about a bond for.

10      So that's how I size up what I've got in front of me

11  and -- first, but Mr. Rugani maybe it's you.

12           MR. RUGANI:  Sure.  And maybe just a small

13  housekeeping matter, your Honor.  I'm not admitted in

14  California, we did move for pro hac vice admission

15  yesterday, I don't believe it's been granted yet, but if

16  your Honor allows me to speak, I'll go ahead and proceed.

17           THE COURT:  I allow you to speak.  Go ahead.

18           MR. RUGANI:  Great, thank you.

19      So, your Honor, I did want to comment first on your

20  comments about arbitration.  It is true that Mr. Stephenson

21  is not a party to the arbitration agreement.  He has however

22  invoked the arbitration agreement and sought to compel

23  arbitration under it -- under equitable estoppel theories --

24  on the basis that the claim against him arises out of the

25  agreement that contains the arbitration clause and is based

6

1  on it.

2      So --

3          THE COURT:  I said I read things, but I haven't

4  read that.  Have you filed a motion to compel arbitration?

5          MR. RUGANI:  Yes.  So I guess we should maybe set

6  the table for what's in front of you, just because there

7  were a few things that were filed today and probably not all

8  of which would have gotten to you.

9      So, as of this moment, there are five motions before

10 your Honor.  One is Bitstamp's motion to discharge, or for

11 voluntary dismissal.  One is Ripple's motion for preliminary

12 injunction.  And then there were three motions that were

13 filed today.  One was Stellar's motion to intervene.

14         THE COURT:  I saw that.

15         MR. RUGANI:  One was a motion to dismiss

16 Bitstamp's complaint and interpleader, which was filed on

17 behalf of the Defendants on my side, as well as Stellar.

18         THE COURT:  Saw that.

19         MR. RUGANI:  And then the final motion was a

20 motion to compel arbitration, as to Ripple's cross

21 complaint, which was filed by Mr. McCaleb and Mr.

22 Stephenson.

23         THE COURT:  Okay.

24         MR. RUGANI:  And so through that, Mr. Stephenson

25 has invoked arbitration.

1          THE COURT:  Okay.

2          MR. RUGANI:  Obviously it would be up for your

3  Honor to decide whether that indication is proper, we think

4  it is.  But the claim against Mr. Stephenson, if your Honor

5  grants our motion, would not be left in this court and would

6  not be left for your Honor to decide.  And I think that's an

7  important point, because what we think is really at the

8  heart of the case that's before you, is the dispute between

9  Ripple, on the one hand, and Mr. McCaleb and Mr. Stephenson

10 on the other hand.  That's a dispute between non-diverse

11 parties.  It's a simple state law breach of contract

12 dispute, and it's a dispute that is controlled by an

13 arbitration agreement.  And so we think that this is not the

14 right forum for that dispute to be heard for those two

15 reasons, both the jurisdictional reason and an arbitration

16 reason.

17     And so the idea of us --

18          THE COURT:  But if the interpleader is still

19 alive, then I have jurisdiction, and because of the

20 settlement agreement, they have the right to file an

21 injunction, right?

22          MR. RUGANI:  So the settlement agreement -- the

23 arbitration clause mandates that everything be arbitrated,

24 and the arbitration clause then says you can pursue

25 provisional remedies that are described in paragraph 10 in

8

1  the provisional remedies, and in those provisional remedies,

2  the language uses specific language.  It says "provisional

3  remedies in aid of arbitration" and then describes the

4  remedies, including injunctive relief in paragraph 10.

5       And so the way that we read that agreement is you can

6  pursue injunctive relief, but the injunctive relief has to

7  be in aid of some arbitration, and not in aid of litigating

8  your claims in a separate forum.  And they haven't made any

9  effort to start an arbitration.  If they had brought this

10 claim in arbitration, and sought an injunction from you in

11 aid of that arbitration, this would be a different

12 conversation, but that's not how it has been presented to

13 your Honor.

14      And so, as I was saying, the hesitation on our client's

15 point is, when we're very concerned about this being the

16 appropriate forum for this dispute to be heard, is

17 subjecting our clients to discovery, and particularly

18 discovery on a more expedited schedule than would normally

19 control cases before you, when they don't think they should

20 be here at all.

