1   Jessica Nall (State Bar No. 215149)
    jnall@fbm.com
2   Christopher C. Wheeler (State Bar No. 224872)
    cwheeler@fbm.com
3   Farella Braun + Martel LLP
    235 Montgomery Street, 17th Floor
4   San Francisco, CA  94104
    Telephone:  (415) 954-4400
5   Facsimile:  (415) 954-4480

6   Attorneys for Bitstamp Ltd.

7

8                      UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12   BITSTAMP LTD., a foreign company,          CASE NO. 3:15-cv-1503 WHO

13              Plaintiff,                       **[REDACTED] REPLY IN SUPPORT OF
                                                 BITSTAMP'S MOTION FOR AN ORDER
14        vs.                                    OF DISCHARGE**

15   RIPPLE LABS INC., a California
     Corporation, JACOB STEPHENSON, an          Date:        June 10, 2015
16   individual, NANCY HARRIS, an               Time:        2:00 p.m.
     individual, JED MCCALEB, an individual,    Judge:       Hon. William H. Orrick
17   and DOES 1 Through 10, Inclusive,          Courtroom:   12, 19th Floor

18              Defendants.

19   ─────────────────────────────────
     RIPPLE LABS INC., a California
20   Corporation,

21              Cross-Plaintiff,

22   vs.

23   JED MCCALEB, an individual,  JACOB
     STEPHENSON, an individual, and DOES
24   1 Through 10, Inclusive,

25              Cross-Defendants.

26

27

28        **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................. 1

I.    BITSTAMP HAS NO INTEREST IN THE DISPUTED FUNDS OR IN THIS
      LITIGATION .......................................................................................................................... 2

II.   BITSTAMP EASILY SATISFIES THE "NECESSARILY LOW" THRESHOLD
      FOR GOOD FAITH ............................................................................................................... 3

      A.    Ripple's Claim To "Sole Interest" In The Disputed Funds And
            Accompanying Threats Satisfy The "Necessarily Low" "Minimum
            Threshold Level Of Substantiability." ..................................................................... 5

      B.    Ripple's Accusation That Bitstamp May Be Assisting McCaleb in
            "Secretly Funnel[ing]" Proceeds Raises Additional, Potential Claims By
            Others, Including The Government .......................................................................... 6

      C.    Bitstamp Was Not Required To Adjudicate The Merits Of Ripple's Claim
            To "Sole Interest" In The Disputed Funds .............................................................. 8

III.  STELLAR AND THE MCCALEB DEFENDANTS' "COLLUSION" THEORY
      IS IRRELEVANT AND ILLOGICAL ................................................................................ 10

      A.    Stellar And The McCaleb Defendants' Ad Hominem Attack On One Of
            Bitstamp's Lawyers Is Irrelevant As Well As Factually And Legally
            Unsupported ......................................................................................................... 12

      B.    There Is No Basis For Discovery, Which The McCaleb Defendants Have
            Already Admitted Is Not Necessary And Which Would Defeat The
            Purpose Of Interpleader ....................................................................................... 14

      C.    McCaleb/Stellar Cannot Avoid Discharge By Threatening Counterclaims
            Based On Bitstamp's Freezing The Disputed Funds ............................................ 15

CONCLUSION ................................................................................................................................ 15

## **TABLE OF AUTHORITIES**

**FEDERAL COURT CASES**

Page

*A/S Krediit Pank v. Chase Manhattan Bank,*
  155 F. Supp. 30 (S.D.N.Y. 1957) ............................................................................ 6

*Bierman v. Marcus,*
  246 F.2d 200, 202 (3rd Cir. 1957) ................................................................... 9, 11

*Companion Life Ins. Co. v. Schaffer,*
  442 F. Supp. 826 (S.D.N.Y. 1977) ..................................................................... 14, 15

*Connecticut General Life Ins. Co. v. New Images of Beverly Hills,*
  321 F. 3d 878 (9th Cir. 2003) .............................................................................. 9

*First Interstate Bank of Oregon, N.A. v. U.S. By and Through I.R.S.,*
  891 F. Supp. 543 (D. Or. 1995) ....................................................................... 3, 9

*Herman Miller, Inc. Retirement Income Plan v. Magallon,*
  2008 WL 2620748 (E.D. Cal. July 2, 2008) ......................................................... 2

*Hunter v. Fed. Life Ins. Co.,*
  111 F.2d 551 (8th Cir. 1940) ............................................................................. 15

*John Hancock Mut. Life Ins. Co. v. Beardslee,*
  216 F.2d 457 (7th Cir. 1954) .............................................................................. 6

*Johnson v. Couturier,*
  572 F. 3d 1067 (2009) ...................................................................................... 9

*Lee v. West Coast Life Ins. Co.,*
  688 F.3d 1004 (9th Cir. 2012) ....................................................................... 9, 15

*Mack v. Kuckenmeister, CPA,*
  619 F.3d 1010 (9th Cir. 2010) ....................................................................... 4, 6, 8

*Mendez v. Teachers Ins. & Annuity Ass'n & College Ret. Equities Fund,*
  982 F.2d 783 (2nd Cir. 1992) ............................................................................ 11

*Michelman v. Lincoln National Life Ins. Co.,*
  685 F.3d 887 (9th Cir. 2012) ...................................................................... *passim*

*Partex Apparel Int'l LTDA S.A. de C.V. v. GFSI, Inc.,*
  No. 10-2678, 2012 U.S. Dist. LEXIS 42267 (D. Kan. Mar. 28, 2012) .................. 10

*Pos-A-Traction, Inc. v. Kelly-Springfield Tire Company,*
  112 F. Supp. 2d 1178 (C.D. Cal. 2000) ................................................................ 9

*Prudential Ins. Co. of America v. Hovis,*
  553 F.3d 258 (3rd Cir. 2009) ............................................................................. 15

*Schirmer Stevedoring Co., Ltd. v. Seaboard Stevedoring Corp.,*
  306 F.2d 188 (9th Cir.1962) .............................................................................. 15

