1  Jessica Nall (State Bar No. 215149)
   jnall@fbm.com
2  Christopher C. Wheeler (State Bar No. 224872)
   cwheeler@fbm.com
3  Farella Braun + Martel LLP
   235 Montgomery Street, 17th Floor
4  San Francisco, CA 94104
   Telephone: (415) 954-4400
5  Facsimile: (415) 954-4480

6  Attorneys for Bitstamp Ltd.

7

8            UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10           SAN FRANCISCO DIVISION

11

12 | BITSTAMP LTD., a foreign company, | CASE NO. 3:15-cv-1503 WHO
13 | Plaintiff, | 
14 | vs. | **[REDACTED] REPLY DECLARATION OF JEAN-BAPTISTE GRAFTIEAUX IN SUPPORT OF BITSTAMP LTD.'S MOTION FOR AN ORDER OF DISCHARGE**
15 | RIPPLE LABS INC., a California Corporation, JACOB STEPHENSON, an individual, NANCY HARRIS, an individual, JED MCCALEB, an individual, and DOES 1 Through 10, Inclusive, |
16 | |
17 | | Date:      June 10, 2015
18 | Defendants. | Time:      2:00 p.m.
   |            | Judge:     Hon. William H. Orrick
   |            | Courtroom: 12, 19th Floor
19 | RIPPLE LABS INC., a California Corporation, |
20 | |
21 | Cross-Plaintiff, |
22 | vs. |
23 | JED MCCALEB, an individual, JACOB STEPHENSON, an individual, and DOES 1 Through 10, Inclusive, |
24 | |
25 | Cross-Defendants. |

26

27        **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**
28

---

GRAFTIEAUX DECLARATION
Case No. 3:15-cv-1503 WHO                                              31652\4917325.1

I, Jean-Baptiste Graftieaux, hereby declare:

1.  I am the Chief Compliance Officer of Bitstamp Ltd. ("Bitstamp"). I submit this Declaration in support of Bitstamp's Motion for an Order of Discharge. I have personal knowledge of each fact set forth below. If called as a witness, I could and would testify competently thereto.

**A.   Bitstamp As A Gateway To The Ripple Protocol**

2.  Bitstamp operates as a gateway for XRP—the math-based currency created by Defendant Ripple Labs Inc. ("Ripple"). Bitstamp enables the exchange of XRP for other digital currency and fiat currency, including U.S. dollars. As a general matter, Bitstamp claims no ownership interest in funds transferred or exchanged using Bitstamp.

3.  Bitstamp users may exchange funds between accounts, including digital currency and fiat currency accounts, that are located on other systems, such as Ripple's. As a general matter, because Ripple users do not register their Ripple accounts with Bitstamp, Bitstamp has no independent knowledge of who owns or controls Ripple accounts.

**B.   Bitstamp's Anti-Money Laundering Policy**

4.  Attached as Exhibit A is Bitstamp's "Anti-Money Laundering and Counter Terrorist Financing Policy" ("AML Policy) operative as of March 2015.[1]

5.  ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

6.  One of the AML/CTF risks posed by digital currency services is that the users are often less clearly identified than users of conventional financial services. ███████████████████████████

---

[1] Although the AML Policy is in the name of Bitstamp Europe S.A., Bitstamp as a whole operates under the AML Policy.

1
2       7.    [REDACTED]
3
4
5
6
7
8
9
10
11

12      8.      Another risk posed by digital currency services is that digital currency transactions generally are non-reversible. As a general matter, once the transaction is settled, it cannot be reversed. Therefore, [REDACTED] Bitstamp's "Terms of Use" (attached as Exhibit B and available at https://www.bitstamp.net/terms-of-use/) provide that "[i]f there is suspicious activity related to your Account, we may…freeze any transactions pending our review." *Id.* at 3-4. Bitstamp's Terms of Use also provide Bitstamp with the right to freeze Ripple accounts "in order to investigate suspicious activity." *Id.* at 4.

### C. Ripple Asserts Its "Sole Interest," And Accuses Jed McCaleb Of "Using Bitstamp To Secretly Funnel" Proceeds.

9.      By letter dated March 26, 2015 (attached as Exhibit C), Ripple demanded the "immediate transfer" of $75,000 held in Ripple Account "r3Q," which, according to Ripple, was "currently being claimed by Jacob Stephenson." *Id.* at 1-2. Ripple informed Bitstamp that r3Q is "purportedly controlled by Jacob Stephenson, but [] Ripple has evidence [that it] is in fact being controlled by Mr. Stephenson's cousin, Mr. McCaleb, and is being used by Mr. McCaleb to funnel his XRP for sale." *Id.* at 1.

10.     At the time of Ripple's March 26 letter, [REDACTED]

1  ████████████████████████████████████████████████████████████
2  ████████████████████████████████████████████████████████████
3  ████████████████████████████████████████████████████████████
4  ████████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████████████
6  ████████████████████████████████████████████████████████████
7  ██████████████████████████████████████████

8    11.    Ripple informed Bitstamp that McCaleb "is using Bitstamp to secretly funnel the proceeds of [a] sale" of 89,999,900 XRP using the account of Jacob Stephenson. Ex. C at 1. Although Ripple took the position that Ripple Account "r3Q" was "purportedly controlled by" Jacob Stephenson, Ripple wrote: "We believe that this sale was at the direction of and for the benefit of Mr. McCaleb." *Id.* As discussed above, because "r3Q" is a Ripple account, Bitstamp did not know who actually owned or controlled the account. However, as Bitstamp's Chief Compliance Officer, I took the accusation that McCaleb "is using Bitstamp to secretly funnel" proceeds very seriously.

