UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BITSTAMP LTD.,
    Plaintiff,

v.

RIPPLE LABS INC., et al.,
    Defendants.

Case No. 15-cv-01503-WHO

**ORDER GRANTING INTERPLEADER PLAINTIFF'S MOTION FOR AN ORDER OF DISCHARGE**

Re: Dkt. No. 20

## INTRODUCTION

Interpleader plaintiff Bitstamp LTD moves to be discharged from its interpleader complaint against defendants Ripple Labs, Inc., Jed McCaleb, Jacob Stephenson and Nancy Harris. Pursuant to Civil Local Rule 7-1(b), I find this matter appropriate for resolution without oral argument and I VACATE the hearing set for June 10, 2015. Because there is a single fund at issue and adverse claimants to that fund, the requirements of interpleader have been met. Bitstamp's motion is therefore GRANTED and it is DISCHARGED from this matter.

## BACKGROUND

XRP is a digital math-based currency only used within the Ripple protocol, a digital payment system. Compl. ¶ 10 [Dkt. No. 1]. Ripple Labs develops software that implements and interacts with the Ripple protocol. *Id*. Bitstamp operates a gateway for XRP, permitting the exchange of XRP for other digital currency and state-issued currency, including U.S. dollars. *Id*. ¶ 12.

On March 26 and March 30, 2015, Bitstamp received letters from Ripple Labs claiming that Bitstamp was in possession of $1,038,172 to which Ripple Labs was entitled. *Id*. ¶¶ 13-14. Ripple Labs represented that it had entered into a contract with McCaleb in August 2014, under which McCaleb agreed to limit sales by himself and his family members to $10,000 worth of XRP per week. *Id*. ¶¶ 13-14. According to Ripple Labs, McCaleb breached that agreement around March 20, 2015 by selling approximately $1,038,172 worth of XRP on Bitstamp's gateway from

Ripple account number r3Q3B6A2giHDMef83AztzBStBm1JBmxUKX ("r3Q"), which Bitstamp believes is controlled by McCaleb and his cousin, Stephenson. *Id*. ¶¶ 13-15, 18. Ripple Labs represented in the letters that it purchased the $1,038,172 worth of XRP offered by r3Q to avoid and mitigate irreparable harm and damages that it would have suffered otherwise. *Id*. ¶¶ 19-20. Ripple Labs asserted its "sole interest" in the funds and "demanded the immediate transfer" of the funds to its account. *Id*. ¶¶ 14, 21; Dkt. Nos. 57-3 at 3, 57-5 (March 2015 letters).

Bitstamp claims that it is facing competing ownership claims to the $1,038,172 from Ripple Labs and Stephenson and that McCaleb and Harris[1] may also make claims to the funds. *Id*. ¶¶ 25-29. It froze the accounts containing the disputed funds due to the ownership dispute on March 31, 2015. *Id*. ¶ 24. On April 1, 2015, Bitstamp filed this interpleader complaint, "seek[ing] the Court's assistance in resolving ownership rights of rival claimants to the same assets." *Id*. ¶ 1. It asserts that it "has a real and reasonable fear of liability or vexatious, conflicting claims directed against the Disputed Funds and is not in the position to safely determine which party's claim to the Disputed Funds is meritorious without great hazard and possible multiple liability." *Id*. ¶ 34.

On April 29, 2015, Ripple Labs filed a cross-complaint against McCaleb and Stephenson for breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference with contractual relations, all arising from the settlement agreement between McCaleb and Ripple Labs. Dkt. No. 9. Ripple Labs does not name Bitstamp as a cross-defendant.

On May 13, 2013, Bitstamp filed the present motion for an order of discharge.[2] Dkt. No. 20. Bitstamp asserts that it satisfied the requirements for an interpleader action because it was faced with actual and potential competing claims to the disputed funds, it has no interest in the disputed funds, and it did not create the competing claims. Bitstamp also sought permission to release the disputed funds to Stellar Development Foundation, digital currency company co-

---

[1] Bitstamp alleges that Harris is Stephenson's mother and McCaleb's aunt. Compl. ¶ 5.

