1  Grant P. Fondo (SBN 181530)
   *gfondo@goodwinprocter.com*
2  Nicole L. Chessari (SBN 259970)
   *nchessari@goodwinprocter.com*
3  **GOODWIN PROCTER LLP**
   135 Commonwealth Drive
4  Menlo Park, California 94025-1105
   Tel.: 650.752.3100
5  Fax.: 650.853.1038

6  Richard M. Strassberg (*Pro Hac Vice*)
   *rstrassberg@goodwinprocter.com*
7  **GOODWIN PROCTER LLP**
   The New York Times Building
8  620 Eighth Avenue
   New York, NY 10018-1405
9  Tel.: 212.813.8800
   Fax.: 212.355.3333
10
   Attorneys for Defendant/Cross-Plaintiff
11 RIPPLE LABS INC.

12                  **UNITED STATES DISTRICT COURT**

13               **NORTHERN DISTRICT OF CALIFORNIA**

14

15 | BITSTAMP LTD., a foreign company, | Case No. 15-cv-01503-WHO |

16 | Plaintiff, | **RIPPLE LABS INC.'S MEMORANDUM IN OPPOSITION TO CROSS DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |

17 | v. |

18 | RIPPLE LABS INC., a California Corporation, JACOB STEPHENSON, an individual, NANCY HARRIS, an individual, JED MCCALEB, an individual, and DOES 1 Through 10, Inclusive, |

19

20 | Date: | **July 8, 2015** |
   | Time: | **2:00 p.m.** |
   | Location: | Courtroom 2, 17th Floor |

21 | Defendant. | Hon. William H. Orrick |

22 | RIPPLE LABS INC., a California Corporation, |

23 | Cross-Plaintiff, |

24 | v. |

25 | JED MCCALEB, an individual, JACOB STEPHENSON, an individual, and DOES 1 Through 10, Inclusive, |

26

27 | Cross-Defendants. |

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. i

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND ............................................................................................. 3

    A.    The Settlement Agreement ............................................................... 3

    B.    McCaleb Repeatedly Breached The Settlement Agreement ..................... 4

    C.    Procedural History Of This Action ..................................................... 6

III.    LEGAL STANDARD ....................................................................................... 7

    A.    Application Of The CAA, Rather Than The FAA, To The Settlement Agreement ................................................................................... 7

    B.    The Court Shall Determine The Threshold Issue Of Arbitrability ............. 7

    C.    Grounds For Arbitration .................................................................. 9

    D.    Arbitration With Non-Signatories ................................................... 10

IV.    ARGUMENT ............................................................................................... 11

    A.    California Law And The CAA Govern The Settlement Agreement ......... 11

    B.    This Court Has Jurisdiction To Decide Arbitrability ........................... 12

    C.    The Settlement Agreement Expressly Grants Jurisdiction To This Court Over Actions Seeking Specific Performance And Injunctive Relief ......... 15

          1.    Paragraph 10 Is A Mandatory Provision Entitling Ripple Labs To Pursue Its Claims for Injunctive Relief and Specific Enforcement Against McCaleb In This Court. ......................................... 15

          2.    McCaleb Should Not Be Permitted To Forum Shop ................. 21

    D.    Non-Signatory Stephenson Has No Right To Arbitration ..................... 22

    E.    Cross-Defendants' Request To Stay the Cross-Complaint Should Be Denied. ................................................................................... 25

V.    CONCLUSION ............................................................................................ 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*AT&T Mobility LLC v. Bernardi*,

5
    Nos. C 11-03992 CRB, C 11-04412 CRB, 2011 WL 5079549 (N.D. Cal.
    Oct. 26, 2011) ............................................................................................................. 7

6

*In re Art and Architecture Books of the 21st Century*,

7
    518 B.R. 43 (Bankr. C.D. Cal. 2014) ........................................................................ 17

8

*Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*,

9
    366 F.3d 692 (9th Cir. 2004) ..................................................................................... 18

10

*Boucher v. Alliance Title Co., Inc.*,
    127 Cal. App. 4th 262 (2005) .............................................................................. 22, 23

11

*Cal. Retail Portfolio Fund GmbH & Co. KG v. Hopkins Real Estate Grp.*,

12
    193 Cal. App. 4th 849 (2011) .................................................................................... 16

13

*Cardiovascular Biotherapeutics, Inc. v. Jacobs*,

14
    No. 2:14-CV-1965-JCM-PAL, 2015 WL 713181 (D. Nev. Feb. 19, 2015) ............... 19, 20,21

15

*In re Carrier IQ, Inc. Consumer Privacy Litigation*,
    No. C-12-MD-2330-EMC, 2014 WL 1338474 (N.D. Cal. Mar. 28, 2014) ............... 10, 22, 24

16

*In re Cintas Corp. Overtime Pay Arbitration Litigation*,

17
    No. C 06-1781 ............................................................................................................ 9

18

*ConWest Res., Inc. v. Playtime Novelties, Inc.*,

19
    No. C 06-5304SBA, 2007 WL 1288349 (N.D. Cal. May 1, 2007) ........................... 21

20

*Crook v. Wyndham Vacation Ownership, Inc.*,
    No. 13-cv-03669-WHO, 2013 WL 6039399 (N.D. Cal. Nov. 7, 2013) ................... 13

21

*DMS Servs., Inc. v. Super. Ct.*,

22
    205 Cal. App. 4th 1346, 1358 (2012) .......................................................... 10, 24, 25

23

*Ellsworth v. U.S. Bank, N.A.*,

24
    No. C 12-02506 LB, 2012 WL 4120003 (N.D. Cal. Sept. 19, 2012) ................. 8,  14

25

*First Options of Chicago, Inc. v. Kaplan*,
    54 U.S. 938 (1995) ............................................................................................... 8, 23

26

*Fujian Pacific Elec. Co. Ltd. v. Bechtel Power Corp.*,

27
    No. C 04-3126 MHP, 2004 WL 2645974 (N.D. Cal. Nov. 19, 2004) ...................... 9

28

*Goldman v. KPMG, LLP*,
    173 Cal. App. 4th 209 (2009)................................................................................22, 23, 24

*Gonsalves v. Infosys Techs., Ltd.*,
    No. C 3:0904112, 2010 WL 3118861 (N.D. Cal. Aug. 5, 2010) ............................................21

*Hartley v. Sup. Ct.*,
    196 Cal. App. 4th 1249 (2011).......................................................................................*passim*

*Ins. Co. of State of Pa. v. Associated Int'l Ins. Co.*,
    922 F.2d 516 (9th Cir. 1990) .................................................................................................18

*James & Jackson, LLC v. Willie Gary, LLC*,
    906 A.2d 76 (Del. 2006).........................................................................................10, 13, 20

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013)................................................................................................22

*Litton Fin. Printing Div. v. NLRB*,
    501 U.S. 190 (1991) .................................................................................................................8

*Long v. Fidelity Water Sys. Inc.*,
    No. C-97-20118 RMW, 2000 WL 989914 (N.D. Cal. May 26, 2000) .....................................9

*Mastick v. TD Ameritrade, Inc.*,
    209 Cal. App. 4th 1258 (2012).....................................................................................7, 11, 21

*Maxim Mktg. Corp. v. Trader Joe's Co.*,
    No. B258308, 2015 WL 3654495 (Cal. Ct. App. June 12, 2015)....................................11, 21

*Mundi v. Union Sec. Life Ins. Co.*,
    555 F.3d 1042 (9th Cir. 2009)................................................................................22, 23, 24

*Murphy v. DirecTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013)................................................................................................22

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
    724 F.3d 1069 (9th Cir. 2013) ...............................................................................................14

*Patton v. Patton*,
    32 Cal. 2d. 520 (Cal. 1948) ...................................................................................................17

*Poponin v. Virtual Pro, Inc.*,
    No. C 06-4019 PJH, 2006 WL 2691418 (N.D. Cal. Sept. 20, 2006) ........................................8

*Rajagopalan v. NoteWorld, LLC*,
    718 F.3d 844 (9th Cir. 2013)..................................................................................................24

*Riverside Publ'g Co. v. Mercer Publ'g LLC*,
    829 F. Supp. 2d 1017 (W.D. Wash. 2011) .............................................................................22

RIPPLE LABS' OPPOSITION TO CROSS-DEFS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
Case No. 15-cv-01503-WHO

*Samson v. NAMA Holdings, LLC*,
    637 F.3d 915 (9th Cir. 2011) ................................................................................. 9

*SanDisk Corp. v. SK Hynix Inc.*,
    No. 14-CV-04940-LHK, 2015 WL 1395910 (N.D. Cal. Mar. 26, 2015) ............................ 8, 9

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*,
    559 U.S. 662 (2010) ............................................................................... 9, 10, 22

*Tracer Research Corp. v. Nat'l Envtl. Serv. Co.*,
    42 F.3d 1292 (9th Cir. 1994) ................................................................................ 9

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
    363 U.S. 574 (1960) ......................................................................................... 8

*Valencia v. Smyth*,
    185 Cal. App. 4th 153 (2010) ............................................................................ 11

