MARK S. PARRIS (*admitted pro hac vice*)
PAUL F. RUGANI (*admitted pro hac vice*)
ANDREW ARDINGER (SBN 267417)
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue
Suite 5600
Seattle, Washington 98104-7097
Telephone: +1-206-839-4300
Facsimile: +1 206-839-4301
E-mail: mparris@orrick.com

GABRIEL M. RAMSEY (SBN 209218)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, California 94105-2669
Telephone: +1-415-773-5700
Facsimile: +1 415-773-5759
E-mail: gramsey@orrick.com

*Attorneys for Cross-Defendants*
*Jed McCaleb and Jacob Stephenson*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BITSTAMP, LTD., a foreign company,<br>Plaintiff,<br>v.<br>RIPPLE LABS, INC., a California Corporation, JACOB STEPHENSON, an individual, NANCY HARRIS, an individual, JED MCCALEB, an individual, and DOES 1 through 10, inclusive,<br>Defendants. | Case No. 15-cv-01503-WHO<br><br>**CROSS-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |
| RIPPLE LABS, INC., a California Corporation,<br>Cross-Plaintiff,<br>v.<br>JED MCCALEB, an individual, JACOB STEPHENSON, an individual, and DOES 1 through 10, inclusive,<br>Cross-Defendants. | Date: July 8, 2015<br>Time: 2:00 p.m.<br>Dept: Courtroom 2, 17th Floor<br>Judge: Hon. William H. Orrick |

**TABLE OF CONTENTS**


I. Introduction ........ 1

II. Argument ........ 3

A. The FAA Applies to the Settlement Agreement ........ 3

B. Under the FAA and the Plain Language of the Parties' Agreement, An Arbitrator Must Decide the Arbitrability of Ripple's Claims ........ 5

C. Ripple's Construction of the Settlement Agreement Violates Bedrock Principles of Contract Interpretation ........ 8

D. Equitable Estoppel Requires Ripple to Arbitrate Its Claim Against Mr. Stephenson ........ 13

E. The Court Should Stay the Cross-Complaint ........ 15

III. Conclusion ........ 15

## TABLE OF AUTHORITIES

**Cases**

*CardioVascular BioTherapeutics, Inc. v. Jacobs*,
2015 U.S. Dist. LEXIS 20745 (D. Nev. Feb. 19, 2015) .......... 10, 12

*Chiron Corp. v. Ortho Diagnostic Sys.*,
207 F.3d 1126 (9th Cir. 2000).......... 3

*Comedy Club, Inc. v. Improv West Assocs.*,
553 F.3d 1277 (9th Cir. 2009).......... 12

*Crook v. Wyndham Vacation Ownership, Inc.*,
2013 U.S. Dist. LEXIS 160705 (N.D. Cal. Nov. 7, 2013).......... 7, 9

*East West Bank v. Bingham*,
992 F. Supp. 2d 1130 (W.D. Wash. 2014).......... 15

*Fid. Fed. Bank, FSB v. Durga Ma Corp.*,
386 F.3d 1306 (9th Cir. 2004).......... 3

*Goldman v. KPMG, LLP*,
173 Cal. App. 4th 209 (2d Dist. 2009).......... 14

*Hartley v. Superior Court*,
196 Cal. App. 4th 1249 (4th Dist. 2011).......... 12

*James & Jackson, LLC v. Willie Gary, LLC*,
906 A.2d 76 (2006) .......... 7, 12

*Johnson v. Gruma Corp.*,
614 F.3d 1062 (9th Cir. 2010).......... 3

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013).......... 14

*Larsons v. Speetjens*,
2006 U.S. Dist. LEXIS 66459 (N.D. Cal. Sept. 1, 2006).......... 15

*Mastick v. TD Ameritrade, Inc.*,
209 Cal. App. 4th 1258 (2012).......... 3, 4

*Mastrobuono v. Shearson Lehman Hutton*,
514 U.S. 52 (1995) .......... 4, 8, 10

*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*,
186 Cal. App. 4th 696 (6th Dist. 2010).......... 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 8

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013).......... 14

*Oracle Am., Inc. v. Myriad Grp., A.G.*, 724 F.3d 1069 (9th Cir. 2013).......... 7, 12

*Qualcomm, Inc. v. Nokia Corp.*, 466 F.3d 1366 (Fed. Cir. 2006).......... 8

*Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844 (9th Cir. 2013).......... 15

*Simpson v. Pulte Home Corp.*, 2012 U.S. Dist. LEXIS 63889 (N.D. Cal. May 7, 2012) .......... 14, 15

*Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266 (9th Cir. 2002).......... 3

*Tamsco Props., LLC v. Loral Langemeier*, 2013 U.S. Dist. LEXIS 8646 (E.D. Cal. Jan. 18, 2013).......... 15

*Uptown Drug Co. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172 (N.D. Cal. 2013) .......... 15

