TERRY GROSS (SBN 103878)
ADAM C. BELSKY (SBN 147800)
GROSS BELSKY ALONSO LLP
One Sansome Street, Suite 3670
San Francisco, CA 94104
Tel: (415) 544-0200
Fax: (415) 544-0201
E-mail:  terry@gba-law.com

*Attorneys for Proposed Intervenor-*
*Defendant Stellar Development*
*Foundation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BITSTAMP, LTD., a foreign company,<br><br>             Plaintiff,<br><br>      v.<br><br>RIPPLE LABS, INC., a California Corporation, JACOB STEPHENSON, an individual, NANCY HARRIS, an individual, JED MCCALEB, an individual, and DOES 1 through 10, inclusive,<br><br>             Defendants. | Case No. 15-cv-01503-WHO<br><br>**NOTICE OF CORRECTED EXHIBIT A TO PROPOSED INTERVENOR – DEFENDANT STELLAR DEVELOPMENT FOUNDATION'S MOTION TO INERVENE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2)** |
| RIPPLE LABS, INC., a California Corporation,<br><br>             Cross-Plaintiff,<br><br>      v.<br><br>JED MCCALEB, an individual, JACOB STEPHENSON, an individual, and DOES 1 through 10, inclusive,<br><br>             Cross-Defendants. | |

1    On May 22, 2015, Proposed Intervenor-Defendant Stellar Development Foundation

2  ("SDF") filed a Notice of Motion and Motion to Intervene (*See* Dkt. 39), attaching as Exhibit A a

3  Motion to Dismiss (*see* Dkt. 39).  On May 22, 2015, a Joint Motion to Dismiss was filed by

4  defendants Jed McCaleb, Jacob Stephenson and Nancy Harris, which contained the same

5  arguments as in SDF's proposed pleading.  Dkt. 41.

6    On June 8, 2015, this Court issued an order granting Plaintiff Bitstamp Ltd.'s Motion for

7  an Order of Discharge. *See* Dkt. 63. In that Order, the Court "d[id] not address the joint motion to

8  dismiss at this point as the briefing on that motion is not yet complete," but did "note that at least

9  some of the arguments in favor of the joint motion appear to be the same as the arguments I

10  rejected here." *Id*. at 6.  While defendants continue to believe that the Motion to Dismiss

11  Complaint for Interpleader is meritorious and that dismissal of the Complaint is warranted, in the

12  interest of judicial economy and efficiency, defendants withdrew their Motion to Dismiss on June

13  16, 2015.  Dkt. 64.

14    In light of the fact that Fed. R. Civ. P. 24(c) provides that a motion to intervene "must

15  state the grounds for intervention and be accompanied by a pleading that sets out the claim or

16  defense for which intervention is sought," and SDF's previously proposed motion to dismiss has

17  been withdrawn, SDF is now correcting the exhibit to its Motion to Intervene by substituting a

18  new pleading.  Proposed Intervenor-Defendant Stellar Development Foundation hereby submits

19  the Corrected Exhibit A to the Notice of Motion and Motion to Intervene (Dkt. 39), which is an

20  Answer and Counterclaim and Crossclaim.

21  Dated: July 7, 2015                    GROSS BELSKY ALONSO LLP

22

23                                        By:___*/s/ Terry Gross*_____.
                                              Terry Gross
24

25                                        Attorneys for Proposed Intervenor-Defendant
                                          STELLAR DEVELOPMENT FOUNDATION
26

27

28

# EXHIBIT A

1    TERRY GROSS (SBN 103878)
     ADAM C. BELSKY (SBN 147800)
2    GROSS BELSKY ALONSO LLP
     One Sansome Street, Suite 3670
3    San Francisco, CA 94104
     Tel: (415) 544-0200
4    Fax: (415) 544-0201

5    *Attorneys for Proposed Intervenor-*
     *Defendant Stellar Development*
6    *Foundation*

