Grant P. Fondo (SBN 181530)
*gfondo@goodwinprocter.com*
Nicole L. Chessari (SBN 259970)
*nchessari@goodwinprocter.com*
**GOODWIN PROCTER LLP**
135 Commonwealth Drive
Menlo Park, CA 94025-1105
Tel.: 650.752.3100
Fax.: 650.853.1038

Richard M. Strassberg (*Pro Hac Vice*)
*rstrassberg@goodwinprocter.com*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Tel.: 212.813.8800
Fax.: 212.355.3333

Attorneys for Defendant/Cross-Plaintiff
**RIPPLE LABS INC.**

[*Additional counsel on signature page*]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BITSTAMP LTD., a foreign company, | Case No. 15-cv-01503-WHO |
| Plaintiff, | **JOINT CASE MANAGEMENT STATEMENT** |
| v. | Date: July 16, 2015 |
| RIPPLE LABS INC., a California Corporation, JACOB STEPHENSON, an individual, NANCY HARRIS, an individual, JED MCCALEB, an individual, and DOES 1 Through 10, Inclusive, | Time: 1:00 p.m. Dept.: Courtroom 2, 17th Floor |
| | Judge: Hon. William H. Orrick |
| Defendant. | |
| RIPPLE LABS INC., a California Corporation, | |
| Cross-Plaintiff, | |
| v. | |
| JED MCCALEB, an individual, JACOB STEPHENSON, an individual, and DOES 1 Through 10, Inclusive, | |
| Cross-Defendants. | |

Interpleader Defendant and Cross-Claimant Ripple Labs Inc. ("Ripple Labs"), Interpleader Defendants and Cross-Defendants Jed McCaleb and Jacob Stephenson, Interpleader Defendant Nancy Harris, and Proposed Intervenor Interpleader Defendant Stellar Development Foundation ("SDF") (collectively, the "Parties") through their undersigned counsel, submit this Joint Case Management Statement for the Case Management Conference ("CMC") scheduled for July 16, 2015.  The Court discharged Interpleader Plaintiff Bitstamp Ltd. ("Bitstamp") on June 8, 2015 (Dkt. 63), and Bitstamp did not participate in this statement.

As set forth in more detail below, on April 1, 2015, Bitstamp initiated this interpleader action against Ripple Labs, McCaleb, Stephenson and Harris requesting that the Court decide the proper owner of funds[1] in its possession that are related to a March 20, 2015 transaction to purchase 96,342,361.6 XRP (the "Disputed Funds").  Ripple Labs answered the Interpleader Complaint and asserted cross-claims against McCaleb for breach of an August 13, 2014 Settlement Agreement, and against Stephenson for intentional interference with that contract, allegedly based on, among other things, the March 20, 2015 transaction.  McCaleb and Stephenson have moved to compel arbitration of the cross-claims pursuant to the Settlement Agreement.  Bitstamp has been discharged from this action and is seeking attorney's fees and costs purportedly incurred in connection with bringing the Interpleader Complaint.  SDF seeks to intervene in the action to assert its claim to the Disputed Funds and attaches as Exhibit A to its Motion to Intervene, a proposed cross-complaint and counter-complaint alleging violations of Cal. Bus. Prof. Code § 17200 and interference with economic relations against Ripple Labs, Bitstamp, and George Frost (Bitstamp's Chief Legal Officer).  Neither McCaleb nor Harris claim an interest in the Disputed Funds.  Stephenson claims entitlement to $502 of the Disputed Funds.  On June 18, 2015, Bitstamp deposited $1,006,130.94 with the Court.

**1.      Jurisdiction and Service**

This Court has subject matter jurisdiction of this action pursuant to Fed. R. Civ. Proc. 22,

---

[1] The Parties are meeting and conferring regarding the actual amount of the funds in dispute but currently agree the amount is less than the $1,038,172 originally identified and the funds deposited with the Court.  The Parties anticipate filing a stipulation agreeing to the amount of disputed funds and requesting the Court release a small portion of the Disputed Funds deposited with the Court.

1   28 U.S.C. § 1332 and 28 U.S.C. § 1367.  The Parties are not aware of any issues with respect to

2   personal jurisdiction or venue.  All Parties have been served with the Interpleader Complaint and

3   Cross-Complaint.

4   **2.**      **Statement of Facts**

5            **A.      Ripple Labs' Statement**

6            On August 13, 2014, Ripple Labs, on the one hand, and McCaleb and SDF on the other

7   hand (among others) entered into a Settlement Agreement, whereby McCaleb agreed to limit his

8   sales of XRP, for the first year of the Agreement, to $10,000 worth of XRP per week.

9            The Interpleader Complaint and Ripple Labs' Cross-Complaint (collectively, the

10  "Complaints") assert, among other things, that (1) beginning on or about August 14, 2014, a

11  Ripple account within McCaleb's ownership and/or control regularly sold well over the $10,000

12  worth of XRP per week limit until September 25, 2014, when it ran out of XRP; (2) on

13  September 25, 2014, approximately two hours after the aforementioned account sold all its XRP,

14  a second Ripple account within McCaleb's ownership and/or control began selling substantial

15  amounts of XRP, selling well over the $10,000 worth of XRP per week limit until it ran out of

16  XRP on October 8, 2014; and (3) on March 20, 2015, McCaleb or Stephenson at the direction of

17  or for the benefit of McCaleb, offered and sold 96,342,361.6 XRP on the Ripple Network.  The

18  Complaints further allege that these sales violated the Settlement Agreement and, to mitigate its

19  damages, Ripple Labs, through its agent, purchased the 96,342,361.6 XRP offered for sale on

20  March 20, 2015.  Allegedly McCaleb, and/or Stephenson at the direction of or for the benefit of

21  McCaleb, attempted to use the funds received from the March 20, 2015 transaction to purchase

22  STR – the virtual currency offered by SDF.

23           Thereafter, Bitstamp received demands from both Ripple Labs and Stephenson claiming

24  entitlement to the Disputed Funds.  Bitstamp instituted this Interpleader action, and subsequently

25  deposited the Disputed Funds with the Court, requesting that the Court decide who is actually

26  entitled to the Disputed Funds.  Ripple Labs answered the Interpleader Complaint asserting it was

27  entitled to the Disputed Funds because it purchased the XRP to mitigate its damages caused by

28  McCaleb's breach of the Settlement Agreement, and filed a Cross-Complaint against McCaleb for

1   breaching the Settlement Agreement and against Stephenson for intentionally interfering with the

2   Settlement Agreement.  Ripple Labs seeks specific performance of the Settlement Agreement and

3   injunctive relief against McCaleb and seeks monetary damages, expenses and costs incurred in

4   conjunction with bringing and litigating this action, and pre-judgment and post-judgment interest

5   against Stephenson.  Ripple Labs has represented that, upon return of the Disputed Funds to

6   Ripple Labs, it will return the XRP it purchased in the March 20, 2015 transaction to Harris'

7   Ripple account and has offered to deposit that XRP with the Court for the duration of this

8   litigation.

