MARK S. PARRIS (*admitted pro hac vice*)
PAUL F. RUGANI (*admitted pro hac vice*)
ANDREW ARDINGER (SBN 267417)
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue
Suite 5600
Seattle, Washington  98104-7097
Telephone:     +1-206-839-4300
Facsimile:     +1 206-839-4301
E-mail:        mparris@orrick.com

GABRIEL M. RAMSEY (SBN 209218)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, California  94105-2669
Telephone:     +1-415-773-5700
Facsimile:     +1 415-773-5759
E-mail:        gramsey@orrick.com

*Attorneys for Defendants Jed McCaleb, Jacob
Stephenson and Nancy Harris*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BITSTAMP, LTD., a foreign company,<br><br>        Plaintiff,<br><br>    v.<br><br>RIPPLE LABS, INC., a California Corporation, JACOB STEPHENSON, an individual, NANCY HARRIS, an individual, JED MCCALEB, an individual, and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 15-cv-01503-WHO<br><br>**[REDACTED VERSION OF] DEFENDANTS JED McCALEB, JACOB STEPHENSON, AND NANCY HARRIS'S OPPOSITION TO BITSTAMP LTD.'S MOTION FOR ATTORNEYS' FEES AND COSTS** |
| RIPPLE LABS, INC., a California Corporation,<br><br>        Cross-Plaintiff,<br><br>    v.<br><br>JED MCCALEB, an individual, JACOB STEPHENSON, an individual, and DOES 1 through 10, inclusive,<br><br>        Cross-Defendants. | Date:      August 12, 2015<br>Time:     2:00 p.m.<br>Dept:     Courtroom 2, 17th Floor<br>Judge:   Hon. William H. Orrick |

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................. 1

II.     RELEVANT FACTS ............................................................ 3

        A.      Procedural History ................................................ 3

        B.      Bitstamp's Time Records ...................................... 6

III.    LEGAL STANDARD ........................................................... 7

IV.     ARGUMENT .................................................................... 8

        A.      Bitstamp Should Not Receive An Award of Fees and Costs Because
                Its Actions Were Not Helpful and It Seeks to Waste the Subject Funds ................ 8

        B.      Even If the Court Decides a Fee Award Is Appropriate, Bitstamp
                Should Receive Nowhere Near the Staggering Sum It Seeks ............................... 10

                1.      Bitstamp's Request Is Unreasonable In Both
                        Absolute and Proportional Terms ............................................... 11

                2.      Bitstamp Did Not Adequately Support Its Request .................................... 12

                3.      Bitstamp's Block-Billing Prevents the Court from Discerning
                        Whether Some, or Any, of the Time Entered Was Reasonably Spent ........ 14

                4.      Bitstamp's Descriptions Are Insufficient and Reflect an Enormous
                        Amount of Time Spent Unproductively and Unreasonably ...................... 15

        C.      No Fees Should Be Assessed Against the Individual Defendants ......................... 19

        D.      The Court Should Deny Any Fees-on-Fees Request ............................................. 21

V.      CONCLUSION ............................................................................... 22

OHSUSA:762629492.9

# TABLE OF AUTHORITIES

**Cases**

*A/S Krediit Pank v. Chase Manhattan Bank,*
  303 F.2d 648 (2d Cir. 1962)...................................................................... 21

*Allianz Life Ins. v. Agorio,*
  852 F. Supp. 2d 1163 (N.D. Cal. 2012) .......................................... 7, 12, 13, 21

*Anchor Brewing Co. v. Peix,*
  2007 U.S. Dist. LEXIS 18428 (N.D. Cal. Feb. 28, 2007).................................... 8

*Banas v. Volcano Corp.,*
  47 F. Supp. 3d 957 (N.D. Cal. 2014) ...................................... 12, 13, 14, 17

*Blum v. Stenson,*
  465 U.S. 886 (1984).......................................................................... 12

*Cal. Pipe Recycling, Inc. v. Sw. Holdings, Inc.,*
  2009 U.S. Dist. LEXIS 123863 (E.D. Cal. Feb. 19, 2009).................................. 8

*Camacho v. Bridgeport Fin., Inc.,*
  523 F.3d 973 (9th Cir. 2008).............................................................. 13

*Cognizant Tech. Sols. U.S. Corp. v. McAfee,*
  2014 U.S. Dist. LEXIS 109992 (N.D. Cal. Aug. 7, 2014).......................... 15, 16

*Conn. Gen. Life Ins. Co. v. Rapoza,*
  2007 U.S. Dist. LEXIS 55518 (N.D. Cal. July 25, 2007).................................. 11

*First Trust Corp. v. Bryant,*
  410 F.3d 842 (6th Cir. 2005).............................................................. 10

*Gelfgren v. Republic Nat'l Life Ins. Co.,*
  680 F.2d 79 (9th Cir. 1982)................................................................ 8

*Il Fornaio (America) Corp. v. Lazzari Fuel Co., LLC,*
  2015 U.S. Dist. LEXIS 66145 (N.D. Cal. May 20, 2015) .................................. 18

*James v. AT&T West Disability Benefits Program,*
  2014 U.S. Dist. LEXIS 176350 (N.D. Cal. Dec. 22, 2014) ............................... 13

*Kraszewski v. State Farm Gen. Ins. Co.,*
  1984 U.S. Dist. LEXIS 15992 (N.D. Cal. June 11, 1984) ................................. 21

*Landmark Chem., S.A. v. Merrill Lynch & Co.,*
  234 F.R.D. 62 (S.D.N.Y. 2005) .......................................................... 21

*Lindoerfer v. J.C. Penney Co.,*
  244 F. Supp. 175 (N.D. Ohio 1965)....................................................... 21

*Metro. Life Ins. Co. v. Billini,*
  2007 U.S. Dist. LEXIS 89971 (E.D. Cal. Nov. 26, 2007) ................................ 22

*Metro. Life. Ins. Co. v. Leonis*,
  2014 U.S. Dist. LEXIS 159306 (N.D. Cal. Nov. 12, 2014)................................. 7

*Or. Mut. Ins. Co. v. Homeward Residential, Inc.*,
  2013 U.S. Dist. LEXIS 163948 (N.D. Cal. Nov. 17, 2013)................................. 11, 12, 13

*San Rafael Compania Naviera, S. A. v. American Smelting & Refining Co.*,
  327 F.2d 581 (9th Cir. 1964)........................................................ 7

*Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*,
  306 F.2d 188 (9th Cir. 1962)........................................................ 7, 8, 11, 20

*State Farm Life Ins. Co. v. Cai*,
  2013 U.S. Dist. LEXIS 127594 (N.D. Cal. Sept. 6, 2013) ........................................... 8, 11

*Sun Life Assur. Co. v. Estate of Chan*,
  2003 U.S. Dist. LEXIS 16943 (N.D. Cal. Sept. 22, 2003) ................................ 11

*Trs. of the Dirs. Guild of America-Producer Pension Benefits Plans v. Tise*,
  234 F.3d 415 (9th Cir. 2000)........................................................ 7

*United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Emps. of ASARCO, Inc.*,
  512 F.3d 555 (9th Cir. 2008)........................................................ 15

*Welch v. Metro. Life Ins. Co.*,
  480 F.3d 942 (9th Cir. 2007)........................................................ 14

*Wynn v. Chanos*,
  2015 U.S. Dist. LEXIS 80062 (N.D. Cal. June 19, 2015) .............................. 12, 13, 15, 17

**Treatises**

4 Moore's Federal Practice – Civil § 22.06 (4th ed.)................................................. 7, 21

1    **I.      INTRODUCTION**

2           Bitstamp's request for attorneys' fees is shocking on its face.  In connection with a dispute

3    over less than $1,000,000 in interpleaded funds, and for less than one month of work, Bitstamp

4    claims it is entitled to ***nearly $200,000*** (with, supposedly, more to come).  Bitstamp's work

5    during this period involved briefing just one substantive motion and attending to various ancillary

6    administrative matters.  Bitstamp's attorneys attended one thirty-minute hearing (albeit with more

7    lawyers present than any other party).  The other parties engaged in substantive briefing on a

8    variety of motions, but Bitstamp did not file briefs in connection with those.  Bitstamp did not

9    retain an expert.  There were no depositions.  There was no written discovery.  There is, in short,

10   no possible way for Bitstamp to justify its demand for fees.

