TERRY GROSS (SBN 103878)
ADAM C. BELSKY (SBN 147800)
GROSS BELSKY ALONSO LLP
One Sansome Street, Suite 3670
San Francisco, CA 94104
Tel: (415) 544-0200
Fax: (415) 544-0201
E-mail:  terry@gba-law.com

Attorneys for Defendant
STELLAR DEVELOPMENT FOUNDATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BITSTAMP, LTD., a foreign company,<br><br>Plaintiff,<br><br>v.<br><br>RIPPLE LABS, INC., a California Corporation, JACOB STEPHENSON, an individual, NANCY HARRIS, an individual, JED MCCALEB, an individual, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 15-cv-01503-WHO<br><br>**DEFENDANT STELLAR DEVELOPMENT FOUNDATION'S OPPOSITION TO BITSTAMP'S MOTION FOR ATTORNEY'S FEES AND COSTS AND JOINDER IN THE INDIVIDUAL DEFENDANTS OPPOSITION** |
| RIPPLE LABS, INC., a California Corporation,<br><br>Cross-Plaintiff,<br><br>v.<br><br>JED MCCALEB, an individual, JACOB STEPHENSON, an individual, and DOES 1 through 10, inclusive,<br><br>Cross-Defendants. | Date:     August 12, 2015<br>Time:     2:00 p.m.<br>Dept:     Courtroom 2, 17th Floor<br>Judge:    Hon. William H. Orrick |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………...iii

INTRODUCTION………………………………………………………………….......1

STATEMENT OF FACTS……………………………………………….…………..1

ARGUMENT……………………………………………………………………4

   I.      BITSTAMP IS NOT ENTITLED TO FEES, SINCE IT IS NOT
           AN INNOCENT OR DISINTERESTED INTERPLEADER
           STAKEHOLDER…………………………………………………4

      A.     Bitstamp Took Actions to Interfere With SDF's Rights…………………………...5

      B.     Bitstamp Participated in Creating The Situation Underlying the
              Interpleader……………………………………………………………..9

   II.     IN THE EVENT THE COURT CANNOT NOW DETERMINE IF
           BITSTAMP IS "DISINTERESTED" OR IF BITSTAMP PLAYED
           A SUBSTANTIAL ROLE IN CREATING THE CONTROVERSY,
           THEN BITSTAMP'S REQUEST FOR FEES IS PREMATURE……………………11

   III.    NO ATTORNEYS FEES SHOULD BE AWARDED AGAINST
           SDF'S FUNDS THAT HAVE BEEN DEPOSITED IN THE
           COURT'S REGISTRY………………………………………….………11

CONCLUSION……………………………………………………………...13

i

DEFENDANT STELLAR DEVELOPMENT FOUNDATION'S
OPPOSITION TO BITSTAMP'S MOTION FOR ATTORNEY'S
FEES AND COSTS AND JOINDER IN THE INDIVIDUAL
DEFENDANTS OPPOSITION; 15-CV-01503-WHO

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                                            PAGE

<u>FEDERAL</u>

*Aetna Life Ins. Co. v. Harley,*
    365 F. Supp. 1210 (N.D.Ga.1973)……………………………...…………… 4

*Bandura v. Fidelity & Guaranty Life Ins. Co.,*
    443 F. Supp. 829 (W.D. Pa. 1978)……………………………………………...…9

*Cagle v. James St. Group,*
    No. CIV-07-0029-D, 2009 U.S. Dist. LEXIS 64698 (W.D. Okla. July 23, 2009).....4, 8, 11

*Century Ins. Co. v. First Nat'l Bank,*
    102 F.2d 726 (5th Cir. 1939)……………………………………………………....4

*Clarkson Co. v. Shaheen,*
    533 F. Supp. 905 (S.D.N.Y. 1982)…………………………………………..……12

*Gelfgren v. Republic Nat'l Life Ins. Co.,*
    680 F.2d 79 (9th Cir. 1982)………………………………………………………...5

*Michelman  v. Lincoln National Life Ins. Co.,*
    No. C10-0271RSL, 2010 U.S. Dist. LEXIS 80630 (W.D. Wash. Aug. 10, 2010)……....11

*Michelman v. Lincoln Nat'l Life Ins. Co.,*
    685 F.3d 887 (9th Cir. 2012)………………………………………………………6, 7

*Partex Apparel Int'l LTDA S.A. de C.V. v. GFSI, Inc.,*
    No. 10-2678, 2012 U.S. Dist. LEXIS 42267 (D.Kan. Mar. 28, 2012)……………………7

*Phillips Petroleum Co. v. Hazlewood,*
    534 F.2d 61 (5th Cir. 1976)………………………………………………………....4

*Prudential-Bache Securities, Inc. v. Tranakos,*
    593 F. Supp. 783 (N.D. Ga. 1984)……………………………………………..……11

*Prudential Ins. Co. of Am. v. Richmond,*
    No. 06-525 (PGS), 2007 U.S. Dist. LEXIS 48458 (D.N.J. July 2, 2007)…………………9

*Reliastar Life Ins. Co. v. Moore,*
    No. 1:CV-08-1942, 2010 U.S. Dist. LEXIS 17804 (M.D. Pa. Mar. 1, 2010)…………....…9

