Pages 1 - 24

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Orrick, Judge

```
BITSTAMP, Ltd.,                 )
                                )
          Plaintiffs,           )
                                )
   VS.                          )    NO. C 15-01503 WHO
                                )
RIPPLE LABS, Inc., et al.,      )
                                )
          Defendants.           )
_____)
```

San Francisco, California
Thursday, July 16, 2015

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:

        FARELLA, BRAUN & MARTEL LLP
        Russ Building
        235 Montgomery Street
        San Francisco, California  94104
  BY:  **JESSICA NALL**
     **ALEXANDER M. PORCARO**
     **ATTORNEY AT LAW**

For Defendants Ripple Labs:

        GOODWIN PROCTER LLP
        135 Commonwealth Drive
        Menlo Park, CA 94025
  BY:  **GRANT P. FONDO**
     **NICOLE L. CHESSARI**
     **ATTORNEYS AT LAW**

Reported By:      Rhonda L. Aquilina, CSR #9956, RMR, CRR
              Court Reporter

**APPEARANCES:   (continued)**


For Defendant McCaleb and Stephenson:

       Orrick, Herrington & Sutcliffe, LLP
       701 Fifth Ave., Suite 5600
       Seattle, WA 98104-7097
   **By:  PAUL F. RUGANI**
      **ATTORNEY AT LAW**

For Proposed Intervenor Stellar:

       Gross, Belsky, Alonso, LLP
       One Sansome Streeet, Suite 3670
       San Francisco, CA 94104
   **By:  TERRY GROSS**
      **ATTORNEY AT LAW**

1   **Thursday - July 16, 2015**                              **3:31 p.m.**

2                          **P R O C E E D I N G S**

3                              ---oOo---

4        **THE CLERK:**  Calling civil matter 15-1503, Bitstamp,

5   Ltd. versus Ripple Labs.

6       Counsel, please come forward and state your appearance.

7        **MR. RUGANI:**  Good afternoon, Your Honor.  Paul Rugani

8   from Orrick, Herrington & Sutcliffe for the individual

9   defendants Jeb McCaleb and Jacob Stephenson.

10       **THE COURT:**  Good afternoon.

11       **MR. GROSS:**  Terry Gross for the proposed Intervenor

12  Stellar Development Foundation.

13       **MR. FONDO:**  Good afternoon, Your Honor.  Grant Fondo

14  for Ripple Labs, and with me is Nicole Chessari.

15       **MS. NALL:**  Good afternoon, Your Honor.  Jessica Nall

16  on behalf of Bitstamp, and with me is Alex Porcaro.

17       **THE COURT:**  Good afternoon, everybody.

18      All right.  So we have the motion to compel arbitration

19  and stay, and then we've got the motion to intervene.  So let

20  me tell you what I'm thinking about with respect to the motion

21  to compel arbitration and stay.

22      First of all, it seems to me that the FAA governs.  The

23  general choice of law provision doesn't specify the CAA

24  provisions, it doesn't overcome the presumption that the FAA

25  applies, and so then the question is who is supposed to decide

1   arbitrability.

2          And I spent some time looking at these paragraphs, and I

3   think I now understand them, but what I definitely understand

4   is that the language about who decides arbitrability gives it

5   to the arbitrator to determine the scope.  The agreement

6   incorporates the arbitration rules.  So I think -- so my view

7   is that this matter does go to the arbitrator to decide what

8   the scope is.

9          And I would also find that an equitable estoppel allows

10  Stephenson to compel arbitration.  Ripple's claims rely on the

11  validity of the underlying contract, and that one contains the

12  arbitration provision.  So that's my view with respect to that.

13          **MR. FONDO:**  Okay.  Thank you, Your Honor.  I know this

14  has been extensively briefed, so I'll be short and brief, Your

15  Honor.

16          What I would point the Court to is to paragraph ten.  What

17  we have in paragraph ten is a very specific provision.  And

18  this is a very unusual case in the sense that almost all the

19  arbitration provisions that are before our courts are not

20  separated like this where there's two provisions, and paragraph

21  ten gives certain rights to a party that they may exercise,

22  which in this case Ripple Labs did exercise.  They have that

23  right to bring a claim for specific performance or injunction

24  to the Court, and I think that's clear.

