1   Jessica Nall (State Bar No. 215149)
    jnall@fbm.com
2   Kelly A. Woodruff (State Bar No. 160235)
    kwoodruff@fbm.com
3   Christopher C. Wheeler (State Bar No. 224872)
    cwheeler@fbm.com
4   Farella Braun + Martel LLP
    235 Montgomery Street, 17th Floor
5   San Francisco, CA  94104
    Telephone:  (415) 954-4400
6   Facsimile:  (415) 954-4480

7   Attorneys for Plaintiff
    BITSTAMP LTD.

8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                       SAN FRANCISCO DIVISION
11

12
    BITSTAMP LTD., a foreign company,        CASE NO. 3:15-cv-1503 WHO
13
                        Plaintiff,           **BITSTAMP'S REPLY IN SUPPORT OF**
14                                           **MOTION FOR ATTORNEYS' FEES AND**
               vs.                           **COSTS**
15
    RIPPLE LABS INC., a California
16  Corporation, JACOB STEPHENSON, an
    individual, NANCY HARRIS, an             Date:       August 12, 2015
17  individual, JED MCCALEB, an individual,  Time:       2:00 p.m.
    and DOES 1 Through 10, Inclusive,        Judge:      Hon. William H. Orrick
18                                           Courtroom:  2, 17th Floor
                        Defendants.
19

20  RIPPLE LABS INC., a California
    Corporation,
21
                        Cross-Plaintiff,
22
          vs.
23
    JED MCCALEB, an individual,  JACOB
24  STEPHENSON, an individual, and DOES
    1 Through 10, Inclusive,
25
                        Cross-Defendants.
26

27

28

FARELLA BRAUN + MARTEL LLP
235 MONTGOMERY STREET, 17TH FLOOR
SAN FRANCISCO, CA  94104
(415)954-4400

BITSTAMP'S REPLY I/S/O MOT. FOR FEES AND
COSTS / Case No. 3:15-cv-1503 WHO

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ...................................................................................................... 1

        A.      Bitstamp Is Disinterested And Acted In Good Faith. ............................ 1

                1.      The Law Of The Case Doctrine Precludes McCaleb/Stellar From
                        Rearguing Issues That The Court Already Has Decided Against
                        Them ............................................................................................ 2

                2.      To The Extent McCaleb/Stellar Make Arguments That Were Not
                        Previously Expressly Rejected By The Court, Such Arguments
                        Were Impliedly Rejected And, In Any Event, Are Meritless. ............ 4

        B.      Bitstamp's Fees And Costs Are Reasonable Under The Circumstances Of
                This Extremely Complicated And Highly-Charged Interpleader Action. ............. 9

                1.      The Rates Charged By Bitstamp's Attorneys Are Appropriate And
                        Consistent With The Prevailing Market Rate In San Francisco For
                        Comparable Attorneys. ................................................................. 9

                2.      The Total Amount Of Fees And Costs Bitstamp Incurred Is
                        Reasonable Under The Circumstances Of This Highly Complex
                        Case ........................................................................................... 10

                3.      Bitstamp Has Made A Proper And Sufficient Showing To Support
                        The Requested Award Of Attorneys' Fees And Costs, Which Are
                        Reasonable And Fully Compensable. ........................................... 13

        C.      Bitstamp Is Also Entitled To Recover Its Attorneys' Fees And Costs In
                Connection With This Motion. ........................................................... 14

III.    CONCLUSION ............................................................................................... 15

## **TABLE OF AUTHORITIES**

### **FEDERAL COURT CASES**

**Page**

*A/S Krediit Pank v. Chase Manhattan Bank,*
  303 F. 2d 648 (2d Cir. 1962) ................................................. 13

*Allianz Life Ins. v. Agorio,*
  852 F. Supp. 2d 1163 (N.D. Cal. 2012) ............................... 11

*Anchor Brewing Co. v. Peix,*
  No. C-06-7914 MMC, 2007 WL 657699 (N.D. Cal. Feb. 28, 2007) .......................... 4, 5, 6, 7

*Banas v. Volcano Corp.,*
  47 F. Supp. 3d 957 (N.D. Cal. 2014) .................................. 10

*Bandura v. Fid. & Guar. Life Ins. Co.,*
  443 F. Supp. 829 (W.D. Pa. 1978) ........................................ 4

*California Pipe Recycling, Inc. v. Sw. Holdings, Inc.,*
  No. CV F 08-0236LJOSMS, 2009 WL 424325 (E.D. Cal. Feb. 19, 2009) ......................... 5, 7

*Camacho v. Bridgeport Fin., Inc.,*
  523 F.3d 973 (9th Cir. 2008) ................................................. 9

*Connecticut Gen. Life Ins. Co. v. Rapoza,*
  No. C06-7427 TEH, 2007 WL 2141266 (N.D. Cal. July 25, 2007) ...................................... 11

*Equitable Life Assurance Soc. U.S. v. DeGeorge,*
  No. CV 05-5903 DSF, 2006 WL 4704613 (C.D. Cal. Aug. 28, 2006) ................................. 12

*Fid. Nat'l Title Co. v. U.S. Small Bus. Admin.,*
  No. 2:13-CV-02030-KJM-AC, 2014 WL 6390275 (E.D. Cal. Nov. 13, 2014) .............. *passim*

*Fischer v. SJB-P.D. Inc.,*
  214 F.3d 1115 (9th Cir. 2000) ............................................. 13

*Harris v. Maricopa Cty. Super. Ct.,*
  631 F.3d 963 (9th Cir. 2011) ............................................... 14

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) ........................................................... 13

*In re Benny,*
  81 F.3d 91 (9th Cir. 1996) .................................................... 3

*Ingle v. Circuit City,*
  408 F.3d 592 (9th Cir. 2005) ............................................. 2, 3

*Ingram v. Oroudjian,*
  647 F.3d 925 (9th Cir. 2011) ............................................. 10

*Landmark Chems., SA. v. Merrill Lynch & Co.,*
  234 F.R.D. 62 (S.D.N.Y. 2005) .......................................... 13

*Leslie Salt Co. v. United States,*
    55 F.3d 1388 (9th Cir. 1995), *cert. denied*, 516 U.S. 955 (1995) ............................................. 4

