Jessica Nall (State Bar No. 215149)
jnall@fbm.com
Kelly A. Woodruff (State Bar No. 160235)
kwoodruff@fbm.com
Christopher C. Wheeler (State Bar No. 224872)
cwheeler@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480

Attorneys for Plaintiff
BITSTAMP LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BITSTAMP LTD., a foreign company,<br><br>                    Plaintiff,<br><br>       v.<br><br>RIPPLE LABS INC., a California corporation, JACOB STEPHENSON, an individual, NANCY HARRIS, an individual, JED MCCALEB, an individual, and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No.  15-cv-01503-WHO<br><br>**SUPPLEMENTAL DECLARATION OF JESSICA NALL IN SUPPORT OF BITSTAMP'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:          August 12, 2015<br>Time:          2:00 p.m.<br>Judge:        Hon. William H. Orrick<br>Courtroom:  2, 17th Floor |
| RIPPLE LABS INC., a California corporation,<br><br>                    Cross-Plaintiff,<br><br>       v.<br><br>JED MCCALEB, an individual, JACOB STEPHENSON, an individual, and DOES 1-10, inclusive,<br><br>                    Cross-Defendants. | |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

SUPP. NALL DECL. ISO BITSTAMP'S FEE MOTION
Case No.  15-cv-01503-WHO

I, Jessica K. Nall, declare as follows:

1.     I am a partner at the law firm Farella Braun + Martel LLP ("Farella"), counsel for Bitstamp Ltd. ("Bitstamp") in this action.  I have personal knowledge of the facts stated herein, and could and would testify competently to the matters stated.

2.     Farella began representing Bitstamp in connection with this action on May 11, 2015, after Bitstamp had already filed the interpleader complaint.

3.     Upon our engagement, I personally reviewed all the background materials to date, including numerous email exchanges between Joyce Kim and Bitstamp's outside director, Dan Morehead, who is also the CEO of Pantera and one of Jeb McCaleb's partners in that firm, that we obtained directly from Mr. Morehead, and dozens of other emails with Bitstamp's officers and directors concerning the underlying transactions and the interpleader action.

4.     On April 2, 2015 at 11:45 am, Ms. Kim sent an email to Mr. Morehead concerning her personal account.  That email is attached as **Exhibit A**.

5.     Mr. Morehead responded to Ms. Kim on April 2, 2015 at 3:47 pm.  There was a further exchange of emails after that.  That email exchange is attached as **Exhibit B**.

6.     On April 28, 2015, Jed McCaleb sent an email to Bitstamp's CEO, Nejc Kodrič, stating that "Terry Gross is our litigation attorney on this" and copied Mr. Gross.  Mr. McCaleb did not identify Mr. Gross as counsel for Stellar, and at that time, only Messrs. McCaleb and Stephenson and Ms. Harris were defendants in the interpleader action.  At that point, Mr. Gross began directly communicating with Bitstamp's outside board members and officers about the frozen accounts, including Mr. Kodrič, and Bitstamp's Chief Compliance Officer, Jean-Baptiste Graftieaux, notwithstanding that Mr. Gross knew Bitstamp was represented by counsel.  For example, on May 4, 2015, Mr. Gross sent an email to Bitstamp's CEO, Nejc Kodrič, stating "we are hoping for an amicable resolution now, so that our client does not need to file a complaint against Bitstamp."  Ms. Kim followed up the email a few hours later threatening "to proceed with filing suit against Bitstamp in US federal court."  This entire email exchange is attached as **Exhibit C**.

7.     Following a telephone conference between Mr. Gross and Mr. Graftieaux, in

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

SUPP. NALL DECL. ISO BITSTAMP'S FEE MOTION
Case No.  15-cv-01503-WHO

- 2 -

1   which Bitstamp's counsel was not a participant, on May 6, 2015, Mr. Graftieaux sent an email to

2   Mr. Gross asking him to identify the accounts that Mr. Gross believed Bitstamp had incorrectly

3   frozen.  Mr. Gross did not respond, so on May 11, 2015, Mr. Graftieaux sent two follow-up

4   emails, specifically asking for the account numbers of the accounts considered incorrectly frozen

5   and the identity of the owner of each such account.  Mr. Gross responded on May 11, 2015

6   identifying Stellar Development Fund as the owner of the "rPQ" account and Mr. Stephenson as

7   the owner of the "r3Q" account.  That email exchange is attached as Exhibit G to the Declaration

8   of Jean-Baptiste Graftieaux (ECF No. 57).

9          8.      In response to the numerous threats of a lawsuit against Bitstamp for conversion,

10  breach of contract and unfair business practices—among other things—Farella was engaged to

11  represent Bitstamp and seek a discharge or dismissal of the interpleader action.

12         9.      On May 11, 2015, Mr. Gross sent me and George Frost an email demanding that

13  the rPQ account owned by Stellar and the r3Q account owned by Stephenson be unfrozen and the

14  funds released to their owners, notwithstanding the pendency of the interpleader action.

15  Mr. Gross also asked if we would agree to extend the time for Messrs. McCaleb and Stephenson

16  and Ms. Harris to respond to Bitstamp's complaint.  We agreed to the extension, although it was

17  unclear to me at that time whether Mr. Gross represented Stellar, the individual defendants, or all

18  of them.  That email exchange is attached as **Exhibit D**.

19         10.     On May 12, Mr. Gross sent me and Mr. Frost a draft stipulation to extend the time

20  to respond.  On the draft stipulation, Mr. Gross was identified in the caption as counsel for Stellar

21  and Jed McCaleb.  On the signature block, he was identified as counsel for Jacob Stephenson,

22  Nancy Harris and Jed McCaleb.  Mr. Gross's email and attached draft stipulation are attached as

23  **Exhibit E**.

