United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BITSTAMP LTD., | Case No.  15-cv-01503-WHO |
| Plaintiff, | **ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |
| v. | |
| RIPPLE LABS INC., et al., | Re: Dkt. No. 40 |
| Defendants. | |

## INTRODUCTION

Cross-plaintiff Ripple Labs, Inc. filed a cross-complaint against cross-defendants Jed McCaleb and Jacob Stephenson for allegedly breaching a settlement agreement between Ripple Labs and McCaleb.[1]  The agreement contains an arbitration provision, and McCaleb and Stephenson now move to compel arbitration.  Because the arbitration clause clearly and unmistakably assigns the question of arbitrability to the arbitrator and Stephenson is equitably entitled to enforce the arbitration clause, I GRANT the motion and STAY this matter pending arbitration.

## BACKGROUND

Ripple Labs is an open source software developer that operates a decentralized ledger payment standard known as the Ripple "protocol."  XRP is a digital currency used exclusively by Ripple Labs within that protocol.  McCaleb is a founder and former Chief Technology Officer of

---

[1] This matter started as a complaint for interpleader filed by Bitstamp LTD. against defendants Ripple Labs, Stephenson, McCaleb, and Nancy Harris.  Dkt. No. 1.

Ripple Labs.  On August 13, 2014, after McCaleb's departure from Ripple Labs, McCaleb and Ripple Labs executed a settlement agreement limiting McCaleb's sales of the XRP he owned and controlled.  The agreement also contains three provisions which are relevant to McCaleb's and Stephenson's motion to compel arbitration.  The first, section 9, is entitled "Governing Law," and states:

> This Agreement shall be governed by, construed and interpreted in accordance with, the laws of the State of California, without reference to choice of law principles.

Settlement Agreement § 9.  Next, section 10, entitled, "Specific Performance," provides that:

> Each party acknowledges and agrees that each party hereto will be irreparably damaged in the event any of the provisions of this Agreement are not performed by the Parties in accordance with their specific terms or are otherwise breached. Accordingly, it is agreed that the Parties shall be entitled to an injunction to prevent breaches of this Agreement, and to specific enforcement of this Agreement and its terms and provisions in any action instituted in any court of the United States or any state having subject matter jurisdiction. Each of the parties to this Agreement consents to venue and personal jurisdiction for any such equitable action arising from or relating to enforcement of this Agreement sought in the U.S. District Court for the Northern District of California or any court of the State of California having subject matter jurisdiction.

*Id.* § 10.  Finally, section 11, entitled "Dispute Resolution," states that:

> Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in San Francisco, California before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules. Judgment on the Award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction, as provided in Paragraph 10 herein.

*Id.* § 11.

    Ripple Labs alleges that McCaleb breached the settlement agreement when he directed Stephenson, who is his cousin, to sell XRP in amounts exceeding the agreed-upon limits and without notifying it.  In Ripple Labs's cross-complaint, it contends that Stephenson and McCaleb

2

co-owned and controlled an account containing XRP.  Dkt. No. 9.  It also asserts that Stephenson tortiously interfered with the agreement by selling XRP in violation of the agreement at McCaleb's direction.  It seeks injunctive relief and specific performance against McCaleb and damages against Stephenson.

McCaleb and Stephenson moved to compel arbitration pursuant to an arbitration clause in the agreement.  Dkt. No. 40.  I heard argument on July 16, 2015.

## LEGAL STANDARD

Agreements "evidencing a transaction involving commerce" are within the purview of the Federal Arbitration Act ("FAA").  9 U.S.C. § 2.  "When an agreement falls within the purview of the FAA, there is a strong default presumption that the FAA, not state law, supplies the rules for arbitration."  *Johnson v. Gruma Corp.*, 614 F.3d 1062, 1066 (9th Cir. 2010) (internal punctuation and citations omitted).  "To overcome that presumption, parties to an arbitration agreement must evidence a 'clear intent' to incorporate state law rules for arbitration."  *Id.* (citations omitted).

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).  "Thus, the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue."  *Lifescan, Inc. v. Premier Diabetic Serv., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  "If the answer is yes to both questions, the court must enforce the agreement."  *Id.*  However, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Tech., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks and modifications omitted).  "Doubts should be resolved in favor of coverage."  *Id.*

United States District Court
Northern District of California

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DISCUSSION**

The parties dispute whether the FAA or the California Arbitration Act governs the arbitration clause; whether the Court or the arbitrator should decide the threshold issue of arbitrability; and whether Stephenson, who is not a signatory to the arbitration agreement, can compel arbitration. I address each issue in turn.

