1  Jessica Nall (State Bar No. 215149)
   jnall@fbm.com
2  Kelly A. Woodruff (State Bar No. 160235)
   kwoodruff@fbm.com
3  Christopher C. Wheeler (State Bar No. 224872)
   cwheeler@fbm.com
4  Farella Braun + Martel LLP
   235 Montgomery Street, 17th Floor
5  San Francisco, CA  94104
   Telephone:  (415) 954-4400
6  Facsimile:  (415) 954-4480

7  Attorneys for Plaintiff
   BITSTAMP LTD.

8              UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11  BITSTAMP LTD., a foreign company,        CASE NO. 3:15-cv-1503 WHO

12              Plaintiff,                    **BITSTAMP'S [REDACTED] SPECIAL
                                             MOTION TO STRIKE COUNTERCLAIM**
13        vs.

14  RIPPLE LABS INC., a California           **[Cal. Code Civ. Proc. § 425.16 ("anti-
    Corporation, JACOB STEPHENSON, an        SLAPP")]**
15  individual, NANCY HARRIS, an
    individual, JED MCCALEB, an individual,
16  and DOES 1 Through 10, Inclusive,
                                             Date:        October 7, 2015
17              Defendants.                   Time:        2:00 p.m.
                                             Judge:       Hon. William H. Orrick
18                                           Courtroom:   2, 17th Floor

19  STELLAR DEVELOPMENT
    FOUNDATION, a Delaware Nonprofit
20  Corporation,

21              Counterclaimant and          **REDACTED VERSION OF
                Crossclaimant,               DOCUMENT SOUGHT TO
22                                               BE SEALED**
          vs.
23
    RIPPLE LABS INC., a California
24  Corporation, GEORGE FROST, an
    individual,  BITSTAMP LTD., a foreign
25  company, and DOES 1 Through 20,
    inclusive,
26
                Cross-Defendants and
27              Counter-Defendants.

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that on October 7, 2015, at 2:00pm, or as soon thereafter as the matter may be heard by the above-titled court, Counter-Defendant Bitstamp Ltd. ("Bitstamp") will and hereby does specially move, pursuant to Federal Rules of Civil Procedure Rule 12(e) and California Code of Civil Procedure § 425.16 for an Order striking Counterclaimant Stellar Development Foundation's counterclaim against Bitstamp and awarding Bitstamp its attorneys' fees and costs incurred in making this Motion.

This Motion To Strike is brought on the following grounds:

1.    The Counterclaim arises out of Bitstamp's protected litigation and quasi-litigation activities, which is protected activity as a matter of law.  Cal. Code Civ. Proc. § 425.16(e)(1), (2).

2.    Counter-claimant cannot set forth admissible evidence to satisfy its burden of proving a possibility of prevailing on its counterclaim.

The request for attorneys' fees and costs is made pursuant to Code of Civil Procedure section 425.16(c) on the ground that the prevailing defendant on a special motion to strike is statutorily entitled to its fees and costs.  These fees and costs total $22,848.70, excluding any fees and costs for preparing a Reply Brief and for a hearing on the Motion.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying Declaration of Kelly A. Woodruff, SDF's Counterclaim (Dkt. 122), the Court's Discharge Order (Dkt. 63), the Reply Declaration of Jean-Baptiste Graftieaux (Dkt. 57) (filed under seal), the Supplemental Declaration of Jessica Nall (Dkt. 112), the [Proposed] Order Granting Bitstamp's Motion to Strike Counterclaim, all pleadings and papers filed in this action, and any other evidence or argument presented by counsel to the Court.

Dated: September 1, 2015                      FARELLA BRAUN + MARTEL LLP


                                              By:  /s/ Kelly A. Woodruff
                                                   Kelly A. Woodruff

                                              Attorneys for Bitstamp Ltd.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   STATEMENT OF RELEVANT FACTS ........................................................................... 2

    A.   Bitstamp Receives Notice Of Competing Demands To Funds .............................. 2

    B.   Bitstamp Initiates The Interpleader Action ........................................................... 3

    C.   Bitstamp Seeks A Discharge ................................................................................. 5

    D.   The Court Grants Bitstamp A Discharge, Dismissing It From The Action ............ 6

    E.   SDF Asserts Counterclaims Against Bitstamp Based Solely On Bitstamp's
        Actions In Connection With The Interpleader. ...................................................... 7

III.  LEGAL STANDARD ................................................................................................... 10

IV.   ARGUMENT ............................................................................................................... 12

    A.   The Anti-SLAPP Statute Applies To 'SDF's Unfair Competition Claim
        Against Bitstamp. ................................................................................................ 12

    B.   SDF Cannot Meet Its Burden Of Establishing A Probability Of Prevailing
        On The Merits Of Its Unfair Competition Counterclaim Against Bitstamp. ........ 14

        1.   SDF's Counterclaim Against Bitstamp Is Barred By Collateral
            Estoppel ................................................................................................. 14

        2.   Bitstamp's Actions In Freezing And Interpleading The Disputed
            Funds Are Absolutely Privileged By California's Litigation
            Privilege. ............................................................................................... 17

        3.   SDF Has Not Stated Nor Substantiated An Unfair Competition
            Claim Against Bitstamp ......................................................................... 19

    C.   Bitstamp Is Entitled To Recover Its Reasonable Attorneys' Fees And Costs ...... 21

V.    CONCLUSION ............................................................................................................ 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Batzel v. Smith,*
  333 F.3d 1018 (9th Cir. 2003)..................................................................................... 1, 21

*City of Portland v. Hartfield,*
  No. 3:11-CV-00100-KI, 2014 WL 4181971 (D. Or. Aug. 21, 2014) .................................... 17

*DC Comics v. Pacific Pictures Corp.,*
  706 F.3d 1009 (9th Cir. 2013)........................................................................................ 10

*First Interstate Bank of Oregon, N.A. v. U.S. By and Through I.R.S.,*
  891 F. Supp. 543 (D. Or. 1995)...................................................................................... 17

*Harper v. Lugbauer,*
  No. C 11-01306 JW, 2012 WL 1029996 (N.D. Cal. Mar. 15, 2012)..................................... 18

*Herman Miller, Inc. Retirement Income Plan v. Magallon,*
  2008 WL 2620748 (E.D. Cal. July 2, 2008........................................................................ 17

*Lee v. W. Coast Life Ins. Co.,*
  688 F.3d 1004 (9th Cir. 2012)................................................................................... 16, 17

*Makaeff v. Trump Univ., LLC,*
  715 F.3d 254 (9th Cir. 2013)......................................................................................... 18

*Michelman v. Lincoln Nat. Life Ins. Co.,*
  No. C10-0271RSL, 2010 WL 3212008 (W.D. Wash. Aug. 10, 2010) .................................. 17

*Prudential Ins. Co. of Am. v. Hovis,*
  553 F.3d 258 (3d Cir. 2009).................................................................................... 16, 17

*Sun Life Assur. Co. of Canada, U.S. v. Chirolo,*
  No. C 08-03465 WHA, 2009 WL 113009 (N.D. Cal. Jan. 16, 2009)..................................... 16

*Thomas v. Fry's Electronics,*
  400 F.3d 1206 (9th Cir. 2005)........................................................................................ 10

*Trustees of the ILWU-PMA Pension Plan v. Coates,*
  No. C-11-3998 EMC, 2013 WL 556800 (N.D. Cal. Feb. 12, 2013)..................................... 17

*Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc.,*
  682 F. Supp. 2d 1003 (N.D. Cal. 2010) ................................................................ 13, 14, 18

## STATE CASES

*Bergstein v. Stroock & Stroock & Lavan LLP,*
  236 Cal. App. 4th 793 (2015)........................................................................................ 11

*Briggs v. Eden Council for Hope & Opportunity,*
  19 Cal. 4th 1106 (1999) ............................................................................................... 13

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO
- ii -

*Cel-Tech Comm'cns, Inc. v. Los Angeles Cellular Tel. Co.,*
  20 Cal. 4th 163 (1999) ............................................................................................... 20

