Terry Gross, terry@gba-law.com (SBN 103878)
Adam C. Belsky, adam@gba-law.com (SBN 147800)
GROSS BELSKY ALONSO LLP
One Sansome Street, Suite 3670
San Francisco, CA 94104
Tel: (415) 544-0200
Fax: (415) 544-0201

Attorneys for Defendant, Counterclaimant, and Crossclaimant
STELLAR DEVELOPMENT FOUNDATION

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| BITSTAMP, LTD., a foreign company,<br><br>Plaintiff,<br><br>vs.<br><br>RIPPLE LABS INC., a Delaware Corporation, JACOB STEPHENSON, an individual, NANCY HARRIS, an individual, and DOES 1 through 10, inclusive,<br><br>Defendants.<br>_____<br>STELLAR DEVELOPMENT FOUNDATION, a Delaware Nonprofit Corporation,<br><br>Counterclaimant and Crossclaimant,<br><br>vs.<br><br>RIPPLE LABS, INC. a Delaware Corporation, GEORGE FROST, an individual, BITSTAMP, LTD., a foreign company, and DOES 1-20, inclusive,<br><br>Cross-Defendants and Counter-Defendant.<br>_____ | Case No.: 3:15-cv-1503 WHO<br><br>**STELLAR DEVELOPMENT FOUNDATION'S OPPOSITION TO BITSTAMP'S SPECIAL MOTION TO STRIKE COUNTERCLAIM**<br><br>**[Cal. Code Civ. Proc. § 425.16 ("anti-SLAPP")]**<br><br>Date:        November 3, 2015<br>Time:        3:00 p.m.<br>Judge:       Hon. William H. Orrick<br>Courtroom:   2, 17th Floor |

# TABLE OF CONTENTS

INTRODUCTION……………………………………………………………………………...1

STATEMENT OF FACTS………………………………………………………………………..1

ARGUMENT…………………………………………………………………………………...5

I.  THE COURT MUST APPLY A MOTION TO DISMISS
    STANDARD TO BITSTAMP'S ANTI-SLAPP MOTION,
    LIBERALLY CONSTRUING SDF'S COUNTERCLAIM
    AND ACCEPTING ALL OF ITS FACTUAL ALLEGATIONS
    AS TRUE………………………………………………………………...…5

II. BITSTAMP FAILS TO MEET ITS THRESHOLD BURDEN TO
    SHOW THAT SDF'S UNFAIR COMPLETION CLAIM ARISES
    FROM ACTIVITY PROTECTED UNDER CALIFORNIA'S
    ANTI-SLAPP STATUTE………………………………………………………6

III. SDF'S UNFAIR COMPETITION CLAIM IS LEGALLY SUFFICIENT
     AND CANNOT BE DISMISSED……………………………………….…11

    A.  SDF's UCL Claim Is Not Barred by Collateral Estoppel…………………………11

    B.  SDF's UCL Claim Is Not Barred by the Litigation Privilege……………………14

    C.  SDF Has Stated a UCL Claim Against Bitstamp………………………………...15

    1.  A company can be held vicariously liable under the UCL for
        the wrongful conduct of its officer…………………………………...…15

    2.  SDF has sufficiently alleged that Frost's actions were within
        the scope of his employment as Bitstamp's Chief Legal Officer………………17

    3.  SDF is not required to plead harm to competition in order to state
        a claim for violation of the UCL and in any event has alleged harm
        to competition……………………………………………………...…19

IV. IF THE COURT GRANTS BITSTAMP'S MOTION, IT MUST ALLOW
    SDF LEAVE TO AMEND………………………………………………20

V.  IF THE COURT DETERMINES THAT BITSTAMP'S MOTION
    REQUIRES THE RESOLUTION OF FACTUAL ISSUES, IT MUST
    ALLOW SDF TO CONDUCT DISCOVERY IN ORDER TO RESPOND
    TO THE MOTION…………………………………………………...…21

CONCLUSION…………………………………………………………………………25

## <u>TABLE OF AUTHORITIES</u>

<u>FEDERAL</u>

*Aeroplate Corp. v. Arch Ins. Co.*,
    2006 U.S. Dist. LEXIS 82180 (E.D. Cal. Nov. 8, 2006)………………………………...……22

*Amarel v. Connell*,
    102 F.3d 1494 (9th Cir. 1996)………………………………………………………....13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)……………………………………………………………………..24

*Arpin v. Santa Clara Valley Transp. Agency*,
    261 F.3d 912 (9th Cir. 2001)………………………………………………………………22

*Geographic Expeditions, Inc. v. Estate of Lhotka*,
    599 F.3d 1102 (9th Cir. 2010)………………………………………………………....13

*Greensprings Baptist Christian Fellowship Trust v. Cilley*,
    629 F.3d 1064 (9th Cir. 2010)………………………………………………………....21

*International Raw Materials, Ltd. v. Stauffer Chem. Co.*,
    898 F.2d 946 (3rd Cir. 1990)………………………………………………………………23

*Lozano v. AT&T Wireless Serv.*,
    504 F.3d 718 (9th Cir. 2007)…………………………………………………… 19

*Metabolife Int'l, Inc. v. Wornick*,
    264 F.3d 832 (9th Cir. 2001)………………………………………………...….5, 6, 22

*Moser v. Triarc Co.*,
    2007 U.S. Dist. LEXIS 76759 (S.D. Cal. Oct. 16, 2007)………………………..……...6

*National Abortion Fed'n v. Center for Med. Progress*,
    2015 U.S. Dist. LEXIS 114851 (N.D. Cal. Aug. 27, 2015)……………………….....5, 6, 7, 22

*Restaino v. Bah (In re Bah)*,
    321 B.R. 41 (B.A.P. 9th Cir. 2005)………………………………………...……...6

*Rogers v. Home Shopping Network, Inc.*,
    57 F. Supp. 2d 973 (C.D. Cal. 1999)………………………………………...…..passim

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986)………………………………………………..……...21

*T.T. v. County of Marin*,
    2013 U.S. Dist. LEXIS 10512 (N.D. Cal. Jan. 25, 2013)……………………………22

*Verizon Delaware, Inc. v. Covad Commc'n Co.*,
    377 F.3d 1081 (9th Cir. 2004)………………………………………………………21

STATE

*Agarwal v. Johnson,*
    25 Cal. 3d 932 (1979)……………………………………………...………….18

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
    7 Cal. 4th 503 (1994)………………………………………………………… 21

*AREI II Cases,*
    216 Cal. App. 4th 1004 (2013)……………………………………………….... 21

*Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999)…………………………………………………....19, 20

*City of Riverside v. Stansbury,*
    155 Cal. App. 4th 1582 (2007)……………………………………..…………7

*Emery v. Visa Int'l Serv. Ass'n,*
    95 Cal. App. 4th 952 (2002)……………………………………………......15, 16

*Equilon Enter. v. Consumer Cause, Inc.,*
    29 Cal. 4th 53 (2002)……………………………………………………..…… 7

*Farmers Insurance Exch. v. Superior Court,*
    2 Cal. 4th 377 (1992)………………………………………………………… 19

*Farmers Insurance Group v. County of Santa Clara,*
    11 Cal. 4th 992 (1995)…………………………………………………………17

*Fields v. Sanders,*
    29 Cal. 2d 834 (1947)……………………………………………….....………19

*Flatley v. Mauro,*
    39 Cal. 4th 299 (2006)………………………………………..……..……10, 20

*Ford Dealers Ass'n v. Department of Motor Vehicles,*
    32 Cal. 3d 347 (1982)……………………………………...…………..……16

*In re Episcopal Church Cases,*
    45 Cal. 4th 467 (2009)……………………………………………………7, 9

*In re Firearm Cases,*
    126 Cal. App. 4th 959 (2005)…………………………………………...……17

*Kimmel v. Goland,*
    51 Cal. 3d 202 (1990)…………………………………………………………14

*Krumme v. Mercury Ins. Co.,*
    123 Cal. App. 4th 924 (2004)……………………………………………….……16

*LiMandri v. Judkins*,
 52 Cal. App. 4th 326 (1997)…………………... ……………………………………………..15

*Lucido v. Superior Court*,
 51 Cal. 3d 335 (1962)……………………………………………………………………11

*Mann v. Quality Old Time Serv., Inc.*,
 120 Cal. App. 4th 90 (2004)……………………………………………... …….....5, 14

*Navellier v. Sletten*,
 29 Cal. 4th 82 (2002)………………………………………………………………...…..6

*Oasis West Realty, LLC v. Goldman*,
 51 Cal. 4th 811 (2011)…………………………………………… …………………….14

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*,
 150 Cal. App. 4th 384 (2007)……………………… ………………………………...16

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,
 133 Cal. App. 4th 658 (2005)……………………………………………….…….11

