1   Jessica Nall (State Bar No. 215149)
    jnall@fbm.com
2   Kelly A. Woodruff (State Bar No. 160235)
    kwoodruff@fbm.com
3   Christopher C. Wheeler (State Bar No. 224872)
    cwheeler@fbm.com
4   Farella Braun + Martel LLP
    235 Montgomery Street, 17th Floor
5   San Francisco, CA  94104
    Telephone:  (415) 954-4400
6   Facsimile:  (415) 954-4480

7   Attorneys for Plaintiff
    BITSTAMP LTD.

8                 UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11  BITSTAMP LTD., a foreign company,          CASE NO. 3:15-cv-1503 WHO

12              Plaintiff,                      **REPLY IN SUPPORT OF BITSTAMP'S**
                                                **SPECIAL MOTION TO STRIKE**
13         vs.                                  **COUNTERCLAIM**

14  RIPPLE LABS INC., a California
    Corporation, JACOB STEPHENSON, an
15  individual, NANCY HARRIS, an               Date:        November 3, 2015
    individual, JED MCCALEB, an individual,    Time:        3:00 p.m.
16  and DOES 1 Through 10, Inclusive,          Judge:       Hon. William H. Orrick
                                               Courtroom:   Two, 17th Floor
17              Defendants.

18
    STELLAR DEVELOPMENT
19  FOUNDATION, a Delaware Nonprofit
    Corporation,
20
                Counterclaimant and
21              Crossclaimant,

22         vs.

23  RIPPLE LABS INC., a California
    Corporation, GEORGE FROST, an
24  individual,  BITSTAMP LTD., a foreign
    company, and DOES 1 Through 20,
25  inclusive,

26              Cross-Defendants and
                Counter-Defendants.
27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE
Case No. 3:15-cv-1503 WHO

31652\5075050.4

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.   ARGUMENT .......................................................................................................... 1

    A.    SDF's Counterclaim Against Bitstamp Is Not Based On Allegations Of Extortion Or Market Manipulation. ................................................. 2

        1.    SDF's Unfair Competition Claim Is Not Based On Alleged Extortion Under The "Unlawful" Prong ......................................... 2

        2.    SDF's Unfair Competition Claim Is Not Based On Alleged Market Manipulation Of The Price Of XRP ........................................... 4

        3.    SDF's Unfair Competition Claim Against Bitstamp Cannot Be Based On The Alleged Extortion Of Coinex Or Propping Up Of Ripple's XRP Price As A Matter Of Law ...................................... 6

    B.    SDF's Counterclaim Is Based On The Freezing And Interpleading Of The Disputed Funds And Must Be Stricken As A Frivolous SLAPP. ........................... 7

        1.    Bitstamp's Actions In Freezing And Interpleading The Disputed Funds Constitute Protected Activity Within The Meaning Of The Anti-SLAPP Statute ......................................................... 7

        2.    SDF Cannot Prevail On Its Counterclaim As A Matter Of Law ................ 9

            a.    SDF's Counterclaim Is Barred By The Doctrine Of Collateral Estoppel ............................................................ 9

            b.    SDF's Counterclaim Is Based On Conduct Absolutely Privileged By California's Litigation Privilege ........................... 10

    C.    It Is Improper To Grant Leave To Amend Claims That Are Stricken Pursuant To California's Anti-SLAPP Statute .................................... 11

III.  CONCLUSION ...................................................................................................... 15

Furella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE
Case No. 3:15-cv-1503 WHO

- i -

31652\5075050.4

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL COURT CASES**

*Alfus v. Pyramid Technology Corp.,*
   745 F. Supp. 1511 (N.D. Cal. 1990) ...................................................................5

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...........................................................................................3

*Batzel v. Smith,*
   333 F.3d 1018 (9th Cir. 2003) ......................................................................1, 15

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ...........................................................................................3

*Bierman v. Marcus,*
   246 F.2d 200 (3d Cir. 1957) ..............................................................................9

*Blackburn v. ABC Legal Servs.,*
   No. C 11-01298 JSW, 2011 U.S. Dist. LEXIS 109817 (N.D. Cal. Sept. 27, 2011) ..12, 13, 14

*Blackburn v. ABC Legal Servs., Inc.,*
   2011 WL 8609453 (N.D. Cal. June 16, 2011) .....................................................8

*Business Guides, Inc. v. Chromatic Comm. Enters., Inc.,*
   498 U.S. 533 (1991) .........................................................................................14

*Christian v. Mattel, Inc.,*
   286 F.3d 1118 (9th Cir. 2002) ..........................................................................14

*Daniels v. Equitable Life Assur. Soc. of U.S.,*
   35 F.3d 210 (5th Cir. 1994) ..............................................................................12

*Fintland v. Luxury Marine Grp, LLC,*
   2010 WL 758190 (C.D. Cal. Mar. 1, 2010) .......................................................13

*Flores v. Emerich & Fike,*
   2006 WL 2536615 (E.D. Cal. 2006) ......................................................12, 13, 14

*Golden Eagle Distrib. Corp. v. Burroughs Corp.,*
   801 F.2d 1531 (9th Cir. 1986) ..........................................................................14

*Harper v. Lugbauer,*
   2012 WL 1029996 (N.D. Cal. Mar. 15, 2012) .............................................12, 14

*Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009) ............................................................................5

*Kenery v. Wells Fargo, N.A.,*
   2015 WL 5138635 (N.D. Cal. Sept. 1, 2015) ......................................................5

*Levitt v. Yelp! Inc.,*
   765 F.3d 1123 (9th Cir. 2014) ........................................................................3, 5

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE
Case No. 3:15-cv-1503 WHO

- ii -

31652\5075050.4

*Verizon Delaware, Inc. v. Covad Communications Co.*,
    377 F.3d 1081 (9th Cir. 2004)........................................................................12, 13

*Lutheran Bhd. v. Comyne*,
    216 F. Supp. 2d 859 (E.D. Wis. 2002)....................................................................10

*MacDonald v. Ford Motor Co.*,
    37 F. Supp. 3d 1087 (N.D. Cal. 2014) .....................................................................4