21      And so -- and moreover, we're not sure, although I am

22 certainly sensitive to your Honor's point of needing to

23 understand, potentially, the ownership and the control

24 question.  But the breadth of the discovery that's been

25 asserted against my clients, and without really any kind of

9

1  direct explanation of how this information or that

2  information is going to inform your decision on the motion

3  for preliminary injunction, would be relevant to how Ripple

4  opposes the motion for discharge, or pursues a preliminary

5  injunction, we think further makes the discovery improper.

6      And so our hesitation is -- and what I think we would

7  like additional guidance, and potentially additional thought

8  from your Honor on is, is whether or not we should be having

9  discovery at all at this point in time, and whether we

10 should figure out first did Bitstamp properly bring the

11 complaint in interpleader, or as it has now asked for,

12 should be voluntarily dismissed.  And if Bitstamp is

13 voluntarily dismissed, we think again all that leaves is a

14 state law breach of contract claim between nondiverse

15 parties that your Honor would not have jurisdiction over,

16 and you can resolve that question, we think, without

17 discovery.  And resolving that first then will shape the

18 table of where the dispute between Ripple and my clients is

19 going to end up, how that dispute is going to be litigated

20 or arbitrated, and what kind of information would be

21 exchanged between the parties in the course of resolving the

22 dispute.

23      THE COURT:  Mr. Fondo?

24      MR. FONDO:  Your Honor, I just have a question and

25 clarification.

1    So you had mentioned your three proposals, in a sense,

2 and one of them was relating to -- agree that everybody

3 would stipulate to an injunction.  Would that injunction

4 include no additional sales of XRP by Mr. McCaleb under the

5 settlement agreement?  Because part of our complaint

6 includes an injunction that says "he has way oversold his

7 XRP, and therefore we're seeking a relief to stop it"

8 essentially, so that he catches up.  So clarification is,

9 would that -- would that be part of the injunction?

10          THE COURT:  Well the only thing that I was

11 thinking about was what's in front of me right now, and so

12 maintaining the status quo until the determination could be

13 resolved.

14    So that particular thing, if you could reach agreement

15 on that, I think that would be lovely.  If you couldn't

16 reach agreement on that, then -- you know, maybe it doesn't

17 work.  I don't know whether that idea is an idea that makes

18 sense to people or not, but that's -- as I sit here and

19 think about what problems you have -- both have -- and a way

20 of making this more expeditious and less expensive for your

21 clients, it just seems to me that it ought to be in one

22 place.

23    And looking at the settlement agreement -- I haven't

24 looked at the motion to compel arbitration, but it seems

25 like it might be a good motion.  You may have reasons why

11

1 it's not, Mr. Fondo, but -- anyways.  So that's -- I don't

2 want to commit myself.

3          MR. FONDO:  Thank you, your Honor.  So we

4 obviously would disagree that it's going to be a successful

5 motion.  I think that the language in the agreement is

6 pretty straightforward and we are entitled to injunctive

7 relief.  We did not seek damages against Mr. McCaleb.  We

8 would agree the damages component of it is an arbitrable

9 issue.

10     So, your Honor, we think discovery should proceed.  We

11 obviously -- you know, there's a burden that we have to

12 meet.  We are entitled to get discovery to assist us in

13 meeting that burden.  We have done a pretty narrow job,

14 we've asked for two depositions, there's plenty of other

15 people we could have deposed, including Bitstamp, Stellar,

16 others, Ms. Harris.  We focused on the two primary actors in

17 this matter and we think that's pretty narrow, your Honor.

18     As far as the discovery request that we innovated in

19 our opposition papers, we're happy to meet and confer, and

20 the parties did talk a little bit about it before we got

21 here, to potentially narrow those.  I don't know that we'll

22 reach resolution, but I think it's helpful given your

23 Honor's on the case, or you do believe discovery should

24 proceed, I think we'll be able to -- probably resolve it,

25 and if not, probably submit something that's pretty narrow

12

1   about a scope of a disagreement as to how many -- you know,

2   what the scope of the documents are.

3            THE COURT:  So Mr. Rugani just said that I don't

4   need discovery to resolve Bitstamp's motion.  Speak to that.