*Sotheby's, Inc. v. Garcia,*
   802 F. Supp. 1058 (1992) ................................................................................... 12

*State Farm Fire & Cas. Co. v. Tashire,*
   386 U.S. 523 (1967) ........................................................................................... 3

*Trustees of the ILWU-PMA Pension Plan v. Coates,*
   2013 WL 556800 (N.D. Cal. Feb. 12, 2013) ...................................................... 2

*U.S. v. Faiella,*
   39 F. Supp. 3d 544 (S.D.N.Y. 2014) ................................................................. 7

*Wells Fargo Bank v. Paccar Financial Corp.,*
   2009 WL 211386 (E.D. Cal. Jan. 28, 2009) ....................................................... 2

### STATE COURT CASES

*B.L. Metcalf Gen. Contractor, Inc. v. Earl Erne Inc.,*
   212 Cal. App. 2d 689 (1963) ............................................................................. 9

*Oasis West Realty, LLC v. Goldman,*
   51 Cal. 4th 811 (2011) ...................................................................................... 12

*Sharabianlou v. Karp,*
   181 Cal. App. 4th 1133 (2010) .......................................................................... 9

### FEDERAL STATUTORY AUTHORITIES

18 U.S.C.
   §981(a)(1)(A) ..................................................................................................... 7
   §1956(a)(1)(B) ................................................................................................... 6

### STATE STATUTORY AUTHORITIES

Cal. Civ. Proc. Code
   § 481.010 et seq ................................................................................................. 9

### FEDERAL RULES AND REGULATIONS

Fed. R. Evid.
   801 and 802 ...................................................................................................... 13

### TREATISES

4 James Wm. Moore, *Moore's Federal Practice,*
   §22.03[1][c] (3d ed. 1997) ................................................................................. 4

### ADDITIONAL AUTHORITIES

Rachel Abrams, *et al.*, *Erosion of Faith Was Death Knell for Mt. Gox,*
   New York Times (Feb. 28, 2014) ....................................................................... 5

Michael A. Mancusi, *Virtual Currencies: FinCEN's Next Enforcement Wave?,*
   Law360 (June 4, 2015) ....................................................................................... 5

Wright, Miller & Kane, Federal Practice & Procedure: Civil
    3d § 1702 (2001) ............................................................................................................ 9

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Bitstamp filed this interpleader action because it was faced with actual and potential competing claims to Disputed Funds to which it lays no claim. No party has alleged that any misconduct by Bitstamp created these competing claims. Indeed, recognizing the competing claims to the Disputed Funds, Proposed-Intervenor Stellar Development Foundation ("Stellar") and Defendants Jacob Stephenson ("Stephenson"), Nancy Harris, and Jed McCaleb ("McCaleb") (collectively, the "McCaleb Defendants") have stipulated to the relief sought in Defendant Ripple Labs Inc.'s ("Ripple") Motion for a Preliminary Injunction and *agreed* that "the Disputed Funds shall remain deposited with the Court until the final resolution of this case or further order of the Court." (Docket No. 55) at 2. There can be no serious dispute that this interpleader action was proper.

This action arose because Ripple claimed a "sole interest" in the Disputed Funds held in a Ripple account ostensibly "being claimed by Jacob Stephenson or others" but allegedly "controlled by Mr. Stephenson's cousin, [Jed] McCaleb." Ripple also informed Bitstamp that McCaleb—a notorious figure in the digital currency community—was "using Bitstamp to secretly funnel" proceeds. Bitstamp had no independent knowledge regarding who actually owned or controlled the Disputed Funds. ███████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████ Bitstamp came to this Court with its plea of interpleader in light of the ███████████████████████████████████████████████ intense regulatory scrutiny of the digital currency space, █████████████████████ ███████████████████████████████████████████████ ██████████████████████████

The actual and potential competing claims to the Disputed Funds easily satisfy the "necessarily low" "minimal threshold level of substantiality" required for good faith. *Michelman v. Lincoln National Life Ins. Co.,* 685 F.3d 887, 895 (9th Cir. 2012). Indeed, Since filing its interpleader, Bitstamp's fears have been realized: a new claimant has surfaced— Stellar—and all claimants continue to threaten Bitstamp with litigation. In light of these

1   continuing threats, Bitstamp withdraws its request for voluntary dismissal.

2   　　　　The Court should disregard the attempt of the McCaleb Defendants and Stellar

3   (collectively, "Stellar/McCaleb") to manufacture questions regarding the "legitimacy of

4   Bitstamp's motives." McCaleb/Stellar's Response to Bitstamp's Discharge Motion (Docket No.

5   52) ("Opp.") at 2. This is a sideshow. Bitstamp filed this action, consistent with its AML/anti-

6   fraud procedures in the context of the criminal investigation of McCaleb, to avoid being

7   embroiled in litigation resulting from actual and potential competing claims to the Disputed

8   Funds. McCaleb/Stellar cite no authority holding that "the legitimacy of [an interpleader]'s

9   motives" is relevant to discharge. Consistent with black-letter interpleader law, Bitstamp should

10  be dismissed and discharged of any liability in connection with the Disputed Funds.[1] *Wells

11  Fargo Bank v. Paccar Financial Corp.*, 2009 WL 211386, at *2 (E.D. Cal. Jan. 28, 2009) ("If an

12  interpleading plaintiff has no interest in the stake, the plaintiff should be dismissed").