    12.    Ripple further claimed that it "sent the purchase funds to the r3Q account." Ex. C at 1. Accordingly, Ripple asserted "its sole interest," "demand[ing] the immediate transfer of the $75,000 to Ripple's account." *Id.* at 2.

    13.    Ripple concluded its March 26 letter with the following threat: "Should Bitstamp fail to respond by the specified time, or if it refuses to comply with this demand, Ripple will seek all legal remedies available to it against Bitstamp and others." Ex. C at 2. Ripple's March 26 letter did not indicate that Stellar Development Foundation ("Stellar") had any claim on the funds held by "r3Q." *See* Ex. C.

    14.    By letter dated March 30, 2015 (attached as Exhibit E), Ripple informed Bitstamp that "there is approximately $963,000 of additional funds in Bitstamp's control currently being claimed by Jacob Stephenson *or others*." *Id.* (emphasis added). Ripple demanded that Bitstamp not "release these funds or the approximately $75,000 in funds referenced in my March 26[th] letter [], totaling $1,038,172, to anyone other than Ripple Labs for the reasons set forth in my prior

letter to you." *Id.* (I refer to this $1,038,172 as "the Disputed Funds.") Nowhere did Ripple's March 30 letter indicate that Stellar had any claim on the Disputed Funds *See* Ex. E.

15. In light of the uncertainty regarding the ownership of the Disputed Funds, Bitstamp's AML Policy, and Ripple's claim that Bitstamp was being used by McCaleb to "secretly funnel" proceeds, Bitstamp "froze" the Disputed Funds and filed this action.

### D. More Than A Month Later, Jacob Stephenson Indicates That The Disputed Funds May Belong To Stellar, But Stellar Has Not Completed Bitstamp's KYC Process.

16. Jacob Stephenson emailed Bitstamp on May 11, 2015, announcing that "I don't have any claim over the Bitstamp USD" and "[a]s far as I know, at this point the USD belongs to Stellar Development Foundation." Mr. Stephenson's May 11 email is attached as Exhibit F.

17. To my knowledge, Stellar Development Foundation ("Stellar") did not claim to be the owner of the "rPQ" account until May. Attached as Exhibit G is a May 11, 2015 email from Stellar's outside counsel, Terry Gross, to myself, claiming that Stellar was the owner of the "rPQ" account.

18. Stellar does not have an authorized account with Bitstamp. On or around April 1—the same day Bitstamp filed this interpleader action—Stellar submitted a verification request to open a Bitstamp account. However, Stellar subsequently provided inconsistent information and did not provide the information requested by Bitstamp pursuant to its AML Policy. Attached as Exhibit H are email exchanges between Colleen McGarry of Stellar and Bitstamp corporate verification officer Jure Bezan and Bitstamp support agents Benedikt Potisek and Nejc Srecnik dated between April 2, 2015 and May 13, 2015 in connection with Stellar's unsuccessful attempt to open a Bitstamp account.

19. For example, in response to Bitstamp's questions regarding Stellar's use of Bitstamp, Stellar inconsistently informed Bitstamp that Steller "will not be trading on Bitstamp. We are accepting donations." Ex. H at 3. Almost a month later, however, Stellar informed Bitstamp that "[w]e intend to withdraw approximately $1m in USD." *Id.* at 5. Stellar never responded to Bitstamp's follow-up question: "How do you intend to fund you[r] Bitstamp account that your withdrawals will sum up to the provided figure?" *Id.*

20.     Stellar also failed to respond to other significant compliance questions, such as: "Is your business regulated for AML? If so, what is your specific policy? Specifically, how do you perform KYC for your customers?" (Ex. G at 2); "Please also help us understand how the funds which will be sent to your Bistamp account were acquired" (*id.*); and "Do you have to register with FinCEN, if not, please explain why" (*id.* at 6).

21.     Because Stellar has not completed Bitstamp's KYC process, Stellar does not yet have an authorized account with Bitstamp and is not yet authorized to conduct any transaction using Bitstamp. *See* Ex. A at 11 ("While Bitstamp allows a user to sign up for its website with an email address, it blocks all ability to deposit funds and conduct transactions until the customer completes the CDD process").

E.     **FinCEN Assesses A $700,000 Civil Penalty Against Ripple For Failing To Register As A Money Services Business And Failing To Implement An Adequate AML Program.**

22.     On May 5, 2015, the Financial Crimes Enforcement Network ("FinCEN") announced that it was assessing a $700,000 civil penalty against Ripple. FinCEN's May 5, 2015 press release is attached as Exhibit E to the Declaration of Terry Gross in Support of Defendants' Response to Bitstamp's Motion. According to FinCEN, "Ripple Labs willfully violated several requirements of the Bank Secrecy Act (BSA) by acting as a money services business (MSB) and selling its virtual currency, known as XRP, without registering with FinCEN, and by failing to implement and maintain an adequate anti-money laundering (AML) program designed to protect its products from use by money launderers or terrorist financiers." *Id.* at 1. In the Settlement Agreement between the United States Attorney's Office in the Northern District of California ("Government") and Ripple ("Settlement Agreement") (attached as Exhibit F to the Gross Declaration), the Government faulted Ripple for, amongst other things, a decision to "dispense with its KYC requirement and move forward with [an approximately $250,000] transaction." *Id.* at Attachment A, at 6, ¶28(a).

23.     The $700,000 civil penalty FinCEN assessed against Ripple confirms my understanding that the digital currency space is under regulatory scrutiny.

*     *     *

24. Based on the foregoing, I believed that there were competing claims to the Disputed Funds. I also believed that these competing claims could expose Bitstamp to litigation by the claimants.

I declare under the laws of the United States that the foregoing is true and correct. Executed this 4th day of June, 2015 at Luxembourg, Luxembourg.

*[signature]*
Jean-Baptiste Graftieaux