[2] In its moving brief, Bitstamp moved, in the alternative, for voluntary dismiss under Federal Rule of Civil Procedure 41(a)(2). However, Bitstamp withdrew its request for voluntary dismissal in its reply brief. Dkt. No. 56 at 7-8. On May 22, 2015, the individual defendants and proposed intervener-defendant Stellar filed a motion to dismiss, which is not yet fully briefed. Dkt. No. 41.

founded by McCaleb, which owns the Ripple account containing the disputed funds. Individual defendants McCaleb, Stephenson, and Harris and proposed intervenor-defendant Stellar[3] filed a joint response stating that Bitstamp's motion for a discharge should be denied because there is no legitimate dispute concerning ownership of the disputed funds. Dkt. No. 52. In contrast, Ripple Labs filed a response stating that Bitstamp's motion for a discharge should be granted. Dkt. No. 53.

On May 14, 2015, while Bitstamp's motion to discharge was still pending, Ripple Labs filed an *ex parte* application for a temporary restraining order and order to show cause why a preliminary injunction should not issue to enjoin Bitstamp from transferring the disputed funds to McCaleb or Stellar. Dkt. No. 23. I granted a temporary restraining order on May 15, 2015. Dkt. No. 24.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 22 allows a party to file a claim for interpleader if there is a possibility of exposure to double or multiple liability. Fed. R. Civ. P. 22(a). "The purpose of interpleader is for the stakeholder to protect itself against the problems posed by multiple claimants to a single fund." *Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir. 2012) (citations omitted). This includes protecting the stakeholder from litigation expenses, "which is not dependent on the merits of adverse claims, only their existence." *Id.* (citation omitted).

An interpleader action typically involves two stages. First, the court decides whether the requirements for an interpleader action have been met "by determining if there is a single fund at issue and whether there are adverse claimants to that fund." *Id.* (citation omitted). The interpleader plaintiff must have a good faith belief that there are or may be competing claims. *Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 894 (9th Cir. 2012). The Ninth Circuit has stated that "[t]his is not an onerous requirement" and is "necessarily low so as not to conflict with interpleader's pragmatic purpose, which is for the stakeholder to protect itself against the problems posed by multiple claimants to a single fund." *Id.* (citations omitted). If the interpleader was

---

[3] On May 22, 2015, Stellar filed a motion to intervene in this action, asserting that it is the owner of the disputed funds. Dkt. No. 39-1. The briefing on that motion is not complete.

properly brought, the stakeholder is discharged from any further liability with respect to the subject of the dispute. *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009). Second, if the interpleader has been properly brought, the district court determines the respective rights of the claimants. *Lee*, 688 F.3d at 1009.

**DISCUSSION**

The record demonstrates that the requirements for interpleader have been met as there is a single fund at issue and Bitstamp faces actual and potential competing claims to the disputed funds. In its March 26 and March 30, 2015 letters to Bitstamp, Ripple Labs claimed "sole interest" in the disputed funds and "demanded the immediate transfer" of the funds to its account. Dkt. Nos. 57-3 at 3, 57-5. Then, in its May 14, 2015, application for a temporary restraining order, Ripple Labs threatened that "[b]y transferring the Disputed Funds to McCaleb and Stellar, Bitstamp not only exposes itself to potential civil liability to Ripple Labs, which has made an official claim to the Disputed Funds in its answer, but may even face potential regulatory or criminal exposure for doing so." Dkt. No. 23 at 20.

Stellar also claims ownership of the funds and has threatened to file counterclaims against Bitstamp. In response to Bitstamp's motion for a discharge, Stellar and the individual defendants contend that Bitstamp "took actions that improperly exercised dominion and control over *Stellar's property*." Dkt. No. 52 at 21 (emphasis added). Stellar represents that it "potentially will file counterclaims against Bitstamp for, among other things: (1) conversion; (2) breach of contract; and (3) unfair business practices." *Id*. In addition, in its motion to intervene, Stellar asserts that it is the owner of the disputed funds. Dkt. No. 39-1 at 2 ("Stellar is not only the owner of the rPQ account, but also is the owner of the funds contained in this account."). Given the foregoing, there is no real question that there are competing claims to the disputed funds.[4]

The individual defendants argue that the interpleader was improper because Ripple Labs's claim that McCaleb breached the settlement agreement with Ripple Labs did not provide a valid

---

[4] Stephenson apparently also claims an interest in at least some of the disputed funds. In their motion to dissolve the temporary restraining order, the individual defendants stated that "Stellar and Mr. Stephenson understandably would like the money to which they are entitled sooner rather than later . . . ." Dkt. No. 31 at 7.