*In re Van Dusen*,
    654 F.3d 838 (9th Cir. 2011) ......................................................................... 7, 12

*Volt Info. Sciences v. Stanford Univ.*,
    489 U.S. 468 (1989) ......................................................................................... 7

*Whaley v. Sony Computer Entm't. Am., Inc.*,
    121 Cal. App. 4th 479 (2004) ....................................................................... 11, 21

**Statutes**

9 U.S.C. § 1 *et seq.* .......................................................................................... 7

Cal. Code Civ. Proc. § 1281.2 ............................................................................ 10

Cal. Code Civ. Proc. § 1281.2(c) ................................................................ 11, 21, 25

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.     INTRODUCTION

Movants seek to take away a fundamental right of Ripple Labs—the right to have a court adjudicate its claims.  Not only is this a litigant's right unless explicitly and clearly contracted away, but the Settlement Agreement between Ripple Labs Inc. ("Ripple Labs"), Jed McCaleb and Stellar Development Foundation ("Stellar") (the "Settlement Agreement") protects this right, setting forth that a party seeking only specific performance and injunctive relief shall be entitled to bring these claims before this Court.  Paragraph 10 of the Settlement Agreement, entitled "Specific Enforcement," expressly provides that "the Parties shall be entitled to an injunction to prevent breaches of this Agreement, and to specific enforcement of this Agreement and its terms and provisions in any action instituted in any court of the United States or any state having subject matter jurisdiction"—the very same claims (and the only claims) brought by Ripple Labs against McCaleb.

Movants McCaleb, Harris, Stephenson, and Stellar (the "Movants" or "McCaleb Defendants") gloss over the requirements set forth in Paragraph 10, and instead, seek to force these claims into arbitration in an effort to avoid this Court's jurisdiction and scrutiny.  They seek to do so pursuant to a separate and subsequent paragraph in the Settlement Agreement, Paragraph 11, entitled "Dispute Resolution."  Paragraphs 10 and 11 are separate for a reason—each permits the parties to pursue different types of claims and relief in different venues—otherwise Paragraph 10 would be superfluous.

Movants, in seeking to nullify Ripple Labs' rights under Paragraph 10, argue that Paragraph 11's language governs and essentially supersedes the rights afforded in Paragraph 10.  That is incorrect.  For example, Movants rely on the last sentence of Paragraph 11, which provides that "This clause shall not preclude the parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction, as provided in Paragraph 10 herein."  But that language does not help Movants.  Paragraph 10 is a mandatory provision, which entitles the parties to seek injunctive relief, specific performance, and other equitable relief in federal court, and permits the parties to bring "any such equitable action arising from or relating to enforcement

1

1   of this Agreement in the U.S. District Court for the Northern District of California."  The relief

2   and remedies permitted in Paragraph 10 are not "provisional" remedies and, thus, are not

3   encompassed by the language of Paragraph 11.  Nor does Paragraph 10 contain any language

4   stating it is subject to or somehow limited by Paragraph 11.  Further, Movants misread and

5   misapply this last sentence of Paragraph 11.  Its reference at the end to "as provided for in

6   Paragraph 10 herein" does not mean Paragraph 10 is subsumed by Paragraph 11, but rather that "a

7   court of appropriate jurisdiction" is any court identified in Paragraph 10.

8          Movants also assert that the phrase in Paragraph 11 that "including the determination of

9   the scope or applicability of this agreement to arbitrate [] shall be determined by arbitration"

10  supersedes Paragraph 10.  It does not—Paragraph 10 is standalone paragraph that explicitly

11  permits any party to seek the injunctive relief and specific performance sought by Ripple Labs

12  against McCaleb in this Court.  Moreover, throughout the Settlement Agreement, the entirety of

13  that document is referred to as the "Agreement," with a capital "A."  Conversely, the agreement

14  referenced in Paragraph 11 is referred to as "agreement" with a lower case "a."  Thus, this

15  language refers only to Paragraph 11 and the agreement reached therein—it does not encompass

16  the agreement reached in Paragraph 10.

17         Similarly, the case law relied upon by the McCaleb Defendants is not applicable, as those

18  cases all relate to agreements with one paragraph setting forth the parties' agreement to arbitrate—

19  that factual situation, while common, is not the case before this Court.  Rather, this Court is faced

20  with the much less litigated circumstance of two separate paragraphs, one providing for judicial

21  relief, the other arbitration.  When faced with two separate paragraphs (or a specific carve-out)

22  like here, courts have rejected motions to compel arbitration of the claims identified in the

23  agreement as properly brought before a court.  The division found here is logical—it permits the

24  parties to utilize the courts to stop breaches and enforce compliance, without getting into damages.

25  Particularly in an agreement such as the current one, where, realistically, future disputes likely

26  would be about whether a party is selling more than his agreed upon limits.  Right or wrong, some

27  parties believe the courts are better equipped to deal with requests for TROs, injunctions, and

28  specific performance, and want the right to pursue that option.  That is what McCaleb and Ripple

2

1  Labs agreed to, as memorialized in Paragraph 10.  Movants' effort to nullify Paragraph 10, treat it

2  as a subset of Paragraph 11, and deprive Ripple Labs' right to bring its claims against McCaleb in

3  this Court should be rejected.

4      Finally, the Court should reject the McCaleb Defendants' attempt to wrest from this court

5  jurisdiction of Ripple Labs' claims against Stephenson.  He is not a party to the Settlement

6  Agreement and, Ripple Labs never agreed to arbitrate any claims it has, or may have, against him.

7  Contrary to the McCaleb Defendants' belief, equitable estoppel does not apply in this case,

8  particularly where the specific (and limited) claims actually being brought against McCaleb—the

9  only Cross-Defendant signatory to the Settlement Agreement—are properly before this Court.

10  **II.      BACKGROUND**

11      **A.      The Settlement Agreement**

12      In March 2014, McCaleb resigned from Ripple Labs' Board of Directors and, almost

13  immediately thereafter, started selling large amounts of XRP, negatively impacting the XRP price.

14  Dkt. No. 23-2 (Schwartz Decl. [1]), ¶ 13.  Ultimately, a dispute arose over whether McCaleb had the

15  legal right to the XRP he was selling.  *Id.*, ¶ 15.  Ripple Labs, McCaleb, and other related parties

16  engaged in discussions to resolve this dispute, which resulted in the culmination of a Settlement

17  Agreement on August 13, 2014, between Ripple Labs and Christian Larsen (Ripple Labs' Chief

18  Executive Officer) on one hand and McCaleb, Joyce Kim (McCaleb's girlfriend and co-founder of

19  Stellar), and Stellar on the other hand (the "Settlement Agreement").  *Id.*, ¶ 15.

20      Under the terms of the Settlement Agreement, McCaleb agreed, among other things, that

21  for the first year of the Settlement Agreement, he would limit his sales of "McCaleb XRP" to

22  $10,000 per week, $20,000 per week for years two and three, and larger amounts for a number of

23  years thereafter.  Dkt. No. 10-4 (Settlement Agreement), ¶ 2.a.  "McCaleb XRP" is defined under

24  the Settlement Agreement as "the approximately 7,500,000,000 XRP currently in the Ripple

25  Network in accounts owned and/or controlled by Jed McCaleb, as reflected in Exhibit A hereto,

26  including XRP held by or for the benefit of his children or other family members."  *Id.*, ¶

27

28  [1] References to "Schwartz Decl." refer to the Declaration of Rebecca Schwartz in Support of Ripple Labs' *Ex Parte* Application for a TRO and an Order to Show Cause Why a Preliminary Injunction Should Not Issue. Dkt. No. 23-2.

20.c.  Paragraph 9 provides that the Settlement Agreement "shall be governed by, construed and interpreted in accordance with, the laws of the State of California. . . ."  *Id.,* ¶ 9.

McCaleb and the other signatories to the Settlement Agreement further acknowledged and agreed to a "Specific Enforcement" clause which provides:

> Each party acknowledges and agrees that each party hereto will be irreparably damaged in the event any of the provisions of this Agreement are not performed by the Parties in accordance with their specific terms or are otherwise breached. **Accordingly, it is agreed that the Parties shall be entitled to an injunction to prevent breaches of this Agreement, and to specific enforcement of this Agreement and its terms and provisions in any action instituted in any court of the United States or any state having subject matter jurisdiction.**  Each of the parties to this Agreement consents to venue and personal jurisdiction for any such equitable action arising from or relating to enforcement of this Agreement sought **in the U.S. District Court for the Northern District of California or any court of the State of California having subject matter jurisdiction**.

*Id.*, ¶ 10 (emphases added).  The Settlement Agreement also contains an arbitration provision, entitled "Dispute Resolution, at Paragraph 11:

> Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in San Francisco, California before one arbitrator.  The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules. Judgment on the Award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction, as provided in Paragraph 10 herein.

*Id.*, ¶ 11.