*Volt Info.Scis. v. Trs. of Stanford Univ.*, 489 U.S. 468 (1989) .......... 3, 4

*Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205 (9th Cir. 1998).......... 3, 4, 12

*Wynn Resorts v. Atl.-Pac. Capital, Inc.*, 497 Fed. App'x 740 (9th Cir. 2013).......... 8

*Xinhua Holdings Ltd. v. Elec. Recyclers Int'l, Inc.*, 2013 U.S. Dist. LEXIS 180512 (E.D. Cal. Dec. 24, 2013).......... 15

**Statutes**

9 U.S.C. § 2 .......... 3

9 U.S.C. § 3 .......... 15

9 U.S.C. § 4 .......... 12

Cal. Civil Code § 1638.......... 8

Cal. Civil Code § 1641.......... 8, 11

Cal. Code of Civ. Proc. § 1281.2 .......... 4, 12

**Rules**

Fed. R. Civ. P. 12 .......... 13

JAMS Comprehensive Arbitration Rules and Procedures, Rule 11 .......... 5

# I. INTRODUCTION

Ripple entered into an unambiguous agreement to arbitrate disputes relating to the Settlement Agreement: "***Any dispute, claim or controversy arising out of or relating to this Agreement or*** the breach, termination, enforcement, ***interpretation*** or validity ***thereof***, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration." Sett. Agmt., ¶ 11 (emphasis added). In its opposition, Ripple asks this Court to ignore controlling law and bedrock principles of contract interpretation to excuse it from that unambiguous agreement. The Court should decline to indulge Ripple's misdirection, and instead should compel arbitration and stay the Cross-Complaint pending arbitration.

The first flaw with Ripple's argument is that it applies the wrong law. Ripple ignores binding precedent from the Supreme Court and the Ninth Circuit to argue that this motion is subject to the California Arbitration Act ("CAA"), rather than the Federal Arbitration Act ("FAA"). Ripple simply is wrong; the FAA controls. And Ripple makes no effort to explain—because it cannot—why, under the FAA, Cross-Defendants' motion should not be granted. Applying the FAA, as it must, the only permissible result is for this Court to refer this dispute to arbitration, including any questions surrounding the interpretation of the Settlement Agreement and the arbitrability of this dispute.

The second flaw with Ripple's argument is that it improperly conflates the question of *who* determines arbitrability with the question of arbitrability itself, something the Ninth Circuit has explicitly directed courts and parties not to do. The parties ***twice*** expressed a clear and unmistakable intent to reserve questions of arbitrability for the arbitrator when they (1) agreed that "the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration" and (2) incorporated the JAMS Rules. Sett. Agmt., ¶ 11. In light of that unambiguous agreement, the only role for this Court is to decide whether Cross-Defendants' assertion of arbitrability is "wholly groundless." Ripple does not and cannot explain how it could be "wholly groundless" for Cross-Defendants to assert that this dispute—indisputably arising out of and relating to the Settlement Agreement—is subject to the parties' agreement to arbitrate ***any*** dispute arising out of and relating to the Settlement Agreement.

The third flaw with Ripple's argument is that it ignores the actual words of the Settlement Agreement and attempts instead to graft on limitations that the parties never intended. The parties agreed to arbitrate any dispute arising out of or relating to the Settlement Agreement, without limitation. The parties did not exclude any disputes from, or otherwise limit, this agreement to arbitrate. It would have been easy, had the parties wanted to do so, to agree to arbitrate any dispute seeking damages, or any dispute other than those for injunctive relief. They did not. Yet Ripple wants this Court to interpret the Settlement Agreement as if those limitations existed. Cross-Defendants' proposed construction harmonizes Paragraphs 10 and 11 of the Settlement Agreement in a manner that best comports with the words of both Paragraphs: every dispute arising out of or relating to the Settlement Agreement is subject to mandatory arbitration, but the parties may seek provisional injunctive remedies in aid of that arbitration from a court. Ripple's proposed construction, on the other hand, depends on reading Paragraph 11 to mean something different from what the words actually say—that the parties didn't actually mean "any dispute" when they said "any dispute." In any event, Ripple's arguments all concern how the Settlement Agreement should be interpreted, which the parties expressly agreed was a question that should be decided in arbitration.

The fourth flaw with Ripple's argument is that it improperly resists arbitrating what essentially is the exact same dispute with Mr. Stephenson solely because he is not a party to the Settlement Agreement that Ripple alleges was breached by virtue of Mr. Stephenson's conduct. Ripple is equitably estopped from doing so. Once again, Ripple gets the law wrong—the Ninth Circuit has never announced a rule prohibiting non-signatory defendants from compelling arbitration under equitable estoppel and numerous district courts in the Ninth Circuit have compelled arbitration under these circumstances. Based on clear, controlling law, Ripple's claims against Mr. Stephenson must be sent to arbitration.

Finally, once the cross-claims are properly committed to arbitration, the Court must stay adjudication of the Cross-Complaint under the FAA.