7               **UNITED STATES DISTRICT COURT**

8             **NORTHERN DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| BITSTAMP, LTD., a foreign company, | Case No. 15-cv-01503-WHO |
| Plaintiff, | **ANSWER AND COUNTERCLAIM AND CROSSCLAIM** |
| v. | **JURY TRIAL DEMANDED** |
| RIPPLE LABS, INC., a California Corporation, JACOB STEPHENSON, an individual, NANCY HARRIS, an individual, JED MCCALEB, an individual, and DOES 1 through 10, inclusive, | |
| Defendants. | Judge:     Hon. William H. Orrick |
| STELLAR DEVELOPMENT FOUNDATION, a Delaware Nonprofit Corporation, | |
| Counterclaimant and Crossclaimant, | |
| v. | |
| RIPPLE LABS, INC., a Delaware Corporation, GEORGE FROST, an individual, BITSTAMP, LTD., a foreign company, and DOES 1-20, inclusive, | |
| Cross-Defendants and Counter-Defendant. | |

**ANSWER**

Defendant and Counterclaimant and Crossclaimant Stellar Development Foundation ("SDF") hereby answers and otherwise responds to the Complaint for Interpleader (the "Complaint") filed by Plaintiff and Counter-Defendant Bitstamp Ltd. ("Bitstamp") in this action. SDF denies each and every allegation in the Complaint, except for those specifically admitted below.

1.      Answering Paragraph 1 of the Complaint, SDF is informed and believes and on that basis admits that Bitstamp is a UK company with its registered place of business at 5 New Street Square, London EC4A 3TW, United Kingdom, and that Bitstamp operates a worldwide digital currency exchange and is a gateway on the Ripple protocol. SDF denies the remaining allegations in Paragraph 1.

2.      Answering Paragraph 2 of the Complaint, SDF is informed and believes and on that basis admits that Defendant Ripple Labs Inc. is a Delaware corporation maintaining its principal place of business at 300 Montgomery Street, San Francisco, California 94104.

3.      Answering Paragraph 3 of the Complaint, SDF admits that Defendant Jed McCaleb is a co-founder of SDF and a Stellar Developer, and that he is a resident of San Francisco, California.  SDF denies the remaining allegations in Paragraph 3.

4.      SDF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 4.

5.      SDF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 5.

6.      SDF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 6.

7.      Paragraph 7 asserts legal conclusions, to which no response is necessary.

8.      SDF admits the allegations in Paragraph 8 as to itself, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 8 as to any other Defendant.  To the extent to which Paragraph 8 asserts legal conclusions, no response is necessary.

9.      SDF admits the allegations in Paragraph 9 as to itself, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 9 as to any other Defendant.

10.     SDF admits, on information and belief, that Ripple Labs is a "currency exchange service providing on-line, real-time currency trading and cash management" and is a money services business that "engages in sales of XRP to third parties," as set forth in their recent settlement agreement with the Department of Justice and FinCEN following an investigation into Ripple's criminal activity.  SDF admits, on information and belief, that Ripple Labs is "a holder of XRP" and admits that XRP "is the crypto currency native to the Ripple protocol."  Except as so admitted, SDF denies any remaining allegations in Paragraph 10.

11.     SDF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11.

12.     SDF admits that "Bitstamp operates as a gateway for XRP" and that Bitstamp "permit[s] the exchange of XRP for other digital currency and fiat currency, including U.S. dollars."  Except as so admitted, SDF denies any remaining allegations in Paragraph 12.

13.     SDF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13.

14.     SDF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14.

15.     SDF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 15.

16.     Answering Paragraph 16 of the Complaint, SDF admits that: on or about March 16, 2015, an auction of STRs began; that, above legally required reporting requirements for a 501(c)(3) nonprofit corporation and in furtherance of its transparency goals, SDF has made publicly available unaudited financial statements for the year to date of September 30, 2014, which showed a year's expenses of approximately $700,000, of which approximately $335,000 was for payroll and benefit expenses; and that 650 million STRs were available in the auction. SDF denies the remaining allegations in Paragraph 16.

17.     SDF lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 17.

18.     SDF denies that the alleged offer was made for SDF's benefit.  SDF lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 18.

19.      SDF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 19.

20.     SDF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 20.

21.     SDF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 21.

22.     SDF denies the allegations in Paragraph 22.

23.     SDF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 23.

24.     SDF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24.

25.     SDF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 25.

26.     SDF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 26.

27.     SDF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 27.

28.     SDF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 28.

29.     SDF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 29.

30.     SDF admits that it is asserting ownership rights to the Disputed Funds contained in the rPQ account.  SDF lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 30.