9        On July 6, 2015, SDF filed an amended Motion to Intervene, attaching a proposed cross-

10   complaint and counter-complaint alleging claims against Ripple Labs, Bitstamp, and George

11   Frost, which it intends to file if it is permitted to intervene.  Ripple Labs will respond to the

12   allegations in SDF's cross-complaint at the appropriate time.

13                   **B.      Individual Defendants' Statement**

14        McCaleb, Stephenson and Harris (collectively, the "Individual Defendants") deny any

15   liability to Ripple Labs and deny Ripple Labs' and Bitstamp's factual allegations and

16   characterizations.  McCaleb denies that the August 14, 2014 through October 8, 2014 and the

17   March 20, 2015 transactions constituted a breach of the Settlement Agreement and Stephenson

18   denies the claim that he tortiously interfered with the Settlement Agreement.

19        The Settlement Agreement affects a specifically defined set of XRP—called the "McCaleb

20   XRP" in the agreement—that does not include the XRP sold by Stephenson.  Indeed, McCaleb

21   had gifted that XRP to Harris and Stephenson in 2012, years before the Settlement Agreement was

22   signed.  In so doing, McCaleb relinquished all ownership and control over that XRP.  The Harris

23   and Stephenson XRP thus were not included among the "McCaleb XRP" in the Settlement

24   Agreement, nor could they be: McCaleb does not own or control the XRP or accounts that

25   Stephenson and Harris own and control.  Any sales or transfers by Stephenson or Harris thus do

26   not breach the Settlement Agreement and cannot form the basis for a breach of contract or tortious

27   interference with contract claim.

28        The March 2015 transaction that led to this lawsuit was conducted by Stephenson using

1   XRP owned and controlled by Stephenson and Harris, not McCaleb.  After offering the XRP for

2   sale, Stephenson was approach by an agent for Ripple Labs, Alexis Sirkia, a self-described

3   "liquidity maker" for Ripple Labs and "luxury jewelry merchant" who works with the Ripple

4   development protocol.  Sirkia, acting as Ripple Labs' agent, offered to buy Stephenson's XRP and

5   the parties agreed on a purchase price of $963,424 in exchange for 96,342,367 XRP.  Sirkia,

6   however, informed Stephenson that he would send Stephenson $1,038,172 for the XRP if

7   Stephenson would then immediately send the difference—$74,748—to a separate account that

8   Sirkia identified.  The parties proceeded with the transaction on those terms.  Stephenson was not

9   aware, at the time, that Sirkia was acting as Ripple Labs' agent and was not aware that Ripple

10  Labs intended to try to deprive Stephenson of the use of the funds he received in the transaction.

11       Ripple Labs did not try to persuade anyone to freeze Stephenson's funds, however, until

12  after Stephenson entered into a separate series of transaction to use those funds to purchase STR, a

13  currency used on the Stellar platform.  These transactions took place on an exchange called

14  Coinex.  Stephenson bought approximately 305 million STR in exchange for $962,922 (less fees),

15  or all but $502 of the funds he received for the arm's length sale of his XRP to Sirkia.  Stephenson

16  did not undertake these actions at the direction or for the benefit of McCaleb or SDF.

17       After those transactions were complete, SDF transferred the proceeds into its Bitstamp

18  account.  In concert with Ripple Labs, or in response to Ripple Labs' threats, Bitstamp froze

19  SDF's account.  Defendants believe that Bitstamp may have frozen Stephenson's and Harris's

20  accounts at this time as well.  Despite knowing that the funds were in an account owned by SDF,

21  Bitstamp did not originally name SDF as an interpleader defendant and SDF thus has sought to

22  intervene.

23       The Settlement Agreement includes a provision requiring arbitration of all disputes arising

24  out of or relating to the Settlement Agreement.  McCaleb and Stephenson thus responded to the

25  Cross-Complaint by moving this Court to compel arbitration and to stay the action pending

26  completion of arbitration.  Ripple Labs opposed this motion.  Briefing is complete and a hearing is

27  scheduled July 16, concurrently with the CMC.  McCaleb and Stephenson will further respond to

28  the Cross-Complaint at a time directed by the arbitrator or Court.

### C.    SDF'S Statement

SDF claims ownership of the $1,006,132 contained in the rPQ account, and denies that Ripple Labs has any claim to these funds.  When Ripple Labs acted to have the funds in SDF's account frozen, Ripple Labs knew that the funds belonged to SDF and that Ripple Labs had no basis to make any claim to those funds.  SDF had no involvement in any sales by Stephenson of his March 20, 2015 sale of XRP.  Independently of any actions by Stephenson in selling his XRP, SDF had requested that the Coinex exchange offer STRs for auction, and that Coinex provide SDF with the proceeds of any transactions conducted by Coinex.  After Stephenson sold his XRP, Stephenson, with no involvement of SDF, purchased STRs that were offered for sale by Coinex. As a result of Stephenson's purchase of STR, SDF received from Coinex the sum of approximately $940,000.  These funds were placed in SDF's rPQ account.  Ripple Labs, when it took actions to cause the freezing of the funds in the rPQ account, knew that the funds in the rPQ account were not owned by McCaleb, Stephenson or Harris, but rather knew that the funds in the rPQ account were owned by SDF and were the proceeds of downstream transactions.  Thus, Ripple Labs knew at the time that Bitstamp froze the rPQ account that Ripple Labs had no basis to claim entitlement to any funds in that account.