11          The limited actions Bitstamp did take were largely unhelpful and not in keeping with the

12   traditional disinterested role of an interpleader plaintiff.  In the typical case, the interpleader

13   plaintiff identifies all the actual or potential claimants it can and hales them into court to

14   adjudicate ownership of the fund.  The disinterested plaintiff need only allege—and to avoid

15   conflict *does* only allege—the existence of a fund and a dispute over its ownership.  The

16   interpleader plaintiff dismisses any parties that do not actually have claims, and joins any party

17   that emerges with a claim.  Here, instead, Bitstamp has targeted Jed McCaleb, a non-claimant,

18   through this litigation.  Despite his sworn testimony disavowing any interest in the funds,

19   Bitstamp did not dismiss him.  Instead, it attacked him, repeatedly, in filings from the Complaint

20   to the present.  It sued his aunt, Nancy Harris, for reasons known only to Bitstamp—and maybe

21   Ripple Labs, Inc. ("Ripple").  Jacob Stephenson is properly a defendant, but his claim is for only

22   $502 of the nearly $1,000,000 at issue.  In its pleadings, Bitstamp repeatedly and consistently

23   makes allegations that are designed to support Ripple's underlying claim.

24          Moreover, Bitstamp conspicuously failed to join in its Complaint the single party that has

25   a legitimate interest in essentially all of the Disputed Funds—Stellar Development Foundation

26   ("SDF").  Bitstamp knew about SDF's interest in the funds from the outset.  Bitstamp devoted

27   multiple paragraphs of its Complaint to SDF, including a lengthy non-sequitur about SDF's

28   finances and operations, and alleged that transactions giving rise to the interpleader action

DEFENDANTS' OPP. TO BITSTAMP'S MOT. FOR
ATTORNEYS' FEES AND COSTS
15-CV-01503-WHO

1    involved SDF.  Yet Bitstamp refused to name SDF as a party at the outset and never sought to

2    join SDF or otherwise facilitate its entry into this action even after SDF formally and

3    unequivocally informed Bitstamp of its claim.  Bitstamp's own motion for discharge

4    acknowledged SDF's claim, yet Bitstamp still did nothing to ensure that all proper claimants were

5    before the Court before obtaining its own discharge.  Far from having done a service for the

6    claimants, Bitstamp has forced non-claimants into litigation (and kept them there) and has kept

7    actual claimants out of the interpleader.

8         Bitstamp's attempt to lay the blame for its exorbitant fee request at the feet of Individual

9    Defendants should be rejected out of hand.  The Individual Defendants had legitimate concerns

10   about whether Bitstamp truly was acting as a good-faith, disinterested interpleader given, among

11   other things, Bitstamp's use of Ripple's outside counsel to file a pleading filled with allegations

12   favoring Ripple and attacking Mr. McCaleb—a non-claimant to the funds at issue—and

13   Bitstamp's failure to join SDF even after freezing funds in SDF's account.  Neither equity nor

14   Ninth Circuit law require a defendant to pay for efforts an interpleader plaintiff undertook to

15   demonstrate that it acted in good faith.

16        Bitstamp's entitlement to attorneys' fees is not automatic and instead rests soundly in this

17   Court's discretion.  Fee awards in interpleader cases are rooted in traditional equity principles.

18   One such overriding principle adopted by the Ninth Circuit is that the interpleaded fund not be

19   depleted through an attorneys' fee award to the plaintiff.  The interpleader plaintiff only provides

20   a benefit to the claimants by ensuring that the common fund at issue is preserved and maintained

21   for the claimant(s) entitled to it.  As such, the Ninth Circuit counsels that interpleader awards

22   should be modest and courts applying this guidance have rejected overstuffed fee requests like

23   these.  Applying its own discretion and guided by these equitable principles, this Court should not

24   reward Bitstamp, supposedly a disinterested stakeholder, for its litigious conduct.  The Court

25   should instead deny Bitstamp's request for attorneys' fees in its entirety.

26        Even if this Court is inclined to grant Bitstamp some award, Bitstamp can receive only a

27   small fraction of what it requests.  Bitstamp's records reflect a truly astonishing amount of hours

28   for the work performed.  Just one partner worked essentially full-time on this matter for a four-

DEFENDANTS' OPP. TO BITSTAMP'S MOT. FOR
ATTORNEYS' FEES AND COSTS
15-CV-01503-WHO

1  week period, billing 148.4 hours (or 37 hours per week), and even his time accounts for less than

2  half of the total time for which Bitstamp seeks reimbursement.  Overall, the records show

3  inefficient project staffing, duplicative and unnecessary work, and inscrutably vague descriptions

4  of work performed.  They provide no basis for the Court to determine whether any of the time

5  claimed was reasonably spent.

6        Simply put, Bitstamp should not be awarded 20% of the interpleaded funds for less than

7  one month of work that did nothing to facilitate getting all interested parties before the Court to

8  resolve their dispute.  This Court should either deny the motion in its entirety or dramatically

9  reduce the fees awarded, to no more than $20,000.

10  **II.**    **RELEVANT FACTS**

11      **A.**    **Procedural History**

12        Ripple kicked off the events leading to this action in late March by sending Bitstamp two

13  letters asserting an ownership interest over funds housed within accounts on the Bitstamp

14  gateway.  *See* Dkt. 57, ¶¶ 9, 12-14.  Ripple alleged that Mr. Stephenson was the owner of one of

15  the accounts, which Bitstamp claimed to have had no way of knowing for itself, because the

16  account in question, "r3Q" was a Ripple account (Bitstamp is just a gateway for such accounts).

17  *See id.*, ¶ 9, 11.  According to Bitstamp, Ripple alleged that Mr. McCaleb actually controlled the

18  account.  *See id.*, ¶ 9.  On the strength of Ripple's assertion, Bitstamp froze the funds in the

19  accounts indicated by Ripple on March 31.  *See* Dkt. 1, ¶ 24.  The next day, Bitstamp filed this

20  lawsuit by and through George Frost, who as a private attorney represented Ripple and is now

21  Bitstamp's in-house counsel.  *See* Dkt. 1; Dkt. 62, ¶ 3 & Dkt. 62-2 (Exh. B).  Bitstamp named as

22  defendants Ripple, Mr. McCaleb, Mr. Stephenson, and Ms. Harris.  *See* Dkt. 1.

23        Per Bitstamp, the digital currency community is small and "significantly intertwined,"

24  Dkt. 56 at 13, but Bitstamp did not allege that it contacted, or attempted to contact, Mr. McCaleb,

25  Mr. Stephenson or Ms. Harris prior to filing suit.  Bitstamp sued Mr. McCaleb because Ripple

26  *expressed a concern*, without more, that Mr. McCaleb may have been involved in a sale of XRP

27  by Mr. Stephenson *to Ripple*.  *See, e.g.*, Dkt. 57, ¶ 11.  Neither of the two letters Ripple sent to

28  Bitstamp identify Ms. Harris, and it is not clear why Bitstamp named her.  *See* Dkt. 57-3; 57-5;

1    *contra* Dkt. 1, ¶ 20 (erroneously implying that the two letters referenced Ms. Harris).