*Standard Chtd. Bank v. Van Ekris & Co.,*
    No. 98 Civ. 2069 (RO), 1999 U.S. Dist. LEXIS 11661 (S.D.N.Y. July 28, 1999)………12

*Transamerica Premier Ins. Co. v. Growney,*
    No. 94-3396, 1995 U.S. App. LEXIS 31836 (10th Cir. Nov. 13, 1995)……………....…4

DEFENDANT STELLAR DEVELOPMENT FOUNDATION'S
OPPOSITION TO BITSTAMP'S MOTION FOR ATTORNEY'S
FEES AND COSTS AND JOINDER IN THE INDIVIDUAL
DEFENDANTS OPPOSITION; 15-CV-01503-WHO

*United Bank of Denver, Nat'l Ass'n v. Oxford Properties, Inc.*,
 683 F. Supp. 755 (D. Colo. 1988)……………………………………………………4

STATE

*Anchor Brewing Co. v. Peix*,
 No. C-06-7914 MMC, 2007 U.S. Dist. LEXIS 18428 (N.D. Cal. Feb. 28, 2007)…………5

*Cal. Pipe Recycling, Inc. v. Sw. Holdings, Inc.*,
 No. CV F 08-0236 SMS, 2009 U.S. Dist. LEXIS 123863 (E.D. Cal. Feb. 19, 2009)……..5

OTHER SOURCES

*Moore's Federal Practice*, Civil § 22.06 (3d. ed. June 2015)………………………………… ..4, 8

Wright & Miller, Federal Practice and Procedure § 1719 (3d. ed. 2001)………………………...11

iii

DEFENDANT STELLAR DEVELOPMENT FOUNDATION'S
OPPOSITION TO BITSTAMP'S MOTION FOR ATTORNEY'S
FEES AND COSTS AND JOINDER IN THE INDIVIDUAL
DEFENDANTS OPPOSITION; 15-CV-01503-WHO

**INTRODUCTION**

Stellar Development Foundation ("SDF") hereby joins in the Individual Defendants' Opposition to Bitstamp's Motion for Attorney's Fees and Cost, and also submits this Opposition that addresses issues that affect only SDF.

Bitstamp's motion should be denied, since fees should not be awarded to a stakeholder who is in some way culpable for the controversy.  Here, Bitstamp is culpable, because it took actions that interfered with SDF's rights, and solely benefited Ripple Labs, thus favoring one side in this controversy.  These actions included refusing to name SDF as a defendant and then refusing to stipulate that SDF could intervene, despite having full knowledge that SDF was the owner of the frozen funds, thus causing SDF to incur unnecessary legal costs and causing a two-month delay for SDF in being able to recover possession of its funds; freezing the personal account of SDF's executive director even though Ripple had made no claim to any funds held by her personally; and by including allegations in its Complaint that were unnecessary for a disinterested interpleader and clearly supported Ripple's litigation objectives.

Bitstamp's motion should also be denied, because Bitstamp, through its chief legal officer, participated in a scheme with Ripple that coerced a third party to place SDF's funds in a Bitstamp account, and thus subject to actions by Ripple and Frost to freeze SDF's funds.

In the event the Court cannot determine on the current record that Bitstamp is culpable, then Bitstamp's motion should be denied as premature.

If the Court decides to award fees to Bitstamp, no fees should be assessed against SDF's funds that are on deposit in the Court's registry, since SDF is an innocent third party, where there is no claim that SDF has any complicity in the alleged underlying breach of contract by McCaleb.  Rather, any fees should be assessed only against the XRP that Ripple is in the process of depositing into the Court's registry.

**STATEMENT OF FACTS**

Stellar Development Foundation ("SDF") is a non-profit organization that contributes to an open-source distributed financial software platform known as Stellar.  SDF's mission is to

DEFENDANT STELLAR DEVELOPMENT FOUNDATION'S
OPPOSITION TO BITSTAMP'S MOTION FOR ATTORNEY'S
FEES AND COSTS AND JOINDER IN THE INDIVIDUAL
DEFENDANTS OPPOSITION; 15-CV-01503-WHO

1    expand financial access and literacy worldwide, and to focus on areas and geographies where

2    access to financial services can significantly impact people's achievement of basic education,

3    healthcare and other human rights.  Dkt. 88 (SDF Proposed Answer and Counterclaim), ¶ 5.