25          The individual defendants have cited paragraph 11 to say

1  that no, this is a provisional remedy, and therefore it's

2  encompassed within paragraph 11, and I believe that's

3  incorrect, Your Honor.  These are not provisional remedies.

4  Provisional remedies, as Your Honor knows, are things that are

5  temporary, such as a TRO or something of that nature.  The

6  remedies that are specified under the specific performance

7  paragraph ten are permanent remedies.  They're specific

8  performance, you have to do something.  It's permanent

9  injunction, Your Honor.  And so --

10         **THE COURT:**  Right.  And that's sort of how -- I

11  totally get what your argument is, Mr. Fondo.  And the way

12  that -- the only way to harmonize these two provisions, just

13  because 11 talks about breach of an agreement which, you know,

14  inevitably comes into the question of specific performance, is

15  to think about them in the way that most cases happen that are

16  sent to arbitration from a court, and then they come back for

17  the final injunction that gets enforced specifically by the

18  Court.  I think it's the only way to -- that's the way that I

19  would look at it, but I don't think I even get to go that far,

20  because I think it's -- because I think paragraph 11 gives the

21  scope to the arbitrator to look at it and make that

22  determination.  That's the only way I can make sense of the

23  two.

24         **MR. FONDO:**  Your Honor, so I would respectfully

25  disagree with both points, but let me address the first one

1  first.  I don't think that's the case, Your Honor, because if

2  you look in paragraph 11 -- and this goes to the fact that the

3  specific performance paragraph, your point is that simply to

4  enforce what the arbitrator decides -- there's a provision in

5  here that gives the arbitrator that decision.  Judgment on the

6  award may be entered in any court having any jurisdiction,

7  whether it's a specific performance judgment, an award, et

8  cetera.

9          THE COURT:  You think that gives the arbitrator the

10  ability to enter that order?

11          MR. FONDO:  Well, no.  Sorry.  It says the judgment on

12  the award may be entered into any court having jurisdiction.

13          THE COURT:  Right.

14          MR. FONDO:  Meaning, so that allows whatever -- that

15  allows the -- there's a decision on the arbitration, and that

16  allows it to be enforced in this Court.  And my

17  understanding -- so what I'm saying, Your Honor, and maybe I

18  misunderstood your point, but what I'm saying is that's

19  separate.  I think what paragraph ten does is allows a party to

20  come into federal court and seek relief immediately.

21      I mean, as you look at the nature of this contract, this

22  contract is Mr. McCaleb is limited to how many numbers of XRP

23  that he can sell.  Pretty clear what a type of breach would be

24  from an individual in that perspective.  He exceeds that limit.

25  That could be a very narrow issue, and you come in for specific

1   performance to say stop those sales, you've exceeded those, we

2   want a permanent injunction, we want to go in court to do that,

3   and that's what this provision governs.

4        So when you look at the totality of the agreement, and

5   what the purpose of these provisions are in relation to this

6   agreement, it's not a typical contract.  It's a very specific

7   contract that limits what and how many XRPs an individual can

8   sell, and under that construct, and also the construct we

9   talked about before, I believe that paragraph ten is separate

10  and distinct in that nature.

11       And in that regard, I understand the Court's position that

12  having decided this is to be decided by the arbitrator.  The

13  only issue left is whether this is wholly groundless or not.

14  And I would argue that it would, Your Honor, and I understand

15  your perspective on this, and I understand the other side's

16  briefs on it.

17       But I would say that this provision, paragraph ten,

18  clearly gives the right to a party to go in to federal court to

19  get a specific performance for an injunction, and that's what

20  it provides.  It says "shall be entitled."  It's an injunction

21  to prevent breaches of this agreement and specific performance

22  to this agreement.  And therefore, Your Honor, I believe this

23  provision is very specific that it has this right, and

24  therefore these -- the relief that is being sought against

25  Mr. McCaleb is covered by paragraph ten.

1        **THE COURT:**  Okay.

2        **MR. FONDO:**  Thank you, Your Honor.

3        **THE COURT:**  And do you have -- what is the best case

4   that you've got or is this clause so unique that there's really

5   not much to look at?