*Lindoerfer v. J. C. Penney Co.,*
    244 F. Supp. 175 (N.D. Ohio 1965) ........................................................................................ 13

*Michelman v. Lincoln Nat'l Life Ins. Co.,*
    685 F.3d 887 (9th Cir. 2012) .................................................................................................. 1

*Oregon Mut. Ins. Co. v. Homeward Residential, Inc.,*
    No. 13-02359-JST (N.D. Cal. Nov. 18, 2013) ...................................................................... 11

*Pit River Home & Agric. Coop. Ass'n v. United States,*
    30 F.3d 1088 (9th Cir. 1994) ............................................................................................ 2, 3

*Prudential Ins. Co. of Am. v. Pryor,*
    336 F. App'x 232 (3d Cir. 2009) ............................................................................................ 4

*Reliastar Life Ins. Co. v. Moore,*
    No. 1:CV-08-1942, 2010 WL 773457 (M.D. Pa. Mar. 1, 2010) ...................................... 4, 11

*Schirmer Stevedoring Co., Ltd. v. Seaboard Stevedoring Corp.,*
    306 F.2d 188 (9th Cir. 1962) ......................................................................... 1, 6, 12, 14

*Simmons First Nat'l Bank v. Lehman,*
    No. 13-CV-02876-DMR, 2015 WL 1737879 (N.D. Cal. Apr. 10, 2015) ............................... 2

*State Farm Life Ins. Co. v. Cai,*
    No. 09-CV-00396-LHK, 2013 WL 4782383 (N.D. Cal. Sept. 6, 2013) ................................ 11

*Sun Life Assur. Co. of Canada v. Chan's Estate,*
    No. 03-2205-SC, 2003 WL 22227881 (N.D. Cal. Sept. 22, 2003) ....................................... 11

*Sun Life Assur. Co. of Canada, U.S. v. Chirolo,*
    No. C 08-03465 WHA, 2009 WL 113009 (N.D. Cal. Jan. 16, 2009) ............................... 6, 12

*The Prudential Ins. Co. of Am. v. Richmond,*
    No. CIV.A.06 525 PGS, 2007 WL 1959252 (D.N.J. July 2, 2007) ........................................ 4

*Trs. of the Dirs. Guild of America-Producer Pension Benefits v. Tise,*
    234 F.3d 415 (9th Cir. 2000) .......................................................................................... 11, 14

*Wells Fargo Bank, Nat'l Ass'n v. PACCAR Fin. Corp.,*
    No. 108-cv-00904 AWI-SMS, 2009 WL 211386 (E.D. Cal. Jan. 28, 2009) ..................... 1, 12

*Winterrowd v. Am. Gen. Annuity Ins. Co.,*
    556 F.3d 815 (9th Cir. 2009) ................................................................................................ 13

**OTHER AUTHORITIES**

18B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d
    § 4478, at 637–38 (2002) ...................................................................................................... 2

1    **I.      INTRODUCTION**

2           Proving just how complex this interpleader action really is, the McCaleb Defendants and

3    Stellar together filed 35 pages of opposition briefing, along with two new declarations.  ECF Nos.

4    98, 105.  In their voluminous briefing, however, McCaleb/Stellar primarily reargue issues that

5    have already conclusively—and *preclusively*—been decided against them.  McCaleb/Stellar have

6    offered no plausible reason why Bitstamp's Motion for Attorneys' Fees and Costs ("Motion")

7    should not be granted.  Indeed, McCaleb/Stellar do not (and cannot) refute (1) that this matter was

8    dramatically more complex than the standard insurance company interpleader cases upon which

9    they exclusively rely, (2) that Bitstamp's attorneys' fees were driven up by McCaleb/Stellar's

10   own initial refusal to stipulate to Bitstamp's depositing the Disputed Funds with the Court or to

11   Bitstamp's discharge, or (3) that Farella Braun + Martel's fees were reasonable given the nature

12   and circumstances of this unusual case.  Under these circumstances—and without any legitimate

13   rebuttal by McCaleb/Stellar—Bitstamp is entitled to recover its attorneys' fees and costs in full.

14   **II.     ARGUMENT**

15          **A.      Bitstamp Is Disinterested And Acted In Good Faith.**

16          The *default* rule in an interpleader action is that the stakeholder can recover its reasonable

17   attorneys' fees and costs in bringing the action.  *Schirmer Stevedoring Co., Ltd. v. Seaboard*

18   *Stevedoring Corp.*, 306 F.2d 188, 194 (9th Cir. 1962) ("[T]he *proper rule*, in an action in the

19   nature of interpleader, is that the plaintiff *should be* awarded attorney fees for the services of his

20   attorneys in interpleading.") (emphasis added); *Michelman v. Lincoln Nat'l Life Ins. Co.*, 685

21   F.3d 887, 898 (9th Cir. 2012) ("judgment in interpleader *ordinarily* entitles the stakeholder to an

22   award of attorneys' fees from the interpleaded funds for work performed filing the action in

23   interpleader") (emphasis added); *accord Wells Fargo Bank, Nat'l Ass'n v. PACCAR Fin. Corp.*,

24   No. 108-cv-00904 AWI-SMS, 2009 WL 211386, at *2 (E.D. Cal. Jan. 28, 2009) ("Courts

25   *routinely* grant such awards absent a showing of bad faith.") (emphasis added).  Thus courts, as a

26   matter of course, allow a disinterested stakeholder, who "reasonably fears that there may be

27   multiple parties with colorable adverse claims to the stake," to recover its fees and costs.

28   *Michelman*, 685 F.3d at 896.

1      McCaleb/Stellar's primary objection to Bitstamp's fee motion is their claim—again—that

2  Bitstamp is not disinterested and was not acting in good faith.  Even if Bitstamp were not

3  disinterested (which it was, and is), by filing the interpleader, Bitstamp was refusing to do exactly

4  what McCaleb/Stellar are claiming, which is to take sides in the underlying dispute.  In any event,

5  this Court has already considered and rejected each of McCaleb/Stellar's arguments, finding that

6  Bitstamp is disinterested and properly brought the interpleader action and discharging Bitstamp

7  from the case.  Order (ECF No. 63) at 4.  McCaleb/Stellar have not offered any reason why the

8  Court should depart from its prior ruling.  It should not.

9              **1.      The Law Of The Case Doctrine Precludes McCaleb/Stellar From
10                        Rearguing Issues That The Court Already Has Decided Against Them.**

11     Under the law of the case doctrine, the Court is precluded from reexamining issues that

12  the Court earlier decided either "explicitly or by necessary implication."  *Simmons First Nat'l*

13  *Bank v. Lehman*, No. 13-CV-02876-DMR, 2015 WL 1737879, at *3 (N.D. Cal. Apr. 10, 2015)

14  (citations omitted).  This doctrine promotes decisional finality, maintains consistency, and

15  prevents reargument of issues already decided.  *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir.