24         11.     On May 13, 2015, my partner Chris Wheeler and I had a telephone call with Terry

25  Gross and Adam Belsky concerning the action.  During the call, we specifically requested that

26  they permit Bitstamp to be discharged from the interpleader.  Mr. Gross and Mr. Belsky

27  responded that if Bitstamp sought anything other than a voluntary dismissal of the action, they

28  would be forced to litigate against Bitstamp and "keep Bitstamp in the case."

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

SUPP. NALL DECL. ISO BITSTAMP'S FEE MOTION
Case No.  15-cv-01503-WHO

- 3 -

12.     On May 18, 2015 at 10:38 pm, Mr. Gross sent me (and counsel for Ripple) an email requesting that Bitstamp and Ripple stipulate to Stellar's intervention.  Bitstamp never refused Stellar's request to intervene.  To the contrary, we took a brief period of time to consider the request before Ripple indicated that it was not willing to stipulate to intervention.  Stellar filed its intervention motion a few days later on May 22.  Mr. Gross's May 18 email is attached as **Exhibit F**.  Bitstamp did not oppose the intervention (at that time), and, in fact, Bitstamp's opposition was not due until June 17 (ECF No. 60), nine days after Bitstamp was discharged from the case (ECF No. 63).  Bitstamp did not file a response on June 17 because it had already been discharged at that time.

13.     Mr. Gross did not notify me who would be representing the individual defendants until May 19.

14.     At the hearing on Friday May 22, where Mr. Belsky represented that Stellar and the individual defendants (whom he purportedly did not represent) would take the position that discharge was inappropriate because of alleged collusion between Ripple and Bitstamp, the Court warned all parties that this argument would require discovery and make the litigation a lot more expensive and drawn out which is not "such a great idea."  In light of these comments, I asked Mr. Belsky after the hearing to stipulate to Bitstamp's discharge.  Mr. Belsky refused, again requesting that Bitstamp seek voluntary dismissal instead.

15.     In late May, during a meet and confer conversation regarding the date for the hearing on Bitstamp's Motion for Discharge, I understand that my partner Chris Wheeler also asked Paul Rugani, counsel for the McCaleb Defendants, whether they would stipulate to Bitstamp's discharge.  Mr. Rugani said that they would not do so.

16.     Between May 27 and June 24, 2015, the parties had extensive discussions and negotiations concerning:  the amount of the disputed funds, the fact that they would be deposited with the court, and how to work through the extremely complex underlying mechanics of unwinding the transaction on the Bitstamp and Ripple ledgers.  For example, attached as **Exhibit G** is a June 12 email from Mr. Rugani explaining his clients' understanding of the transaction.  Twelve days later, on June 24, Mr. Rugani sent another email reflecting his new understanding of

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

SUPP. NALL DECL. ISO BITSTAMP'S FEE MOTION
Case No.  15-cv-01503-WHO                              - 4 -

1    this highly complex transaction.  Mr. Rugani's June 24 email is attached as **Exhibit H**. I estimate

2    that I have hundreds of e-mails on these topics.

3          17.     On June 24, 2015, Bitstamp deposited $1,006,130.94 with the Court pursuant to

4    the parties joint stipulation (ECF No. 60).  An email from Mr. Wheeler to all counsel confirming

5    the transfer of the Disputed Funds to the court is attached as **Exhibit I**.

6          18.     Even after the extensive discussions and negotiations regarding the deposit of the

7    Disputed Funds with the Court, in which all counsel participated, there has continued to be

8    significant confusion and complexity regarding the underlying transaction, including the parties

9    to the transaction and the exact amount of the Disputed Funds.  This additional and ongoing

10   complexity is demonstrated by the attached **Exhibit J**, which is a July 10 email from the McCaleb

11   Defendants' counsel Mr. Rugani, setting forth additional details regarding the transaction and the

12   parties to it that had not previously been disclosed during the month-long negotiation regarding

13   the deposit of funds with the Court and the modifications to be done to the underlying ledgers.

14         19.     Even today, the parties are still negotiating and discussing the details and

15   complexities of the underlying transaction and a stipulation is only now being negotiated to alter

16   the amount of funds being held with the Court and to once again modify the underlying ledgers.

17   This proposed stipulation will require additional effort by Bitstamp from a legal and technological

18   perspective to once again locate and alter the necessary ledgers in order to facilitate these

19   changes.

20         20.     After the Court discharged Bitstamp from the case on June 8, I contacted counsel

21   for Stellar and the individual defendants on June 10 and requested that they withdraw their

22   motion to dismiss the interpleader action.  Not until June 16, the day before Bitstamp's opposition

23   to the motion to dismiss was due (ECF No. 60), did Stellar and the individual defendants

24   withdraw their motion.  ECF No. 64.

25         21.     On July 6, 2015, almost one month after the Court discharged Bitstamp from the

26   action and only 10 days before the hearing on Stellar's motion to intervene, Stellar filed an

27   amended Exhibit A to its motion, substituting a proposed Answer and Counterclaims against

28   Bitstamp.  ECF No. 88.  Bitstamp opposed this effort based on the Discharge Order, and awaits

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

SUPP. NALL DECL. ISO BITSTAMP'S FEE MOTION
Case No.  15-cv-01503-WHO

- 5 -

1    further order of this Court.  No fees are sought for that effort in this petition.  Bitstamp reserves

2    its right to seek fees for this effort as well based on further orders of this Court.

3          22.     All of the fees which Bitstamp seeks to recover on this fee petition were incurred

4    in the sound judgment of me and my team as counsel for Bitstamp, and were necessary to the

5    representation of Bitstamp in this action.  Though we do not respond in this Reply to every

6    criticism leveled against our invoices, suffice it to say that we disagree with Stellar's and the

7    McCaleb Defendants' efforts to second guess and question our decision-making and even our

8    billing practices.  For example, our decision to begin advance work on the Reply in Support of

9    Bitstamp's Motion for Discharge was motivated by our knowledge that obtaining the information

10   necessary for Mr. Graftieux's Declaration would be a time-consuming process given his location

11   in Europe and the anticipated language barriers (Mr. Graftieux speaks French as a first language).