## I.    FEDERAL LAW GOVERNS THE ARBITRATION CLAUSE

The settlement agreement states that "[t]his Agreement shall be governed by, construed and interpreted in accordance with, the laws of the State of California." Settlement Agreement §9. Ripple Labs claims that the plain language of the California choice-of-law provision means that California law, the California Arbitration Act ("CAA"), governs arbitration issues. As McCaleb and Stephenson correctly assert, however, the arbitration clause is governed by federal arbitration law (the FAA).

The Ninth Circuit instructs that "courts should apply federal arbitrability law absent 'clear and unmistakable evidence' that the parties agreed to apply non-federal arbitrability law." *Cape Flattery Ltd. v. Titan Maritime*, 647 F.3d 914, 921 (9th Cir. 2011). If "the agreement is ambiguous concerning whether [non-federal] law also applies to determine whether a given dispute is arbitrable in the first place," federal arbitrability law applies. *Id.*

While the parties used a general choice-of-law provision to cover the entire agreement, they did not specify that any of the CAA provisions should govern arbitrability questions. Settlement Agreement § 9. A boilerplate choice-of-law clause does not overcome the presumption

4

United States District Court
Northern District of California

that federal arbitration law applies.[2]  *See, e.g., Tompkins v. 23andMe, Inc.*, 13-cv-05682-LHK,
2014 WL 2903752, at *9 (N.D. Cal. June 25, 2014) (general California choice-of-law provision
too ambiguous to warrant application of state arbitrability law); *Anderson Plant, LLC v. Batzer
Const., Inc.*, 2014 WL 800293, at *4 (E.D. Cal. Feb. 27, 2014); *Freaner v. Valle*, 2011 WL
5596919, at *4 (S.D. Cal. Nov. 17, 2011).  Even a provision specifying the law by which the
arbitration itself is to be conducted is too "ambiguous" to overcome this presumption.  *See Cape
Flattery*, 647 F.3d at 921 (provision applying English arbitration law "ambiguous concerning
whether English law also applies to determine whether a given dispute is arbitrable in the first
place").  Accordingly, Ripple Labs has not overcome the presumption that the FAA applies.

## II.   THE PARTIES ASSIGNED THE QUESTION OF ARBITRABILITY TO THE ARBITRATOR

McCaleb and Stephenson argue that the arbitrator should decide the threshold question of
arbitrability because the arbitration provision provides that "the scope or applicability of this
agreement to arbitrate, shall be determined by arbitration in San Francisco, California before one
arbitrator."  Settlement Agreement § 11 (italics added).  They also point to the arbitration
provision's incorporation of the JAMS Comprehensive Arbitration Rules and Procedures, which

---

[2] Ripple Labs invokes *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. U.*, 489
U.S. 468 (1989), to argue that the choice-of-law provision means that the CAA governs the
arbitration agreement.  But since *Volt,* the Supreme Court has clarified that general choice-of-law
provisions do not override the default application of the FAA.  In *Mastrobuono v. Shearson
Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995), the Court addressed an agreement, like this one,
with a state choice-of-law provision *and* an arbitration clause incorporating the rules of a specific
arbitrator.  *Id.* at 58-59.  The Court resolved this apparent friction by holding that "the best way to
harmonize the choice-of-law provision with the arbitration provision is to read [the state choice-
of-law language] to encompass substantive principles that [state] courts would apply, but not to
include special rules limiting the authority of arbitrators."  *Id.* at 63-64.  I am bound by
*Mastrobuono* to the extent that it is inconsistent with *Volt*.  *See Wolsey, Ltd. v. Foodmaker, Inc.*,
144 F.3d 1205, 1211-13 (9th Cir. 1998) (explaining that courts are "bound by *Mastrobuono*, not
by *Volt*" in interpreting agreements containing both choice-of-law and arbitration clauses).

likewise delegate questions of jurisdiction and arbitrability to the arbitrator.  *Id.*

In opposition, Ripple Labs argues that the arbitration provision (including its reference of the arbitrability question to the arbitrator) does not apply to its claims because it seeks only injunctive relief and specific performance against McCaleb and those claims are governed by section 10 of the settlement agreement, which provides, in relevant part:

> [T]he Parties shall be entitled to an injunction to prevent breaches of this Agreement, and to specific enforcement of this Agreement and its terms and provisions in any action instituted in any court of the United States or any state having subject matter jurisdiction."