*City of Cotati v. Cashman,*
  29 Cal. 4th 69 (2002) ................................................................................................. 11

*Digerati Holdings, LLC v. Young Money Entertainment, LLC,*
  194 Cal. App. 4th 873 (2011)..................................................................................... 13

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman,*
  47 Cal. App. 4th 777 (1996)................................................................................ 10, 13

*Emery v. Visa Int'l Serv. Ass'n,*
  95 Cal. App. 4th 952 (2002)................................................................................ 19, 20

*Equilon Enterprises v. Consumer Cause, Inc.,*
  29 Cal. 4th 53 (2002) .......................................................................................... 10, 11

*Finton Construction, Inc. v. Bidna & Keys, APLC,*
  238 Cal. App. 4th 200 (2015)........................................................................ 11, 14, 18

*Flatley v. Mauro,*
  39 Cal. 4th 299 (2006) ............................................................................................... 11

*HMS Capital, Inc. v. Lawyers Title Co.,*
  118 Cal. App. 4th 204 (2004)..................................................................................... 12

*In re Firearm Cases,*
  126 Cal. App. 4th 959 (2005)..................................................................................... 19

*Lucido v. Superior Court,*
  51 Cal. 3d 335 (1990) ...................................................................................... 15, 16, 17

*Navellier v. Sletten,*
  29 Cal. 4th 82 (2002) .......................................................................................... 11, 13

*Neville v. Chudacoff,*
  160 Cal. App. 4th 1255 (2008)................................................................................... 13

*No Doubt v. Activision Publishing, Inc.,*
  192 Cal. App. 4th 1018 (2011)................................................................................... 11

*Olszewski v. Scripps Health,*
  30 Cal. 4th 798 (2003) ............................................................................................... 18

*People v. Toomey,*
  157 Cal. App. 3d 1 (1984).......................................................................................... 19

*Richardson-Tunnell v. Sch. Ins. Program for Employees,*
  157 Cal. App. 4th 1056 (2007)................................................................................... 20

*Rubin v. Green,*
  4 Cal. 4th 1187 (1993) ............................................................................................... 18

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO

- iii -

*Rusheen v. Cohen,*
    37 Cal. 4th 1048 (2006) ............................................................................... 13, 18

*Schaffer v. City and County of San Francisco,*
    168 Cal. App. 4th 992 (2008) ............................................................................ 10

*Silberg v. Anderson,*
    50 Cal. 3d 205 (1990) ........................................................................................ 17

*Simmons v. Allstate Insurance Co.,*
    92 Cal. App. 4th 1068 (2001) ............................................................................ 21

*Teitelbaum Furs, Inc. v. Dominion Ins. Co.,*
    58 Cal. 2d 601 (1962) ........................................................................................ 15

*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.,*
    106 Cal. App. 4th 1219 (2003) .......................................................................... 12

*Wallace v. McCubbin,*
    196 Cal. App. 4th 1169 (2011) ............................................................. 12, 13, 18

## STATE STATUTES

Cal. Bus. & Prof. Code § 17200 ............................................................... 9, 14, 20

Cal. Civ. Code § 47(b)(2) ................................................................................... 17

Cal. Civ. Proc. Code § 425.16 ..................................................................... passim

Cal. Civ. Proc. Code § 425.16(a) ....................................................................... 10

Cal. Civ. Proc. Code § 425.16(b)(1) ....................................................... 11, 13, 14

Cal. Civ. Proc. Code § 425.16(c) ....................................................................... 21

Cal. Civ. Proc. Code §425.16(e) ......................................................................... 11

## OTHER AUTHORITY

Rachel Abrams, et al., *Erosion of Faith Was Death Knell for Mt. Gox*, New York Times
    (Feb. 28, 2014) .................................................................................................... 3

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO

- iv -

I.     **INTRODUCTION AND SUMMARY OF ARGUMENT**

Stellar Development Foundation ("SDF") filed a counterclaim against plaintiff-in-interpleader Bitstamp Ltd. based solely on Bitstamp's filing the underlying interpleader action and related litigation activities.  The California Legislature enacted California Code of Civil Procedure Section 425.16, the anti-SLAPP statute, precisely to nip meritless lawsuits like this in the bud.

California's anti-SLAPP statute authorizes defendants (and counter-defendants) to move to strike "Strategic Litigation Against Public Participation" or "SLAPP" suits, which are lawsuits that "masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so."  *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003) (quotations omitted).  SDF's counterclaim is a quintessential SLAPP.

Bitstamp filed the underlying interpleader action after it received notice of competing claims to approximately $1 million held in an account maintained on Bitstamp's currency exchange (the "Disputed Funds").  As a result of the competing claims, Bitstamp filed the interpleader to have the Court resolve the issue of which claimant is entitled to the Disputed Funds.  SDF, in direct response to Bitstamp's Complaint in Interpleader, then filed a meritless Counterclaim against Bitstamp, asserting a single unfair competition claim based solely on actions Bitstamp allegedly took in connection with the interpleader action.  Bitstamp's actions are protected activity, and SDF's counterclaim is subject to California's anti-SLAPP statute.

Further, SDF has stated and cannot substantiate a legally sufficient unfair competition claim against Bitstamp.  SDF's counterclaim is barred by the doctrine of collateral estoppel and the California litigation privilege and, in any case, SDF cannot meet its burden of establishing with admissible evidence a probability of prevailing on the merits.  Because SDF's frivolous counterclaim is expressly based on the Complaint in Interpleader and is brought not to vindicate any legal right but rather to harass Bitstamp because it exercised its right to petition this Court for relief, it the Court should strike the counterclaim and award Bitstamp its attorneys' fees and costs in having to bring this Motion.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO

II.    **STATEMENT OF RELEVANT FACTS**

    A.    **Bitstamp Receives Notice Of Competing Demands To Funds.**

       Bitstamp is a company based in the United Kingdom that operates a worldwide digital currency exchange.  Complaint (Dkt. 1) ¶ 1.  Bitstamp operates as a gateway for XRP—the math-based currency created by Defendant Ripple Labs Inc. ("Ripple").  Bitstamp enables the exchange of XRP for other digital currency and fiat currency, including U.S. dollars.  As a general matter, Bitstamp claims no ownership interest in funds transferred or exchanged using Bitstamp.  Declaration of Jean-Baptiste Graftieaux (Dkt. 57) ("Graftieaux Decl.") ¶ 2.

       On March 26, 2015, Bitstamp received a letter from Ripple Labs claiming "sole interest" to funds in Bitstamp's possession, held in Ripple Account "r3Q," which, according to Ripple, was "currently being claimed by Jacob Stephenson."  *Id.* ¶ 13 & Ex. C.  Ripple informed Bitstamp that account r3Q is "purportedly controlled by Jacob Stephenson, but [] Ripple has evidence [that it] is in fact being controlled by Mr. Stephenson's cousin, Mr. McCaleb."  *Id*. Ex. C.  Ripple claimed that McCaleb was fraudulently manipulating the r3Q account by "using Bitstamp to secretly funnel the proceeds of [a] sale" of 89,999,900 XRP through Stephenson's Ripple account, when "this sale was at the direction of and for the benefit of Mr. McCaleb."  *Id*.  According to Ripple, it had "sent the purchase funds to the r3Q account."  *Id*.  Ripple asserted "its sole interest" in the funds and "demand[ed] the immediate transfer of the $75,000 to Ripple's account."  *Id*. at 2.  Ripple concluded its March 26 letter with the following threat: "Should Bitstamp fail to respond by the specified time, or if it refuses to comply with this demand, Ripple will seek all legal remedies available to it against Bitstamp and others."  *Id*.  Ripple's March 26 letter did not indicate that SDF had any claim on the funds held by "r3Q."  *Id*.