*People v. JTH Tax, Inc.*
 212 Cal. App. 4th 1219 (2013)…………………………... …………………………16

*People v. Toomey*,
 157 Cal. App. 3d 1 (1984)…………………………… …………………...…………15

*Perez v. Van Groningen & Sons, Inc.*,
 41 Cal. 3d 962 (1986)…………………………………………………17, 18, 19

*Platypus Wear, Inc. v. Goldberg*,
 166 Cal. App. 4th 772 (2008)……………………... …………………………...…14

*PMC, Inc. v. Kadisha*,
 78 Cal. App. 4th 1368 (2000)…………………………………….. …………………16

*Premier Med. Mgmt. Sys., Inc. v. California Ins. Guarantee Ass'n*,
 136 Cal. App. 4th 464 (2006)…………………………………………………11

*Producers Dairy Delivery Co. v. Sentry Ins. Co.*,
 41 Cal. 3d 903 (1986)………………………………………………………13

*Renewable Resources Coal., Inc. v. Pebble Mines Corp.*,
 218 Cal. App. 4th 384 (2013)…………………………………………………9, 10

*Rusheen v. Cohen*,
 37 Cal. 4th 1048 (2006)………………… ……………………………...………....8, 15

*Soukup v. Law Offices of Herbert Hafif,*
    39 Cal. 4th 260 (2006)……………………………………………………...………11

*White v. Ultramar,*
    21 Cal. 4th 563 (1999)……………………………………... …………………..……..16

*Yamaguchi v. Harnsmut,*
    106 Cal. App. 4th 472 (2003)……………………………………………………18

STATUTES

Federal Rule of Civil Procedure § 54(b)…………………………………….……………... 13

California Business & Professions Code § 17200……………………………….………… 16, 19

California Code of Civil Procedure § 425.16……………………………..…………… 5, 7, 14

### INTRODUCTION

Bitstamp's special motion to strike under California's anti-SLAPP statute raises only legal issues, so the Court must analyze it under a motion to dismiss standard and liberally construe Stellar Development Foundation's ("SDF") Counterclaim, accepting all of its factual allegations as true.[1] Applying this standard, Bitstamp's motion must be denied.

Bitstamp fails to meet its threshold burden under the anti-SLAPP statute to demonstrate that SDF's claims arise from First Amendment petitioning activity protected by the statute because the gravamen is not the filing of the interpleader action itself, but Bitstamp's participation in Ripple's unlawful scheme to injure SDF through unlawful threats that coerced Coinex, an online currency exchange, to place SDF's funds in a Bitstamp account on the Ripple network, enabling Bitstamp to then freeze SDF's funds and deny SDF access to its funds.  These acts of unfair competition do not involve petitioning activity and are not protected by the anti-SLAPP statute.

Even if Bitstamp had met its threshold burden, its motion still fails because the three purely legal defenses raised by Bitstamp to SDF's claims have no merit.  Collateral estoppel cannot apply because there has been no final judgment entered in this action; indeed, the Court has already effectively determined that SDF's claims are not barred by collateral estoppel in granting SDF's motion to intervene.  SDF's claims cannot be dismissed on the basis of the litigation privilege because much of Bitstamp's wrongful conduct described by SDF in its claims has nothing to do with litigation; in any event, the litigation privilege cannot dispose of SDF's entire cause of action.  Finally, Bitstamp's own authority demonstrates that its argument that vicarious liability cannot apply to an action for violation of California's unfair competition law has no legal merit, and SDF's factual allegations are sufficient to state a claim that Bitstamp is vicariously liable for the wrongful conduct of its Chief Legal Officer.

### STATEMENT OF FACTS

On April 1, 2015, Bitstamp filed its Complaint in Interpleader (Dkt. 1), alleging that there were conflicting claims to certain disputed funds that were maintained in a Bitstamp account.  Bitstamp named as defendants who might have a claim to the disputed funds only Ripple Labs, Inc., and the

---

[1] Shortly after Bitstamp filed its motion, SDF's counsel requested that Bitstamp agree to discovery related to the motion.  Bitstamp's counsel asserted that Bitstamp's motion raised "purely legal issues" and that therefore no discovery was permitted.  Declaration of Terry Gross, filed concurrently, ¶ 3 & Ex. B.

individuals Jed McCaleb, Jacob Stephenson and Nancy Harris (the "Individual Defendants").  Bitstamp did not name SDF as a party.  Bitstamp named several Doe defendants in the Complaint, and stated that "[w]hen such defendants are ascertained, Bitstamp will amend this Complaint by inserting true names in place of fictitious names in accordance with Rule 10 of the Federal Rules of Civil Procedure." (Dkt. 1 ¶ 6).

On April 26, 2015, before the interpleader was filed, Bitstamp's CEO Dan Morehead, was informed that Stellar had $1 Million in a Bitstamp account. Gross Dec. ¶ 2.  On May 6, 2015, SDF's counsel informed Bitstamp that some of the funds frozen by Bitstamp belonged to SDF. *Id*. Despite the fact that, before Bitstamp filed its complaint in interpleader it had sufficient information to know that SDF was a claimant to the disputed funds, it did not name SDF as a defendant when it filed the Complaint, nor did Bitstamp amend its Complaint to add SDF in place of any Doe defendant when SDF informed Bitstamp that SDF was a claimant, contrary to its representation in the Complaint.

On May 11, 2015, SDF had discussions with Bitstamp concerning the interpleader, and SDF was informed by Bitstamp executives that Bitstamp had determined that Ripple did not have a valid claim on the disputed funds, and that Bitstamp would move to voluntarily dismiss the interpleader and that Bitstamp would deliver SDF's funds to SDF.  Based on these representations, SDF refrained from filing a motion to intervene.  Gross Dec. ¶ 4 & Ex. C.

On May 13, 2015, Bitstamp filed a motion for discharge or, in the alternative, for voluntary dismissal.  Dkt. 20.  On May 22, 2015, SDF filed a motion to intervene in this action.  Since motions to intervene "must . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought" (Fed. R. Civ. P. 24(c)), SDF attached to the motion as a responsive pleading a proposed motion to dismiss.  Dkt. 39.  On this same date, the Individual Defendants filed a motion to dismiss the interpleader, raising similar arguments as in SDF's proposed motion to dismiss.  SDF was listed in this motion to dismiss as a proposed intervenor.  Dkt. 41.  SDF's counsel asked Bitstamp to stipulate to intervention by SDF.  Bitstamp never responded to this request, and never indicated that it did not oppose intervention until July 10, 2015, less than a week before the July 16, 2015 hearing on SDF's motion (Dkt #94). Gross Dec. ¶ 4.

On June 8, 2015, the Court entered an order granting Bitstamp's motion for discharge.  The Court noted in this Order:  "I do not address the joint motion to dismiss at this point as the briefing on that motion is not yet complete.  I note that at least some of the arguments in favor of the joint motion appear to be the same as the arguments I rejected here."  Dkt. 63, at 6.

On June 10, 2015, Bitstamp requested that the Individual Defendants withdraw their motion to dismiss, contending that this motion was based on arguments that the Court had already rejected in its June 8, 2015 Order granting discharge. Gross Dec. ¶ 6 & Ex. D.  On June 16, 2015, the Individual Defendants withdrew their motion to dismiss.  Dkt. 64.  Because SDF's proposed motion to dismiss was based on the same arguments, on July 6, 2015 SDF modified its motion to intervene by withdrawing its proposed motion to dismiss, and substituted an answer with a counterclaim against Bitstamp and a crossclaim against Ripple and George Frost, Bitstamp's Chief Legal Officer.  Dkt. 88.

On July 18, 2015, the Court held a hearing on SDF's motion to intervene.  Bitstamp argued that the counterclaim against Bitstamp should not be permitted, contending that the June 8, 2015 Order granting discharge had conclusively determined that no counterclaims could be asserted against Bitstamp.  On August 6, 2015, this Court granted SDF's Motion to Intervene (Docket 117) and gave SDF leave to file its answer, counterclaim and crossclaim, stating:

> Bitstamp LTD. filed a response stating that while it does not oppose Stellar's motion to intervene, it opposes Stellar's proposed counterclaims against Bitstamp which, it argues, violate my order discharging Bitstamp from this interpleader action. Dkt. No. 94. . . . As I stated at the oral argument, the allegations in Stellar's proposed counterclaims and crossclaims are more developed and more extensive than those which I addressed in connection with Bitstamp's motion for discharge. Moreover, Stellar was not a party when Bitstamp was discharged and its allegations were therefore not before me. Stellar is now a party and Bitstamp and Ripple Labs will need to respond to its allegations in the regular course.

Dkt. 117, at 2.