*Metabolife Int'l, Inc. v. Wornick*,
    264 F.3d 832 (9th Cir. 2001)....................................................................................1

*Metro. Life Ins. Co. v. Barretto*,
    178 F. Supp. 2d 745 (S.D. Tex. 2001) ...................................................................10

*Mory v. City of Chula Vista*,
    2008 WL 360449 (S.D. Cal. Feb 11, 2008) ...........................................................13

*Prudential Ins. Co. of Am. v. Hovis*,
    553 F.3d 258 (3d Cir. 2009)......................................................................................9

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987)...................................................................................15

*Smith v. Santa Rosa Democrat*,
    2011 WL 5006463 (N.D. Cal. Oct. 20, 2011)..........................................12, 14, 15

*Starr v. Bacca*,
    652 F.3d 1202 (9th Cir. 2011)..................................................................................4

*Thomas v. Los Angeles Times Communications, LLC*,
    189 F. Supp. 2d 1005 (C.D. Cal. 2002)...................................................................12

*Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc.*,
    682 F. Supp. 2d 1003 (N.D. Cal. 2010) ...........................................................*passim*

*United States v. Lockheed Missiles & Space Co., Inc.*,
    190 F.3d 963 (9th Cir. 1999)...................................................................................12

**STATE COURT CASES**

*Clark v. Superior Court*,
    50 Cal. 4th 605 (2010) ..............................................................................................6

*Farmers Ins. Group v. County of Santa Clara*,
    11 Cal. 4th 992 (1995) ..............................................................................................4

*Finton Construction, Inc. v. Bidna & Keys, APLC*,
    238 Cal. App. 4th 200 (2015)..................................................................1, 8, 10, 11

*Gootee v. Lightner*,
    224 Cal. App. 3d 587 (1990).....................................................................................11

Furella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE
Case No. 3:15-cv-1503 WHO

- iii -

31652\5075050.4

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003) .................................................................................................7

*Kraus v. Trinity Mgmt. Servs., Inc.,*
    23 Cal. 4th 116 (2000) ...................................................................................................7

*Kwikset Corp. v. Superior Court,*
    51 Cal. 4th 310 (2011) ...................................................................................................6

*Lisa M. v. Henry Mayo Newhall Memorial Hospital,*
    12 Cal. 4th 291 (1995) ...................................................................................................5

*M.F. Farming, Co. v. Couch Distributing Company,*
    207 Cal. App. 4th 180 (2012) ........................................................................................8

*Mobile Med. Servs. v. Rajaram,*
    14 C.D.O.S. 11223 (Cal. Ct. App. Oct. 14, 2015) ......................................................14

*Olsen v. Harbison,*
    191 Cal. App. 4th 325 (2010) ......................................................................................10

*Perez v. Van Groningen & Sons, Inc.,*
    41 Cal. 3d 962 (1986) ....................................................................................................5

*Rusheen v. Cohen,*
    37 Cal. 4th 1048 (2006) ...............................................................................................11

*Safeway, Inc. v. Superior Court,*
    238 Cal. App. 4th 1138 (2015).......................................................................................6

*Salma v. Capon,*
    161 Cal. App. 4th 1275 (2008).......................................................................................8

*Silberg v. Anderson,*
    50 Cal. 3d 205 (1990) ..................................................................................................11

*Simmons v. Allstate Ins.,*
    92 Cal. App. 4th 1068 (2001)..................................................................................12, 14

*Yamaguchi v. Harnsmut,*
    106 Cal. App. 4th 472 (2003).........................................................................................5


**STATE STATUTORY AUTHORITIES**

Bus. & Prof. Code
    § 17204...........................................................................................................................6

Cal. Civ. Proc. Code
    §425.16 ...........................................................................................................2, 8, 12, 13
    §425.16(e) .......................................................................................................................2
    §425.16(e)(1) and (2)...................................................................................................2, 8

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE
Case No. 3:15-cv-1503 WHO

- iv -

31652\5075050.4

## FEDERAL RULES AND REGULATIONS

Fed. R. Civ. P.

8.........................................................................................................................................3, 5
9(b).........................................................................................................................................5
11.........................................................................................................................................14

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

I.      **INTRODUCTION**

As the Ninth Circuit has acknowledged, the purpose of California's anti-SLAPP statute is "to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832, 839 (9th Cir. 2001).  Because SLAPP suits "masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so," the goal of the anti-SLAPP statute is to provide a *speedy* and final resolution to such suits.  *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003) (internal quotations and citation omitted).

Not only is SDF's retaliatory counterclaim against Bitstamp a clear SLAPP suit, but SDF's actions in opposing Bitstamp's anti-SLAPP motion also reveal SDF's improper motive – namely, to drag out the proceedings as long as possible and cost Bitstamp as much money as possible to extort an improper settlement from Bitstamp.  SDF's tactics should not be countenanced, and the Court should strike SDF's counterclaim against Bitstamp with prejudice and award Bitstamp its attorneys' fees and costs incurred in bringing its motion.

II.     **ARGUMENT**

SDF asserts a single counterclaim against Bitstamp, for unfair competition.  The gravamen of SDF's claim is that Bitstamp harmed SDF by colluding with Ripple to freeze SDF's funds on the Bitstamp exchange and file an interpleader action to resolve the disputed claims. (Counterclaim, Dkt. 122, ¶¶ 4, 26, 27.)  Because SDF's counterclaim is based on protected litigation activity and SDF cannot establish a probability that it will prevail on the merits (*Finton Construction, Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200, 209 (2015)), Bitstamp filed its anti-SLAPP motion.