5            MR. FONDO:  Well I think Bitstamp -- so we agree

6   -- we have no objection to Bitstamp being discharged.  They

7   are a typical interpleader plaintiff who files the action,

8   typically deposits the money, in this case it's frozen, and

9   then withdraws and lets the parties hammer it out.  So we

10  don't have an objection to that component, which is the

11  first request they made, which is for the discharge.  We

12  don't have an objection to that.  Our discovery is related

13  to the preliminary injunction.

14           THE COURT:  I thought I read that the reason for

15  the discharge was -- or the basis for the withdrawal of

16  their complaint in the first place was that they thought

17  they had the right to dispose of the stuff that you want to

18  somebody else, and so that has to be frozen somewhere, I

19  assume, for your client's benefit.

20           MR. FONDO:  Correct, your Honor.  I think what

21  they said was, they said one, we want to get out of -- we

22  are an interpleader, we want to get it, it's not our money,

23  nobody says it is.  The second thing is they asked for

24  permission to transfer it, at the time -- to get an order

25  from you to transfer it.  That's part of -- that's what

1 lead, in part, to the TRO, because there was a threat from

2 Stellar that legal action, et cetera, and Bitstamp was --

3 could not guarantee that they weren't going to transfer it

4 before your Honor heard.

5      So I don't think that -- their motion to withdraw is a

6 pretty straightforward motion.  I don't think anyone is

7 going to object to that, and that solves -- it's just one

8 little piece, which is they're now out of the lawsuit and

9 the lawsuit continues.  And that's very standard procedure

10 in these proceedings.

11           THE COURT:  Why do you need the discovery for --

12 to prevail in the preliminary injunction?

13           MR. FONDO:  Well, your Honor, a big issue in this

14 matter is control.  I mean you look at the facts that we

15 laid out, and they're quite suspicious.  I mean if your

16 Honor is ready to rule on that suspicion, we don't need it,

17 and if they're ready to stipulate that that's sufficient to

18 a preliminary injunction, then we don't need that discovery.

19 But if they're going to argue that a preliminary injunction

20 -- we haven't met our burden yet, and can't meet our burden,

21 then we are entitled to discovery.

22      If there are e-mails that say, hey, can you sell this

23 for me, I need to sell this.  I mean you look at the

24 transactions that took place, particularly the March 20

25 transaction, relating to Stellar, and the massive amount

14

1  that was sold of XRP, and then Stellar purchased, I think

2  there's a pretty good indication something was going on

3  there, your Honor, and it wasn't Mr. Stephenson's decision

4  that all of a sudden that Stellar was this great buy that I

5  want to purchase this -- these Stellars.

6      So we think we're entitled to look under the hood and

7  to see what actually happened.  What are the e-mails, what

8  were the requests, who is controlling the movement, where is

9  the money going?  Things of that nature.  There were prior

10  transactions too, that we believe were directed and

11  controlled by Mr. McCaleb, and we're entitled to that as

12  well.

13      (Audio malfunction from 3:22:25 - 3:22:32.)

14          THE COURT:  -- burdensome, is the discovery that

15  you sought and that I put in my TRO order.  How many XRP

16  accounts are we likely to have?  How many sales and

17  transfers of stuff?

18          MR. FONDO:  Well, your Honor, according to Mr. --

19  the Exhibit A to the settlement agreement, there aren't that

20  many XRP accounts at issue.  You're probably talking, I

21  think two -- two to three that he discloses that are his,

22  and then a couple of family members that have been disclosed

23  as theirs.  So I don't think we're talking about a lot of

24  XRP accounts.

25      Now, he may have -- I mean he was required to disclose

15

1  all but 200,000,000 XRP, and for the purpose of this motion,

2  I think the discovery relating to those XRP accounts is

3  probably sufficient, that are identified in Exhibit A.

4          THE COURT:  And with respect to the remainder of

5  the requests, how extensive is the discovery?

6          MR. FONDO:  I'm sorry, your Honor, could you

7  repeat that?

8          THE COURT:  With respect to the other four or five

9  categories, how extensive do you think that discovery is?

10          MR. FONDO:  I don't -- I don't assume it's that

11  extensive.  Let me clarify one thing, your Honor, on the

12  preceding question that you had.