13  **I.　　BITSTAMP HAS NO INTEREST IN THE DISPUTED FUNDS OR IN THIS
14  　　　　LITIGATION.**

15  　　　　None of the facts demonstrating Bitstamp's entitlement to a discharge are in serious

16  dispute. Bitstamp lays no claim to the Disputed Funds. Rather, Ripple and, apparently now,

17  Stellar, have made conflicting claims to the Disputed Funds. *See, e.g.*, Ripple's *Ex Parte* TRO

18  Application (Docket No. 23) ("Ripple TRO") at 11; Stellar Motion to Intervene (Docket No. 39)

19  at 2. (As discussed below, it is presently unclear whether Jacob Stephenson lays claim to the

20  Disputed Funds.)

---

22  [1] Consistent with Bitstamp's Complaint (Prayer, ¶39) and the practical effect of a discharge order,
    Bitstamp respectfully requests that the Court issue an injunction enjoining any claimant to the
23  Disputed Funds from commencing any action, in either state of federal court, against Bitstamp
    related to the Disputed Funds. Bitstamp would be irreparably harmed by any such action because
24  it would be forced to participate in yet another litigation in connection with funds to which
    Bitstamp lays no claim. Because "an interpleader action would be futile if claimants were
25  allowed to file separate suits against the claim holder" (*Herman Miller, Inc. Retirement Income
    Plan v. Magallon*, 2008 WL 2620748, *3 (E.D. Cal. July 2, 2008)), courts routinely grant such
26  injunctive relief to disinterested interpleaders such as Bitstamp. *See, e.g.*, *Trustees of the ILWU-
    PMA Pension Plan v. Coates*, 2013 WL 556800 (N.D. Cal. Feb. 12, 2013); *First Interstate Bank
27  of Oregon, N.A. v. U.S. By and Through I.R.S.*, 891 F. Supp. 543, 548 (D. Or. 1995) ("the
    injunctive relief sought by [bank] [enjoining all parties from commencing any other action against
28  it concerning the disputed funds] is generally contemplated in interpleader actions").

---

1       Both Ripple and Stellar have repeatedly threatened to sue Bitstamp in connection with

2   Bitstamp's potential disposition of the Disputed Funds. *See, e.g.*, Ripple TRO App. at 15 ("By

3   transferring the Disputed Funds to McCaleb and Stellar, Bitstamp not only exposes itself to

4   potential civil liability to Ripple Labs…but may even face potential regulatory or criminal

5   exposure for doing so"); Opp. at 17 (threatening "counterclaims against Bitstamp for, among

6   other things: (1) conversion; (2) breach of contract; and (3) unfair business practices").

7       Yet the parties to this litigation acknowledge that this dispute is between them and does

8   not involve Bitstamp. May 22, 2015 Tr. 7:7-10 ([Counsel for the McCaleb Defendants]: "what

9   we think is really at the heart of the case that's before you, is the dispute between Ripple, on the

10  one hand, and Mr. McCaleb and Mr. Stephenson on the other hand"); *id.* at 12:6-9 ([Counsel for

11  Ripple]: Bitstamp is "a typical interpleader plaintiff who files the action, typically deposits the

12  money, in this case it's frozen, and then withdraws and lets the parties hammer it out").

13      In short, this action is the archetype of an interpleader by a disinterested party who, facing

14  conflicting claims to disputed funds in which the interpleader has no interest, should be

15  discharged. *See, e.g., First Interstate Bank of Oregon, N.A.*, 891 F. Supp. at 547-48.

16  **II.    BITSTAMP EASILY SATISFIES THE "NECESSARILY LOW" THRESHOLD
           FOR GOOD FAITH.**

17

18      Standing alone, either (1) Ripple's claim to "sole interest" in the Disputed Funds or (2)

19  Ripple's accusation that Bitstamp, were it to process the transaction, would be assisting McCaleb

20  in "secretly funnel[ing]" proceeds, would satisfy the "necessarily low" good faith threshold. "The

21  Supreme Court has emphasized that interpleader is a remedial device which is to be applied

22  liberally." *First Interstate Bank of Oregon*, 891 F. Supp. at 546-47 (citing *State Farm Fire &*

23  *Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967)). Accordingly, "[t]he threshold to establish good

24  faith is *necessarily low* so as not to conflict with interpleader's pragmatic purpose, which is for

25  the stakeholder to protect itself against the problems posed by multiple claimants to a single

26  fund." *Michelman*, 685 F.3d at 894 (emphasis added) (internal quotations omitted); *accord*

27  McCaleb/Stellar Motion To Dismiss (Docket No. 39) at 4 (good faith requirement "is a low

28  threshold that is often met"). "In most cases, it is not difficult for the stakeholder to meet the

1   requirement of a reasonable or good faith fear of multiple litigation, and courts appear to require

2   merely that the stakeholder's concern in this regard be more than conjectural." 4 James Wm.

3   Moore, *Moore's Federal Practice* §22.03[1][c] (3d ed. 1997). Instead, "the stakeholder is

4   required to demonstrate that the adverse claim has a minimal threshold level of substantiability,"

5   which may exist even though only one person has filed a claim and may exist so long as one

6   claimant "has not actually disclaimed his right to the funds." *Mack v. Kuckenmeister, CPA*, 619

7   F.3d 1010 (9th Cir. 2010) (citations omitted); *Michelman*, 685 F. 3d at 894.

8        The context in which Bitstamp filed this interpleader action leaves no doubt regarding

9   Bitstamp's good faith. By letters dated March 26 and March 30, Ripple claimed "sole interest" in

10  the Disputed Funds held in Ripple account "r3Q," informed Bitstamp that Ripple had sent the

11  purchase funds to the "r3Q" account ostensibly "being claimed by Jacob Stephenson or others"

12  and that the funds therefore belonged to Ripple, and demanded their "immediate transfer" back to

13  Ripple.[2] Reply Declaration of Jean-Baptiste Graftieaux in Support of Bitstamp's Discharge

14  Motion ("Graftieaux Decl."), ¶¶9-15, Exs. C & E. Ripple concluded its March 26 letter with the

15  following threat: "Should Bitstamp fail to respond by the specified time, or if it refuses to comply

16  with this demand, Ripple will seek all legal remedies available to it against Bitstamp and others."