4

basis for Bitstamp to believe that Ripple Labs had a claim to the disputed funds. But a plaintiff in an interpleader action is not required to adjudicate the merits of adverse claims; the *presence* of adverse claims is sufficient. *See, e.g.*, *Lee*, 688 F.3d at 1009 (purpose of interpleader includes "limiting litigation expenses, which is not dependent on the merits of adverse claims, only their existence") (citation omitted); *Mack v. Kuckenmeister*, 619 F.3d 1010, 1024 (9th Cir. 2010) ("For interpleader to be held improper based on the merits of the claims being asserted against the fund or stakeholder, courts would be required to address the merits of the claims before propriety of the interpleader. This is backwards of the usual order, and would defeat the resource-conservation purposes of interpleader."). Accordingly, Bitstamp was not required to determine whether Ripple Labs's claim to the disputed funds was colorable; it is sufficient that Ripple Labs made a claim.

The individual defendants and Stellar also argue that Ripple Labs is not a good faith stakeholder because its interests coincide with Ripple Labs's interests. They note that one of Bitstamp's attorneys represented Ripple Labs in connection with the settlement agreement which McCaleb allegedly breached and that Ripple Labs and Bitstamp have several overlapping directors and investors. But the mere fact that the same attorney has represented both Ripple Labs and Bitstamp, or that Ripple Labs and Bitstamp have some of the same investors and directors, is hardly indicative of collusion, particularly in the concentrated world of digital currency. In fact, Bitstamp *and McCaleb* have similar connections. As Bitstamp points out, two of its directors, Dan Morehead and Steve Waterhouse, are apparently partners in Pantera Capital, a venture capital firm focused on digital currencies where McCaleb is also a partner.[5] Moreover, Bitstamp sought leave to release the disputed funds *to Stellar*, over Ripple Labs's objections, further undermining the assertion that Bitstamp and Ripple Labs are in cahoots.

On this record, Bitstamp has satisfied its "necessarily low" requirement of establishing its good faith belief that there are actual and potential adverse claims to the disputed funds.

---

[5] *See* https://www.bitstamp.net/about_us/ (listing Morehead and Waterhouse as directors of Bitstamp) *with* https://panteracapital.com/about/ (listing McCaleb as venture partner of Morehead and Waterhouse).

*Michelman*, 685 F.3d at 894. Its motion for a discharge is GRANTED.[6]

## CONCLUSION

Bitstamp's motion for an order of discharge is GRANTED. Dkt. No. 20. Bitstamp is DISCHARGED from this matter.

During the pendency of this motion, the parties filed a stipulation, which I entered, requiring Bitstamp to transfer the disputed funds to the Court pending resolution of this matter and pushing back the dates for the parties to oppose various pending motions, including the individual defendants' and Stellar's joint motion to dismiss the interpleader complaint. Dkt. Nos. 55, 60. The stipulation also provided that, in the event this action is dismissed and the disputed funds are released, the parties agree to seek an order directing Bitstamp to transfer the funds into accounts as may be necessary to restore the status quo that existed before Bitstamp filed its interpleader complaint. Dkt. No. 60 ¶ 2.

The stipulation did not address the impact of this motion on the pending joint motion to dismiss, and no party suggested that I delay ruling on Bitstamp's motion. I do not address the joint motion to dismiss at this point as the briefing on that motion is not yet complete. I note that at least some of the arguments in favor of the joint motion appear to be the same as the arguments I rejected here. In any event, it is my understanding, based on the stipulation, that if I grant the motion to dismiss, the parties will transfer the disputed funds into accounts necessary to preserve the status quo, pursuant to Court order if necessary. If my understanding is incorrect, the parties should advise me in a letter within seven days of this Order.

**IT IS SO ORDERED**.

Dated: June 8, 2015

_____
WILLIAM H. ORRICK
United States District Judge

---

[6] In its interpleader complaint, Bitstamp seeks to recover its costs and attorneys' fees incurred in this action. Compl. ¶ 41. The individual defendants argue that Bitstamp should not be awarded fees and costs. Dkt. No. 52 at 17-19. But Bitstamp has not yet filed a fees motion. I therefore do not consider the argument at this stage. The individual defendants may renew the argument in their opposition to Bitstamp's eventual fees motion, should it file one.