## B.    McCaleb Repeatedly Breached The Settlement Agreement

On August 14, 2014, just one day after executing the Settlement Agreement, Ripple account r3Q3B6A2giHDMef83AztzBStBm1JBmxUKX ("r3Q"), an account purportedly owned by someone Ripple Labs later learned was McCaleb's cousin, Jacob Stephenson, a resident of Arkansas, sold approximately $16,884 worth of XRP—well over the agreed-upon limit.  Schwartz Decl., ¶ 17.  r3Q continued to regularly sell well over the $10,000 worth of XRP per week, totaling $398,877 over a six-week period.  *Id.*  The sales by r3Q persisted until September 25, 2014, when it ran out of XRP.  *Id.*  Within hours of r3Q's depletion, rnj8sNUBCw3J6sSstY9QDDoncnijFwH7Cs ("rnj8"), one of McCaleb's original or "genesis"

---

RIPPLE LABS' OPPOSITION TO CROSS-DEFS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
Case No. 15-cv-01503-WHO

1    accounts, which was first created on or before December 2012 and had never before sold XRP,

2    also began selling substantial amounts of XRP.  *Id.*, ¶ 20.  rnj8 regularly sold well in excess of the

3    $10,000 XRP per week limit, selling approximately $93,400 worth of XRP over a two-week

4    period, until it ran out of XRP on October 8, 2014.  *Id.*  Ripple Labs has reason to believe that

5    those XRP sales by r3Q and sales by rnj8 were executed by McCaleb, at McCaleb's direction,

6    and/or on McCaleb's behalf, in violation of the Settlement Agreement.  *See Id.*, ¶¶ 20-22.

7        On or about March 16, 2015, Stellar (McCaleb's company) initiated an auction of its

8    native currency, STR, to help meet expenses.  *Id.*, ¶ 23.  After three days, the auction had raised

9    less than $2,000 of the $2,000,000 Stellar intended to raise.  *Id.*, ¶ 24.  On or around March 20,

10   2015, Stephenson's r3Q Ripple account offered over 96 million XRP that it received from Harris

11   for sale on the Ripple protocol, again in violation of the Settlement Agreement.  *Id.*, ¶ 28.  To

12   ensure that it would not be unduly damaged by McCaleb's breach of the Settlement Agreement,

13   Ripple Labs quickly purchased all of the XRP from the r3Q account for $1,038,172 to mitigate its

14   damages by preventing this 96 million XRP from flooding the open market.  *Id.*, ¶ 29.  This

15   money constitutes the "Disputed Funds" at issue in this action.

16       To facilitate this transaction, Ripple Labs delivered the $1,038,172 to a digital currency

17   exchange company, Bitstamp, r3Q delivered the XRP to Bitstamp, and both parties utilized

18   Bitstamp to transfer the money/XRP to the other party.  *Id.*, ¶ 30.  Thereafter, r3Q attempted to use

19   the Disputed Funds to purchase a different crypto currency, STR, offered by Stellar through the

20   Coinex gateway.  *Id.*, ¶ 31.  However, Bitstamp was concerned by the suspicious nature and size

21   of the transaction, and about McCaleb's involvement in the transaction given his being a

22   "notorious figure in the virtual currency community," including for his role in the founding of Mt.

23   Gox, and the pending criminal investigation into his financial activities.  *See* Dkt. No. 1

24   (Interpleader Complaint), ¶ 24; *see also* Dkt. No. 20 (Bitstamp's Motion to Discharge), at p. 4;

25   Dkt. No. 23-1 (Declaration of Grant P. Fondo), at ¶ 5.  Due to these concerns, Bitstamp froze the

26   U.S. dollars that r3Q obtained from Ripple Labs and was trying to use to purchase the STR, i.e.,

27   the Disputed Funds.  *See* Dkt. No. 1 (Interpleader Complaint), ¶ 24; Dkt. No. 20 (Bitstamp's

28   Motion to Discharge), at p. 4.

**C.     Procedural History Of This Action**

On April 2, 2015, Bitstamp filed a Complaint for Interpleader requesting guidance from the Court to decide the proper owner of the Disputed Funds, and due to concerns about the propriety and legality of the transfers.  *See* Dkt. No. 1 (Interpleader Complaint).  On April 29, 2015, Ripple Labs filed the instant Cross-Complaint against McCaleb and Stephenson seeking injunctive relief and specific performance against McCaleb to prevent further breaches of the Settlement Agreement and seeking damages against Stephenson for tortiously interfering with the Settlement Agreement.  *See* Dkt. No. 9 (Cross-Complaint).  To maintain the *status quo* regarding the Disputed Funds, on May 14, 2015, Ripple Labs filed an *ex parte* application for temporary restraining order, preliminary injunction, and motion for expedited discovery against McCaleb and Stephenson.  *See* Dkt. No. 23 (TRO Application).  One day later, this Court granted Ripple Labs' motion for temporary restraining order and ordered expedited discovery.  *See* Dkt. No. 24 (TRO Order).

McCaleb and Stephenson subsequently appeared in this action and, on May 20, 2015, filed a motion to dissolve or modify the temporary restraining order.  *See* Dkt. No. 31.  On May 22, 2015, the parties appeared before the Court to argue the merits of Cross-Defendants' motion to dissolve or modify the temporary restraining order.  *See* Dkt. No. 42 (May 22 Minute Order).  The parties also discussed the expedited discovery schedule with the Court.  *Id.*  During the hearing, the Court denied the McCaleb Defendants' motion to dissolve or modify the temporary restraining order and requested the parties meet and confer regarding the scope and timing of the previously ordered expedited discovery.  *Id.*  Hours before the start of the May 22, 2015 motion hearing, McCaleb and Stephenson filed the instant motion to compel arbitration (the "Motion").  *See* Dkt. No. 40.  After the May 22, 2015, hearing denying their dissolution motion and re-affirming expedited discovery, Movants consented to Ripple Labs' motion for preliminary injunction in exchange for Ripple Labs foregoing expedited discovery as to McCaleb and Stephenson.  The stipulation granting Ripple Labs' motion for preliminary injunction provided, in part, that the Disputed Funds would soon be deposited with the Court pending final resolution of this case.  Dkt. No. 60, ¶ 1.

1    **III.    LEGAL STANDARD**

2        **A.    Application Of The CAA, Rather Than The FAA, To The Settlement

3               Agreement**

4        Although the Federal Arbitration Act ("FAA") often governs contracts containing

5    arbitration clauses, the California Arbitration Act ("CAA") governs agreements containing

6    California choice of law provisions.  *Mastick v. TD Ameritrade, Inc.*, 209 Cal. App. 4th 1258,

7    1263-64 (2012) ("contracting parties may agree that the FAA will not govern their arbitration even

8    if the contract involves interstate commerce. . . . If the parties agree that California law 'governs'

9    the contract, the CAA applies."); *see also Volt Info. Sciences v. Stanford Univ.*, 489 U.S. 468, 470

10   (1989) ("We hold that application of the California statute is not pre-empted by the Federal

11   Arbitration Act (FAA or Act), 9 U.S.C. § 1 et seq., in a case where the parties have agreed that

12   their arbitration agreement will be governed by the law of California.").  When parties agree that a

13   contract shall be governed by California law, and thus the CAA applies, the application of the

14   CAA "does not conflict with the FAA or frustrate its objectives.  The FAA simply requires courts

15   to enforce arbitration agreements in accordance with the terms in the agreement."  *Mastick*, 209

16   Cal. App. 4th at 1264.  Indeed, as the U.S. Supreme Court explained:

17           Just as [parties] may limit by contract the issues which they will arbitrate . . . so too
18           may they specify by contract the rules under which that arbitration will be
             conducted. Where, as here, the parties have agreed to abide by state rules of
19           arbitration, enforcing those rules according to the terms of the agreement is fully
             consistent with the goals of the FAA. . . . By permitting the courts to "rigorously
20           enforce" such agreements according to their terms . . . we give effect to the
             contractual rights and expectations of the parties, without doing violence to the
21           policies behind by the FAA.

22   *Volt Info. Sciences*, 489 U.S. at 479.

23       **B.    The Court Shall Determine The Threshold Issue Of Arbitrability**

24       Unless the parties "***clearly and unmistakably***" provide otherwise, it is for the Court, not an

25   arbitrator, to determine whether the parties agreed to arbitrate any particular dispute.  *In re Van

26   Dusen*, 654 F.3d 838, 843 (9th Cir. 2011) (quoting *AT&T Techs. v. Commc'ns Workers*, 475 U.S.

27   643, 649 (1986)) (emphasis added); *AT&T Mobility LLC v. Bernardi*, Nos. C 11-03992 CRB, C

28   11-04412 CRB, 2011 WL 5079549, at *4 (N.D. Cal. Oct. 26, 2011) ("The scope of arbitrability is

7

1  for the court to decide."); *Poponin v. Virtual Pro, Inc.*, No. C 06-4019 PJH, 2006 WL 2691418, at

2  *9 (N.D. Cal. Sept. 20, 2006) (noting the "general presumption that arbitrability should be decided

3  by the court."); *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 208 (1991) ("[A] party cannot be

4  forced to arbitrate the arbitrability question.").