## II. ARGUMENT

### A. The FAA Applies to the Settlement Agreement

Ripple contends that the CAA, and not the FAA, applies here. *See* Dkt. 66 at 7; 11-12. Ripple is wrong.

The FAA applies to all contracts involving interstate commerce that contain an arbitration provision. *See* 9 U.S.C. § 2; *see also Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) ("Because the Agreement is 'a contract evidencing a transaction involving commerce,' it is subject to the FAA") (quoting 9 U.S.C. § 2). Ripple does not and cannot dispute that the Settlement Agreement is a contract involving interstate commerce.

Where contracts involve interstate commerce, "the strong default presumption is that the FAA, not state law, supplies the rules for arbitration," and that "a general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration." *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269, 1270 (9th Cir. 2002) (citing *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1213 (9th Cir. 1998)). Under Ninth Circuit law, parties must refer to or incorporate specific CCP provisions for the CAA to apply to an agreement otherwise governed by the FAA. *See Johnson v. Gruma Corp.*, 614 F.3d 1062, 1066-67 (9th Cir. 2010) (provision that "requires arbitration to be 'conducted and subject to enforcement pursuant to the provisions of [CCP] sections 1280 through 1295, or other applicable law'" evinces "clear intent" to adopt CAA). Generally identifying California law, as the parties did here, does not evidence the requisite "clear intent" to depart from the FAA; such a contract instead will be read "as electing state substantive law and federal procedural rules." *Id.* at 1067 (citing *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1311-12 (9th Cir. 2004)).

Ripple does not address this clear Ninth Circuit law but instead cites to two cases, *Mastick v. TD Ameritrade, Inc.*, 209 Cal. App. 4th 1258 (2012), and *Volt Information Sciences v. Trustees of Stanford University*, 489 U.S. 468 (1989), to argue that the Settlement Agreement's general reference to California law in Paragraph 9 replaces the FAA with the CAA. Neither case supports Ripple's argument.

In *Volt*, the Supreme Court affirmed a California Court of Appeal decision applying CCP

§ 1281.2(c) to stay arbitration pending the completion of litigation involving third parties. *See Volt*, 489 U.S. at 476-77. Critically, the Supreme Court ***did not review*** the state appellate court's determination that a general choice-of-law provision incorporated the CAA, but instead only determined "whether, *assuming the choice-of-law clause meant what the Court of Appeal found it to mean*, application of [CCP] § 1281.2(c) is nonetheless pre-empted by the FAA to the extent it is used to stay arbitration." *Id.* at 476 (emphasis added). The Court found that the FAA did not preclude such a stay. *Id.* at 477.

The Supreme Court subsequently clarified that when a contract's choice-of-law provision could interfere with the parties' arbitration rights under the FAA, the contract should be read so that the choice-of-law provision "encompass[es the] substantive principles that [the State's] courts would apply, but not to include special rules limiting the authority of arbitrators." *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63-64 (1995). "In other words, the provision might include only [the State's] substantive rights and obligations, and not the State's allocation of power between alternative tribunals." *Id.* at 59-60; *see also id.* at 64 ("[T]he choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other").

Applying *Mastrobuono*, the Ninth Circuit found that the CAA "assuredly does affect California's 'allocation of power between alternative tribunals.'" *Wolsey*, 144 F.3d at 1212 (quoting *Mastrobuono*, 514 U.S. at 64). As a result, it found that the district court erred in applying the CAA to deny the defendant's motion to compel arbitration. *See id.* at 1213. In other words, *Mastrobuono*, *Wolsey*, *Sovak*, and *Johnson* all confirm that a general California choice-of-law provision like the one included in the Settlement Agreement adopts only California substantive law and does not result in federal courts applying the CAA rather than the FAA in order to limit the availability of arbitration.

*Mastick*, the other case Ripple cites to argue that the CAA applies here, notes that the *Mastrobuono* and *Wolsey* approach differs from the approach California's state courts have adopted. *See* 209 Cal. App. 4th at 1265. However, federal courts follow federal law, not California law, on procedural questions like these. *See Frid v. First Republic Bank*, 2014 U.S.

Dist. LEXIS 47950, at *5-6 (N.D. Cal. Apr. 7, 2014) ("[T]he Ninth Circuit has interpreted general choice-of-law provisions . . . as simply supplying state substantive, decisional law, and not state law rules for arbitration," so "all procedural aspects of the arbitration at issue are governed by the FAA, and not by California law") (citations and quotations omitted).

The Settlement Agreement's choice-of-law provision is general. *See* Sett. Agmt., ¶ 9. Neither that provision, nor the arbitration provision (nor any other) incorporates specific sections of the CCP, or otherwise shows a "clear intent" that the CAA should apply. Ripple's opposition to Cross-Defendants' motion is premised on the CAA and court decisions construing that statute. Ripple made no attempt to explain why the motion should be denied under the FAA, nor could it. Thus, this Court needs to do little more than correctly conclude that the FAA applies in order to grant Cross-Defendants' motion.