31.     SDF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 31.

32.     SDF denies the allegations in Paragraph 32.

33.     SDF denies the allegations in Paragraph 33.

34.     SDF denies the allegations in Paragraph 34.

35.     SDF denies the allegations in Paragraph 35.

## FIRST AFFIRMATIVE DEFENSE

1.     The Complaint fails to state a claim upon which relief can be granted.

## CLAIM TO FUNDS

1.     SDF asserts an ownership interest in the Disputed Funds as to the funds contained in the rPQ account.

## PRAYER FOR RELIEF

Wherefore, SDF prays for judgment as follows:

1.     That Bitstamp take nothing from SDF;

2.     That the Court award SDF its expenses and costs, including but not limited to reasonable attorneys' fees, incurred in defending the Complaint; and

3.     That the Court grant SDF such other further relief as the Court may deem proper.

## COUNTERCLAIM AND CROSSCLAIM

## INTRODUCTION

1.     In early 2015, Ripple Labs, Inc. (Ripple"), knew it was the target of a federal criminal investigation into violations of anti-money laundering regulations, and knew that it either would be indicted or would enter into a settlement agreement with the U.S. Department of Justice in order to avoid a federal criminal indictment.  Ripple also was threatened by the formation of SDF.

2.      Ripple, in order to divert public attention from the federal criminal investigation against it, began a scheme, along with George Frost ("Frost") (an advisor to Ripple and the Chief Legal Officer for Bitstamp Ltd. ("Bitstamp") and Bitstamp, to damage SDF and Jed McCaleb ("McCaleb"), and thus to benefit Ripple.

3.      As part of this scheme, Ripple and Frost took actions to prop up the price of Ripple's XRP currency, and the value of Ripple's shares.  Ripple learned than an individual was offering for sale approximately 96 million XRPs, and Ripple then, through an undisclosed agent, purchased these XRP, in a fraudulent manner that dramatically inflated the price of the XRP. Such market manipulation by propping the XRP price raises significant consumer protection concerns, as XRP is both sold for profit and as a business by Ripple and purchased by the general public.

4.      As a further part of this scheme, Ripple also took actions to interfere with the operations of SDF.  Ripple learned that the individual who had sold the XRPs utilized the proceeds to purchase STRs, and Ripple then used improper threats and coercion to try to reverse that transaction, and, failing that, in concert with Frost and Bitstamp, to have SDF's proceeds of that transaction improperly frozen.

## **PARTIES**

5.      Defendant and Counterclaimant and Crossclaimant Stellar Development Foundation ("SDF") is a Delaware nonprofit corporation with its principal place of business in San Francisco, California.  SDF is a non-profit organization that contributes to an open-source distributed financial software platform known as Stellar.  SDF's mission is to expand financial access and literacy worldwide, and to focus on areas and geographies where access to financial services can significantly impact people's achievement of basic education, healthcare and other human rights.

6.      Plaintiff and Counter-Defendant Bitstamp Ltd. ("Bitstamp"), upon information and belief, is a United Kingdom company with its principal place of business in London, United Kingdom.

7.      Defendant and Cross-Defendant Ripple Labs Inc. ("Ripple"), upon information and belief, is a Delaware corporation with its principal place of business in San Francisco, California.  Ripple operates a network to make payments and exchange currencies, utilizing its virtual currency, called XRPs or Ripples.

8.      Cross-Defendant George Frost ("Frost") is an individual, who, upon information and belief, resides in the Northern District of California. Frost is the Chief Legal Officer of Bitstamp.  Frost also served at all relevant times as an advisor to Ripple.

9.      SDF is ignorant of the true names and capacities of Cross-Defendants sued as Does 1 through 20, inclusive, and therefore sues these Cross-Defendants by these fictitious names.  SDF will amend this Complaint to allege their true names and capacities when they have been ascertained. SDF is informed and believes and thereon alleges that each of the fictitiously named Cross-Defendants is legally responsible in some manner for the occurrences alleged in this Counterclaim and Crossclaim.

10.      At all relevant times, the Cross-Defendants, and each of them, have pursued a common course of conduct, acted in concert and conspired with one another in furtherance of their common plan, scheme or design.  Each Cross-Defendant was further the agent of each remaining Cross-Defendant and was, at all times alleged herein, acting within the course and scope of the agency relationship.