SDF, if permitted to intervene, will assert crossclaims against Ripple Labs and others, for violation of California Business and Professions Code § 17200 and interference with economic relations.  As part of those crossclaims, SDF will assert that Ripple Labs took its actions to cause the freezing of SDF's account because Ripple Labs was threatened by the formation of SDF, and that Ripple Labs began a course of conduct to interfere with SDF's operations that is continuing through the present.   SDF will allege that, after the August 2014 Settlement Agreement was executed, Ripple Labs' senior executives started encouraging one of its co-founders to sue SDF and McCaleb, in direct contravention of the Settlement Agreement.  Bitstamp's Chief Legal Officer and Bitstamp's counsel in this case, George Frost, acted as attorney for that Ripple Labs' co-founder, while also serving as an advisor for Ripple Labs.

In the March 20, 2015 transaction between Stephenson and Ripple Labs that is the basis for this interpleader action, Ripple Labs and Frost, after learning that Stephenson was offering

approximately 96 million XRP for sale, conspired to prop up the price of Ripple Labs' XRPs and the value of Ripple Labs' shares, by purchasing the XRP using a method that manipulated the market and inflated the price seemingly paid for the XRPs:  Ripple Labs, through its agent Alexis Sirkia, offered to purchase 96,342,367 XRPs from Stephenson for $963,424, but structured the transaction to look as if the purchase price was $1,038,172.  Moreover, Ripple Labs never intended to allow the transaction to be finalized or to allow Stephenson to use the agreed-upon purchase price, as Ripple Labs intended that, as soon Ripple Labs transferred the funds to Stephenson and Ripple Labs obtained XRPs from Stephenson, Ripple Labs would have various virtual currency exchanges freeze the money that Ripple Labs had paid to Stephenson.  Ripple Labs' transaction was also fraudulent, because Ripple Labs was skimming $74,748 off the top of the transaction, but intended to, and did, claim that Stephenson, McCaleb and SDF were liable to it for the amount of $1,038,172, despite the fact that Ripple Labs had structured the transaction so that Stephenson received only $963,424.

Ripple Labs learned that Stephenson was utilizing the funds he obtained through his XRP sale to purchase STRs on the Coinex exchange.  On March 20, 2015, Stephenson in fact did transfer approximately $963,000 to the Coinex exchange, and on that exchange Stephenson purchased 306,935,500 STRs, and SDF received approximately $940,000 USD on the Stellar network from this transaction.  Ripple Labs then contacted the operator of the Coinex exchange, and continuing in various telephone conversations over the next few weeks, demanded that the Coinex exchange either reverse Stephenson's transaction in which Stephenson purchased STRs and paid SDF $940,000 and deliver the funds to Ripple Labs or ensure that the $940,000 paid to SDF remained on the Ripple network.  Ripple Labs threatened the operator of the Coinex exchange that if he and Coinex did not comply with Ripple Labs' demand then Ripple Labs would cause trouble for Coinex that would drive it out of business, including shutting down Coinex's bank accounts by making false reports about Coinex and its operator to U.S. authorities, New Zealand authorities and Coinex's bank for allegedly violating criminal laws.  The operator of the Coinex exchange, despite knowing that neither he nor Coinex had done anything improper, yielded to Ripple Labs' improper threats and transferred the funds that SDF had on the Coinex

1  exchange into SDF's Bitstamp account on the Ripple network, transferring not only the $940,000

2  from the Stephenson transaction, but an additional $66,000 held by SDF as well, for a total of

3  $1,006,130 into Bitstamp USD and transferring these funds into SDF's rPQ account on the Ripple

4  network.

5      Ripple Labs, Frost and Bitstamp then took actions to have SDF's rPQ account containing

6  the $940,000 plus SDF's other funds immediately frozen.  Ripple Labs sent demand letters to Frost

7  as Chief Legal Officer of Bitstamp, claiming that the funds in SDF's account belonged to Ripple

8  Labs due to an alleged breach of contract by McCaleb, and demanding that Bitstamp immediately

9  transfer these funds to Ripple Labs.  Both Ripple Labs and Frost knew that the XRP offered for

10  sale by Stephenson were not part of the 5.5 billion owned by McCaleb nor of the 2 billion XRP

11  owned by McCaleb's children, and thus were not subject to any limits on sales in the Ripple Labs-

12  McCaleb settlement agreement, and knew that the representation that Stephenson's sale was a

13  breach of contract by McCaleb was false.  Ripple Labs and Frost also knew that the funds in the

14  rPQ account that they were requesting that Bitstamp freeze were not owned or controlled by either

15  Stephenson or McCaleb, but were owned by SDF as the result of a subsequent transaction, as the

16  funds in this account were the proceeds of Stephenson's transaction in which he had purchased

17  STRs and in which SDF was paid approximately $940,000, and thus knew there was no basis for

18  Ripple Labs' claim in its letters that Ripple Labs was entitled to any ownership or control of these

19  funds.

20      Frost, acting as Bitstamp's chief legal officer, but also acting on behalf of Ripple Labs,

21  caused Bitstamp to improperly freeze SDF's account containing the $940,000 in Bitstamp USD,

22  and then filed on behalf of Bitstamp a complaint in interpleader.

23      That Ripple Labs' scheme was designed to harm SDF is evident from the fact that Ripple

24  Labs had known for months that Stephenson was selling large amounts of XRP yet took no actions

25  to reverse any such transactions, and from the fact that when Ripple Labs through its agent

26  purchased Stephenson's XRP in March 2015, it took no action to reverse this transaction until

27  Ripple Labs learned that Stephenson was using the proceeds of the transaction to purchase STRs,

28  and it was only then that Ripple Labs engaged in its improper actions to deprive SDF of its funds.