2        Bitstamp did not name SDF as a potential claimant in its Complaint—even as it engaged

3    in a long (and irrelevant to the interpleader) digression about SDF and the STR currency. *See*

4    Dkt. 1, ¶¶ 16, 18. On May 11, Mr. Stephenson informed Bitstamp that "I don't have any claim

5    over the Bitstamp USD." *See* Dkt. 57, ¶ 16 & Exh. E (Dkt. 57-6). He explained: "I started with

6    XRP and sold that XRP for USD. I then used that USD to purchase STR. I now own STR and

7    have no claim on the USD. As far as I know, at this point the USD belongs to Stellar

8    Development Foundation." Dkt. 57-6. More recent subsequent review of the transaction records

9    indicates that Mr. Stephenson *does* have a claim to $502 (or roughly 5 ten-thousandths of the

10    funds in dispute) obtained through his sale of XRP. *See* Dkt. 85, ¶¶ 27, 43-50. On May 11, SDF

11    also informed Bitstamp that it owns the main account in which the interpleaded funds were held.

12    *See* Dkt. 57, ¶ 17 & 57-7 (Exh. G). Even then, Bitstamp did not choose to expedite the

13    interpleader by adding SDF as a defendant or informing the other parties or Court of what it had

14    learned. Instead it chose to retain outside counsel at Farella Braun + Martel on its own behalf to

15    continue litigating the action.

16        On May 13, Bitstamp filed its Motion for an Order of Discharge or, in the Alternative, for

17    Voluntary Dismissal, seeking approval to release the withheld funds to SDF, as rightful owner of

18    the account. *See* Dkt. 20 at 1, 6, 7. Alternatively, it sought to dismiss the action entirely, as "it

19    now appears that this is a contract-based dispute between Ripple, on the one hand, and McCaleb

20    and Stephenson, on the other hand," and that "Ripple Labs is free to assert its contract claims

21    against the parties to the Settlement Agreement outside of this interpleader action." *Id.* at 8.

22    When Bitstamp filed its motion, Individual Defendants had not yet appeared and were not yet due

23    to appear, as each had only been served with the Complaint approximately two weeks before. *See*

24    Dkts. 26-28.

25        On May 14, Ripple sought, and, the next day obtained, an *ex parte* temporary restraining

26    order preventing Bitstamp from releasing the funds to SDF. *See* Dkts. 23; 24. In connection with

27    the TRO, Ripple was granted the opportunity to conduct intensive expedited discovery against

28    Mr. McCaleb and Mr. Stephenson, although neither had yet appeared. *See* Dkt. 24 at 2-3.

1   Individual Defendants first appeared on May 20, at which time they moved to dissolve the TRO.

2   Dkt. 31.

3       Neither Bitstamp nor Ripple agreed to SDF's request to stipulate to its intervention, Dkt.

4   93 at 8, so SDF moved to intervene in the interpleader on May 22. *See* Dkt. 39. Individual

5   Defendants and SDF moved to dismiss the interpleader the same day, citing many of the same

6   underlying facts that Bitstamp had in its motion—Ripple's claims were not properly the subject

7   of an interpleader, but should be adjudicated (in arbitration) as the straightforward contract-based

8   claims they are. *See* Dkt. 41 at 3-4.

9       In its Response to Bitstamp's Motion for a Discharge, Ripple argued that neither

10  Individual Defendants nor SDF had standing to respond to Bitstamp's motion, Individual

11  Defendants because they had not yet filed an Answer—despite their pending Motion to

12  Dismiss—and SDF because it was not yet a party to the action. *See* Dkt. 53 at 2, n.2. Bitstamp

13  had still taken no steps to join SDF.

14      Individual Defendants and SDF filed their Response to Bitstamp's Motion for a Discharge

15  on May 28. *See* Dkt. 52. In connection with this Response, Mr. McCaleb submitted a declaration

16  that he does not own or control the Ripple accounts at issue in the interpleader, and that he has

17  "no interest in any funds or accounts that comprise the Disputed Funds in this case." Dkt. 52-1,

18  ¶ 2. The Response also highlighted significant concerns that Individual Defendants and SDF had

19  about the conduct of the litigation, including Bitstamp's decision to repeatedly—and baselessly,

20  given its ostensibly disinterested role—adopt Ripple's characterization of events and target

21  persons Bitstamp knew to be (i) uninvolved (or had no basis to believe were involved) in the

22  underlying events and (ii) uninterested in the funds at issue. *See* Dkt. 52 at 4-6; 12-13.

23  Especially because Bitstamp disavowed its in-house counsel's work, asking for dismissal of the

24  action because "it now appears that this is a contract-based dispute" for which an interpleader is

25  unnecessary, *see* Dkt. 20 at 8, Individual Defendants reasonably believed that they had been

26  roped into the interpleader by a dubious contrivance, improperly forced to spend a very

27  significant amount of their time and money litigating a federal interpleader lawsuit that should

28  have been brought by Ripple as a straightforward arbitration.

DEFENDANTS' OPP. TO BITSTAMP'S MOT. FOR
ATTORNEYS' FEES AND COSTS
15-CV-01503-WHO

OHSUSA:762629492.9

1    Although Individual Defendants and Ripple's Responses to the Motion for Discharge

2    were not due until May 28, ███████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████████████████

4    ████████████████████████    Bitstamp's Reply was filed June 4.  *See* Dkt. 56.

5    The Court granted Bitstamp's Motion.  *See* Dkt. 63.  It did not find that Bitstamp's in-

6    house counsel's work for Ripple and a Bitstamp board member/Ripple co-founder in matters

7    adverse to Mr. McCaleb prevented Bitstamp's discharge.  *See id.* at 5.  The Court stated that

8    Bitstamp's abandoned efforts to release the funds it seized to SDF undercut the notion that

9    Bitstamp and Ripple "are in cahoots."  *Id.*  The Court did not address Bitstamp's entitlement to

10   fees.  *See id.* at 6, n.6.  After reviewing the Court's order, Individual Defendants and SDF

11   withdrew their Motion to Dismiss without waiving rights to pursue the arguments set forth in that

12   Motion.  *See* Dkt. 64.  Individual Defendants informed Bitstamp of this withdrawal well in

13   advance of the deadline for Bitstamp's opposition so as to eliminate Bitstamp's need to spend

14   money briefing that motion.  At the July 16 hearing, the Court informed the parties that it

15   intended to grant SDF's motion to intervene.  SDF will assert a counter- and cross-claim against

16   Ripple, Mr. Frost, and Bitstamp for violation of California Business and Professions Code

17   § 17200, and two cross-claims against Ripple and Mr. Frost for interference with economic

18   relations.  *See* Dkt. 88, Exh. A at ¶¶ 29-52.

19   **B.    Bitstamp's Time Records**

20   Shortly after Bitstamp filed this Motion, the Court *sua sponte* issued an Order requiring

21   Bitstamp to provide its time records to the Court and defendants, noting that the $182,948.01

22   Bitstamp sought in its Motion "is a lot of money for the work presented to me in this case," and

23   that "Bitstamp has not provided sufficient information to determine whether the request is in fact

24   reasonable."  Dkt. 81.

25   The time records that Bitstamp provided span less than one month, stretching from May

26

---

27   [1] For ease of reference and administration, Individual Defendants cite to the time records
Bitstamp lodged with the Court and served on defendants in accordance with the Court's June 30
28   Order, Dkt. 81.  Individual Defendants refer to that document as "Time Records."

1    11 to June 8.  Bitstamp's counsel requests that the Court approve an hourly rate of $695 for Ms.

2    Nall, $620 for Mr. Wheeler, $430 for Mr. Lee, and $300 for Ms. Van Dyke.  *See* Dkt. 78, ¶¶ 6; 7.

3    Consistent with Ms. Nall's declaration, the time records indicate the Bitstamp seeks

4    compensation for 86.5 hours of Ms. Nall's time, 148.4 hours of Mr. Wheeler's time, 44.9 hours of

5    Mr. Lee's time, and 34.2 hours of Ms. Van Dyke's time.  *See id.* at ¶ 11.  The time entries are

6    block-billed, such that there is no way to differentiate how much time was spent on a specific task

7    or activity; only a handful of the more than 60 entries appear to plausibly relate to a single task.