4         There is no claim that SDF had any involvement in the dispute that underlies this

5    interpleader action.  As detailed both in Bitstamp's Complaint and Ripple Labs, Inc.'s ("Ripple

6    Labs") Cross-complaint, the underlying dispute is solely between Ripple Labs and Jed McCaleb

7    ("McCaleb") and Jacob Stephenson ("Stephenson").  Bitstamp's Complaint makes clear that

8    Ripple had made no claim against SDF.  Bitstamp's Complaint For Interpleader was filed naming

9    McCaleb, Stephenson and Nancy Harris (collectively, the "Individual Defendants"), allegedly

10   because Ripple claimed entitlement to certain funds under Bitstamp's control.  Bitstamp alleged

11   that these funds were in three accounts under Bitstamp's control (the r3Q account, the rPQ

12   account, and the rvYA account), and alleged that Ripple Labs had claimed entitlement to these

13   funds based on Ripple Labs' allegations that McCaleb purportedly had breached an agreement

14   with Ripple that placed limits on the amount of XRP that McCaleb could sell, that Stephenson

15   was the owner of the r3Q account which had sold XRP, and that McCaleb controlled the r3Q

16   account.  Bitstamp also alleged that Stellar was auctioning STRs, and that Bitstamp had been

17   informed by Ripple Labs that Stephenson utilized funds in the r3Q account to purchase STRs and

18   that the funds used by Stephenson to purchase the STRs were in the rPQ account.  Bitstamp

19   Complaint (Dkt. 2) ¶¶ 13-16, 21-23.  Bitstamp's Complaint contained no allegation that Ripple

20   Labs had claimed that SDF had anything to do with McCaleb's alleged breach of contract.  *See*

21   Dkt. 2.  Ripple Labs subsequently filed a cross-complaint against McCaleb and Stephenson

22   (Dkt.10), and this cross-complaint also makes clear that Ripple Labs has no claim against SDF.

23   Ripple Labs' Cross-Complaint does not name SDF as a cross-defendant, and contains no

24   allegations that SDF had any complicity in any alleged breach of contract by McCaleb and

25   Stephenson.  *See* Dkt. 10.

26        Both Bitstamp's Complaint and Ripple's Cross-Complaint demonstrate that Bitstamp and

27   Ripple each knew that the funds contained in the rPQ account, frozen by Bitstamp, were owned

28

DEFENDANT STELLAR DEVELOPMENT FOUNDATION'S
OPPOSITION TO BITSTAMP'S MOTION FOR ATTORNEY'S
FEES AND COSTS AND JOINDER IN THE INDIVIDUAL
DEFENDANTS OPPOSITION; 15-CV-01503-WHO

1  by SDF and were the proceeds of Stephenson's transaction in which Stephenson had paid USD

2  and had received STRs in exchange.  Bitstamp Complaint (Dkt. 2) ¶¶ 16, 23; Ripple Cross-

3  Complaint (Dkt. 10) ¶¶ 49-50.

4        Aside from Bitstamp's knowledge, as stated in Bitstamp's Complaint, that SDF was the

5  claimant to the funds in the rPQ account (Bitstamp Complaint, Dkt. 2, ¶¶ 16, 22-23), SDF also

6  informed Bitstamp of SDF's claim of ownership within one day after Bitstamp filing its

7  Complaint for Interpleader.  Declaration of Joyce Kim ("Kim Dec.") ¶ 3.   In addition, at the time

8  that Bitstamp froze SDF's rPQ account, Bitstamp also froze the personal account owned by Joyce

9  Kim ("Kim"), SDF's executive director.  Kim Dec. ¶ 4.  On April 2, 2015, Kim wrote to

10  Bitstamp's chairman asking why her personal account had been frozen, but she never received

11  any response from him or anyone at Bitstamp about why her personal account had been frozen.

12  *Id.*  Bitstamp had no basis to freeze Kim's personal account, since, according to Bitstamp's

13  Complaint, Ripple had made no claim that Kim's personal account held any proceeds relating to

14  the March 20, 2015 transaction between Stephenson and Ripple's agent or that Kim had any

15  liability to Ripple.

16        SDF repeatedly requested that Bitstamp stipulate to SDF's motion to intervene in this

17  case, beginning on May 18, 2015.  However, Bitstamp's counsel refused to agree, and did not

18  inform the Court that it did not oppose SDF's intervention until just days before the July 16, 2015

19  hearing on the motion to intervene.  Declaration of Terry Gross ("Gross Dec.") ¶ 2; Dkt. 94.   Due

20  to Bitstamp's refusal to stipulate, or even file a statement of non-opposition, to SDF's motion to

21  intervene, SDF had to incur unnecessary attorney's fees in filing its motion to intervene, and

22  Bitstamp delayed the progress of this litigation and delayed SDF's ability to reclaim its

23  improperly frozen funds.  Gross Dec. ¶ 3.[1]

24        When Bitstamp first filed its Complaint, its sole counsel of record was George Frost, its

25  Chief Legal Officer, who also was an advisor to Ripple.  Dkt. 2; Gross Dec. ¶ 4.  As soon as

26

27  [1]  The fact that Bitstamp did not submit any statement of non-opposition to the motion to intervene until a day *after* Ripple Labs filed its own statement of non-opposition (Dkt. 92 and 94)  is further evidence that Bitstamp was acting in concert with Ripple Labs.

28

Defendant Stellar Development Foundation's
Opposition to bitstamp's Motion for Attorney's
Fees and Costs and Joinder in the Individual
defendants opposition; 15-cv-01503-WHO

Bitstamp retained unconflicted counsel, Bitstamp filed a motion with the Court requesting permission to voluntarily dismiss the Complaint in interpleader, stating that "[i]n light of Ripple's Cross-Complaint, it now appears that this is a contract-based dispute between Ripple, on the one hand, and McCaleb and Stephenson, on the other hand," and thus there was "no legal prejudice to any defendant from dismissal."  Dkt. 20 at 8.