6        **MR. FONDO:**  So I think this clause is pretty unique,

7   and I don't think there's much to look at, and also the cases

8   are all over the map about whether something is unconscionable,

9   et cetera.  I think the *Cardiovascular* case is the case, it's a

10  District of Nevada case, that has very similar language here,

11  and that court said that if we were addressing the 2007

12  employment agreement, we would -- these claims would be in

13  court, but because the 2010 agreement is different and has

14  changed that language, that's evidence that the Court -- excuse

15  me, the parties no longer wanted to do that.

16       **THE COURT:**  All right.  Mr. Rugani.

17       **MR. RUGANI:**  Thank you, Your Honor.

18    So, obviously, we agree with where you're leaning in the

19  first instance, but I think the easiest way to explain what the

20  problems are with Mr. Fondo's argument is that everything that

21  he has talked about with you is a question of interpretation of

22  the agreement or the scope of the agreement to arbitrate, and

23  those are things that in paragraph 11 in the arbitration

24  agreement the parties twice referred and reserved for the

25  arbitrator alone in the first instance.

1        These are all arguments that Mr. Fondo can make to the

2  arbitrator when we get down into arbitration to try to explain

3  to him or her as to why the agreement doesn't reach the types

4  of claims that he's asserted.  We obviously disagree, and we

5  think the way that Your Honor harmonized the two paragraphs is

6  exactly the right way to harmonize the two paragraphs.  Any

7  other way of reading those two paragraphs together means

8  reading paragraph 11 to have limitations that it just doesn't

9  have.

10        The parties were about as clear as they could have been.

11  Any dispute, claim, or controversy arising out of relating to

12  the agreement, including interpretation of the agreement,

13  breaches of the agreement, and enforcement of the agreement,

14  and including determination of the scope or applicability of

15  their agreement to arbitrate were things that were going to be

16  determined by arbitration.  And the only way for Mr. Fondo's

17  argument to succeed is if you take that language in paragraph

18  11 and add to it, "except that the parties don't agree to

19  arbitrate claims for injunctive relief for specific

20  performance," and of course that's not what the parties did.

21        And just very briefly on the *Cardiovascular* case, Your

22  Honor, so in the *Cardiovascular* case the ultimate outcome is

23  the Court said I'm going to compel arbitration here based on

24  the language of the agreement.  And it is true that the Court

25  compared the language of the agreement that he was asked to

1    rule on with another agreement that the parties had before and

2    said oh, you know, I see that there's a comparison here, and I

3    see that there are differences in how the parties phrase the

4    agreement.  But certainly the Court didn't make any kind of

5    finding or holding that the prior agreement should properly be

6    construed as leaving the claims in the court.  The Court just

7    observed that there were differences and noted that those

8    differences helped inform his decision to refer the case to

9    arbitration, and anything to the contrary would simply be dicta

10   out of the District of Nevada opinion that Your Honor does not

11   have to follow.

12          THE COURT:  All right.  And do you have a great case

13   for me on this?

14          MR. RUGANI:  Sure.  So we think the *Oracle* case out of

15   the Ninth Circuit is a great case for you on this.  It's

16   actually a better provision for the parties seeking to avoid

17   arbitration than the contract that we have here, because that

18   agreement started by saying the parties agree that any dispute

19   relating to the contract will go to arbitration, except

20   intellectual property disputes where we agree that we're not

21   going to arbitrate; and there was an intellectual property

22   dispute in that case, and the Court said, well, I see that you

23   have an agreement that says any dispute about the agreements go

24   to arbitration, and I see that you've incorporated the UNCITRAL

25   rules which calls for the arbitrator to make a decision about

1    arbitrability in the first instance, and your argument about

2    whether or not this is or is not an intellectual property

3    dispute really goes to the scope of the arbitration agreement

4    and the interpretation of the arbitration agreement, and you've

5    referred that to the arbitrator, so we need to refer the case

6    to the arbitrator to decide.

7          We also think that the *Comedy Club* case also out of the

8    Ninth Circuit, very similar language, and in that case the

9    parties said that in addition to arbitration, they could go in

10   and obtain equitable relief and injunctive relief, and the

11   Court said that did not require those claims to be adjudicated

12   in court, and it was perfectly appropriate for those claims to

13   go to arbitration and be adjudicated by the arbitrator.