16  2005) (citing 18B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d §

17  4478, at 637–38 (2002)); *Pit River Home & Agric. Coop. Ass'n v. United States,* 30 F.3d 1088,

18  1097 (9th Cir. 1994) (citation omitted).

19     Here, McCaleb/Stellar merely reargue their claims that Bitstamp is not disinterested and

20  acted improperly, which claims were previously rejected and are now law of the case.  For

21  example, Stellar claims: Bitstamp improperly froze and interpleaded the Disputed Funds (Stellar

22  Opp'n (ECF No. 105) at 5), colluded with Ripple (*id.* at 6), had no reasonable basis to initiate the

23  interpleader action because Ripple's claim lacked merit (*id.* at 6-8), and created the underlying

24  controversy because one of its attorneys had represented Ripple (*id.* at 9-10).  Likewise, the

25  McCaleb Defendants claim that Bitstamp acted in bad faith (McCaleb Def. Opp'n (ECF No. 98)

26  at 8), improperly aligned itself with Ripple (*id.*), and impeded proper adjudication of the

27  interpleader action (*id.* at 9).  McCaleb/Stellar already thoroughly litigated each of these claims in

28  connection with Bitstamp's Motion for Discharge.  *See, e.g.*, McCaleb/Stellar Joint Resp. (ECF

1  No. 52) at 8 (interpleader was improper), 12 (Bitstamp "is not a good faith stakeholder"), 13

2  (Bitstamp is not a disinterested stakeholder, but rather "colluded with Ripple in filing this

3  interpleader action"), 14-16 (Bitstamp's attorney Frost also represented Ripple), 17 ("Ripple and

4  Bitstamp are significantly intertwined" and "Bitstamp is not a disinterested stakeholder").  And

5  this Court rejected every one of them in its discharge order.  ECF No. 63 at 4 ("the requirements

6  for interpleader have been met" and "there is no real question that there are competing claims to

7  the disputed funds"), 5 ("a plaintiff in an interpleader action is not required to adjudicate the

8  merits of adverse claims; the *presence* of adverse claims is sufficient" and "Bitstamp was not

9  required to determine whether Ripple Lab's claim to the disputed funds was colorable"), 5

10 (rejecting argument that Bitstamp is not a good faith stakeholder "because its interests coincide

11 with Ripple Lab's interests" and because one of its attorneys represented Ripple at some point).

12       While the law of the case doctrine is discretionary, the Court's discretion is not unfettered.

13 A prior decision on a factual or legal issue *must* be followed in all subsequent proceedings in the

14 same court unless (1) the court is presented with substantially new evidence, (2) there has been a

15 change in controlling authority, or (3) the prior decision was clearly erroneous and would work a

16 manifest injustice.  *In re Benny,* 81 F.3d 91, 94 (9th Cir. 1996); *Pit River,* 30 F.3d at 1096–97.

17 McCaleb/Stellar have made no argument that any of these exceptions apply, nor have they

18 articulated any other reason why this Court should depart from its earlier ruling.  It should not.

19       The law of the case establishes that Bitstamp is a disinterested stakeholder[1] that properly

20 instituted this interpleader action out of a good faith fear of competing claims, and that

21 subsequently obtained a discharge of all related liability.  Accordingly, Bitstamp should be

22 awarded its attorneys' fees and costs as requested.  *Fid. Nat'l Title Co. v. U.S. Small Bus. Admin.*,

23 No. 2:13-CV-02030-KJM-AC, 2014 WL 6390275, at *4 (E.D. Cal. Nov. 13, 2014).

24

25 [1] Stellar's alternative argument—that the Court should delay ruling on Bitstamp's Motion if it
   cannot *yet* determine if Bitstamp is disinterested— is frivolous.  ECF No. 105 at 11.  This Court
26 already has expressly ruled that *Bitstamp is a disinterested stakeholder.* ECF No. 63 at 5
   (expressly rejecting McCaleb/Stellar's contention that Bitstamp was not disinterested and was not
27 acting in good faith).  That ruling is law of the case, and Stellar is precluded from endlessly
   relitigating the same claims.  *Ingle,* 408 F.3d at 594.
28

**2.     To The Extent McCaleb/Stellar Make Arguments That Were Not Previously *Expressly* Rejected By The Court, Such Arguments Were Impliedly Rejected And, In Any Event, Are Meritless.**

Notwithstanding this Court's prior binding conclusion that Bitstamp is a disinterested stakeholder that acted in good faith, McCaleb/Stellar attempt to sidestep this law of the case and argue that Bitstamp is not entitled to recover its attorneys' fees for two interrelated reasons: (1) that Bitstamp's actions were not helpful because it named the wrong parties as claimants; and (2) that Bitstamp somehow caused the underlying controversy, giving rise to potential counterclaims by Stellar.  ECF No. 105 at 5-10; ECF No. 98 at 8-10.  These arguments, too, were resolved by "necessary implication" in the court's discharge order and therefore are also precluded by the law of the case. *Leslie Salt Co. v. United States,* 55 F.3d 1388, 1393 (9th Cir. 1995), *cert. denied,* 516 U.S. 955 (1995).  In any event, the arguments lack merit.