12   In addition, we were very aware of the arguments Stellar and McCaleb defendants would be

13   making since they begin threatening Bitstamp with those claims at least from the beginning of the

14   time Farella began representing Bitstamp.  Given the complexity of this case and the urgent and

15   cutting-edge issues presented (including day after day of intensive legal work and hundreds of

16   calls and e-mails), Bitstamp's request for fees in the amount set forth herein is warranted.

17                  **SUMMARY OF FEES AND COSTS ON ATTORNEYS' FEES MOTION**

18         23.     On June 24, 2015, Mr. Wheeler sent all counsel an email advising the parties that

19   Bitstamp would be seeking $182,948.01 in fees and costs and asking to meet and confer as

20   required by Local Rule 54-5(b)(1).  Mr. Wheeler also advised all counsel that Bitstamp would be

21   seeking the attorneys' fees and costs incurred in connection with the motion for fees and costs.

22   Grant Fondo, on behalf of Ripple Labs, stated Ripple had no objection to using the disputed XRP

23   to satisfy Bitstamp's fees request, but asserted that Stellar and the individual defendants should be

24   responsible for a significant portion of the fees.  Without meeting and conferring as required,

25   Mr. Rugani responded on behalf of the individual defendants that they "intend to oppose

26   Bitstamp's request for attorneys' fees."  Mr. Gross did not respond at all on behalf of Stellar.

27   Mr. Wheeler responded by encouraging all parties not to needlessly increase Bitstamp's

28   attorneys' fees by opposing the Motion, and advised all parties that Bitstamp would ask the Court

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

SUPP. NALL DECL. ISO BITSTAMP'S FEE MOTION
Case No.  15-cv-01503-WHO                                    - 6 -

to award Bitstamp its fees incurred in connection with preparing the Motion against any party who opposes it.  The entire email exchange was attached to my June 26, 2015 Declaration as Exhibit C.

24.     I have personally reviewed every time entry for which Farella has billed Bitstamp and for which Bitstamp seeks reimbursement in connection with preparing its Motion and Reply. Before sending out an invoice, I wrote-off and/or reduced time entries to account for potential inefficiencies and to ensure that our fees were reasonable and represented competitive value.

25.     In light of the fact that Stellar and the individual defendants not only opposed Bitstamp's request, but also submitted 35 pages of briefing and two new declarations, Bitstamp's fees and costs incurred in preparing the Motion and Reply were more extensive than should have been required.  Accordingly, Bitstamp is requesting that it recover $75,882.98 in additional attorneys' fees and costs for preparing the Motion for Attorneys' Fees and the Reply as follows:

| ATTORNEYS' FEES | | | | |
|---|---|---|---|---|
| **Name** | **Position** | **Hourly Rate** | **Hours** | **Fees** |
| Jessica Nall | Partner | $695.00 | 11.0 | $7,645.00 |
| Christopher Wheeler | Partner | $620.00 | 42.7 | $26,474.00 |
| Kelly Woodruff | Partner | $640.00 | 47.4 | $30,336.00 |
| Alexander Porcaro | Associate | $430.00 | 15.1 | $6,493.00 |
| Christoffer Lee | Associate | $430.00 | 1.8 | $774.00 |
| Charity Van Dyke | Senior Paralegal | $300.00 | 4.7 | $1,410.00 |
| Anthony Allen | Senior Paralegal | $280.00 | 1.3 | $364.00 |
| **TOTAL ATTORNEYS' FEES:** | | | | **$75,372.50** |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

SUPP. NALL DECL. ISO BITSTAMP'S FEE MOTION
Case No.  15-cv-01503-WHO                                    - 7 -

| COSTS | |
|---|---|
| Delivery | $85.09 |
| Travel & Meeting Expenses | $198.99 |
| Court Reporter Fees | $116.40 |
| Computer Services | $40.00 |
| Filing Fees and Services | $70.00 |
| **TOTAL COSTS** | $510.48 |

26.     Chris Wheeler took primary responsibility for preparing the Motion for Attorneys' Fees and supporting declaration, assisted by Associate Alex Porcaro to conduct legal research as needed.  To prepare the Motion, Mr. Wheeler conducted legal research relating to the availability of recovering attorneys' fees in interpleader actions, reviewed the relevant records of timekeeper fees and costs, researched the prevailing market rates for San Francisco attorneys with comparable skill and experience to Farella attorneys, negotiated case scheduling issues with opposing counsel; met and conferred with opposing counsel as required by Civil L.R. 54; drafted the motion and supporting declaration; conferred with the client concerning the motion; and supervised Mr. Porcaro's research.

27.     Shortly after we filed Bitstamp's Motion, Mr. Wheeler was seconded to the San Francisco District Attorneys' office for two months, and was therefore unable to work on the Reply.  Accordingly, I asked my partner, Kelly Woodruff, to assist with the Reply. Understanding that there would be inefficiencies with bringing on a new partner, I agreed to charge Bitstamp a much-reduced hourly rate for Ms. Woodruff's time, to make it approximate more closely Mr. Wheeler's hourly rate, and I have also written off some of Ms. Woodruff's time in getting up to speed on the matter.

28.     Ms. Woodruff took primary responsibility for preparing the Reply to the oppositions to Bitstamp's Motion and supporting declarations, assisted by Associate Alex Porcaro

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

SUPP. NALL DECL. ISO BITSTAMP'S FEE MOTION
Case No.  15-cv-01503-WHO                           - 8 -

to conduct legal research as needed.  Ms. Woodruff is submitting her own declaration attesting to her background and experience, and to the services she provided in preparing the Reply and supporting declarations.