Ripple Labs contends that by not capitalizing the term "agreement" in section 11, the arbitration provision, as indicated below, the parties intended to narrow the scope of the arbitration clause so that it does not govern the "Specific Performance" section:

> Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this *agreement* to arbitrate, shall be determined by arbitration in San Francisco, California before one arbitrator.

Settlement Agreement § 11 (emphasis added).  It asserts that the parties consistently used "Agreement" (capitalized) to refer to the settlement agreement as a whole, so "agreement" (not capitalized) must not refer to the agreement as a whole.

Under federal law, "[t]he question whether parties have submitted a particular dispute to arbitration . . . is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."[3]  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal citations, quotation marks, and modifications omitted).  If the parties clearly and unmistakably assign the arbitrability question to the arbitrator, "the court should perform a second, more limited

---

[3] California law applies a substantially identical test.  *See, e.g., Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 241-42 (2014) (affirming delegation of arbitrability question to arbitrator where the parties' intent to delegate was "clear and unmistakable" and delegation was not revocable pursuant to state law contract defenses).

United States District Court
Northern District of California

inquiry to determine whether the assertion of arbitrability is 'wholly groundless.'"  *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006).

An arbitration provision that explicitly refers arbitrability questions to an arbitrator is evidence that the parties clearly and unmistakably have referred the arbitrability question to an arbitrator.  *See, e.g.*, *Anderson v. Pitney Bowes, Inc.*, 04-cv-4808 SBA, 2005 WL 1048700, at *3 (N.D. Cal. May 4, 2005) ("one need not reference extrinsic materials" where an arbitration clause "facially gives an arbitrator the exclusive authority to determine his or her own jurisdiction").  In addition, in the Ninth Circuit, incorporation of an arbitrator's arbitration rules constitutes evidence that the parties agreed to arbitrate arbitrability.[4]  *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("as long as an arbitration agreement is between sophisticated parties to commercial contracts, those parties shall be expected to understand that incorporation of the [arbitrator's] rules delegates questions of arbitrability to the arbitrator"); *see also id.* ("Virtually every circuit to have considered the issue has determined that incorporation of [an arbitrator's] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.").

Ripple Labs's argument that the arbitrability reference in section 11 does not apply to its claims is unconvincing.  The Ninth Circuit rejected a similar argument in *Oracle*.  There, the arbitration clause incorporated the arbitrator's rules, which, like the JAMS rules, assigned the arbitrability question to the arbitrator.  724 F.3d at 1074.  Oracle argued that a separate provision vesting courts with exclusive jurisdiction over intellectual property claims demonstrated the parties' intent to have a court determine whether intellectual property claims were arbitrable in the first place.  *See Oracle*, 724 F.3d at 1075-76.  The Ninth Circuit disagreed, explaining that Oracle

---

[4] California courts also view the incorporation of rules delegating the arbitrability question to the arbitrator as "clear and unmistakable evidence" of the parties' intent to delegate the arbitrability question to the arbitrator.  *See, e.g.*, *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 557 (2004).

"conflate[d] the *scope* of the arbitration clause, *i.e.,* which claims fall within the carve-out provision, with the question of *who* decides arbitrability." *Id.* at 1076 (emphasis in original). The court noted that whether the determination of whether Oracle's were in fact carved-out from the arbitration provision was separate from the agreement to refer that determination to the arbitrator in the first instance. *Id.* ("The decision that a claim relates to intellectual property rights . . . constitutes an arbitrability determination, which the parties have clearly and unmistakably delegated to the arbitrator by incorporating the UNCITRAL rules.").

Like Oracle, Ripple Labs conflates the scope of the arbitration clause with the question of who decides arbitrability. By incorporating the JAMS rules into the arbitration clause, the parties clearly and unmistakably overcame the default rule and assigned the arbitrability question to the arbitrator. *See Oracle*, 724 F.3d at 1074; *see also Bernal v. Sw. & Pac. Specialty Fin., Inc.*, 12-cv-05797 SBA, 2014 WL 1868787, at *4 (N.D. Cal. May 7, 2014) (incorporation of arbitrator rules "clearly and unmistakably" assigned arbitrability question to arbitrator).

Ripple Labs's reliance on the lower case "agreement" in the phrase "agreement to arbitrate" in section 11 is also unconvincing. By its express terms, section 11 provides that the parties agree to arbitrate "[a]ny dispute, claim or controversy arising out of or relating to this *Agreement* or the breach, termination, enforcement, interpretation or validity thereof." Settlement Agreement § 11 (capitalized in original, emphasis added). It is therefore clear that section 11 applies to the settlement agreement as a whole, not just to disputes relating to section 11.