       On March 30, 2015, Bitstamp received another letter from Ripple informing it that "there is approximately $963,000 of additional funds in Bitstamp's control currently being claimed by Jacob Stephenson or others."  *Id*. ¶ 14 & Ex. E.  Ripple demanded that Bitstamp not "release these funds or the approximately $75,000 in funds referenced in my March 26th letter [], totaling $1,038,172, to anyone other than Ripple Labs for the reasons set forth in my prior letter to you."

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO

- 2 -

1  *Id*. Ex. E.  Once again, Ripple's letter did not indicate that SDF had any claim to the $1,038,172

2  (the "Disputed Funds").  *Id*.

3  **B.      Bitstamp Initiates The Interpleader Action.**

4  Bitstamp maintains and enforces an anti-money laundering policy ("AML Policy") to

5  provide the framework for effective compliance with anti-money laundering and counter terrorist

6  financing laws.  Grafieaux Decl. ¶ 5.  Bitstamp's AML Policy provides ███████████████

7  ███████████████████████████████████████████████████████████████████

8  ██████████████████████████████████ ¶ 7 & Ex. A at 7 (filed under seal).  For

9  individuals, Bitstamp's ███████████████████████████████████████

10 ███████████████████████████████████████████████████████████████████

11 ███████████████████████████████████████████████████████████

12 ███████████████████ *Id*. at 8.  Bitstamp's AML Policy provides that ████████████

13 ███████████████████████████████████████████████████████████████████

14 ███████████████████████████████████████████████████████████

15 ████████████████████████████ *Id*. at 13.

16 Ripple's two letters immediately triggered review and action under Bitstamp's AML

17 Policy.  Because "r3Q" is a Ripple account, Bitstamp did not know who actually owned or

18 controlled the account (or any other Ripple account).  Grafieaux Decl. ¶¶ 3,11.  However, even

19 prior to receiving Ripple's March 26 letter, Bitstamp had been monitoring Bitstamp accounts

20 believed to be related to or controlled by McCaleb, including Mr. Stephenson's.  *Id*. ¶ 10.

21 McCaleb is a notorious figure in the virtual currency community.  He is the founder of Mt. Gox—

22 a Bitcoin exchange based in Tokyo that filed for bankruptcy in early 2014 claiming it had lost

23 hundreds of millions of dollars of Bitcoins.  *See* Rachel Abrams, et al., Erosion of Faith Was

24 Death Knell for Mt. Gox, New York Times (Feb. 28, 2014).  McCaleb is also the subject of an

25 ongoing criminal investigation ████████████████████████████████████████

26 ████████████████████ Grafieaux Decl. ¶ 10, Ex. D (filed under seal).

27 In light of (1) Bitstamp's AML Policy, (2) Ripple's claim that Bitstamp was being

28 fraudulently used by McCaleb to "secretly funnel" proceeds, and (3) Ripple's claim to "sole

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO

- 3 -

1   interest" in an account purportedly owned by Stephenson but controlled by McCaleb, Bitstamp

2   froze the Disputed Funds on March 31, 2015. Order of Discharge ("Order") (Dkt. 63) at 2.

3   Bitstamp then promptly filed this interpleader action on May 1, 2015, naming Ripple, McCaleb,

4   Stephenson, and Nancy Harris as defendants. Complaint in Interpleader (Dkt. 1). Bitstamp did

5   "not know [] which of [the] Defendants is entitled to the Disputed Funds" (*id*. ¶ 33) and made no

6   claim to the Disputed Funds (*id*. ¶ 33). Therefore, Bitstamp sought "the Court's assistance in

7   resolving ownership rights of rival claimants to the same assets." *Id*. ¶ 1.

8        Bitstamp did not name SDF as a defendant in the interpleader action because it had no

9   notice that SDF asserted any claim to the Disputed Funds. In addition, SDF did not have an

10  authorized account with Bitstamp. Graftieaux Decl. ¶ 18. Although SDF had submitted a request

11  to open a Bitstamp account on or around April 1, the same day Bitstamp filed the interpleader

12  action, SDF subsequently provided inconsistent information and did not provide the information

13  Bitstamp required pursuant to its AML Policy. *Id*. Indeed, as of June 4, SDF still had not

14  completed Bitstamp's "know your customer" process, did not yet have an authorized account

15  with Bitstamp and was not yet authorized to conduct any transaction using Bitstamp. *Id*. ¶ 21.[1]

16       On May 11, 2015, Stephenson emailed Bitstamp, announcing that "I don't have any claim

17  over the Bitstamp USD" and "[a]s far as I know, at this point the USD belongs to Stellar

18  Development Foundation." Graftieaux Decl. ¶ 16. Prior to that time, SDF had not asserted that

19  it owned any of the Disputed Funds. *Id*. But on the same day, SDF's outside counsel, Terry

20  Gross, sent Bitstamp an email in which SDF claimed to be the owner of one of the frozen

21  accounts. *Id*. ¶ 17. When SDF finally did come forward, it demanded that Bitstamp release the

22  Disputed Funds to it, notwithstanding the pending action, and repeatedly threatened Bitstamp

23  with a lawsuit. Supplemental Declaration of Jessica Nall ("Supp. Nall Decl.") (Dkt. 112) ¶ 9.

24

25

26

27  [1] Although users may sign up for Bitstamp's website simply with an email address, users cannot
    deposit funds or conduct any exchange transactions until the customer completes Bitstamp's

28  know your customer process. Graftieaux Decl. ¶ 21 Ex. A at 11.

MOT. TO STRIKE COUNTERCLAIM          - 4 -
Case No. 3:15-cv-1503 WHO

1

### C.     Bitstamp Seeks A Discharge.

Once all claimants to the Disputed Funds became known, Bitstamp promptly sought the parties' agreement to a discharge (Supp. Nall Decl. (Dkt. 112), ¶ 11), and when that effort failed, it moved for discharge.  Dkt. 20.  Bitstamp asserted it satisfied the requirements for interpleader because it faced actual and potential competing claims to the Disputed Funds, it asserted no interest in or claim to the Disputed Funds, and it did not create or contribute to the controversy over the disputed funds.  *Id.*  Bitstamp acknowledged that it had received relevant information indicating that SDF was the proper recipient of the Disputed Funds (Declaration of George Frost ("Frost Decl.") (Dkt. 21) ¶ 3), but in light of the pending interpleader, it asked the Court's permission to release the Disputed Funds to SDF (Dkt. 20 at 8).

Ripple responded by filing an *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Why A Preliminary Injunction Should Not Issue seeking to enjoin any transfer of the Disputed Funds.  Dkt. 23.  In its Application, Ripple also continued to level threats against Bitstamp.  *See*, *e.g.*, *id.* at 15 ("By transferring the Disputed Funds to McCaleb and Stellar, Bitstamp not only exposes itself to potential civil liability to Ripple Labs…but may even face potential regulatory or criminal exposure for doing so.")  The Court granted the TRO on May 15, 2015, and ordered that McCaleb and Stephenson sit for deposition and produce documents.  Dkt. 24.

Notwithstanding the grant of the TRO, SDF and the individual defendants refused to stipulate to allow Bitstamp to deposit the Disputed Funds with the Court as is typically required in an interpleader action.  Instead, on May 20, 2015, just days after the Court issued the TRO, the individual defendants moved to dissolve it.  Dkt. 31.  In their motion, they attempted to create new uncertainty about who were the proper claimants to the Disputed Funds.  Notably, despite that Stephenson had renounced any claim to the Disputed Funds on May 11, in their motion to dissolve, the individual defendants asserted that Mr. Stephenson did in fact have a claim to a portion of the Disputed Funds.  *Id.* at 2 ("Stellar and Mr. Stephenson understandably would like their money sooner rather than later…").  Only after the Court denied the motion to dissolve did

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO

- 5 -

1  SDF and the individual defendants stipulate to the transfer of the Disputed Funds to the Court.

2  Dkt. 55 at 2.

3      In the meantime, however, SDF and the individual defendants continued to refuse to

4  stipulate to Bitstamp's discharge.  Instead, on May 22, they jointly filed a motion to dismiss the

5  interpleader action, arguing, among other things, that interpleader was improper since Bitstamp

6  did not have a good faith belief that it was facing competing claims to the Disputed Funds and

7  that Bitstamp was not disinterested but, instead, was acting in concert with Ripple.  Dkt. 41 at

8  4-7.  Also on May 22, SDF filed a motion to intervene, attaching as Exhibit A a Proposed Motion

9  to Dismiss the Complaint for Interpleader.  Dkt. 39.  And on May 28, SDF and the individual

10  defendants jointly filed a 19-page opposition to Bitstamp's discharge.  Dkt. 52.