On August 12, 2015, SDF filed its Answer and Counterclaim and Crossclaim (Dkt. 122), which included a counterclaim against Bitstamp.  SDF's Counterclaim alleges "a scheme… to damage SDF and Jed McCaleb ("McCaleb"), and thus to benefit Ripple [Labs, Inc. ('Ripple')]."  Dkt. 122 ¶ 2. SDF alleges that this scheme was "in order to divert public attention from the federal criminal investigation against [Ripple]" and was carried out by "Ripple … along with George Frost . . .; and that Frost was the

Chief Legal Officer of Bitstamp Ltd. . . . as well as simultaneously an advisor to Ripple. *Id.* ¶¶ 2, 8. SDF alleges that this scheme included, in addition to "actions to prop up the price of Ripple's XRP currency, and the value of Ripple's shares" (*id.* ¶ 3), "actions to interfere with the operations of SDF[] … [including] improper threats and coercion to try to reverse [a purchase of SDF's virtual currency], and, failing that, in concert with Frost and Bitstamp, to have SDF's proceeds of that transaction improperly frozen" (*id.* ¶ 4).   The Counterclaim alleges that all actions by Frost, an officer of Bitstamp, are attributable to Bitstamp:

> At all times mentioned herein, Frost was an agent and employee of Bitstamp. In doing the acts alleged above Frost was acting in the course and within the scope of his authority as agent and employee when he committed the acts of unfair competition alleged above. . . . Bitstamp is vicariously liable under the doctrine of respondeat superior for these acts of unfair competition committed by its employee and agent Frost.

*Id.* ¶ 31.

As to the attempt to interfere with SDF's operations, the Counterclaim alleges that Ripple and Frost took actions to disrupt SDF's economic relationships with Coinex, an online currency exchange, and with Jacob Stephenson ("Stephenson"), in order to force the proceeds from a transaction in which Stephenson purchased STRs (SDF's currency) from Coinex to be placed in a Bitstamp account on the Ripple network. *Id.* ¶¶ 23-25, 33-37, 41-48.  The Counterclaim explicitly alleges that "Frost and Bitstamp thus colluded in Ripple's actions and scheme, despite knowing that Ripple's claim of a breach of contract was false [and] that Ripple had no basis to claim these funds." *Id.* ¶ 27.

The Counterclaim also alleges that, once Ripple, Frost and Bitstamp succeeded in their threats to force Coinex to place the proceeds of the Stephenson transaction in a Bitstamp account on the Ripple network, they then engaged in a scheme to freeze those proceeds and deny SDF the use of its funds.  The Counterclaim alleges that "Ripple sent … demand letters to Frost as Chief Legal Officer of Bitstamp, claiming that the funds in SDF's account belonged to Ripple due to an alleged breach of contract by McCaleb, and demanding that Bitstamp immediately transfer these funds to Ripple," but that "Ripple and Frost knew . . . that there was no basis for Ripple's claim in its letters that Ripple was entitled to any ownership or control of these funds." *Id.* ¶ 26.   Next, "Frost, acting as Bitstamp's chief legal officer, but also acting on behalf of Ripple, caused Bitstamp to improperly freeze SDF's account containing the $940,000 in Bitstamp USD, and then filed on behalf of Bitstamp a complaint in interpleader.  Frost and

Bitstamp thus colluded in Ripple's actions and scheme, despite knowing that Ripple's claim of a breach of contract was false, that Ripple had no basis to claim these funds, and that there was no likelihood that Ripple would sue Bitstamp and thus that there was no valid basis for the interpleader."  *Id.* ¶ 27.

No discovery has yet been taken on SDF's Counterclaim, or on any other part of this case. Declaration of Terry Gross in Opposition to Bitstamp's Special Motion to Strike ("Gross Dec.") ¶ 5.

On September 1, 2015, Bitstamp filed a Special Motion to Strike Counterclaim, under the California anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16 (Dkt. 130).

On September 10, 2015, SDF's counsel requested that Bitstamp stipulate to certain discovery, to enable SDF to respond to Bitstamp's Special Motion, noting in part that the motion included a factual declaration from Bitstamp's chief compliance officer.  Bitstamp's counsel replied that its motion did not rely on this declaration, and that "Bitstamp made three arguments in support of its anti-SLAPP motion, *all purely legal*," and that therefore no discovery was necessary.  Bitstamp's counsel also stated that:

> [W]here, as here, the anti-SLAPP motion is based entirely on legal arguments, discovery is not allowed on an anti-SLAPP motion.  "If an anti-SLAPP motion is 'founded on purely legal arguments,' then *the analysis of Rules 8 and 12 applies*, section 425.16(g) does not conflict with the federal rules, and discovery must be stayed pursuant to that statute." *Nat'l Abortion Federation v. Center for Medical Progress*, 2015 WL 5071977, *4 (N.D. Cal. Aug. 27, 2015), citing *Z.F. v. Ripon Unified Sch. Dist.*, 482 F. App'x 239, 240 (9th Cir. 2012)

Gross Dec. ¶ 3 & Ex. B (emphasis added).

## ARGUMENT

### I.   THE COURT MUST APPLY A MOTION TO DISMISS STANDARD TO BITSTAMP'S ANTI-SLAPP MOTION, LIBERALLY CONSTRUING SDF'S COUNTERCLAIM AND ACCEPTING ALL OF ITS FACTUAL ALLEGATIONS AS TRUE

If an anti-SLAPP motion to strike is premised entirely on legal issues, a federal court "must decide the motion in a manner that complies with the standards set by Federal Rules 8 and 12."  *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999) (cited with approval by *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001)); *see also Nat'l Abortion Fed'n v. Center for Med. Progress*, 2015 U.S. Dist. LEXIS 114851, at *10 (N.D. Cal. Aug. 27, 2015) (Orrick, J.) ("[i]f an anti-SLAPP motion is 'founded on purely legal arguments,' then the analysis of Rules 8 and 12 applies").  This includes reading the complaint broadly, taking all well-pleaded allegations as true, and providing that any dismissal will generally be with leave to amend.  *Rogers*, 57 F. Supp. 2d at 982-83.  "Standards that put a more onerous burden on the nonmoving party would conflict with Rules 8 and 12,"

and thus "cannot apply in federal court." *Restaino v. Bah (In re Bah)*, 321 B.R. 41, 45 n.6 (B.A.P. 9th Cir. 2005) (citing *Rogers*, 57 F. Supp. 2d at 982, and *Metabolife*, 264 F.3d at 846)).

Bitstamp's motion raises three defenses to SDF's cause of action for unfair competition, all based on purely legal arguments: (1) collateral estoppel; (2) litigation privilege; and (3) failure to state a claim. Dkt. 130, at 14-20. Bitstamp, in refusing SDF's request to conduct discovery prior to responding to the motion, expressly conceded that its motion raises "purely legal issues," and concluded (quoting this Court's decision in *Nat'l Abortion Fed'n*) that "'if an anti-SLAPP motion is "founded on purely legal arguments," then the analysis of Rules 8 and 12 applies.'" Gross Dec. ¶ 3 & Ex. B. Bitstamp characterized its own motion as making, "three arguments in support of its anti-SLAPP motion, *all purely legal*: (1) Stellar's counterclaim is barred by collateral estoppel; (2) Bitstamp's actions in freezing and interpleading the funds are absolutely privileged by Civil Code section 47(b)(2); and (3) Stellar cannot prevail because Bitstamp cannot be held vicariously liable on a UCL claim, and Stellar did not allege that Bitstamp directed or controlled any of Frost's allegedly wrongful actions other than as related to the interpleader." *Id.* (emphasis added). Accordingly, the Court must apply a motion to dismiss standard to Bitstamp's motion because it is based on purely legal issues.[2]

## II.   BITSTAMP FAILS TO MEET ITS THRESHOLD BURDEN TO SHOW THAT SDF'S UNFAIR COMPLETION CLAIM ARISES FROM ACTIVITY PROTECTED UNDER CALIFORNIA'S ANTI-SLAPP STATUTE

A special motion to strike under the California anti-SLAPP statute involves two steps. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002). "[T]he 'arising

---

[2] If the Court determines that, contrary to Bitstamp's contention, the motion does not raise "purely legal issues," but also raises factual issues, SDF must be given the opportunity to conduct discovery. *See* Point V, *infra*.