In response, SDF manufactures two entirely new theories as the purported basis for its UCL claim:  (1) Bitstamp's "unfair" practice of participating in an alleged scheme by Ripple to engage in "market manipulation [to] prop[] up the XRP price"; and (2) its "unlawful" practice of assisting Ripple with its alleged unlawful threats to Coinex to "coerce[] Coinex into placing SDF's funds in a Bitstamp account on the Ripple network."  (Opp. at 7.)  But in determining whether the acts alleged in a complaint constitute protected activity, the Court must look at the

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE   Cv
Case No. 3:15-cv-1503 WHO                          - 1 -                  1503 WHO

31652\5075050.4

actual pleadings filed, "*not a rephrasing of the claims that comes in response to an anti-SLAPP motion to strike.*" *Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc.*, 682 F. Supp. 2d 1003, 1016 (N.D. Cal. 2010) (emphasis added). And SDF does not – and cannot – allege that Bitstamp was in any way involved with the alleged propping up of Ripple's XRP price or improper threatening of Coinex.

Instead, as established in Bitstamp's opening brief, the *only activities* allegedly giving rise to Bitstamp's liability are the freezing and immediate interpleading of the Disputed Funds, which indisputably constitutes protected activity within the meaning of paragraphs (e)(1) and (e)(2) of Section 425.16.[1] Because SDF cannot show a probability of prevailing on the merits of its unfair competition claim, its counterclaim should be promptly dismissed with prejudice.

### A. SDF's Counterclaim Against Bitstamp Is Not Based On Allegations Of Extortion Or Market Manipulation.

SDF cannot avoid the striking of its counterclaim by disguising or disavowing its earlier assertions. *Tuck Beckstoffer*, 682 F. Supp. 2d at 1016 ("a litigant cannot avoid the anti-SLAPP statute by amending its pleadings or disguising earlier assertions.") Despite its contention that the gravamen of its counterclaim is the alleged extortion of Coinex and improper propping up of the market price of XRPs, Stellar cannot avoid the fact that actual gravamen of the claim is Bitstamp's actions in freezing and interpleading the Disputed Funds.

### 1. SDF's Unfair Competition Claim Is Not Based On Alleged Extortion Under The "Unlawful" Prong.

Although SDF does not plead a claim for extortion, SDF now claims for the first time that it has stated a claim for extortion against Bitstamp, which constitutes a violation of the "unlawful" prong of the UCL. (Opp. at 20.) SDF's arguments are frivolous.

SDF asserts repeatedly throughout its opposition – though entirely inaccurately – that the

---

[1] SDF complains that "Bitstamp nowhere identifies which category or categories in CCP § 425.16(e) it asserts applies." (Opp. at 7.) Not so. Bitstamp argued that its actions in freezing and interpleading the Disputed Funds is protected litigation activity within the meaning of Section 425.16(e)(1), and (e)(2). (Motion, Dkt. 130, Notice of Motion and MP&A at 11.)

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE      - 2 -
Case No. 3:15-cv-1503 WHO

31652\5075050.4

counterclaim alleges that Ripple, Frost and Bitstamp participated in an illegal scheme to extort Coinex into transferring the Disputed Funds from the Coinex exchange to the Bitstamp exchange.  (Opp. at 4, 7, 9, 10, 12, 18, 19-20.)  Ignoring its own allegations, SDF accuses Bitstamp of "mischaracteriz[ing]" and "misread[ing]" SDF's counterclaim (Opp. at 7, 12, 19), and refers to Bitstamp's reading of the counterclaim as "warped" and "distorted" (Opp. at 14, 16).  Indeed, SDF even asserts that Bitstamp "ignores SDF's allegations that *Frost and Bitstamp participated in the threats* to Coinex."  (Opp. at 10, emphasis added.)  However, the reality is that SDF does *not* allege that either Frost or Bitstamp participated in or had *any involvement* in Ripple's alleged threats.  To the contrary, the operative paragraphs of the counterclaim assert that Ripple *alone* fraudulently purchased Stephenson's XRPs and then contacted Coinex to force Coinex to transfer the funds Stephenson received from the purchase to the Bitstamp exchange. (Counterclaim ¶¶ 19-25.)  There is no mention at all of either Frost or Bitstamp taking any action in relation to these claims.

Nor is SDF saved by its generic allegation that "the Cross-Defendants . . . acted in concert and conspired with one another."  (*Id.* ¶ 10.)  Firstly, this paragraph is not alleged against Bitstamp, which is a counter-defendant, not one of the two cross-defendants.  (*Id.* ¶¶ 6-8.)  This is no mere oversight on SDF's part; its entire cross-complaint/counterclaim is premised on the alleged improper actions of Ripple, purportedly assisted in some respects by the efforts of Frost, who SDF alleges was formerly Ripple's advisor.  (*See* e.g., *id.* ¶¶ 15-18, 34-39, 49-52.)  Indeed, SDF's Second and Third Claims for Relief (for interference with the Stephenson transaction and Coinex relationship) are asserted only against Ripple and Frost.  Certainly, had SDF any good faith basis on which to assert these claims against Bitstamp, it would have done so.

Moreover, even if the Court were to treat SDF's counterclaim as alleging that Bitmap is liable as a co-conspirator for Ripple's actions in allegedly threatening Coinex, its allegation fails under Federal Rule of Civil Procedure 8.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("a bare assertion of conspiracy will not suffice"); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("bare assertions" "amount to nothing more than a 'formulaic recitation of the elements'" of the claim are insufficient); *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (affirming

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE           - 3 -
Case No. 3:15-cv-1503 WHO                                                         31652\5075050.4

1    dismissal of UCL claim based on extortion because "allegations in a . . . counterclaim may not

2    simply recite the elements of a cause of action, but must contain sufficient allegations of

3    *underlying facts* to give fair notice and to enable the opposing party to defend itself effectively.")

4    (quoting *Starr v. Bacca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (emphasis added)).  Although Rule

5    8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned,

6    the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.

7         Because SDF does not in fact allege that Bitstamp made any unlawful or improper threats

8    to Coinex, it has not pled an underlying violation of law sufficient to state a claim under the

9    unlawful prong of the UCL.  *See MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1097

10   (N.D. Cal. 2014) ("to state a claim under the unlawful prong of the UCL, a plaintiff must

11   sufficiently plead a predicate violation"); *Tuck Beckstoffer*, 682 F. Supp. 2d at 1020 (failure to

12   plead predicate violation of law is fatal to UCL claim based on "unlawful" prong).  Thus, SDF's

13   claims that the gravamen of its counterclaim is Bitstamp's extortion of Coinex is meritless, if not

14   frivolous.