13      There's -- the accounts that are mentioned in the

14  various papers, for example the R3Q (phonetic) accounts, et

15  cetera, that's part of what we're including about that

16  should be part of the discovery process.

17      As far as the other categories, the bank records, I

18  think we're entitled to see where all of the money flows,

19  from the prior two sets of transactions, that there was a

20  flow of XRP through Mr. Stephenson, through another account,

21  that were -- that started as legacy accounts for Mr.

22  McCaleb, those XRP went somewhere and the money went

23  somewhere.  We're entitled to see where that money went,

24  your Honor.  We're entitled to see if there is financial

25  transactions between Mr. McCaleb and Mr. Stephenson, or Ms.

16

1 Harris and Mr. Stephenson.

2     So I don't know how many bank account he's holding.  He

3 may have one, he may have 100, I don't know.  Mr. McCaleb

4 may have one gateway account, he may have 100.  Again, I

5 don't know.  If they're willing to represent, hey, we've got

6 100, here they are and here's why you only need five, I'm

7 absolutely happy to have that discussion.  But I don't

8 pretend to know every financial institution that Mr. McCaleb

9 or Mr. Stephenson transacts with.

10          THE COURT:  Mr. Rugani, before I let anybody else

11 say whatever they want to say, why is this discovery --

12 you're quite concerned about the breadth of the discovery, I

13 think.

14          MR. RUGANI:  Yes, your Honor.

15          THE COURT:  So explain to me what -- where I find

16 the breadth in this.

17          MR. RUGANI:  So some requests more so than others.

18     One in particular that stood out to us -- so Mr.

19 McCaleb is a board member of Stellar, and they've asked for

20 all of Mr. McCaleb's communications with anybody at Stellar,

21 about STR, the digital currency that's related to Stellar,

22 and what they have described as a Stellar auction.  That's

23 an incredibly broad request into business communications for

24 an individual in a separate business that has only a very

25 tangential relationship to --

17

1          THE COURT:  Okay, I hear you.

2          MR. RUGANI:  -- this organization.

3      Similarly, they had asked for all communications among

4  the individuals at issue about any kind of digital currency

5  exchange, any kind of gateway account, broad requests that

6  really go beyond -- what I think I heard Mr. Fondo say was

7  -- the focus of the understanding, which is ownership and

8  control related to these specific transactions.

9      As I said before, we're concerned about -- just from a

10  procedural matter, with the jurisdictional and the

11  arbitration concerns about having any discovery in this

12  court, but if your Honor was to nonetheless order us to go

13  forward with discovery, if it was limited in some way just

14  to the specific questions that Mr. Fondo -- I heard him say

15  were important to the motion -- which is who owned or

16  controlled the accounts that are the -- that made the sales,

17  that are described in Bitstamp's complaint, I think then we

18  can have, potentially, a meaningful discussion about that.

19  But it's hard for us to see why anything other than that

20  question is relevant to what your Honor would have to

21  decide, even taking the broad view of what your Honor has to

22  decide on Bitstamp's motion.  And I agree with Mr. Fondo

23  that your Honor does not need any discovery to resolve the

24  motion that Bitstamp has brought.

25          THE COURT:  Ms. Nall, you're here, do you want to

18

1  say anything?

2          MS. NALL:  Your Honor, you'll notice we're

3  standing off on the side here, and I think --

4          THE COURT:  That was my favorite place to stand

5  when I was in private practice.

6          MS. NALL:  Well we think that's especially

7  appropriate here, because obviously as a plaintiff just in

8  the interpleader, you know, we really don't have a dog in

9  this fight.  We don't need to be in this fight anymore and

10 we certainly want to be discharged from it, or to

11 voluntarily dismiss it.  But in the case where -- of course

12 the reason it was filed to begin with was for fear of

13 litigation by these parties, and we would prefer not to be

14 in a position where at the end of that, we are faced with

15 litigation by the parties.  So we are just seeking a way out

16 of it that just keeps our client whole and without that

17 threat.

18         THE COURT:  Mr. Belsky, do you have anything you'd

19 like to add to the proceedings?

20         MR. BELSKY:  First, just on the bond issue, your

21 Honor, if you'd like to revisit that.

22     Stellar is a small nonprofit foundation, and having

23 $1,000,000 tied up significantly impacts its ability to

24 carry out its programs.  So we think that there should be a

25 bond in place.