17  Ex. E at 2. Ripple further informed Bitstamp that Ripple account "r3Q" was "purportedly

18  controlled by Jacob Stephenson, but [] Ripple has evidence [that it] is in fact being controlled by

19  Mr. Stephenson's cousin, Mr. McCaleb, and is being used by Mr. McCaleb to funnel his XRP for

20  sale." *Id.* at 1. Ripple indicated that McCaleb was manipulating "r3Q": "We believe that this

21  sale was at the direction of and for the benefit of Mr. McCaleb." *Id.* Ripple further suggested

22  that, by effectuating the transaction, Bitstamp may be assisting McCaleb in perpetrating a fraud:

23  McCaleb "is using Bitstamp to secretly funnel the proceeds of [a] sale" of 89,999,900 XRP using

24  the account of Jacob Stephenson. *Id.*

25

26  [2] Although Ripple's March 26 letter referenced $75,000 held by "r3Q," Ripple's March 30 letter
    referenced an additional $963,000 "being claimed by Jacob Stephenson *or others*." Graftieaux

27  Decl. Ex. E (emphasis added). Ripple made demand on these additional funds "for the reasons
    set forth in [Ripple's March 26] letter" (*id.*)—*i.e.*, Ripple's asserted "sole interest." Bitstamp

28  refers to this approximately $1,038,000 as "the Disputed Funds."

1    Although Bitstamp had no independent knowledge of who owns or controls Ripple

2    account "r3Q" (or any other Ripple account) (Graftieaux Decl. ¶¶3,11), McCaleb is a notorious

3    figure in the virtual currency community.  McCaleb is the founder of Mt. Gox—a Bitcoin

4    exchange based in Tokyo that filed for bankruptcy in early 2014 claiming it had lost hundreds of

5    millions of dollars of Bitcoins.  *See* Rachel Abrams, *et al.*, *Erosion of Faith Was Death Knell for*

6    *Mt. Gox*, New York Times (Feb. 28, 2014).  ████████████████████

7    ████████████████████████████████████

8    ████████████████████████████

9    ████████████████████████████████████

10   █████████

11   At the same time, the virtual currency space is under increasing regulatory scrutiny.  Last

12   month, FinCEN assessed a $700,000 civil penalty against Ripple.  According to FinCEN, "Ripple

13   Labs willfully violated several requirements of the Bank Secrecy Act (BSA)" for, among other

14   things, "failing to implement and maintain an adequate anti-money laundering (AML)

15   program…."  Declaration of Terry Gross in Support of McCaleb/Stellar's Response to Bitstamp's

16   Motion, Ex. E at 1.  The Government faulted Ripple for, among other things, deciding to

17   "dispense with its KYC requirement and move forward with [a suspicious] transaction" for

18   $250,000.  *Id.* Ex F at 6, ¶28(a).  FinCEN is believed to be ramping up enforcement in the virtual

19   currency area.  *See* Michael A. Mancusi, *Virtual Currencies: FinCEN's Next Enforcement*

20   *Wave?*, Law360 (June 4, 2015), http://www.law360.com/articles/662917/virtual-currencies-

21   fincen-s-next-enforcement-wave-.

22   **A.    Ripple's Claim To "Sole Interest" In The Disputed Funds And Accompanying**
         **Threats Satisfy The "Necessarily Low" "Minimum Threshold Level Of**
23       **Substantiability."**

24   There can be no serious dispute that Ripple's claim to "sole interest" in the Disputed

25   Funds and accompanying threats of litigation satisfied the "necessarily low" "minimal threshold

26   level of substantiability."  McCaleb/Stellar have acknowledged as much.  They contend that

27   "[i]nterpleader is only valid when there are two competing claims to *ownership* of funds…."

28   Opp. at 10 (emphasis original).  Here, Ripple *did* claim ownership of the Disputed Funds—a fact

that Stellar/McCaleb have also acknowledged.  Opp. at 15, n.12 ( "Ripple's demand to Bitstamp claim[ed] ownership of the Disputed Funds").  Specifically, Ripple claimed "sole interest" in the Disputed Funds held in Ripple account "r3Q," informed Bitstamp that Ripple had sent the purchase funds to the "r3Q" account "purportedly controlled by [Jacob] Stephenson" and that they therefore belonged to Ripple, and demanded their "immediate transfer" back to Ripple.  Therefore, even under McCaleb/Stellar's formulation, Bitstamp has satisfied the "necessarily low"/ "more than conjectural" good faith threshold.

Indeed, Ripple's threat independently provided a good faith basis for Bitstamp's interpleader.  Ripple's March letters left no doubt that it would sue Bitstamp to vindicate its "sole interest" in the Disputed Funds.[3]  *A/S Krediit Pank v. Chase Manhattan Bank*, 155 F. Supp. 30, 34 (S.D.N.Y. 1957) ("The mere threat of future litigation is a sufficient basis for interpleader").

**B.     Ripple's Accusation That Bitstamp May Be Assisting McCaleb in "Secretly Funnel[ing]" Proceeds Raises Additional, Potential Claims By Others, Including The Government.**

"[I]nterpleader extends to potential, as well as actual, claims." *Michelman*, 685 F.3d at 895; *accord Mack*, 619 F.3d at 1023.  Here, several additional potential claims to the Disputed Funds independently provided a good faith basis for Bitstamp's interpleader.

First, Ripple's accusation that Bitstamp, by processing the transaction, may be assisting in McCaleb's "secretly funnel[ing]" proceeds, raised the possibility of government claims with respect to the Disputed Funds.  In light of the ███████████████████████ and the intense regulatory scrutiny of the digital currency space, Bitstamp, understandably, took Ripple's accusation very seriously.  Graftieaux Decl. ¶¶11,15.  If McCaleb was, in fact, attempting to use Bitstamp to commit money laundering, *i.e.*, to "conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity" (*see, e.g.*, 18 U.S.C. §1956(a)(1)(B)) via accounts owned by his cousin (Stephenson), mother (Harris), Stellar,

---

[3] The Seventh Circuit in *John Hancock Mut. Life Ins. Co. v. Beardslee*, 216 F.2d 457 (7th Cir. 1954) held that insurer's interpleader was "vexatious and unreasonable"—not because insured's daughter had merely alleged a "tort action directly against [plaintiff interpleader]" (Opp. at 11)— but because she had already acknowledged she was not the named beneficiary of the policy at issue.  Her letter to insurer—unlike Ripple's letters to Bitstamp—"did not indicate that [she] had any legal right to collect any part of the proceeds on the policy on her father's life." *Id.* at 460.