5          A contract's "silence or ambiguity" about the arbitrator's power to decide its own

6  jurisdiction cannot satisfy the "clear and unmistakable evidence standard," which is a

7  "heightened" standard.  *Hartley v. Super. Ct.*, 196 Cal. App. 4th 1249, 1257-1258 (2011); *SanDisk*

8  *Corp. v. SK Hynix Inc.*, No. 14-CV-04940-LHK, 2015 WL 1395910, at *4 (N.D. Cal. Mar. 26,

9  2015) (noting that "the Supreme Court also recognizes a heightened standard for an arbitrator to

10  decide arbitrability issues.").  Rather, when an agreement is ambiguous, "the court and not the

11  arbitrator should decide arbitrability so as not to force unwilling parties to arbitrate a matter they

12  reasonably thought a judge, not an arbitrator, would decide."  *Hartley*, 196 Cal. App. 4th at 1258

13  (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)).  One such reason for

14  this policy is because courts recognize that permitting the arbitrator to decide the issue of

15  arbitrability, even if the contract so provides, raises concerns regarding a potential conflict of

16  interest by the arbitrator.  *See id.* at 1255 (internal citations omitted).

17          Where, as here, the parties are not disputing the validity of the contract, but the moving

18  party is asserting that the court lacks jurisdiction to determine "not merely the decision of the

19  merits of the grievance but also the question of its arbitrability, vesting power to make ***both***

20  decisions in the arbitrator, the [moving party] must bear the burden of a ***clear demonstration*** of

21  that purpose."  *Hartley*, 196 Cal. App. 4th at 1259 (emphasis added); *United Steelworkers of Am.*

22  *v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 583 (1960) ("[T]he normal situation is that courts

23  decide arbitrability; a party seeking to upset normal expectations must therefore make a 'clear

24  demonstration' to the contrary.").  Even if the Court determines that the moving party has met that

25  burden by presenting "clear and unmistakable" evidence that the parties to the agreement vested

26  an arbitrator with the authority to determine arbitrability, the Court should still, nonetheless,

27  perform a second inquiry, to determine whether the assertion of arbitrability is "wholly

28  groundless," and if so, it should deny the motion.  *Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506

8

1   LB, 2012 WL 4120003, at *6, 7 (N.D. Cal. Sept. 19, 2012) ("Upon finding that an assertion of

2   arbitrability is 'wholly groundless,' the court may deny the request for a stay notwithstanding the

3   parties' clear and unmistakable intent to delegate arbitrability decisions.").

4         **C.**     **Grounds For Arbitration**

5        "There is no public policy favoring arbitration of disputes which the parties have not

6   agreed to arbitrate." *Fujian Pacific Elec. Co. Ltd. v. Bechtel Power Corp.*, No. C 04-3126 MHP,

7   2004 WL 2645974, at *4 (N.D. Cal. Nov. 19, 2004); *First Options of Chicago, Inc.*, 514 U.S. at

8   943 ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those

9   disputes—but only those disputes—that the parties have agreed to submit to arbitration.").

10   "Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court,

11   there should be an express, unequivocal agreement to that effect." *Long v. Fidelity Water Sys.*

12   *Inc.*, No. C-97-20118 RMW, 2000 WL 989914, at *3 (N.D. Cal. May 26, 2000) (citations

13   omitted).  This is because "[n]otwithstanding the federal policy favoring it, arbitration is a matter

14   of contract and a party cannot be required to submit to arbitration any dispute which he has not

15   agreed so to submit." *Tracer Research Corp. v. Nat'l Envtl. Serv. Co.*, 42 F.3d 1292, 1294 (9th

16   Cir. 1994) (citations omitted).

17        The Court has the authority to decide "certain gateway matters, such as the validity and

18   applicability of the arbitration clause." *In re Cintas Corp. Overtime Pay Arbitration Litig.*, No. C

19   06-1781 SBA, 2007 WL 137149, at *6 (N.D. Cal. Jan. 12, 2007).  The "first task" the Court must

20   undergo in assessing the scope of an arbitration clause is "to determine whether the parties agreed

21   to arbitrate *that* dispute." *SanDisk Corp.*, 2015 WL 1395910, at *4 (citing *Mitsubishi Motors*

22   *Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)) (emphasis in original).  An

23   arbitration clause does not grant one party unbridled access to an arbitral panel. *See SanDisk*

24   *Corp.*, 2015 WL 1395910, at *8 (noting that where "the parties intended to exclude a matter from

25   arbitration, a court should 'not override the clear intent of the parties, or reach a result inconsistent

26   with the plain text of the contract.'") (citations omitted).  Parties are "free to structure their

27   arbitration agreements as they see fit," and may "agree to limit the issues they choose to arbitrate."

28   *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 683 (2010); *Samson v. NAMA*

1    *Holdings, LLC*, 637 F.3d 915, 923 (9th Cir. 2011).

2         A contract containing two separate clauses—one vesting an arbitrator with the authority to

3    arbitrate claims relating to the agreement and another vesting the court with the authority to

4    adjudicate injunctive or equitable relief—evidences the parties' intent to "obtain injunctive relief

5    and specific performance in the courts."  *See James & Jackson, LLC v. Willie Gary, LLC*, 906

6    A.2d 76, 81-82 (Del. 2006); *Hartley*, 196 Cal. App. 4th at 1260-62.  These types of dual

7    provisions do not lend themselves to the interpretation that the parties to the agreement intended

8    only to permit court intervention to enforce an arbitration award (*see e.g.*, *James & Jackson*, 906

9    A.2d at 81) or to obtain provisional equitable relief in aid of arbitration (*see e.g.*, *Hartley*, 196 Cal.

10   App. 4th at 1260-61).

11        Even if the Court determines that a valid arbitration clause applies to some of the claims

12   before it, the CAA gives the Court discretion to delay arbitration while non-arbitrable issues are

13   litigated in the Court, which may ultimately render arbitration unnecessary.  *See DMS Servs., Inc.*

14   *v. Super. Ct.*, 205 Cal. App. 4th 1346, 1358 (2012).  As California law provides:

15
> If the court determines that there are other issues between the petitioner and the
16   respondent which are not subject to arbitration and which are the subject of a
pending action or special proceeding between the petitioner and the respondent and
17   that a determination of such issues may make the arbitration unnecessary, the court
may delay its order to arbitrate until the determination of such other issues or until
18   such earlier time as the court specifies.

19   Cal. Code Civ. Proc. § 1281.2.

20        **D.      Arbitration With Non-Signatories**

21        A fundamental assumption in arbitration is that parties who enter into an arbitration

22   agreement **consent** and **contract** to resolve their disputes with **each other** through arbitration.  *See*

23   *Stolt-Nielsen S.A.*, 559 U.S. at 685 ("We think it is also clear from our precedents and the

24   contractual nature of arbitration that parties may specify **with whom** they choose to arbitrate their

25   disputes.") (emphases in original).  "Generally, one who is not signatory to an agreement has no

26   right to enforce it."  *In re Carrier IQ, Inc. Consumer Privacy Litig.*, No. C-12-MD-2330-EMC,

27   2014 WL 1338474, at *5 (N.D. Cal. Mar. 28, 2014).

28        Section 1281.2(c) of the CAA, which applies to the underlying Settlement Agreement,

10

1  grants a trial court authority to refuse to enforce a written arbitration agreement when (1) a party

2  to the agreement also is a party to pending litigation with a third party who did not agree to

3  arbitration; (2) the pending third party litigation arises out of the same transaction or series of

4  related transactions as the claims subject to arbitration; and (3) the possibility of conflicting

5  rulings on common factual or legal issues exists.  Cal. Code Civ. Proc. § 1281.2(c); *Mastick*, 209

6  Cal. 4th at 1264 (a court can "refuse to enforce an arbitration provision if a contracting party is

7  involved in related litigation with a third party that creates the risk of conflicting rulings on a

8  common issue of law or fact."); *Valencia v. Smyth*, 185 Cal. App. 4th 153, 156-57 (2010)

9  (affirming trial court denial of arbitration under the CAA where "(1) some of the parties to the

10  action were not parties to the agreement, and (2) proceedings in different forums—arbitral and

11  judicial—could result in conflicting rulings on a common issue of fact or law.").  In that situation,

12  "'where some claimants agree to arbitrate their differences and others remain outside the

13  agreement,'" the Legislature determined that "'***arbitration is unworkable***.'"  *Whaley v. Sony*

14  *Computer Entm't. Am., Inc*., 121 Cal. App. 4th 479, 488 (2004) (quoting Sen. Com. on Judiciary,

15  Analysis of Sen. Bill No. 1628 at 2 (1997–1998 Reg. Sess.)) (emphasis added).  Specifically,

16  Section 1281.2(c) of the CAA applies to cases where there is a claim against a party to an

17  arbitration agreement for breach of contract and a separate claim against a non-signatory for

18  intentional interference with the same contract because "[w]ere the claims against the two

19  defendants to be tried in separate proceedings, the triers of fact could reach different conclusions

20  as to whether the contracts existed, what their terms were, and whether they were breached."

21  *Maxim Mktg. Corp. v. Trader Joe's Co.*, No. B258308, 2015 WL 3654495, at *7 (Cal. Ct. App.