**B. <u>Under the FAA and the Plain Language of the Parties' Agreement, An Arbitrator Must Decide the Arbitrability of Ripple's Claims</u>**

The parties agree that an arbitrator, and not the Court, should decide whether the claims at issue are arbitrable if the parties to the Settlement Agreement "clearly and unmistakably" agreed to that outcome. *See* Dkt. 40 at 6-7; Dkt. 66 at 7-8. They did, twice.

Paragraph 11 of the Settlement Agreement states that "[a]ny dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, ***including the determination of the scope or applicability of this agreement to arbitrate***, shall be determined by arbitration." Sett. Agmt., ¶ 11 (emphasis added).

The parties also specifically agreed that any "arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures." *Id.* JAMS Rule 11(b) provides that "***[j]urisdictional and arbitrability disputes***, including disputes over the . . . interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, ***shall be submitted to and ruled on by the Arbitrator***," who "has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." Dkt. 40-2 at 14 (emphasis added).

Ripple puts the cart before the horse when it argues that the parties did not agree to

arbitrate Ripple's claims here because they were "brought . . . under Paragraph 10 of the Settlement Agreement—not under Paragraph 11." Dkt. 66 at 12. This argument has nothing to do with the threshold question whether the parties agreed to permit an arbitrator determine whether a claim is arbitrable; it is instead an argument that a claim is not arbitrable. By expressly agreeing that an arbitrator would decide any dispute relating to the Agreement, including both disputes concerning the "interpretation" of the Agreement and the threshold question of "the determination of the scope or applicability of this agreement to arbitrate" (Sett. Agmt., ¶ 11), the parties necessarily anticipated that there may be disputes concerning whether a claim is arbitrable and that those disputes would be resolved by the arbitrator, not a court. That Ripple advances such a dispute in its Opposition does not negate the parties' express agreement as to the forum in which such a dispute would be resolved.

Ripple's next argument, that the use of "agreement to arbitrate," with a lower-case "a," means Paragraph 11 does not reach the entirety of the Settlement Agreement, makes no sense. To be sure, the "agreement to arbitrate" refers to Paragraph 11 of the Settlement Agreement, which sets forth the parties' agreement to arbitrate. Yet Ripple remarkably contends—apparently with a straight face—that the "agreement to arbitrate" set forth in Paragraph 11 is "***not*** a reference to an agreement between the parties to arbitrate all disputes, claims, and relief relating to the Settlement Agreement, as a whole." Dkt. 66 at 13 (emphasis added). Of course, that is ***exactly*** what Paragraph 11 sets forth—an express agreement to arbitrate "[a]ny dispute, claim or controversy arising out of or relating to this [Settlement] Agreement." Sett. Agmt., ¶ 11.[1] Paragraph 11 then provides that the determination of the "scope or applicability" of that broad agreement to arbitrate shall be decided by the arbitrator. In other words, the parties agreed that whether any "dispute,

[1] Ripple further argues that if Paragraph 11 were meant to apply to the entirety of the Settlement Agreement, it would instead use a capital-A "Agreement," referring to the Settlement Agreement as a whole, in the phrase "agreement to arbitrate." Dkt. 66 at 13. That construction, however, would be grammatically incoherent. The "agreement to arbitrate" is not the same thing as the Settlement Agreement as a whole, so it would be wrong for the parties to refer to the Settlement Agreement as a whole when they mean to describe the agreement to arbitrate. However, the parties ***did*** refer to the Settlement Agreement as a whole in setting forth the scope of their agreement to arbitrate, making clear that ***any*** dispute or claim arising out of or relating to the Settlement Agreement as a whole, with no exception, must be arbitrated.

claim or controversy" arising out of or relating to the Settlement Agreement is subject to mandatory arbitration would be decided by an arbitrator, not the Court.[2]

Ripple's attempts to distinguish case law cited by Cross-Defendants similarly fail. Ripple does not dispute that in *Crook v. Wyndham Vacation Ownership, Inc.*, 2013 U.S. Dist. LEXIS 160705 (N.D. Cal. Nov. 7, 2013) (Orrick, J.), this Court found that incorporation of the AAA Rules demonstrates clear and unmistakable evidence that the parties intended to have an arbitrator determine the arbitrability of claims, or that in *Oracle Am., Inc. v. Myriad Grp., A.G.*, 724 F.3d 1069 (9th Cir. 2013), the Ninth Circuit determined that incorporation of the UNCITRAL Rules had the same effect. Instead, it argues that those decisions do not apply because, according to Ripple, the claims Ripple asserts are not within the parties' agreement to arbitrate. *See* Dkt. 66 at 13-14. *Oracle* rejected this exact argument.