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1367.

12.      Venue in and assignment to this Court is proper under 28 U.S.C. § 1391(b) and Local Rule 3-2, because a substantial part of the events or omissions giving rise to the claim set forth herein occurred in San Francisco, California.

## FACTS

13.      Upon information and belief, Ripple was threatened by the formation of SDF, and by Jed McCaleb's ("McCaleb") actions in founding SDF, despite the fact that SDF has significantly different goals than Ripple as SDF is a nonprofit that focuses on basic human rights

and Ripple is a startup with an enterprise sales team focused on banks. Ripple began a course of conduct to interfere with SDF's operations that is continuing through the present.

14. Starting in fall 2014, Ripple was the target of a federal criminal investigation concerning improper currency transactions. Upon information and belief, in early 2015 Ripple believed that the federal criminal investigation would damage its position in the virtual currency markets and its business development efforts with banks. This ongoing federal criminal investigation made it difficult for Ripple to finalize a financing round and some investor funds were placed into an escrow account. As a result of this federal criminal investigation, Ripple entered into a settlement agreement with the US Department of Justice in which it admitted that it had willfully violated laws and regulations concerning the Bank Secrecy Act and money laundering, and paid a record fine of $700,000, in the first civil enforcement action against a digital currency exchange. As set forth in the Assessment of Civil Money Penalty issued by the Financial Crimes Enforcement Network ("FINCEN") of the U.S. Department of the Treasury on May 15, 2015, against Ripple, Ripple has admitted that it violated the Bank Secrecy Act, codified at 12 U.S.C. §§ 1829b, 1951-1959, and 31 U.S.C. §§ 5311-5314, 5316-5332, by: (1) acting as a money services business and engaging in sales of its virtual currency, known as XRP, without registering with FINCEN as a money services business; (2) failing to implement and maintain an anti-money laundering program that was reasonably designed to prevent it from being used to facilitate money laundering and the financing of terrorist activities; and (3) failing to report suspicious activity related to several financial transactions, including transactions involving a known three-count felon who is also an investor in Ripple Labs.

15. Ripple then began a scheme, along with Frost, to damage SDF and McCaleb, and thus to benefit Ripple. As part of this scheme, on information and belief, Ripple and Frost also took actions to prop up the price of Ripple's XRP currency, and the value of Ripple's shares, in order to benefit themselves because each owns a substantial amount of XRPs, and to benefit Ripple. With investor funds locked in an escrow account, Ripple needed to sell XRP, and it was beneficial to Ripple to keep the price of XRP propped up as it was selling its XRP.

16.     During July and August 2014, Ripple had engaged in negotiations with McCaleb and SDF to resolve concerns by Ripple related to sales by McCaleb of XRP owned by McCaleb. Upon information and belief, Frost advised Ripple during these settlement negotiations.  During the settlement negotiations, Ripple indicated that it wanted McCaleb to agree to monthly limits on any sales of approximately 7.5 billion XRP in McCaleb's that were in McCaleb's possession, custody or control.  In order to induce McCaleb to enter into the settlement agreement, Ripple's counsel stated that the 7.5 billion XRP referred to approximately 5.5 billion XRP owned directly by McCaleb, and 2 billion XRP held in the names of McCaleb's two children.  This 7.5 billion XRP did not include the additional 1.5 billion XRP which McCaleb had already donated to numerous other philanthropic causes such as poverty alleviation and scientific research or gifts to other friends and other family members that were not his children.  Ripple and McCaleb entered into a settlement agreement in which the parties agreed that McCaleb would have monthly limits on the amount of XRP that McCaleb could sell from this 7.5 billion XRP (which, as stated above, consists only of McCaleb's personal XRP and his children's XRP and excludes the additional 1.5 billion gifted to others).

17.     On information and belief, immediately after the Settlement Agreement was executed, Ripple's senior executives started encouraging one of its co-founders to sue McCaleb, in direct contravention of the Settlement Agreement, and Frost acted as attorney for that co-founder, while also serving as an advisor for Ripple.

18.     In or about March 2015, upon information and belief, Ripple learned that Jacob Stephenson ("Stephenson"), a relative of McCaleb, was offering for sale approximately 96 million XRPs, and that Stephenson was engaged in a purchase of SDF's native currency, STRs. Ripple and Frost conspired to prop up the price of Ripple's XRPs and the value of Ripple's shares, and to prevent SDF from receiving funds from the purchase of STRs by Stephenson.