1       SDF, prior to and subsequent to the filing its motion to intervene, requested of both Ripple

2   Labs and Bitstamp that they stipulate to SDF's intervention.  Neither Ripple Labs nor Bitstamp

3   agreed to so stipulate.  Thus, SDF is not yet a party and therefore none of the deadlines under the

4   Rule 26 apply to SDF at the present time.

5   **3.**      **Legal Issues**

6       The principal legal issue currently in dispute is whether the cross-claims asserted by Ripple

7   Labs against McCaleb and Stephenson should be adjudicated in arbitration.  On May 22, 2015,

8   McCaleb and Stephenson filed a Motion to Compel Arbitration and to Stay Proceedings.  (Dkt.

9   No. 40).  Ripple Labs opposed the Motion (Dkt. No. 66), McCaleb and Stephenson replied

10  (Dkt. 70), and the Motion is set to be heard on July 16, 2015.  There is also a dispute concerning

11  whether Bitstamp should be entitled to recover fees and costs for bringing this action and, if so, in

12  what amount (Bitstamp's current request is for $182,948.01).  (Dkt. 80).  Responses to Bitstamp's

13  motion are due July 17, and Bitstamp's Reply is due July 24.  A hearing is scheduled for August

14  12.

15            **A.**      **Ripple Labs' Statement of Additional Issues**

16      Although the Parties have not yet a complete picture of all the legal issues presented,

17  Ripple Labs believes that the legal issues will further include (but will not be necessarily limited

18  to) the following:

19      a.       Whether McCaleb executed or directed the August through October 2014 and

20            March 20, 2015 XRP transactions;

21      b.       Whether Stephenson executed the August through October 2014 and March 20,

22            2015 XRP transactions at the direction of or for the benefit of McCaleb;

23      c.       Whether the August through October 2014 and March 20, 2015 XRP transactions

24            constituted breaches of the Settlement Agreement by McCaleb;

25      d.       When Stephenson knew of the Settlement Agreement;

26      e.       Whether Ripple Labs was entitled to mitigate its damages by purchasing the

27            96,342,361.6 XRP in the March 20, 2015 transaction;

28      f.       Who is entitled to the Disputed Funds;

- 8 -

g.  The amount of monetary damages, if any, suffered by Ripple Labs as a result of the August through October 2014 and March 20, 2015 transactions; and

h.  Whether it is appropriate to enjoin McCaleb from selling any XRP until he "catches up" with the amount he is contractually permitted to sell under the Settlement Agreement.

## B.  Individual Defendants' Statement of Additional Issues

This is a simple breach of contract case with very narrow legal issues.  The central and dispositive question is whether the XRP Stephenson sold was part of the "McCaleb XRP" specifically defined in the Settlement Agreement.  If not, sales of those XRP are not subject to the Settlement Agreement and cannot breach the Settlement Agreement.  Any other legal issues are ancillary to this central question, and Individual Defendants object to the suggestion that they be litigated at this time.

If their motion to compel arbitration is denied, McCaleb and/or Stephenson may assert claims against Ripple Labs that raise additional legal issues.

## C.  SDF's Statement of Additional Issues

If SDF is permitted to intervene, SDF believes that the legal issues will further include (but will not be necessarily limited to) the following:

a.  Whether Ripple Labs, Frost and Bitstamp engaged in a scheme to injure SDF that constituted unfair competition in violation of California Business and Professions Code § 17200, *et seq.*, the Unfair Competition Law (UCL).

b.  Whether Ripple Labs' and Frost's actions in coercing the operator of the Coinex exchange to have SDF's funds on the Coinex exchange transferred into a Bitstamp account interfered with the economic relationship between SDF and Coinex.

c.  Whether Ripple Labs' and Frost's actions in interfering with Stephenson's purchase of STRs interfered with the economic relationship between SDF and Coinex.

d.  Whether Ripple Labs has engaged in activities to promote the price and sales of XRP.

**4.**     **Motions**

Bitstamp previously filed a Motion for Discharge (Dkt. No. 20), which this Court granted (Dkt. No. 63).  Ripple Labs filed a Motion for a Temporary Restraining Order, Order to Show Cause Why A Preliminary Injunction Should Not Issue, and for Expedited Discovery (Dkt. No. 23), which this Court granted (Dkt. No. 24).  McCaleb, Stephenson, and Harris filed a Motion to Dissolve or Modify the Temporary Restraining Order (Dkt. No. 31), which this Court denied (Dkt. No. 42).  The Parties then stipulated to the granting of Ripple Labs' Motion for a Preliminary Injunction (Dkt. No. 55) in exchange for the vacating of expedited discovery, which the Court ordered, freezing the Disputed Funds through the duration of this litigation. (Dkt. No. 60).

McCaleb's and Stephenson's Motion to Compel Arbitration (Dkt. No. 40) and SDF's Motion to Intervene[2] (Dkt. No. 39) are pending and are set for oral argument on July 16, 2015, the same date as this CMC.  Bitstamp's Motion for Attorney's Fees and Costs (Dkt. No. 80) is pending and set for oral argument on August 12, 2015.  The Parties do not anticipate filing any additional motions at this time, but reserve their right to do so.

**5.**     **Amendment of Pleadings**

The Parties have determined that the amount of Disputed Funds is less than $1,038,172, as alleged.  Ripple Labs anticipates that it will amend its Cross-Complaint to correct the amount of Disputed Funds.  The Parties further anticipate that, if permitted to intervene in this action, SDF will file its proposed cross-complaint.

**6.**     **Evidence Preservation**

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information.  Each of the Parties represents that it has taken all appropriate steps to preserve documents and communications that are relevant to the issues reasonably evident in these Actions and the causes of action set forth therein.

**7.**     **Disclosures**

Ripple Labs and the Individual Defendants will exchange initial disclosures pursuant to

---

[2] SDF filed on July 6 (Dkt. No. 88) an amended pleading to replace the pleading currently identified as Exhibit A to its motion.

1   Fed. R. Civ. P. 26 on July 9, 2015. Each Party shall identify the information required by Rule

2   26(a) to the extent known to each Party at the time the disclosures were made.

3          Since SDF has not yet been permitted to intervene and file its cross-complaint, the date for

4   SDF and the parties named in SDF's cross-complaint to exchange initial disclosures has not yet

5   been set.

6   **8.     Discovery**

7          **A.     Discovery Taken To Date**

8          No discovery has taken place to date.  Although Ripple Labs served document requests

9   and deposition notices on McCaleb and Stephenson and this Court ordered expedited discovery,

10  that discovery and the Court's order were mooted by stipulation and order of the Court.  (*See* Dkt.

11  Nos. 55, 60).  Ripple Labs believes that, pursuant to Federal Rule of Civil Procedure Rule 26(d),

12  discovery may commence after the Rule 26(f) conference, which took place on June 25, 2015.