8    The vast majority span multiple tasks, to the extent the purpose of the work is ascertainable.

9    **III.    LEGAL STANDARD**

10          "In an interpleader action, the trial court has discretion to grant or deny attorneys' fees

11    based on the factors of each individual case."  *Metro. Life. Ins. Co. v. Leonis*, 2014 U.S. Dist.

12    LEXIS 159306, at *7 (N.D. Cal. Nov. 12, 2014); *see also Schirmer Stevedoring Co. v. Seaboard*

13    *Stevedoring Corp.*, 306 F.2d 188, 194 (9th Cir. 1962) ("The award of attorney fees is

14    fundamentally a matter of discretion of the trial court").  "[T]here is no right for the stakeholder

15    to recover costs and attorney's fees" in a Rule 22 (or statutory) interpleader; the practice of

16    awarding fees is rooted in equitable considerations.  4 Moore's Federal Practice – Civil § 22.06

17    (4th ed.); *San Rafael Compania Naviera, S. A. v. American Smelting & Refining Co.*, 327 F.2d

18    581, 587 (9th Cir. 1964) (discussing *Schirmer Stevedoring* and explaining that "[w]e did not hold

19    that the court must grant any fees to such party, but only that it may do so").  "The Ninth Circuit

20    recognizes that the trial court has discretion to grant or deny fees based on the specific factors in

21    each individual case."  *Allianz Life Ins. v. Agorio*, 852 F. Supp. 2d 1163, 1168 (N.D. Cal. 2012)

22    (citing *San Rafael*, 327 F.2d at 587).

23          In the typical case, an award of attorneys' fees is meant to recognize that a disinterested

24    stakeholder has "benefit[ed] all parties 'by promoting early litigation on the ownership of the

25    fund, thus preventing [its] dissipation.'"  *Trs. of the Dirs. Guild of America-Producer Pension*

26    *Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000) (quoting *Schirmer Stevedoring*, 306 F.2d

27    at 193).  In such circumstances, the Court aims to "incentivize future interpleader actions without

28    depleting the fund."  *State Farm Life Ins. Co. v. Cai*, 2013 U.S. Dist. LEXIS 127594, at *10

1  (N.D. Cal. Sept. 6, 2013).  When granted, an interpleader plaintiff's "attorneys' fee awards are

2  properly limited to those fees that are incurred in filing the action and pursuing the [stakeholder's]

3  release from liability, not in litigating the merits of the adverse claimants' positions." *Tise*, 234

4  F.3d at 426.  "Because the scope of compensable expenses is limited, attorneys' fee awards to the

5  'disinterested' interpleader plaintiff are typically modest."[2]  *Id.* at 427.

6  **IV.   ARGUMENT**

7       **A.   Bitstamp Should Not Receive An Award of Fees and Costs Because Its**

8             **Actions Were Not Helpful and It Seeks to Waste the Subject Funds**

9       Fee awards are not justified where an interpleader plaintiff "acted in bad faith or w[as]

10  dilatory or otherwise engaged in improper conduct."  *Gelfgren v. Republic Nat'l Life Ins. Co.*, 680

11  F.2d 79, 81 (9th Cir. 1982).  Fees are not available where the interpleader plaintiff is engaged in

12  "litigating the merits of the adverse claimants' positions." *Tise*, 234 F.3d at 426.  Furthermore,

13  since fee awards are justified on the equitable basis that the plaintiff should be compensated for

14  the benefits it provides the claimants through its initiation of litigation, *see Schirmer Stevedoring*,

15  306 F.2d at 193, the interpleader plaintiff should, naturally, have provided some benefit through

16  the interpleader.  Here, Bitstamp sued the wrong defendants, did not join an actual claimant, and,

17  from the outset, used its pleadings to repeatedly ally itself with one claimant and malign another

18  claimant and multiple non-claimants.  Mr. McCaleb and Ms. Harris have no place in this

19  interpleader.  SDF has every right to participate, something that Bitstamp *knew from the outset*,

20  but chose to obstruct.  As a result, Bitstamp should not be able to recover fees.  *See Anchor*

21  *Brewing Co. v. Peix*, 2007 U.S. Dist. LEXIS 18428, at *5-7; *10-11 (N.D. Cal. Feb. 28, 2007)

22  (granting discharge but finding that interpleader plaintiff's conduct in bringing action precluded

23  an award of attorney's fees); *Cal. Pipe Recycling, Inc. v. Sw. Holdings, Inc.*, 2009 U.S. Dist.

24  LEXIS 123863, at *18-20 (E.D. Cal. Feb. 19, 2009) (interpleader plaintiff granted discharge but

25  denied fees where its decisions in filing and maintaining interpleader action led to extensive

26

27  [2] The Ninth Circuit has listed expenses such as "preparing the complaint, obtaining service of
   process on the claimants to the fund, and preparing an order discharging the plaintiff from
28  liability and dismissing it from the action." *Tise*, 234 F.3d at 426-27.

1    motion practice against interpleader defendants and where its "itemized billings . . . include

2    cryptic notations" that provided insufficient explanation of work performed).

3    First, even after receiving Mr. McCaleb's declaration that he did not claim any of the

4    interpleaded funds, Dkt. 52-1, Bitstamp did not dismiss him, as would have been proper, but

5    instead subsequently tarred him as "a notorious figure" for no purpose related to the interpleader.

6    Dkt. 56 at 1; 5 (discussing the 2014 bankruptcy of a company Mr. McCaleb had sold years before

7    and citing to an article noting Mr. McCaleb's 2011 sale). Even in its Motion, Bitstamp continues,

8    as it has since the Complaint—for reasons known only to itself—to gratuitously target Mr.

9    McCaleb: "This action was precipitated by a series of convoluted digital currency transactions

10   allegedly orchestrated by Defendant McCaleb which, to this day, have not been fully explained."

11   Dkt. 80 at 12. It is unclear why Bitstamp, which insists it is a merely disinterested stakeholder,

12   feels entitled to an explanation about anything relating to the merits of claims that do not involve

13   it, and much less clear why it repeatedly insists on attacking Mr. McCaleb—a non-claimant to the

14   funds (Bitstamp's only purported interest in this interpleader)—in every filing. Whatever

15   Bitstamp's opinion of Mr. McCaleb, he was never an appropriate defendant in this action, and

16   Bitstamp should have rectified its error, instead of compounding it. Bitstamp's erroneous,

17   antagonistic—and, most importantly, irrelevant to its purported interest as an interpleader

18   plaintiff—conduct toward Mr. McCaleb throughout amounts to "litigating the merits of the

19   adverse claimants' positions," for which fees are not available. *Tise*, 234 F.3d at 426.

20   Bitstamp also has impeded proper adjudication of the interpleader action through its

21   refusal to properly join SDF. Since Bitstamp was fully aware that the interpleaded funds properly

22   belong to SDF by May 11, *see* Dkt. 21, ¶¶ 4-5; Dkt. 57, ¶ 17 & Exh. G (Dkt. 57-7), this action

23   should have been dismissed entirely or Bitstamp should have joined SDF at the time it identified

24   SDF's interest in the funds. Instead, Bitstamp sought a discharge for itself as a precondition to

25   properly releasing the funds to SDF, and later retracted an alternative request for dismissal of the

26   action. *See* Dkt. 20 at 6-9; Dkt. 56 at 1-2.[3] By forcing SDF to expend considerable resources

27

28

---

[3] Even the retraction in Bitstamp's Reply brief was disingenuous. It cited as a basis for its
withdrawal the fact that since initiation of its action, "a new claimant has surfaced—Stellar." *See*
Dkt. 56 at 1-2. Of course, Bitstamp knew of SDF's claim *prior* to filing its Motion for

DEFENDANTS' OPP. TO BITSTAMP'S MOT. FOR
ATTORNEYS' FEES AND COSTS
15-CV-01503-WHO

1  moving to intervene, Bitstamp abdicated the basic duties of a disinterested stakeholder and

2  needlessly rendered this action more litigious and expensive than it ever needed to be.