## ARGUMENT

### I.   BITSTAMP IS NOT ENTITLED TO FEES, SINCE IT IS NOT AN INNOCENT OR DISINTERESTED INTERPLEADER STAKEHOLDER

Although a court may award attorney fees and costs to a prevailing stakeholder in an interpleader action, the award of fees "is an equitable matter that lies within the discretion of the trial court." *Cagle v. James St. Group*, No. CIV-07-0029-D, 2009 U.S. Dist. LEXIS 64698, *14 (W.D. Okla. July 23, 2009) (intervening citation omitted); 4-22 *Moore's Federal Practice*, Civil § 22.06 (3d. ed. June 2015).  Fees are only awarded to an interpleader plaintiff "'who is [not] in some way culpable as regards the subject matter of the interpleader proceeding.'"  *Cagle,* at *14 (brackets in original) (quoting *Transamerica Premier Ins. Co. v. Growney*, No. 94-3396, 1995 U.S. App. LEXIS 31836, at *1 (10th Cir. Nov. 13, 1995) (unpublished) and 2009 U.S. Dist. LEXIS 64698, 13-16, quoting *United Bank of Denver, Nat'l Ass'n v. Oxford Properties, Inc*., 683 F. Supp. 755, 756-57 (D. Colo. 1988)).  Fee awards are not justified when the interpleading party is not a mere stakeholder but has a substantial controversy with one of the claimants, *Phillips Petroleum Co. v. Hazlewood,* 534 F.2d 61, 63 (5th Cir. 1976) (attorney's fees properly denied when interpleading party "was not a mere stakeholder but actively took a position opposing [one claimant's] claims and supporting the [claim of the other claimant]"); *Century Ins. Co. v. First Nat'l Bank*, 102 F.2d 726, 729 (5th Cir. 1939) ("district court properly refused to allow attorney's fees to the appellant for filing a bill of interpleader, as it was not a mere stakeholder, but had a substantial controversy with the appellee and cross-appellants"); *see also Aetna Life Ins. Co. v. Harley*, 365 F. Supp. 1210, 1215-16 (N.D.Ga.1973) (refusing to tax the fund for plaintiff's attorneys' fees and costs where "had plaintiff conducted the slightest investigation of the claims upon the fund, it could only have concluded that [one claimant's] claim was without merit").  Nor

1  are fees appropriate where an interpleader plaintiff "acted in bad faith or w[as] dilatory or

2  otherwise engaged in improper conduct."  *Gelfgren v. Republic Nat'l Life Ins. Co.*, 680 F.2d 79,

3  81 (9th Cir. 1982); *see also Anchor Brewing Co. v. Peix*, No. C-06-7914 MMC, 2007 U.S. Dist.

4  LEXIS 18428, at *5-7; *10-11 (N.D. Cal. Feb. 28, 2007); *Cal. Pipe Recycling, Inc. v. Sw.*

5  *Holdings, Inc.*, No. CV F 08-0236 SMS, 2009 U.S. Dist. LEXIS 123863, at *19-20 (E.D. Cal.

6  Feb. 19, 2009) (declining to award attorneys' fees and costs where stakeholder "maintained an

7  adversarial position by forcing the stakeholders, who were all Texas residents, into a foreign

8  jurisdiction and spending an enormous amount of the parties', as well as this Court's, time and

9  effort fighting to establish jurisdiction in California") (internal quotations omitted).

10       There are two separate grounds for holding that Bitstamp is not innocent nor disinterested,

11  and thus not entitled to an award of its attorney's fees:  (1) that Bitstamp took actions that

12  interfered with SDF's rights, caused SDF to incur unnecessary expenses, and caused unnecessary

13  delay to SDF in recovering its funds that have been improperly frozen and interpled; and (2)

14  Bitstamp is culpable for creating the controversy that led to the interpleader, because its chief

15  legal officer took actions that caused SDF's funds to be in Bitstamp's possession in order for the

16  funds to be subject to freezing by Frost and Bitstamp.

17       **A.    Bitstamp Took Actions to Interfere With SDF's Rights**

18       Bitstamp's actions to date concerning this interpleader action demonstrate that Bitstamp

19  has taken sides in the underlying controversy.  First, when Bitstamp froze the funds in the rPQ

20  account, claiming there were multiple claimants to that account, Bitstamp knew that SDF was a

21  claimant and owner of that account, and in fact alleged in the Complaint that Stephenson utilized

22  his funds to purchase STRs in an auction by SDF (Complaint ¶¶ 16, 18, 23), yet Bitstamp failed

23  to name SDF as a defendant.  Not only did Bitstamp not name SDF as a defendant, but Bitstamp

24  refused to stipulate to SDF's intervention – thus delaying SDF's entry into the case by two

25  months -- from SDF's first request on May 18, until July 16, at the hearing in which the Court

26  announced it would grant SDF's motion for intervention.  Gross Dec. ¶ 3. Second, Bitstamp

27  improperly froze the personal accounts of SDF's executive director (Kim Dec. ¶ 4), despite