14         Both of those Ninth Circuit decisions that we say would be

15   binding on Your Honor in the circumstances here.

16         **THE COURT:**  Okay.  All right.  Good.  Anything else on

17   this motion?

18         **MR. FONDO:**  Your Honor, the only other thing I would

19   add is there's a pretty high burden here to exclude the Court's

20   assessment of these arbitration provisions.

21         **THE COURT:**  Yeah, I don't like it very much myself,

22   but --

23         **MR. FONDO:**  And I don't think it's been met here, Your

24   Honor.  If you look at the *Hartley* case, the *James* & *Jackson*

25   case, those cases talk about two different paragraphs.  And in

this context you have two paragraphs.  And so to the extent

there is any ambiguity at all, and I think the Court indicated

that a little bit in its tentative, to the extent there's any

ambiguity at all that burden has not been met, and therefore

it's the Court and not the arbitrator that needs to make that

decision, and I believe at a minimum there is ambiguity here.

          **THE COURT:**  Okay.  Thank you both for your argument

here.

          And so now on to Stellar's motion to intervene, which

there are two parts to this, and one will remind me of the

argument that I just heard.  And so there's an issue that's

before me, and there's another issue, so the issue that's

before me is whether to grant the motion to intervene.  And

nobody poses, I think, the right of Stellar to file a motion to

intervene, it's a question of what the claims should be down

the road and then how to address those claims.

          So what I'm planning to do is to grant the motion to

intervene and let the parties file the motions that they want

to file about why the claims shouldn't go forward.  The motion

to discharge didn't deal with all of the facts that are alleged

in the complaint.  I haven't made any determinations with

respect to those.  The money is in.  Your client, Ms. Nall, has

been discharged, but that doesn't mean that under a different

set of facts they can't be brought back in.  So I'm inclined to

take this step at a time.

1          **MS. NALL:**  Understood, Your Honor.  I think our

2    argument is that by virtue of the motion for discharge, by your

3    discharge order and the considerations that you made in

4    discharging Bitstamp, essentially if that's to have any impact

5    at all, it would have to mean that counter claims based on our

6    not dispersing the money immediately to Stellar would have to

7    be barred by that order.

8          I don't understand what really the point of an

9    interpleader is at all if we can, you know, be discharged and

10   then turned right back around and be sued again for the exact

11   same facts.  I think that's the concern.  But if Your Honor

12   wants more briefing on that, and we need to become a party to

13   this lawsuit, it's exactly what we really have not -- really

14   have tried to avoid, because the costs are very significant, as

15   you noted in your order, your preliminary order requiring our

16   fees to be detailed.

17         It's really -- you know, the clock is ticking.  This stuff

18   is expensive, and to keep on being dragged in when it feels

19   like it is just a redux of the exact same issues, you know,

20   under the cases that we've cited -- and I know Your Honor has

21   read because you've cited them in the discharge order -- this

22   is exactly the sort of thing that should be foreclosed by the

23   interpleader procedure and by discharge.

24         **THE COURT:**  Okay.  So typically, the interpleader is a

25   totally uninvolved third party who has just got the money and

1    two other people are fighting, and that was the situation that

2    was essentially presented to me with some vague, very

3    unsupported allegations about other conduct, and so to me that

4    was a pretty easy decision to make.

5         Now, there are -- there's a much more developed set of

6    allegations, and I think I have to deal with that straight on.

7    I don't think -- I don't think you, your client, can simply say

8    because of the changed circumstances, well, this was already

9    done, because it certainly wasn't in my mind.  I think what

10   would be in my mind is what the responses are to the

11   allegations.  This may be not a good way to spend time and

12   energy, but I don't know, and I'm going to need to know more

13   before I make an ultimate determination on it.

14        **MS. NALL:**  So may I ask, what is it, you need

15   discovery in order to make a determination?  It just --

16        **THE COURT:**  I'd like to see what your -- I mean, the

17   initial question is does Stellar have a right to intervene in

18   this case?  And the answer to that question I think is yes,

19   they've got an interest.  And so they've made a series of

20   allegations, and they need to be responded to in the normal

21   way, and then I can make a determination as to whether -- as to

22   what the next conclusion is.