It is extremely rare for a court to grant a stakeholder a discharge but deny its request for attorneys' fees.  Indeed, in the only two cases from this Circuit cited by McCaleb/Stellar where a discharge was granted, but fees were denied, the stakeholder was directly responsible for creating the dispute over the stake or contributed to the litigation costs in the action.[2]  In *Anchor Brewing Co. v. Peix*, No. C-06-7914 MMC, 2007 WL 657699, at *1-2 (N.D. Cal. Feb. 28, 2007), Anchor owed Peix $115,000 from settlement of an employment dispute.  The settlement agreement was

---

[2] *Reliastar Life Ins. Co. v. Moore*, No. 1:CV-08-1942, 2010 WL 773457, at *4 (M.D. Pa. Mar. 1, 2010), cited by Stellar for the proposition that Bitstamp should be denied any fees because of its role in creating the controversy (ECF No. 105 at 9), did not deny fees because of any stakeholder involvement.  Rather, in Pennsylvania courts, fees are not awarded to insurance companies that decide between competing claims in the ordinary course of business.  *Id.*  Stellar's citation to *The Prudential Ins. Co. of Am. v. Richmond*, No. CIV.A.06 525 PGS, 2007 WL 1959252, at *4 (D.N.J. July 2, 2007) *aff'd sub nom. Prudential Ins. Co. of Am. v. Pryor*, 336 F. App'x 232 (3d Cir. 2009), and *Bandura v. Fid. & Guar. Life Ins. Co.*, 443 F. Supp. 829 (W.D. Pa. 1978), is similarly misguided.  Neither has any discussion of whether the plaintiff obtained discharge.  Indeed, in *Bandura*, the insurance company did not bring an interpleader action, but asserted interpleader in defense to an action brought against it.  Likewise, the McCaleb Defendants' citation to *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005) (ECF No. 98 at 10:3-21) is also inapposite.  *Bryant* involved an interpleader action brought by a former trustee of an ERISA pension plan, but the Court analyzed and denied First Trust's request for attorneys' fees under the ERISA statute.  *Id.* at 850-51 ("Although these arguments raise a number of interesting and complex issues, we decline to address them today, as this matter is easily resolved under ERISA's attorney's fee provision . . . .") (footnote omitted).

---

1    silent as to whether Anchor was required to withhold employment taxes from the settlement

2    proceeds, and a dispute arose between the parties as to whether it did.  Anchor filed an action in

3    interpleader and deposited the total amount of the settlement proceeds with the court.  *Id.*

4    Because Anchor had disclaimed any interest in the funds, the court found it entitled to discharge.

5    *Id.*  Nevertheless, the court denied the request for fees because, even assuming Anchor had a good

6    faith doubt about whether it was required to withhold employment taxes, Anchor "had no basis to

7    interplead the entire settlement amount, but only the relatively small portion thereof it believed

8    was reasonably subject to withholding."  *Id.* at *2.  The court further concluded that Anchor may

9    have been responsible for causing the dispute by failing to raise the issue of tax withholding until

10   after the settlement agreement had been executed.  *Id.*

11        Similarly, in *California Pipe Recycling, Inc. v. Sw. Holdings, Inc.*, No. CV F 08-

12   0236LJOSMS, 2009 WL 424325 (E.D. Cal. Feb. 19, 2009), Cal Pipe purchased equipment from

13   parties to which other parties claimed superior title.  It thus interpleaded the promissory note

14   payments due for the purchase.  *Id.* at *3.  Though all potential claimants resided in Texas, Cal

15   Pipe filed its interpleader action in California court *and* fought numerous motions to dismiss for

16   lack of jurisdiction.  *Id.* at *7.  The court found interpleader proper and ordered discharge (*id.* at

17   *5), but denied Cal Pipe's request for fees (*id.* at *7).  The court based its denial on Cal Pipe's

18   submission of a one-page invoice, which provided no information about the number of hours

19   worked or work performed.  *Id.* at *6.  Although Cal Pipe tried to rectify the problem on reply,

20   the itemized billings did not distinguish between work related to the interpleader and work related

21   to independent claims asserted against Cal Pipe.  *Id.*  Finally, the court noted that, had Cal Pipe

22   filed its action in Texas, it could have litigated the interpleader more economically.  *Id.* at *7.

23        In stark contrast to *Anchor* and *California Pipe*, here, Bitstamp played no role in creating

24   the dispute between the parties and did not engage in any wrongdoing in connection with the

25   litigation.  *First*, McCaleb/Stellar do not claim that Bitstamp somehow *caused* the controversy

26   that arose over the Disputed Funds, which they concede arose from an alleged breach of contract

27   between Ripple and McCaleb.  *See* ECF No.105 at 2:4-25; ECF No.98 at 4:11-24; *see also* Decl.

28   of Jessica Nall ("ECF No.78") Ex C at 7:7-10, ECF No. 78 (Rugani: "what we think is really at

the heart of the case that's before you, is the dispute between Ripple, on the one hand, and Mr.

McCaleb and Mr. Stephenson on the other hand."). Unlike the stakeholder in *Anchor*, which was

a party to the disputed settlement agreement and which failed to raise the issue of tax withholding

until after the agreement had been executed, thereby *creating* the dispute, Bitstamp had no

involvement with the contract allegedly breached by McCaleb, the sale of XRP or STR, or the

transfer of currency between accounts. Bitstamp first became involved *after* the controversy had

arisen, when it first received notice of the potentially conflicting claims to the Disputed Funds.

Reply Decl. of Jean-Baptiste Graftieaux (ECF No. 57) ¶¶ 9-15. Ultimately, McCaleb/Stellar

claim that Bitstamp acted in bad faith and that the interpleader action itself was improper and

should be dismissed, claims that the Court has already thoroughly considered—and rejected—in

discharging Bitstamp. ECF No.63 at 4:6-5:24. The discharge has the effect of judgment and is

res judicata. *See Sun Life Assur. Co. of Canada, U.S. v. Chirolo*, No. C 08-03465 WHA, 2009

WL 113009, at *6 (N.D. Cal. Jan. 16, 2009).[3]

Moreover, even if Stellar did have *independent* claims against Bitstamp (which it does

not), Bitstamp still would be entitled to its attorneys' fees incurred in prosecuting the interpleader

and obtaining a discharge. *Schirmer*, 306 F.2d at 194 (declining to award stakeholder fees

incurred in connection with the stakeholder's contest with the claimant, but awarding stakeholder

fees incurred in filing the interpleader complaint and obtaining discharge). Here, all the fees and

costs claimed by Bitstamp were directly related to the interpleader; Bitstamp has not incurred any

---

[3] *Compare Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004 (9th Cir. 2012). In *Lee*, an insurance company's agent was negligent in helping life insurance beneficiaries execute various change orders to change the owner and named beneficiaries. *Id.* at 1007. When insured died several years later, the beneficiaries learned that the change was invalid and that they had no interest in the proceeds. *Id.*. West Coast interpleaded the insurance proceeds and obtained a discharge. The court held, however, that the discharge did not extend to the beneficiaries' *independent tort claims* not arising from the fund or West Coast's interpleader. *Id.* at 1009. The court noted that the counterclaimants did not allege that West Coast acted in bad faith or that the interpleader action was improper, which claims would have been precluded by the discharge. Rather, they alleged that West Coast's negligence in handling the change orders caused the subsequent controversy over the insurance proceeds and thus were independent. *Id.* at 1012. Here, in contrast, McCaleb/Stellar's claims are based solely on Bitstamp's alleged bad faith in freezing the accounts and interpleading the funds. These claims are not independent, and *res judicata* applies.