29.     Mr. Porcaro is a 2011 graduate of University of California, Berkeley School of Law, where he was an Edwin A. Heafey Jr. Fellow and an editor for the Berkeley Journal of International Law.  Mr. Porcaro is a 1999 graduate of Dartmouth College and spent several years as a journalist before attending law school.  Mr. Porcaro's hourly rate is $430.  Mr. Porcaro assisted Mr. Wheeler and Ms. Woodruff by conducting legal research regarding fee requests in interpleader actions, apportioning fee awards where one or more claimants has protracted the litigation, and the ability to recover attorneys' fees in preparing a fee application; reviewing and editing drafts of the Motion, the Reply and supporting declarations; and finalizing and preparing the papers for filing.

30.     I directed and oversaw the strategy decisions on both the opening papers in Bitstamp's Motion and the Reply, as well as personally reviewed time entries and exercised my billing discretion to ensure fees were reasonable and competitive.  In addition, I reviewed and edited all drafts of the Motion, the Reply and the supporting declarations.

31.     In exercising my billing discretion I wrote off approximately $20,000 in fees and more than $1,000 in costs, primarily due to computerized legal research.

32.     In total, the fees and costs for which Bitstamp is seeking reimbursement in connection with preparing and filing its Motion for Attorneys' Fees and Costs and the Reply in support thereof amount to **$75,882.98**.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 30th day of July, 2015 at San Francisco, California.


_/s/ Jessica K. Nall_
Jessica K. Nall

31652\4992178.2

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

SUPP. NALL DECL. ISO BITSTAMP'S FEE MOTION        - 9 -
Case No.  15-cv-01503-WHO

# EXHIBIT A

**From:**          Joyce Kim [jjoyce@stellar.org]
**Sent:**          Thursday, April 02, 2015 11:45 AM
**To:**            Dan Morehead; Jed McCaleb
**Subject:**       My personal account is now frozen

My personal account at Bitstamp is now frozen. Bitstamp has certainly overstepped its boundaries.

# EXHIBIT B

**From:** Dan Morehead [dan@panteracapital.com]
**Sent:** Saturday, April 04, 2015 4:36 PM
**To:** 'Joyce Kim'
**Cc:** 'Jed McCaleb'
**Subject:** RE: Thaw

Joyce,

Your accounts are now unfrozen.  Please let me know if you have any other problems.

Regards,

Dan


**DAN MOREHEAD**
CEO

_____

T: 415 360 3601   EA: 415 360 3602

# P A N T E R A

**From:** Joyce Kim [mailto:joyce@stellar.org]
**Sent:** Thursday, April 02, 2015 7:00 PM
**To:** Dan Morehead
**Cc:** Jed McCaleb
**Subject:** Re: Thaw

Yes, but I am awaiting an answer from them as to why my account was frozen. Please let them know to send the explanation along to me

Have they said anything about dropping this bogus legal maneuvering? We just spoke to our lawyers.  They said we have a strong case against Bitstamp.


On Thu, Apr 2, 2015 at 3:47 PM, Dan Morehead <dan@panteracapital.com> wrote:

George says your account is not (now) frozen.  Is this correct?



Regards,



Dan

1

**DAN MOREHEAD**

CEO

T: 415 360 3601   **EA:** 415 360 3602

# P A N T E R A

# EXHIBIT C

**From:** Joyce Kim [mailto:joyce@stellar.org]
**Sent:** Monday, May 04, 2015 8:58 PM
**To:** Terry Gross
**Cc:** Bitstamp - Nejc Kodric; Adam Belsky; PCM-Jed_McCaleb; Steve Waterhouse; Dan Morehead
**Subject:** Re:

Nejc,

Please schedule this call for Tues evening your time (Tues morning our time) - otherwise we will
need to proceed with filing suit against Bitstamp in US federal court. We have been more than
patient yet this behavior has made it more than clear that you are acting on Ripple's behalf rather
than in the best interest of your company.


On Mon, May 4, 2015 at 1:25 PM, Terry Gross < terry@gba-law.com> wrote:
Nejc --
We're ready to talk to your compliance personnel.  It is important that we do this promptly, it's already been
almost a week.  Can you set up this call for today, we are available at any time you desire; or tomorrow morning
if you'd like.  Just tell me what time you've set the call up for.

As you know, we are hoping for an amicable resolution now, so that our client does not need to file a complaint
against Bitstamp.  Please set this up as quickly as you can.
Thanks.
Terry


On 5/2/2015 12:29 AM, Nejc Kodrič wrote:

1

Terry,

I apologize for not responding sooner. I am in Croatia and will return home on Sunday evening. Please allow me to get back to you then.

Best regards
Nejc

2. maj 2015 01.30 je oseba "Terry Gross" < terry@gba-law.com> napisala:
Nejc --
I did not hear from you about this teleconference. I am available all weekend for this case, as well as on Monday. I suggest that we have the call tomorrow (Saturday) if possible -- again, I would be available at 9 or 10 am PT (5 or 6 pm London time), or later if you'd like. Please let me know if we can have this call tomorrow, or Sunday, or even on Monday.

Thanks.

On 4/30/2015 12:54 PM, Jed McCaleb wrote:

> Nejc, how about a call at 9am SF time (5pm london time) tomorrow (friday).

> On Apr 30, 2015 9:00 AM, "Terry Gross" < terry@gba-law.com> wrote:
> Thanks.

> On 4/29/2015 11:06 PM, Nejc Kodrič wrote:

>> Will do.

>> Br
>> N

>> 29. apr. 2015 15.44 je oseba "Terry Gross" < terry@gba-law.com> napisala:
>> Nejc --
>> As Jed said, I am ready to speak with Bitstamp's lawyers and compliance personnel about these transactions and Bitstamp's obligations. Please send me the contact information for them, so that we can set up a conference call tomorrow if possible.

>> Thanks.
>> Terry

>> On 4/28/2015 9:36 PM, Jed McCaleb wrote:
>> Hey Nejc,
>> Terry Gross is our litigation attorney on this. He would be happy to talk to your lawyers and compliance person.
>> Jed.