Having determined that the parties clearly and unmistakably assigned the arbitrability question to the arbitrator, I determine whether the assertion of arbitrability is "wholly groundless." *Qualcomm*, 466 F.3d at 1371. To do so, I "look to the scope of the arbitration clause and the precise issues that the moving party asserts are subject to arbitration," but I do not determine whether Ripple Labs's claims are in fact arbitrable. *Id.*

The parties agreed to arbitrate "[a]ny dispute, claim or controversy arising out of this Agreement or the breach, termination, enforcement, interpretation or validity thereof[.]"

United States District Court
Northern District of California

Settlement Agreement § 11.  The claims at issue clearly arise out of the agreement or the breach of the agreement: Ripple Labs alleges that McCaleb breached the agreement by directing the sale of XRP in amounts exceeding the agreed-upon limits and without notifying Ripple Labs.  Dkt. No. 9, ¶¶ 53-87.  The assertion of arbitrability is not "wholly groundless" and the arbitrator must determine whether the parties' dispute is subject to arbitration.

## III.    STEPHENSON IS EQUITABLY ENTITLED TO COMPEL ARBITRATION

McCaleb and Stephenson argue that the doctrine of equitable estoppel allows Stephenson to enforce the arbitration clause even though he is not a party to the settlement agreement.  Ripple Labs disagrees, arguing that the narrow exception allowing non-parties to compel arbitration does not apply here because it seeks to hold McCaleb and Stephenson liable for distinct claims arising from different conduct.  McCaleb and Stephenson are right.

The Ninth Circuit looks to state law to determine whether a non-signatory may invoke an arbitration clause.  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) ("a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement").  Under California law, "if a plaintiff relies on the terms of an agreement to assert his or her claims against a nonsignatory defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement."  *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 220 (2009).  "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes."  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (internal quotation marks omitted).  Courts routinely allow non-signatory defendants to compel arbitration of tortious interference claims.  *See, e.g., Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 716 (2010); *Boucher v. Alliance Title Co.*, 127 Cal. App. 4th 262, 272 (2005); *Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1717 (2003); *see also Goldman*, 173 Cal. App. 4th at 226 n.10 ("Claims of tortious interference with contract are particularly well suited for imposing equitable

estoppel against the signatory: But for the contract containing the arbitration clause, there would

be no breach and no claim for interference with the contract.").

Ripple Labs argues that *Boucher* is distinguishable because the signatory and non-

signatory defendants were subsidiaries of the same company. But *Boucher* was not dependent on

that relationship. *Boucher*, 127 Cal. App. 4th at 272-73. Rather, the court noted that "[t]he

fundamental point is that a party may not make use of a contract containing an arbitration clause

and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be

resolved." *Id.* at 272. The court found it significant, as I do here, that the plaintiff's claims, which

included tortious interference, "all [made] reference to and presume[d] the existence of the validity

of [the underlying contract]." *Id.*

Ripple Labs alleges that Stephenson acted at the direction and for the benefit of McCaleb

in breaching the settlement agreement. Dkt. No. 9, ¶ 104. As its tortious interference claim relies

on a valid, binding contract between Ripple Labs and McCaleb, as well as Stephenson's

awareness of the contract's terms prior to inducing McCaleb's alleged breach, *see id.*, ¶¶ 101, 103,

the claim is directly entwined with Ripple Labs's breach of contract claim against McCaleb. "But

for the contract containing the arbitration clause, there would be no breach and no claim for

interference with the contract." *See Goldman*, 173 Cal. App. 4th at 226 n.10. Accordingly, the

arbitrator shall determine whether Ripple Labs's tortious interference claim against Stephenson is

arbitrable.

## CONCLUSION

McCaleb's and Stephenson's motion to compel arbitration is GRANTED. Dkt. No. 40.

This action is STAYED pending the arbitrator's determination whether Ripple Labs's claims are

arbitrable and, if they are, the resolution of the arbitration. The parties shall jointly advise me

within 10 days of (i) the arbitrator's determination that the claims are not arbitrable, (ii) the

arbitrator's award, in the event that the arbitrator determines that the claims are arbitrable, or (iii)

the settlement of this dispute. Beginning six months from the date of this Order, the parties shall

1    file a Joint Status Report every six months apprising the Court of the status of the arbitration.

2         **IT IS SO ORDERED**.

3    Dated: August 6, 2015

4    

5    WILLIAM H. ORRICK
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

11