11      In their opposition to Bitstamp's discharge, SDF again argued that interpleader was

12  improper, and that Bitstamp was not a disinterested stakeholder and instead "colluded" with

13  Ripple to freeze SDF's funds and harm SDF.  For example, SDF argued that Bitstamp had not

14  satisfied the requirements for interpleader because it did not in good faith face competing claims

15  to the Disputed Funds (*id.* at 8), that Bitstamp "is not a good faith stakeholder" (*id.* at 12), that

16  Bitstamp is not a disinterested stakeholder, but rather "colluded with Ripple in filing this

17  interpleader action" (*id.* at 13), that Bitstamp's attorney George Frost also represented and acted

18  on behalf of Ripple (*id.* at 14-15), that Bitstamp's collusion with Ripple is evident from the facts

19  alleged in the interpleader complaint (*id.* at 16), that "Ripple and Bitstamp are significantly

20  intertwined" (*id.* at 17), and that "Bitstamp is not a disinterested stakeholder" (*id.*).  In addition,

21  SDF argued that any discharge was premature because SDF had "valid legal claims that it can

22  assert against Bitstamp" for improperly exercising "dominion and control" over SDF's property,

23  and "discharge now is improper until such time as Defendants' motion to dismiss, and Stellar's

24  counterclaims, can be resolved."  *Id.*

25      **D.**  **The Court Grants Bitstamp A Discharge, Dismissing It From The Action.**

26      The Court granted Bitstamp's discharge motion on the papers on June 8, 2015, rejecting

27  each of SDF's arguments.  Dkt. 63.  The Court held that "the requirements for interpleader have

28  been met."  *Id.* at 4.  Specifically, the Court rejected SDF's argument that Bitstamp was not a

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO                    - 6 -

good faith stakeholder, finding to the contrary that "there is no real question that there are competing claims to the disputed funds" and that "Bitstamp faces actual and potential claims to the disputed funds." *Id.* at 4.  Citing settled Ninth Circuit law, the Court rejected SDF's argument that Bitstamp was required to adjudicate the merits of Ripple's claim to "sole interest" in the Disputed Funds.  *Id.* at 4.  The Court recognized that "Bitstamp was not required to determine whether Ripple Lab's claim to the disputed funds was colorable"; rather "the presence of adverse claims is sufficient" for interpleader.  *Id.* at 5.  Importantly, the Court expressly rejected SDF's argument that Bitstamp was not a good faith stakeholder "because its interests coincide with Ripple Lab's interests" and because one of its attorneys represented Ripple at some point.  Rejecting SDF's "collusion" theory, the Court observed that the virtual currency market was very intertwined and that Bitstamp had initially sought permission to release the Disputed Funds *to SDF*.  *Id.* at 5.

In its conclusion, the Court noted that SDF's and the individual defendants' motion to dismiss the interpleader was still pending, but that "at least some of the arguments in favor of the joint motion appear to be the same as the arguments I rejected here."  *Id.* at 6.  Taking their cue from the Court, and on Bitstamp's request, SDF and the individual defendants withdrew their motion to dismiss on June 16, 2015, the day before Bitstamp's opposition to the motion to dismiss was due.  Dkt. 64.

**E.    SDF Asserts Counterclaims Against Bitstamp Based Solely On Bitstamp's Actions In Connection With The Interpleader.**

After having been discharged from the action, Bitstamp filed its motion for attorneys' fees on June 26, 2015.  Dkt. 77 (corrected at Dkt. 80).  In apparent retaliation for the attorneys' fees motion, on July 6, 2015—more than six weeks after filing its Motion to Intervene, almost one month after the Court issued its discharge order, more than three weeks after withdrawing its motion to dismiss, and just a few days prior to the hearing on the motion to intervene—SDF filed with this Court a "Notice of Corrected Exhibit A" to their motion, swapping a proposed counterclaim against Bitstamp and cross-claims against Frost and Ripple for its withdrawn motion to dismiss.  Dkt. 88.  Bitstamp did not oppose SDF's intervention, but it filed on July 10,

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO

- 7 -

2015, a brief Response to SDF's untimely attempt to file a counterclaim against Bitstamp after Bitstamp had been discharged.  Dkt. 94.

At the hearing on SDF's motion to intervene,[2] counsel for SDF argued that its counter- and cross-claims were not barred by the Discharge Order because the second and third causes of action were not related to the interpleader action:

> The second and third cause of action are not about the interpleaded funds at all, they're about the fact that Ripple and Frost conspired to interfere with Stellar's economic relations with this third – this other exchange called Coinex, and that Stellar and Frost conspired to interfere with Stephenson's relationship with Frost that ended up, you know, creating an economic disadvantage for Stellar.  That has nothing to do with – I mean, they're the funds that ended up being before this Court, but it has nothing to do with the interpleader part of it.

(Reporter Tr. ("RT") of July 16, 2015 Mot. to Intervene Hearing) (Dkt. 109) at 17:20-18:4.  But in making this argument, counsel for SDF misled the Court to believe that all three causes of action were asserted against Bitstamp, when in fact, only the first cause of action (which SDF implicitly conceded *was related to the interpleader action*) was asserted against Bitstamp.  *Id.* ("what Ms. Nall is doing when she's looking at the complaint is she's unfortunately I think for her view of it, she's forgotten to look at some of the allegations.  The second and third cause of action ….").

On August 6, 2015, the Court granted SDF's motion to intervene.  Dkt. 117.  In allowing SDF to file its counterclaim and cross-claims, the Court stated that SDF's allegations were more developed and extensive than those made in opposition to Bitstamp's discharge.  *Id.* at 2.  The Court may not have recognized at that time, however, that none of the more "developed" allegations concerned Bitstamp and that the only cause of action asserted against Bitstamp was barred by the Discharge Order.  *Id.*  The Court also noted that SDF was not yet a party when it granted Bitstamp's discharge, and therefore concluded that SDF's allegations were not before the Court at the time of discharge.  *Id.*  However, although SDF had not yet formally intervened, it still filed a 19-page opposition to Bitstamp's discharge motion, accompanied by a declaration by

---

[2] The individual defendants had filed a motion to compel arbitration and stay the action pending arbitration against Ripple, which was set to be heard the same day as SDF's motion to intervene.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO                          - 8 -

1  its own counsel in support of its opposition, which made the exact same allegations against

2  Bitstamp that it made in its counterclaim.  Dkt. 52.  Moreover, in its opposition to Bitstamp's

3  discharge, SDF indicated it had valid counterclaims it would potentially assert against Bitstamp

4  and that discharge would be "improper until such time as Defendants' motion to dismiss, and

5  Stellar's counterclaims, can be resolved."  *Id.* at 17.  Notwithstanding SDF's assertion, of course,

6  the Court elected to discharge Bitstamp.