SDF notes that, despite Bitstamp's acknowledgment that federal courts must apply a motion to dismiss standard to an anti-SLAPP motion raising only legal issues, Bitstamp's motion cites California state cases for the proposition that a plaintiff "cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial" (Dkt. 130, at 11:28-12:7), and further argues that "SDF cannot meet its burden of establishing with admissible evidence a probability of prevailing on the merits" (*id.* at 1:21-23). Because Bitstamp's motion raises only legal issues, a motion to dismiss standard applies, and the motion can be defeated simply by showing that Bitstamp's legal arguments fail. *See, e.g.*, *Moser v. Triarc Co.*, 2007 U.S. Dist. LEXIS 76759, **8-9 (S.D. Cal. Oct. 16, 2007) (because defendant's anti-SLAPP motion challenges the legal sufficiency of plaintiff's complaint, rather than the sufficiency of plaintiff's evidence, "there is no need to consider other evidence beyond the pleadings") (cited in *Nat'l Abortion Fed'n*, 2015 U.S. Dist. LEXIS 114851, at *15)).

from' requirement is not always easily met" and can only be satisfied if the defendant demonstrates that the defendant's conduct on which liability is based falls within one of the four categories" set forth in CCP § 425.16(e).  *Equilon Enter. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 66 (2002).  If the defendant cannot satisfy this first step, the inquiry ends there and the anti-SLAPP motion must be denied.  *City of Riverside v. Stansbury*, 155 Cal. App. 4th 1582, 1594 (2007).

In determining whether "the cause of action is *based* on the defendant's protected petitioning activity," the court must look at the "gravamen or principal thrust" of the cause of action.  *In re Episcopal Church Cases*, 45 Cal. 4th 467, 477-78 (2009); *see also Nat'l Abortion Fed'n*, 2015 U.S. Dist. LEXIS 114851, at *8  (courts look to "'what activities form the basis for each of Plaintiffs' causes of action,' then 'ask whether those activities are protected'").  Thus, in *In re Episcopal Church Cases*, a case involving a real property dispute between a diocese and a disaffiliated church, the California Supreme Court determined that the anti-SLAPP statute did not apply to any of the eight property-recovery related causes of action because the "gravamen or principal thrust" of each cause of action was the property dispute, not the "protected activity . . . in the background."  45 Cal. 4th at 477-78.

Bitstamp's argument that SDF's unfair competition claim against Bitstamp arises from protected conduct is based on Bitstamp's mischaracterization of SDF's claim against Bitstamp as "based solely on Bitstamp's actions in connection with the interpleader."  Dkt. 130, at 7:19-20.  Based on this erroneous contention, Bitstamp asserts that "SDF's cause of action [for unfair competition] indisputably arises from Bitstamp's litigation activity, namely its freezing the Disputed Funds and filing the complaint in interpleader" (*id.* at 13:8-10), apparently invoking the protection of CCP § 425.16(e)(4), which protects "any other conduct in furtherance of the exercise of the constitutional right of petition"  (although Bitstamp nowhere identifies which category or categories in CCP § 425.16(e) it asserts applies).

The basis for SDF's unfair competition claim against Bitstamp, however, is not the litigation activity of filing the complaint in interpleader, but Ripple's, Frost's, and Bitstamp's illegal scheme to damage SDF: first, by engaging in "market manipulation [to] prop[] up the XRP price (Dkt. 122 ¶¶ 2-3); and second, through unlawful threats that coerced Coinex into placing SDF's funds in a Bitstamp account on the Ripple network, enabling Bitstamp to then freeze SDF's funds and deny SDF access to

1  its funds (*id*. ¶¶ 15, 18-21, 23-26).[3]  None of these activities are protected activity within the meaning of

2  the anti-SLAPP statute, and none of Bistamp's cases hold otherwise:  none of these alleged acts

3  involved "the filing, funding, and prosecution of a civil action" (Dtkt. 130, at 13:13-16 (*Rusheen*), nor

4  "the assertion of allegations therein, the service of subpoenas and any factual investigation related to the

5  issues in dispute [in the action]" (Dtkt. 130, at 13:22-26 (*Tuck*)); the alleged acts were not taken "in

6  connection with anticipated litigation" (Dtkt. 130, at 13:15-16 (*Neville*)), but to benefit Ripple by

7  propping up the XRP price and injure SDF by denying it access to its funds; they were not

8  "communications" preparatory to bringing an action (Dtkt. 130, at 13:17-19 (*Briggs*), nor "statements"

9  made in anticipation of a court action (Dtkt. 130, at 13:20-22 (*Digerati*)).

10  Indeed, Bitstamp concedes that "even prior to receiving Ripple's March 26 letter, Bitstamp had

11  been monitoring Bitstamp accounts believed to be related or controlled by McCaleb, including Mr.

12  Stephenson's" (Bitstamp Mem. at 3:18-20), *i.e.*, *at the time that the illegal threats to Coinex were being*

13  *made in order to coerce Coinex into placing SDF's funds in a Bitstamp account and before any*

14  *purported "litigation threat" by Ripple*.  *See* Dkt. 122  ¶¶ 23-28.  Moreover, the only possible basis

15  Bitstamp could have had for its pre-March 26 belief that Stephenson was related to McCaleb was its

16  Chief Legal Officer Frost's knowledge of the provisions of and exhibits to the settlement agreement

17  between Ripple, McCaleb and SDF.  *See* Dkt. 122 ¶ 16.  Bitstamp also concedes that its decision to

18  freeze SDF's funds was motivated by its anti-money laundering policy ("AML Policy") and its concerns

19  over effective "compliance with anti-money-laundering and counter terrorist financing laws" (Dkt. 130,

20  at 3:4-15, 3:27-4:2), activities which do not involve any petitioning activity and thus are not protected

21  under the anti-SLAPP statute.[4]

22

23

24  ───────────
    [3] Bitstamp's freezing of SDF's funds is a completely separate action from Bitstamp's filing of an
25  interpleader action.  Bitstamp has the ability to freeze funds for reasons that have nothing to do with protected
    activity.  *See* Bitstamp Mem. at 3:4-15 (describing its AML Policy).
26     [4]  On information and belief, Bitstamp's decision to freeze SDF's funds was not in fact motivated by its
    AML Policy, but rather was a direct result of Frost (on behalf of Bitstamp) colluding with Ripple to damage SDF,
27  particularly since Bitstamp would not have been aware of any connection between Stephenson and his purchase
    of STRs, without information provided by Ripple.  In any event, Bitstamp contends that it does not rely on these
28  alleged facts in its Special Motion (Gross Dec. ¶ 3 & Ex. B).  If the Court does find that Bitstamp's motion raises
    factual issues, then SDF is entitled to discovery on this issue.  *See* Point V, *infra*.

While the unfair competition cause of action does allege that -- once Bitstamp, Ripple and Frost succeeded in coercing Coinex to place SDF's funds in a Bitstamp account and Bitstamp froze those funds to prevent SDF from having lawful access to its own funds -- these conspirators then utilized the interpleader filing to manufacture federal jurisdiction, the principal thrust of the cause of action is the illegal scheme to prevent SDF from benefiting from Stephenson's purchase of STRs by coercing SDF's funds to be placed in a Bitstamp account so that Bitstamp would freeze them, and not the subsequent filing of the interpleader action.  The interpleader filing came about only after the scheme had already achieved its dominant purpose by getting SDF's funds into a Bitstamp account so that Bitstamp could prevent SDF from having access to the funds.  *See, e.g.*, *Episcopal Church Cases*, 45 Cal. 4th at 477 (the fact that plaintiff's complaint was filed "after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute" and "that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such").

*Renewable Resources Coal., Inc. v. Pebble Mines Corp.*, 218 Cal. App. 4th 384, 396 (2013), is directly on point.  Plaintiff, an environmental group, hired a fundraiser to help support a ballot initiative to block a mining development.  After the initiative failed, a fee dispute arose between plaintiff and the fundraiser.  The fundraiser then contacted the attorney for the owners of the mining development, both to pressure plaintiff with the threat of disclosing its confidential campaign correspondence, and to sell the confidential documents to the mine owners.  The attorney paid the fundraiser $50,000 for the documents, and then used the documents to prepare and file a complaint on behalf of the mine owners against plaintiff with the elections commission for alleged election law violations.  As a result of the pending election law proceeding, plaintiff lost grants and incurred costs in defending itself.   Plaintiff then filed a lawsuit against the mine owners, bringing claims for interference with contract and with prospective economic advantage, based on the mine owner's purchase of the confidential documents. The mine owners brought an anti-SLAPP motion, which the trial court granted on the ground that plaintiff's alleged injuries arose from the mine owners' protected petitioning activity in connection with filing the election law complaint.  The Court of Appeal reversed holding that "gravamen of an action is the allegedly wrongful and injury-producing conduct, not the damage which flows from said conduct," and that a "fair reading" of plaintiff's complaint was that the mine owners "were being sued for

wrongfully purchasing [plaintiff's] confidential documents [and] not for prosecuting [the elections law action]." *Id.* at 397-98. *Renewable Resources Coal* clearly applies here – a fair reading of SDF's complaint is that Bitstamp is being sued for wrongfully engaging in a scheme to prop up the price of Ripple's XRPs and to coerce Coinex to place SDF's funds in an account over which Bitstamp can exercise dominion and control and prevent SDF from access to its own funds, rather than simply suing Bitstamp for its subsequent act of filing the interpleader action.