15              **2.    SDF's Unfair Competition Claim Is Not Based On Alleged Market
                       Manipulation Of The Price Of XRP.**
16

17        SDF also asserts that the gravamen of its UCL claim against Bitstamp is Bitstamp's

18   "unfair" practice of "engaging in 'market manipulation [to] prop[] up the XRP price.'"  (Opp. at

19   7, citing Counterclaim ¶¶ 2-3.)  But even a broad reading of SDF's counterclaim establishes that

20   SDF does *not* allege that Bitstamp had any involvement with the alleged price manipulation.

21   SDF's cross-complaint/counterclaim alleges that Ripple's purchase of Stephenson's XRPs was

22   fraudulent and served to improperly prop up the price of XRPs on the market.  (Counterclaim

23   ¶¶ 3, 15, 18-21.)  Notably, however, there is not a single allegation that Bitstamp had anything to

24   do with the purchase or the alleged market manipulation.  (*Id.*)

25        Although SDF alleges generically that Frost "conspired" with Ripple to prop up the price

26   of XRPs "because each owns a substantial amount of XRPs" (*id.* ¶¶ 18, 15), SDF's conclusory

27   allegations that Frost was somehow involved are insufficient to establish Bitstamp's liability

28   under respondeat superior as a matter of law.  *Farmers Ins. Group v. County of Santa Clara*, 11

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE          - 4 -
Case No. 3:15-cv-1503 WHO

31652\5075050.4

Cal. 4th 992, 1019 (1995).  SDF does not allege (nor could it) that Frost's actions were "an outgrowth of his employment, inherent in the working environment, typical of or broadly incidental to the employer's business, or, in a general way, foreseeable from his duties." *Yamaguchi v. Harnsmut*, 106 Cal. App. 4th 472, 482 (2003) (citing *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal. 4th 291, 297-299 (1995) (internal quotation marks omitted)).  To the contrary, *if* Frost were engaged in a fraudulent purchase of XRPs in order to assist another company (Ripple) in manipulating the price of its online currency either to benefit himself or Ripple, such actions would "substantially deviate[] from the employment duties for personal purposes" and would be "so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business."  *Farmers*, 11 Cal. 4th at 1004, 1005, 1008.  Any actions Frost allegedly took in connection with Ripple's purchase of Stephenson's XRPs did not directly or indirectly serve Bitstamp, his employer, and as a matter of law, Bitstamp could not be held vicariously liable.  *Id.* at 1019; *Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 970 (1986).

Not only does SDF fail to allege any facts that could lead a reasonable trier of fact to conclude that Frost was acting within the scope of his employment when he "conspired" to prop up the price of XRPs, but SDF utterly fails to describe what actions Frost allegedly took.  SDF's conclusory allegations that Frost conspired with Ripple are insufficient under Federal Rules of Civil Procedure 8 and 9(b) "both for failure to plead conspiracy with the requisite particularity and for failure to plead an agreement to participate in an unlawful act."  *Alfus v. Pyramid Technology Corp.*, 745 F. Supp. 1511, 1521 (N.D. Cal. 1990); *see also Kenery v Wells Fargo, N.A.*, 2015 WL 5138635, at *2 (N.D. Cal. Sept. 1, 2015) (where UCL claim "under the unfair prong is based upon alleged fraudulent conduct, that claim likewise must satisfy the heightened pleading requirements of Rule 9(b).") (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)).  Indeed, SDF asserts no "allegations of underlying facts" establishing Frost had anything to do with Ripple's purchase of Stephenson's XRPs, let alone sufficient facts to suggest "entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Levitt*, 765 F.3d at 1135 (citations omitted).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE          - 5 -
Case No. 3:15-cv-1503 WHO                                                          31652\5075050.4

1   Other than the conclusory allegation that Frost "conspired" with Ripple to prop up the price

2   (Counterclaim ¶ 18), *none of SDF's allegations* concerning Ripple's alleged market

3   manipulation even mention Frost (*see id.* ¶¶ 19-22).

4           Because SDF does not in fact allege that Bitstamp had any involvement in the alleged

5   fraudulent purchase of Stephenson's XRPs to "prop up" the market price, SDF's assertion that its

6   counterclaim is based on this alleged unfair business practice is meritless. *See Tuck Beckstoffer*,

7   682 F. Supp. 2d at 1016.

8                   **3.      SDF's Unfair Competition Claim Against Bitstamp Cannot Be Based
                            On The Alleged Extortion Of Coinex Or Propping Up Of Ripple's
9                           XRP Price As A Matter Of Law.**

10          Even if SDF had alleged that Bitstamp is liable for propping up the price of XRPs or for

11  unlawfully threatening Coinex, which it has not, these actions cannot form the basis for SDF's

12  UCL claim as a matter of law.  *First*, SDF lacks standing to assert a UCL claim based on alleged

13  propping up of the XRP price or the alleged threats to Coinex.  Since the passage of Proposition

14  64 in 2004, a private plaintiff may only maintain a UCL claim if it has suffered "a loss or

15  deprivation of money or property sufficient to qualify as injury in fact" that was "*caused by* the

16  unfair business practice." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (citing

17  Bus. & Prof. Code § 17204) (emphasis in original).  SDF did not lose any money or property as a

18  result of Ripple's purchase of Stephenson's XRPs, even if done fraudulently with the intent to

19  prop up the market price of XRPs.  Further, SDF did not lose any money or property as a result

20  of Ripple's alleged coercion of Coinex to transfer funds to the Bitstamp exchange.  Indeed, SDF

21  *concedes* that Coinex transferred $1,006,130 *into SDF's* Bitstamp account on the Ripple

22  network.  (Counterclaim ¶ 25.)  Thus, SDF's UCL claim cannot be based on these alleged

23  actions as a matter of law.