19

1        THE COURT:  And the -- tell me what that impact

2   is.

3        MR. BELSKY:  Loss of use of money.

4        THE COURT:  Okay.

5        MR. BELSKY:  It is a lot of money.

6        THE COURT:  It is.  But we're talking about

7   between now and June 10th.

8        MR. BELSKY:  Daily interest on a million dollars.

9        THE COURT:  All right.  Okay.  Thank you.

10       MR. FONDO: Your Honor, may I ask a clarification?

11  So you mentioned June 10th, is it your position at that time

12  that you're going to evaluate whether to release the funds

13  on June 10th?  Or was it July 1st?

14       THE COURT:  We've got a hearing on June 10th,

15  right?

16       MR. FONDO:  Your Honor, we would -- so then maybe

17  I misunderstood, your Honor, because I do think that we need

18  to get -- we have a preliminary injunction motion that

19  relates, in part, to keep that money tied up.

20       THE COURT:  Right.

21       MR. FONDO:  So if your Honor is contemplating

22  releasing those funds at that time, then we would want the

23  discovery on a more expedited basis.  We think that's

24  unnecessary, we can push it off to July 1st, but I wanted to

25  raise that issue.

1          THE COURT:  So the -- what I think you ought to do

2    -- does anybody else want to say anything before I launch

3    into what I think?

4          (No response.)

5          THE COURT:  What I think you ought to do is to

6    have a more realistic discovery period.  I am going to

7    require discovery.  I do think it's pertinent to the issues

8    that I've got to address.  I don't -- I think you can do it

9    less broadly than what I've ordered and I'm going to require

10   you to sit down, when I leave the bench, and figure out what

11   that discovery should look like.  I think that it ought to

12   be done on a -- in a timely, but not emergency-like basis,

13   and what schedule you decide it ought to go on is fine by

14   me.

15        The -- it seems to me that unless everybody wants to

16   stipulate that Bitstamp can leave the party with the

17   injunction in place until a determination is made, that we

18   push both of the motions until -- it would be heard on the

19   same day, whatever that day is that the parties agree to.

20   That's what makes sense to me.  And I'll order it

21   eventually, but I want to make sure that I've heard

22   everybody's perspective on this before I do that.

23          MR. FONDO:  That's fine with us.  The parties had

24   started to meet and confer a little bit before we met today

25   and we're happy, given some of the additional guidance your

1  Honor provided, we're happy to try to hammer it out today.

2          MR. RUGANI:  Your Honor, maybe just one last try

3  at this?

4          THE COURT:  Yes.

5          MR. RUGANI:  Potentially, and I would have to get

6  client authority, because this would resolve potentially

7  tying up the funds a little bit longer than is currently

8  contemplated, but assuming that we got that, one approach

9  could be to put the preliminary injunction off until after

10 your Honor decides the motion to compel arbitration and the

11 motion to dismiss the complaint and interpleader that we

12 filed, since those will be the threshold gating questions

13 about where the case proceeds.  And if our clients agree to

14 this, and I think they might, although as I said I don't

15 have authority on it, if we keep the hold on the money in

16 place at least until after those questions are resolved,

17 that would prevent the parties from undergoing the time and

18 expense of doing discovery until we figure out where the

19 case belongs.

20         THE COURT:  So you think that because Mr.

21 Stephenson has joined this -- well we still have the -- we

22 still have the live interpleader, which I imagine -- well, I

23 don't know.  What's Ripple Labs' position going to be with

24 respect to the interpleader if the jurisdictional issue is

25 at play?

1          MR. FONDO:  Well your Honor, I think the

2   interpleader can proceed.  I think that the -- just because

3   they are discharged from the case does not change the

4   jurisdiction issues.

5          THE COURT:  I'm happy -- I'm supposed to look at

6   jurisdiction first, and I'm happy to look at those

7   jurisdictional issues, but I don't -- I really don't see why

8   this all shouldn't proceed apace, and I'm happy to look at

9   the motion to compel arbitration on an expedited basis, if

10  you think that's an appropriate thing to do.