1   or others, government authorities may also potentially lay claim to the Disputed Funds by seeking

2   their forfeiture. *See* 18 U.S.C. §981(a)(1)(A); *see also U.S. v. Faiella*, 39 F. Supp. 3d 544

3   (S.D.N.Y. 2014).

4          Second, Ripple's claim that McCaleb was controlling Stephenson's Ripple account "to

5   funnel [McCaleb's] XRP for sale" ████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████

8   ███████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████████

11  ██████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████

15         Third, Ripple's allegation that McCaleb was controlling funds "currently being claimed

16  by Jacob Stephenson or others" raised the possibility that additional claimants would come

17  forward (as they now have). *See, e.g., Stellar Motion to Intervene* (Docket No. 39). However,

18  because the accounts were Ripple accounts on the Ripple network, Bitstamp was not able to

19  verify their true beneficial owner—whether it be Ripple, McCaleb, Stephenson, Stellar, or some

20  other party. *Accord* Opp. at 16, n.13 ("Bitstamp would have no reason to believe as true that

21  McCaleb controlled the r3Q and rUf6 accounts...") Indeed, there *still* appears to be uncertainty

22  regarding who, precisely, is claiming the Disputed Funds. As of May 11, 2015, Stephenson

23  claimed: "I don't have any claim over the Bitstamp USD." Graftieaux Decl. Ex. F. Yet now it

24  appears Stephenson may also lay claim to (some of) the Disputed Funds. McCaleb Defendants'

25  Motion To Dissolve (Docket No. 31) at 2 ("While Stellar *and Mr. Stephenson* understandably

26  would like the money to which they are entitled sooner rather than later..." (emphasis added)).

27  At the same time, Stellar did not claim to be the owner of the "rPQ" account until May 11.

28  Graftieaux Decl. ¶17 & Ex. G. In addition to the potential claimants noted above, this continuing

1   uncertainty regarding who is even *claiming* the Disputed Funds independently demonstrates that

2   Bitstamp's interpleader was proper.

3        **C.**     **Bitstamp Was Not Required To Adjudicate The Merits Of Ripple's Claim To "Sole Interest" In The Disputed Funds.**

4

5        McCaleb/Stellar do not dispute that Ripple's claim to the Disputed Funds conflicts with

6   its own claim (as well as the potential claims noted above).  Because of these competing claims,

7   McCaleb/Stellar have stipulated that "the Disputed Funds shall remain deposited with the Court

8   until the final resolution of this case or further order of the Court." (Docket No. 55) at 2.  That is

9   enough for interpleader. *Mack*, 619 F. 3d at 1024 (interpleader is "not dependent on the merits of

10  adverse claims, *only their existence*" (emphasis added)).

11       Notwithstanding this stipulation, McCaleb/Stellar effectively assert that Bitstamp's

12  interpleader was improper because, in their view, Ripple will not prevail in its claim to "sole

13  interest" in the Disputed Funds.  Perhaps.  But McCaleb/Stellar ignore well-settled law that

14  Bitstamp was not required to adjudicate the merits of Ripple's claim. *See, e.g.*, *Michelman*, 685

15  F.3d at 898 ("Interpleader is designed so that stakeholders do not have to make legal predictions

16  about the merits of claims without the benefit of civil discovery"); *Mack*, 619 F.3d at 1024 ("For

17  interpleader to be held improper based on the merits of the claims being asserted against the fund

18  or stakeholder, courts would be required to address the merits of the claims before propriety of

19  the interpleader.  This is backwards of the usual order, and would defeat the resource-

20  conservation purposes of interpleader").

21       Even were this interpleader to proceed "backwards of the usual order" such that

22  Bitstamp *were* required to adjudicate the merits of Ripple's claim to "sole interest" in the

23  Disputed Funds and pick Stellar as the winner, Stellar had not surfaced as a claimant at the time

24  Bitstamp filed this action.  And even if Bitstamp could have anticipated the legal theories Ripple

25  might elect to pursue against it and/or McCaleb/Stellar, Bitstamp might well have concluded that

26  Ripple's ownership claim was more meritorious.  Ripple essentially alleged that McCaleb was

27  engaged in fraud by "using Bitstamp to secretly funnel the proceeds of [the 89,999,900 XRP]

28  sale." Accordingly, Ripple may have sought to rescind the Settlement Agreement and unwind its

1   XRP purchase.[4]  *See Sharabianlou v. Karp*, 181 Cal. App. 4th 1133, 1144, 1147 (2010) (a court

2   possesses "broad power to fashion an appropriate remedy in cases of rescission" and to "do

3   complete equity between the parties" (internal citation and quotations omitted)); *B.L. Metcalf*

4   *Gen. Contractor, Inc. v. Earl Erne Inc.*, 212 Cal. App. 2d 689, 694 (1963) ("[U]pon rescission all

5   parties are to return those things of value which they have received and they are to be put in status

6   quo").  Or Ripple may have sought to attach the Disputed Funds pursuant to California Code of

7   Civil Procedure Section 481.010 *et seq.  See, e.g., Pos-A-Traction, Inc. v. Kelly-Springfield Tire*

8   *Company*, 112 F. Supp. 2d 1178 (C.D. Cal. 2000).  Or Ripple might have sought to freeze the

9   assets—as Ripple, in effect, successfully did via its preliminary injunction motion—based on the

10  likelihood of dissipation by McCaleb/Stellar.  *See, e.g., Connecticut General Life Ins. Co. v. New*

11  *Images of Beverly Hills*, 321 F. 3d 878, 883 (9th Cir. 2003); *Johnson v. Couturier*, 572 F. 3d

12  1067, 1085 (2009).  There are any number of viable theories pursuant to which Ripple could have

13  pursued its claim to "sole interest" in the Disputed Funds.