22  June 12, 2015).

23  **IV.    ARGUMENT**

24       **A.    California Law And The CAA Govern The Settlement Agreement**

25       Paragraph 9 to the Settlement Agreement provides that it "shall be governed by, construed

26  and interpreted in accordance with, the laws of the State of California . . . ."  Thus, California law

27  and, to the extent that this action is subject to arbitration, which it is not, the CAA—not the

28  FAA—govern this dispute.  *Mastick*, 209 Cal. 4th at 1263-64 ("contracting parties may agree

11

1   that the FAA will not govern their arbitration even if the contract involves interstate commerce. . .

2   . If the parties agree that California law 'governs' the contract, the CAA applies.").

### B.   This Court Has Jurisdiction To Decide Arbitrability

4          Applying the wrong law (the FAA instead of the CAA) and the wrong provision of the

5   Settlement Agreement (Paragraph 11 instead of Paragraph 10), the McCaleb Defendants attempt

6   to minimize this Court's discretion and role in determining whether the claims asserted by Ripple

7   Labs against McCaleb are arbitrable.  However, in order for the Court to grant the McCaleb

8   Defendants' request to have an arbitrator decide arbitrability, the McCaleb Defendants bear the

9   burden of demonstrating that the Settlement Agreement "***clearly and unmistakably***" requires

10  arbitration of these claims.  *In re Van Dusen*, 654 F.3d at 843 (quoting *AT&T Techs.*, 475 U.S. at

11  649 (1986)) (emphasis added); *Hartley*, 196 Cal. App. 4th at 1259.  This is a burden that they have

12  not, and cannot meet, because the parties did not agree to arbitrate this dispute.

13         Ripple Labs brought this action against McCaleb for injunctive relief and specific

14  performance under Paragraph 10 of the Settlement Agreement—not under Paragraph 11—which

15  expressly provides that Ripple Labs "**shall be entitled** to an injunction to prevent breaches of this

16  Agreement, and to specific enforcement of this Agreement and its terms and provisions in any

17  action instituted in any court of the United States or any state having subject matter jurisdiction."

18  Thus, the question for this Court is whether Paragraph 10 "clearly and unmistakably" requires this

19  Court to submit the issue as to the meaning of Paragraph 10 to an arbitrator—the answer is no.

20  *See, e.g.*, *Hartley*, 196 Cal. App. 4th at 1258 ("[T]he court and not the arbitrator should decide

21  arbitrability so as not to force unwilling parties to arbitrate a matter they reasonably thought a

22  judge not an arbitrator, would decide.").[2]

23         Movants, instead of looking to Paragraph 10, rely on the following sentence of Paragraph

24  11 for their assertion that the threshold issue of arbitrability must be decided by an arbitrator:  "the

25  

26  [2] Although Ripple Labs contends that the language set forth in Paragraphs 10 and 11 clearly provides the Court with
    jurisdiction over this dispute, should this Court decide that the language relied upon by the McCaleb Defendants is
    ambiguous, it still has jurisdiction to determine whether the arbitration clause in the Settlement Agreement requires

27  arbitration of this action.  *See Hartley*, 196 Cal. App. 4th at 1257-58 (holding that a contract's "silence or ambiguity"
    about the arbitrator's power to decide its own jurisdiction cannot satisfy the "heightened" "clear and unmistakable

28  evidence standard.").

1  determination of the scope or applicability of *this agreement to arbitrate*, shall be determined by

2  arbitration in San Francisco, California before one arbitrator."  *See* Mot. at 8 (emphasis added).

3  However, "this agreement", with a lowercase "a", refers only to the agreement reached between

4  the parties to arbitrate certain claims, as reflected *in Paragraph 11*.  It is not a reference to an

5  argument between the parties to arbitrate all disputes, claims, and relief relating to the Settlement

6  Agreement, as a whole.  This is evident by the fact that throughout the entire Settlement

7  Agreement, the contract, when referenced as a whole, is referred to as the "Agreement," with a

8  capital "A," as defined in the introductory paragraph thereof.  There are no other instances

9  anywhere in the Settlement Agreement where the agreement itself is referred to as the, lowercase,

10  "agreement."  Thus, the phrase by which they rely in an effort to move this case to arbitration, is

11  not what they say it is and does not apply to this dispute, brought pursuant to Paragraph 10.

12  Because the McCaleb Defendants are unable to satisfy this heightened standard of demonstrating

13  that there is "clear and unmistakable" evidence that an arbitrator has been granted the authority to

14  determine arbitrability as to the limited claims brought forth by Ripple Labs in this action, this

15  Court must determine its own jurisdiction.

16       The cases cited by Movants do not change this outcome.  In *Crook v. Wyndham Vacation*

17  *Ownership, Inc.*, No. 13-cv-03669-WHO, 2013 WL 6039399, at *2 (N.D. Cal. Nov. 7, 2013)

18  (Orrick, J.), the parties' agreement did not contain a provision vesting the court with jurisdiction to

19  adjudicate injunctive relief.  As a result, the Court could only rely on the presumption that the

20  incorporation of the AAA meant the parties intended the arbitrator to decide the issue of

21  arbitrability.  *Id.* at *6.  In contrast, here, Paragraph 10 vests only the courts with jurisdiction to

22  adjudicate injunctive relief and specific performance.  There is no mention of an arbitrator's

23  authority anywhere in Paragraph 10.  Thus the parties' reference to JAMS in Paragraph 11 is

24  irrelevant to the relief that Ripple Labs seeks pursuant to Paragraph 10 and fails to provide clear

25  and unmistakable evidence of intent to have an arbitrator determine arbitrability as to the pending

26  claims.  *See James & Jackson*, 906 A.2d at 81 (noting that despite the adoption of the AAA rules

27  for arbitration, since the parties' agreement did not refer "all controversies to arbitration," there

28  lacks "clear and unmistakable evidence of intent" to have an arbitrator determine arbitrability).

13

1    Similarly, in *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1071 (9th Cir. 2013),

2  the court relied on the parties' reference to the UNCITRAL rules to assume that evinces a clear

3  and unmistakable intent to submit questions of arbitrability to an arbitrator. *Id.* at 1075.  An

4  agreement to utilize standard arbitral rules like UNCITRAL or the AAA does not mean that

5  parties automatically agree to have an arbitrator decide arbitrability.  Moreover, the court relied on

6  a narrow carve-out provision contained in a single paragraph of the arbitration clause to hold that

7  the parties agreed to submit the issue of arbitrability to an arbitrator.  The arbitration clause stated,

8  in part, "except that either party may bring any action, in a court of competent jurisdiction (which

9  jurisdiction shall be exclusive), with respect to any dispute relating to such party's Intellectual

10  Property Rights." *Id.*  The arbitration clause stated nothing about vesting the court with

11  jurisdiction to adjudicate injunctive relief or specific performance.  Conversely, Paragraph 10

12  expressly grants this Court with authority to adjudicate injunctive relief and specific performance.

13  Paragraph 10 provides no indication that the parties agreed to have an arbitrator determine

14  arbitrability.  Because the Settlement Agreement lacks clear and unmistakable evidence of an

15  arbitrator's authority to decide arbitrability, the general presumption that this Court is vested with

16  the jurisdiction to decide its own jurisdiction should be applied.

17    Even if the Court determines that the McCaleb Defendants have met their burden to

18  demonstrate by presenting "clear and unmistakable" evidence that the parties to the Settlement

19  Agreement vested an arbitrator with the authority to determine arbitrability, which they have not,

20  the Court should deny the McCaleb Defendants' motion to compel arbitration and stay this action

21  because the assertion that the claims against McCaleb must be arbitrated is "wholly groundless."

22  *See Ellsworth v. U.S. Bank, N.A.,* No. C 12-02506 LB, 2012 WL 4120003, at *6, 7 (N.D. Cal.

23  Sept. 19, 2012).  As further discussed below, Paragraph 10 documents the parties' intent to permit

24  signatories to the Settlement Agreement to bring claims for injunctive relief and specific

25  performance arising from the Settlement Agreement in this Court.

26

27

28

RIPPLE LABS' OPPOSITION TO CROSS-DEFS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
Case No. 15-cv-01503-WHO

**C.**   **The Settlement Agreement Expressly Grants Jurisdiction To This Court Over Actions Seeking Specific Performance And Injunctive Relief**

1.   Paragraph 10 Is A Mandatory Provision Entitling Ripple Labs To Pursue Its Claims for Injunctive Relief and Specific Enforcement Against McCaleb In This Court.

Paragraph 10 to the Settlement Agreement provides:

Accordingly, it is agreed that the **Parties shall be entitled to an injunction** to prevent breaches of this Agreement, and to **specific enforcement of this Agreement** and its terms and provisions in any action instituted in any court of the United States or any state having subject matter jurisdiction.  Each of the parties to this Agreement consents to venue and personal jurisdiction for any such **equitable action** arising from or relating to enforcement of this Agreement sought in the U.S. District Court for the Northern District of California or any court of the State of California having subject matter jurisdiction.

(emphasis added).  By its plain language, this provision expressly invokes the jurisdiction of this Court to adjudicate the specific enforcement, equitable, and injunctive relief that Ripple Labs seeks against McCaleb.

a.   Paragraphs 10 And 11 Are Separate And Distinct.