In *Oracle*, the plaintiff argued that certain claims fell within an express "carve-out" from the arbitration provision, and thus were not subject to the parties' agreement to have an arbitrator determine the scope of the agreement to arbitrate. *See* 724 F.3d at 1075-77. The Ninth Circuit explained that this argument "conflates the *scope* of the arbitration clause, *i.e.*, which claims fall within the carve-out provision, with the question of *who* decides arbitrability." *Id.* at 1076. "The decision that a claim [falls within a carve-out] . . . constitutes an arbitrability determination, which the parties have clearly and unmistakably delegated to the arbitrator by incorporating the UNCITRAL rules."[3] *Id.* Ripple's argument here is even weaker, since the Settlement Agreement contains no "carve-out." Even if it did, under Ninth Circuit law, the parties' express delegation to the arbitrator to determine arbitrability, both in the text of Paragraph 11 and through incorporation of the JAMS Rules, is still clear and unmistakable evidence that the parties have agreed to have

---

[2] Ripple's argument that the arbitrator cannot decide arbitrability because the parties did not "submit the issue as to the meaning of Paragraph 10 to an arbitrator" within the text of Paragraph 10 itself (Dkt. 66 at 12) fails for this reason as well. Having specified in Paragraph 11 that ***any*** dispute about the interpretation of the Agreement was subject to arbitration, there was no need whatsoever for the parties to expressly refer to any paragraph of the Agreement to bring that paragraph within the broad scope of their agreement to arbitrate.

[3] Ripple also improperly relies (Dkt. 66 at 13) on a Delaware Supreme Court case, *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76 (2006), that was discussed and rejected in *Oracle*. *See* 724 F.3d at 1077.

an arbitrator determine arbitrability. *See Wynn Resorts v. Atl.-Pac. Capital, Inc.*, 497 Fed. App'x 740, 742 (9th Cir. 2013) ("[T]he parties' incorporation of the JAMS rules and their employment of a broad arbitration provision establish their clear and unmistakable intent to submit the issue of arbitrability to arbitration"). Questions concerning the scope of the arbitration clause are thus reserved for the arbitrator, not this Court.

Once the Court is satisfied that the parties clearly and unmistakably intended for the arbitrator to determine whether claims are arbitrable, the Court only inquires whether the assertion of arbitrability is "wholly groundless." *See Qualcomm, Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006) (applying Ninth Circuit law). Mr. McCaleb's assertion that the claims against him should be arbitrated is not "wholly groundless," nor does Ripple credibly argue otherwise. By its plain language, Paragraph 11 reaches any dispute arising out of or relating to the Settlement Agreement and the claims against him all arise out of or relate to the Settlement Agreement. Sett. Agmt., ¶ 11; *see* Dkt. 9. There is *no* express language limiting that broad provision, and Ripple has not identified any.

### C. <u>Ripple's Construction of the Settlement Agreement Violates Bedrock Principles of Contract Interpretation</u>

Even if this Court were to reach the arbitrability question, which it should not, Ripple's attempt to exclude this dispute from the parties' broad agreement to arbitrate ***any*** dispute relating to the Settlement Agreement runs afoul of basic contract interpretation principles.

"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civil Code § 1638. If the court finds that a contract is ambiguous and must be interpreted, a "cardinal principle of contract construction [is] that a document should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono*, 514 U.S. 52, 63 (1995); *see also* Cal. Civil Code § 1641. Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or the allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Crook*, 2013 U.S. Dist. LEXIS

160705, at *6 (Orrick, J.).

The Court's construction of the scope of the parties' agreement to arbitrate should begin with the text of that agreement. Paragraph 11 uses broad, unequivocal, and all-encompassing language—the parties agreed to arbitrate "***[a]ny dispute, claim or controversy arising out of or relating to this Agreement or*** the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate." Sett. Agmt., ¶ 11 (emphasis added). Paragraph 11 does not exclude any disputes from the scope of the agreement to arbitrate. For example, it does not provide that the parties agreed to arbitrate only disputes seeking damages, nor does it provide that the parties did not agree to arbitrate disputes seeking injunctive relief. Instead, all disputes are subject to arbitration. Finally, although not limiting the type or nature of disputes that are subject to arbitration, Paragraph 11 concludes by stating that it does "not preclude parties from seeking *provisional remedies in aid of arbitration* from a court of appropriate jurisdiction, as provided in Paragraph 10 herein." *Id.* (emphasis added). Thus, the next step in construing the parties' agreement to arbitrate is to understand the provisional remedies in aid of arbitration provided in Paragraph 10.

In Paragraph 10, the parties "acknowledge[] and agree[] that each party . . . will be irreparably damaged" by another party's breach of the Agreement. Paragraph 10 goes on to say: "Accordingly, it is agreed that the Parties shall be entitled to an injunction to prevent breaches of this Agreement, and to specific enforcement of this Agreement" in a federal or state court. Paragraph 10 does not refer to Paragraph 11 in any way and does not provide that claims seeking an injunction or specific performance do not fall within the broad agreement to arbitrate contained in Paragraph 11.