19.     On March 19, 2015, Ripple, through an agent, purchased the XRPs that Stephenson was offering for sale.  In this purchase transaction, Ripple offered to purchase 96,342,367 XRPs from Stephenson for $963,424.  Ripple had this transaction take place using a method that manipulated the market and inflated the price seemingly paid for the XRPs, in that

Ripple's agent told Stephenson that he would send Stephenson $1,038,172 (which was $74,748 more than the agreed upon price), and that Stephenson should send the excess $74,748 to an account designated by Ripple.  Ripple's agent, Alexis Sirkia, is compensated or has a financial relationship with Ripple to conduct transactions on behalf of Ripple on the Ripple network and is publicly listed as a "Ripple market maker" and as a "luxury jewelry dealer" on Ripple's website blog and in interviews with the press.  Upon information and belief, this agent and his company are responsible for a substantial portion of XRP trading volume on the public markets, greater than 10% and potentially 50% for some markets. Stephenson followed Ripple's instructions, and when he received the $1,038,172, Stephenson immediately transferred $74,748 to the Bitstamp account indicated by Ripple, and thus Stephenson received only $963,424 from Ripple for this transaction.

20.    Ripple's participation in this transaction with Stephenson was fraudulent, because Ripple never intended to allow the transaction to be finalized or to allow Stephenson to use the agreed-upon purchase price, as Ripple intended that, as soon as Ripple transferred the funds to Stephenson and Ripple obtained XRPs from Stephenson, Ripple would have various virtual currency exchanges freeze the money that Ripple had paid to Stephenson.  Ripple's transaction was also fraudulent, because Ripple was skimming $74,748 off the top of the transaction, but intended to, and did, claim that Stephenson, McCaleb and SDF were liable to it for the amount of $1,038,172, despite the fact that Ripple had structured the transaction so that Stephenson received only $963,424.

21.    In addition, the method by which Ripple structured this transaction improperly inflated the price per XRP of the transaction, misleading other XRP purchasers.

22.    Ripple had no valid basis to enter into the transaction with Stephenson and purchase Stephenson's XRP.  Ripple asserted that the reason it engaged in this transaction was "to mitigate the immediate and irreparable harm that would have been caused to Ripple" from the sale of these 96 million XRP for approximately $960,000, but Ripple earlier had stated that the sale of 7.5 billion XRP (worth approximately $35 million at the time) would not cause irreparable

1    damage to Ripple.  Ripple has also publicly stated short term price of XRP does not hinder

2    Ripple.  A sale in the amount of $960,000 would not have caused irreparable harm to Ripple.

3         23.    On information and belief, Ripple learned that Stephenson was utilizing the funds

4    he obtained through his XRP sale to purchase STRs on the Coinex exchange.  On March 20,

5    2015, Stephenson in fact did transfer approximately $963,000 to the Coinex exchange, and on

6    that exchange Stephenson purchased 306,935,500 STRs, and SDF received approximately

7    $940,000 USD on the Stellar network from this transaction.

8         24.    Beginning on March 21, 2015, Ripple, through its Chief Risk Officer Greg Kidd,

9    contacted the operator of the Coinex exchange, and continuing in various telephone conversations

10   over the next few weeks, Ripple demanded that the Coinex exchange either reverse Stephenson's

11   transaction in which Stephenson purchased STRs and paid SDF $940,000 and deliver the funds to

12   Ripple or ensure that the $940,000 paid to SDF remained on the Ripple network. On March 26,

13   2015, Ripple sent a letter, by wire communications, to the operator of the Coinex exchange, in

14   which Ripple demanded that Coinex deliver to Ripple $961,000 that Stephenson had transferred

15   to Coinex and used to purchase STRs.