13  Ripple Labs intends to begin serving discovery.

14         McCaleb and Stephenson believe that no discovery should take place while their motion to

15  compel arbitration remains pending.  All their statements concerning discovery in this section are

16  subject to resolution of the motion to compel arbitration and without waiver of any of the rights

17  asserted in that motion.

18         **B.     Stipulated E-Discovery Order**

19         The Parties are meeting and conferring regarding whether to enter into an e-discovery

20  order and along what terms.  As some of the Parties are individual persons, the Parties believe that

21  an ESI order may not be necessary.

22         **C.     Proposed Discovery Plan**

23                 **1)     *Changes To Initial Disclosure Requirements Per Rule 26(f)(3)(A)***

24         Ripple Labs and the Individual Defendants will exchange Initial Disclosures on July 9,

25  2015.  No changes to the requirements are necessary at this time.

26                 **2)     *Scope of Anticipated Discovery Per Rule 26(f)(3)(B)***

27         Ripple Labs' and Individual Defendants' proposed schedules for discovery matters are set

28  forth in ¶ 17 below.  The Parties are in discussions regarding potentially bifurcating merits

1  discovery and damages discovery, such that discovery relating to damages will not begin until

2  after all documents relating to the merits of the Parties' respective contentions are produced.

3  Since SDF is not yet a party, SDF contends that scheduling deadlines should be set based on the

4  date upon which SDF is permitted to intervene in this action.

5  The anticipated scope of discovery is as follows:

6  Ripple Labs:

7  Ripple Labs contends that the relevant time period for the majority of discovery is

8  August 13, 2014 through present.  This time period covers the point from when McCaleb entered

9  into the Settlement Agreement, until the March 20, 2015 transaction at issue, any statements made

10  by McCaleb or Stephenson about the transaction thereafter, and any transferring of funds

11  associated with the transaction thereafter.  During this time period, Ripple Labs contends that

12  McCaleb, Stephenson, Harris, and SDF should agree to produce documents relating to, at least, the

13  following topics:

14  • XRP accounts in their ownership or control, including any accounts for which they

15  know or possess the private key;

16  • XRP sales and transfers by them, for their benefit, or at their direction, including, but

17  not limited to the transactions at issue in the Complaints;

18  • Financial records reflecting funds received for or from XRP or STR transactions;

19  • The auction initiated by SDF on or about March 16, 2015, to sell STR to the public;

20  • Stephenson's purported attempt to purchase approximately $1 million worth of STRs;

21  and

22  • Certain communications with Bitstamp, Coinex, and other gateways.

23  Ripple Labs further contends that for the following categories discovery should be

24  permitted outside the above time period.  This discovery relates to the original purported transfers

25  of XRP from McCaleb to individuals identified on Exhibit A to the Settlement Agreement, the use

26  of bots to sell XRP by McCaleb and Stephenson, Stephenson and Harris' prior purchases of STR,

27  and records of transfers between McCaleb and Stephenson or Harris:

28  • Stephenson's, McCaleb's and Harris' prior XRP transactions;

- 12 -

1          •   Stephenson's or McCaleb's use of bots on the Ripple Network;

2          •   Stephenson's and Harris' prior STR transactions, by them, or for their benefit; and

3          •   Financial records demonstrating transfers of currency between McCaleb, Stephenson or

4              Harris relating to STR or XRP transactions.

5          Ripple Labs anticipates that the Parties will meet and confer regarding additional

6      categories of documents that may need to be collected and reasonable search terms.

7          Ripple Labs also anticipates third party discovery from Bitstamp and others, as relevant

8      information and documents are in the possession of individuals or institutions that communicated

9      with McCaleb, Harris, Stephenson or SDF regarding XRP and STR transactions relevant to this

10     case, who may have knowledge of McCaleb's breach of the Settlement Agreement, who may

11     provide evidence relevant to McCaleb's motive for breaching the Settlement Agreement, or who

12     may provide evidence relating to Stephenson's involvement in assisting McCaleb to breach the

13     Settlement Agreement.

14         McCaleb, Stephenson, and Harris:

15         The Individual Defendants contend that it is premature to discuss the scope of discovery

16     while the Motion to Compel Arbitration remains pending.  McCaleb and Stephenson have not

17     served discovery yet and reserve their right to seek any potentially relevant discovery through

18     properly served discovery requests.  Harris contends that she should not be subject to party

19     discovery.  She has no claim to the Disputed Funds that are the subject of Bitstamp's Complaint

20     in Interpleader and Ripple Labs has not asserted any claim against Harris.  Harris simply should

21     be dismissed from the case and treated as a non-party for all future purposes.

22         Subject to and without waiving those positions, should discovery proceed in this Court,

23     McCaleb and Stephenson contend that the scope of discovery proposed by Ripple Labs is

24     overbroad.  The relevant question is whether certain XRP sales between the execution of the

25     Settlement Agreement and the filing of this lawsuit breached the Settlement Agreement.  The

26     facts relevant to that question are limited to those informing whether the XRP that were sold are

27     governed by the Settlement Agreement and discovery should similarly be limited in scope.

28     Consistent with Fed. R. Civ. P. 26(b)(2)(C)(iii), McCaleb and Stephenson contend that the scope

of discovery should reflect the relatively small amount in controversy in this matter.  McCaleb and Stephenson intend to respond and interpose objections, as appropriate, to written discovery requests at such time as Ripple Labs serves such requests, consistent with the deadlines provided in the Federal Rules of Civil Procedure.

McCaleb and Stephenson intend to pursue discovery from Ripple Labs concerning, among other things:

- Ripple Labs' internal and external communications concerning XRP owned by McCaleb, Stephenson or Harris and transactions in such XRP;

- Ripple Labs' internal and external communications concerning the Settlement Agreement, including the interpretation and drafting thereof;

- Ripple Labs' communications with Alexis Sirkia and/or other purported market-makers for XRP;

- Ripple Labs' alleged damages, including the alleged harm Ripple Labs claims it would have suffered had it not purchased XRP from Stephenson;

- Ripple Labs' efforts to coerce Coinex and Bitstamp to freeze funds related to this lawsuit; and

- Ripple Labs' efforts to disparage Individual Defendants and SDF, including all internal and external communications related to those efforts.