3        The Sixth Circuit reversed an award of fees for a stakeholder who engaged in similar

4  behavior, finding that the interpleader plaintiff had engaged in "bad faith or culpable conduct."

5  *See First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005).  As Bitstamp did with SDF,

6  the interpleader plaintiff knew of, but refused to join to the action, a proper claimant to the fund.

7  *Id.* at 851-52.  The Court excoriated the plaintiff for its tactics:  "We can discern no valid reason

8  why [interpleader plaintiff] did not join [claimant] as a party, since it clearly knew that she was

9  the designee, as evidenced by its attachment to the complaint."  *Id.* at 852.  The Court further

10  rebuked the interpleader plaintiff for its failure to properly join the claimant once she was

11  identified, stating that it "cannot fathom why [the interpleader plaintiff] did not join" the claimant

12  at that time, as the result of its failure to do so was that the claimant "was needlessly put to the

13  expense of having to move to intervene."  *Id.* at 852.  The Court explained:

14              More importantly, [the plaintiff] never offered an explanation for
                why it failed to join [the claimant] as a defendant.  Full disclosure
15              in the complaint of [claimant's] status as the designated
                beneficiary is simply not equivalent to joining [the claimant] as a
16              defendant, because it shifted the onus to [the claimant].  Likewise,
                [the plaintiff's] decision not to oppose [the claimant's] motion to
17              intervene[4] is not equivalent to joining [the claimant] as a party, as
                [the plaintiff] lamely implies.  At a minimum, [the plaintiff] is
18              culpable for this pointless failure to add [the claimant] initially and
                for repeatedly failing to correct it.
19

20  *Id.*  As set out above, Bitstamp's conduct vis-à-vis SDF was nearly identical; this Court should

21  similarly find that such needlessly obstructive conduct precludes a fees award.

22        **B.      Even If the Court Decides a Fee Award Is Appropriate, Bitstamp Should**

23              **Receive Nowhere Near the Staggering Sum It Seeks**

24        If the Court were to decide that Bitstamp's conduct does not preclude an award of fees,

25  the $182,948.01—*and counting* (Dkt. 80 at 11, n.9)—that Bitstamp demands is untenable.  Fee

26  ───────────────────────────────────────────────

27  Discharge—which contained the later-retracted dismissal request—as SDF's entitlement to the
    funds was a major focus of that Motion, and the evidence submitted in support.  *See* Dkt. 20 at 1.

    [4] Bitstamp only notified the Court of its non-opposition to SDF's motion to intervene on July 10,
28  while this Motion was pending.  *See* Dkt. 94 at 1.

DEFENDANTS' OPP. TO BITSTAMP'S MOT. FOR
ATTORNEYS' FEES AND COSTS
15-CV-01503-WHO

1   awards for interpleader actions are rooted in equity to recognize benefits an interpleader plaintiff

2   provided the claimants.  *See Schirmer Stevedoring*, 306 F.2d at 193.  Such awards are "typically

3   modest," because courts recognize that "there is an important policy interest in seeing that the fee

4   award does not deplete the fund at the expense of the party who is ultimately deemed entitled to

5   it." *Tise*, 234 F.3d at 427.  For the reasons that follow, law and equity demand that the Court

6   cleave Bitstamp's request—if it grants the request at all.

7           **1.      Bitstamp's Request Is Unreasonable In Both Absolute and**

8                   **Proportional Terms**

9           In determining the amount of the modest fee award available in an interpleader action, the

10  baseline concern is that any award must be reasonable.  *See Sun Life Assur. Co. v. Estate of Chan*,

11  2003 U.S. Dist. LEXIS 16943, at *9-10 (N.D. Cal. Sept. 22, 2003).  Courts in the Northern

12  District "consider[] the requested fee amount in 'both absolute terms and in proportion to the

13  fund'" at issue.  *Or. Mut. Ins. Co. v. Homeward Residential, Inc.*, 2013 U.S. Dist. LEXIS 163948,

14  at *6 (N.D. Cal. Nov. 17, 2013) (quoting *Cai*, 2013 U.S. Dist. LEXIS 127594, at *9).  "With

15  regard to proportion, four to five percent of the fund is generally 'in line with Ninth Circuit

16  authority, and . . . adequately compensates' disinterested interpleader plaintiffs for their 'bona

17  fide expenditures.'"  *Id.* at *6-7 (quoting *Cai*, 2013 U.S. Dist. LEXIS 127594, at *10) (original

18  alterations).  Fee awards are frequently much, much smaller.  *See Cai*, 2013 U.S. Dist. LEXIS

19  127594, at *8-9 (noting that "the 'modest' fees referred to in *Tise* were truly modest" at "0.8% of

20  a $365,000 fund"); *Conn. Gen. Life Ins. Co. v. Rapoza*, 2007 U.S. Dist. LEXIS 55518, at *3, *5-7

21  (N.D. Cal. July 25, 2007) (awarding $7,235.12 out of a fund of $297,417.17 deposited with the

22  court, or 2.4%).  "The Ninth Circuit has remanded for reduction a fee request for 10.4% of a

23  $48,000 fund." *Or. Mut. Ins. Co. v. Homeward Residential, Inc.*, 2013 U.S. Dist. LEXIS 163948,

24  at *6-7 (citing *Schirmer Stevedoring*, 306 F.2d at 194-95).

25          An award must also be modest and reasonable regardless of the size of the fund.  *See id.* at

26  *7.  "Eight percent of a 'relatively large fund' may also be excessive."  *Id.*  Where "the request

27  amount would, in absolute terms, significantly deplete the fund," courts have drastically reduced

28  the award to the interpleader plaintiff to avoid dissipation of the interpleaded funds.  *Allianz*, 852

1    F. Supp. 2d at 1170-71 (finding that "the requested amount would, in absolute terms, significantly

2    deplete the fund" and reducing award from the requested 85.5 hours to 8 hours); *see Or. Mut.*

3    *Life. Ins. Co.*, 2013 U.S. Dist. LEXIS 163948, at *7 (noting that $8,000 has been found to be a

4    fair award "[i]n absolute terms").

5         The billing records Bitstamp submitted span a period of 29 calendar days, during which

6    time Bitstamp's attorneys filed a motion, a reply, supporting papers, and an administrative

7    motion; attended one hearing; and agreed to a small number of stipulations.  For this, Bitstamp

8    seeks almost $200,000—or approximately 20% of the fund at issue—and has alerted the Court

9    that it will soon request even more.  *See* Dkt. 80 at 11, n.9.  This immodest demand is facially

10   unreasonable under Ninth Circuit law and Northern District practice.

11              **2.        Bitstamp Did Not Adequately Support Its Request**

12        "The burden of establishing entitlement to an attorneys' fees award lies solely with the

13   claimant."  *Tise*, 234 F.3d at 427.  With its Motion, Bitstamp submitted a single declaration from

14   one of its attorneys and attached an unauthenticated data extract.  *See* Dkt. 78 & 78-1 (Exh. A).

15   Bitstamp argued that it need not submit contemporaneous time records to justify its ostentatious

16   request.  *See* Dkt. 80 at 10, n.8.  The Court disagreed, Dkt. 81, and Bitstamp later submitted 10

17   pages of block-billed time entries.  Bitstamp has made an inadequate showing that it is entitled to

18   its fees.