28

DEFENDANT STELLAR DEVELOPMENT FOUNDATION'S
OPPOSITION TO BITSTAMP'S MOTION FOR ATTORNEY'S
FEES AND COSTS AND JOINDER IN THE INDIVIDUAL
DEFENDANTS OPPOSITION; 15-CV-01503-WHO

1  clearly knowing that Ripple Labs had made no claims to ownership of funds contained in Kim's

2  personal account or that this account contained any proceeds of the Stephenson/Ripple Labs

3  transaction that forms the basis of Ripple's claims, and thus having no basis to do so other than to

4  act to support Ripple's litigation objectives.  Third, Bitstamp included allegations in the

5  Complaint about SDF that demonstrate Bitstamp's alignment with Ripple Labs.  A normal

6  disinterested interpleader merely alleges the existence of property to which two competing parties

7  have claimed a stake and a legitimate fear of legal action from both parties. Bitstamp's

8  Complaint, however, goes out of its way to advocate Ripple Labs' inaccurate view of the world.

9  For example, Bitstamp includes several allegations about a so-called "Stellar Auction"—an event

10  that is completely irrelevant to whether Bitstamp has received conflicting claims to ownership of

11  the Disputed Funds and serves no purpose other than to try to support Ripple Labs' theories in

12  this case. *See* Dkt. 2 ¶ 16; *see also* Dkt. 9 ¶ 49 (Ripple Labs making the same allegations in its

13  Cross-Complaint).  Moreover, though Bitstamp knows that Stephenson is the owner of account

14  r3Q, Bitstamp alleges that "[o]n information and belief, r3Q is *controlled by . . . McCaleb*." Dkt.

15  1 ¶ 15 (emphasis added); see also Dkt. ¶ 17 ("On information and belief, rUf6 is *controlled by . . .*

16  *McCaleb*") (emphasis added).  Fourth, the fact that Bitstamp did not file a statement showing

17  non-opposition to SDF's motion to intervene until a day after Ripple Labs filed such a statement

18  (Dkt. 92 and Dkt. 94) is evidence that Bitstamp is acting in concert with Ripple Labs.  Thus, these

19  allegations and actions by Bitstamp show that Bitstamp did not sue as a disinterested third party,

20  but instead to try to aid Ripple Labs in its pursuit of its litigation objectives.

21       Finally, Bitstamp's allegations demonstrate that it had no reasonable basis to institute this

22  interpleader action in the first place.  While, as this Court has recognized, the standard to allow an

23  interpleader action is "low" (Dkt. 63 at 3), this does not mean that a stakeholder who files an

24  interpleader action when there is little chance of competing lawsuits should be entitled to

25  attorney's fees.  "[T]o avail itself of the interpleader remedy, a stakeholder must have a good faith

26  belief that there are or may be colorable competing claims to the stake." *Michelman v. Lincoln*

27  *Nat'l Life Ins. Co.,* 685 F.3d 887, 894 (9th Cir. 2012).

28

DEFENDANT STELLAR DEVELOPMENT FOUNDATION'S
OPPOSITION TO BITSTAMP'S MOTION FOR ATTORNEY'S
FEES AND COSTS AND JOINDER IN THE INDIVIDUAL
DEFENDANTS OPPOSITION; 15-CV-01503-WHO

Here, Bitstamp sought interpleader based on what it knew was a simple contract dispute between Ripple and McCaleb. Bitstamp based its request for interpleader on Ripple Labs' claim that "Ripple Labs and McCaleb (and others) entered into a contract . . . under which McCaleb agreed to abide by certain limitations regarding the sale of XRP." Dkt. 1 ¶ 13; *see also id.* ¶ 14. Yet, as in *Michelman*, a claim that McCaleb breached an agreement with Ripple Labs, even if true, does not provide any valid basis for Bitstamp to believe that Ripple had a valid claim to the funds, such that Bitstamp could be subject to liability to Ripple Labs if Bitstamp released the sale proceeds to the account owners. *See* Dkt. 20 at 3 ("Ripple Labs does not appear to face any injury if Bitstamp were to release the Disputed Funds to . . . [Stellar] . . . even though Ripple claims that the funds relate to a breach of contract"). Indeed, Bitstamp had no problem with Ripple Labs maintaining possession of the XRP that Stephenson paid in consideration for those sale proceeds. *See id.* ("Ripple Labs has possession of the XRP that it received when it paid out approximately $1 million in the disputed transaction. Therefore, Ripple Labs has thus received the 'benefit of the bargain' from the exchange, even though it claims that the transaction itself violates a Settlement Agreement between itself and Jed McCaleb."). Bitstamp clearly knew from Ripple's own statements, as alleged in the Complaint, that Ripple did not have a claim that the particular funds contained in the r3Q and rPQ accounts (a total of $1,038,172) belonged to Ripple. Rather, Bitstamp knew that Ripple was asserting only that McCaleb had breached a contract with Ripple, and that Ripple might be entitled to damages in the amount of funds paid by Ripple in the transaction. Such a claim is not a valid basis for interpleader. Interpleader is only valid when there are two competing claims to ownership of funds, not when one claimant simply asserts a contractual claim that the other claimant owes it money. *See Michelman,* 685 F.3d at 897 (rejecting as "basis for interpleader" one claimant's claim to "have a side agreement with [other claimant]"); *Partex Apparel Int'l LTDA S.A. de C.V. v. GFSI, Inc*., No. 10-2678, 2012 U.S. Dist. LEXIS 42267, *3, *18-29 (D.Kan. Mar. 28, 2012) (reconsidering and rejecting defendant's interpleader counterclaim based on allegations that one or more receivers had taken plaintiff

1   manufacturer's accounts and operations and "demanded that [defendant] make payment directly

2   to them rather than to [plaintiff]").