23        **MS. NALL:**  So just for my own understanding, Your

24   Honor, if you could indulge me.  We've cited the *Hovis* case,

25   and it was in Your Honor's discharge order, and in that case it

1    considered that the Court there considered very similar facts

2    where counter claims were based on matters surrounding the

3    holding of the funds and refusal to disperse them to one party,

4    and one of the claims in that case was similar to here, unfair

5    business practices.  And the Court there said if -- unless the

6    interpleader party actually created the dispute, then they must

7    be -- the discharge must involve an injunction against counter

8    claims.

9        So here, I guess what I'm hearing you say is that you

10   still need to know more about whether there is a claim about

11   the whether Bitstamp created the dispute.

12       **THE COURT:**  The discharge order occurred before the

13   record was full.  And so the record is fuller now, and I'm

14   going to need to know what the response is before I -- before I

15   can make a determination one way or another.

16       **MS. NALL:**  All right.  Thank you.

17       **THE COURT:**  It may not be a lot of help to you,

18   Ms. Nall, but you're in a different place than you were a month

19   ago.

20       **MS. NALL:**  To us it doesn't really feel any different,

21   but I understand what you're saying, Your Honor, so we'll

22   respond as necessary.

23       **THE COURT:**  All right.

24       **MR. RUGANI:**  So am I okay with not responding at all,

25   Your Honor?

1        **THE COURT:**  You're okay with not responding.  I am --

2   you know, I do think it's an unusual posture to be coming in as

3   you're coming in making the allegations that you're making

4   after the money has left the hands of the party that

5   interpleaded, but --

6        **MR. RUGANI:**  Well, if I can just give a little

7   context, which I think might help here.  I mean, you pointed

8   out that the typical interpleader situation is where there's

9   two parties who have a conflict and are fighting about the

10  money.  Stellar is an innocent third party.  There's no claims

11  that Stellar did anything wrong.  Ripple filed a

12  cross-complaint.  That cross-complaint is just against Jeb

13  McCaleb, Mr. Stephenson and Ms. Harris.  There's no allegations

14  that Stellar did anything wrong.

15       Our position -- Stellar's position is we're an innocent

16  third party that not just got innocently dragged into this, but

17  it got intentionally dragged into this because of a conspiracy

18  that was taking place between Ripple, who is out, has a

19  vendetta against Stellar for competitive reasons, and because

20  of George Frost, who -- I mean, if George Frost wasn't in the

21  mix, wasn't acting on behalf of Bitstamp, this situation might

22  be completely different.  But George Frost has taken very

23  definitive actions against Stellar, you know, that he has

24  advised someone to file a separate lawsuit, that, you know

25  related to Ripple.

1    We have been -- my firm has been trying to find out when

2    did you -- you know, for Mr. Frost, when did you, you know,

3    represent Ripple.  We know he represented Ripple during the

4    negotiations for the settlement agreement and other things that

5    happened way back then, because, you know, we've seen

6    documentation of that.

7    And so we've asked -- and in this other lawsuit, we

8    subpoenaed documents, you know, which is a lawsuit, we

9    subpoenaed documents from Mr. Frost, who we thought would be --

10   you know, anyway, we thought that they'd be okay to get, but

11   all of a sudden we got an attorney-client privilege claim by

12   Ripple.  Ripple says no, those are attorney-client documents.

13   We said, well, when did he represent you?  When did he stop?

14   Now, that's in that other lawsuit.  In this same lawsuit I made

15   the same request, I made it of Mr. Frost when I spoke to him, I

16   made it in Ripple.  They've never given me an answer.  So we

17   have a lot of concern that Frost was very involved.

18   And what Ms. Nall is doing when she's looking at the

19   complaint is she's unfortunately, I think for her view of it,

20   she's forgotten to look at some of the allegations.  The second

21   and third cause of action are not about the interpleaded funds

22   at all, they're about the fact that Ripple and Frost conspired

23   to interfere with Stellar's economic relations with this

24   third -- this other exchange called Coinex, and that Stellar

25   and Frost conspired to interfere with Stephenson's relationship

with Frost that ended up, you know, creating an economic

disadvantage for Stellar.  That has nothing to do with -- I

mean, they're the funds that ended up being before this Court,

but it has nothing to do with the interpleader part of it.