1   attorneys' fees in prosecuting its own claims or defending claims against it unrelated to the

2   Disputed Funds.  Accordingly, there is no basis for the Court to deny Bitstamp its fees.

3        *Second*, Bitstamp engaged in no improper litigation conduct at all, let alone the type of

4   conduct the *Anchor* and *California Pipe* courts found to preclude a fee award.  It is undisputed

5   that when it filed this action, Bitstamp was aware of the following facts:  (1) Ripple asserted its

6   "sole interest" in the Disputed Funds, demanded their immediate transfer to Ripple and threatened

7   Bitstamp with litigation if did not comply (ECF No. 63 at 4:6-5:24); (2) Stephenson was the

8   owner of at least one of the accounts and had a claim to the Disputed Funds (*id.* at n.4); and (3)

9   Ripple informed Bitstamp that McCaleb was potentially "using Bitstamp to secretly funnel"

10  proceeds (ECF No. 57 ¶ 11), which triggered Bitstamp's AML/anti-fraud procedures, particularly

11  in light of the criminal investigation of McCaleb (*id.* ¶¶ 4-7, 10-11).  Based on all these facts,

12  Bitstamp had a good faith belief that there were actual or potential adverse claims to the Disputed

13  Funds and appropriately instituted the interpleader action.  ECF No. 63 at 5:23-24.

14       Bitstamp pursued the interpleader action as quickly and efficiently as possible under the

15  circumstances and did not engage in *any* litigation misconduct.  Despite being a UK company,

16  Bitstamp brought its action in San Francisco, California, where two of the four known claimants

17  or potential claimants resided.  *Compare California Pipe*, 2009 WL 424325 at *7.  Once all

18  claimants to the Disputed Funds became known, it promptly sought the parties' agreement to a

19  discharge (Supp. Decl. of Jessica Nall ("Supp. Nall Decl."), ¶ 11), and when that effort failed, it

20  promptly moved for discharge and sought permission to distribute the Disputed Funds to Stellar.

21  ECF No. 20.  Bitstamp did not bring any other motions on its own behalf, and did not oppose the

22  parties' competing motions for a TRO, to dissolve the TRO, to dismiss the interpleader, or to

23  intervene.  Bitstamp remained neutral throughout the proceedings, and successfully obtained a

24  discharge of all liability relating to the underlying dispute.  ECF No. 63 at 5.

25       McCaleb/Stellar's contention that Bitstamp "refused" to join Stellar as a defendant is

26  inaccurate.  Stellar did not even surface as a potential claimant until May 11—more than one

27  month *after* Bitstamp filed its interpleader action.  Supp. Nall Decl. ¶¶ 7-9.[4]  When Stellar finally

28  ───────────────
    [4] Stellar claims that Joyce Kim informed Bitstamp of Stellar's ownership "within one day after

1    did come forward, it demanded that Bitstamp release the Disputed Funds to it, notwithstanding

2    the pending action, and repeatedly threatened Bitstamp with a lawsuit. *Id.* ¶ 9. Stellar did not ask

3    to be joined in the suit; to the contrary, it wanted the action immediately dismissed. *Id.* It was

4    not until after Ripple obtained a TRO against Bitstamp to prevent it from disbursing any of the

5    Disputed Funds pending resolution of the litigation that Stellar asked Bitstamp to stipulate to

6    Stellar's intervention on May 18 at 10:38 p.m. *Id.* ¶ 12. Bitstamp did not "refuse" to stipulate;

7    rather, it took a brief period of time to consider Stellar's request. Without waiting for a response,

8    on May 22, Stellar filed its Motion to Intervene (ECF No. 39), which Bitstamp did not oppose.[5]

9        Similarly, McCaleb/Stellar's contention that Bitstamp was obligated to immediately

10    dismiss McCaleb when he disavowed any claim to the Disputed Funds (ECF No.98 at 9:20-26) is

11    disingenuous. Notwithstanding that the complaint was filed on April 1 and that Bitstamp filed its

12    Motion for Discharge on May 13, McCaleb did not disavow any interest in the Disputed Funds

13    until May 28 in connection with McCaleb/Stellar's opposition to discharge. ECF No. 52-1.

14    Further, Stephenson also disavowed any claim to the Disputed Funds on May 11 (ECF No.57, Ex.

15    F), but quickly appeared to retract (McCaleb Defs.' Mot. to Dissolve at 2:, ECF No. 31). In

16    short, it appears that up until very recently, McCaleb/Stellar themselves did not know who was a

17    claimant or for how much. Supp. Nall Decl. ¶¶ 16-19, Exs. G-J. Indeed, it took the parties weeks

18    and dozens of email exchanges just to sort out the complex transactions, arrange the ledger

19    adjustments, negotiate the stipulation for depositing the U.S. dollars and XRP into the Court, and

20

21    Bitstamp filing its Complaint for Interpleader." ECF No. 105 at 3:4-7; Kim Decl. ¶ 3. Ms. Kim
also testifies under oath that she notified an outside director of Bitstamp, who is one of

22    McCaleb's venture capital partners (ECF No. 63 at 5), that her personal account was frozen and
that she never received a response. Bitstamp objects to the Kim Declaration as inadmissible

23    hearsay. Fed. R. Evid. 802. In any event, Ms. Kim's statements are not true. First, the first time
Stellar notified Bitstamp with any degree of clarity that it "owned" one of the frozen accounts and

24    was a claimant to the Disputed Funds was on May 11. Supp. Nall Decl. ¶¶ 7, 9, Ex. D; ECF No.
57 ¶17 & Ex. G. Second, contrary to Ms. Kim's hearsay declaration, Mr. Morehead responded to

25    Ms. Kim's emails about her account immediately, and the account was immediately unfrozen.
Supp. Nall Decl. ¶ 4-5, Exs. A, B.