>> --
>> Terry Gross
>> Gross Belsky Alonso LLP

2

One Sansome Street, Suite 3670
San Francisco, CA 94104
Tel: 415 544-0200 x101
Fax: 415 544-0201
www.gba-law.com
terry@gba-law.com


--
Terry Gross
Gross Belsky Alonso LLP
One Sansome Street, Suite 3670
San Francisco, CA 94104
Tel:  415 544-0200 x101
Fax:  415 544-0201
www.gba-law.com
 terry@gba-law.com


--
Terry Gross
Gross Belsky Alonso LLP
One Sansome Street, Suite 3670
San Francisco, CA 94104
Tel:  415 544-0200 x101
Fax:  415 544-0201
www.gba-law.com
 terry@gba-law.com


--
Terry Gross
Gross Belsky Alonso LLP
One Sansome Street, Suite 3670
San Francisco, CA 94104
Tel:  415 544-0200 x101
Fax:  415 544-0201
www.gba-law.com
 terry@gba-law.com

# EXHIBIT D

| From: | Terry Gross [terry@gba-law.com] |
|---|---|
| Sent: | Monday, May 11, 2015 3:23 PM |
| To: | George Frost; Nall, Jessica (24) x4468 |
| Cc: | Adam Belsky |
| Subject: | Re: Bitstamp v Ripple Labs at al |

Jessica and George --
This email is to the two of you only; I have removed the two Ripple attorneys.
Thank you for recognizing the equities in this case, and realizing that Ripple Labs' claim is essentially a garden variety breach of contract claim, that releasing the funds does not do any damage to Ripple.

I have a few comments and questions:

1.   I note that you say in your email below that the Bitstamp board "has authorized payment of the $1 million Bitstamp it is holding to the demonstrated owner of the funds." We understand that to mean that Bitstamp will promptly unfreeze the rPQ account owned by Stellar Development Foundation (SDF) and the r3Q account owned by Jacob Stephenson. Please advise when the funds in these two accounts will be unfrozen and available to their owners. If you need further information in order to release these funds, please contact me and I will promptly provide that information to you.
      I note also that, based on Bitstamp's conclusion that Ripple's claim is essentially a breach of contract claim against Jed and that Ripple does not have any ownership interest in the funds that have been frozen, then Ripple has no basis to demand that these funds remain frozen. Your statement that releasing the funds will not do any damage to Ripple makes it clear that these funds should be unfrozen. We see no reason why Bitstamp cannot unfreeze these funds, even while the interpleader action is still pending.
2.   Can you give us an estimate of when Bitstamp will file its request for voluntary dismissal?
3.   Will Bitstamp agree that the time for Jed McCaleb, Jacob Stephenson and Nancy Harris to respond to Bitstamp's Complaint in Interpleader be extended until 15 days after a court ruling on the request for voluntary dismissal? If so, we will draft a stipulation to submit to the Court. (Last Friday, I asked Grant to agree to an extension for Jed and Jacob to respond to Ripple's Cross-Complaint; I expect to hear from him later this week. In any event, we will be requesting the same extension from Ripple for responses to Ripple's cross-complaint -- until 15 days after the court ruling.)

4.   You made several statements in your last email that are quite troubling. While I am grateful that Bitstamp is now taking the correct action to undo its freezing of these accounts and the filing of the interpleader action, I nevertheless must point out these improper statements and request that you cease making such statements in the future.
      a.   First, you stated that there was "an ongoing criminal investigation targeting . . . Stellar." Please advise where you obtained this information. This statement is false and defamatory. I (as SDF's counsel) was personally advised by the AUSA in charge of the investigation concerning Ripple that Stellar was not a target of that, or any other, criminal investigation. Do you or Bitstamp have any personal basis for making this statement, or are you simply repeating information provided by Ripple? Please note that a republisher can be held liable for republishing defamatory statements. Please confirm that you will cease from making any such statements, and please advise to whom you or Bitstamp have made such statements.
      b.   Second, you state that Stellar Development Foundation is an "unregistered digital currency exchange." I assume from this statement you mean that SDF is an unregistered money service bureau, involved in exchanging digital currency. I further note that Ripple Labs just entered into a settlement agreement admitting that it had acted as an unregistered money service bureau. Please advise the basis for your statement that SDF is even a "digital currency exchange" or "money service bureau." Your statement implies that SDF is doing something improper by being "unregistered," even though it is not a money service bureau. Please

1

confirm that you and Bitstamp will cease making such statements or implications.

Thanks.

Terry

# EXHIBIT E

| | |
|---|---|
| **From:** | Terry Gross [terry@gba-law.com] |
| **Sent:** | Tuesday, May 12, 2015 2:45 PM |
| **To:** | George Frost; Nall, Jessica (24) x4468 |
| **Cc:** | Adam Belsky; Jean-Baptiste Graftieaux |
| **Subject:** | Re: Bitstamp v Ripple Labs at al |
| **Attachments:** | Stip to extend time to respond to complaint.docx |

Jessica and George --

I attach a draft of a Stipulation to Extend Time to Respond to Complaint, which, as agreed, extends the time of defendants Jed McCaleb, Jacob Stephenson and Nancy Harris to respond to the Complaint in Interpleader until 15 days after the Court issues an order on Bitstamp's Request for Dismissal.

Please let me know if this Stipulation is acceptable, and if so we will file it with the Court.  In the event you have any proposed changes, please send them to me.

In addition, neither I nor my client has heard anything about the release of the funds in the rPQ account or the r3Q account.  Please advise of the status of the unfreezing of these accounts.

I would also like to know when Bitstamp will be filing its Request for Dismissal.

Thanks.