7       SDF filed its counterclaim against Bitstamp on August 12, 2015.  Dkt. 122.  SDF asserts a

8  single cause of action against Bitstamp for unfair competition in violation of California Business

9  and Professions Code section 17200 and alleges only four paragraphs against Bitstamp:

10       • Paragraph 4:  Ripple acted "in concert with Frost and Bitstamp" to freeze SDF's

11            funds;

12       • Paragraph 26:  Ripple, Frost and Bitstamp took part in a "scheme" to have SDF's

13            account frozen, involving Ripple sending letters to Bitstamp making a claim to

14            funds despite knowing that the funds it was "requesting Bitstamp freeze" were

15            owned by SDF;

16       • Paragraph 27:  Frost, "as Bitstamp's chief legal officer, but also acting on behalf of

17            Ripple" caused Bitstamp to "improperly freeze SDF's account . . . despite knowing

18            that Ripple's claim of a breach of contract was false, that Ripple had no basis to

19            claim these funds, and that there was no likelihood that Ripple would sue Bitstamp

20            and thus that there was no valid basis for the interpleader"); Frost and Bitstamp

21            "colluded" in Ripple's actions and scheme; and Frost's and Bitstamp's "collusion"

22            is evident from the allegations favoring Ripple in the complaint;

23       • Paragraph 31:  Frost is an agent and employee of Bitstamp, and Frost was acting in

24            the course and scope of his employment when he caused Bitstamp to freeze SDF's

25            funds, "depriving SDF of the use of these funds"; Bitstamp is therefore vicariously

26            liable for Frost's unfair competition.

27  *Id.* at ¶¶ 4, 26, 27, 31.  Although SDF asserts other allegations against Frost, each of those

28  allegations involve a claim that Frost was acting as a representative of Ripple, not acting within

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO                    - 9 -

the scope of his employment with Bitstamp.  *See, e.g., id.* ¶ 3 ("Ripple and Frost took actions to prop up the price of Ripple's XRP currency"); ¶ 15 ("Ripple then began a scheme, along with Frost, to damage SDF"); ¶ 18 ("Ripple and Frost conspired to prop up the price of Ripple's XRPs"); ¶ 25 ("This transfer allowed Ripple and Frost to exercise dominion and control over SDF's funds").[3]  The only allegations in which SDF contends that Frost was acting in the course and scope of his employment with Bitstamp are related to Bitstamp freezing SDF's funds and filing the interpleader.

Bitstamp now moves for an order striking SDF's counterclaim against it and awarding it its attorneys' fees and costs incurred in making the motion, pursuant to California's anti-SLAPP statute, California Code of Civil Procedure § 425.16.

### III.   <u>LEGAL STANDARD</u>

California's anti-SLAPP statute is a procedural device by which a defendant may file a special motion to strike a "meritless suit filed primarily to chill the defendant's exercise of First Amendment rights."  *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 783 (1996).  The Legislature has stated that the purpose of the statute is to curtail the chilling effect meritless lawsuits may have on the exercise of free speech and petition rights, and the statute is to be interpreted broadly to accomplish that goal.  Cal. Code Civ. Proc. § 425.16(a); *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 60 (2002).  The Ninth Circuit has held that the anti-SLAPP procedure is available against state law claims asserted in federal court.  *DC Comics v. Pacific Pictures Corp.*, 706 F.3d 1009, 1013 n.5 (9th Cir. 2013) (citing *Thomas v. Fry's Electronics*, 400 F.3d 1206, 1206 (9th Cir. 2005)).

The anti-SLAPP statute does not immunize all free speech or petitioning conduct.  Rather, an anti-SLAPP motion merely forces a SLAPP plaintiff to demonstrate, at an early stage of the litigation, the likelihood of prevailing on the merits.  *Schaffer v. City and County of San Francisco*, 168 Cal. App. 4th 992, 1004 (2008) (anti-SLAPP statute "merely attempts to insulate [defendants] from having to litigate plainly *unmeritorious* lawsuits….  If, in fact, there *is* merit to

---

[3]   SDF's ad hominem allegations against Frost are pure speculation based solely on the ground that Frost used to represent Ripple in a different matter, and have no basis in fact.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO                    - 10 -

1   the plaintiff's cause of action, the plaintiff can avoid dismissal simply by establishing a

2   probability of prevailing.") (emphasis in original); *see also Flatley v. Mauro,* 39 Cal. 4th 299, 312

3   (2006) (Section 425.16 "establishes a procedure where the trial court evaluates the merits of the

4   lawsuit using a summary-judgment-like procedure at an early state of the litigation.").

5         In determining whether a special motion to strike should be granted, the Court must

6   perform a two-part analysis.  The first prong is procedural; the Court must determine whether the

7   moving party has made a threshold showing that the action arises from protected activity within

8   the meaning of the statute.  *Equilon*, 29 Cal. 4th at 67; *Finton Construction, Inc. v. Bidna & Keys,*

9   *APLC*, 238 Cal. App. 4th 200, 209 (2015).  As relevant here, protected activity is statutorily

10  defined to include:  "(1) any written or oral statement or writing made before a … judicial

11  proceeding …; (2) any written or oral statement made in connection with an issue under

12  consideration or review by a … judicial body …."  Code Civ. Proc. § 425.16(e).  To satisfy the

13  first prong, the moving party need not establish that the challenged actions are protected by the

14  First Amendment.  *Equilon*, 29 Cal. 4th at 66-67.  Nor does the moving party need to show that

15  the action was filed with a specific, subjective intent to chill the exercise of free speech or petition

16  rights, or that the lawsuit has had the actual effect of chilling First Amendment rights.  *City of*

17  *Cotati v. Cashman*, 29 Cal. 4th 69, 76 (2002).  Rather, the burden is met by "demonstrating that

18  the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16,

19  subdivision (e)."  *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002) (citation omitted).

20        If the Court concludes that one or more causes of action arise from protected activity, the

21  burden shifts to plaintiff to establish the probability of prevailing on the merits.  Code Civ. Proc.

22  §425.16(b)(1); *Bergstein v. Stroock & Stroock & Lavan LLP*, 236 Cal. App. 4th 793, 803 (2015).

23  To meet its burden under the second step of Section 425.16's two-part test, plaintiff must prove

24  "that the complaint is both legally sufficient and supported by a sufficient prima facie showing of

25  facts to sustain a favorable judgment" if plaintiff's evidence is credited.  *Navellier*, 29 Cal. 4th at

26  88-89.  The Court looks at the pleadings and supporting declarations, and must consider all

27  available defenses to the claims.  *No Doubt v. Activision Publishing, Inc.*, 192 Cal. App. 4th 1018,

28  1026 (2011).  The evidence put forward at this stage must be admissible; even allegations in a

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO

- 11 -

1  verified complaint are insufficient.  *Wallace v. McCubbin*, 196 Cal. App. 4th 1169, 1206 (2011)

2  ("To demonstrate a probability of prevailing, the plaintiff must produce *admissible evidence* from

3  which a trier of fact could find in the plaintiff's favor, as to every element the plaintiff needs to

4  prove at trial and at least one element of any applicable affirmative defense.") (emphasis in

5  original); *see also HMS Capital, Inc. v. Lawyers Title Co*. 118 Cal. App. 4th 204, 212 (2004) ("In

6  opposing an anti-SLAPP motion, the plaintiff cannot rely on the allegations of the complaint, but

7  must produce *evidence* that would be admissible at trial.  Thus, declarations may not be based

8  upon 'information and belief' and documents submitted without the proper foundation are not to

9  be considered.") (emphasis in original, citations omitted); *Tuchscher Development Enterprises,*

10  *Inc. v. San Diego Unified Port Dist.*, 106 Cal. App. 4th 1219, 1238, 1240 (2003) (declarations

11  that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible

12  opinion, hearsay, or conclusory are to be disregarded).

13  **IV.   ARGUMENT**

14        SDF's counterclaim against Bitstamp is a quintessential SLAPP – a meritless lawsuit not

15  brought to vindicate a legal right but to retaliate against Bitstamp for exercising its right to

16  petition this Court.  The Court should strike it.  SDF cannot establish a probability of prevailing

17  on the merits for three independent reasons.  First, SDF is collaterally estopped from relitigating

18  its counterclaim against Bitstamp as the Court already rejected those same arguments when it

19  granted Bitstamp's motion for discharge.  Second, the litigation privilege absolutely bars SDF's

20  counterclaims against Bitstamp, as the single unfair competition claim against Bitstamp arises

21  squarely from Bitstamp's conduct in seeking interpleader protection.  Third, SDF's claim would

22  fail on the merits as it has not stated and cannot substantiate its unfair competition claim against

23  Bitstamp.  Thus, the Court should strike SDF's Counterclaim and award Bitstamp its attorneys'

24  fees and costs in bringing this anti-SLAPP motion.