Bitstamp also contends that SDF fails to adequately allege Bitstamp's participation in the illegal scheme because "although SDF asserts a number of inflammatory allegations against George Frost, SDDF does not allege that Frost took any actions on behalf of, or within the scope of his employment with Bitstamp other than related to Bitstamp's freezing of the Disputed Funds and filing the interpleader action." Dkt. 130, at 14:1-3.  Bitstamp, however, ignores SDF's allegations that Frost and Bitstamp participated in the threats to Coinex.  *See* Dkt. 122 ¶ 31 (Frost's actions as part of this scheme were taken as an officer of Bitstamp and thus attributable to Bitstamp); ¶ 10 ("At all relevant times, the Cross-Defendants, and each of them, have pursued a common course of conduct, acted in concert and conspired with one another in furtherance of their common plan, scheme or design. Each Cross-Defendant was further the agent of each remaining Cross-Defendant and was, at all times alleged herein, acting within the course and scope of the agency relationship"); ¶ 27 ("Frost and Bitstamp thus colluded in Ripple's actions and scheme, despite knowing that Ripple's claim of a breach of contract was false [and] that Ripple had no basis to claim these funds").  These allegations are sufficient to state a claim for respondeat superior liability against Bitstamp for all of Frost's alleged actions.  *See* Point III.C.2, *infra*, at pp. 17-19.   Finally, the California Supreme Court has held that "where a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action arises from activity by the defendant in furtherance of the defendant's exercise of protected speech or petition rights, but . . . the evidence conclusively  establishes that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action."  *Flatley v. Mauro*, 39 Cal. 4th 299, 320 (2006).  SDF has had no discovery on its allegations (Gross Dec. ¶ 5), and thus no opportunity to develop evidence to establish that the alleged scheme was illegal as a matter of law.  Accordingly, even if the Court were to determine that SDF's allegations

concerning the filing of the interpleader action fit within the "arising from" prong of the anti-SLAPP statute, the Court cannot grant Bitstamp's motion without first allowing SDF to conduct discovery on this issue so that it has an opportunity to make such an evidentiary showing. *See* Point V, *infra*.

## III.   SDF'S UNFAIR COMPETITION CLAIM IS LEGALLY SUFFICIENT AND CANNOT BE DISMISSED

Because Bitstamp's anti-SLAPP motion raises purely legal issues, it must be analyzed under a motion to dismiss standard, meaning that the Counterclaim must be liberally construed and all factual allegations accepted as true. *See* Point I, *supra*. Thus, assuming *arguendo*, that Bitstamp has satisfied its threshold burden to establish that SDF's claim arises from protected activity -- which Bitstamp has not done (*see* Point II, *supra*) -- the issue then becomes the legal sufficiency of SDF's claims. "[T]he anti-SLAPP statute requires only 'a minimum level of legal sufficiency.'" *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 291(2006). Moreover, although the anti-SLAPP statute "places on the plaintiff the burden of substantiating its claims, a defendant that advances an affirmative defense to such claims properly bears the burden of proof on the defense." *Premier Med. Mgmt. Sys., Inc. v. California Ins. Guarantee Ass'n*, 136 Cal. App. 4th 464, 477 (2006) (quoting *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 676 (2005)). Bitstamp cannot meet its burden as to any of the three defenses it asserts in its motion.

### A.   SDF's UCL Claim Is Not Barred by Collateral Estoppel

As Bitstamp recites, for collateral estoppel to apply, Bitstamp must establish five elements: "(1) the issue sought to be precluded from relitigation must be identical to that decided in the former proceeding; (2) the issue must have been actually litigated in the former proceeding; (3) the issue must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." Dkt. 130, at 15:2-8 (citing *Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (1962)). Bitstamp fails to satisfy its burden as to any of these required elements, let alone all five.

<u>First</u>, the issues are not identical. As the Court determined in adjudicating Bitstamp's motion for discharge, the only relevant issue before it on the motion was whether Bitstamp "has satisfied its 'necessarily low' requirement of establishing its good faith belief that there are actual and potential

adverse claims to the funds." Dkt. 63, at 5:23-24; *see also id.* at 1:14-16 ("[b]ecause there is a single fund at issue and adverse claimants to that fund, the requirements of interpleader have been met"). Here, the issue raised by SDF's claim against Bitstamp is not whether Bitstamp was faced with competing claims to the funds, but whether Bitstamp, which operates as a gateway for Ripple's currency (Dkt. 130, at 2:3-6), and its officer Frost, colluded with Ripple to injure SDF by illegally coercing Coinex to place the proceeds of SDF's transaction with Stephenson in a Bitstamp account, so that Bitstamp would then have the ability to, and would, freeze the funds and prevent SDF from using the funds, and by propping up the price of XRPs.[5] Thus, Bitstamp's contention that "SDF claims that Bitstamp is liable for failing to resolve the controversy between the claimants to the Disputed Funds" (*id*. at 15:16-18) completely mischaracterizes SDF's claim.[6] Rather, SDF alleges that Bitstamp knew that Ripple did not have any valid claim to SDF's funds obtained when Stephenson purchased STRs (and, moreover, that Bitstamp, through Frost, knew Ripple did not have any valid claim that Stephenson's sale of XRPs was a breach by McCaleb of any agreement with Ripple); but that Bitstamp nevertheless acted in concert with Ripple to coerce Coinex to place SDF's funds in a Bitstamp account, so that Bitstamp could then freeze those funds. *See* Statement of Facts*, supra*, at pp. 3-4.

Indeed, the Court, in granting SDF's motion to intervene, has already recognized that SDF's claim against Bitstamp involves issues not decided on Bitstamp's motion for discharge, stating that "the allegations in Stellar's proposed counterclaims and crossclaims are more developed and more extensive than those which I addressed in connection with Bitstamp's motion for discharge," and that "when Bitstamp was discharged," SDF's "allegations were not . . . before me." Dkt. 117, at 2:2-6.  Similarly, in denying Bitstamp's motion for attorney's fees without prejudice, the Court stated:  "Until I know what Bitstamp's role was – merely an innocent holder of the disputed funds or an active participant in the dispute – I will not have sufficient information to decide this motion."  Dkt. 121, at 1:19-20; *see also*

---

[5] If the Court were to determine, after liberally construing SDF's complaint, that SDF's factual allegations concerning Bitstamp's participation in this scheme are not sufficiently fleshed out, the Court must allow SDF leave to amend its complaint to add additional allegations concerning Bitstamp's participation in this scheme. *See* Point IV, *infra*.

[6] For this same reason, Bitstamp's assertion that "a discharge in interpleader bars … an action against the plaintiff-in-interpleader that is not independent of the plaintiff's actions in bringing the interpleader" (Dkt. 130, at 16-17 n.5) is irrelevant.  As demonstrated in the text, above, SDF has alleged claims against Bitstamp that are independent of Bitstamp's filing of the interpleader action, and thus Bitstamp's supporting cases do not apply.

*id.* at 5:9-10 ("[g]iven the allegations against it, it would be premature to award Bitstamp interpleader fees until I have more information").

Second and Third, for these same reasons the issues raised by Bitstamp's interpleader complaint were not actually litigated nor necessarily decided by the discharge order.

Fourth, collateral estoppel cannot apply unless "there was a final judgment on the merits of the previous suit." *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903, 910 (1986); *see also Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) ("[u]nder California law, a judgment is not final for the purposes of collateral estoppel until it is free from the potential of a direct attack, i.e. until no further direct appeal can be taken").  It is indisputable that no final judgment has been entered in this action, and that the discharge order is not a final judgment, as demonstrated by the Court's subsequent decision to grant SDF's motion to intervene and allow SDF to file its counterclaim against Bitstamp.  Bitstamp's collateral estoppel argument is thus patently ridiculous.  Moreover, a district court has authority to revisit any of its interlocutory orders "at any time prior to final judgment." *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996); *see also* Fed. R. Civ. P. 54(b) ("any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudication all the claims and all the parties' rights and liabilities").