24          *Second*, because SDF suffered no economic injury from the alleged market manipulation

25  of the XRP price or alleged extortion of Coinex, it has no remedy for any such actions.  A private

26  UCL action is equitable in nature.  Therefore the only remedies available are injunctive relief and

27  restitution; the plaintiff may not recover compensatory or punitive damages. *Clark v. Superior*

28  *Court*, 50 Cal. 4th 605, 610 (2010); *Safeway, Inc. v Superior Court*, 238 Cal. App. 4th 1138,

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE          - 6 -
Case No. 3:15-cv-1503 WHO                                                        31652\5075050.4

1139-40 (2015).  With respect to Ripple's purchase of Stephenson's XRPs or its alleged threats

to Coinex, there is nothing to be enjoined.  And restitution orders under the UCL are limited to

orders compelling the defendant "to return money [or property] obtained through an unfair

business practice to those persons in interest from whom the property was taken."  *Korea Supply*

*Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144-45 (2003) (quoting  *Kraus v. Trinity*

*Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 126-27 (2000)).  "The object of restitution is to restore the

status quo by returning to the plaintiff funds in which he or she has an ownership interest."  *Id.*

Thus, such orders are only available where money or property has both been lost by a plaintiff

and acquired by a defendant.  *Id.*  Here, Bitstamp did not obtain any money or property from

Ripple's purchase of Stephenson's XRPs or the alleged extortion of Coinex that could be

restored to SDF.

Thus, contrary to SDF's arguments (made for the first time in its opposition brief) that the

gravamen or principal thrust of its UCL claim against Bitstamp is Bitstamp's actions in

fraudulently propping up the market price of XRPs and unlawfully coercing Coinex to transfer

money to the Bitstamp exchange, in reality, the gravamen of SDF's UCL claim against Bitstamp

is the freezing and interpleading of the Disputed Funds.

### B.    SDF's Counterclaim Is Based On The Freezing And Interpleading Of The Disputed Funds And Must Be Stricken As A Frivolous SLAPP.

As established in Bitstamp's opening brief, SDF's counterclaim against Bitstamp is based

entirely on two acts by Bitstamp:  (1) Bitstamp and Frost colluded with Ripple to freeze SDF's

account on the Bitstamp exchange (Dkt. 122 ¶¶ 4, 26, 27, 31); and (2) Bitstamp and Frost

colluded with Ripple to file the complaint in interpleader (*id.* ¶ 27).  Because these actions

constitute protected activity, and because SDF cannot establish a probability of prevailing on the

merits of its claim, Bitstamp's motion should be granted.

### 1.    Bitstamp's Actions In Freezing And Interpleading The Disputed Funds Constitute Protected Activity Within The Meaning Of The Anti-SLAPP Statute.

SDF's *only* argument that its counterclaim is not based on "protected activity" within the

meaning of the anti-SLAPP statute is that the gravamen or principal thrust of the counterclaim is

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE        - 7 -
Case No. 3:15-cv-1503 WHO

31652\5075050.4

1   Bitstamp's market manipulation to prop up the XRP price and its unlawful threats to coerce

2   Coinex into placing SDF's funds into a Bitstamp account.  (Opp. at 7-8, 10.)  As discussed

3   above, this argument completely mischaracterizes SDF's counterclaim.  In an any event, SDF

4   does not dispute that the counterclaim is based, at least in part, on Bitstamp's actions in freezing

5   and interpleading the Disputed Funds, or that these actions constitute protected activity within

6   the meaning of paragraphs (e)(1) and (e)(2) of Section 425.16.  (Opp. at 9.)

7       Thus, even if SDF's counterclaim were *also* based on the alleged propping up of the XRP

8   price and extortion of Coinex (which it is not), a mixed cause of action is subject to an anti-

9   SLAPP motion if "at least one of the underlying acts is protected conduct, unless the allegations

10   of protected conduct are merely incidental to the unprotected activity."  *Salma v. Capon*, 161

11   Cal. App. 4th 1275, 1287 (2008); *see also M.F. Farming, Co. v. Couch Distributing Company*,

12   207 Cal. App. 4th 180, 197 (2012) (same, collecting cases); *Tuck Beckstoffer*, 682 F. Supp. 2d at

13   1015 (same); *Blackburn v. ABC Legal Servs., Inc.*, 2011 WL 8609453, at *2 (N.D. Cal. June 16,

14   2011) ("Where a cause of action alleges both protected and unprotected activity, the cause of

15   action will be subject to section 425.15 unless the protected activity is 'merely incidental' to the

16   unprotected conduct.") (internal quotes and citation omitted).  The allegations concerning

17   Bitstamp's freezing and interpleading the Disputed Funds can hardly be said to be "incidental" to

18   SDF's counterclaim.  To the contrary, it is the act of freezing and interpleading the funds, and

19   thus depriving SDF of immediate access to them, that is the core "allegedly wrongful and injury-

20   producing conduct . . . that provides the foundation for the claim."  *Finton*, 238 Cal. App. 4th at

21   209 (citation omitted); *see* Dkt. 122 ¶¶ 4, 26, 27, 31.

22       SDF's counterclaim is based on Bitstamp's protected pre-litigation and litigation activity,

23   and the anti-SLAPP statute applies.  *See Finton*, 238 Cal. App. 4th at 210, 212-13 (finding it

24   "unquestionable and undisputed" that attorneys' receipt and retention of stolen hard drive in

25   connection with litigation constitutes protected activity within the meaning of Section

26   425.16(e)(1) and (2)); *Tuck Beckstoffer*, 682 F. Supp. 2d at 1015 ("the majority of the allegedly

27   disparaging statements are alleged to have been made in the context of investigation of or filing

28   of the present action and the Georgia proceeding" and are thus protected).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE       - 8 -
Case No. 3:15-cv-1503 WHO

31652\5075050.4

1

**2.     SDF Cannot Prevail On Its Counterclaim As A Matter Of Law.**

Again, SDF's arguments in support of the second prong of the anti-SLAPP analysis mischaracterize the counterclaim as being based on actions that have nothing to do with Bitstamp.  (Opp. at 12, 14, 18, 20.)  But focusing on the actual claim asserted, and "*not a rephrasing of the claims that comes in response to an anti-SLAPP motion to strike*" (*Tuck Beckstoffer*, 682 F. Supp. 2d at 1016 (emphasis added)), it is clear that SDF cannot meet its burden of establishing a probability of prevailing on the merits, and Bitstamp's motion should be granted.