11         MR. RUGANI:  We understand your Honor's position.

12  I think Mr. Fondo and I can have some conversations now

13  about what the schedule is going to look like, including

14  potentially that issue.

15          THE COURT:  All right.

16         MR. BELSKY:  You know, discovery is going to be

17  expensive and real burden, and I think resolving the

18  jurisdictional questions first, because normally there's no

19  jurisdiction for this dispute.

20      If they wanted an injunction, if they want provisional

21  relief in aid of arbitration, they would have had to go to

22  state court to get it, not federal court.  It's only because

23  of the existence of this interpleader action, which our

24  position, and the individual defendant's position is going

25  to be, that discharge is improper because of collusion

23

1 between Bitstamp and Ripple.  We believe that voluntary

2 dismissal is appropriate, but not discharge of Bitstamp.

3       So I think it's in everybody's interest to get all of

4 that resolved and find out where the case should be before

5 discovery proceeds.

6            THE COURT:  Well if your argument is based on some

7 sort of collusion, then it seems to me that discovery is

8 going to be necessary on that issue, and you're going to end

9 up here a lot longer than you want to be.  So -- and it's

10 going to be more expensive, and it will do all of the things

11 that I think the parties realistically would want to avoid.

12 So I'm not sure that that's such a great idea, Mr. Belsky.

13       So, here is what I'm going to do.  I am going to keep

14 the injunction in place.  I am going to require the parties

15 now to meet and confer, with respect to the documents, and

16 with respect to a schedule that makes sense to them.  If you

17 are unable to reach agreement on some parts of that, you can

18 send me a joint five-page letter that outlines what the

19 disagreement is and I will decide it.

20       The -- at the moment, we have the -- I think I will

21 take the June 10th hearing off calendar, because of the

22 discovery issues.  It wouldn't make any sense to try to

23 force the discovery.

24       Ms. Null?

25            MS. NULL:  Yes, actually we just wanted to comment

1 quickly on the June 10th date.  Obviously we would like to

2 have the discharge considered as soon as possible, just

3 because the longer we have to be dragged into this dispute,

4 the more -- the flurry of filings on a Friday afternoon, the

5 more costs to our client, and we just would like to try to

6 see about an earlier exit.  So June 10th was something we

7 were really hoping to hold, if we could, at least for the

8 discharge.

9           MR. WHEELER:  Your Honor, if I may add -- Chris

10 Wheeler.  The discovery that we've heard discussed is

11 discovery that relates to the preliminary injunction, not to

12 the discharge motion.  And so from a scheduling perspective,

13 we see no reason why the discharge can't proceed as ordered

14 last week.

15           THE COURT:  All right.

16      And, Mr. Fondo, do you have a perspective one way or

17 the other?

18           MR. FONDO:  I don't have an objection, your Honor,

19 to that.

20           THE COURT:  Okay.  We'll leave -- we'll leave that

21 on for June 10th then, and if the parties want to stipulate

22 to something, with respect to Bitstamp, that is also fine

23 with me.

24           MS. NULL:  Fine with us as well.  Thank you, your

25 Honor.

25

1    THE COURT:  Certainly.  And then the scheduling on

2  the motion to compel arbitration should at least be at the

3  same time as the preliminary injunction motion.  I think it

4  probably -- that's where it probably belongs.

5    So have I now covered everything that I need to cover?

6  Is there any dangling issue that we ought to resolve at the

7  moment?

8    MR. FONDO: I don't believe so, your Honor.

9    THE COURT:  So let it be so.  Have a good Memorial

10  Day weekend, but before you have a good Memorial Day

11  weekend, resolve the discovery and scheduling issues and let

12  me know what you stipulate to.

13    ALL:  Thank you, your Honor.

14    (Proceedings adjourned at 3:38 p.m.)

15

16

17

18

19

20

21

22

23

24

25

26

1                    CERTIFICATE OF TRANSCRIBER

2

3       I certify that the foregoing is a true and correct

4  transcript, to the best of my ability, of the above pages of

5  the official electronic sound recording provided to me by

6  the U.S. District Court, Northern District of California, of

7  the proceedings taken on the date and time previously stated

8  in the above matter.

9       I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14

15

16           Echo Reporting, Inc., Transcriber

17              Wednesday, May 27, 2015

18

19

20

21

22

23

24

25