14          But interpleader law is clear: it was not Bitstamp's obligation to evaluate the legal merits

15  of Ripple's potential legal theories or remedies and act as judge or jury over disposition of the

16  Disputed Funds.  *See Lee v. West Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir. 2012)

17  (quoting Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 1702 (2001)

18  (interpleader "prevents the stakeholder from being obliged to determine at his peril which

19  claimant has the better claim…the stakeholder should not be compelled to run the risk of guessing

20  which claimants may recover from the fund").  Indeed, as McCaleb/Stellar's own authority

21  recognizes, "a plaintiff can maintain [an interpleader] action even though he believes that one of

22  the claims is valid and the other, or others, without merit."  *Bierman v. Marcus*, 246 F.2d 200,

23  202 (3rd Cir. 1957); *First Interstate Bank of Oregon, N.A.*, 891 F. Supp. at 546 ("interpleader

24  relief is not to be denied merely because the possibility of multiple liability or multiple litigation

25  is remote or rests on tenuous grounds").

26

27  [4] Indeed, Ripple's first cause of action—"Breach of Contract for Failing to Provide Accurate
    Information in Exhibit A to the Settlement Agreement"—amounts to a claim for fraudulent

28  inducement.  Ripple's Answer and Cross-Claim (Docket No. 9), ¶¶52-64.

1    McCaleb/Stellar incorrectly claim that Bitstamp admitted in its May 13 Motion for

2    Discharge that it knew prior to filing its interpleader on April 1 that Ripple's claim to "sole

3    interest" in the Disputed Funds lacked merit. McCaleb/Stellar ignore the fact that Ripple did not

4    file its April 29 Answer and Cross-Claim setting forth its legal theories until almost a month *after*

5    Bitstamp filed the interpleader. *See* Docket No. 9. Bitstamp could not be expected to predict the

6    tort and contract causes of action Ripple would ultimately pursue, or whether they would prevail

7    on them. In its Motion, faced with continued threats from Stellar, Bitstamp sought the Court's

8    guidance in light of the May 11 email from Stephenson claiming "[a]s far as I know, at this point

9    the USD belongs to Stellar." Although Bitstamp acknowledged that Ripple had elected to

10    proceed primarily on a contract theory, at no point did Bitstamp take the legal position that

11    Ripple's claim to "sole interest" was not colorable.

12    Nor does McCaleb/Stellar's sole Ninth Circuit authority—*Michelman*—suggest that

13    Ripple's claim to "sole interest" in the Disputed Funds fails to provide a good faith basis for

14    interpleader. In fact, the *Michelman* court found that a husband's claimed ownership interest in

15    an insurance policy satisfied the "necessarily low" good faith threshold. In a single paragraph,

16    the court noted that the "side agreement" alleged by husband that precluded wife from removing

17    him as a beneficiary was insufficient—not because he was alleging "a simple contract dispute"

18    (Opp. at 9)—but because a statute invalidated the side agreement. *Michelman*, 685 F. 3d at 897.[5]

19    **III.    STELLAR AND THE MCCALEB DEFENDANTS' "COLLUSION" THEORY IS**
     **IRRELEVANT AND ILLOGICAL.**
20

21    As demonstrated above, Bitstamp filed the interpleader because it was faced with

22    competing actual and potential claims to the Disputed Funds that easily cleared the "necessarily

23    low" "minimal threshold level of substantiability." Graftieaux Decl. ¶24. This is all that is

24    _____

25    [5] *Partex Apparel Int'l LTDA S.A. de C.V. v. GFSI, Inc.*, No. 10-2678, 2012 U.S. Dist. LEXIS
     42267 (D. Kan. Mar. 28, 2012), is equally inapposite. The Kansas District Court denied

26    defendant's motion for leave to file an interpleader counterclaim where defendant "does not assert
     any fear of multiple liability as a basis for impleading the funds" and "does not offer any evidence

27    that [third party]—or other party—has made an unequivocal claim to the funds [defendant] owes
     to [plaintiff] under the contract." *Id.* at *26-27. By contrast, Bitstamp has demonstrated its fear

28    of multiple liability and has offered evidence that Ripple made an unequivocal claim to the
     Disputed Funds.

1    required for good faith.  Stellar/McCaleb do not cite a single authority holding, or even

2    suggesting, that an interpleader confronting actual and potential claims should be prevented from

3    discharge because a defendant questions the "the legitimacy of [its] motives."  Opp. at 2.

4          McCaleb/Stellar's own authorities demonstrate that their allegations of "collusion"—even

5    if true (they are not)—do not rise to the level of bad faith required to prevent discharge.  *See*

6    *Bierman*, 246 F.2d at 201-04 (interpleader alleging only that defendant-corporation "may claim"

7    funds improper where interpleader plaintiffs "were the sole stockholders of [corporation] and in

8    complete control of that corporation"; "Thus, when they impleaded [corporation], they knew that

9    corporation had no claim on them for the purchase price and could not even assert a fictitious

10   claim without their consent"); *Mendez v. Teachers Ins. & Annuity Ass'n & College Ret. Equities*

11   *Fund*, 982 F.2d 783, 786 (2nd Cir. 1992) (bad faith where insurer waited more than 18 months

12   after insured's death to interplead annuity proceeds until compelled to counterclaim and was

13   "unable to confirm that the proceeds of the annuities had not been depleted by more than one half

14   of the corpus").

15         Moreover, McCaleb/Stellar's theory that Bitstamp colluded with Ripple to serve Ripple's

16   interests makes no sense.  In response to Ripple's demand that Bitstamp "immediately release"

17   the Disputed Funds to Ripple, Bitstamp did *not* do as Ripple demanded and release the funds to

18   Ripple.  Instead, Bitstamp filed this action *naming Ripple as a defendant* and seeking the Court's

19   guidance regarding the Disputed Funds.  Then, after Stephenson on May 11 informed Bitstamp

20   that, "[a]s far as I know, at this point the USD belongs to Stellar," and following continued threats

21   by Stellar, Bitstamp sought the Court's permission to release the Disputed Funds *to Stellar*

22   (subject to the satisfaction of Bitstamp's AML Policy).  McCaleb/Stellar's theory that, in so

23   doing, Bitstamp was "colluding" with Ripple is, frankly, baffling.