The "Specific Enforcement" clause of Paragraph 10 and the "Dispute Resolution" clause of Paragraph 11 are separate and disjunctive provisions—each having its own distinct purpose. Contrary to the McCaleb Defendants' assertion (*see* Motion, at 9-10), there is nothing on the face of the Settlement Agreement that requires the two clauses be read as one.  Indeed, it is not by accident that the first of the two relevant paragraphs is entitled "Specific Enforcement," is separate from the "Dispute Resolution" paragraph, and permits certain types of relief not discussed or covered by Paragraph 11.

Nonetheless, the McCaleb Defendants dismiss the language of Paragraph 10 by asserting that it is "not mandatory."  *See* Motion at 9.  That is incorrect.  Paragraph 10 expressly provides that "the Parties *shall* be entitled to an injunction . . . and to specific enforcement . . . in any court of the United States."  Settlement Agreement, ¶ 10 (emphasis added).  Ironically, the McCaleb Defendants rely heavily on this same "shall" language in the Arbitration Clause to support their grossly overstated contention that, under the Settlement Agreement "it is not possible for a claim to be determined without arbitration[.]"  *See* Motion at 9-10.  But they cannot have it both ways.

15

1    It is contradictory for the McCaleb Defendants to claim that a court action is "not mandatory" or a

2    "must," under Paragraph 10 (*see* Motion at 9) while, at the same time, argue that arbitration is

3    required under Paragraph 11.  As evidenced by the repeated references to the jurisdiction of the

4    Court in both Paragraph 10 and Paragraph 11, the Settlement Agreement intends for both the

5    courts and the arbitrator to be utilized—but for different purposes and circumstances.  Here, where

6    Ripple Labs' Cross-Complaint against McCaleb seeks solely specific performance, and equitable

7    and injunctive relief to enforce the Settlement Agreement, McCaleb expressly agreed that he

8    "***shall***" submit to adjudication by this Court, not by arbitration.

9                    b.    Paragraph 10 Entitles Parties To Seek Injunctive and Equitable

10                          Relief, and Specific Performance, These Are Not "Provisional

11                          Remedies".

12           The McCaleb Defendants seek to minimize the impact of Paragraph 10, asserting that its

13   sole purpose is to support the last sentence of Paragraph 11, which states that nothing in that

14   paragraph "shall [ ] preclude parties from seeking provisional remedies in aid of arbitration from a

15   court of appropriate jurisdiction, as provided in Paragraph 10 herein."  In addition to the fact that

16   this argument runs counter to the clear language of Paragraph 10, it further fails because (1) the

17   remedies discussed in Paragraph 11 are distinct from those in Paragraph 10, and (2) this

18   interpretation renders Paragraph 10 meaningless and superfluous.

19           First, provisional remedies in aid of arbitration, as contemplated by Paragraph 11, are

20   defined in the CAA to include only the following explicitly enumerated forms of relief: (1)

21   attachments, (2) writs of possession, (3) preliminary injunctions, (4) temporary restraining orders,

22   and (5) appointment of receivers.  Cal. Code Civ. Proc. § 1281.8(a); *Cal. Retail Portfolio Fund*

23   *GmbH & Co. KG v. Hopkins Real Estate Grp.*, 193 Cal. App. 4th 849, 855 (2011).[3]  Paragraph 10

24   is much broader than this as it applies to circumstances where the parties are seeking permanent

25

26   [3] Likewise, Black's Law Dictionary defines "provisional remedy" as "[a] temporary remedy awarded before judgment
     and pending the action's disposition, such as a temporary restraining order, a preliminary injunction, a prejudgment
27   receivership, or an attachment.  Such a remedy is intended to maintain the status quo by protecting a person's safety or
     preserving property."  Black's Law Dictionary (10th ed. 2014).  Pursuant to Federal Rule of Evidence 201, Ripple
28   Labs requests this Court take judicial notice of this definition.

RIPPLE LABS' OPPOSITION TO CROSS-DEFS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
Case No. 15-cv-01503-WHO

1    remedies, including permanent injunctions and specific enforcement, neither of which constitutes

2    a provisional remedy.  Thus, the position advanced by the McCaleb Defendants—namely that the

3    sole purpose of Paragraph 10 is to permit a party to obtain interim relief from a court in support of

4    arbitration (Motion at 9-10)—cannot be correct because Paragraph 10 permits the Court to provide

5    more than just interim relief and does not contain any language stating it is subject to, or somehow

6    limited by, Paragraph 11.

7          Indeed, upon examination of the last sentence of Paragraph 11, it is evident that the

8    purpose of this language was to ensure that nothing in the Settlement Agreement waived the

9    parties' rights to obtain provisional remedies from a court, as permitted under the CAA—not to

10   ensure that all claims relating to the Settlement Agreement were arbitrable.  Section 1281.8 allows

11   parties to an arbitration agreement to file an application in superior court for the aforementioned

12   provisional remedies.  Code Civ. Proc. § 1281.8 (b), (d).  However, the CAA is not mandatory—

13   the parties can conform a contract to waive or avoid certain provisions of the CAA that they do not

14   want to apply to their agreement.  *See In re Art and Architecture Books of the 21st Century*, 518

15   B.R. 43, 52 (Bankr. C.D. Cal. 2014) (noting the "general public policy to allow contractual

16   waivers of statutory rights as part of the freedom to contract in California"); *Patton v. Patton*, 32

17   Cal. 2d. 520, 523 (Cal. 1948) ("[A]nyone may waive the provisions of a law or a contract for his

18   benefit"); Cal. Civ. Code. §3268 ("[T]he rights and obligations of parties to contracts [] are

19   subordinate to the intention of the parties . . . the benefit thereof may be waived by any party

20   entitled thereto").  Thus, the last sentence of Paragraph 11 was included simply to ensure that the

21   status quo under the CAA was maintained and not overridden by the agreement to arbitrate certain

22   disputes.

23         Second, the reference in the last sentence of Paragraph 11 to "as provided for in Paragraph

24   10 herein" does not mean Paragraph 10 is subsumed by Paragraph 11.  Rather, it helps define "a

25   court of appropriate jurisdiction" as any court identified in Paragraph 10—or more specifically,

26   "the U.S. District Court for the Northern District of California or any court of the State of

27   California having subject matter jurisdiction."  It also is in contrast and varies slightly to the

28   preceding sentence in regards to jurisdictional issues, which provides that the "Judgment on the

17

1    Award may be entered in any court having jurisdiction."

2          Third, if all claims relating to the Settlement Agreement were arbitrable, Paragraph 10

3    would serve no purpose.  Both the CAA and Paragraph 11 permit the parties to seek provisional

4    remedies in aid of arbitration from a court of appropriate jurisdiction.  If Paragraph 10 were to be

5    deleted from the Settlement Agreement altogether, the parties would still be able to obtain this

6    exact same relief.  Courts should not interpret a contract in a manner that renders any of its

7    provisions internally contradictory, meaningless, or superfluous.  *See Bayview Hunters Point*

8    *Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 700 (9th Cir. 2004), as amended on

9    denial of reh'g and reh'g en banc (June 2, 2004); *see also Ins. Co. of State of Pa. v. Associated*

10   *Int'l Ins. Co*., 922 F.2d 516, 522 (9th Cir. 1990), quoting Cal. Civ. Code § 1641 ("The California

11   Civil Code sets forth the fundamental principle that '[t]he whole of a contract is to be taken

12   together, so as to give effect to every part, if reasonably practicable, each clause helping to

13   interpret the other.'").[4]

14         Rather, the only way that Paragraph 10 retains its separate meaning and purpose is to adopt

15   the interpretation advanced by Ripple Labs herein—namely, that the Arbitration Clause

16   (Paragraph 11) is inapplicable to this action because Ripple Labs seeks only injunctive and

17   equitable relief from McCaleb.  While an arbitrator ultimately may have jurisdiction to decide any

18   underlying monetary claims that Ripple Labs has against McCaleb in the future, the relief sought

19   ────────────────

20   [4] JAMS, which the parties selected to govern any arbitrable disputes, provides a model "standard arbitration clause" for providing disputes to arbitration, which is instructive.  Unlike the current provisions, JAMS' model provision only has one, not two, paragraphs.  It provides:

21

22         Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in [insert the desired place of arbitration] before [one/three] arbitrator(s).  The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures [and in accordance with the Expedited Procedures in those Rules] [or pursuant to JAMS' Streamlined Arbitration Rules and Procedures].  Judgment on the Award may be entered in any court having jurisdiction.  This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

23

24

25

26   Nowhere does JAMS include, as a model provision relating to arbitration, a separate paragraph, resembling Paragraph 10 of the Settlement Agreement, and for good reason—it restricts the scope of what is arbitrable.  The JAMS' model provision includes only the right to seek provisional remedies in aid of arbitration from a court of appropriate jurisdiction.  If that is all Paragraph 10 related to, it would be wholly superfluous.  Pursuant to Federal Rule of Evidence 201, Ripple Labs requests this Court take judicial notice of this JAMS' model provision, located on JAMS' website.