There is no language in Paragraph 10, 11, or anywhere else in the Settlement Agreement that expressly carves out or otherwise limits the parties' agreement to arbitrate from reaching "any dispute, claim or controversy" relating to the Settlement Agreement. To the extent there is any uncertainty about the scope of the parties' arbitration provision—and Cross-Defendants submit there is not—the Court's job is to harmonize Paragraphs 10 and 11, such that each has effect and are consistent with one another and to resolve any ambiguity in favor of arbitration.

*See Mastrobuono*, 514 U.S. at 62-63. Cross-Defendants' construction of the Settlement Agreement does just that, while Ripple's proffered interpretation completely fails to do so.

Ripple's insistence that the two provisions are "separate and disjunctive" (Dkt. 66 at 15) does not harmonize the provisions and simply ignores Paragraph 11's broad agreement that "any dispute" will be subject to arbitration. Ripple's authority on this point involved an agreement where the parties ***expressly exempted*** injunctive relief from the agreement to arbitrate—something the parties could have done here, but did not. *See CardioVascular BioTherapeutics, Inc. v. Jacobs*, 2015 U.S. Dist. LEXIS 20745, at *12-13 (D. Nev. Feb. 19, 2015) (in addition to "an entirely separate paragraph titled 'Injunctive Relief,'" "the opening sentence of the arbitration provision . . . exempts 'rights the parties may have to seek injunctive relief or specific performance'"). Ripple's argument thus depends on grafting language onto the contract that the parties did not agree to use.

The way to harmonize Paragraphs 10 and 11 is set forth in the terms themselves. Paragraph 11 sets forth a mandatory obligation that the parties arbitrate any dispute related to the Settlement Agreement but permits the parties to "seek[] provisional remedies in aid of arbitration from a court of appropriate jurisdiction, as provided in Paragraph 10 herein." Sett. Agmt., ¶ 11. Paragraph 10, in turn, does not provide that claims seeking injunctive relief are not arbitrable, but instead states only that the parties agree that a breach would cause irreparable harm, one of the elements of an injunction, and that, "[a]ccordingly," a party "shall be entitled to an injunction to prevent breaches of this Agreement." *Id.*, ¶ 10. Paragraph 10 refers passively to "any action instituted" in a federal or state court, but does not compel the parties to file any action seeking injunctive relief or specific performance in such a court nor make those courts the exclusive forum for any such disputes. *Id.* Reading Paragraphs 10 and 11 together, and giving effect to each, Paragraph 10 provides a special mechanism for obtaining injunctive relief to aid the mandatory arbitration set forth in Paragraph 11, not an avenue for a party to avoid the broad agreement to arbitrate altogether. In other words, a party raising a dispute under the Settlement Agreement must raise that dispute through arbitration, but may seek provisional injunctive relief from a court to aid that arbitration. The merits of the underlying dispute and the party's

entitlement to any final relief, however, are reserved for arbitration under the parties' broad agreement to arbitrate.

Ripple posits three arguments against this interpretation. First, Ripple argues that because it believes Paragraph 10 *can* be read to "permit[] the Court to provide more than just interim relief," it *must* be read to do more, and since it "does not contain any language stating it is subject to, or somehow limited by, Paragraph 11," there is no such limitation. *See* Dkt. 66 at 16-17. Admitting that Paragraph 10 is at best permissive in the scope of relief it provides, Ripple never addresses the parties' agreement that arbitration of any claim related to the Settlement Agreement *shall be mandatory*. Paragraph 10 does not need to say that it is subject to Paragraph 11 because Paragraph 11 is unambiguous on that point—any dispute arising under or relating to the Settlement Agreement, without limitation, is subject to arbitration.[4]

Ripple's second argument is that the reference in Paragraph 11 to Paragraph 10—"This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction, as provided in Paragraph 10 herein"—is limited only to defining a "court of appropriate jurisdiction," as opposed to "provisional remedies in aid of arbitration" from such a court. *See* Dkt. 66 at 17-18. That is not the most natural interpretation of that sentence. Moreover, Ripple's reading would leave Paragraphs 10 and 11 unreconciled; Paragraph 11 would still require arbitration of *all* disputes and, per Ripple, Paragraph 10 would require court adjudication of *some* of those disputes, which is an impossible, and hence impermissible, construction. *See* Cal. Civil Code § 1641.

Finally, Ripple argues that reading Paragraphs 10 and 11 together, as the law requires, would render Paragraph 10 meaningless. Not so. As Paragraph 11 states, Paragraph 10 provides an additional avenue for provisional relief in aid of arbitration and makes clear that parties may seek those provisional remedies from a Court. Ripple's proposed interpretation, on the other hand, depends on reading Paragraph 11 to mean something other than what it says.