16        25.    During the telephone conversations in March 2015 between Coinex and Ripple, an

17   agent of Ripple threatened the operator of the Coinex exchange that if he and Coinex did not

18   comply with Ripple's demand then Ripple would cause trouble for Coinex that would drive it out

19   of business, including shutting down Coinex's bank accounts by making false reports about

20   Coinex and its operator to U.S. authorities, New Zealand authorities and Coinex's bank for

21   allegedly violating criminal laws.  The operator of Coinex informed Ripple that Coinex had

22   completed its own investigation and found no wrongdoing.  Despite this finding, Ripple's Chief

23   Risk Officer demanded that Coinex breach the Coinex privacy policy and provide Ripple with

24   personal, private information of Coinex customers.  The operator of the Coinex exchange, despite

25   knowing that neither he nor Coinex had done anything improper, yielded to Ripple's improper

26   threats and transferred the funds that SDF had on the Coinex exchange into SDF's Bitstamp

27   account on the Ripple network, transferring not only the $940,000 from the Stephenson

28   transaction, but an additional $66,000 held by SDF as well, for a total of $1,006,130 into

Bitstamp USD and transferring these funds into SDF's rPQ account on the Ripple network.  This

transfer allowed Ripple and Frost to exercise dominion and control over SDF's funds.

26.     Ripple, Frost and Bitstamp then took actions to have SDF's rPQ account

containing the $940,000 plus SDF's other funds immediately frozen.  As part of this scheme, on

March 26 and March 30, Ripple sent, through use of wire communications or U.S. mail, demand

letters to Frost as Chief Legal Officer of Bitstamp, claiming that the funds in SDF's account

belonged to Ripple due to an alleged breach of contract by McCaleb, and demanding that

Bitstamp immediately transfer these funds to Ripple.  Ripple and Frost knew, however, that the

XRP offered for sale by Stephenson were not part of the 5.5 billion owned by McCaleb nor of the

2 billion XRP owned by McCaleb's children, and thus these XRP were not subject to any limits

on sales in the Ripple-McCaleb settlement agreement.  Ripple and Frost therefore knew that the

representation that Stephenson's sale was a breach of contract by McCaleb was false.  Ripple and

Frost also knew that the funds in the rPQ account that they were requesting that Bitstamp freeze

were not owned or controlled by either Stephenson or McCaleb, but were owned by SDF as the

result of a subsequent transaction, as the funds in this account were the proceeds of Stephenson's

transaction in which he had purchased STRs and in which SDF was paid approximately

$940,000, and thus knew there was no basis for Ripple's claim in its letters that Ripple was

entitled to any ownership or control of these funds.

27.     Frost, acting as Bitstamp's chief legal officer, but also acting on behalf of Ripple,

caused Bitstamp to improperly freeze SDF's account containing the $940,000 in Bitstamp USD,

and then filed on behalf of Bitstamp a complaint in interpleader.  Frost and Bitstamp thus

colluded in Ripple's actions and scheme, despite knowing that Ripple's claim of a breach of

contract was false, that Ripple had no basis to claim these funds, and that there was no likelihood

that Ripple would sue Bitstamp and thus that there was no valid basis for the interpleader, thus

depriving SDF of the use of its funds in the rPQ account.  Frost and Bitstamp's collusion is also

evident from the fact that Bitstamp's Complaint goes out of its way to advocate for Ripple, such

as by alleging that Stephenson's account was controlled by McCaleb, despite having no valid

basis for any such assertion, and by including allegations about a so-called "Stellar Auction," an

1    event that is completely irrelevant to whether Bitstamp has received conflicting claims to

2    ownership of the Disputed Funds.  These allegations served no purpose other than to try to

3    support Ripple's scheme.

4         28.    That Ripple's scheme was designed to harm SDF is evident from the fact that

5    Ripple had known for months that Stephenson was selling large amounts of XRP yet took no

6    actions to reverse any such transactions, and from the fact that when Ripple through its agent

7    purchased Stephenson's XRP in March 2015, it took no action to reverse this transaction until

8    Ripple learned that Stephenson was using the proceeds of the transaction to purchase STRs, and it

9    was only then that Ripple engaged in its improper actions to deprive SDF of its funds.

10                              **FIRST CLAIM FOR RELIEF**

11                   (Violation of California Business and Professions Code § 17200 *et seq.*)

12   [Against Cross-Defendants Ripple, Frost, and DOES 1-20 and Counter-Defendant Bitstamp]

13        29.    SDF re-alleges and incorporates by reference each and every allegation set forth in

14   paragraphs 1 through 28, above.