McCaleb and Stephenson anticipate that the parties will further meet and confer over the appropriate scope of discovery as the parties exchange and respond to requests for production and other written discovery.

McCaleb and Stephenson may seek third-party discovery from, among others, Bitstamp, Coinex, Alexis Sirkia, and George Frost, related to the matters at issue in this lawsuit.

<u>SDF:</u>

SDF contends that it is premature to discuss the scope of discovery while the Motion to Compel Arbitration remains pending.  McCaleb and Stephenson have not served discovery yet and reserve their right to seek any potentially relevant discovery through properly served discovery requests.  SDF intends to pursue discovery from Ripple Labs concerning, among other

- 14 -

things:

- Ripple Labs' internal and external communications concerning Stephenson's purchase of STRs;
- Ripple Labs' internal and external communications concerning SDF;
- Ripple Labs' efforts to coerce Coinex and Bitstamp to freeze SDF's funds;
- Ripple Labs' communications with Frost and its co-founder Arthur Britto concerning Britto's alleged claims and his lawsuit filed against SDF;
- Ripple Labs' relationship with Frost; and
- Ripple Labs' efforts to disparage Individual Defendants and SDF.

SDF will object to the discovery listed by Ripple Labs against SDF (such as SDF's "financial records reflecting funds received for or from XRP or STR transactions" and "the auction initiated by SDF on or about March 16, 2015, to sell STR to the public"), as these documents have no relevance to Ripple Labs' cross-complaint and are being asserted solely for Ripple Labs to obtain propriety information about SDF.

### 3) *Production of E-Discovery Per Rule 26(f)(3)(C)*

The Parties agree to produce electronic documents as single-page TIFF image OPT (Opticon file) for images; excels in native format; and standard Relativity DAT file containing at least the following fields, to the extent reasonably available: (a) Beg Prod; (b) End Prod; (c) Beg Prod Attach; (d) End Prod Attach; (e) Date Sent; (f) Date Received; (g) Date Created; (h) Date Modified; (i) Time Sent; (j) Time Received; (k) Time Modified; (l) Subject, (m) Filename, (n) Custodian, (o) Other Custodian, (p) Author, and (q) Extracted/OCR Text.  The Parties acknowledge that all fields will not be available for all documents and, with the exception of fields (a)-(d), (n)-(o), and (q), the parties have no obligation to provide metadata that does not already exist.

The Parties further agree that electronic documents will be de-duplicated and a field for "Other Custodians" will be included in the metadata produced to account for documents removed during the de-duplication process.  The Parties further agree that they have the option of employing email threading and producing just the longest email thread and any chains in the

- 15 -

1   email thread with unique attachments; if the Parties elect this option, they must inform the

2   receiving party upon production and the receiving party shall have the right to request the

3   production of earlier emails in any chain produced on a threaded basis.  The Parties further agree

4   that all emails will be processed in Pacific Standard Time.

5          The Parties each designated an e-discovery liaison.

6          **4)**     ***Privilege Claims Per Rule 26(f)(3)(D)***

7          The Protective Order entered by this Court (Dkt. No. 61) addresses certain privilege issues.

8   To the extent not addressed therein, the Parties agree that the Federal Rules of Civil Procedure

9   shall govern privilege-related matters.  The Parties further agree that upon discovery of any

10  inadvertently produced privileged document(s) by another Party, the receiving Party or Parties will

11  immediately alert the producing Party and segregate the document(s).  If the producing Party

12  asserts privilege over the document, the receiving Party or Parties shall immediately return or

13  destroy the document(s) at issue, but retain(s) the right to move to compel the production of the

14  document.

15         The Parties agree to abide by the Federal Rules of Civil Procedure and applicable law with

16  respect to claims of privilege and/or work product.  The Parties agree to produce privilege logs

17  prior to the close of fact discovery which, to the extent such information is available, shall include:

18  (1) a description of each document withheld, (2) the basis for withholding each document, (3) the

19  author, (4) the recipients, and (5) the date created or sent.  The Parties agree that they will make

20  their best effort to produce privilege logs prior to depositions.

21         **5)**     ***Proposed Limitations or Modifications of Discovery Rules Per Rule***
           ***26(f)(3)(E)***
22

23         The Parties agree that discovery shall be conducted in accordance with the default rules of

24  the Federal Rules of Civil Procedure, subject to the following modifications:

25         a.     <u>Service</u>:  For documents not served via the Court's ECF system, the Parties agree to

26                email service.  Service by email will be considered equivalent to service by hand

27                delivery.

28         b.     <u>Depositions</u>:  The Parties agree that McCaleb and Stephenson, collectively, shall be

- 16 -

1  limited to a total of 10 depositions; Ripple Labs shall be limited to 10 depositions;

2  and SDF shall be limited to 10 depositions.

3  c.  <u>Interrogatories</u>:  Ripple Labs agrees to limit interrogatories to McCaleb and

4  Stephenson to a total of 20 identical interrogatories and 5 additional unique

5  interrogatories to each of McCaleb and Stephenson.  McCaleb and Stephenson

6  agree to limit interrogatories to Ripple Labs to a total of 25 identical interrogatories

7  and 5 additional unique interrogatories from each.  SDF is limited to a total of 25

8  interrogatories.

9  **6)  *Other Orders the Court Should Issue Per Rule 26(f)(3)(F)***

10  A Protective Order has already been entered in this action.  (Dkt. No. 61).  The Parties

11  agree that, at this time, no other orders are necessary under Rules 26(c), 16(b) or 16(c).