19        A court considering an interpleader fee award will typically conduct a lodestar analysis.

20   *See Allianz*, 852 F. Supp. 2d at 1168.  The first step is to determine whether the attorneys' rates

21   are reasonable and "in line with those prevailing in the community for similar services of

22   attorneys of reasonably comparable skill, experience, and reputation."  *Id.*; *see also Blum v.*

23   *Stenson*, 465 U.S. 886, 895, n.11 (1984).

24        Guided by recent decisions of this Court, Individual Defendants do not challenge the

25   reasonableness of the rates *per se*.  *See, e.g.*, *Wynn v. Chanos*, 2015 U.S. Dist. LEXIS 80062

26   (N.D. Cal. June 19, 2015) (Orrick, J.); *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957 (N.D. Cal.

27   2014) (Orrick, J.).  However, Bitstamp has not made a proper showing that its rates, which are

28

DEFENDANTS' OPP. TO BITSTAMP'S MOT. FOR
ATTORNEYS' FEES AND COSTS
15-CV-01503-WHO

high,[5] are justified for the work expended on this matter.  While Ms. Nall and Mr. Wheeler may

charge $695 and $620 per hour for complex civil litigation, Dkt. 78, ¶¶ 3-4; 7, the issue with

which an interpleader plaintiff is properly concerned—are there multiple claimants to a fund?—is

not complex.[6]  Bitstamp did not provide specific "similar services" evidence showing that the

typical hourly rate for seeking a discharge from an interpleader in the Northern District is over

$600 per hour; there is reason to believe it is not.  *See, e.g.*, *Or. Mut. Ins. Co.*, 2013 U.S. Dist.

LEXIS 163948, at *7-8 (finding $200 and $190 hourly rates for partner and associate working on

interpleader action to be reasonable).

　　　　Because all of Bitstamp's requested rates are high,[7] the Court has "an expectation that

[Bitstamp's attorneys] will complete tasks efficiently and that its more senior attorneys will limit

their involvement to tasks requiring their level of expertise."  *Banas*, 47 F. Supp. 3d at 966.  As

set forth below, Bitstamp failed to meet this Court's expectation.

---

[5] Bitstamp submitted only Ms. Nall's declaration to justify its rates.  "An attorney's declaration regarding the reasonableness of his or her own rate, standing alone, is insufficient to meet the fee applicant's burden."  *Allianz*, 852 F. Supp. 2d at 1169.  Mr. Nall's declaration attached an unauthenticated data extract purportedly from a database that tracks fee applications.  *See* Dkt. 78, ¶ 7 & 78-1 (Exh. A).  Ms. Nall did not explain the parameters she used to generate the extract (aside from that the attorneys had a connection to San Francisco), but did note that she excluded one she deemed an outlier.  *See* Dkt. 78 at 3, n.1.  As Bitstamp recognizes, the relevant reasonable hourly rate is the prevailing rate in the forum in which the District Court sits.  *See* Dkt. 80 at 9, n.7; *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  Though there is no key provided to identify the case or court in which the extract's fee applications were submitted, the extract appears to list only two partner entries for applications submitted in the Northern District ("CAND"), showing a range of $575 to $610 per hour, and four submitted in California overall ("CA" in initials), showing a range of $575 to $695.  *See* Dkt. 78-1.  Bitstamp's requested rates, to the extent its evidence is even useful here, exceeds or is at the high end of the submitted range.

[6] To the extent that Bitstamp argues that the underlying transactions were necessarily complex because they involved digital currency, Dkt. 80 at 1-2; 12, Bitstamp did not submit evidence showing (i) what those complexities were, (ii) what, if any, work its attorneys were required to perform related to such complexities in connection with Bitstamp's role in this litigation or (iii) what, if any, particular experience and expertise in digital currency transactions its attorneys have in digital currency issues.

[7] Ms. Van Dyke's rate of $300 for a paralegal is at the very top of the range this Court has deemed appropriate.  *See Banas*, 47 F. Supp. 3d at 965 (finding requested paralegal rates of $245 to $290 acceptable, but high for the Northern District); *Wynn*, 2015 U.S. Dist. LEXIS 80062, at *7-8 (noting *Banas* rates, but finding paralegal rates starting at $300 to be "extremely high" and reducing rates to $170 where no evidence supported "an hourly rate well above average").  This Court has also previously found that a paralegal's rate must be reduced where the entry reflects clerical instead of paralegal work, and has applied a 40% reduction in time where an entry reflects a "mix of paralegal and secretarial" or clerical work but parsing is impossible due to block-billing.  *See James v. AT&T West Disability Benefits Program*, 2014 U.S. Dist. LEXIS 176350, at *14-15 (N.D. Cal. Dec. 22, 2014) (Orrick, J.).

DEFENDANTS' OPP. TO BITSTAMP'S MOT. FOR
ATTORNEYS' FEES AND COSTS
15-CV-01503-WHO

**3.    Bitstamp's Block-Billing Prevents the Court from Discerning Whether Some, or Any, of the Time Entered Was Reasonably Spent**

"Block-billing is the practice of including various tasks within one time entry without specifying the time spent on each task within an entry." *Id.* at 966, n.9.  Block-billing is strongly disfavored for fee-seeking applicants.  *See id.* at 966-67 ("If block billing is still a 'typical practice' in this District, which I doubt, it flies in the face of repeated criticism by courts throughout the country, *including in this District*") (original emphasis).  This Court has previously explained that:

> Without specifying how much [time] was spent on each distinct task (most of which were also performed on additional days), there is no way for me to determine whether the time spent on any of these tasks . . . was reasonable.  Nor can I determine that the total amount of time spent on all the tasks, in combination, was reasonable, given the amount of time at issue and because most of [the applicant's] tasks were performed on several days by various attorneys.

*Id.* at 967.  Because block-billing obstructs the Court's review of the reasonableness of hours spent and likely leads to overbilling, the Ninth Circuit has permitted district courts to reduce fee requests by 10-30% for block-billing alone.  *See id.* at 968 (discussing *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007)).

The vast majority of the time entries for which Bitstamp seeks payment—totaling ▮ of attorney time—are block-billed.[8]  Compounding the problem, as this Court previously noted in *Banas*, Bitstamp's entries reflect work by multiple attorneys on each of the various activities and tasks across multiple days, rendering it impossible for the Court to determine whether the aggregated time for a specific task was reasonable.  Although the Court may be able to ascertain that, for instance, Mr. Lee spent ▮ on ▮

---

[8] These are entries in which a single activity is identified or all of the activities identified are described as relating to the same overarching task.  Where activities were general, and the descriptions were vague, it was impossible to identify whether the activities within an entry related to the same task, a different task or a combination of tasks.  Of course, the fact that an entry was not block-billed does not mean that the time was reasonably spent.

1   ███████████████████████ it is impossible to discern whether the amount of time Bitstamp's

2   attorneys, or even Mr. Lee specifically, spent █████████ was appropriate. Since Bitstamp has

3   provided the Court insufficient information to determine whether the amount of time spent was

4   reasonable, any award should include a significant reduction.

5       **4.    Bitstamp's Descriptions Are Insufficient and Reflect an Enormous**

6           **Amount of Time Spent Unproductively and Unreasonably**

7       In addition to the quantitative element of reasonableness, the time entries must reflect that

8   the time was qualitatively well-spent and that the work was performed by an appropriate person.

9   *See Wynn*, 2015 U.S. Dist. LEXIS 80062, at *8 ("emphasiz[ing]" the expectation that attorneys

10  working at high rates will complete tasks and staff matters efficiently).  Additionally, as the Ninth

11  Circuit has instructed (and this Court noted), the entries must contain "sufficient detail" to enable

12  the Court to determine "the nature and need for the service" provided by the attorney.  *Cognizant*

13  *Tech. Sols. U.S. Corp. v. McAfee*, 2014 U.S. Dist. LEXIS 109992, at *6-7 (N.D. Cal. Aug. 7,

14  2014) (Orrick, J.) (quoting *United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated*

15  *Emps. of ASARCO, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008)).  Bitstamp's entries fail to meet these

16  standards.