3         Interpleader generally occurs when the stakeholder holds funds to which there are

4   multiple valid claims.  Even assuming it is appropriate to interplead funds that may be tertiarily

5   related to a breach of contract claim (but, as demonstrated above, it is not), it is clearly

6   inappropriate to interplead funds owned by a non-party (here, SDF) to that breach of contract.

7   Yet that is exactly what Bitstamp did, with full knowledge of all the necessary details about the

8   Ripple/Stephenson transaction and the subsequent transaction in which Stephenson purchased

9   STRs. Dkt. 2 at ¶¶ 16, 18.  Bitstamp also knew that Ripple kept the XRPs that it had purchased

10  from Stephenson, and did not require those XRPs to be placed in the Court's registry.  Even if

11  Bitstamp may claim that it did not know who was the exact owner of the rPQ account (a difficult

12  claim, given that Bitstamp identified SDF in its Complaint as a potential claimant, Dkt. 2 ¶¶ 16,

13  18, 23), Bitstamp clearly knew that the funds were not owned by Ripple, Stephenson or McCaleb,

14  and thus not properly the subject of an interpleader.  In any event, Bitstamp was directly informed

15  by Kim the day after it filed its Complaint that SDF owned the funds in dispute, and yet Bitstamp

16  still did not add SDF as a defendant – despite the fact that Bitstamp promised in its Complaint

17  that "[w]hen such defendants are ascertained, Bitstamp will amend this Complaint by inserting

18  true names in place of fictitious names."  Dkt. 2 ¶ 6.

19        Thus, while this Court has held that Bitstamp's filing of its complaint in interpleader was

20  proper given the low threshold allowed for interpleader filings, given that the award of attorney's

21  fees is equitable in nature, *Cagle*, 2009 U.S. Dist. LEXIS 64698, at *14, *Co.,* 534 F.2d 1155,

22  1164 (5th Cir. 1976); *see also Moore's Federal Practice,* at § 22.06, the fact that Bitstamp, when

23  it filed its Complaint, knew that that one party (SDF) was clearly entitled to the funds and that the

24  other party (Ripple) had no valid claim, demonstrates that Bitstamp does not have clean hands,

25  and thus should not be entitled to any award of attorney's fees.

26  //

27  //

28

**B.      Bitstamp Participated in Creating The Situation Underlying the Interpleader**

An award of attorney's fees is not appropriate to a stakeholder that "played a substantial role in engendering th[e] controversy" or that "helped create the confusion." *Reliastar Life Ins. Co. v. Moore*, No. 1:CV-08-1942, 2010 U.S. Dist. LEXIS 17804, *14-15 (M.D. Pa. Mar. 1, 2010); *Prudential Ins. Co. of Am. v. Richmon*d, No. 06-525 (PGS), 2007 U.S. Dist. LEXIS 48458, 12-13 (D.N.J. July 2, 2007) ("award of legal fees is inappropriate" where stakeholder "created the commotion"); *Bandura v. Fidelity & Guaranty Life Ins. Co.*, 443 F. Supp. 829, 833 (W.D. Pa. 1978) (denying attorney's fees when stakeholder's actions were "the cause of th[e] litigation").

On July 16, 2015, SDF's motion to intervene was granted, and as soon as a written order is entered, SDF will file its answer with counterclaims against Bitstamp. Those counterclaims specify improper actions taken by Bitstamp that created the situation underlying the interpleader: George Frost, in his capacity as Bitstamp's Chief Legal Officer, acted in concert with Ripple Labs to damage SDF and cause SDF's funds to be placed in a Bitstamp account – and thus in a situation where Bitstamp could freeze the funds and assist Ripple. The counterclaim alleges that Ripple Labs and Frost learned that Stephenson was utilizing funds that he obtained through an XRP sale to purchase STRs on the Coinex exchange. On March 20, 2015, Stephenson in fact did transfer approximately $963,000 to the Coinex exchange, and on that exchange Stephenson purchased 306,935,500 STRs, and SDF received approximately $940,000 USD on the Stellar network from this transaction. As part of this concerted effort, Ripple Labs contacted the operator of the Coinex exchange, and continuing in various telephone conversations over the next few weeks, demanded that the Coinex exchange either reverse Stephenson's transaction in which Stephenson purchased STRs and paid SDF $940,000 and deliver the funds to Ripple Labs or ensure that the $940,000 paid to SDF remained on the Ripple network. Ripple Labs threatened the operator of the Coinex exchange that if he and Coinex did not comply with Ripple Labs' demand then Ripple Labs would cause trouble for Coinex that would drive it out of business, including shutting down Coinex's bank accounts by making false reports about Coinex and its operator to U.S. authorities, New Zealand authorities and Coinex's bank for allegedly violating

DEFENDANT STELLAR DEVELOPMENT FOUNDATION'S
OPPOSITION TO BITSTAMP'S MOTION FOR ATTORNEY'S
FEES AND COSTS AND JOINDER IN THE INDIVIDUAL
DEFENDANTS OPPOSITION; 15-CV-01503-WHO

1  criminal laws.  The operator of the Coinex exchange, despite knowing that neither he nor Coinex

2  had done anything improper, yielded to Ripple Labs' improper threats and transferred the funds

3  that SDF had on the Coinex exchange into SDF's rPQ Bitstamp account on the Ripple network.