So I think that's essentially why what we're alleging is

quite different.  And I think what you'll find, as this case --

if this case progresses in front of you, is that this is quite

different than any other interpleader action, because the funds

that Ripple has tried to seize, which Bitstamp has allowed to

happen, have nothing to do with the underlying dispute.

They're not the proceeds of the transaction that Ripple engaged

in, but didn't really mean to engage in, you know, and then

tried to unwind.  They're not -- they're a downstream

transaction where an innocent, a bona fide purchaser sold

something, you know, STRs and received money in return.  And,

you know there's no basis whatsoever for Ripple to have said I

own that particular piece of money, I'm entitled to that money.

They might have damages against Mr. McCaleb if he breached the

agreement, but they're not entitled to the money that Stellar

gave consideration for in the separate transaction.  So that's

my --

            **THE COURT:**  So I appreciate your foreshadowing the

case a little bit for me, and I think we'll have ample

opportunity to develop this and see where it goes.  But I am

intending to grant the motion to intervene.

1              **MR. RUGANI:**  Okay.

2              **THE COURT:**  All right.  Is there anything else?

3              **MR. RUGANI:**  Are we going -- we have a CMC before you

4    as well, Your Honor.

5              **THE COURT:**  Do we have a CMC right now?  That, I did

6    not pay attention to.  And I wonder, in light of my ruling,

7    whether it would make more sense to kick that off for 30 days.

8        Is there any issue that anybody wanted to raise right now?

9    And I apologize I didn't --

10             **MR. RUGANI:**  There was one issue that Stellar wanted

11   to raise, Your Honor.  There's another side of this transaction

12   which is the XRPs that Ripple has in its possession, you know,

13   that as the opposite side of the transaction in which

14   Mr. Stephenson paid -- received money.  Ripple has said a

15   number of times it would deposit them with the Court, but it

16   has never done that, and we would request that Ripple place

17   those XRPs before the Court if Stellar's funds is being frozen

18   here as well.

19             **THE COURT:**  All right.  Mr. Fondo.

20             **MR. FONDO:**  Your Honor, we have no objections, as we

21   have stated before.  And I don't know if it's quite as simple

22   as depositing, but we will facilitate in a way that gives the

23   Court control over that, the XRP.  We don't have a problem with

24   that.

25             **THE COURT:**  All right.  And how quickly do you think

1   you could do that?

2          **MR. FONDO:**  Well, probably within a week.  I just

3   hesitate because I know it took longer than expected to get the

4   funds here with the Court, so that's my only hesitation, but I

5   think roughly within a week we can do it.

6          **THE COURT:**  Okay.  Well, so let's do it by a week from

7   Friday, by the 24th.

8          **MR. FONDO:**  Okay.  Thank you.

9          **MS. NALL:**  Your Honor, with respect to the CMC, we

10  haven't been served.  Obviously, this motion to intervene

11  simply attached an exhibit.  So I am just curious, I mean,

12  obviously if we're going to be stuck in here, we're going to be

13  stuck in here, but perhaps we need a little bit more time I

14  guess to be served and then do -- you know, we haven't done

15  26(f) conference or anything else, because we haven't -- we

16  consider ourselves out of this lawsuit, so maybe 30 days may

17  not be quite enough.

18      I'm also completely bewildered as to the impact of the

19  motion to compel arbitration when we're under no obligation to

20  agree to that, so --

21          **THE COURT:**  Well, right, so that's -- that's actually

22  a reason to have the case management conference to try to sort

23  out -- because I don't know either.  I don't know that

24  Stellar's bound to be following the -- follow the case into

25  arbitration or not, or whether that's up to the arbitrator.  I

1   haven't begun to think about that.