26    [5] Bitstamp filed a response to Stellar's intervention motion only after Stellar substituted a

27    completely different "Exhibit A" to its motion one week before the hearing. Bitstamp did not
oppose Stellar's intervention, but only the filing of counterclaims against it based on the

28    preclusive effect of the Discharge Order. ECF No. 94.

1   actually deposit the funds.  *Id.*;[6] Bitstamp should not be denied its reasonable attorneys' fees for

2   its failure to determine all the proper claimants when the parties themselves have failed to

3   elucidate the transaction until very recently.  *Id.*

### B.   Bitstamp's Fees And Costs Are Reasonable Under The Circumstances Of This Extremely Complicated And Highly-Charged Interpleader Action.

McCaleb/Stellar claim that Bitstamp's attorneys' fees and costs are unreasonable, and that

the Court should award Bitstamp $20,000 at most.  ECF No.98 at 22:7-8.  McCaleb/Stellar's

arguments lack merit.  The hourly rates charged by Bitstamp's attorneys were reasonable and in

line with prevailing norms in the community, and the number of hours spent also was reasonable

considering the complexity of the transactions and the aggressive litigation tactics of

McCaleb/Stellar.  Under the circumstances, Bitstamp's request for $182,948 in attorneys' fees

and costs is a modest portion (9%) of the approximately $2 million in U.S. Dollars and XRP that

have been deposited into the Court.  Bitstamp's Motion should be granted in full.

### 1.   The Rates Charged By Bitstamp's Attorneys Are Appropriate And Consistent With The Prevailing Market Rate In San Francisco For Comparable Attorneys.

McCaleb/Stellar asserts that they do not challenge the reasonableness of Bitstamp's

attorneys' hourly rates *per se*, but then they go on to do precisely that.  ECF No.98 at 12:24-

13:28.  The uncontroverted evidence submitted by Bitstamp demonstrates that the rates charged

by its counsel were reasonable and well within the range of those charged by San Francisco

attorneys with comparable experience handling complex commercial litigation such as this.  ECF

No.78 ¶¶ 3-7 & Ex. A (report from Valeo Partners of rates charged in publicly-filed fee

applications for San Francisco attorneys); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980

(9th Cir. 2008) (affidavit of plaintiff's attorney regarding reasonableness of rate in the community

sufficient).  Moreover, this Court, having considered and observed the briefing, arguments and

---

[6] The negotiations about depositing the Disputed Funds with the Court should not have taken more than a month.  The time required was due to the sheer complexity of the transaction and the multiple parties involved.  Tellingly, McCaleb/Stellar have only now come forward with previously unknown information (provided by McCaleb and Stephenson) regarding the transactions that will significantly alter the prior arrangement.  Supp. Nall Decl. ¶¶ 18-19, Ex. J.

9

work of Bitstamp's counsel, is in the best position to consider and make determinations regarding the reasonableness of the fees sought and the underlying hourly rates. *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 965-66 (N.D. Cal. 2014) (hourly rates reasonable because in line with those of comparable Bay Area attorneys identified in Valeo report, and also "consistent with my own knowledge of prevailing market rates for this type of case."); *see also Ingram v. Oroudjian,* 647 F.3d 925, 928 (9th Cir. 2011) (district court may rely on its own familiarity with the legal market when assessing the reasonableness of hourly rates claimed in fee motion).

McCaleb/Stellar rely exclusively on insurance company interpleader cases to support their argument that Bitstamp's attorneys' hourly rates are excessive and the overall fees incurred "immodest." ECF No.98 at 11:7-12:10.  The cases cited by McCaleb/Stellar are inapposite. McCaleb/Stellar compare apples to oranges when they compare rates charged by attorneys who regularly represent insurance companies in routine interpleader actions to those charged by Bitstamp's attorneys, who have extensive experience handling complex commercial litigation in a highly-charged, high profile case involving international parties and cutting-edge technologies. Bitstamp's attorneys' hourly rates are reasonable and consistent with prevailing norms.

### 2.    The Total Amount Of Fees And Costs Bitstamp Incurred Is Reasonable Under The Circumstances Of This Highly Complex Case.

Courts in the Ninth Circuit recognize that the "'traditional test' for awarding fees in an interpleader action is 'less rigorous' than the test used in other contexts." *Fid. Nat'l*, 2014 WL 6390275, at *4 (citation omitted).  While courts can—and do—look to hourly rates charged and hours billed, in interpleader actions, courts often take a more holistic view to determine the amount of recoverable attorneys' fees and costs, considering factors such as the complexity of the case, the size of the fund, the stakeholder's good faith and diligence, and whether the stakeholder or any claimants "improperly protracted the proceedings." *Id.* (a fee of $11,500 on a stake of $135,000 (8.5%) appropriately reflected the lengthy procedural history and plaintiff's good faith efforts in the proceedings, with no discussion of hourly rate or hours spent).

None of the insurance cases cited by McCaleb/Stellar support the 90% reduction in fees and costs McCaleb/Stellar advocates.  *See* ECF No.98 at 11:7-12:10 (citing cases), 22:7-8

(requesting fee of $20,000).  As an initial matter, as courts in this Circuit and elsewhere have

pointed out, it is part of the ordinary course of business for an insurance company to make

decisions about competing claims to insurance policy proceeds. *See Fid. Nat'l*, 2014 WL

6390275, at *4.[7]  If, however, claims cannot be resolved, interpleader should be a routine

procedure (indeed, the vast majority of interpleader cases are filed by insurance companies) and

the attorneys' fees incurred should be very modest indeed.  *Id.*  Thus, for example, in the cases

cited by the McCaleb Defendants (ECF No.98 at 11:7-12:10), the interpleader action was a quick

and routine procedure that required very little attorney involvement:

- *Sun Life Assur. Co. of Canada v. Chan's Estate*, No. 03-2205-SC, 2003 WL 22227881, at *3 (N.D. Cal. Sept. 22, 2003):  policy proceeds were approximately $306,000; claimant did not oppose discharge *or* motion for attorneys' fees, but requested a reduction in fees from the $18,000 request to $12,000.  The court awarded fees of $14,000 (4.6%).