Terry

1   Jessica K. Nall, jnall@fbm.com (SBN _____)
    FARRELLA BRAUN + MARTELL LLP
2   Russ Building
    235 Montgomery Street
3   San Francisco, CA 94014
    Tel: (415) 954-4400
4   Fax: (415) 954-4480

5
    Attorneys for Plaintiff
6   BITSTAMP LTD.

7   Terry Gross, terry@gba-law.com (SBN 103878)
    Adam C. Belsky, adam@gba-law.com (SBN 147800)
8   Monique Alonso, monique@gba-law.com (SBN 127078)
9   GROSS BELSKY ALONSO LLP
    1 Sansome Street, Suite 3670
10  San Francisco, CA 94104
    Tel: (415) 544-0200
11  Fax: (415) 544-0201

12
    Attorneys for Defendants
13  JED MCCALEB and
    STELLAR DEVELOPMENT FOUNDATION
14

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17

18  BITSTAMP LTD., a foreign company,     )  Case No.: CG3:15-cv-1503
                                          )
19              Plaintiff,                )  **STIPULATION TO EXTEND TIME**
                                          )  **TO RESPOND TO COMPLAINT**
20       v.                               )
                                          )
21  RIPPLE LABS INC., a California corporation, )
    JACOB STEPHENSON, an individual,      )
22  NANCY HARRIS, an individual, JED      )
    MCCALEB, an individual, and DOES 1    )
23  through 10, inclusive,                )
                                          )
24                                        )
                Defendants.               )
25                                        )

26

27

28

                                    1
        **STIPULATION TO EXTEND TIME TO RESPOND TO COMPLAINT; CASE NO. 3:15-CV-1503**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Local Rule 6-1, BITSTAMP LTD. ("Plaintiff") and JACOB STEPHENSON, NANCY HARRIS, and JED MCCALEB ("Defendants"), through counsel, hereby stipulate and agree as follows:

WHEREAS, Plaintiff is in the process of filing a Request for Dismissal of the Complaint in Interpleader, pursuant to FRCP 41(a)(2), and

WHEREAS, in the event the Court grants plaintiff's Request for Dismissal there will be no need for any defendant to answer or respond to the Complaint in Interpleader,

IT IS HEREBY STIPULATED AND AGREED that Defendants' time to answer, move or otherwise respond to the Complaint in Interpleader is enlarged until fifteen (15) days after the Court enters an order on plaintiff's Request for Dismissal of Complaint in Interpleader.

Dated: May __, 2015

GROSS BELSKY ALONSO LLP
One Sansome Street, Suite 3670
San Francisco, CA 94104
Tel: (415) 544-0200
Fax: (415) 544-0201

By: ___/s/ Terry Gross_____ .
      Terry Gross

Attorneys for Defendants
JACOB STEPHENSON, NANCY HARRIS,
and JED MCCALEB

Dated: May __, 2015

FARRELLA BRAUN + MARTELL LLP
235 Montgomery Street
San Francisco, CA 94014
Tel: (415) 954-4400
Fax: (415) 954-4480

By: ___/s/ Jessica K. Nall_____ .
      Jessica K. Nall

Attorneys for Plaintiff
BITSTAMP LTD.

1
2

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

3

Dated: May ___, 2015

4                                            _____

                                             United States District Judge

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

**PROOF OF SERVICE**

**RE:**

       I am a citizen of the United States and employed in the County of San Francisco, State of California. I am over eighteen (18) years of age and not a party to the above-entitled action. My business address is GROSS BELSKY ALONSO LLP, 1 Sansome Street, Suite 3670, San Francisco, CA 94104. On the date set forth below, I served the following documents in the manner indicated on the below named parties and/or counsel of record:

<u>XX</u>    **U.S. Mail**, with First Class postage prepaid and deposited in a sealed envelope at San Francisco, California.

Attorneys for Plaintiff

Spencer Hosie, Esq.
Diane S. Rice, Esq.
Darrell R. Atkinson, Esq.
**HOSIE RICE LLP**
Transamerica Pyramid, 34th Floor
600 Montgomery Street
San Francisco, California 94111
Telephone: (415)247-6000
Facsimile: (415) 247-6001

       I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service, and said correspondence would be deposited with the United States Postal Service, California that same day in the ordinary course of business.

       I declare under penalty of perjury that the foregoing is true and correct. Executed on January 5, 2015 at San Francisco, California.

                               TERRY GROSS

# EXHIBIT F

| From: | Terry Gross [terry@gba-law.com] |
|---|---|
| Sent: | Monday, May 18, 2015 10:38 PM |
| To: | Nall, Jessica (24) x4468; Grant P Fondo |
| Cc: | Adam Belsky; Jessica Dean |
| Subject: | BITSTAMP:  Intervention by Stellar |
| Attachments: | Stipulation re Stellar Intervention-v1.docx |

Jessica and Grant --
Since Stellar Development Foundation ("Stellar") is the owner of
Bitstamp account rPQ (which Bitstamp has acknowledged in its Motion for
Discharge), Stellar can intervene as of right in Bitstamp's interpleader
action, pursuant to FRCP 24(a)(2).
On behalf of Stellar, I request that both Bitstamp and Ripple stipulate
to Stellar's intervention.
In the expectation that both parties will agree to such intervention, I
attach a draft stipulation.
Please let me know if each of your clients agree to such intervention,
and, if so, please let me know if you have any proposed changes to the
stipulation.

Thank you.

--
Terry Gross
Gross Belsky Alonso LLP
One Sansome Street, Suite 3670
San Francisco, CA 94104
Tel: 415 544-0200 x101
Fax: 415 544-0201
www.gba-law.com
terry@gba-law.com

# EXHIBIT G

| | |
|---|---|
| **From:** | Rugani, Paul F. [prugani@orrick.com] |
| **Sent:** | Friday, June 12, 2015 7:01 PM |
| **To:** | Wheeler, Christopher (22) x4979; Ardinger, Andrew; Parris, Mark S. |
| **Cc:** | Nall, Jessica (24) x4468 |
| **Subject:** | RE: Transfer of the Disputed Funds to the Court |

Chris-

Bitstamp's complaint in interpleader defines the "Disputed Funds" as the $1,038,172 that Ripple used to purchase XRP from Mr. Stephenson on or about March 20, 2015. As I believe you know, Mr. Stephenson subsequently used that $1,038,172 to purchase STR from Stellar. It is our understanding that Coinex imposed certain transaction fees on that transaction, such that Stellar received $1,006,130.94 (the entirety of which has been transferred to the Bitstamp destination tag you reference), with Coinex retaining the balance. Mr. Stephenson did not retain any of the $1,038,172 and neither Mr. McCaleb nor Ms. Harris ever possessed any of the $1,038,172. Therefore, our clients do not have any portion of the Disputed Funds. The parties' stipulation does not require, nor is there any other basis to require, our clients to pay any funds out of pocket.