25        **A.     The Anti-SLAPP Statute Applies To 'SDF's Unfair Competition Claim**
26        **Against Bitstamp.**

27        In the first prong of the anti-SLAPP analysis, the Court must "look at the nature of the

28  specific 'act' that allegedly gives rise to the cause of action, not the gestalt or gist of the

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM          - 12 -
Case No. 3:15-cv-1503 WHO

allegations generally." *Wallace*, 196 Cal. App. 4th at 1189-90; *see also Navellier*, 29 Cal. 4th at

92-93 (the Court must examine defendant's "*activity* that gives rise to his or her asserted

liability—and whether that activity constitutes protected speech or petitioning" as defined in the

statute) (emphasis in original).  SDF's counterclaim against Bitstamp complains of two acts that

SDF alleges gives rise to liability:  (1) Bitstamp and its general counsel George Frost colluded

with Ripple to freeze SDF's account on the Bitstamp exchange (Dkt. 122 ¶¶ 4, 26, 27, 31); and

(2) Bitstamp and Frost colluded with Ripple to file the complaint in interpleader (*id.* ¶ 27).

    SDF's cause of action indisputably arises from Bitstamp's litigation activity, namely its

freezing the Disputed Funds and filing the complaint in interpleader, and thus is covered by the

anti-SLAPP statute.  *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1261 (2008).  The statute

applies to "[a] cause of action against a person arising from *any act* of that person in furtherance

of the person's right of petition or free speech . . . ."  Cal. Code Civ. Proc., § 425.16(b)(1)

(emphasis added).  The California Supreme Court has held that "any act" includes litigation

activity "such as the filing, funding, and prosecution of a civil action."  *Rusheen v. Cohen,* 37 Cal.

4th 1048, 1056 (2006).  Further, the protection is not limited to actions taken only once litigation

has begun, but includes actions taken in connection with anticipated litigation.  *Neville*, 160 Cal.

App. 4th at 1263; *see also Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106,

1115 (1999) ("communications preparatory to or in anticipation of the bringing of an action or

other official proceeding are … entitled to the benefits of section 425.16") (quoting *Dove Audio*,

47 Cal. App. 4th at 784); *Digerati Holdings, LLC v. Young Money Entertainment, LLC*, 194 Cal.

App. 4th 873, 887 (2011) ("statements made in anticipation of a court action or other official

proceeding may be entitled to protection under the anti-SLAPP statute."); *Tuck Beckstoffer Wines

LLC v. Ultimate Distributors, Inc.*, 682 F. Supp. 2d 1003, 1015 (N.D. Cal. 2010) (protected

activity within the meaning of the anti-SLAPP statute includes, "without limitation, the filing of a

complaint, the assertion of allegations therein, the service of subpoenas, and any factual

investigation related to the issues in dispute.").

    Here, the *only* alleged acts purportedly giving rise to Bitstamp's liability for unfair

competition are freezing the Disputed Funds in connection with initiating the interpleader action

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO                        - 13 -

and actually filing the complaint in interpleader.  Dkt. 122 ¶¶ 4, 26, 27, 31.  And, although SDF asserts a number of inflammatory allegations against George Frost, SDF does not allege that Frost took any actions on behalf of, or within the scope of his employment with, Bitstamp other than related to Bitstamp's freezing of the Disputed Funds and filing the interpleader action.  It cannot be disputed that this pre-litigation and litigation activity is protected activity within the meaning of the anti-SLAPP statute.  *See Finton*, 238 Cal. App. 4th at 210, 212-13 (finding it "unquestionable and undisputed" that attorneys' receipt and retention of stolen hard drive in connection with litigation constitutes protected activity within the meaning of Section 425.16(e)(1) and (2)); *Tuck Beckstoffer Wines*, 682 F. Supp. 2d at 1015 ("the majority of the allegedly disparaging statements are alleged to have been made in the context of investigation of or filing of the present action and the Georgia proceeding" and are thus protected).

**B.      SDF Cannot Meet Its Burden Of Establishing A Probability Of Prevailing On The Merits Of Its Unfair Competition Counterclaim Against Bitstamp.**

Because the actions upon which SDF's counterclaim against Bitstamp is based constitute protected activity within the scope of the anti-SLAPP statute, the burden shifts to SDF to prove, with admissible evidence, that its counterclaim is both legally sufficient and that it has a probability of success on the merits.  Cal. Civ. Proc. Code §425.16 (b)(1).  Contrary to SDF's representations at the hearing on its motion to intervene, SDF alleges a single cause of action against Bitstamp:  violation of California's Unfair Competition Law ("UCL"), Business and Professions Code section 17200, based solely on Bitstamp's actions in freezing SDF's funds and filing the interpleader action.  Dkt. 122 ¶¶ 29-31.  SDF cannot satisfy its burden of establishing a probability of success on the merits of its UCL claim, and its counterclaim against Bitstamp should be stricken.

**1.      SDF's Counterclaim Against Bitstamp Is Barred By Collateral Estoppel.**

SDF cannot meet its burden of establishing a probability of success on the merits because its claims are barred by the doctrine of collateral estoppel.  Collateral estoppel, or issue preclusion, precludes relitigation of issues argued and necessarily decided in prior proceedings.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO                                    - 14 -

1    *Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (1990); *Teitelbaum Furs, Inc. v. Dominion Ins.*

2    *Co.*, 58 Cal. 2d 601, 604 (1962). The doctrine applies in the subsequent action only if several

3    threshold requirements are fulfilled:   (1) the issue sought to be precluded from relitigation must

4    be identical to that decided in the former proceeding; (2) the issue must have been actually

5    litigated in the former proceeding; (3) the issue must have been necessarily decided in the former

6    proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the

7    party against whom preclusion is sought must be the same as, or in privity with, the party to the

8    former proceeding.  *Lucido,* 51 Cal. 3d at 341.  Each of the five threshold elements for estoppel

9    have been satisfied.

10          In its counterclaim, SDF asserts that Bitstamp is liable for unfair business practices for

11   allegedly colluding with Ripple to "improperly freeze SDF's account . . . despite knowing that

12   Ripple's claim of a breach of contract was false, [and] that Ripple had no basis to claim these

13   funds," and for bringing the interpleader action with "no valid basis" to do so.  Dkt. 122 ¶ 27.

14   Specifically, SDF alleges that Bitstamp's counsel, George Frost, was simultaneously representing

15   Ripple, and therefore Bitstamp took its actions in freezing and then interpleading SDF's funds to

16   benefit Ripple and not because it was a disinterested stakeholder.  In other words, SDF claims

17   that Bitstamp is liable for failing to resolve the controversy between the claimants to the Disputed

18   Funds – a controversy which Bitstamp played no part in creating – in favor of SDF.

19          First, the issues raised in SDF's counterclaim are identical to issues raised, litigated and

20   decided in the interpleader action.  In its opposition to Bitstamp's discharge motion, SDF alleged

21   that interpleader was improper (Dkt. 52 at 8), Bitstamp "is not a good faith stakeholder" (*id.* at

22   12), Bitstamp "colluded with Ripple in filing this interpleader action" (*id.* at 13), Bitstamp's

23   attorney Frost also represented Ripple (*id.* at 14-16), and "Ripple and Bitstamp are significantly

24   intertwined" and "Bitstamp is not a disinterested stakeholder" (*id.* at 17).