Fifth, Bitstamp cannot establish that SDF was "the same as, or in privity with, the party to the former proceeding," because as addressed in the preceding paragraph, there was no "former proceeding."  Moreover, as the Court has already held, SDF "was not a party when Bitstamp was discharged." Dkt. 117, at 2:5.  Bitstamp concedes that the pleadings on which Bitstamp relies for its argument were filed before SDF was granted leave to intervene in this action (Dkt. 130, at 16 n.4), and these pleadings identify SDF as a "Proposed Intervenor-Defendant," and not as a party (Dkt. 41& Dkt. 52).  The declaration testimony on which Bitstamp relies cannot be considered under the motion to dismiss standard that applies, because it is outside the allegations of the Counterclaim.  Even if the declaration testimony is considered, it is irrelevant because it provides no evidence that SDF was "a party to" or "in privity" with a party to this action, let alone a "former proceeding." Indeed, although

there is a common interest among the Individual Defendants and SDF in opposing Ripple's and Bitstamp's claims, SDF has asserted its entitlement to nearly all of the money at issue, and none of the Individual Defendants have asserted any claim to these funds, except for Stephenson's claim for $502 (Dkt. 85, at 7 ¶ 47).

> **B.**     **SDF's UCL Claim Is Not Barred by the Litigation Privilege**

The anti-SLAPP statute is directed toward entire causes of action:  "A *cause of action* against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail *on the claim*."  Cal. Civ. Proc. Code § 425.16(b)(1) (emphasis added).  If a plaintiff "'can show a probability of prevailing *on any part of its claim*,' the cause of action . . . will not be stricken . . . 'and the entire cause of action stands.'"  *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 820 (2011) (emphasis in original) (quoting *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 106 (2004); *see also Platypus Wear, Inc. v. Goldberg*, 166 Cal. App. 4th 772, 786 (2008) (an anti-SLAPP motion cannot be used to "parse" a cause of action).

Bitstamp's argument that SDF's cause of action for unfair competition is barred by the litigation privilege is based on the same limited reading of SDF's claim as Bitstamp's argument that the claim arises from protected conduct – Bitstamp's distorted view of the Counterclaim as only involving allegations of "Bitstamp's actions in freezing and interpleading the disputed funds" (Dkt. 130, at 17:8-9).  *See* Point II, *supra*.  It therefore fails because, as demonstrated above in Point II, SDF's unfair competition claim is based primarily on allegations of conduct that do not involve any protected petitioning activity.  Thus, the litigation privilege, assuming it applies at all, cannot dispose of SDF's entire cause of action, and "the entire cause of action stands."  *Oasis West*, 51 Cal. 4th at 820.

In any event, Bitstamp's argument that the litigation privilege applies to its actions in freezing the funds because "[t]he freezing of the Disputed Funds was a necessary and preliminary step to the interpleader action" (Dkt. at 18:13-22) has no merit.  In *Kimmel v. Goland*, 51 Cal. 3d 202 (1990), the California Supreme Court rejected a similar argument – that the litigation privilege protected defendants' secret recording of confidential telephone conversations because the recordings were made

in anticipation of litigation that was then filed by the defendants.  The Court held that the privilege did not apply because, while it "precludes recovery for tortiously inflicted injury resulting from *publications or broadcasts* made during the course of judicial and quasi-judicial proceedings," it "does not bar recovery for injuries from tortious *conduct* regardless of the purpose for which such conduct is undertaken."  *Id*. at 205 (emphasis in original); *see also Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006) (drawing the distinction between testimonial use of illegally overheard conversations, which is communicative and protected, and the act of eavesdropping on the conversation, which is noncommunicative and not protected); *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 345 (1997) (the privilege "applies only to communicative acts and does not privilege tortious courses of conduct").

Here, SDF has alleged a tortious course of conduct to injure SDF through unlawful threats that coerced Coinex to place SDF's funds in a Bitstamp account on the Ripple network, enabling Bitstamp to then freeze SDF's funds and deny SDF access to its funds; and to take actions to prop up the price of Ripple's XRPs.  These actions all took place prior to Bitstamp's filing of the interpleader action, and Bitstamp's subsequent filing of the interpleader action cannot immunize this tortious scheme.

### C.   SDF Has Stated a UCL Claim Against Bitstamp

#### 1.   A company can be held vicariously liable under the UCL for the wrongful conduct of its officer

Bitstamp's argument that SDF's UCL claim fails as a matter of law because vicarious liability does not exist under the UCL (Dkt. 130, at 19:6-20:7) is contradicted by the principal case on which it relies.  Bitstamp quotes *People v. Toomey*, 157 Cal. App. 3d 1, 14 (1984), quoted in *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002), for its argument that "'the concept of vicarious liability has no application to actions brought under the unfair business practices act,'" but "[r]ather 'a defendant's liability under the UCL must be based on its personal participation in the unlawful practices and unbridled control over the practices.'"  Dkt. 130, at 19:17-21.  *Toomey*, however, was addressing whether an individual officer in a company could be held *personally* liable for the acts of *other* employees and independent distributors – not whether the company could be held personally liable for acts of its officers.  The court held that while the individual defendant's "individual liability must be

predicated on his personal participation in the unlawful practices," his company "can, of course, be held

liable for violations of [the UCL] by its employees." *Toomey*, 157 Cal. App. 3d at 14.

Contrary to Bitstamp's warped reading, numerous cases make clear that *Toomey* "did not stand

for the proposition that principal-agency liability is unavailable for an unfair business practices case, but

merely disallowed only '*reverse* vicarious liability,' meaning 'officers and directors are not

automatically (vicariously) liable for the acts of the company that employs them." *JTH Tax, Inc.*, 212

Cal. App. 4th at 1238-39; *see also id.* at 1242 (*Toomey* and *Emery* cannot be interpreted as holding that

principal-agent liability does not exist under the UCL); *PCO, Inc. v. Christensen, Miller, Fink, Jacobs,*

*Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 390-91 (2007) (law partnership can be held

vicariously liable under UCL for acts of partner); *Krumme v. Mercury Ins. Co.*, 123 Cal. App. 4th 924,

946 (2004) (insurance company held vicariously liable under UCL for brokers' actions because brokers

are ostensible agents of the company); *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1379 (2000) ("an

officer or director will not be liable for torts in which he does not personally participate, of which he has

no knowledge, or to which he has not consented . . . [w]hile the corporation itself may be liable for such

acts").  Bitstamp omits this crucial distinction in *Toomey*'s holding and the law.[7]

The other two cases on which Bitstamp relies only addressed the issue of whether a defendant

can be held vicariously liable for the actions of a third party, and thus have no application here, because

neither addressed whether a company can be held vicariously liable under the UCL for the acts of its

officers.  In *Emery*, the plaintiff alleged that Visa was vicariously liable under the UCL and FAL

"because foreign lotteries, in written solicitations to California residents allow payment by Visa bank

cards," claiming that "Visa can be held vicariously liable, both criminally and civilly, for over 14

million merchants worldwide who accept Visa payment cards."  *Emery*, 95 Cal. App. 4th at 954.  The

---

[7] The California Supreme Court has held that employers can be vicariously liable for wrongful conduct by
their employees under California's False Advertising Law ("FAL").  *Ford Dealers Ass'n v. Department of Motor*
*Vehicles*, 32 Cal. 3d 347, 360-61 (1982) ("cases construing [the FAL] have consistently held business
managements liable for the acts of their agents").  The FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*, is expressly
incorporated in the UCL's statutory definition of unfair competition.  Cal. Bus. & Prof. Code § 17200.  A
subsequent case has held that "*Ford Dealers* establishes that persons can be found liable for misleading
advertising *and unfair business practices* under normal agency theory."  *People v. JTH Tax, Inc.* 212 Cal. App. 4th
1219, 1242 (2013) (emphasis added).  Indeed, under California law, a corporate employer can be held vicariously
liable for *punitive* damages arising out of torts committed by officers.  Cal. Civ. Code § 3294(b); *White v.*
*Ultramar*, 21 Cal. 4th 563, 566-67 (1999).

court held that Visa could not be liable because it "exercised no control over the preparation or distribution of the solicitations, nor did it have any relationship with the merchants who did." *Id*. at 960; *see also id*. at 956-57 (explaining Visa's lack of relationship with its alleged merchant agents). Bitstamp's other case, *In re Firearm Cases*, 126 Cal. App. 4th 959 (2005), involved a claim that gun manufacturers could be held vicariously liable for gun sales made by retail gun dealers that ended up being used in crimes. The court rejected this claim because there was no evidence that the manufacturer defendants provided weapons to criminals or failed to comply with or tried to avoid regulations, that plaintiffs cited "no cases finding a manufacturer has engaged in an unfair practice solely by legally selling a nondefective product based on actions taken by entities further along the chain of distribution," and that plaintiffs' experts could present no "evidentiary link between the manufacturer of a firearm and a retail gun dealer who sold guns that ended up in criminal circumstances." *Id*. at 984-85.