**a.     SDF's Counterclaim Is Barred By The Doctrine Of Collateral Estoppel.**

As established in Bitstamp's opening brief, SDF's counterclaim is not independent of the interpleader action.  As such, the Court's discharge order bars, or estops, SDF from relitigating the issues that have already conclusively been decided in Bitstamp's favor, namely that the interpleader was improper, that Bitstamp did not face legitimate competing claims to the Disputed Funds, that Bitstamp is not a good faith or disinterested stakeholder, and that Bitstamp colluded with Ripple in filing the interpleader action.

*Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258 (3d Cir. 2009), is directly on point. There, as here, the plaintiff-in-interpleader had received competing claims to funds.  Rather than resolve the claims itself, it filed an interpleader action seeking the court's assistance.  One of the claimants brought counterclaims against Prudential based on Prudential's failure to pay out the insurance proceeds to him.  The court held that the claimant's counterclaims were not "truly independent" of the question of who was entitled to the insurance proceeds, and thus were barred.  *Id.* at 264.  The court noted that to "allow Prudential to be exposed to liability under these circumstances would run counter to the very idea behind the interpleader remedy—namely, that a 'stakeholder [should] not [be] obliged at his peril to determine which claimant has the better claim.'"  *Id.* at 265 (quoting *Bierman v. Marcus,* 246 F.2d 200, 202 (3d Cir. 1957)).

Likewise, SDF's counterclaim against Bitstamp is not based on any alleged conduct by Bitstamp that is independent of Bitstamp's having frozen the funds and filed the interpleader

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE          - 9 -
Case No. 3:15-cv-1503 WHO

31652\5075050.4

1    action, rather than immediately distributing the funds to SDF.  Because SDF's claims are directly

2    related to Bitstamp's decision to seek interpleader relief rather than choosing between the

3    competing claimants, the Court's Discharge Order bars SDF's counterclaim.  *Id.*; *see also*

4    *Daniels v. Equitable Life Assur. Soc. of U.S.*, 35 F.3d 210, 214 (5th Cir. 1994) (court's finding

5    that interpleader was proper and that plaintiff was not independently liable for causing the

6    dispute as to the funds collaterally estops claimant from asserting claims against plaintiff);

7    *Metro. Life Ins. Co. v. Barretto*, 178 F. Supp. 2d 745, 748 (S.D. Tex. 2001) ("Were the

8    defendants in an interpleader action permitted to carry forward with counterclaims against the

9    stakeholder based upon the same interpleaded funds, the very purpose of the interpleader action

10   would be utterly defeated."); *Lutheran Bhd. v. Comyne*, 216 F. Supp. 2d 859, 862-63 (E.D. Wis.

11   2002) (rejecting counterclaims based on plaintiff's filing interpleader rather than resolving the

12   dispute and paying claimant the disputed funds); *see also* cases cited in Motion to Strike, Dkt.

13   130, at 16-17, n.5.

14           b.      **SDF's Counterclaim Is Based On Conduct Absolutely**
                     **Privileged By California's Litigation Privilege.**
15

16           SDF's arguments that the litigation privilege does not protect Bitstamp's actions in

17   propping up the market price of XRPs or in coercing Coinex into transferring SDF's dollars into

18   a Bitstamp account (Opp. at 14-15) are wholly irrelevant, since SDF has not alleged (and cannot

19   allege) that Bitstamp took any actions in that regard.  To the extent SDF argues that Bitstamp's

20   action in freezing the Disputed Funds the day before it filed the interpleader action is not

21   privileged, SDF is wrong.

22           The freezing of the Disputed Funds was a necessary and preliminary step in the

23   interpleader action.  Filing an interpleader action without ensuring that the Disputed Funds were

24   not withdrawn by one of the competing claimants would have rendered the entire interpleader

25   action useless.  Indeed, the parties recognized the importance of ensuring that no one claimant

26   could access the Disputed Funds by stipulating to deposit the funds with the Court.  Dkt. 55.

27           "The breadth of the litigation privilege cannot be understated."  *Finton*, 238 Cal. App. 4th

28   at 212 (quoting *Olsen v. Harbison*, 191 Cal. App. 4th 325, 333 (2010)).  It applies to a broad

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE        - 10 -                          31652\5075050.4
Case No. 3:15-cv-1503 WHO

1  range of conduct, "including activity preparatory to litigation." *Finton*, 238 Cal. App. 4th at 210,

2  212-13 (litigation privilege applies to defendant attorneys' receipt and retention of an allegedly

3  stolen hard drive provided by client for use in litigation); *see also Gootee v. Lightner*, 224 Cal.

4  App. 3d 587, 593-94 (1990).  In *Gootee*, plaintiff sued defendants for malpractice in connection

5  with psychological testing and evaluation defendants conducted in connection with a child

6  custody dispute.  *Id.* at 589.  Defendants were not retained to provide therapy, but instead to

7  provide a report and testimony to the court.  After resolution of the custody dispute, plaintiff

8  sued defendants, alleging that they had been negligent in administering and interpreting the tests

9  and had spoliated evidence by destroying some raw data.  *Id.* at 590.  In upholding the absolute

10  privilege, the court rejected plaintiff's argument that the privilege was inapplicable to the

11  "independent tort" of spoliation of evidence.  *Id.* at 593-94.  Relying on the California Supreme

12  Court's decision in *Silberg v. Anderson*, 50 Cal. 3d 205, 213-14 (1990), and two courts of appeal

13  decisions, the court concluded that "preparatory activities" committed in conjunction with or in

14  anticipation of privileged testimony, are protected.  *Gootee*, 224 Cal. App. 3d at 592-94.

15  Notably, the court concluded that plaintiff's only alleged injury was from the testimony of the

16  doctor, not from the preparatory activities, and plaintiff had "ample opportunity" to attack the

17  report and the testimony in the prior custody hearing.  *Id.* at 595.