24         McCaleb/Stellar fail to demonstrate—or even allege—why Bitstamp would have any

25   interest in embroiling itself in a federal court litigation when it has no claim on the Disputed

26   Funds, is indifferent to their disposition, and has nothing to gain.  Stellar does not even allege that

27   Bitstamp is a competitor of Stellar with any interest in damaging Stellar's business.[6]  Equally

28   ---
[6] According to Stellar, it is a "non-profit foundation, whose mission is to expand financial access

1   baffling is Stellar's claim that Bitstamp would insert itself into a dispute which "is really at the

2   heart …[a] dispute between Ripple, on the one hand, and Mr. McCaleb and Mr. Stephenson on

3   the other hand" because Bitstamp wanted to manufacture federal court jurisdiction for Ripple.

4   Again, McCaleb/Stellar proffer no reason why Bitstamp would possibly care in what venue the

5   competing claims to the Disputed Funds are adjudicated or why, as a civil defendant, McCaleb is

6   hurt by defending against Ripple's claims in federal court, as opposed to state court.

7        In short, McCaleb/Stellar have not alleged that Bitstamp *created* the dispute between the

8   interpleader defendants. *See Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1065, n.6 (1992)

9   (rejecting theory "that [auction house] colluded with [government] in commencing this

10  interpleader action" where auction house "did not [] contribute to the development of the adverse

11  claims").  McCaleb/Stellar's "collusion" theory is a sideshow, which the Court should ignore.

12       **A.   Stellar And The McCaleb Defendants' *Ad Hominem* Attack On One Of
              Bitstamp's Lawyers Is Irrelevant As Well As Factually And Legally
13             Unsupported.**

14       To manufacture a need for discovery, McCaleb/Stellar launch an unwarranted *ad*

15  *hominem* attack on one of Bitstamp's lawyers, George Frost, alleging that Bitstamp filed this

16  interpleader because Frost had represented Ripple in another matter.  McCaleb/Stellar's reckless

17  attack on Frost is irrelevant and makes no sense.  It is also legally and factually unsupported.

18       As an initial matter, McCaleb/Stellar do not cite a single authority suggesting that Frost's

19  former representation of Ripple in connection with a different matter somehow implies bad faith

20  *by Bitstamp*.  Bitstamp is a corporation.  McCaleb/Stellar do not, and cannot, allege that one of its

21  lawyers was solely responsible for the decision to file the interpleader.  McCaleb/Stellar's duty of

22  loyalty theory is equally confused.  The duty of loyalty requires only that an attorney "not do

23  anything which will injuriously affect [the] former client in any matter in which [the attorney]

24  formerly represented the client." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)

25  (internal citation and quotations omitted) (where attorney represented developer "in its effort to

26  _____

27  and literacy worldwide, and to focus on areas and geographies where access to financial services
    can significantly impact people's achievement and basic education, healthcare and other human
    rights." Stellar Motion to Intervene (Docket No. 39) at 2.  McCaleb/Stellar proffer no reason why
28  Bitstamp would have any interest in taking any action adverse to such an entity.

1   obtain approval of a redevelopment project" and then campaigned "to thwart the same

2   development project," developer's fiduciary breach claim was sufficient to survive anti-SLAPP

3   motion). But Frost has never represented Ripple in connection with this interpleader action. In

4   addition, Stellar and the McCaleb Defendants fail to explain how *not* filing the interpleader would

5   injure Ripple and fail to cite any law to suggest than an attorney has some affirmative duty to take

6   actions in a different matter, and on behalf of a different client, to benefit a former client.[7]

7   McCaleb/Stellar's other claims are unsupported[8] and false.[9]

8       McCaleb/Stellar's other efforts to manufacture "question[s]" (Opp. at 1) regarding "the

9   legitimacy of Bitstamp's motives" also fail. Whether a Bitstamp board member worked at Ripple

10   or whether a Ripple employee invested in Bitstamp (Opp. at 17) is irrelevant. The digital

11   currency community is not large. In fact, it could just as equally be said that Bitstamp *and*

12   *McCaleb/Stellar* are "significantly intertwined." For example, McCaleb is a venture partner of

13   two of Bitstamp's five directors—a fact that McCaleb/Stellar neglect to mention. *Compare*

14

---

15   [7] McCaleb/Stellar incorrectly claim that Bitstamp's Complaint reflects "Ripple's inaccurate view
of the world" (Opp. at 16). By its Complaint, Bitstamp expressly prayed that *the Court* would
16   decide who is entitled to the Disputed Funds. Docket No. 1, Prayer. The allegations regarding
Stellar's auction demonstrate why Ripple's claims were so troubling. Stellar and the McCaleb
17   Defendants' claim that "Bitstamp knows that Stephenson is the owner of account r3Q" (Opp. at
16) is incorrect. Bitstamp filed this action because it did *not* know who owned the Disputed
18   Funds.

[8] For its attacks on Frost, McCaleb/Stellar rely exclusively upon the declaration of Stellar's
19   outside counsel in this litigation, Terry Gross. Gross's declaration largely consists of
inadmissible hearsay regarding alleged conversations. *See* Gross Decl. ¶8-11. Demonstrating
20   precisely why such hearsay is inherently unreliable, Stellar and the McCaleb Defendants
inconsistently assert that "*Frost* was financing Britto in the Britto Lawsuit" (Gross Decl. ¶11
21   (emphasis added)) and that "*Greg Kidd*...is financing Britto's lawsuit." Opp. at 17 (emphasis
added; citing Gross Decl. ¶11). To the extent the Court is inclined to rely on this evidence,
22   Bitstamp respectfully moves the Court pursuant to Federal Rules of Evidence 801 and 802 to
strike Paragraph 4, lines 15-19, Paragraph 8, lines 16-20, Paragraph 9, and Paragraph 11 of the
23   Gross Declaration and Paragraph 3, lines 10-11 of the McCaleb Declaration, all of which
constitute inadmissible hearsay.