27

28

18

1    here does not pertain to those claims.  McCaleb's request for arbitration should be left for if and

2    when Ripple Labs brings those monetary claims against him.

3                              c.        Movants' Cases Are Inapplicable.

4            The case law relied upon by the McCaleb Defendants is equally inapplicable to the instant

5    matter.  Their cases deal only with contracts containing one paragraph setting forth the parties'

6    agreement to arbitrate; conversely, this Court is faced with two separate paragraphs dividing issues

7    properly before this Court, and those properly before an arbitrator.  And this division makes

8    sense—it permits the parties to use the courts to stop and unwind breaches and enforce compliance

9    in a quicker, more streamlined manner, without entangling in damages litigation.  Thus, this Court,

10   not an arbitrator, has the authority to adjudicate the specific claims brought here by Ripple Labs

11   against McCaleb because the Settlement Agreement vests this Court, not an arbitrator, with the

12   authority to enforce equitable and injunctive relief.  *See Cardiovascular Biotherapeutics, Inc. v.*

13   *Jacobs*, No. 2:14-CV-1965-JCM-PAL, 2015 WL 713181 (D. Nev. Feb. 19, 2015).

14           *Cardiovascular Biotherapeutics, Inc.* is instructive because the court noted the difference

15   between the operative agreement, that did not have a carve out provision, and an earlier,

16   superseded agreement that did have such a provision.  In *Cardiovascular Biotherapeutics*, the

17   defendant moved to compel arbitration based upon a "broad and far reaching" arbitration clause.

18   2015 WL 713181, at *3.  The court granted the motion to compel arbitration, but for reasons

19   which are not present in Ripple Labs' case, while distinguishing it from a 2007 agreement that had

20   a separate provision like in the Settlement Agreement.  Specifically, the arbitration clause at issue,

21   in the 2010 agreement, provided that the "arbitrator may . . . grant any relief authorized by law,

22   including but not limited to, equitable relief."  *Id.*  The court noted that, unlike the 2007

23   agreement, the 2010 arbitration clause did not contain language exempting injunctive relief

24   through arbitration, whereas the 2007 agreement contained a separate paragraph outlining a

25   party's "right to proceed to court and forego arbitration if seeking injunctive relief" (*Id.* at *5)—

26   language clearly set forth here in Paragraph 10 of the Settlement Agreement.  The court identified

27   the following language that would have provided it with jurisdiction over the case:  "[A party] is

28   entitled to seek and receive specific performance and temporary, preliminary and permanent

                                                    19

1  injunctive relief from any court of competent jurisdiction for violations of the agreement." *Id.* at

2  *5 n.3 (citations omitted).  Paragraph 10 to the Settlement Agreement contains nearly identical

3  language:

> Each party acknowledges and agrees that each party hereto will be irreparably
> damaged in the event any of the provisions of this Agreement are not performed
> by the Parties in accordance with their specific terms or are otherwise breached.
> **Accordingly, it is agreed that the Parties shall be entitled to an injunction
> to prevent breaches of this Agreement, and to specific enforcement of this
> Agreement and its terms and provisions in any action instituted in any court
> of the United States or any state having subject matter jurisdiction**.

8  Similarly, in *Hartley*, although the parties entered into a purchase agreement where the

9  arbitration clause broadly stated that "the parties agree that any and all disputes . . . arising out of

10  or relating to any transaction between them or to the breach . . . of this Agreement . . . shall be

11  submitted to final and binding arbitration before JAMS," a separate provision of the purchase

12  agreement provided that "[n]othing contained in this Agreement shall in any way deprive a party

13  of its right to obtain provisional, injunctive, or other equitable relief from a court of competent

14  jurisdiction." *Hartley*, 196 Cal. App. 4th at 1256.  The court acknowledged that "one paragraph of

15  this arbitration clause here authorizes the court to decide all equitable issues, notwithstanding

16  another paragraph that authorizes the arbitrator to decide all disputes." *Id.* at 1258.  The court

17  resolved the discrepancy by noting the perceived ambiguity of the two provisions, and directed the

18  trial court to "adjudicate the complaint's additional requests for injunctive and declaratory relief

19  before arbitration is held." *Id.* at 1262.

20  Likewise, in *James & Jackson*, the parties entered into an agreement where, despite having

21  a broad arbitration clause, that clause also stated that a party who is not in breach of the agreement

22  "shall be entitled to injunctive relief to prevent breaches of the provisions of this Agreement . . . in

23  any action instituted in any court of the United States." *James & Jackson*, 906 A.2d at 81.  The

24  court held that the express inclusion of this sentence meant that the drafters of the Agreement

25  "contemplated judicial consideration of claims for injunctions and specific performance." *Id.* at

26  82.

27  In this case, like the 2007 agreement in *Cardiovascular Biotherapeutics, Inc.*, and the

28  separate arbitration and equitable relief provisions in *Hartley* and *James & Jackson* (and unlike all

1   the cases relied upon by Movants) there are two separate provisions—one dealing with specific

2   performance and injunctive relief in the court system, the remainder in arbitration.  The Settlement

3   Agreement expressly provides that this Court shall adjudicate equitable and injunctive relief.

4   Indeed, Paragraph 10 is substantively identical to the clause that the *Cardiovascular*

5   *Biotherapeutics, Inc.* court described above—a clause that the court explained would have vested

6   it with jurisdiction to adjudicate the dispute.  Likewise, these two separate, distinct, and

7   disjunctive provisions provide this Court with jurisdiction over this case.[5]

8                  2.   McCaleb Should Not Be Permitted To Forum Shop.

9           Although McCaleb and Stephenson are presumably displeased that the Court already ruled

10  against them three times—first granting Ripple Labs' TRO, then rejecting their request to dissolve

11  it, and then granting Bitstamp's discharge over the McCaleb Defendants' vehement objections—

12  that is not a valid reason to remove this case to arbitration.  Movants had plenty of time to appear

13  and move to compel, but only did so after the Court granted Ripple Labs' TRO.  While arbitration

14  is an appropriate and effective method of adjudication when, and only when, all parties agree to

15  arbitrate a certain dispute, arbitration cannot be used by a party to avoid the jurisdiction of the

16  court or an unfavorable ruling made by the court.  *See Gonsalves v. Infosys Techs., Ltd.*, No. C

17  3:0904112, 2010 WL 3118861, at *4 n.3 (N.D. Cal. Aug. 5, 2010) (finding that "defendant filed

18  its motion to compel arbitration the day after the court issued an order denying its motion to

19  dismiss plaintiffs' claim . . . The court will not permit defendant to use a motion to compel

20  arbitration as a means of 'forum shopping'".); *ConWest Res., Inc. v. Playtime Novelties, Inc.*, No.

21  C 06-5304SBA, 2007 WL 1288349, at *5 (N.D. Cal. May 1, 2007) (suggesting that plaintiff

22

23  _____

    [5] Should this Court decide that the arbitration clause is binding over the instant claims advanced
    by Ripple Labs against McCaleb, which it is not, it should nonetheless deny the motion to compel
    arbitration under Cal. Code Civ. Proc. § 1281.2(c) of the CAA because the pending third party
24  litigation against Stephenson has the possibility of conflicting rulings on common factual or legal
    issues exists.  *Mastick*, 209 Cal. 4th at 1264 (a court can "refuse to enforce an arbitration provision
25  if a contracting party is involved in related litigation with a third party that creates the risk of
    conflicting rulings on a common issue of law or fact."); *see also Whaley*, 121 Cal. App. 4th at 488
26  (same); *Maxim Mktg. Corp.,* 2015 WL 3654495, at *7 (denying motion to compel arbitration
    under Section 1281.2(c) where there was a claim against a party to an arbitration agreement for
27  breach of contract and a separate claim against a non-signatory for intentional interference with
    the same contract).

28

1    "seeking arbitration after an unfavorable ruling on its preliminary injunction motion" is "a method

2    of forum shopping [that] would be prejudicial" to the defendant).  Indeed, courts generally take "a

3    dim view of litigants who seek arbitration after an unfavorable result in litigation." *Riverside*

4    *Publ'g Co. v. Mercer Publ'g LLC*, 829 F. Supp. 2d 1017, 1022 (W.D. Wash. 2011).

5              **D.        Non-Signatory Stephenson Has No Right To Arbitration**

6              The "strong public policy in favor of arbitration does not extend to those who are not

7    parties to an arbitration agreement."  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th

8    Cir. 2013).  It is undisputed that Stephenson is not a signatory to the Settlement Agreement, and

9    that Ripple Labs and Stephenson never agreed to arbitrate future claims.  Accordingly,

10   Stephenson's request for arbitration does not comport with Ripple Labs' intent.  *See Stolt-Nielsen*

11   *S.A.*, 559 U.S. at 684 (holding that courts "must not lose sight of the purpose" of arbitration and

12   "give effect to [contractual limitations and] the intent of the parties.").