[4] Ripple's attempts to explain away Paragraph 11's discussion of "provisional remedies" by reference to a provision from the CAA, fails because the FAA, not the CAA, controls this Court's resolution of this motion. *See supra*, section II.A.

These are the conclusions the Ninth Circuit reached when faced with similar language in *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277 (9th Cir. 2009) (discussed in Dkt. 40 at 10, n.6), which Ripple completely ignores in its Opposition. There, as here, the contract provided for mandatory arbitration and also for equitable relief "in aid of arbitration." *Id.* at 1285. The Ninth Circuit held that "it was a rational interpretation of the agreement to say that the arbitrator could decide both equitable and legal claims and that the provision for court jurisdiction on equitable matters was ancillary to the arbitration." *Id.* The court also explained that because the FAA "does not give a court the authority to issue equitable remedies, such as a temporary injunction, to maintain the status quo between the parties, . . . it makes sense that if the parties wanted to give themselves the ability to seek temporary equitable remedies in courts while arbitration was ongoing, they would add such a clause to the arbitration agreement." *Id.* at 1286. The Court found that even if the provisions created an ambiguity, "[u]nder the federal presumption in favor of arbitration, because the arbitration agreement is ambiguous, it should be interpreted as granting arbitration coverage over 'all disputes' arising from the Trademark Agreement" at issue. *Id.* There is no reason for this Court to reach a different conclusion here.[5]

Ripple also asks that this Court deny Mr. McCaleb his right to arbitrate under CCP § 1281.2(c) to avoid the potential of conflicting rulings with the claims against Mr. Stephenson. *See* Dkt. 66 at 21, n.5. As above, under Ninth Circuit law, CCP § 1281.2(c) cannot be used as a basis to deny arbitration. *See Wolsey*, 144 F.3d at 1213. The FAA requires the Court to order arbitration of any arbitrable claims. *See* 9 U.S.C. § 4. And, in any event, Mr. Stephenson is entitled to arbitration under equitable estoppel, as discussed below.

[5] The case law Ripple cited in lieu of addressing *Comedy Club* is both not controlling and distinguishable. The agreements in *CardioVascular BioTherapeutics*, 2015 U.S. Dist. LEXIS 20745, at *12-13 and *Hartley v. Superior Court*, 196 Cal. App. 4th 1249, 1256-58 (4th Dist. 2011), both had express carve-out language for claims for injunctive relief that the parties could have included in the Settlement Agreement but did not. Moreover, in *Hartley* the state appellate court conflated the analysis of whether the arbitrator can determine arbitrability with whether a claim is arbitrable, contrary to binding Ninth Circuit law. The abbreviated contractual interpretation in *James & Jackson* runs counter to *Comedy Club*, and its overarching analysis was explicitly rejected by the Ninth Circuit. *See* 906 A.2d at 81-82; *cf. Oracle*, 724 F.3d at 1077 (disagreeing with *James & Jackson*'s reasoning regarding the federal majority rule for evidence of intent to have arbitrator determine arbitrability).

Finally, Ripple's argument that Mr. McCaleb is attempting to forum-shop is nonsensical. *See* Dkt. 66 at 21-22. Cross-Defendants filed this motion ***two days*** after appearing in the case and on or before the date that their responses to Ripple's Cross-Complaint were due.[6] Ripple obtained an *ex parte* temporary restraining order prior to the filing of this motion, but Cross-Defendants had moved to dissolve or modify the TRO and that motion was still pending when the motion to compel arbitration was filed. And—while vigorously disputing the merits of Ripple's claims—Cross-Defendants have since stipulated to entry of a preliminary injunction in this action that would continue in force if this dispute is referred to arbitration. *See* Dkt. 55; 60. Mr. McCaleb acted without delay to vindicate his right to arbitrate the claims Ripple brought against him. Enforcing the parties' agreement is not "forum shopping," and Ripple badly misrepresents the facts of this case in order to make that argument. If anything, Ripple's efforts to bootstrap its Cross-Complaint into federal court via supplemental jurisdiction and evade its express agreement to arbitrate demonstrates that Ripple is engaged in forum shopping.

**D. Equitable Estoppel Requires Ripple to Arbitrate Its Claim Against Mr. Stephenson**

Ripple concedes that its claim for damages against Mr. Stephenson arises out of and relates to the Settlement Agreement. Ripple nonetheless argues that it need not arbitrate that claim because Mr. Stephenson is a non-signatory to the Settlement Agreement. *See* Dkt. 66 at 22-25. Ripple raises three arguments against Mr. Stephenson's request to arbitrate. All of them fail.