15        30.    Each of the acts and practices described herein undertaken by Ripple and Frost in

16   connection with their scheme to injure SDF constitute unfair competition in violation of

17   California Business and Professions Code § 17200, *et seq.*, the Unfair Competition Law (UCL).

18        31.    At all times mentioned herein, Frost was an agent and employee of Bitstamp.  In

19   doing the acts alleged above Frost was acting in the course and within the scope of his authority

20   as agent and employee when he committed the acts of unfair competition alleged above, including

21   causing Bitstamp to freeze the funds in SDF's rPQ account and depriving SDF of the use of these

22   funds.  Bitstamp is vicariously liable under the doctrine of *respondeat superior* for these acts of

23   unfair competition committed by its employee and agent Frost.

24                             **SECOND CLAIM FOR RELIEF**

25                            (Interference With Economic Relations)

26                   [Against Cross-Defendants Ripple, Frost, and DOES 1-20]

27        32.    SDF re-alleges and incorporates by reference each and every allegation set forth in

28   paragraphs 1 through 31, above.

33.     In March 2015, SDF and Coinex entered into an agreement whereby Coinex would engage in transactions that sold STRs in exchange for US dollars, and would credit SDF's account on the Coinex exchange with US dollars on the Stellar network.

34.     Ripple, Frost and Does 1-20 knew of the above described relationship between SDF and Coinex.

35.     Ripple, Frost and Does 1-20 intended to disrupt the performance of this contract.

36.     Ripple's agent intentionally threatened the operator of the Coinex exchange and demanded that Coinex either reverse a transaction in which Stephenson purchased STRs and SDF received US dollars, or transfer SDF's US dollars into Bitstamp dollars on the Ripple network, as alleged above in paragraphs 24-25.

37.     Ripple's and Frost's threat disrupted the economic relationship between SDF and Coinex.

38.     As a proximate result of the conduct by Ripple, Frost and Does 1-20 and the breach of SDF's contract with Coinex, SDF has suffered damages.

39.     The conduct by Ripple, Frost and Does 1-20 in interfering with the economic relationship between SDF and Coinex was a malicious, oppressive, and fraudulent act, entitling SDF to punitive damages, in an amount according to proof at trial.

## THIRD CLAIM FOR RELIEF

(Interference With Economic Relations)

[Against Cross-Defendants Ripple, Frost, and DOES 1-20]

40.     SDF re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 39, above.

41.     In March 2015, SDF requested that Coinex offer STRs for auction, and that Coinex provide SDF with the proceeds of any transactions conducted by Coinex.

42.     In March 2015, Stephenson desired to purchase STRs from Coinex, and did enter into a contractual relationship with Coinex in which he purchased STRs.

43.     Stephenson's purchase of STRs from Coinex would have resulted in an economic benefit to SDF.

44.     In March 2015, Stephenson desired to purchase STRs, and was entering into an economic relationship with SDF to make such a purchase.

45.     In March 2015, upon information and belief, Ripple, Frost and Does 1-20 learned that Stephenson desired to purchase STRs, and believed that he would obtain the funds for that transaction by selling XRPs that he owned, and Ripple desired to interfere with Stephenson's transaction with SDF in order to prevent SDF from obtaining any funds from this transaction.

46.     On March 19, 2015, Ripple, through an agent, engaged in a transaction with Stephenson, where Ripple purchased the XRPs that Stephenson was offering for sale and then delivered funds to Stephenson, but Ripple intended to, and did, immediately take actions to freeze these funds and prevent Stephenson from having any use of these funds, as more fully alleged in paragraphs 23-27.

47.     Ripple's participation in this transaction with Stephenson was fraudulent, because Ripple never intended to allow the transaction to be finalized or to allow Stephenson to use the agreed-upon purchase price to purchase STRs, as described in paragraphs 23-27.  Ripple's transaction was also fraudulent, because Ripple skimmed $74,748 off the top of the transaction, but intended to, and did, claim that SDF was liable to it for the amount of $1,038,172, despite the fact that Ripple had structured the transaction so that Stephenson received only $963,424, as alleged in paragraph 20.

48.     During the period March 20-30, 2015, Ripple made threats to Coinex, to prevent Coinex from delivering to SDF clear funds that were the proceeds of the transaction in which Stephenson had purchased STRs, and Coinex, yielding to the pressure of these threats, did not deliver clear funds to SDF, as alleged in paragraphs 23-25.