12  **D.  <u>Identified Discovery Disputes</u>**

13  The Parties are not aware of any discovery disputes at this time.

14  **9.  <u>Class Actions</u>**

15  This case is not a class action.

16  **10.  <u>Related Cases</u>**

17  The Parties are not aware of any other cases that are "related" within the meaning of Civil

18  Local Rule 3-12(a).

19  **11.  <u>Relief</u>**

20  The Interpleader Complaint seeks only that the Court determine which Party is entitled to

21  the Disputed Funds.  In the Prayer for Relief in its Cross-Complaint, Ripple Labs seeks specific

22  performance of the Settlement Agreement and injunctive relief against McCaleb, including an

23  order requiring McCaleb to: (1) disclose all Ripple accounts under his ownership or control,

24  (2) disclose account numbers and addresses of all individuals and entities to whom he has

25  transferred XRP, identified in Exhibit A to the Settlement Agreement, (3) disclose the amount,

26  date, value and transferee of all XRP transfers made by him, for him, or at his direction since

27  entering into the Settlement Agreement, (4) cease all sales of XRP owned or controlled by

28  McCaleb or his family members beyond the agreed-upon $10,000 worth of XRP per week limit

- 17 -

1   and other limits set forth in the Settlement Agreement, and (5) cease and desist all sales of XRP

2   owned or controlled by McCaleb or his family members for a 150-week period, to allow his actual

3   XRP sales in August through October 2014, and on March 20, 2015, to catch up to and become

4   equal to the $10,000 per week worth of XRP that McCaleb was permitted to sell during that period

5   under the Settlement Agreement.  Ripple Labs further seeks monetary damages, expenses and

6   costs incurred in conjunction with bringing and litigating this action, and pre-judgment and post-

7   judgment interest against Stephenson.

8          McCaleb, Harris, Stephenson, and SDF deny that Ripple Labs is entitled to any relief.

9          SDF, if permitted to intervene, will seek from the defendants named in its cross-complaint:

10   general and specific damages, treble damages, restitution and/or disgorgement of unlawful

11   revenues or profits, exemplary and punitive damages, injunctive and equitable relief, prejudgment

12   interest, costs and expenses, and reasonable attorneys' and expert witness fees.

13   **12.    Settlement and ADR**

14          A telephonic ADR Conference with the Court is currently scheduled for July 9, 2015.

15          <u>Ripple Labs:</u>

16          Ripple Labs is interested in participating in settlement discussions, including through

17   JAMS, and expressed that desire to McCaleb in May 2015 and Stephenson on June 12, 2015.  On

18   June 1, 2015, Ripple Labs offered to provide, as part of a mediation process, financial information

19   requested by McCaleb sufficient to value his Ripple Labs stock.  McCaleb responded that he was

20   evaluating the offer and would get back to Ripple Labs regarding mediation, which he never did.

21   Ripple Labs' offers to participate in mediation and to provide McCaleb with certain financial

22   information that he requested as a prerequisite to mediation remain open.

23          <u>McCaleb, Stephenson, and Harris:</u>

24          McCaleb and Stephenson believe that, pursuant to the parties' binding agreement, binding

25   arbitration is the appropriate form of ADR and have sought to compel such arbitration.  In

26   addition, Individual Defendants are willing to engage in settlement discussions, including through

27   mediation, provided that all Parties agree to commit to those steps necessary for mediation to

28   have a chance of success.  In particular, McCaleb has informed Ripple Labs that in order for a

mediation to be useful, Ripple Labs will need to provide certain basic, but sufficiently detailed financial information sufficiently ahead of such mediation.  Ripple Labs did not agree to do so in the June 1 communication described above and has not yet agreed to do so without imposing overly restrictive conditions.

SDF:

SDF is willing to participate in mediation, under appropriate conditions.

**13.    Consent to Magistrate Judge for All Purposes**

The Parties do not consent to have a magistrate judge conduct all further proceedings.

**14.    Other References**

The Parties do not believe this case is suitable for referral to the Judicial Panel on Multidistrict Litigation.  Ripple Labs believes a Special Master Discovery Manager is appropriate for this matter.  The Individual Defendants and SDF believe a Special Master Discovery Manager will only add needless expense to this dispute.

McCaleb and Stephenson have sought, through their Motion to Compel Arbitration, to refer the matter to binding arbitration pursuant to the Settlement Agreement.  Ripple Labs does not believe this case is appropriate for binding arbitration.

**15.    Narrowing Issues**

The Parties are in discussions relating to bifurcation of merits and damages based discovery, and possibly trial.  The Parties are not aware of any other issue that might be narrowed or procedures that may be streamlined at this point.

**16.    Expedited Schedule**

The Parties do not agree to the Expedited Trial Procedure set forth in General Order 64.

**17.    Scheduling**

| Proposed Event | Ripple Labs' Proposed Date | Individual Defendants' Proposed Date[3] |
|---|---|---|
| Discovery Requests May Be Served | Immediately per Rule 26(d), which states that discovery may | Only upon the denial, if any, of the Motion to |

---

[3] Since SDF is not yet a party, SDF contends that scheduling deadlines should be set based on the date upon which SDF is permitted to intervene in this action.

| Proposed Event | Ripple Labs' Proposed Date | Individual Defendants' Proposed Date[3] |
|---|---|---|
| | proceed after the 26(f) conference, which occurred on June 25, 2015 | Compel Arbitration |
| Document Production Complete | September 30, 2015 | October 14, 2015 or two months before the fact discovery cutoff, whichever is later |
| Fact Discovery Cutoff | December 14, 2015 | December 14, 2015 or five months after the denial, if any, of the Motion to Compel Arbitration, whichever is later |
| Initial Expert Disclosures | January 08, 2016 | Four weeks after the fact discovery cutoff |
| Rebuttal Expert Disclosures | February 08, 2016 | Four weeks after initial expert disclosures |
| Expert Discovery Cutoff | March 10, 2016 | Three weeks after rebuttal expert disclosures |
| Last day to file Dispositive Motions | April 08, 2016 | Four weeks after expert discovery cutoff |
| Oppositions to Dispositive Motions | June 07, 2016 | Four weeks after opening dispositive motions |
| Reply re Dispositive Motions | June 28, 2016 | Three weeks after oppositions to dispositive motions |
| Hearing on Dispositive Motions | July 20, 2016 at 2:00 p.m. | The first available Wednesday at least two weeks after replies to dispositive motions |
| Pretrial Conference | September 5, 2016 at 2:00 p.m. | The first available Monday at least four weeks after hearing on dispositive motions |
| Trial | September 12, 2016 at 8:30 a.m. | The Monday following the pre-trial conference |

**18.**   **Trial**

Ripple Labs is amenable to discussions relating to a bench trial for this matter in its

1    entirety.  It anticipates that the trial of this matter will last approximately 10 court days.

2          To the extent the matter is not referred to arbitration, Individual Defendants have

3    demanded a jury trial for all issues triable by jury.  Individual Defendants anticipate that trial of

4    this matter, if necessary, will last no more than 3 court days.