17      First, many of the entries fail to tie the activity described to any particular task (even

18  setting aside the fact that these descriptions are contained within block-billed entries).  Most

19  notable (though not exclusive) are activities ████████████████████████

20  ████████████████████████████████████████

21  ████████████████████████████████ Instances of this appear

22  throughout the time records.  Examples include (but are in no way limited to):

1

2

3

4

5

6

7

8   These entries, and others like them,[9] provide the Court no indication as to what the purpose of the

9   work was,[10] and because the entries are block-billed, there is no guide for even how long the

10  activities took.  This set of entries fails to meet the Ninth Circuit's standards as it "does not allow

11  the Court to adequately assess the reasonableness of the fee request."  *Cognizant Tech. Sols.*,

12  2014 U.S. Dist. LEXIS 109992, at *6-7 (rejecting entries that stated "due diligence per request of

13  [attorney] related to [defendant]") (internal alterations omitted); *see also Cai*, 2013 U.S. Dist.

14  LEXIS 127594, at *9-10 (finding "excessive" entries where interpleader plaintiff's "attorneys

15  billed $6,919.50 for various vague communications, including conversations with attorneys not

16  confirmed to be representing parties in the case and direct contacts with [interpleader defendant]

17  and his mother about unspecified 'aspects' of the case").

18          Second, the records demonstrate that the work was not efficiently staffed or performed.

19  The team consists of two partners, one associate and a senior paralegal, all of whom have high

20  billing rates.  In such circumstances, the Court expects that the work will be completed efficiently

21  and "more senior attorneys will limit their involvement to tasks requiring their level of expertise."

22

23  [9] Even where there is some reference to the purpose, it often does not provide insight into the
    work actually performed.  *See, e.g.*,

24

25  [10] Ms. Nall notes that she "handled the client relationship."  Dkt. 78, ¶ 9.  The surprising number
    of otherwise unexplained                                      , such as are described in the

26                                  , which included
                           suggests that much of

27                                                          has not been recognized as a compensable expense
    for an interpleader plaintiff.  *Cf. Tise*, 234 F.3d at 426-27.  The Court should not award fees for

28  these activities.

1    *Banas*, 47 F. Supp. 3d at 966.  That did not happen here.

2         This Court recently found that the hours expended by a team of three partners, two

3    associates and two paralegals were excessive where the three partners "generated nearly half of

4    the attorney hours billed in this case."  *Wynn*, 2015 U.S. Dist. LEXIS 80062, at *14.  On this

5    team, the two partners accounted for 235.5 hours out of a total of 280.2 attorney hours, or *84%* of

6    the attorney time.  *See* Dkt. 78, ¶ 11.  This case was not so complex that it required such a top-

7    heavy distribution of work.  Bitstamp argued as much to this Court, stating that "[t]here can be no

8    serious dispute that this interpleader action was proper" and further that it "easily satisfy[ies] the

9    'necessarily low' 'minimal threshold level of substantiability' required for good faith" and a

10    discharge.  Dkt. 56 at 1.  Furthermore, even though Bitstamp now argues that the matter was

11    complex because the interpleader was "precipitated" on digital currency transactions, Dkt. 80 at

12    12, Ms. Nall's declaration never highlights for the Court any particular experience or expertise in

13    digital currency transactions that Bitstamp's attorneys possessed, or that it was necessary to the

14    legal issues here, demonstrating that Bitstamp had received multiple claims to a single fund.

15         Instead, there are many examples where work should have been delegated to a less

16    expensive member of the firm.  Mr. Wheeler spent part of a block-billed ██████ entry ████

17    ████████████████████████████████████████████████████████████████████

18    ████████ Included in a block-billed ████ entry ███████████, Mr. Wheeler

19    notes that he spent time ██████████████████████████████████████████

20    ██ During a block-billed ███ entry ██████ Mr. Wheeler ████████████

21    ████████████████ Ms. Nall noted that in a block-billed ███ entry ████

22    ████████████████ During a block-billed ███ entry, Mr.

23    Wheeler ██████████████ The same day, Mr. Lee notes in his

24    block-billed ███ entry ████████████████████████████████████████

25    ████████████████████████████████████████████████████████

26    ████████████████████ "It would be unjustified to charge . . . partner-

27    level rates for routine tasks like document review, returning a hard drive, vetting stipulations,

28

- 17 -

DEFENDANTS' OPP. TO BITSTAMP'S MOT. FOR
ATTORNEYS' FEES AND COSTS
15-CV-01503-WHO

1  preparing copies of exhibits, checking citations and so forth."[11]  *Il Fornaio (America) Corp. v.*

2  *Lazzari Fuel Co., LLC*, 2015 U.S. Dist. LEXIS 66145, at *17 (N.D. Cal. May 20, 2015)

3  (discussing approval of attorney fee award in class action settlement).

4       There are also many instances of duplicative work or excessive meetings.  For example, at

5  the May 22 hearing, Bitstamp brought both partners, in addition to the Bitstamp in-house counsel.

6  *See* Dkt. 78-1, Exh. C at 1.  "Ordinarily, no more than one attorney (and one paralegal) need be

7  present at a . . . motion hearing; more will be deemed excessive."  *Il Fornaio (America) Corp.*,

8  2015 U.S. Dist. LEXIS 66145, at *15-16 (N.D. Cal. May 20, 2015).  Individual Defendants were

9  represented by a single attorney.  *See* Dkt. 78-1, Exh. C at 2.

10  ████████ the four individuals billed a total of ██████████████

11  ████ Although all of these entries are block-billed, ███████████████

12  ████████████████████████████████████████████████

13  ████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ████████████████████████

16       Third, and related to the concern about duplicative work, Bitstamp's records show that as

17  of ██████████████████████████████████████████████

18  ████████████████████████████████████████████

19  ████████████████████████████  Bitstamp was not ordered

20  to file its Motion on May 13, but chose to do so; there is no indication in the time records or

21  Bitstamp's filings to suggest why Bitstamp chose to file that Motion ███████████████

22  ██████████ or how Bitstamp was able to assure that its work ███████████

23  ████ would result in material relevant (that is ██████████████████

24  ████████████████████████████████████████) for its June 4

25  Reply.  In addition to the ██████████████████████████████

26

27  _____
    [11] ████████████████████████████████████████████

28  ████████████████████████████████████████████████

1    ███████████████████ that the interpleader defendants filed their Responses, Mr. Wheeler was also

2    working on ████████████████████████████████████████████ before the

3    Responses were due. ███████████ In all, the block-billed entries that mention time spent on

4    ████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████

6    ██████████████████████████████ This work was clearly unnecessary,

7    ███████████████████████████████████████

8    ████████ Even from the date the Responses were filed,[12] the time entries that reference work on the

9    █████████████████████████████████████████████████

10   ████████████████████████████ account for ████████████████████

11   █████████████████████[13]  That sum alone is far more than Bitstamp can possibly

12   justify as a total award.  Though Bitstamp's records are opaque, it is clear that equity cannot favor

13   such a grandiose expenditure.

14        C.    **No Fees Should Be Assessed Against the Individual Defendants**

15        Bitstamp suggests three different ways in which fees could be paid from funds or property

16   that were interpleaded or involved in the transactions alleged in the Complaint.  *See* Dkt. 80 at 13

17   (all from the funds Bitstamp deposited; all from XRP that Ripple purchased from Mr.