4  Because of this transfer, Frost and Bitstamp were then in a position to file an interpleader action

5  and freeze SDF's funds.  Without such a transfer to a Bitstamp account, SDF's funds would have

6  remained on the Stellar network, and neither Ripple nor Bitstamp would have been able to

7  unilaterally freeze or appropriate these funds.  *See* Dkt. 88, Counterclaim ¶¶ 23-26.

8        Nevertheless, once the concerted actions of Ripple Labs and Frost caused SDF's funds to

9  be moved to a Bitstamp account, Frost and Bitstamp then took actions to have SDF's rPQ account

10  containing the $940,000 plus SDF's other funds immediately frozen, and then Frost filed a

11  Complaint for Interpleader.  Ripple Labs and Frost did this, despite the fact that both knew that

12  the XRP offered for sale by Stephenson were not part of the 5.5 billion owned by McCaleb nor of

13  the 2 billion XRP owned by McCaleb's children, and thus were not subject to any limits on sales

14  in the Ripple Labs-McCaleb settlement agreement, and knew that the representation that

15  Stephenson's sale was a breach of contract by McCaleb was false.  Ripple Labs and Frost also

16  knew that the funds in the rPQ account that they were requesting that Bitstamp freeze were not

17  owned or controlled by either Stephenson or McCaleb, but were owned by SDF as the result of a

18  subsequent transaction, as the funds in this account were the proceeds of Stephenson's transaction

19  in which he had purchased STRs and in which SDF was paid approximately $940,000, and thus

20  knew there was no basis for Ripple Labs' claim that it was entitled to any ownership or control of

21  these funds. Bitstamp is vicariously liable for Frost's actions, as they were taken in his capacity as

22  Bitstamp's chief legal officer.  The fact that as soon as Bitstamp retained unconflicted counsel,

23  Bitstamp filed a motion to voluntarily dismiss the interpleader complaint provides further support

24  that Bitstamp's initial actions, as directed by Frost, were improper.  *See* Dkt. 88, Counterclaim ¶¶

25  26-27.

26        Thus, since Bitstamp participated in creating the situation that led to this interpleader,

27  Bitstamp is not entitled to any attorney's fees.

28

DEFENDANT STELLAR DEVELOPMENT FOUNDATION'S
OPPOSITION to bitstamp's MOTION for ATTORNEY'S
FEES AND COSTS AND JOINDER IN THE INDIVIDUAL
defendants opposition; 15-CV-01503-WHO

**II.    IN THE EVENT THE COURT CANNOT NOW DETERMINE IF BITSTAMP IS "DISINTERESTED" OR IF BITSTAMP PLAYED A SUBSTANTIAL ROLE IN CREATING THE CONTROVERSY, THEN BITSTAMP'S REQUEST FOR FEES IS PREMATURE**

In situations where there are counterclaims pending against a stakeholder, or other factual issues pending as to the stakeholder's involvement in the underlying controversy, attorney's fees should be denied as premature.  As the court in *Cagle* held:

> [T]he Court concludes that a decision regarding the propriety of awarding fees in connection with the interpleader action is premature. Plaintiff continues to assert claims against MassMutual which allege that it engaged in wrongdoing regarding the annuity. Because those claims remain to be adjudicated and are subject to factual disputes, the Court will not rule on the attorney fee issue at this time. Accordingly, to the extent MassMutual seeks an award of fees at this time or a ruling on the propriety of such an award, its motion is denied.

*Cagle,* 2009 U.S. Dist. LEXIS 64698, at *15-16.  "Fees are not available . . . [i]f there is a substantial controversy between the interpleading party and others."  *Id.* at *15, Wright & Miller, Federal Practice and Procedure § 1719 (3d. ed. 2001); *see also Michelman  v. Lincoln National Life Ins. Co.,* No. C10-0271RSL, 2010 U.S. Dist. LEXIS 80630, *10-14 (W.D. Wash. Aug. 10, 2010), *aff'd*, 685 F.3d at 887 (9th Cir. 2012) (denying as premature request for fees where plaintiff "asserted [against stakeholder-insurer] claims that are independent of [insurer's] ultimate coverage decision (or lack thereof)").

Should the Court not conclude, based on the information presented at this time, that Bitstamp's conduct has disqualified it from obtaining an award of fees, SDF respectfully requests that the Court deny Bitstamp's motion as premature, pending further discovery and elucidation of Bitstamp's conduct as SDF litigates its counterclaims.