2            MR. GROSS:  If I may, Your Honor.  I don't think

3   Stellar has any obligation to have its claims be heard in

4   arbitration.  I actually think Stellar's claims are completely

5   independent of Ripple's claims against Mr. McCaleb.  Whether or

6   not Mr. McCaleb breached the agreements, Stellar's assertion is

7   you have no right to do the things that you did that interfered

8   with Stellar's businesses.  But at the same time I think it

9   might make sense for the parties to have time to meet and

10  confer and see if there's some orderly procedure that could be

11  worked out.  You know, it might make sense for Stellar to agree

12  to, you know, to some other procedure, you know --

13           THE COURT:  Well, it makes sense --

14           MR. GROSS:  -- time to confer bit.

15           THE COURT:  -- to put together.  But I agree with you,

16  that the parties should have time to confer.

17       So what about September 1st?

18           MR. GROSS:  I will be gone that week, Your Honor.

19           THE COURT:  What about September 8th?

20           MS. NALL:  I believe that will work.

21           MR. GROSS:  If we could have it the week after.

22           THE COURT:  What about September 15th?

23           MR. GROSS:  That works for me, Your Honor.

24           MR. FONDO:  Your Honor, I believe that works for me,

25  I'm still powering up, Your Honor.

1          **MS. NALL:**  It works for us also.  Thank you.

2          **THE COURT:**  I know you have a complicated schedule,

3   Ms. Nall.

4          **MS. NALL:**  I do, yes.  Thank you, Your Honor, for

5   indulging me.  September is fine.

6          **THE COURT:**  I remember.  Okay.  Good.

7          **MR. RUGANI:**  That works for us, Your Honor.  Thank

8   you.

9          **MR. GROSS:**  There's one other issue, Your Honor.

10         **THE COURT:**  Okay.  Well, let's settle on September 15;

11   does that work?

12         **MR. FONDO:**  Go ahead, Your Honor.  I'll get back to

13   you.

14         **THE COURT:**  All right.  So subject to Mr. Fondo's

15   powering up, September 15th.

16         **MR. GROSS:**  Well, actually, I guess there's two.

17   First, I assume that Stellar will just file its cross-claim and

18   counterclaim, its answer of cross-claim and counterclaim within

19   the next few days, and then the rules will take over, you know,

20   with respect to that.

21         **THE COURT:**  Yes.

22         **MR. GROSS:**  Okay.  And the other one, there's a

23   footnote in the case management conference statement where

24   Ripple is acknowledging that too much money of Stellar's was

25   frozen and placed into the Court's registry.  So I just

1   wondered if we could have a time frame in which -- I think the

2   parties are discussing it right now, but if we could have a

3   time frame by which that should be resolved, and that something

4   should be presented to the Court so those funds can be

5   released.

6          **MR. FONDO:**  Your Honor, yeah.  No, the parties have

7   been trying to work it out.  The question is really over a

8   certain amount of expenses that were incurred by Mr. Jacobsen.

9   We just asked for verification, some evidence of what that

10  number was, because the number seems high.  We're very close, I

11  think.  It's just a matter of -- we all, I think, collectively

12  want to get the number correct so the Court has it correct, and

13  so we can't obviously agree to something, and no disrespect to

14  counsel, just based on a representation.  We just need some

15  kind of documentation showing that that is what the expense

16  was, and I think that's the only thing that's holding things

17  up.

18         **MR. RUGANI:**  And we're in the process of putting that

19  together so that we can all -- we've been working I think

20  collaboratively on getting this done.

21         **THE COURT:**  Great.

22         **MR. RUGANI:**  And we'll continue to do so.

23         **THE COURT:**  So submit an order.  If that, for some

24  unforeseen reason, becomes a issue, I want you to send me a

25  joint letter of no more than five pages that describes what the

1    problem is, and I'll just decide it.

2          **MR. FONDO:**  Thank you, Your Honor.  I don't anticipate

3    a problem.

4          **MR. RUGANI:**  Thank you, Your Honor.

5          **THE COURT:**  All right.  Is there anything else that we

6    ought to do?

7        All right.  Thank you.  And I will be seeing you again.

8          **ALL COUNSEL:**  Thank you, Your Honor.

9          **MR. FONDO:**  Your Honor, the 15th does work.

10         **THE COURT:**  Okay.

11               (Proceedings adjourned at 4:02 p.m.)

12                      ---oOo---

13

14

15

16

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    Tuesday, July 21, 2015

_____

Rhonda L. Aquilina, CSR No. 9956, RMR, CRR
Official Court Reporter