- *Oregon Mut. Ins. Co. v. Homeward Residential, Inc.*, No. 13-02359-JST (N.D. Cal. Nov. 18, 2013), ECF No. 81 at 5:[8]  policy proceeds were $115,500; no defendant/claimant opposed the motion for discharge and attorneys' fees; court granted full requested amount of fees of $7,292 (6.3%).

- *State Farm Life Ins. Co. v. Cai*, No. 09-CV-00396-LHK, 2013 WL 4782383, at *2-3 (N.D. Cal. Sept. 6, 2013):  policy proceeds were approximately $304,000; no claimant opposed discharge; the court found $25,000 in requested fees to be excessive because insurance company twice filed motions for judgment arguing state law was applicable, and it found that many of the fees could have been avoided;[9] the court awarded $15,000 in fees (4.9%).

- *Connecticut Gen. Life Ins. Co. v. Rapoza*, No. C06-7427 TEH, 2007 WL 2141266, at *3 (N.D. Cal. July 25, 2007):  policy proceeds of approximately $300,000; one claimant

---

[7] Indeed, many courts outside the Ninth Circuit have denied attorneys' fees requests where the plaintiff-in-interpleader is an insurance company "because competing claims are part of the ordinary course of business for an insurance company and an interpleader action should not be utilized to transfer these ordinary business expenses to the claimants." *Allianz Life Ins. v. Agorio*, 852 F. Supp. 2d 1163, 1168 (N.D. Cal. 2012) (citations omitted); *see, e.g., Reliastar Life Ins. Co.*, *supra*, 2010 WL 773457, at *4 ("An award of attorney fees is not appropriate 'when a stakeholder has used the court to aid it in making a decision which is an ordinary one in the course of the stakeholder's business.'").  Although the Ninth Circuit has not categorically barred the recovery of attorneys' fees where the stakeholder is an insurance company, it has noted that such awards are "typically modest." *See Fidelity Nat.*, 2014 WL 6390275, at *4 (citing *Trs. of the Dirs. Guild of America-Producer Pension Benefits v. Tise,* 234 F.3d 415, 427 (9th Cir. 2000).

[8] Bitstamp was unable to locate this case on Westlaw, but downloaded the Order from PACER.

[9] The court also noted issues concerning the attorney's quality of work.  *See, id.* at n.1.

---

1  moved for summary judgment on his claim, *less attorneys' fees and costs* for the
2  stakeholder (in other words, the insurance company itself neither moved for discharge or
   judgment, nor for fees); court granted full requested amount of $7,235 (2.4%).

3       These cases do not stand for the proposition that an interpleader plaintiff should recover,
4  at most, 4-5% of the disputed funds.  Rather, they stand for the unremarkable proposition that the
5  interpleader plaintiff should only recover those fees and costs reasonably and necessarily incurred
6  in bringing the interpleader action, procuring service on all parties, preparing any necessary
7  accountings of the amount of funds to be deposited, depositing the disputed funds with the court,
8  and securing a discharge, which generally will be a small amount in uncontested cases.  *See*
9  *Schirmer*, 306 F.2d at 194; *but see Wells Fargo*, 2009 WL 211386, at *1 (awarding fees and costs
10 of $5,575.55 out of a fund of $6,371.39, or 87.5% for an uncontested interpleader action);
11 *Chirolo*, 2009 WL 113009, at *4 (granting a request for $11,776 in fees in an action involving an
12 annuity contract that had a value of $18,500 when the complaint was filed, but limited to 50% of
13 the value of the annuity when it was liquidated as the court ordered).

14      In contrast, in this case—where Bitstamp is not in the business of resolving competing
15 claims to funds, the underlying transactions were extremely complex, the interpleader action was
16 far from routine, and McCaleb/Stellar "improperly protracted the proceedings" (*Fid. Nat'l*, 2014
17 WL 6390275, at *4)[10]—the Court should award Bitstamp the full amount of its requested fees and
18 costs, particularly in light of the claimants' refusal to stipulate to discharge Bitstamp and, instead,
19 extensively protracting the litigation and driving up costs.  *See Equitable Life Assurance Soc. U.S.*
20 *v. DeGeorge*, No. CV 05-5903 DSF, 2006 WL 4704613, at *3-4 (C.D. Cal. Aug. 28, 2006):

21          Considering the nature of this action, and the nature and types of papers
22          filed since its inception, it is clear that counsel for Plaintiffs-in-
            Interpleader were required to review all documents filed in the action,

23 _____
[10] Here, McCaleb/Stellar unnecessarily and unreasonable protracted the proceedings and drove up
24 Bitstamp's legal fees by, among other things:  resisting the interpleader itself and instead
   demanding that it be dismissed and the funds be given to Stellar, "or else" they would sue
25 Bitstamp; initially opposing the effort to have the Disputed Funds deposited with the Court; filing
   a motion to dismiss the interpleader action that was not well-taken and which was not withdrawn
26 until almost one month *after* the Court ordered Bitstamp discharged; and protracting the
   negotiations over and the process of depositing the Disputed Funds with the court in part by
27 failing to provide necessary information until over a month later (just days ago).  Supp. Nall Decl.
28 ¶¶ 16-19, Exs. G-J.

even where they might not have appeared on their face to relate directly to the attempt to discharge themselves from liability. . . .  [Thus, a larger than normal fee award is] reasonable and proper in this extremely unusual interpleader action, … [particularly because] [m]uch of this expense was caused by the [claimants] themselves, and their filing of unusual, generally not well-taken, pleadings.

*See also A/S Krediit Pank v. Chase Manhattan Bank*, 303 F. 2d 648, 649 (2d Cir. 1962) (affirming fee award that "represent[ed], in no small measure, services of [stakeholder's] attorneys occasioned by [claimant's] unjustified resistance to the interpleader"); *see also Lindoerfer v. J. C. Penney Co.*, 244 F. Supp. 175, 177 (N.D. Ohio 1965) (awarding fees based on "extensive and difficult problems that intervened in this action between the filing of the motion for interpleader, and the allowance of the motion" where a claimant made "rather paranoid accusations that the [stakeholder] was helping [another claimant]"); *Landmark Chems., SA. v. Merrill Lynch & Co.*, 234 F.R.D. 62, 64 (S.D.N.Y. 2005) (awarding substantial fees where the stakeholder's "discharge motion was opposed and fully litigated" and a claimant "b[ore] some responsibility for the protracted nature of the proceedings").