Paul

**From:** CWheeler@fbm.com [mailto:CWheeler@fbm.com]
**Sent:** Friday, June 12, 2015 2:20 PM
**To:** Ardinger, Andrew; Parris, Mark S.; Rugani, Paul F.
**Cc:** JNall@fbm.com
**Subject:** Transfer of the Disputed Funds to the Court

Counsel:

Stellar has informed us that it has transferred $1,006,130.94 of the Disputed Funds to Bitstamp's destination tag. Please transfer the remaining $32,041 to the Bitstamp destination tag is rvYAfWj5gh67oV6fW32ZzP3Aw4Eubs59B?dt=53878157 and please let us know as soon as the $32,041 has been transferred. Pursuant to the Stipulated Order, we are hoping to complete this transaction as soon as possible.

Regards,

Christopher C. Wheeler
Farella Braun + Martel LLP
415.954.4979

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP

**NOTICE TO RECIPIENT |** This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*

# EXHIBIT H

| From: | Rugani, Paul F. [prugani@orrick.com] |
|---|---|
| Sent: | Wednesday, June 24, 2015 10:26 PM |
| To: | Wheeler, Christopher (22) x4979; Ardinger, Andrew; Parris, Mark S. |
| Cc: | Nall, Jessica (24) x4468; Terry Gross; Adam Belsky; GFondo@goodwinprocter.com; NChessari@goodwinprocter.com |
| Subject: | RE: Transfer of the Disputed Funds to the Court |

Chris-

        We've received some additional information from our clients clarifying the transaction. When Mr. Stephenson offered the 96,342,367 XRP at issue for sale, he was contacted by an individual named Alexis Sirkia who expressed a desire to purchase the XRP. We understand Mr. Sirkia to have been acting on behalf of Ripple in light of Ripple's representations to Bitstamp and the allegations of Ripple's Cross-Complaint. Mr. Sirkia proposed to purchase the XRP for $963,424, but to pay Mr. Stephenson $1,038,172. Mr. Sirkia directed that Mr. Stephenson transfer the difference—$74,748—to a Bitstamp account with the tag 38408536. We do not know the nominal owner of this account, but believe that these funds are owned or controlled by Ripple. Mr. Stephenson thus received $963,424 in net proceeds in exchange for his XRP.

        Mr. Stephenson then used the vast majority of those funds—$962,922, or all but $502—to acquire STR. To do so, he first transferred the funds to his Stellar account on Coinex. Our understanding is that Coinex charged a fee for this transaction, resulting in Mr. Stephenson's account receiving $951,522.20 following this transfer. He used all of these funds to purchase STRs; again, due to what we understand to be a Coinex fee, Stellar received $940,082.05, which ultimately was deposited into its Bitstamp account.

        As you know, Stellar has already transferred $1,006,130 from its rPQ account to a Bitstamp account to allow those funds to be deposited with the Court. This is roughly $66,000 more than Stellar actually received from the transaction at issue (money that had come from separate transactions) and thus results in an overpayment by Stellar. Given our recent discovery that Ripple appears to have retained $74,748 of the funds at issue, and thus transferred only $963,424 to Mr. Stephenson, I understand from Stellar's counsel that Stellar believes that the stipulation should be modified to require the transfer to the Court of only $963,424, and that the amount in excess already transferred ($1,006,130 - $963,424 = $42,706) be returned to Stellar; alternatively, the stipulation could be modified to require the transfer of $1,006,130 and Ripple can pay directly to Stellar the $42,706 difference. If Ripple does not agree to the return of these funds, or to pay these funds, to Stellar now, Stellar is fully reserving all legal rights and claims to that money, which has nothing to do with the transactions at issue, and will subsequently seek its return and all legal remedies.

        If Ripple continues to insist that $1,038,172 be deposited with the Court, then, based our understanding above, the funds needed to make up the difference between what Bitstamp has to date transferred to the Court and the $1,038,172 described in the injunction are located in the account with Bitstamp tag 38408536, which we believe is owned or controlled by Ripple.

Paul

# EXHIBIT I

| From: | CWheeler@fbm.com |
|---|---|
| Sent: | Wednesday, June 24, 2015 1:39 PM |
| To: | prugani@orrick.com; aardinger@orrick.com; mparris@orrick.com |
| Cc: | JNall@fbm.com; terry@gba-law.com; adam@gba-law.com; GFondo@goodwinprocter.com; NChessari@goodwinprocter.com |
| Subject: | RE: Transfer of the Disputed Funds to the Court |
| Attachments: | Deposit funds with Court 3:15-cv-01503-WHO Bitstamp, Ltd v. Ripple Labs Inc. et al |

(+ Terry, Adam, Grant & Nicole)

Paul:

As confirmed by the attached email from the Court today, Bitstamp has deposited the $1,006,130.94 with the Court. However, as indicated in my below email, $32,041 of the $1,038,172 referenced in the parties' Joint Stipulation and [Proposed] Order to Deposit Disputed Funds With The Court ("Stipulation") is not within the possession, custody, or control of Bitstamp.

Your email suggests that some of the missing $32,041 may be attributable to transaction fees imposed by Coinex on Stephenson in connection with Stephenson's transfer of the $1,038,172. Did Coinex take all of the $32,041 as transaction fees? If not, where is the balance that Coinex did not impose as transaction fees?