25          This Court rejected every one of SDF's arguments in its discharge order.  The Court held

26   that "the requirements for interpleader have been met" and "there is no real question that there are

27   competing claims to the disputed funds."  Dkt. 63 at 4.  The Court rejected SDF's arguments that

28   interpleader was not proper since Ripple did not have a valid claim to the Disputed Funds.  *Id.* at

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO                           - 15 -

4-5 ("a plaintiff in an interpleader action is not required to adjudicate the merits of adverse

claims; the *presence of* adverse claims is sufficient"; "Bitstamp was not required to determine

whether Ripple Lab's claim to the disputed funds was colorable").  Notably, the Court expressly

rejected SDF's argument that Bitstamp is not a good faith stakeholder "because its interests

coincide with Ripple Lab's interests" and because one of its attorneys represented Ripple at some

point.  *Id.*  Thus, the second and third requirements of issue preclusion are met.  Fourth, the

Court's discharge order is final on the merits of these issues.  *See Sun Life Assur. Co. of Canada,*

*U.S. v. Chirolo*, No. C 08-03465 WHA, 2009 WL 113009, at *6 (N.D. Cal. Jan. 16, 2009)

(discharge in interpleader has the effect of judgment and is res judicata.).  Fifth, there is no

dispute as to privity as SDF is the same party seeking a second bite at the apple here.[4]

Accordingly, SDF's counterclaim is barred by the doctrine of collateral estoppel, and

application of the doctrine is in accord with the purposes of interpleader.  *Lucido,* 51 Cal. 3d at

341; *see also Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 259 (3d Cir. 2009) (interpleader

"shield[s] a stakeholder from further liability" on a claimant's counterclaims that "are directly

related to the stakeholder's failure to resolve the underlying dispute in favor of one of the

claimants"); *Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1014 (9th Cir. 2012) ("a disinterested

stakeholder may not be subjected to liability for its failure to resolve the controversy over

entitlement to the stake in one claimant's favor.").[5]  Indeed, this Court has already acknowledged

---

[4]     As discussed above, although SDF had not yet intervened in the interpleader action at the time Bitstamp sought and obtained discharge, it nevertheless filed a motion to dismiss the action jointly with the individual defendants (Dkt. 41), and jointly filed an opposition to Bitstamp's discharge (Dkt. 52).  In addition, up to the point where the individual defendants engaged their own counsel, SDF's counsel Terry Gross was purporting to represent both Stellar and the individual defendants in connection with the interpleader.  Supp. Nall Decl. (Dkt. 112) ¶¶ 6, 9, 10, 13, 14 & Exs. D & E.  Thus there can be no dispute that SDF was a party, or at least in privity with parties, to the interpleader action.  *Lucido,* 51 Cal. 3d at 341.

[5]     SDF does not allege any claim against Bitstamp that is *independent* of Bitstamp's actions in freezing and interpleading the Disputed Funds.  To the contrary, SDF acknowledges that Bitstamp played no part in creating the controversy over the Disputed Funds, which they concede arose from an alleged breach of contract between Ripple and McCaleb.  *See* Dkt. 105 at 2:4-25; Dkt. 98 at 4:11-24; *see also* Decl. of Jessica Nall (Dkt. 78) Ex C at 7:7-10 (Rugani: "what we think is really at the heart of the case that's before you, is the dispute between Ripple, on the one hand, and Mr. McCaleb and Mr. Stephenson on the other hand.").  It is black-letter law that a discharge in interpleader bars claimants from subsequently bringing an action against the

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO                                          - 16 -

that SDF's counterclaim is precluded.  *See* Dkt. 63, 3:26-4:2 ("If the interpleader was properly brought, the stakeholder is discharged from any further liability with respect to the subject of the dispute.") (citing *Hovis*, 553 F.3d at 262); *id.* at 6:15-17 ("at least some of the arguments in favor of the joint motion [to dismiss] appear to be the same as the arguments I rejected here.").

Because SDF is precluded by collateral estoppel from relitigating its claim against Bitstamp (*Lucido*, 51 Cal. 3d at 341), SDF cannot establish that it has a probability of prevailing on the merits, and its counterclaim must be stricken.

> ### 2. Bitstamp's Actions In Freezing And Interpleading The Disputed Funds Are Absolutely Privileged By California's Litigation Privilege.

Even if SDF's counterclaim against Bitstamp were not barred by collateral estoppel, SDF still cannot prevail on its claim as a matter of law because Bitstamp's actions are absolutely privileged.  California's litigation privilege provides:  "A privileged publication or broadcast is one made: … (b) In any … (2) judicial proceeding …."  Cal. Civ. Code § 47(b)(2).  The principal purpose of the litigation privilege is to provide litigants "the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions."  *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990).  Thus, the litigation privilege provides absolute immunity from any tort liability based on conduct or statements made "with 'some relation' to judicial

---

plaintiff-in-interpleader that is not independent of the plaintiff's actions in bringing the interpleader.  *See, e.g.*, *City of Portland v. Hartfield*, No. 3:11-CV-00100-KI, 2014 WL 4181971, at *1 (D. Or. Aug. 21, 2014) (dismissing counterclaims because "it is not tortious for a stakeholder to fail to choose between adverse claimants"); *Trustees of the ILWU-PMA Pension Plan v. Coates*, No. C-11-3998 EMC, 2013 WL 556800 (N.D. Cal. Feb. 12, 2013) (enjoining claimant in interpleader action from bringing any further action in state or federal court); *Michelman v. Lincoln Nat. Life Ins. Co.*, No. C10-0271RSL, 2010 WL 3212008, at *4 (W.D. Wash. Aug. 10, 2010) *aff'd*, 685 F.3d 887 (9th Cir. 2012) ("any cause of action that would punish the [stakeholder] for initiating the interpleader instead of choosing between the claimants should be dismissed"); *Herman Miller, Inc. Retirement Income Plan v. Magallon*, 2008 WL 2620748, *3 (E.D. Cal. July 2, 2008 ("an interpleader action would be futile if claimants were allowed to file separate suits against the claim holder"); *First Interstate Bank of Oregon, N.A. v. U.S. By and Through I.R.S.*, 891 F. Supp. 543, 548 (D. Or. 1995) (injunctions barring other litigation are "generally contemplated in interpleader actions").  *Cf. Lee*, 688 F.3d at 1012-13 (claims were independent where the stakeholder's "alleged negligence directly and proximately caused counterclaimants to forgo $290,000" and the "damages flowed not from [the stakeholder's] filing of an interpleader claim but from its alleged negligent conduct").

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO                              - 17 -

1   proceedings." *Rusheen*, 37 Cal. 4th at 1057 (quoting *Rubin v. Green*, 4 Cal. 4th 1187, 1193

2   (1993)).

3        As with the anti-SLAPP statute itself, the litigation privilege applies to a broad range of

4   conduct, "including activity preparatory to litigation." *Finton*, 238 Cal. App. 4th at 210, 212-13

5   (litigation privilege applies to defendant attorneys' receipt and retention of an allegedly stolen

6   hard drive provided by client for use in litigation); *see also Rusheen*, 37 Cal. 4th at 1057

7   (litigation privilege is "not limited to statements made during a trial or other proceedings, but may

8   extend to steps taken prior thereto, or afterwards") (citation omitted); *Makaeff v. Trump Univ.,*

9   *LLC*, 715 F.3d 254, 264 (9th Cir. 2013) ("The privilege also applies to a communication related

10  to an *anticipated* lawsuit, if it is preliminary to an imminent proposed lawsuit contemplated in

11  good faith and the purpose of the proposed litigation is to resolve the dispute.") (emphasis in

12  original, citation omitted).

13       Here, when Bitstamp received competing claims to the Disputed Funds, it took action to

14  freeze the funds and immediately filed a complaint in interpleader to allow the claimants to

15  resolve the competing claims.  The freezing of the Disputed Funds was a necessary and

16  preliminary step to the interpleader action, and both actions are absolutely privileged by the

17  litigation privilege.  *Rusheen*, 37 Cal. 4th at 1062; *see also Olszewski v. Scripps Health*, 30 Cal.

18  4th 798, 830-31 (2003) (collecting cases holding that conduct such as recording a notice of *lis*

19  *pendens*, publication of an assessment lien, or filing a mechanics lien in conjunction with a

20  judicial proceeding were communicative in nature and thus privileged); *Tuck Beckstoffer Wines*,

21  682 F. Supp. 2d at 1019 (litigation privilege "absolutely bars the counterclaims" that are based on

22  litigation activity, including investigating claims and preparing for administrative proceeding).