These cases have nothing to do with the issue of whether a company can be held liable for the acts of its officers, but only whether a company can be held liable for acts of third parties over whom the company does not exercise control. Thus, Bitstamp's contention that SDF's allegations are insufficient because "SDF does not allege that Bitstamp itself participated in any other alleged acts of unfair competition or exercised 'unbridled control' over alleged actions of Frost" (Dkt. 130, at 20:1-3 (citing *Emory*) relies on the wrong test for vicarious liability, because Frost is its officer and employee.[8]

### 2. SDF has sufficiently alleged that Frost's actions were within the scope of his employment as Bitstamp's Chief Legal Officer

"Under the doctrine of respondeat superior, an employer is vicariously liable for his employee's torts committed within the scope of the employment." *Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 967 (1986). California courts "broadly" interpret the scope of employment under the respondeat superior doctrine. *Farmers Ins. Group v. County of Santa Clara*, 11 Cal. 4th 992, 1004 (1995). "[T]he determining factor in ascertaining whether an employee's act falls within the scope of his employment

---

[8] If the Court determines that SDF is required to allege that Bitstamp exercised "unbridled control" over Frost in order to state a claim, SDF must be granted leave to amend to add allegations concerning Bitstamp's control of Frost's actions. *See* Point IV, *infra*. If the Court determines that Bitstamp's motion raises a factual issue concerning the extent of its control over Frost's actions, SDF must be given the opportunity to conduct discovery on this issue as the relevant information is in the exclusive control of Bitstamp and Frost. *See* Point V, *infra*.

for respondeat superior liability is not whether the act was authorized by the employer, benefited the employer, or was performed specifically for the purpose of fulfilling the employee's job responsibilities, but whether the employee's act was an outgrowth of his employment, inherent in the working environment, typical of or broadly incidental to the employer's business, or, in a general way, foreseeable from his duties." *Yamaguchi v. Harnsmut*, 106 Cal. App. 4th 472, 481-42 (2003); *see also Perez*, 41 Cal. 3d at 968-69.

In its Special Motion, Bitstamp concedes that SDF has sufficiently alleged that Frost's actions "in connection with Bitstamp's freezing" of SDF's funds "were taken in the course and scope of his employment by Bitstamp." Dkt. 130, at 20 n.6. These allegations include that: "Ripple, Frost and Bitstamp then took actions to have SDF's rPQ account containing the $940,000 plus SDF's other funds immediately frozen") (Dkt. 122 ¶ 26); and that "Frost, acting as Bitstamp's chief legal officer, . . . caused Bitstamp to improperly freeze SDF's account containing the $940,00 in Bitstamp USD" (*id*. ¶ 27). These allegations alone are sufficient to state a claim for respondeat superior liability against Bitstamp.

Moreover, SDF alleges earlier improper conduct by Frost, including Frost's involvement in the illegal threats to Coinex to coerce Coinex to place SDF's funds in a Bitstamp account, and the scheme to improperly prop up the value of XRP's. *See* Dkt. 122 ¶¶ 2-4, 10, 15, 18-25, 31, 37, 45. Given Bitstamp's business relationship with Ripple as a gateway for Ripple's currency (Dkt. 130, at 2:3-6) and Frost's managerial role as Bitstamp's Chief Legal Officer, Frost's alleged actions in conjunction with Ripple were "broadly incidental to [Bitstamp's] business," and thus SDF's allegations are sufficient to state a claim for respondeat superior liability against Bitstamp for all of Frost's alleged actions. *Yamaguch*, 106 Cal. App. 4th at 482; *see also Agarwal v. Johnson*, 25 Cal. 3d 932, 947 (1979) (under California law, "the employer is liable for the willful misconduct of his employees acting in a managerial capacity . . . to encourage careful selection and control of persons placed in important management positions").

Finally, Bitstamp cites no legal authority to support its contention that it cannot be liable for Frost's actions because "SDF alleges that Frost's actions were taken on behalf of Ripple" (Dkt. 130, at 20 n.6), and California law rejects this argument. "There is no requirement that an employee's act

benefit an employer for respondeat superior to apply." *Perez*, 41 Cal. 3d at 969; *see also Fields v. Sanders*, 29 Cal. 2d 834, 839 (1947) (vicarious liability not precluded even though the tortious act "was not committed in order to further the interests of the principal." The fact that an employee "combines his own business with that of his employer" is irrelevant "unless it appears that neither directly or indirectly could he have been serving his employer." *Perez*, 41 Cal. 3d at 970.[9]

### 3. SDF is not required to plead harm to competition in order to state a claim for violation of the UCL and in any event has alleged harm to competition

Bitstamp's alternative legal argument that SDF's UCL claim fails as a matter of law because "SDF must plead and prove harm to competition, not merely harm to itself" (Dkt. 130, at 20:10-11) misreads SDF's Counterclaim and misstates the law. The UCL is a broad remedial statute that authorizes a plaintiff to challenge wrongful business conduct "in whatever context such activity might occur." *Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 181 (1999). "Its coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Id.* at 180. The UCL creates a cause of action for any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Because the statute is written in the disjunctive, it is violated if a defendant's act or practice is either: (1) unlawful, (2) unfair, or (3) fraudulent. *Lozano v. AT&T Wireless Serv.*, 504 F.3d 718, 731 (9th Cir. 2007).

Bitstamp's contention that SDF only alleged a claim under the UCL's "unfair" prong and did not plead a violation under the "unlawful" prong of the UCL (Dkt. 130, at 20 n.7) misreads SDF's Counterclaim. An "unlawful" act or practice under the UCL is "anything that can properly be called a business practice and at the same time is forbidden by law." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992). The "unlawful" prong "borrows" violations of other laws and treats them as unlawful practices independently actionable under section 17200." *Id.* SDF alleges that Ripple, Frost,

[9] If the Court were to determine, after liberally construing SDF's complaint, that SDF's factual allegations are insufficient to state a claim for respondeat superior liability, the Court must allow SDF leave to amend its complaint to add additional allegations concerning the scope of Frost's authority and duties at Bitstamp and the purpose of Frost's acts. *See* Point IV, *infra*. If the Court were to determine that Bitstamp's motion raises a factual issue concerning Bitstamp's liability under respondeat superior, SDF must be given the opportunity to conduct discovery on this issue as the relevant information is in the exclusive control of Bitstamp and Frost. *See* Point V, *infra*.

and Bitstamp participated in an unlawful scheme to injure SDF through unlawful threats that coerced Coinex, an online currency exchange, to place SDF's funds in a Bitstamp account on the Ripple network, enabling Bitstamp to then freeze SDF's funds and deny SDF access to its funds.  Dkt. 122 ¶¶ 4, 10, 18, 23- 25, 27, 31, 36-37, 45, 48.  These allegations state a claim under the "unlawful" prong of the UCL against Ripple, Frost, and Bitstamp for extortion in violation of California Penal Code §§ 518, 519, which prohibit threats to accuse someone of a crime in order to obtain property of another.  "[T]hreats to do the acts that constitute extortion under Penal Code section 519 are extortionate whether or not the victim committed the crime or indiscretion upon which the threat is based and whether or not the person making the threat could have reported the victim to the authorities or arrested the victim."  *Flatley v. Mauro*, 39 Cal. 4th 299, 327 (2006).  Moreover, "[a]ttorneys are not exempt from these principles in their professional conduct."  *Id*.  Accordingly, Bitstamp's argument fails on this ground alone.

Further, Bitstamp's argument that SDF's claim under the "unfair" prong of the UCL fails because "SDF alleges no threat or harm to competition" (Dkt. 130, at 20:12-13) has no basis.  SDF alleges that "Ripple was threatened by the formation of SDF" and further that "Ripple believed that the federal criminal investigation" targeting Ripple, "would damage its position in the virtual currency markets." Dkt. 122 ¶¶ 13, 14.  SDF alleges that in response, Ripple, along with Frost and Bitstamp, carried out the scheme alleged in the Counterclaim "to interfere with SDF's operations" and to "prop up the price of Ripple's XRP currency."  *Id*. ¶¶ 13-15; *see also id*. ¶ 18.  SDF further alleges that a company "responsible for a substantial portion of XRP trading volume on the public markets" participated in this scheme (*id*. ¶19), that as part of the scheme Ripple "manipulated the market" (*id*.), and that the scheme included "misleading other XRP purchasers" (*id*. at 21).  Taken together and liberally construed, these allegations are sufficient to allege the requisite "actual or threatened impact on competition" in the virtual currency markets.  *Cel-Tech*, 20 Cal. 4th at 186-87.[10]

//

---

[10] If the Court determines that SDF's allegations are insufficient to state a claim, SDF must be given leave to amend to add additional allegations concerning the impact of the alleged scheme on competition in the virtual currency markets.  *See* Point IV, *supra*.