18       Similarly, Bitstamp's action in freezing the Disputed Funds was part and parcel with its

19  privileged filing of the interpleader action.  Moreover, SDF had ample opportunity to (and did in

20  fact) attack Bitstamp's "preparatory activities" in the discharge motion, and should not be

21  permitted to "seek compensation through the 'unending roundelay of litigation' condemned in

22  *Silberg*."  *Id.*; *see also Rusheen v. Cohen,* 37 Cal. 4th 1048, 1063 (2006) (execution of a writ of

23  levy necessarily related to communicative act of submitting declaration in support of writ, and

24  thus protected).  Accordingly, Bitstamp's actions in freezing the Disputed Funds and filing the

25  interpleader action are absolutely privileged under California's litigation privilege.

26  **C.     It Is Improper To Grant Leave To Amend Claims That Are Stricken Pursuant To California's Anti-SLAPP Statute.**

27

28       As further evidence that SDF's counterclaim is a meritless SLAPP brought only to harass

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE          - 11 -
Case No. 3:15-cv-1503 WHO

31652\5075050.4

Bitstamp and punish it for filing an interpleader action instead of releasing the Disputed Funds to SDF, SDF seeks to prolong the case even further by requesting "a second opportunity to disguise the vexatious nature of the suit through more artful pleading.  This would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for leave to amend." *Simmons v. Allstate Ins.*, 92 Cal. App. 4th 1068, 1073 (2001).  As courts in this District have repeatedly held, "allowing amendment after an anti-SLAPP motion [has] been granted would eviscerate the purpose of the anti-SLAPP statute and would be inconsistent with the Ninth Circuit's holding in *United States v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963 (9th Cir. 1999)."  *Blackburn v. ABC Legal Servs.*, No. C 11-01298 JSW, 2011 U.S. Dist. LEXIS 109817, at *8 (N.D. Cal. Sept. 27, 2011) (rejecting request for leave to amend complaint dismissed under anti-SLAPP statute where plaintiff failed to meet burden to submit evidence demonstrating probability of success); *see also Tuck Beckstoffer*, 682 F. Supp. 2d at 1016 ("the cases hold that a litigant cannot avoid the anti-SLAPP statute by amending its pleadings or disguising earlier assertions") (citation omitted); *Smith v. Santa Rosa Democrat*, 2011 WL 5006463, at *7 (N.D. Cal. Oct. 20, 2011) ("the purpose of the anti-SLAPP statute is to provide for a speedy resolution of claims which impinge on speech protected by the First Amendment," and "leave to amend is not necessary or appropriate"); *Harper v. Lugbauer*, 2012 WL 1029996, at *6 (N.D. Cal. Mar. 15, 2012) ("Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from [the anti-SLAPP statute's] quick dismissal remedy.") (quoting *Smith*, 2011 WL 5006463, at *7).

In *Blackburn*, Judge Jeffrey White thoughtfully analyzed the Ninth Circuit's decisions in *Lockheed*, 190 F.3d 963, and *Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081 (9th Cir. 2004), and followed the decision and analysis of the Eastern District of California in *Flores v. Emerich & Fike*, 2006 WL 2536615 (E.D. Cal. 2006), to conclude that "plaintiffs may not amend their complaint *after* a motion to strike has been granted pursuant to section 425.16."  *Blackburn*, 2011 U.S. Dist. LEXIS 109817, at *10 (citing *Thomas v. Los Angeles Times Communications, LLC*, 189 F. Supp. 2d 1005, 1017 n. 11 (C.D. Cal. 2002) ("Plaintiff may

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE            - 12 -                                    31652\5075050.4
Case No. 3:15-cv-1503 WHO

1   not amend his Complaint after it is stricken pursuant to California Code of Civil Procedure

2   § 425.16."); *Fintland v. Luxury Marine Grp, LLC*, 2010 WL 758190, at *3 (C.D. Cal. Mar. 1,

3   2010) ("Because the Court already struck this claim and the allegations supporting it pursuant to

4   the anti-SLAPP statute, [the plaintiff's] motion for leave to amend is denied with prejudice.");

5   *Mory v. City of Chula Vista*, 2008 WL 360449, at *5 n.5 (S.D. Cal. Feb 11, 2008) ("Courts find

6   it inappropriate to grant plaintiffs leave to amend state law claims that are stricken under that

7   statute.")).

8       As did Judge White in *Blackburn*, the court in *Flores* distinguished *Verizon* on the

9   ground that in *Verizon*, the issue was whether the trial court properly allowed plaintiff to amend

10  its complaint prior to considering the defendant's anti-SLAPP motion. *Flores*, 2006 WL

11  2536615, at *9-10 (citing *Verizon*, 337 F.3d at 1091). In contrast, in *Flores*, the court considered

12  whether it was appropriate to grant leave to amend *after* the cause of action has been stricken,

13  and held that it was not. *Flores*, 2006 WL 2536615, at *7-10. There, plaintiffs filed a complaint

14  against, among others, attorneys who had represented parties against the plaintiffs in earlier

15  litigation. *Id.* at *2. Those defendants moved to strike the state law claims and dismiss the

16  federal claims. The trial court granted the motions, but provided plaintiffs leave to amend their

17  malicious prosecution and federal civil RICO claims. *Id.* at *1. Plaintiffs nevertheless filed an

18  amended complaint re-alleging all of the original claims. Defendants again moved to strike the

19  malicious prosecution claim and, as a precaution, moved to strike all the re-alleged state law

20  claims. *Id.* at *2. Defendants argued that it was not appropriate to permit the amendment of

21  claims that were stricken pursuant to the anti-SLAPP statute. *Id.* at *7. The court agreed:

22          To allow amendment after an anti-SLAPP motion to strike has been granted eviscerates
            the purpose of the anti-SLAPP statute. Such an outcome would be inconsistent with
23          *Lockheed* and the strong policy underlying the anti-SLAPP law. The federal rules
            liberally permitting amendment are rules of general, not specific, application. The anti-
24          SLAPP law applies to state law claims which are governed by the substantive law of
            California.
25