24   [9] McCaleb/Stellar also attempt to create a "concurrent representation" issue where there is none,
25   yet acknowledge that Frost did not represent Ripple at the time of the interpleader. Their claim
that "Frost represented both Ripple and Bitstamp *during events* that underlie Ripple's demand" is
26   irrelevant. Opp. at 6. McCaleb/Stellar are attacking Bitstamp for its filing of this action—not for
any prior "events." Should the Court deem it necessary to inquire into Frost's prior
27   representation of Ripple—Bitstamp, again, submits that it is totally irrelevant to its Motion—
Frost is willing to address such issues *in camera*. Without a waiver from his former client, Frost
28   cannot disclose privileged information regarding his former representation of Ripple.

---

1  https://www.bitstamp.net/about_us/ (listing Dan Morehead and Steve Waterhouse as directors of

2  Bitstamp) *with* https://panteracapital.com/about/ (listing Jed McCaleb as venture partner of

3  Morehead and Waterhouse); *see* McCaleb Decl. ¶3 (referencing his communications with

4  Morehead and Waterhouse).

**B.      There Is No Basis For Discovery, Which The McCaleb Defendants Have Already Admitted Is Not Necessary And Which Would Defeat The Purpose Of Interpleader.**

7          Without even alleging the requisite bad faith, McCaleb/Stellar request a fishing expedition

8  into "the legitimacy of Bitstamp's motives" so they can pursue their illogical conspiracy theory.

9  McCaleb/Stellar's eleventh-hour attempt to prolong Bitstamp's involvement in this action directly

10  contradicts their observation at the May 22 hearing—nine days *after* Bitstamp had filed its

11  Motion—that discovery was not necessary.  May 22, 2015 Tr. at 17:22-24 ([COUNSEL FOR

12  MCCALEB DEFENDANTS]: "And I agree with Mr. Fondo that your Honor does not need any

13  discovery to resolve the motion that Bitstamp has brought"].  McCaleb/Stellar make no attempt to

14  explain why their position has changed, nor do they cite any authority in which a court ordered

15  discovery into the "legitimacy of [an interpleader]'s motives."

16          Stellar/McCaleb's sole authority—*Companion Life Ins. Co. v. Schaffer*, 442 F. Supp. 826

17  (S.D.N.Y. 1977)—demonstrates instead why discovery is inappropriate.  The *Companion Life*

18  court did not order discovery regarding a stakeholder's good faith.  Instead, following a motion

19  for summary judgment, the court suggested "a finding of negligence on the part of the [insurer-

20  interpleader]" who had questioned the disputed beneficiary designation "but directed the inquiry

21  only to [defendant-claimant], who was at one and the same time plaintiff's employee, the agent

22  who sold the policy at issue, and a designated beneficiary under the policy."  *Id.* at 829-830.  The

23  court further suggested that the insurer "may have been responsible for this litigation" (*id.* at 830)

24  and that insurer's negligence could not be decided until "the completion of discovery."  *Id.*  By

25  contrast, McCaleb/Stellar have not alleged that Bitstamp in any way "responsible" or

26  "independently liable" (*id.* at 829) for the competing claims to the Disputed Funds.  The

27  counterclaims McCaleb/Stellar threaten regard Bitstamp's disposition of the Disputed Funds *after*

28  the competing claims arose.  McCaleb/Stellar cite to no apposite authority because discovery

1  would undermine the entire purpose of interpleader: "a simple, speedy, efficient and economical

2  remedy." *Hunter v. Fed. Life Ins. Co.*, 111 F.2d 551, 557 (8th Cir. 1940). Their late request for

3  discovery from Bitstamp should be denied.

4       **C.    McCaleb/Stellar Cannot Avoid Discharge By Threatening Counterclaims Based On Bitstamp's Freezing The Disputed Funds.**

5

6       Although "a stakeholder whose alleged tort caused the controversy is not absolved of

7  liability by filing an interpleader" (*Lee*, 688 F.3d at 1014), McCaleb/Stellar do not even threaten

8  to allege that Bitstamp tortiously created the actual and potential claims to the Disputed Funds.

9  Therefore, McCaleb/Stellar cannot defeat discharge by threatening to file "counterclaims [that]

10  are essentially based on the plaintiffs having opted to proceed via an interpleader complaint rather

11  than having chosen from among competing adverse claimants." *Prudential Ins. Co. of America v.*

12  *Hovis*, 553 F.3d 258, 265 (3rd Cir. 2009) (internal citation and quotations omitted) (affirming

13  summary judgment dismissing breach of contract and unfair trade practices counterclaims where

14  interpleader found appropriate). Indeed, McCaleb/Stellar's sole authority—*Companion Life*—is

15  consistent with protecting an interpleader plaintiff against claims that fall short of alleging

16  tortious conduct by the interpleader that caused the competing claims. *See Companion Life*, 442

17  F. Supp. at 829-30 (denying insurer's discharge motion not because "[t]he interpleaded party

18  presents evidence of potentially valid claims against the stakeholder" (Opp. at 13), but because

19  the court itself found that insurer's own misconduct may have created the competing claims).

20  **CONCLUSION**

21       Bitstamp has no interest in the Disputed Funds and no interest in this litigation. Bitstamp

22  filed this action because it was faced with actual and potential claims to the Disputed Funds—

23  claims that were not of its own making. Bitstamp's Motion for Discharge should be granted. It

24  should be dismissed from this case, discharged of any liability in connection with the Disputed

25  Funds, and the Court should enjoin any subsequent action regarding the Disputed Funds.[10]

26  [10] As indicated in its Motion (at 5, n.1), Bitstamp intends to seek leave to file its fee motion, consistent with standard interpleader practice. *Schirmer Stevedoring Co., Ltd. v. Seaboard*

27  *Stevedoring Corp.*, 306 F.2d 188, 194 (9th Cir.1962). Because Bitstamp's fee motion is not yet before the Court, Bitstamp does not respond to McCaleb/Stellar's fee arguments (Opp. at 17-19),

28  other than to note Bitstamp's disagreement.

1   Dated: June 4, 2015

2

3                         FARELLA BRAUN + MARTEL LLP

By: /s/ Christopher C. Wheeler
Christopher C. Wheeler

Attorneys for Bitstamp Ltd.