13             Recognizing that normally a non-signatory cannot force arbitration, Stephenson seeks to

14   apply the doctrine of equitable estoppel to force Ripple Labs to arbitrate its claim. While equitable

15   estoppel can be asserted in the arbitration context, its application is narrowly applied.  *See Mundi*

16   *v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) ("[I]n light of the general

17   principle that only those who have agreed to arbitrate are obliged to do so, we see no basis for

18   extending the concept of equitable estoppel of third parties in an arbitration context beyond [] very

19   narrow confines."); *In re Carrier IQ, Inc. Consumer Privacy Litig.*, 2014 WL 1338474, at *5

20   (underscoring that in the context of a non-signatory who is attempting to enforce an arbitration

21   clause, "the Ninth Circuit has emphasized that the doctrine of equitable estoppel is a narrow one

22   and should not be expanded, regardless of what underlying state law applies."); *Murphy v.*

23   *DirecTV, Inc.*, 724 F.3d 1218, 1229-32 (9th Cir. 2013) (holding that, under California law,

24   plaintiffs are not equitably estopped from litigating their claims in court against the non-signatory

25   defendant).

26             Movants rely on cases such as *Boucher v. Alliance Title Co., Inc.*, 127 Cal. App. 4th 262

27   (2005) and *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209 (2009) for the proposition that where a

28   non-party to an arbitration agreement is alleged to have tortiously interfered with a contract, the

                                                                22

1   non-signatory can avail himself of the arbitration provision.  These cases do not support this broad

2   proposition and are factually inapposite.  In *Boucher*, for example, the court considered the

3   signatory and non-signatory defendants to be essentially the same entity for the purpose of the

4   employment agreement at issue because the plaintiff brought four of the six identical causes of

5   action against both the signatory and non-signatory defendants, the non-signatory defendant was

6   sued because it assumed the operations of the signatory defendant, and they were both owned, for

7   the most part, by the same parent corporation.  127 Cal. App. 4th at 272.  Here, Ripple Labs has

8   brought distinct claims for the actions taken by two separate individuals, McCaleb and

9   Stephenson, to hold them accountable for their separate actions.  Unlike the non-signatory

10  defendant in *Boucher*, *id.* at 272, Stephenson did not assume McCaleb's obligations under the

11  agreement.  Movant's reliance on *Goldman* is similarly inapposite, given that there was no tortious

12  interference claims at issue there, and the court merely noted, in a one sentence dictum, that it

13  believed claims of tortious interference with contract were "well suited" for imposing estoppel.

14  *See* 173 Cal. App. 4th at 226 n.10.

15          These cases are further distinguishable because they involve claims brought against

16  signatories that are clearly arbitrable, whereas here, the claims pending before the Court against

17  McCaleb are not subject to arbitration.  Equitable estoppel is not applicable here because Ripple

18  Labs cannot be perceived as seeking to "evade" arbitration when the claims it asserts against the

19  signatory to the Settlement Agreement are not arbitrable.  *C.f. id.* at 226 (illustrating that if a

20  plaintiff *first* sues a signatory for breach of contract and, when the signatory seeks to enforce the

21  arbitration clause, then dismisses the action and sues non-signatories, that is the type of "quite

22  obvious, if not blatant, attempt to bypass the agreement's arbitration clause" for which equitable

23  estoppel is meant to apply).  Thus, the cases cited and relied upon by Movants are inapplicable in

24  the current case.

25          Further, in *Mundi*, the court highlighted two scenarios in which equitable estoppel may be

26  applied to force a signatory and non-signatory of an arbitration agreement to arbitrate a claim.

27  The first scenario is not relevant to the facts of this case, but the second is instructive.  In the

28  second scenario, the court noted that a signatory may be bound to arbitrate a claim brought by a

23

1   non-signatory "because of the close relationship between the entities involved, as well as the

2   relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and

3   the fact that the claims were intertwined with the underlying contractual obligations." *Mundi*, 555

4   F.3d at 1046 (citations omitted).  In the second scenario, the court was careful to make the

5   distinction that "it was a non-signatory who brought claims against the signatory, rather than the

6   signatory bringing claims against a non-signatory."  *Id.*

7          In other words, the Ninth Circuit has made a distinction between a non-signatory ***plaintiff***

8   (*i.e.*, Ripple Labs) invoking equitable estoppel versus a non-signatory ***defendant*** (*i.e.*, Stephenson)

9   invoking equitable estoppel, and it has yet to find a factual scenario to expand the doctrine to

10  permit the latter.  *See Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) ("We

11  have never previously allowed a non-signatory ***defendant*** to invoke equitable estoppel against a

12  signatory plaintiff, and we decline to expand the doctrine here.") (emphasis added).

13         While equitable estoppel is relevant in the arbitration context, "[m]ere allegations of

14  collusive behavior between signatories and non-signatories to a contract are not enough to compel

15  arbitration between parties who have not agreed to arbitrate."  *Goldman*, 173 Cal. App. 4th at 223.

16  "It is the relationship of the *claims*, not merely the collusive behavior of the signatory and non-

17  signatory parties, that is the key."  *Id.* (emphasis in original); *see also DMS Servs.*, 205 Cal. App.

18  4th at 1357-58 (holding that the trial court erred in granting motion to compel arbitration of

19  plaintiff's claims against non-signatory, even though there were "common questions of law and

20  fact" in the claims against both the signatory and non-signatory).  More importantly, its

21  application must still be tempered by the intent of the parties to agree to arbitrate.  *See Mundi*, 555

22  F.3d 1046 ("[I]n light of the general principle that only those who have agreed to arbitrate are

23  obliged to do so, we see no basis for extending the concept of equitable estoppel of third parties in

24  an arbitration context beyond [] very narrow confines."); *In re Carrier IQ, Inc. Consumer Privacy*

25  *Litig.*, 2014 WL 1338474, at *5 (underscoring that in the context of a non-signatory who is

26  attempting to enforce an arbitration clause, "the Ninth Circuit has emphasized that the doctrine of

27  equitable estoppel is a narrow one and should not be expanded, regardless of what underlying state

28  law applies.").

1       Should the Court grant the motion compel arbitration as to Stephenson, it should, pursuant

2 to Section 1281.2(c), stay this action as to Stephenson and let the action as to McCaleb proceed in

3 this court.  "When commonality of issues exists among actions, some arbitrable and some not,

4 Code of Civil Procedure section 1281.2, subdivision (c), vests the trial court with a variety of

5 options[,]" including to "stay arbitration pending the outcome of the court action."  *DMS Servs.*,

6 205 Cal. App. 4th at 1357-58.  However, "[t]hose options do not include permitting a party to

7 compel arbitration when that party has not agreed to it, nor does equity demand such a result."  *Id.*

8 at 1358.  As a practical matter, the threshold issue is the same—did Stephenson's XRP sales at

9 McCaleb's direction or on his behalf cause McCaleb to breach the agreement?  If not, then the

10 claims against Stephenson are moot.  Thus, because the possibility of conflicting rulings on

11 common factual or legal issues exists, the Court should not permit actions against McCaleb and

12 Stephenson to proceed simultaneously in different venues and should stay any aspect of this case it

13 deems appropriate for arbitration until the Court action concludes.

14       **E.**      **Cross-Defendants' Request To Stay the Cross-Complaint Should Be Denied.**

15       For the reasons articulated above, Ripple Labs' claims against McCaleb and Stephenson

16 are not subject to arbitration.  Thus, there is no basis to stay the Cross-Complaint.

17 **V.**     **CONCLUSION**

18       For the foregoing reasons, Ripple Labs' requests that this Court deny the Movants' Motion

19 in its entirety.

20

21

22

23

24

25

26

27

28

RIPPLE LABS' OPPOSITION TO CROSS-DEFS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
Case No. 15-cv-01503-WHO

1

2   Dated:  June 17, 2015                                    Respectfully submitted,

3                                              By:   /s/ Grant P. Fondo
                                                     Grant P. Fondo (SBN 181530)
4                                                    gfondo@goodwinprocter.com
                                                     Nicole L. Chessari (SBN 259970)
5                                                    nchessari@goodwinprocter.com
                                                     **GOODWIN PROCTER LLP**
6                                                    135 Commonwealth Drive
                                                     Menlo Park, California 94025-1105
7                                                    Tel.: 650.752.3100
                                                     Fax.: 650.853.1038
8
                                                     Richard M. Strassberg (*Pro Hac Vice*)
9                                                    rstrassberg@goodwinprocter.com
                                                     **GOODWIN PROCTER LLP**
10                                                   The New York Times Building
                                                     620 Eighth Avenue
11                                                   New York, NY 10018-1405
                                                     Tel.: 212.813.8800
12                                                   Fax.: 212.355.3333

13                                                   Attorneys for Defendant/Cross-Plaintiff
                                                     RIPPLE LABS INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIPPLE LABS' OPPOSITION TO CROSS-DEFS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
Case No. 15-cv-01503-WHO

1

**<u>CERTIFICATE OF SERVICE</u>**

2

    I, Grant P. Fondo, hereby certify that a copy of the foregoing document and attachments,

3

filed through the CM/ECF system, will be sent electronically to the registered participants as

4

identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class

5

mail postage prepaid on all counsel who are not served through the CM/ECF system on June 17,

6

2015.

7

8

                                  /s/ Grant P. Fondo_____

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28