First, Ripple mischaracterizes Mr. Stephenson's argument as contending that he can invoke equitable estoppel simply because Ripple asserted a tortious interference with contract claim against him. *See id.* at 22-23. In so doing, Ripple ignores the elements of equitable estoppel under Ninth Circuit law that entitle Mr. Stephenson to enforce arbitration. Namely, equitable estoppel is appropriate where (i) "a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in

[6] Ripple filed its Cross-Complaint on April 29. *See* Dkt. 9. Ripple claims to have effected service on Mr. Stephenson on May 1, and on Mr. McCaleb on May 5. *See* Dkt. 22. Accordingly, their responses were due no earlier than May 22 for Mr. Stephenson and May 26 for Mr. McCaleb. *See* Fed. R. Civ. P. 12(a)(1)(B). This motion was filed on May 22.

and intertwined with the underlying contract"; or (ii) "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013)). Ripple does not and cannot dispute that it must rely on the terms of the Agreement to assert its claim. Ripple itself alleges that Mr. Stephenson was aware of the Agreement and its terms (Dkt. 9, ¶ 103); was aware that his alleged action "may constitute a breach" of those terms (*id.*); "knew" that his alleged action "violated the Settlement Agreement" (*id.*, ¶ 104); and "direct[ly] and proximate[ly]" caused Ripple to "be[] deprived of its rights and benefits due under the Settlement Agreement" (*id.*, ¶ 105). As alleged, Ripple's tortious interference claim against Mr. Stephenson is inextricably intertwined with the terms of the Agreement and Ripple's alleged rights under that contract.[7]

Second, Ripple argues that for a non-signatory to invoke equitable estoppel, Ripple must be attempting to "evade" arbitration of "clearly arbitrable" claims against a signatory. *See* Dkt. 66 at 23. Not so. All that is required is that Ripple's claim against Mr. Stephenson be based on its contract with Mr. McCaleb, which it clearly is. *See Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 224 (2d Dist. 2009) ("[I]t is irrelevant whether or not claims are indeed raised against both parties. *What is necessary is that the claim against the nonsignatory be inextricably bound up with the terms and duties of the contract the plaintiff has with the other defendant*"). Equitable estoppel prevents Ripple from using the Settlement Agreement as the basis for its claim against Mr. Stephenson, while simultaneously avoiding the obligation set forth in the same Agreement to arbitrate such a claim. *See Simpson v. Pulte Home Corp.*, 2012 U.S. Dist. LEXIS 63889, at *16-18 (N.D. Cal. May 7, 2012).

Third, Ripple argues that the Ninth Circuit permits only a non-signatory plaintiff to invoke

---

[7] Ripple's allegations fit the second scenario as well, as Ripple alleges that Mr. McCaleb (the signatory) and Mr. Stephenson (the non-signatory) engaged in "substantially interdependent and concerted" conduct that was "intimately connected with the obligations" of the Settlement Agreement. *Murphy*, 724 F.3d at 1229; *see also* Dkt. 40 at 12.

equitable estoppel, and not a non-signatory defendant. *See* Dkt. 66 at 23-24 (citing *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013)). Once again, Ripple gets the law wrong. All that *Rajagopalan* states is that the Ninth Circuit had not yet affirmatively permitted a non-signatory defendant to invoke equitable estoppel; the Court did not create—and has not created—a rule against it. *See East West Bank v. Bingham*, 992 F. Supp. 2d 1130, 1133, n.9 (W.D. Wash. 2014) ("*Rajagopalan* did not announce a per se rule against expanding equitable estoppel"). Even after *Rajagopalan* (as they did before), federal district courts in California routinely permit a non-signatory defendant to compel arbitration under the doctrine of equitable estoppel. *See, e.g.*, *Uptown Drug Co. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1184-88 (N.D. Cal. 2013); *Xinhua Holdings Ltd. v. Elec. Recyclers Int'l, Inc.*, 2013 U.S. Dist. LEXIS 180512, at *27-30 (E.D. Cal. Dec. 24, 2013); *see also Tamsco Props., LLC v. Loral Langemeier*, 2013 U.S. Dist. LEXIS 8646, at *18-19, 22 (E.D. Cal. Jan. 18, 2013); *Simpson*, 2012 U.S. Dist. LEXIS 63889, at *17-18; *Larsons v. Speetjens*, 2006 U.S. Dist. LEXIS 66459, at *22-24 (N.D. Cal. Sept. 1, 2006).[8]

### E. The Court Should Stay the Cross-Complaint

Because all of Ripple's cross-claims are arbitrable, the Court should stay adjudication of the Cross-Complaint while the arbitration proceedings take place. *See* 9 U.S.C. § 3 (requiring issuance of a stay where an issue "is referable to arbitration").

## III. CONCLUSION

The Court should grant Cross-Defendants' motion to compel Ripple to arbitrate its cross-claims and stay the Cross-Complaint pending the completion of arbitration.

Dated: June 24, 2015 ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Mark S. Parris*
MARK S. PARRIS

*Attorneys for Cross-Defendants Jed McCaleb and Jacob Stephenson*

[8] California law, which the Ninth Circuit follows on these issues, similarly permits non-signatory defendants to use equitable estoppel to compel arbitration. *See, e.g.*, *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 714-717 (6th Dist. 2010).