49.     During the period March to May 2015, Ripple, Frost and Does 1-20 made threats to Bitstamp that Ripple was the owner of the funds in SDF's possession that were the proceeds of Stephenson's transaction in purchasing STRs, with the intention that Bitstamp freeze those funds and not deliver them to SDF, and Bitstamp did in fact freeze those funds and not deliver the funds to SDF, as alleged in paragraphs 26-27.

50.     Ripple's and Frost's threats disrupted the Stephenson's economic relationship with Coinex and the economic benefit accruing to SDF.

51.     As a proximate result of the conduct by Ripple, Frost and Does 1-20 and the interference with SDF's contract with Stephenson, SDF has suffered damages.

52.     The conduct by Ripple, Frost and Does 1-20 in interfering with the economic relationship between SDF and Stephenson was a malicious, oppressive, and fraudulent act, entitling SDF to punitive damages, in an amount according to proof at trial.

## PRAYER FOR RELIEF

Wherefore, SDF prays for judgment against each and all Cross-Defendants and Counter-Defendant as follows:

1.  For general and special damages suffered by it in an amount to be established at trial;

2.  For treble the damages on the third cause of action;

3.  For restitution and/or disgorgement of defendants' unlawful revenues or profits;

4.  For exemplary and punitive damages;

5.  For injunctive and equitable relief against defendants including imposition of reasonable restrictions on their future activities and investments;

6.  For prejudgment interest at the maximum legal rate;

7.  For costs and expenses incurred in this action;

8.  For reasonable attorneys' fees and expert witness fees incurred in this action; and

9.  For such other, further relief as the Court may deem proper.

Dated: July 6, 2015                     GROSS BELSKY ALONSO LLP


By: _____
        TERRY GROSS

Attorneys for Defendant/Cross-Plaintiff
STELLAR DEVELOPMENT FOUNDATION

## PROOF OF SERVICE

**RE:**        ***Bitstamp, Ltd., v. Ripple Labs, Inc., et al.***
              **NDCA Case No: 15-cv-1503-WHO**

          I am a citizen of the United States and employed in the County of San Francisco, State of California. I am over eighteen (18) years of age and not a party to the above-entitled action. My business address is GROSS BELSKY ALONSO LLP, 1 Sansome Street, Suite 3670, San Francisco, CA 94104. On the date set forth below, I served the following documents in the manner indicated on the below named parties and/or counsel of record:

        **NOTICE OF CORRECTED EXHIBIT A TO PROPOSED INTERVENOR –
        DEFENDANT STELLAR DEVELOPMENT FOUNDATION'S MOTION
        TO INERVENE PURSUANT TO FEDERAL RULE OF CIVIL
        PROCEDURE 24(a)(2)**

<u>XX</u>      **By ECF:** by USDC Live System-Document Filing System on all interested parties registered for e-filing.

Mark Steven Parris                                        Attorneys for Defendant Jed McCaleb
Andrew Robert Ardinger
Paul Francis Rugani
Orrick, Herrington & Sutcliffe LLP
701 Fifth Ave., Suite 5700
Seattle, WA  98104
Tel: (206) 839-4300

Gabriel M. Ramsey
Orrick Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025
Tel: (650) 614-7400
                                                          Attorneys for Defendant Ripple Labs, Inc.

Nicole Lynn Chessari
Grant P. Fondo
Richard M. Strassberg
Goodwin Procter LLP
135 Commonwealth Drive
Menlo Park, CA 94025
Tel:(650) 752-3281
Fax: (650) 853-1038

Attorneys for Plaintiff Bitstamp Ltd.

Christopher C. Wheeler , Esq.
Jessica Koren Nall
Farella Braun & Martel LLP
235 Montgomery Street
17th Floor
San Francisco, CA 94104
Tel: (415) 954-4400

George Frost
Law Office of George Frost
2930 Magnolia Street
Berkeley, CA 94705
Tel: (510) 647-8863

I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service, and said correspondence would be deposited with the United States Postal Service, California that same day in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 6, 2015 at San Francisco, California.

_____/s/ Jessica Dean_____.
JESSICA DEAN

Notice of Corrected Exhibit A to Proposed Intervenor –Defendant Stellar Development Foundation's Motion to Intervene , 15-cv-01503-WHO

3