5    **<u>19.</u>      <u>Disclosure of Non-Party Interested Entities or Persons</u>**

6          All parties (other than Bitstamp) have filed their "Certification of Interested Entities or

7    Persons" required by Civil Local Rule 3-15.  Since SDF is not yet a party, it has not yet filed this

8    certification, but will do so promptly after the motion to intervene is granted.  The content of each

9    is restated below:

10         <u>Ripple Labs:</u>

11         Pursuant to Civil L.R. 3-15, the undersigned certifies that the following listed persons,

12   associations of persons, firms, partnerships, corporations (including parent corporations), or other

13   entities other than the Parties themselves are known to have either: (i) a financial interest in the

14   subject matter in controversy or in a party to the proceeding, or (ii) any other kind of interest that

15   could be substantially affected by the outcome of this proceeding: Bitstamp LTD.

16         Pursuant to Federal Rule of Civil Procedure 7.1, Ripple Labs files this corporate disclosure

17   statement, and hereby discloses, by and through its undersigned counsel, that Ripple Labs does not

18   have any parent corporation and no publicly-held corporation owns 10% or more of Ripple Labs'

19   stock.

20         <u>McCaleb</u>:

21         Pursuant to Civil L.R. 3-15, the undersigned certifies that the following listed persons,

22   associations of persons, firms, partnerships, corporations (including parent corporations) or other

23   entities (i) have a financial interest in the subject matter in controversy or in a party to the

24   proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be

25   substantially affected by the outcome of this proceeding:

26   • Stellar Development Foundation ("SDF"):  SDF claims ownership to the funds frozen by

27      Interpleader Plaintiff Bitstamp, Ltd. and has moved to intervene to assert that claim.

     <u>Stephenson</u>:

28

JOINT CASE MANAGEMENT STATEMENT
Case No. 15-cv-01503-WHO

Pursuant to Civil L.R. 3-15, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

- Stellar Development Foundation ("SDF"):  SDF claims ownership to the funds frozen by Interpleader Plaintiff Bitstamp, Ltd. and has moved to intervene to assert that claim.

Harris:

Pursuant to Civil L.R. 3-15, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

- Stellar Development Foundation ("SDF"):  SDF claims ownership to the funds frozen by Interpleader Plaintiff Bitstamp, Ltd. and has moved to intervene to assert that claim.

## 20. Professional Conduct

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California and acknowledge that they will abide by those guidelines.

## 21. Other

The Parties agree that all depositions (including subpoenas) will be scheduled by agreement; there will not be unilateral notices, although the Parties reserve the right to serve notices or subpoenas to begin the scheduling process.  The Parties are not aware of any additional matters that may facilitate the just, speedy and inexpensive disposition of this case at this time.

Dated:  July 9, 2015                    Respectfully submitted,

                                By:   /s/ Grant P. Fondo
                                      Grant P. Fondo (SBN 181530)
                                      *gfondo@goodwinprocter.com*

1

Nicole L. Chessari (SBN 259970)
*nchessari@goodwinprocter.com*
**GOODWIN PROCTER LLP**

2

135 Commonwealth Drive
Menlo Park, CA 94025-1105

3

Tel.:   650.752.3100
Fax.:  650.853.1038

4

5

Richard M. Strassberg (*Pro Hac Vice*)
*rstrassberg@goodwinprocter.com*

6

**GOODWIN PROCTER LLP**
The New York Times Building

7

620 Eighth Avenue
New York, NY 10018-1405

8

Tel.:   212.813.8800
Fax.:  212.355.3333

9

10

*Attorneys for Defendant/Cross-Plaintiff
Ripple Labs Inc.*

11

Dated:  July 9, 2015

Respectfully submitted,

12

By:   /s/ Paul F. Rugani

13

Mark S. Parris (*pro hac vice*)
*mparris@orrick.com*

14

Paul F. Rugani (*pro hac vice*)
*prugani@orrick.com*

15

Andrew Ardinger (SBN 267417)
*aardinger@orrick.com*

16

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

17

701 Fifth Avenue
Suite 5600

18

Seattle, Washington 98104-7097
Telephone: 206.839.4300

19

Facsimile: 206.839.4301

20

Gabriel M. Ramsey (SBN 209218)
*gramsey@orrick.com*

21

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

22

The Orrick Building
405 Howard Street

23

San Francisco, California 94105-2669
Telephone: 415.773.5700

24

Facsimile: 415.773.5759

25

*Attorneys for Defendants*

26

*Jed McCaleb, Jacob Stephenson, and Nancy Harris*

27

28

JOINT CASE MANAGEMENT STATEMENT
Case No. 15-cv-01503-WHO

1    Dated:  July 9, 2015                        Respectfully submitted,

2                                       By:   /s/ Terry Gross_____
                                             Terry Gross (SBN 103878)
3                                            *terry@gba-law.com*
                                             Adam C. Belsky (SBN 147800)
4                                            *adam@gba-law.com*
5                                            **Gross Belsky Alonso LLP**
                                             One Sansome Street, Suite 3670
6                                            San Francisco, CA 94104
                                             Telephone: 415.554.0200
7                                            Facsimile: 415.544.0201

8                                            *Attorneys for Proposed Intervenor-Defendant*
9                                            *Stellar Development Foundation*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CIVIL L.R. 5-1 ATTESTATION</u>**

I, Nicole L. Chessari, am the ECF User whose ID and Password are being used to file this JOINT CASE MANAGEMENT STATEMENT.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Grant P. Fondo, counsel for Ripple Labs Inc., Terry Gross, counsel for Stellar Development Foundation and Paul Rugani, counsel for Defendants Jed McCaleb, Jacob Stephenson, and Nancy Harris concurred to its filing.

Dated:  July 9, 2015

/s/  Nicole L. Chessari
Nicole L. Chessari

1

## CERTIFICATE OF SERVICE

2       I, Grant P. Fondo, hereby certify that a copy of the foregoing document and attachments,

3   filed through the CM/ECF system, will be sent electronically to the registered participants as

4   identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class

5   mail postage prepaid on all counsel who are not served through the CM/ECF system on July 9,

6   2015.

7

8                                         /s/ Nicole L. Chessari

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT STATEMENT
Case No. 15-cv-01503-WHO