18   Stephenson; half from that XRP and half from the deposited funds).  Presumably, should the

19   Court choose to provide Bitstamp a modest fees award from such sources, it would do so by

20   treating those sources as part of the common interpleaded fund and later make any necessary

21   adjustments to a final distribution or order concerning the funds and/or XRP to account for such

22   an award.  Individual Defendants stress that Bitstamp's conduct precludes a fee award in this

---

23   [12] ████████████████████████████████████████████████████

24   ██████████ This may underrepresent the amount of time spent ████████████

25   █████; Individual Defendants note that although Mr. Wheeler spent time ████████████

26   ███████████████████ he first references ████████████████

27   [13] This includes ██████████████████████████████████████

28   ████████████████████████████████████████████

DEFENDANTS' OPP. TO BITSTAMP'S MOT. FOR
ATTORNEYS' FEES AND COSTS
15-CV-01503-WHO

1  action, but otherwise do not object to such a distribution, with the understanding outlined above,

2  in the event the Court decides some nominal award is appropriate.

3       Individual Defendants vigorously object, however, to Bitstamp's fourth "option"—that the

4  Court award half of the fees from the funds Bitstamp deposited, one-quarter against SDF and

5  "one-quarter of Bitstamp's fees and costs jointly and severally" against Mr. McCaleb, Mr.

6  Stephenson and Ms. Harris.[14]  *Id.*  Mr. McCaleb and Ms. Harris were *never* properly parties to

7  this interpleader action, yet Bitstamp never moved to dismiss them.  Had Bitstamp simply

8  followed proper procedure, and dismissed non-claimants from the action, there would not have

9  been occasion for further litigation.  As the time records indicate, though, Bitstamp's attorneys

10  over-litigated this matter and did work that was not yet and may have never been necessary.

11  Whether this decision was made by Bitstamp or its counsel, Bitstamp cannot be permitted under

12  the guise of equity to penalize Individual Defendants with the costs of that decision now.[15]

13  Moreover, Bitstamp's inexplicable refusal to join an actual claimant to the interpleader action

14  necessitated further litigation and motion practice.  *See, supra*, section IV.A.

15       There are and have been legitimate concerns and issues in how Bitstamp has proceeded

16  throughout, and this Court did not find that any party has raised such concerns in bad faith.

17  Absent a defendant's bad faith, equitable principles that govern fee awards for interpleader

18  plaintiffs and the Ninth Circuit do not require payment of an interpleader plaintiff's litigation

19  expenses, where such concerns and issues arise.  *See, e.g.*, *Schirmer Stevedoring*, 306 F.2d at 194

20  ("[I]f there is a contest between plaintiff and the interpleaded parties, either as to the correctness

21  of the amount deposited or as to any interest of plaintiff in the fund, the court may not, in the

22  absence of special circumstances [such as bad faith], award attorney fees for the services of [the

---

[14] For no discernible reason, Bitstamp refers throughout its brief to the Individual Defendants as the "McCaleb Defendants."  *See* Dkt. 80.  To the extent that Bitstamp intends by this to imply that the individuals acted for or on behalf of Mr. McCaleb (which they did not), it is abandoning its purportedly disinterested role and urging the Court to accept Ripple's allegations of concerted action among the Individual Defendants, further litigating the merits of the underlying claims.

[15] While the Court granted the Motion for Discharge, it did not find that the Response had been made in bad faith or was entirely frivolous, nor did it suggest any other basis that could justify imposition of fees against the Individual Defendants.  Indeed, at the July 16 hearing, the Court made clear that its discharge order did not adjudicate any of the factual allegations concerning Bitstamp's conduct and that those remain ripe for further adjudication.

plaintiff's] attorneys in connection with such contest").

Bitstamp also points to no support for payment of its fees by a non-claimant. *See* Dkt. 80 at 14 (citing three cases that deal with a *claimant's* conduct).[16] To the extent that the Court awards any fees against Mr. Stephenson as the only claimant among the Individual Defendants, and it should not, Mr. Stephenson should be responsible for no more of the fee award than the proportion of the interpleaded funds he claims—0.05%.

### D. The Court Should Deny Any Fees-on-Fees Request

Bitstamp apparently intends to demand further fees in connection with this Motion. *See* Dkt. 80 at 11, n.9. The Court should reject out of hand any such attempt. "[T]he interpleader plaintiff is supposed to be disinterested in the ultimate disposition of the fund." *Tise*, 234 F.3d at 426. The fee-seeking interpleader plaintiff is acting in its own interest and is therefore not entitled to fees for efforts expended to obtain fees.[17] *See Allianz*, 852 F. Supp. 2d 1163, 1170 ("[T]he court declines to award any fees for costs . . . solely related to the pursuit of [Interpleader] Plaintiff's interest (*i.e.*, the recovery of its fees)"); *Metro. Life Ins. Co. v. Billini*, 2007 U.S. Dist.

---

[16] Nor does the authority justify imposing fees against the Individual Defendants. In *A/S Krediit Pank v. Chase Manhattan Bank*, 303 F.2d 648 (2d Cir. 1962), the *claimant* had resisted the intervention of another claimant and that claimant's ability to be heard by the Court in the interpleader action. *Id.* at 649. Here, it is Bitstamp that has caused needless expense through its resistance to the proper joinder and dismissal of parties. Furthermore, it is not clear whether the fees in *A/S Krediit Pank* had been ordered to be paid from the fund or the individual appellant. *Id.* at 648-49. In *Lindoerfer v. J.C. Penney Co.*, 244 F. Supp. 175 (N.D. Ohio 1965), a fifty-year-old district court case from Ohio, the Court awarded fees against the fund that had been deposited in the Court's registry, and, furthermore, awarded less than *half* the fees sought by the interpleader plaintiff. *Id.* at 177. In *Landmark Chem., S.A. v. Merrill Lynch & Co.*, 234 F.R.D. 62 (S.D.N.Y. 2005), the Court awarded fees out of the fund, and reduced the award by approximately 25% from the amount sought by the plaintiff. *Id.* at 64. To the extent that an award out of a fund can be characterized as being awarded against the winning claimant, clearly such an award could not overwhelm the proportion of the claimant's interest in the previously disputed fund. None of these cases justify imposition of a drastic fee award on Mr. McCaleb, Ms. Harris or Mr. Stephenson.

[17] Bitstamp's lone citation to a decision discussing discovery sanctions in a case that did not involve an interpleader is of no moment. See Dkt. 80 at 11, n.9 (citing *Kraszewski v. State Farm Gen. Ins. Co.*, 1984 U.S. Dist. LEXIS 15992 (N.D. Cal. June 11, 1984)). The *Kraszewski* Court had already ruled that the plaintiffs were entitled, pursuant to Federal Rule of Civil Procedure 37 and its provision for reasonable expenses, to their attorney's fees incurred in connection with two motions concerning discovery sanctions against defendants. *See* 1984 U.S. Dist. LEXIS 15992, at *3-4. The Court found that refusing to award fees incurred for preparation of the fee applications would undermine Rule 37's "compensatory purpose." *Id.* at *13. No such Rule mandates an award of fees here. *See* 4 Moore's Federal Practice – Civil § 22.06 (4th ed.) ("[T]here is no right for the stakeholder to recover costs and attorney's fees").

1  LEXIS 89971, at *9-10 (E.D. Cal. Nov. 26, 2007) (rejecting request for fees for counsel's

2  appearance at hearing, "since [interpleader plaintiff] has a personal interest in appearing at oral

3  argument in order to recover its fees").  Individual Defendants respectfully request for the

4  opportunity to make a sur-reply in the event the Court permits Bitstamp to pursue such a request

5  in its Reply.

6  **V.**    **<u>CONCLUSION</u>**

7      The Court should deny Bitstamp's Motion for Attorneys' Fees and Costs in its entirety or,

8  at the very least, limit Bitstamp to no more than $20,000.

9
10      Dated: July 20, 2015                    ORRICK, HERRINGTON & SUTCLIFFE LLP

11
12                                        By: */s/ Mark S. Parris*
                                          MARK S. PARRIS

13
                                          *Attorneys for Defendants Jed*
14                                        *McCaleb, Jacob Stephenson and*
                                          *Nancy Harris*

15
16
17
18
19
20
21
22
23
24
25
26
27
28