**III.    NO ATTORNEYS FEES SHOULD BE AWARDED AGAINST SDF'S FUNDS THAT HAVE BEEN DEPOSITED IN THE COURT'S REGISTRY**

Even if the Court determines that Bitstamp is entitled to receive some award of attorney's fees, no fees should be awarded from SDF's funds that have been deposited in the Court's registry.   While attorney's fees in an interpleader action may typically be assessed against the interpleaded fund, *Prudential-Bache Securities, Inc. v. Tranakos*, 593 F. Supp. 783, 785 (N.D.

1   Ga. 1984) ("[t]ypically, the award, if made, is imposed against the party who has benefited from

2   the interpleader action (and taken out of the interpleader fund)"), fees should not be awarded

3   against the fund if the party entitled to the fund is a wrongdoer.  *See, e.g., Clarkson Co. v.*

4   *Shaheen,* 533 F. Supp. 905, 919 (S.D.N.Y. 1982) (awarding fees against the parties that caused

5   the controversy, rather than from the interpleaded res); *Standard Chtd. Bank v. Van Ekris & Co*.,

6   No. 98 Civ. 2069 (RO), 1999 U.S. Dist. LEXIS 11661, *10-11 (S.D.N.Y. July 28, 1999)

7   (awarding fees to be paid by the parties who "acted unreasonably" rather than against the

8   interpleaded funds); *Tranakos*, 593 F. Supp. at 785-86 (finding "that the United States should be

9   taxed with [plaintiff stakeholder's] fees and costs because it is the 'losing claimant' in this action

10  and because it acted unreasonably in trying to enforce the notices of levy once it had in its

11  possession evidence which established that Tranakos was not the beneficial owner of the

12  accounts").

13        Here, SDF is an innocent third party who was improperly drawn into this controversy.  It

14  is undisputed that:  (1) SDF is the only claimant to the funds from the rPQ account, which are the

15  interpleaded funds deposited in the Court's registry; (2) the dispute underlying this interpleader

16  action is simply a claim by Ripple Labs that McCaleb and Stephenson breached a contract with

17  Ripple Labs; (3) neither Bitstamp's Complaint nor Ripple's Cross-Complaint mention SDF as

18  having any complicity in the alleged breach of contract by McCaleb and Stephenson; (4) the

19  funds in the rPQ account are not Stephenson's funds derived from his March 20, 2015 transaction

20  with Ripple, but rather are owned by SDF and were the proceeds of Stephenson's subsequent

21  transaction in which Stephenson had paid USD and had received STRs in exchange; and (5) both

22  Bitstamp's Complaint and Ripple's Cross-Complaint demonstrate that Bitstamp and Ripple each

23  knew that the funds contained in the rPQ account were owned by SDF and the proceeds of a

24  subsequent transaction.  Bitstamp Complaint (Dkt. 2) ¶¶ 16, 23; Ripple Cross-Complaint (Dkt.

25  10) ¶¶ 49-50.

26        Thus, this is not a typical interpleader action.  Typically, a disinterested stakeholder

27  deposits its own funds to permit the claimants to litigate their claims and avoid incremental

28

1    dissipation of those funds.  Here, an interested plaintiff deposited an innocent third party's funds

2    to help one party obtain a litigation advantage over another party in an unrelated dispute.  To be

3    clear, there is no claim that SDF has any complicity in the underlying controversy.  Yet it is

4    SDF's funds that are currently on deposit in the Court's registry.  In such a situation, it would be

5    patently unfair to assess these interpleaded funds to pay attorney's fees.  Rather, any attorney's

6    fees should be assessed against the other fund that is being deposited into the Court's registry –

7    the XRPs purchased by Ripple from Stephenson during the March 20, 2015 transaction.  In fact,

8    Ripple has stated that it is willing to have all the attorney's fees assessed against these XRP.

9    Gross Dec. Ex. A ("Ripple has no objection to the use of the XRP to satisfy Bitstamp's fees in

10   part or whole").

11                                            **CONCLUSION**

12          SDF respectfully requests that the Court deny Bitstamp's motion for attorney's fees, on

13   the basis that Bitstamp is not a disinterested stakeholder, but injected itself into and participated

14   in causing the underlying controversy, or, in the alternative, on the basis that Bitstamp's motion is

15   premature.  In the event the Court determines that it is appropriate to award attorney's fees, SDF

16   respectfully requests that any fees be awarded from the XRPs that Ripple Labs is in the process of

17   depositing into the Court's registry, and that none of the fees should be awarded from SDF's

18   funds in the Court's registry, since SDF is an innocent third party with no involvement in the

19   underlying dispute.

20

21   Dated: July 20, 2015                    GROSS BELSKY ALONSO LLP

22
                                             By:_____*/s/ Terry Gross*_____.
23                                                  Terry Gross

24                                           Attorneys for Defendant
                                             STELLAR DEVELOPMENT FOUNDATION
25

26

27

28

DEFENDANT STELLAR DEVELOPMENT FOUNDATION'S
OPPOSITION TO BITSTAMP'S MOTION FOR ATTORNEY'S
FEES AND COSTS AND JOINDER IN THE INDIVIDUAL
DEFENDANTS OPPOSITION; 15-CV-01503-WHO