### 3. Bitstamp Has Made A Proper And Sufficient Showing To Support The Requested Award Of Attorneys' Fees And Costs, Which Are Reasonable And Fully Compensable.

Although the party seeking fees bears the burden of establishing the reasonableness of the hours spent in the litigation and the rates charged (*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)), detailed time records are not required.  To the contrary, a fee applicant may establish his right to fees with evidence from counsel as to the services actually performed and the reasonable value of those services.  *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) (citations omitted).  In particular, "an attorney need not submit contemporaneous time records in order to recover attorney fees." *Id.*  Rather, "[t]estimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records." *Id.; see also Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (counsel need not submit detailed time records, but can meet his burden "by simply listing his hours and 'identifying the general subject matter of his time expenditures.'") (citations omitted).

1    Here, Bitstamp *did* submit its daily time records establishing the number of hours and the

2    tasks performed by each attorney each day.  Although the time entries are block-billed and

3    necessarily do not reveal extreme detail in order to protect the attorney-client privilege and

4    attorney work product, they are sufficient to establish the number of hours spent by each attorney

5    for the limited period of time for which Bitstamp is seeking fees.  This court is capable of

6    determining whether the total number of hours spent was reasonable in light of the complexity of

7    the underlying transactions leading to the interpleader action, the difficulty in ascertaining the

8    appropriate claimants, and McCaleb/Stellar's recalcitrance in resolving what should have been a

9    noncontroversial motion.  *Fid. Nat'l*, 2014 WL 6390275, at *5.[11]

10   **C.    Bitstamp Is Also Entitled To Recover Its Attorneys' Fees And Costs In
         Connection With This Motion.**

11

12   "[T]he availability of attorneys' fees for interpleader plaintiffs recognizes that by bringing

13   the action, the plaintiff benefits all parties by 'promoting early litigation on the ownership of the

14   fund, thus preventing dissipation.'"  *Tise*, 234 F.3d at 426 (citations omitted).  This protects the

15   plaintiff in interpleader from incurring fees "to guard himself against the harassment of multiple

16   litigation" concerning a dispute which is not of his own making.  *Schirmer*, 306 F.2d at 193.

17   To ensure that Bitstamp is made whole, Bitstamp is entitled to attorneys' fees and costs

18   incurred in researching, drafting, and filing this Motion.  *Harris v. Maricopa Cty. Super. Ct.*, 631

19   F.3d 963, 979 (9th Cir. 2011).  Although Bitstamp's entitlement to recover its attorneys' fees and

20   costs should have been noncontroversial, McCaleb/Stellar refused to stipulate to an allowance of

21   fees.  Supp. Nall Decl. ¶ 23.  Accordingly, Bitstamp's counsel was forced to spend additional

22   time researching the right to attorneys' fees in interpleader actions, researching the prevailing

23   market for San Francisco attorneys with comparable skill and experience as Farella attorneys, and

---

[11] The Court has discretion to award attorneys' fees payable from the Disputed Funds or allocate the fees amongst the claimants in its discretion.  *See Schirmer*, 306 F.2d at 195.  Because the litigation amongst the competing claimants is continuing, the Court may award Bitstamp its attorneys' fees and costs from the Disputed Funds now, but defer a decision on the proper allocation amongst the claimants until those disputes are fully resolved.  *See Fid. Nat'l*, 2014 WL 6390275, at *4 ("The court therefore defers its determination of the allocation of the fee award until resolution of the counterclaims.").

1  drafting the Motion and accompanying Declaration.  Driving up the fees even more, in response

2  to what was a straightforward 14-page Motion, Stellar and the McCaleb Defendants filed

3  opposition briefs totaling 35 pages, plus two new declarations.  ECF Nos. 98, 105.

4  McCaleb/Stellar reiterated arguments about Bitstamp's bad faith that the Court previously

5  rejected.  ECF No. 63.  As a result, Bitstamp's counsel was compelled to review the discharge

6  filings and research law of the case, collateral estoppel, and res judicata.  Declaration of Kelly A.

7  Woodruff ("Woodruff Decl.") ¶¶ 4-5.  In addition, McCaleb/Stellar made numerous specious

8  allegations and arguments, requiring Bitstamp's counsel to—*again*—review the record and gather

9  evidence establishing that Bitstamp is disinterested and has acted in good faith.  *Id.*  As just one

10 example, Stellar alleged that it "repeatedly requested that Bitstamp stipulate" to Stellar's

11 intervention but that "Bitstamp's counsel refused to agree."  ECF No. 105 at 3:16-19.  That

12 allegation is simply false.  Supp. Nall Decl. ¶ 12.  Because of McCaleb/Stellar's oversized briefs

13 and overstated arguments in opposition, Bitstamp's counsel was required to review the

14 oppositions, investigate the prior record and the correspondence between the parties, research and

15 draft this Reply and prepare the necessary declarations.  Woodruff Decl. ¶¶ 4-5.  Accordingly,

16 Bitstamp respectfully requests an additional $75,372.50 in fees and $510.48 in costs, for a total of

17 $75,882.98 incurred in preparing the Motion and this Reply.  Supp. Nall Decl. ¶¶ 25-30.

18 ### III.    CONCLUSION

19         Consistent with standard interpleader practice and the Court's Order, Bitstamp

20 respectfully requests that it be reimbursed for the $182,948.01 in reasonable attorneys' fees and

21 costs Bitstamp incurred in connection with this action pursuing, and obtaining, its release from

22 liability, plus an additional $75,882.98 in fees and costs incurred in filing this petition, for a total

23 award of **$258,830.99.**

24 Dated: July 30, 2015                              FARELLA BRAUN + MARTEL LLP

25
                                                   By: */s/ Jessica K. Nall*
26                                                     Jessica K. Nall

27                                                   Attorneys for Bitstamp Ltd.

28 31652\4987579.7