If the parties are not able to agree on which account Bitstamp is to transfer the $32,041 from, and take steps to reverse any underlying IOUs so that Bitstamp is not itself subject to loss, then the Stipulation will need to be amended to provide that Bitstamp is only required to transfer the $1,006,130.94 Bitstamp has already transferred.

Failing that, it may be necessary to involve the Court. In light of the Court's email, we need to resolve this outstanding issue immediately, and by no later than tomorrow.

Regards,

Christopher C. Wheeler
Farella Braun + Martel LLP
415.954.4979

---

**From:** Rugani, Paul F. [mailto:prugani@orrick.com]
**Sent:** Friday, June 12, 2015 7:01 PM
**To:** Wheeler, Christopher (22) x4979; Ardinger, Andrew; Parris, Mark S.
**Cc:** Nall, Jessica (24) x4468
**Subject:** RE: Transfer of the Disputed Funds to the Court

1

Chris-

Bitstamp's complaint in interpleader defines the "Disputed Funds" as the $1,038,172 that Ripple used to purchase XRP from Mr. Stephenson on or about March 20, 2015.  As I believe you know, Mr. Stephenson subsequently used that $1,038,172 to purchase STR from Stellar.  It is our understanding that Coinex imposed certain transaction fees on that transaction, such that Stellar received $1,006,130.94 (the entirety of which has been transferred to the Bitstamp destination tag you reference), with Coinex retaining the balance.  Mr. Stephenson did not retain any of the $1,038,172 and neither Mr. McCaleb nor Ms. Harris ever possessed any of the $1,038,172.  Therefore, our clients do not have any portion of the Disputed Funds.  The parties' stipulation does not require, nor is there any other basis to require, our clients to pay any funds out of pocket.

Paul

---

**From:** CWheeler@fbm.com [mailto:CWheeler@fbm.com]
**Sent:** Friday, June 12, 2015 2:20 PM
**To:** Ardinger, Andrew; Parris, Mark S.; Rugani, Paul F.
**Cc:** JNall@fbm.com
**Subject:** Transfer of the Disputed Funds to the Court

Counsel:

Stellar has informed us that it has transferred $1,006,130.94 of the Disputed Funds to Bitstamp's destination tag.  Please transfer the remaining $32,041 to the Bitstamp destination tag is rvYAfWj5gh67oV6fW32ZzP3Aw4Eubs59B?dt=53878157 and please let us know as soon as the $32,041 has been transferred.  Pursuant to the Stipulated Order, we are hoping to complete this transaction as soon as possible.

Regards,

Christopher C. Wheeler
Farella Braun + Martel LLP
415.954.4979

---

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP

---

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*

# EXHIBIT J

| From: | Rugani, Paul F. [prugani@orrick.com] |
|---|---|
| Sent: | Friday, July 10, 2015 8:57 AM |
| To: | Fondo, Grant P; Wheeler, Christopher (22) x4979; Ardinger, Andrew; Parris, Mark S. |
| Cc: | Nall, Jessica (24) x4468; Terry Gross; Adam Belsky; Chessari, Nicole L. |
| Subject: | RE: Transfer of the Disputed Funds to the Court |

Grant-

   Here are the details of the various transactions:

- Stephenson sells XRP to Ripple via Sirkia. Stephenson and Sirkia agree on a price of $963,424 for 96,342,367 XRP. Sirkia proposes to pay $74,748 more (a total of $1,038,172) if Stephenson then immediately transfers the $74,748 to a different Bitstamp account provided by Sirkia. The transaction is completed on that basis, with Stephenson receiving a net of $963,424 and transferring $74,748 to Bitstamp destination tag 38408536.
- Stephenson transfers $962,922 of those funds to Coinex. If Ripple insists that the $502 difference be deposited with the Court, we will discuss with Mr. Stephenson arrangements for that transfer, although that amount of funds is sufficiently small that the lawyers collectively (us, you, and Bitstamp's lawyers) would probably incur more expense figuring out how to transfer it than the actual amount of funds. Perhaps we can agree as part of the stipulation that Mr. Stephenson will retain at least $502 in his r3Q account for the duration of the litigation and leave it at that?
- When Stephenson transferred the funds to Coinex, Coinex charged a fee of $11,399.80. Stephenson thus received $951,522.20 in his Coinex Stellar account.
- Mr. Stephenson then used $951,500.05 of that amount to purchase 306,935,500 STR. Once again, Coinex charged a fee in connection with the transaction (of $11,418), resulting in SDF receiving net proceeds of $940,082.05.
- We propose that $940,082.05 be the amount of funds left on deposit with the Court, with the difference refunded to Stellar.

Paul

---

**From:** Fondo, Grant P [mailto:GFondo@goodwinprocter.com]
**Sent:** Monday, July 06, 2015 3:51 PM
**To:** Rugani, Paul F.; CWheeler@fbm.com; Ardinger, Andrew; Parris, Mark S.
**Cc:** JNall@fbm.com; Terry Gross; Adam Belsky; Chessari, Nicole L.
**Subject:** RE: Transfer of the Disputed Funds to the Court


Paul: As we prepare the stipulation, we want to be certain that we ask the Court to return the correct amount. We believe that the $963,424 proposed by you and Stellar may be slightly inflated due to fees taken before the funds were transferred to Stellar's rPQ account, but that the fees you reference below are more than what was paid. While any fees at a minimum constitute damages to Ripple, we do not know that those fees should be included in the interpleader funds deposited with the Court. Please let us know how much in fees were taken with evidence to support your figures so that we can ensure that the proper amount is refunded to Stellar.

Additionally, since Mr. Stephenson claims ownership over a portion of the funds, approximately $502 per his answer, that portion should also be deposited with the Court. Please let us know how you propose to have these funds deposited with the Court and we will include it in the stipulation.

Grant P. Fondo

1

**Goodwin Procter LLP**
135 Commonwealth Drive
Menlo Park, CA  94025
T:  650-752-3236
F:  650-853-1038
gfondo@goodwinprocter.com
www.goodwinprocter.com