23       Because Bitstamp's actions are privileged by California's litigation privilege, SDF cannot

24  establish a probability of prevailing on the merits of its counterclaim against Bitstamp.  *Wallace*,

25  196 Cal. App. 4th at 1206 (to meet its burden on the second prong, plaintiff must provide

26  admissible evidence "from which a trier of fact could find in [its] favor, as to … at least one

27  element of any applicable affirmative defense"); *see also Harper v. Lugbauer,* No. C 11-01306

28  JW, 2012 WL 1029996, at *2 (N.D. Cal. Mar. 15, 2012) ("If a privilege or immunity bars a

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO                                - 18 -

1   defendant from being liable for a statement, then that privilege or immunity also precludes a

2   plaintiff from establishing that she has a reasonable probability of prevailing on the merits as to

3   that statement for purposes of an anti-SLAPP motion.").

4

5   ### 3.   SDF Has Not Stated Nor Substantiated An Unfair Competition Claim Against Bitstamp.

6        Finally, even aside from the fact that SDF's counterclaim against Bitstamp is absolutely

7   barred by collateral estoppel and the California litigation privilege, SDF has not stated and cannot

8   substantiate its unfair competition claim.  SDF's unfair competition claim against Bitstamp is

9   grounded entirely on vicarious liability for the actions of its general counsel, George Frost.

10  Specifically, SDF alleges:

11          At all times mentioned herein, Frost was an agent and employee of
            Bitstamp.  In doing the acts alleged above Frost was acting in the course
12          and within the scope of his authority as agent and employee when he
            committed the acts of unfair competition alleged above, including causing
13          Bitstamp to freeze the funds in SDF's rPQ account and depriving SDF of
            the use of these funds.  Bitstamp is vicariously liable under the doctrine of
14          *respondeat superior* for these acts of unfair competition committed by its
            employee and agent Frost.
15

16  Dkt. 122 ¶ 31.

17       It is well established that the "concept of vicarious liability has no application to actions

18  brought under the unfair business practices act."  *Emery v. Visa Int'l Serv. Ass'n,* 95 Cal. App. 4th

19  952, 960 (2002) (quoting *People v. Toomey,* 157 Cal. App. 3d 1, 14 (1984)).  Rather, "[a]

20  defendant's liability [under the UCL] must be based on [its] personal 'participation in the

21  unlawful practices' and 'unbridled control' over the practices."  *Id.* (quoting *Toomey,* 157 Cal.

22  App. 3d at 15) (affirming grant of summary judgment for Visa in *Emery* because VISA exercised

23  no control over the acts of those preparing lottery solicitations and had no relationship with the

24  merchants that did).  *See also In re Firearm Cases,* 126 Cal. App. 4th 959, 985 (2005) (rejecting

25  UCL claim where defendants "did not control the wrongful acts [in question] or encourage others

26  to engage in questionable acts," even though defendants did "have a relationship with the

27  wrongdoers").

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO

- 19 -

1  Aside from alleging that Bitstamp froze the Disputed Funds and filed the interpleader

2  action, SDF does not allege that Bitstamp itself participated in any other alleged acts of unfair

3  competition or exercised "unbridled control" over alleged actions of Frost.[6] *Emery,* 95 Cal. App.

4  4th at 960.  Because SDF's counterclaim against Bitstamp for freezing and interpleading the

5  Disputed Funds is barred by collateral estoppel and the litigation privilege, and because Bitstamp

6  cannot be held vicariously liable for any other alleged actions by Frost, SDF cannot prevail on its

7  counterclaim against Bitstamp as a matter of law.

8  Moreover, SDF asserts its unfair competition claim under California Business and

9  Professions Code section 17200, which prohibits "any unlawful, unfair or fraudulent business act

10  or practice."  Cal. Bus. & Prof. Code § 17200.  To prevail under the "unfair" prong,[7] SDF must

11  plead and prove harm to competition, not merely harm to itself.  *Cel-Tech Comm'cns, Inc. v. Los*

12  *Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 187 (1999).  Here, SDF alleges no threat or harm to

13  competition.  Rather, it asserts merely that "Each of the acts and practices described herein

14  undertaken by Ripple and Frost in connection with their scheme to injure SDF constitute unfair

15  competition in violation of California Business and Professions Code § 17200, *et seq*., the Unfair

16  Competition Law (UCL)."  Dkt. 122 ¶ 30.  As to Bitstamp, SDF alleges only that Frost was acting

17  in the scope of his employment when he caused Bitstamp "to freeze the funds in SDF's rPQ

18  account and depriv[e] SDF of the use of these funds."  *Id.* ¶ 31.  Because SDF failed to allege any

19  harm to competition, it cannot prevail on its unfair competition claim as a matter of law.  *Cel-*

20  *Tech Comm'cns*, 20 Cal. 4th at 187.[8]

21  [6]   Indeed, other than its generic allegation that Frost was acting within the course and scope

22  of his employment with Bitstamp, SDF does not allege any *facts* that would show that any of
Frost's alleged actions other than in connection with Bitstamp's freezing and interpleading the

23  Disputed Funds were taken in the course and scope of his employment by Bitstamp.  *See
Richardson-Tunnell v. Sch. Ins. Program for Employees*, 157 Cal. App. 4th 1056, 1062 (2007)

24  (an employee acts within the scope and course of his employment "when he is engaged in work
he was employed to perform or when the act is incident to his duty and is performed for the

25  benefit of his employer, not to serve his own purposes or convenience.").  Rather, SDF alleges

26  that Frost's actions were taken on behalf of Ripple.

27  [7]   SDF did not plead a violation of California Business and Professions Code § 17200 under
the "fraudulent" prong or the "unlawful" prong.

28  [8]   SDF does not allege, nor could it, that Bitstamp is a competitor to SDF.  It is not.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO                - 20 -

### C. Bitstamp Is Entitled To Recover Its Reasonable Attorneys' Fees And Costs.

The prevailing defendant on an anti-SLAPP motion *shall* be entitled to recover its attorneys' fees and costs.  Cal. Code Civ. Proc. § 425.16(c).  Because Bitstamp is entitled to an order granting its Motion and striking SDF's counterclaim against it, it is entitled to recover its reasonable attorneys' fees and costs incurred in bringing this Motion.  As set forth in the Declaration of Kelly Woodruff, Bitstamps' fees and costs total $22,848.70, excluding any fees and costs for preparing a Reply Brief and for a hearing on the Motion.

## V. CONCLUSION

SDF's counterclaim against Bitstamp is a SLAPP – a meritless lawsuit brought not to vindicate a legal right, but to punish Bitstamp for filing the interpleader.  *Batzel,* 333 F.3d at 1024.  Bitstamp has established that SDF's counterclaim arises from Bitstamp's actions in freezing the Disputed Funds and petitioning this Court to resolve the competing claims to the funds by way of interpleader.  Accordingly, SDF's counterclaim must be stricken unless it can establish – with competent, admissible evidence – that it has a probability that it will prevail on the merits of its claim.  It cannot meet its burden because SDF's counterclaim is barred by the doctrine of collateral estoppel and the California litigation privilege.  Further, SDF cannot prevail on its counterclaim as a matter of law.  Accordingly, this Court should strike SDF's counterclaim against Bitstamp without leave to amend, and award Bitstamp's reasonable attorneys' fees and costs incurred in bringing this motion.[9]

Dated: September 1, 2015     FARELLA BRAUN + MARTEL LLP

           By: */s/ Kelly A. Woodruff*
             Kelly A. Woodruff

           Attorneys for Bitstamp Ltd.

31652\5014176.5

---

[9] When granting an anti-SLAPP motion, a court may not grant leave to amend.  *Simmons v. Allstate Insurance Co.*, 92 Cal. App. 4th 1068, 1073 (2001).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO STRIKE COUNTERCLAIM
Case No. 3:15-cv-1503 WHO - 21 -