**IV.    IF THE COURT GRANTS BITSTAMP'S MOTION, IT MUST ALLOW SDF LEAVE TO AMEND**

"Granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P., Rule 15(a)'s policy favoring liberal amendment." *Verizon Delaware, Inc. v. Covad Commc'n Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004); *see also Greensprings Baptist Christian Fellowship Trust v. Cilley*, 629 F.3d 1064, 1066, n.1 (9th Cir. 2010); *Rogers*, *supra*, 57 F. Supp. 2d at 982 (any dismissal should "generally be with leave to amend").   Under the federal motion to dismiss standard:  "If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

If, after construing SDF's Counterclaim broadly, the Court were to conclude that SDF's factual allegations are insufficient to defeat Bitstamp's motion, the Court must allow SDF leave to amend. *See* Point III.A, *supra*, at p. 12n.5; Point III.C.1, *supra*, at p. 17 n.8; Point III.C.2 *supra*, at p. 19 n.9; Point III.C.3, *supra* at p. 20 n.10. SDF would also amend its Second Claim for Relief for interference with SDF's economic relations with Coinex and its Third Claim for Relief for Interference with SDF's economic relations with Stephenson to add Bitstamp as a defendant to these causes of action based on these allegations and Bitstamp's liability as a co-conspirator for all actions taken by any other member of the conspiracy in furtherance of the conspiracy.  *See, e.g.*, *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994) ("[b]y participation in a civil conspiracy, a coconspirator effectively adopts as [its] own the torts of other coconspirators within the ambit of the conspiracy"); *AREI II Cases*, 216 Cal. App. 4th 1004, 1024 (2013) ("[t]he purpose of conspiracy allegations is to establish a conspirator's liability as a joint tortfeasor regardless of whether the conspirator was a direct participant in the wrongful act").

**V.     IF THE COURT DETERMINES THAT BITSTAMP'S MOTION REQUIRES THE RESOLUTION OF FACTUAL ISSUES, IT MUST ALLOW SDF TO CONDUCT DISCOVERY IN ORDER TO RESPOND TO THE MOTION**

As discussed in Point I, *supra*, Bitstamp's anti-SLAPP motion involves "purely legal" issues and thus must be treated as a motion to dismiss.  Indeed, Bitstamp has taken this very position in refusing

SDF's request that it agree to discovery, maintaining that its motion does not raise any factual issues or rely on the declaration evidence it submitted with the motion, and concluding that this obviated any need for SDF to conduct discovery.  Gross Dec. ¶ 3 & Ex. B.[11]  In the event that Bitstamp on reply changes its position, and argues that the Special Motion does address specific factual issues, such an argument must be rejected because Bitstamp has taken the position that no such issue was raised in its motion. *See, e.g., Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) ("issues which are not specifically and distinctly argued and raised in a party's opening brief are waived").

Even if the Court were to credit such a fact-based argument, or otherwise determines that Bitstamp's motion raises factual challenges, it must treat Bitstamp's motion as a summary judgment motion under FRCP 56 and allow SDF to conduct discovery pursuant to FRCP 56(d) in order to oppose the motion.  *See, e.g., Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845-46 (9th Cir. 2001); *Rogers*, 57 F. Supp. 2d at 979-82.  As this Court has held, if a special motion to strike does not involve "purely legal" issues but raises specific factual issues, "the motion must be treated as though it were a motion for summary judgment and discovery must be permitted."  *Nat'l Abortion Fed'n*, 2015 U.S. Dist. LEXIS 114851, at *10; *see also T.T. v. County of Marin*, 2013 U.S. Dist. LEXIS 10512, at *8 (N.D. Cal. Jan. 25, 2013) (a court must treat "an anti-SLAPP motion based on the plaintiff's failure to submit evidence to substantiate its claims . . . as a motion for summary judgment, and discovery must be developed sufficiently to permit summary judgment under Rule 56"); *Aeroplate Corp. v. Arch Ins. Co.*, 2006 U.S. Dist. LEXIS 82180, at **23-24 (E.D. Cal. Nov. 8, 2006) (discovery must be allowed unless the factual basis of the case has been developed through discovery, the parties agree that discovery is not necessary, or the motion presents only issues of law).

SDF has had no opportunity to conduct any discovery in this case.  Gross Dec. ¶ 5.  "Because of the requirement that the nonmoving party be permitted to conduct necessary discovery, summary judgment is often considered inappropriate early in a case," and FRCP 56(d) "ensures that adequate discovery will occur before summary judgment is considered."  *Rogers*, 57 F. Supp. 2d at 981, 982.

---

[11] Although Bitstamp repeatedly cites the Declaration of Jean-Baptiste Graftieaux, Bitstamp's Chief Compliance Officer, in its Statement of Relevant Facts (*see* Bitstamp Mem. at 2-4), Bitstamp's counsel expressly disavowed any reliance on the Graftieux Declaration in Bitstamp's motion: "Although you cited the Graftieux Declaration as a basis for discovery . . . Bitstamp does not rely on any evidence in the Graftieux Declaration for its motion."  Gross Dec. Ex. B.

Moreover, as discussed above, the Court cannot grant Bitstamp's motion on any of its arguments without first allowing SDF discovery into information that is in Bitstamp's, Ripple's, and Frost's exclusive control.  This discovery would include the extent of Bitstamp's and Frost's actions in concert with Ripple (1) Bitstamp's and Frost's actions in propping up the price of XRPs, (2) Bitstamp's and Frost's actions in strategizing and facilitating the purchase of Stephenson's XRPs by an agent of Ripple and in inflating the value of XRPs in that purchase, (3) Bitstamp's and Frost's actions in making threats to Coinex to force Coinex to place SDF's funds in a Bitstamp account, (4) Bitstamp's and Frost's actions in planning to have Bitstamp freeze SDF's funds once placed within the control of Bitstamp; (5) Bitstamp's and Frost's actions in planning in general to harm SDF; (6) Bitstamp's and Frost's knowledge that the sale by Stephenson of his XRPs was not a breach of any agreement between Ripple and McCaleb; (7) the extent of Frost's and Bitstamp's "fear" that Ripple might file a lawsuit against Bitstamp; (8) whether Bitstamp was properly executing its anti-AML policy or whether Bitstamp was using that policy to thwart SDF's control over its funds; (9) the reasons why Bitstamp decided to freeze SDF's funds; (10) Frost's and Bitstamp's communications with Ripple concerning SDF's auction and whether this perceived as a threat; and (11) the extent of Bitstamp's control over Frost's actions; (12) the scope of Frost's authority as Chief Legal Officer of Bitstamp. *See* Point II, *supra*, at p. 8 n.4 & p.10; Point III.C.1, *supra*, at p. 17 n.8; Point III.C.2 *supra*, at p. 19 n.9. SDF has not yet had an opportunity to depose any of the individuals involved or obtain and review their documents.  Gross Dec. ¶ 5.  "Where the facts are in possession of the moving party a continuance should be granted almost as a matter of course." *Rogers*, 57 F. Supp. 2d at 981 (quoting *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 898 F.2d 946, 949 (3rd Cir. 1990)).  Thus, if the Court were to determine that the Special Motion means that SDF has the burden to oppose the motion with "admissible evidence" on any of these issues, or in response to any fact-based argument Bitstamp may raise in its reply, in order to demonstrate "a probability of prevailing" (Dkt. 130, at 11:20-12:12), then SDF is entitled to conduct discovery in order to respond.

Moreover, if the Court does determine that discovery is required, then SDF must be provided sufficient time for the discovery to take place.  Because Frost is an attorney who has represented both Bitstamp and Ripple, such discovery will almost certainly involve assertions of attorney-client privilege

by Bitstamp, Frost, and Ripple concerning the production of documents and deposition questions concerning Frost's communications.  Thus, the discovery period must include sufficient time to allow adjudication of any motions resulting from such refusals to provide requested discovery.

Accordingly, if the Court determines that discovery is necessary in order to oppose Bitstamp's Special Motion, SDF requests that the Court deny the motion, pursuant to FRCP 56(d)(1), without prejudice to Bitstamp refiling it at the end of the discovery period, and allow SDF the opportunity to conduct discovery.  *See, e.g.*, *Rogers*, 57 F. Supp. 2d at 981 (Rule 56(d)(1) requires denial "where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)).  "Once the nonmoving party has been given the opportunity to conduct discovery, the special motion can be heard." *Rogers*, 57 F. Supp. 2d at 982.

## **CONCLUSION**

For the reasons set forth above, Bitstamp's Special Motion to Strike Counterclaim must be denied.


Dated: September 29, 2015

By: /s/ Adam Belsky
Terry Gross (SBN 103878)
terry@gba-law.com
Adam C. Belsky (SBN 147800)
adam@gba-law.com
GROSS BELSKY ALONSO LLP
One Sansome Street, Suite 3670
San Francisco, CA 94104
Telephone: 415 554-0200
Facsimile: 415 544-0201

Attorneys for Defendant, Counterclaimant, and Crossclaimant
Stellar Development Foundation