26  *Id.* at *10. The court thus granted defendants' motion to strike all of the state law claims without

27  leave to amend. *Id.*

28       Likewise, here, SDF's counterclaim is a meritless SLAPP and it should be stricken.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE          - 13 -                                    31652\5075050.4
Case No. 3:15-cv-1503 WHO

1   Once the Court strikes the offending counterclaim, it would be improper to allow SDF to amend

2   it. *Blackburn*, 2011 U.S. Dist. LEXIS 109817, at *8; *Harper*, 2012 WL 1029996, at *6; *Smith*,

3   2011 WL 5006463, at *7; *see also Flores*, 2006 WL 2536615, at *10.  Allowing SDF to amend

4   "would accomplish indirectly what could not be accomplished directly, i.e., depleting the

5   defendant's energy and draining his or her resources.  This would totally frustrate the

6   Legislature's objective of providing a quick and inexpensive method of unmasking and

7   dismissing such suits." *Flores*, 2006 WL 2536615, at *8 (quoting *Simmons*, 92 Cal. App. 4th at

8   1074); *see also Mobile Med. Servs. v. Rajaram*, 14 C.D.O.S. 11223 (Cal. Ct. App. Oct. 14, 2015)

9   (leave to amend cannot be granted to allow plaintiff "to plead around the protected speech

10   alleged in the original complaint.").

11       Moreover, to the extent that SDF is suggesting that it should be permitted to amend its

12   counterclaim to allege alternative facts and theories based on Bitstamp's alleged extortion of

13   Coinex or its propping up of Ripple's XRP price, it cannot do so without violating Federal Rule

14   of Civil Procedure 11.  To satisfy the requirements of Rule 11, attorneys filing a complaint must

15   first "conduct a reasonable factual investigation" to determine whether there is a sufficient

16   factual basis for the allegations, and also "perform adequate legal research" to confirm that the

17   complaint is well-grounded in law. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir.

18   2002) (quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir.

19   1986)).  "One of the fundamental purposes of Rule 11 is to 'reduce frivolous claims, defenses or

20   motions and to deter costly meritless maneuvers, . . . [thereby] avoid[ing] delay and unnecessary

21   expense in litigation.'" *Id.*; *see also Business Guides, Inc. v. Chromatic Comm. Enters., Inc.*,

22   498 U.S. 533, 542 (1991) (under Rule 11 attorney who signs and files document with a court

23   must certify that he or she "has conducted a reasonable inquiry into the facts and the law and is

24   satisfied that the document is well grounded in both, and is acting without any improper

25   motive").

26       SDF and its counsel have sufficient information about both the purchase of Stephenson's

27   XRPs and the alleged threats to Coinex to know that Bitstamp was uninvolved, and that any such

28   allegations against Bitstamp would have no factual basis.  SDF alleges the date of the purchase,

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE          - 14 -
Case No. 3:15-cv-1503 WHO

31652\5075050.4

1   the amount of XRPs purchased, the offered price, the name of the agent who made the purchase,

2   and the amount allegedly paid for the XRPs.  (Counterclaim ¶ 19-20.)  Similarly, SDF alleges the

3   name of the Ripple officer who purportedly contacted Coinex, the dates of the initial contact and

4   initial letter, the substance of the alleged threats, and the amount of US dollars transferred.  (*Id.*

5   ¶ 25.)  In discovering all this information, if SDF had uncovered *any facts* to tie Bitstamp to

6   these actions, it certainly would have alleged them.[2]  It did not, and it should not be permitted to

7   continue its campaign of harassment by amending its complaint to assert even more frivolous

8   and unfounded allegations.

9   **III.   CONCLUSION**

10          SDF's counterclaim against Bitstamp is a classic SLAPP.  SLAPP lawsuits "masquerade

11  as ordinary lawsuits but are brought to deter common citizens from exercising their political or

12  legal rights or to punish them for doing so."  *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir.

13  2003) (citations omitted).  SDF's entire grievance is that Bitstamp brought an interpleader action

14  to resolving conflicting claims to the Disputed Funds rather than simply releasing the funds to

15  SDF when it demanded that Bitstamp do so.  But the Court has already conclusively resolved *all*

16  *issues* relating to Bitstamp's potential liability with respect to the Disputed Funds.  SDF's

17  counterclaim asserts no independent claims against Bitstamp and, instead, merely attempts to

18  collaterally attack the Court's Discharge Order.  SDF's counterclaim is frivolous and brought for

19  an improper purpose, and it should be stricken without leave to amend.

20          Additionally, Bitstamp should be awarded its reasonable attorneys' fees and costs in

21  having to make this motion.  Bitstamp will submit a supplemental declaration itemizing the fees

22  incurred in preparing this Reply and preparing for and attending oral argument.

23

24  [2] Nor should the Court allow SDF to conduct discovery before striking its frivolous
    counterclaim.  SDF agrees that it does not need any discovery to respond to the purely legal
25  arguments raised by Bitstamp's anti-SLAPP motion, and discovery is not allowed under these
    circumstances.  *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir.
26  1987) (defendants must be free "to challenge the legal sufficiency of complaints without
    subjecting themselves to discovery….  It is sounder practice to determine whether there is any
27  reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo
    the expense of discovery.") (citations omitted).

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE          - 15 -                                        31652\5075050.4
Case No. 3:15-cv-1503 WHO

1

2    Dated: October 14, 2015                By:    /s/  Kelly A. Woodruff

3                                          Kelly A. Woodruff (SBN 160235)
                                           kwoodruff@fbm.com
4                                          FARELLA BRAUN + MARTEL LLP
                                           235 Montgomery Street, 17th Floor
5                                          San Francisco, CA  94104
                                           Telephone:  (415) 954-4400
6                                          Facsimile:  (415) 954-4480

7                                          Attorneys for Plaintiff Bitstamp Ltd.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY i/s/o SPECIAL MOTION TO STRIKE          - 16 -                                        31652\5075050.4
Case No. 3:15-cv-1503 WHO