1  Terry Gross, terry@gba-law.com (SBN 103878)
   Adam C. Belsky, adam@gba-law.com (SBN 147800)
2  GROSS BELSKY ALONSO LLP
   One Sansome Street, Suite 3670
3  San Francisco, CA 94104
   Tel: (415) 544-0200
4  Fax: (415) 544-0201

5
   Attorneys for Defendant, Counterclaimant, and Crossclaimant
6  STELLAR DEVELOPMENT FOUNDATION

7
                    **UNITED STATES DISTRICT COURT**
8                 **NORTHERN DISTRICT OF CALIFORNIA**
                       **SAN FRANCISCO DIVISION**
9
   BITSTAMP, LTD., a foreign company,        )   Case No.: 3:15-cv-1503 WHO
10                                           )
                        Plaintiff,           )   **STELLAR DEVELOPMENT**
11                                           )   **FOUNDATION'S OPPOSITION TO**
          vs.                                )   **CROSS-DEFENDANT GEORGE**
12 RIPPLE LABS INC., a Delaware Corporation, )   **FROST'S SPECIAL MOTION TO**
   JACOB STEPHENSON, an individual,          )   **STRIKE AND MOTION TO DISMISS**
13 NANCY HARRIS, an individual, and DOES 1   )
   through 10, inclusive,                    )
14                                           )
                        Defendants.          )   Date:       December 2, 2015
15 STELLAR DEVELOPMENT                       )   Time:       2:00 p.m.
   FOUNDATION, a Delaware Nonprofit          )   Judge:      Hon. William H. Orrick
16 Corporation,                             )   Courtroom:  2, 17th Floor
                           Counterclaimant and )
17                         Crossclaimant,    )
                                             )
18        vs.                                )
                                             )
19 RIPPLE LABS, INC. a Delaware Corporation, )
   GEORGE FROST, an individual, BITSTAMP,   )
20 LTD., a foreign company, and DOES 1-20,  )
   inclusive,                                )
21                                           )
                           Cross-Defendants and )
22                         Counter-Defendant. )
                                             )
23

24

25

26

27

28

## TABLE OF CONTENTS

INTRODUCTION...............................................................................................1

STATEMENT OF FACTS....................................................................................2

      A.    McCaleb Co-Founds SDF, and McCaleb, SDF
           and Ripple, With Frost Acting as Ripple's Advisor,
           Enter Into a Settlement Agreement....................................................2

      B.    Ripple, Frost, and Bitstamp (through Frost) Engage
           in a Wrongful Scheme to Harm SDF..................................................3

ARGUMENT.....................................................................................................5

I.    FROST'S MOTION TO DISMISS UNDER RULE 12(b)(6) MUST BE DENIED
     BECAUSE SDF HAS ALLEGED SUFFICIENT FACTS TO STATE VALID
     CLAIMS AGAINST FROST..........................................................................5

      A.    SDF Alleges Sufficient Facts to Support the Reasonable
           Inference That Frost Is Liable Under SDF's Second and
           Third Claims for Intentional Interference With Economic
           Relations Between SDF and Coinex and Stephenson..........................6

      B.    SDF's First Claim for Unfair Competition States a
           Viable Claim Against Frost.............................................................10

           1.    The litigation privilege does not bar the
                unfair competition claim............................................10
            2.    Collateral estoppel does not bar the unfair
                competition claim......................................................11
            3.    SDF alleges sufficient facts to support Frost's
                liability for unfair competition...................................11
            4.    SDF Alleges a Claim for Injunctive Relief
                 Under the UCL..........................................................12

II.   FROST'S ANTI-SLAPP MOTION TO STRIKE SDF'S FIRST CLAIM
     FOR UNFAIR COMPETITION FAILS FOR THE SAME REASONS AS
     THE PENDING BITSTAMP MOTION TO STRIKE.........................................12

      A.    SDF Has Stated a Legally Sufficient Claim for Unfair
           Competition Against Frost..............................................................15

III.  IF THE COURT GRANTS FROST'S MOTION, IT MUST ALLOW SDF
     LEAVE TO AMEND...................................................................................16

CONCLUSION................................................................................................16

# TABLE OF AUTHORITIES

FEDERAL

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)……………………………………………………….................5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)……….………………………………………………….....6

*Emrich v. Touche Ross & Co.,*
    846 F.2d 1190 (9th Cir. 1988) ………………………………………………....3

*Gallagher v. Bayer AG,*
    2015 U.S. Dist. LEXIS 109807 (N.D. Cal. Aug. 18, 2015) …………………………6

*Greene v. Robert Half Int'l, Inc.,*
    2006 U.S. Dist. LEXIS 97050 (N.D. Cal. Mar. 28, 2006) …………………………3

*In re Animation Workers Antitrust Litigation,*
    2015 U.S. Dist. LEXIS 111262 (N.D. Cal. Aug. 20, 2015)…………………………6

*Lopez v. Smith,*
    203 F.3d 1122 (9th Cir. 2000)……………………………………………….....16

*Lozano v. AT&T Wireless Serv.,*
    504 F.3d 718 (9th Cir. 2007)……………………………………………………12

*Moss v. U.S. Secret Service,*
    572 F.3d 962 (9th Cir. 2009)………………………………………………….6

*Restaino v. Bah (In re Bah),*
    321 B.R. 41 (B.A.P. 9th Cir. 2005)……………………………………………16

*Rogers v. Home Shopping Network, Inc.,*
    57 F. Supp. 2d 973 (C.D. Cal. 1999)……………………………………….....16, 17

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*
    806 F.2d 1393 (9th Cir. 1986)………………………………………………….....16

*Smith v. Allstate Ins. Co.,*
    2010 U.S. Dist. LEXIS 68464 (N.D. Cal. June 17, 2010)…………………………10

//

//

STATE

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
    7 Cal. 4th 503 (1994)............................................................................9

*Greenwood v. Mooradian,*
    137 Cal. App. 2d 532, (1955)..............................................................10

*Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999).........................................................................12

*City of Riverside v. Stansbury,*
    155 Cal. App. 4th 1582 (2007).............................................................13

*Equilon Enter. v. Consumer Cause, Inc.,*
    29 Cal. 4th 53 (2002)...........................................................................13

*Flatley v. Mauro,*
    39 Cal. 4th 299 (2006)....................................................................12, 16

*Goodman v. Kennedy,*
    18 Cal.3d 335 (1976) ...........................................................................10

*In re Episcopal Church Cases,*
    45 Cal. 4th 467 (2009).........................................................................13

*Kimmel v. Goland,*
    51 Cal. 3d 202 (1990)...........................................................................11

*LiMandri v. Judkins,*
    52 Cal. App. 4th 326 (1997).................................................................11

*Navellier v. Sletten,*
    29 Cal. 4th 82 (2002)...........................................................................13

*Plummer v. T.H.E. Ins. Co.,*
    2014 Cal. App. Unpub. LEXIS 1686 (Cal. Ct. App. Mar. 10, 2014)............11

*Renewable Resources Coal., Inc. v. Pebble Mines Corp.,*
    218 Cal. App. 4th 384 (2013)...............................................................15

*Roberts v. Ball, Hunt, Hart, Brown & Baerwitz,*
    57 Cal. App. 3d 104 (1967) .................................................................10

*Rusheen v. Cohen,*
    37 Cal. 4th 1048 (2006)........................................................................11

<u>STATUTES</u>

Cal. Bus. & Prof. Code § 17203...................................................................13

California Code of Civil Procedure § 425.16.........................................5, 13

**STELLAR'S OPPOSITION TO FROST'S SPECIAL MOTION TO STRIKE; CASE No.: 3:15-cv-1503 WHO**

# INTRODUCTION

Stellar Development Foundation ("SDF") brings two crossclaims for intentional interference with economic relations and one crossclaim for unfair competition against George Frost ("Frost") and Ripple Labs, Inc. ("Ripple") based on Frost's and Ripple's illegal scheme to harm SDF by preventing SDF from receiving $1 million in funds at a time when Frost and Ripple believed that SDF was financially vulnerable.[1]  Ripple has answered SDF's crossclaim, conceding that SDF states valid claims against it.  Despite Ripple's concession, Frost moves to dismiss these claims, contending that SDF fails to allege that he engaged in any of the alleged misconduct.

The basic premise of Frost's motion – that "[t]his is a case of a lawyer being sued for acting as a lawyer," and that all SDF alleges against Frost is that he acted as Bitstamp's general counsel in responding to "competing demands to certain funds" on Bitstamp's network (Frost Mem. at 2) – fundamentally misconstrues SDF's claims against him.  SDF's claims against Frost are based on his role as an active and crucial participant in Ripple's illegal scheme to harm SDF.  Frost is an advisor and former legal counsel to Ripple, with a substantial personal financial stake in Ripple.  Frost and Ripple perceived SDF as a threat to Ripple because SDF was cofounded by Jed McCaleb ("McCaleb"), the original founder and Chief Technology Officer of Ripple, after McCaleb left Ripple, and Ripple views SDF as its competitor.  As conceded in pleadings they filed in this action, both Frost and Ripple monitored SDF's and McCaleb's actions.  In March 2015, they believed that SDF was financially vulnerable because of what they perceived as the failure of an online auction by SDF of STRs (the Stellar network's native currency) to raise sufficient funds to cover SDF's ongoing administrative costs. They also believed that a sale of $1 million of XRPs (the Ripple network's native currency) owned by McCaleb's cousin, Jacob Stephenson ("Stephenson"), was intended to cover this perceived shortfall, and thus, that by preventing the proceeds of this sale from being transferred to SDF, they could harm SDF. Frost and Ripple then developed and executed a plan to purchase Stephenson's XRPs in order to prop up the price of their XRP holdings, and then to coerce Coinex, an online currency exchange, to place the proceeds of Stephenson's sale in a Bitstamp account on the Ripple network so that Frost, acting through

---

[1] SDF also brings a counterclaim against Bitstamp, Ltd. ("Bitstamp").  As addressed in SDF's opposition to Bitstamp's pending anti-SLAPP motion, Bitstamp, as Frost's employer, is vicariously liable for the wrongful conduct of its officer and agent Frost.  *See* SDF's Opposition to Bitstamp's Special Motion to Strike Counterclaim (Dkt. 151).  Bitstamp's motion is set for hearing at the same time as Frost's motion.

Bitstamp, could prevent SDF from accessing its funds.  SDF alleges sufficient facts showing Frost's participation in this scheme to defeat his motion to dismiss as to all three claims against him.

Frost's alternative motion to strike SDF's first claim for unfair competition under California's anti-SLAPP statute similarly fails.  The claim does not arise from protected petitioning activity, nor is it barred by the litigation privilege, because the gravamen of the claim is the illegal scheme to harm SDF by interfering with SDF's contractual relations with Coinex and by coercing SDF's funds into a Bitstamp account, and not the subsequent filing of the interpleader action.  Frost makes no attempt to meet his burden of showing that collateral estoppel bars SDF's claim.  Finally, Frost's argument that SDF fails to state a valid claim for unfair competition fails for the same reasons as his motion to dismiss this claim.

## STATEMENT OF FACTS

### A.  McCaleb Co-Founds SDF, and McCaleb, SDF and Ripple, With Frost Acting as Ripple's Advisor, Enter Into a Settlement Agreement

McCaleb was a co-founder of Ripple, and served as its Chief Technology Officer and a member of its Board of Directors.  Ripple Cross-Complaint (Dkt. 9) ¶¶ 16, 22, 26.[2]  When Ripple's virtual currency, the XRP, was created in September 2012, McCaleb owned 9 billion of the 100 billion XRPs created.  *Id.* ¶ 24.  After leaving Ripple, McCaleb co-founded SDF as a nonprofit organization, with a mission to provide access to financial services to underserved populations.  SDF Crossclaim (Dkt. 122) ¶ 5.  SDF does not compete with Ripple because SDF is a nonprofit that focuses on basic human rights while Ripple is a startup with an enterprise sales team focused on banks.  *Id.* ¶ 13.  Nevertheless, Ripple believes that SDF is a competitor and views SDF as a threat to its business.  *Id.* ¶¶ 1, 13; Ripple Cross-Complaint ¶¶ 9, 16.

During July and August 2014, Ripple engaged in negotiations with McCaleb and SDF to resolve concerns by Ripple related to sales by McCaleb of his XRPs, resulting in a settlement agreement.  SDF Crossclaim ¶ 16.  The settlement agreement expressly recites that it was intended "to allow Ripple and Stellar Development Foundation to freely operate their businesses without anti-competitive interference

---

[2]  In adjudicating a motion to dismiss under FRCP 12(b)(6), a court "may properly look beyond the complaint to items in the record of the case."  *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988); *see also* FRE 201(b); *Greene v. Robert Half Int'l, Inc.*, 2006 U.S. Dist. LEXIS 97050, at *4 (N.D. Cal. Mar. 28, 2006).

from each other." Ripple Cross-Complaint Ex. 1, at 1 (Recital G).  Among other terms, the agreement placed monthly limits on the XRPs that McCaleb could sell from the remaining 7.5 billion XRPs that McCaleb owned directly or that were held in the names of his two children.  SDF Crossclaim ¶ 16. These monthly limits on McCaleb's 7.5 billion XRPs did not apply to the additional 1.5 billion XRPs that McCaleb had previously donated to various philanthropic causes or given away to friends and other family members who were not his children, including Stephenson.  *Id.* ¶¶ 16, 26.

Frost advised Ripple during these settlement negotiations and had personal knowledge of the agreement's terms, including that Stephenson's XRP holdings were not subject to the agreement's restrictions on sales of XRP by McCaleb.  *Id.* ¶¶ 2, 16, 26.  Frost owns a substantial amount of XRPs (*id.* ¶ 15), and thus has a personal financial interest in Ripple's success.

### B.  Ripple, Frost, and Bitstamp (through Frost) Engage in a Wrongful Scheme to Harm SDF

Ripple and Frost monitored SDF's and McCaleb's activities.  *See* SDF Crossclaim ¶¶ 18, 23; Ripple Cross-Complaint ¶¶ 5-9, 37-38, 40-43, 49-50; Bitstamp Complaint (Dkt. 1) (filed by the Law Offices of George Frost and signed by Frost) ¶¶ 15-19, 23; Bitstamp's Special Motion to Strike Counterclaim (Dkt. 130) at 3 ("even prior to receiving Ripple's March 26 letter, Bitstamp had been monitoring Bitstamp accounts believed to be related or controlled by McCaleb, including Mr. Stephenson's").[3]  In March 2015, Ripple and Frost, who at that time was employed as Bitstamp's Chief Legal Officer (SDF Crosslaim ¶ 8), saw an opportunity to damage SDF, taking advantage of Frost's position as a senior executive at Bitstamp.  SDF Crossclaim ¶¶ 2, 4.

Frost and Ripple believed that SDF was in dire financial need, and that an auction of STRs "initiated" by SDF on March 16, 2015, was intended "to cover [SDF's] operating expenses . . . in the range of $700,000," but that "as of March 19, 2015," SDF "had only raised an estimated $25,000." Bitstamp Complaint ¶ 16; *see also* Ripple Cross-Complaint ¶ 49; SDF Answer to Bitstamp Complaint ¶ 16.  Learning that Stephenson was offering for sale approximately 96 million XRPs, and that Stephenson was using proceeds from this sale to purchase STRs, "Ripple and Frost conspired to prop up

---

[3] The only possible basis Bitstamp could have had, prior to receiving Ripple's March 26, 2015 letter, for "monitoring Bitstamp accounts believed to be related or controlled by McCaleb, including Mr. Stephenson's, was Frost's knowledge of the provisions of the account numbers and names identified in Exhibit A to the confidential settlement agreement between Ripple, McCaleb and SDF.  *See* Ripple Cross-Complaint Ex. 1, Ex. A.

the price of Ripple's XRPs and the value of Ripple's shares, and to prevent SDF from receiving funds from the purchase of STRs by Stephenson." SDF Crossclaim ¶ 18; *see also id.* ¶¶ 2-4, 15. Frost and Ripple believed that by preventing SDF from receiving these funds they could deal a crippling blow to SDF. *See* Bitstamp Complaint ¶ 16; Ripple Cross-Complaint ¶ 46 (Stephenson's sale was made "to save [McCaleb's] failing company by propping up its currency and gaining much need funds to keep the company in operation"); *id.* ¶ 49 (sale was made "for the specific purpose . . . to fund and keep his company in operation").

SDF alleges that in furtherance of this scheme, Frost and Ripple took actions to disrupt SDF's economic relationships with Coinex, an online currency exchange, and with Stephenson, in order to force the proceeds from a transaction in which Stephenson purchased STRs from Coinex to be placed in a Bitstamp account on the Ripple network. SDF Crossclaim ¶¶ 23-25, 33-37, 41-48. SDF explicitly alleges that "Frost . . . thus colluded in Ripple's actions and scheme, despite knowing that Ripple's claim of a breach of contract was false [and] that Ripple had no basis to claim these funds." *Id.* ¶ 27.

SDF also alleges that, once Frost and Ripple succeeded in their threats to force Coinex to place the proceeds of the Stephenson transaction in a Bitstamp account on the Ripple network, they then engaged in a scheme to freeze those proceeds and deny SDF the use of its funds. SDF alleges that "Ripple sent … demand letters to Frost as Chief Legal Officer of Bitstamp, claiming that the funds in SDF's account belonged to Ripple due to an alleged breach of contract by McCaleb, and demanding that Bitstamp immediately transfer these funds to Ripple," but that "Ripple and Frost knew . . . that there was no basis for Ripple's claim in its letters that Ripple was entitled to any ownership or control of these funds." *Id.* ¶ 26. Next, "Frost, acting as Bitstamp's chief legal officer, but also acting on behalf of Ripple, caused Bitstamp to improperly freeze SDF's account containing the $940,000 in Bitstamp USD, and then filed on behalf of Bitstamp a complaint in interpleader." *Id* ¶ 27; *see also* Bitstamp Complaint ¶ 23 (Bitstamp prevented Stephenson from "bridg[ing] out" the funds "to remove them from the Ripple Network in order to purchase additional STR" between March 20, 2015 and the filing of Bitstamp's Interpleader Complaint on April 1, 2015). "Frost and Bitstamp thus colluded in Ripple's actions and scheme, despite knowing that Ripple's claim of a breach of contract was false, that Ripple had no basis

1    to claim these funds, and that there was no likelihood that Ripple would sue Bitstamp and thus that there

2    was no valid basis for the interpleader."  SDF Crossclaim ¶ 27.

3          On September 1, 2015, Bitstamp filed a Special Motion to Strike Counterclaim, under the

4    California anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16 (Dkt. 130).   On October 16, 2015, Frost

5    filed his Special Motion to Strike and Motion to Dismiss (Dkt. 157).  Both motions are now set for

6    hearing on December 2, 2015, at 2:00 p.m.

### ARGUMENT

## I.   FROST'S MOTION TO DISMISS UNDER RULE 12(b)(6) MUST BE DENIED BECAUSE SDF HAS ALLEGED SUFFICIENT FACTS TO STATE VALID CLAIMS AGAINST FROST

10         To survive a motion to dismiss, a complaint "need not contain detailed factual allegations," but

11   only plead "'enough facts to state a claim to relief that is plausible on its face.'"  *Weber v. Department of*

12   *Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

13   570 (2007)).  "A claim is facially plausible when the plaintiff pleads facts that 'allow the court to draw

14   the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Gallagher v. Bayer*

15   *AG*, 2015 U.S. Dist. LEXIS 109807, at *6 (N.D. Cal. Aug. 18, 2015) (Orrick, J.) (quoting *Ashcroft v.*

16   *Iqbal*, 556 U.S. 662, 678 (2009)); *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009)

17   (a complaint is sufficient if "the non-conclusory 'factual content,' and reasonable inferences from that

18   content, [are] . . . plausibly suggestive of a claim entitling the plaintiff to relief").  "Determining whether

19   a complaint states a plausible claim for relief will . . . be a context-specific task that requires the

20   reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  "The

21   standard for surviving a motion to dismiss asks whether Plaintiffs have pled 'enough fact[s] to raise a

22   reasonable expectation that discovery will reveal evidence of illegal agreement,'" and "does not require

23   that Plaintiffs have evidence of the alleged illegal agreement in hand." *In re Animation Workers*

24   *Antitrust Litigation*, 2015 U.S. Dist. LEXIS 111262, at *96 (N.D. Cal. Aug. 20, 2015) (quoting

25   *Twombly*, 550 U.S. at 556).

26         In reviewing a complaint under this standard, a court must accept all facts alleged in the

27   complaint as true and must "draw inferences in the light most favorable to the plaintiff." *Barker v.*

28   *Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); *see also Gallagher*, 2015 U.S. Dist.

LEXIS 109807, at **6-7 ("the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in its favor," but "is not required to accept as true 'allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences'"). SDF's allegations are sufficient to meet this standard and state valid claims against Frost.

### A.   SDF Alleges Sufficient Facts to Support the Reasonable Inference That Frost Is Liable Under SDF's Second and Third Claims for Intentional Interference With Economic Relations Between SDF and Coinex and Stephenson

Frost argues that SDF's second and third claims for interference with economic relations fail to state a claim against him because "[t]hese claims are based on *Ripple's* dealings with others," and "[t]here are no well-pleaded factual allegations that Mr. Frost played any role in those matters." Frost Motion at 3 (emphasis in original). This argument ignores the actual allegations of SDF's Crossclaim, and the reasonable inferences that can drawn from them.

Contrary to Frost's contention that SDF's Crossclaim contains no allegations concerning Frost other than that Frost filed an interpleader action, SDF's Crossclaim contains numerous well-pled factual allegations concerning Frost:

- That "Ripple, in order to divert public attention from the federal criminal investigation against it, began a scheme, **along with George Frost ("Frost")** … to damage SDF and Jed McCaleb." SDF Crossclaim ¶¶ 2, 15.

- That **Frost** was the Chief Legal Officer of Bitstamp Ltd. and also simultaneously an advisor to Ripple. *Id.* ¶¶ 2, 8.

- That as part of this scheme, "Ripple **and Frost** took actions to prop up the price of Ripple's XRP currency, and the value of Ripple's shares." *Id.* ¶ 3.

- That "Ripple **and Frost** also took actions to prop up the price of Ripple's XRP currency, and the value of Ripple's shares, in order to benefit themselves because each owns a substantial amount of XRPs." *Id.* ¶ 15.

- That "Ripple **and Frost** conspired to prop up the price of Ripple's XRPs and the value of Ripple's shares, and to prevent SDF from receiving funds from the purchase of STRs by Stephenson." *Id.* ¶ 18.

- That "**Frost** advised Ripple during these settlement negotiations [in July and August 2014 with McCaleb about sales of XRP owned by McCaleb]. During the settlement negotiations, Ripple indicated that it wanted McCaleb to agree to monthly limits on any sales of approximately 7.5 billion XRP that were in McCaleb's possession, custody or control [and that] . . . Ripple's counsel stated that the 7.5 billion XRP referred to approximately 5.5 billion XRP owned directly by McCaleb, and 2 billion XRP held in the names of McCaleb's two children. This 7.5 billion XRP did not include the additional 1.5 billion XRP which McCaleb had already donated to

numerous other philanthropic causes, such as poverty alleviation and scientific research, or gifts to friends and other family members [such as Stephenson] who were not his children." *Id.* ¶ 16.

- That "Ripple also took actions to interfere with the operations of SDF[] ... [including] improper threats and coercion to try to reverse [a purchase of SDF's virtual currency], and, failing that, in concert **with Frost** and Bitstamp, to have SDF's proceeds of that transaction improperly frozen." *Id.* ¶ 4.

- That "an agent of Ripple threatened the operator of the Coinex exchange . . . including . . . making false reports about about Coinex and its operator to U.S. authorities, New Zealand authorities and Coinex's bank for allegedly violating criminal laws. . . . The operator of the Coinex exchange, despite knowing that neither he nor Coinex had done anything improper, yielded to Ripple's improper threats and transferred the funds that SDF had on the Coinex exchange into SDF's Bitstamp account on the Ripple network. . . . This transfer allowed Ripple **and Frost** to exercise dominion and control over SDF's funds." *Id.* ¶ 25.

- That "Ripple, **Frost** and Bitstamp then took actions to have SDF's rPQ account containing the $940,000 plus SDF's other funds immediately frozen." *Id.* ¶ 26.

- That when Ripple sent demand letters to Bitstamp and Frost "claiming that the funds in SDF's account belonged to Ripple due to an alleged breach of contract by McCaleb . . . Ripple **and Frost** knew [] that the XRP offered for sale by Stephenson were not part of the 5.5 billion owned by McCaleb nor of the 2 billion XRP owned by McCaleb's children, and thus that these XRP [that were held by Stephenson] were not subject to any limits on sales in the Ripple-McCaleb settlement agreement." *Id.*

- That "Ripple **and Frost** therefore knew that the representation that Stephenson's sale was a breach of contract by McCaleb was false. Ripple **and Frost** also knew that the funds in the rPQ account that they were requesting Bitstamp freeze were not owned or controlled by either Stephenson or McCaleb, but were owned by SDF. . . . **They** thus knew that there was no basis for Ripple's claim in its letters that Ripple was entitled to any ownership or control of these funds." *Id.*

- That "**Frost**, acting as Bitstamp's chief legal officer, **but also acting on behalf of Ripple**, caused Bitstamp to improperly freeze SDF's account containing the $940,000 in Bitstamp USD." *Id.* ¶ 27.

- That "**Frost** and Bitstamp thus colluded in Ripple's actions and scheme, despite knowing that Ripple's claim of a breach of contract was false, that Ripple had no basis to claim these funds, and that there was no likelihood that Ripple would sue Bitstamp." *Id.*

- That "Ripple, **Frost** and Does 1-20 intended to disrupt the performance of this contract [between SDF and Coinex]"; that "Ripple's and **Frost's** threat disrupted the economic relationship between SDF and Coinex"; and that "[a]s a proximate result of the conduct by Ripple, **Frost** and Does 1-20 and the breach of SDF's contract with Coinex, SDF has suffered damages." *Id.* ¶¶ 35, 37-38.

- That "[i]n March 2015, upon information and belief, Ripple, **Frost** and Does 1-20 learned that Stephenson desired to purchase STRs." *Id.* ¶ 45.

- That "[d]uring the period March to May 2015, Ripple, **Frost** and Does 1-20 made threats to Bitstamp that Ripple was the owner of the funds in SDF's possession that were the proceeds of Stephenson's transaction in purchasing STRs, with the intention that Bitstamp freeze those funds and not deliver them to SDF." *Id.* ¶ 49.

7

**STELLAR'S OPPOSITION TO FROST'S SPECIAL MOTION TO STRIKE; CASE No.: 3:15-cv-1503 WHO**

- That "Ripple's **and Frost's** threats disrupted the Stephenson's economic relationship with Coinex and the economic benefit accruing to SDF." *Id.* ¶ 50.

- That "[a]t all relevant times, the Cross-Defendants, and each of them, have pursued a common course of conduct, acted in concert and conspired with one another in furtherance of their common plan, scheme or design. Each Cross-Defendant was further the agent of each remaining Cross-Defendant and was, at all times alleged herein, acting within the course and scope of the agency relationship." *Id.* ¶ 10.

Thus, the well-pled allegations of SDF's Crossclaim, together with the reasonable inferences that can be drawn from them, plainly allege that Frost was engaged in a wide-ranging scheme with Ripple to damage SDF, that included: (1) knowing that Ripple's claim that there was any breach by McCaleb of his agreement with Ripple was false; (2) knowing that Ripple's claim that there was anything improper with Stephenson's sales of XRPS was false; (3) taking actions to prop up the price of Ripple's XRPs in detriment to SDF; (4) engaging in a fraudulent purchase with Stephenson of his XRPs; (5) coercing Coinex, through improper extortionate demands, to place SDF's funds in a Bitstamp account with the intention and purpose that Frost could then exercise dominion over those funds and freeze them; (6) despite knowing that there was no breach of contract by McCaleb and no valid basis for Ripple to make any claim to SDF's funds, freezing SDF's funds when these funds were placed in the Bitstamp account; (7) that Frost stood to benefit from this scheme because he held a substantial investment in XRPs; and (8) that Frost acted simultaneously as an advisor to Ripple and as Chief Legal Officer of Bitstamp, despite the fact that Frost's and Ripple's scheme depended on these two entities appearing to be adverse.

Moreover, as a co-conspirator, Frost is liable for all actions taken by any other member of the conspiracy in furtherance of the conspiracy. *See, e.g., Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994) ("[b]y participation in a civil conspiracy, a coconspirator effectively adopts as [its] own the torts of other coconspirators within the ambit of the conspiracy"); *AREI II Cases*, 216 Cal. App. 4th 1004, 1024 (2013) ("[t]he purpose of conspiracy allegations is to establish a conspirator's liability as a joint tortfeasor regardless of whether the conspirator was a direct participant in the wrongful act"). Thus, any of Ripple's actions also are attributable to Frost.

Frost's attempt to dismiss SDF's allegation that Ripple and Frost "made threats to Bitstamp that Ripple was the owner of the funds" (SDF Crossclaim ¶ 49) as "overexuberance in group pleading" because "[w]hy would Mr. Frost be threatening his own employer" (Frost Motion at 13 n.5) illustrates Frost's misreading of SDF's allegations against him. Rather, SDF's allegations and their reasonable

STELLAR'S OPPOSITION TO FROST'S SPECIAL MOTION TO STRIKE; CASE No.: 3:15-cv-1503 WHO

inferences were that these letters from Ripple were sham letters, and part of a scheme between Ripple and Frost to harm SDF.  The letters were not intended to truly threaten Bitstamp with litigation, but rather to provide a pretext to justify Bitstamp's freezing of SDF's funds.  Frost's dual representation meant that Frost was acting simultaneously both for Ripple and Bitstamp, despite the fact that he was trying to maintain the illusion that Bitstamp was independent of Ripple.

Frost's argument that he cannot be liable for participating in Ripple's "dealings with Stephenson and Coinex" because "such conduct is simply that of a lawyer giving legal advice to a client contemplating possible litigation," and thus absolutely privileged (Frost Motion at 3-4 n.2) has no merit. "California has long adopted the view that an attorney may not, with impunity, either conspire with a client to defraud or injure a third person or engage in intentional tortious conduct toward a third person." *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz*, 57 Cal. App. 3d 104, 109 (1976).  If an attorney "is actuated by malicious motives, or shares the illegal motives of his client, he may be personally liable with the client for damage suffered by a third person as the result of the attorney's actions." *Id.*; *see also Goodman v. Kennedy*, 18 Cal. 3d 335, 346 (1976) ("[i]f defendant committed actual fraud in his dealings with [plaintiffs' representative], the fact that he did so in the capacity of attorney does not relieve him of liability").  "[I]f the activities of a nonlawyer in a set of circumstances would render the non-lawyer civilly liable . . . , the same activities by a lawyer in the same circumstances generally render the lawyer liable." *Smith v. Allstate Ins. Co.*, 2010 U.S. Dist. LEXIS 68464, at **14-15 (N.D. Cal. June 17, 2010). "[A] defendant's status as attorney for one of the other defendants does not immunize him from liability for torts committed in person or liability for wrongs done pursuant to conspiracy joined by him." *Greenwood v. Mooradian,* 137 Cal. App. 2d 532, 539 (1955).  Thus, SDF's allegations sufficiently allege Frost's participation and liability as more than just a lawyer giving legal advice, but as a participant in tortious conduct.[4]

---

[4] Indeed, Frost's interpretation of SDF's allegations as "mean[ing] Frost advised Ripple in its dealings with Stephenson and Coinex" (Frost Motion at 3-4 n.2) further demonstrates that this is a reasonable inference from SDF's factual allegations – that Frost was involved in Ripple's actions concerning Stephenson and Frost.

**STELLAR'S OPPOSITION TO FROST'S SPECIAL MOTION TO STRIKE; CASE No.: 3:15-cv-1503 WHO**

**B.   SDF's First Claim for Unfair Competition States a Viable Claim Against Frost**

Frost bases his motion to dismiss and alternative motion to strike SDF's claim for violation of California's unfair competition law ("UCL") on three of the same defenses that Bitstamp raised in its anti-SLAPP motion: that the claim is barred by the litigation privilege; that the claim is barred by collateral estoppel; and that SDF is required to and fails to allege any harm to competition. Frost Motion at 9-13. These arguments fail for the same reasons as set forth in SDF's opposition to Bitstamp's motion. *See* SDF's Opposition to Bitstamp's Special Motion to Strike Counterclaim ("SDF's Bitstamp Opp.") (Dkt. 151) at 11-15, 19-20.

**1.   The litigation privilege does not bar the unfair competition claim**

Frost's privilege argument is based on the same unjustifiably limited reading of SDF's crossclaim as his motion to dismiss the intentional interference claims: that SDF's only allegations against him are that, "faced with competing claims to the same funds," he and Bitstamp froze the funds and filed the interpleader action. Frost Motion at 10. This argument thus fails for the same reasons as discussed in Point I.A, above: that SDF has sufficiently alleged Frost's participation in the illegal scheme to damage SDF, and that Frost's involvement in this scheme is not immunized by the litigation privilege. Moreover, Frost's argument that the litigation privilege protects "the freezing of the funds" because this was a necessary and preparatory step to the filing of the interpleader action (Frost Motion at 10) has no merit. As discussed in SDF's opposition to Bitstamp's motion, the California Supreme Court's decision in *Kimmel v. Goland*, 51 Cal. 3d 202 (1990), is directly on point. *See* SDF's Bitstamp Opp. at 14-15 (also citing *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006), and *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 345 (1997) as controlling). Frost makes no attempt to address or distinguish this controlling authority. The only authority that Frost relies on for his argument is an *unreported* California appellate decision, which Frost concedes cannot be considered because there is published California authority that controls (Frost Motion at 8 n.3).[5]

---

[5] Even if the Court were to consider this case (*Plummer v. T.H.E. Ins. Co.*, 2014 Cal. App. Unpub. LEXIS 1686 (Cal. Ct. App. Mar. 10, 2014)), the case has no application on its facts because it involved a dispute over settlement funds held in an attorney's trust fund, and the only allegations of wrongdoing against the attorney and his law firm were that they agreed to file and filed a meritless interpleader action concerning the funds. There were no other allegations against the lawyer comparable to the many allegations concerning Frost contained in SDF's Crossclaim.

10

## 2. Collateral estoppel does not bar the unfair competition claim

Frost's one-paragraph collateral estoppel argument (Frost Motion at 10-11) cites no caselaw and makes no attempt to meet his burden to establish the five required elements for collateral estoppel to apply. As demonstrated in SDF's opposition to Bitstamp's motion, SDF's unfair competition claim is not barred by collateral estoppel because: (1) the issues raised by the claim are not identical to the issue adjudicated in the Court's discharge order; (2) the issues raised by the claim were not actually litigated on Bitstamp's motion for discharge; (3) the issues raised by the claim were not necessarily decided in on by the discharge order; (4) the discharge order was not a final judgment on the merits of a former proceeding; and (5) SDF was not the same as or in privity with a party to the prior proceeding because there was no prior proceeding and SDF was not a party to this action when Bitstamp was discharged. *See* SDF's Bitstamp Opp. at 11-14. Frost makes no attempt to address any of these arguments.

## 3. SDF alleges sufficient facts to support Frost's liability for unfair competition

Frost's argument that the unfair competition claim fails under *Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999), because SDF "has not alleged anything akin to an antitrust violation or significant harm to competition generally" (Frost Motion at 11) must be rejected. The unfair competition statute is written in the disjunctive, and thus is violated if a defendant's act or practice is either: (1) unlawful, (2) unfair, or (3) fraudulent. *Lozano v. AT&T Wireless Serv.*, 504 F.3d 718, 731 (9th Cir. 2007).

First, SDF states a claim against Frost under the "unlawful" prong because it alleges sufficient facts to show that the alleged scheme to injure SDF included unlawful acts of extortion against Coinex. *See* SDF Crossclaim ¶¶ 4, 10, 18, 23- 25, 27, 31, 36-37, 45, 48; Cal. Pen. Code §§ 518, 519 (defining and prohibiting extortion); *Flatley v. Mauro*, 39 Cal. 4th 299, 327 (2006); SDF's Bitstamp Opp. at 19-20. Moreover, as demonstrated in Point I.A, above, SDF has alleged sufficient facts to support the reasonable inference that Frost is liable for the extortionate threats to Coinex. Second, SDF states a claim against Frost under the "unfair" prong because, as discussed in SDF's opposition to Bitstamp's motion, SDF's allegations are sufficient to allege the requisite "actual or threatened impact on competition" in the virtual currency markets. *See* SDF's Bitstamp Opp. at 20; SDF Crossclaim ¶¶ 13-

15, 18.[6]  Third, SDF states a claim against Frost under the "fraudulent" prong because, as demonstrated in Point I.A, above, SDF has alleged sufficient facts to support the reasonable inference that Frost is liable for Ripple's fraudulent transaction with Stephenson.

### 4.  SDF Alleges a Claim for Injunctive Relief Under the UCL

Frost also raises a fourth argument, not advanced by Bitstamp in its motion (but first raised by Bitstamp in its reply brief), that the unfair competition claim fails because there is no ongoing conduct to be enjoined and thus SDF has no remedy under the UCL.  Frost Motion at 12.  As Frost concedes, injunctive relief is an available remedy under the UCL.  *Id.*  The UCL expressly authorizes courts to enjoin uncompetitive acts as well as to "make such orders or judgments . . . as may be necessary to prevent the use or employment of any practice which constitutes unfair competition." Cal. Bus. & Prof. Code § 17203.  SDF alleges that Ripple and Frost were threatened by SDF, and engaged in a scheme to harm SDF.  Accordingly, SDF's Crossclaim includes a prayer for injunctive relief (Crossclaim at 15), and if SDF prevails on its unfair competition claim, it will be entitled to injunctive relief to prevent future acts of unfair competition.

## II.  FROST'S ANTI-SLAPP MOTION TO STRIKE SDF'S FIRST CLAIM FOR UNFAIR COMPETITION FAILS FOR THE SAME REASONS AS THE PENDING BITSTAMP MOTION TO STRIKE

### A.  Frost Fails to Meet His Threshold Burden to Show That SDF's Unfair Competition Claim Against Him Arises From Activity Protected Under the Anti-SLAPP Statute

A special motion to strike under the California anti-SLAPP statute involves two steps. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002).  "[T]he 'arising from' requirement is not always easily met" and can only be satisfied if the defendant demonstrates that the defendant's conduct on which liability is based falls within one of the four categories" set forth in CCP § 425.16(e).  *Equilon Enter. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 66 (2002).  If the defendant cannot satisfy this first step, the inquiry ends there and the anti-SLAPP motion must be denied. *City of Riverside v. Stansbury*, 155 Cal. App. 4th 1582, 1594 (2007).

---

[6] If the Court determines that SDF's allegations are insufficient to state a claim, SDF must be given leave to amend to add additional allegations concerning the impact of the alleged scheme on competition in the virtual currency markets. *See* Point III, *supra*.

In determining whether "the cause of action is *based* on the defendant's protected petitioning activity," the court must look at the "gravamen or principal thrust" of the cause of action. *In re Episcopal Church Cases*, 45 Cal. 4th 467, 477-78 (2009); *see also Nat'l Abortion Fed'n*, 2015 U.S. Dist. LEXIS 114851, at *8 (courts look to "'what activities form the basis for each of Plaintiffs' causes of action,' then 'ask whether those activities are protected'"). Thus, in *In re Episcopal Church Cases*, a case involving a real property dispute between a diocese and a disaffiliated church, the California Supreme Court determined that the anti-SLAPP statute did not apply to any of the eight property-recovery related causes of action because the "gravamen or principal thrust" of each cause of action was the property dispute, not the "protected activity . . . in the background." 45 Cal. 4th at 477-78.

Frost, like Bitstamp, argues that SDF's unfair competition claim against him arises from protected petitioning activity because "the only specific conduct alleged as to Mr. Frost is his filing of the interpleader and the freezing of funds that necessarily preceded it. Frost Motion at 8. As discussed in Point I, above, however, the basis for SDF's unfair competition claim against Frost is not primarily the litigation activity of filing the complaint in interpleader, but Frost's participation in the illegal scheme to damage SDF: first, by engaging in market manipulation to prop up the XRP price through the fraudulent transaction with Stephenson to purchase his XRPs; and second, through unlawful threats that coerced Coinex into placing SDF's funds in a Bitstamp account on the Ripple network, enabling Frost through Bitstamp to deny SDF access to its funds. None of these activities are protected activity within the meaning of the anti-SLAPP statute.

While the unfair competition cause of action does allege that -- once Bitstamp, Ripple and Frost succeeded in coercing Coinex to place SDF's funds in a Bitstamp account and Bitstamp froze those funds to prevent SDF from having lawful access to its own funds -- these conspirators then utilized the interpleader filing to manufacture federal jurisdiction, the principal thrust of the cause of action is the illegal scheme to prevent SDF from benefiting from Stephenson's purchase of STRs by coercing SDF's funds to be placed in a Bitstamp account. The interpleader filing came about only after the scheme had already achieved its dominant purpose by getting SDF's funds into a Bitstamp account so that Bitstamp could prevent SDF from having access to the funds. *See, e.g.*, *Episcopal Church Cases*, 45 Cal. 4th at 477 (the fact that plaintiff's complaint was filed "after protected activity took place does not mean the

1   action arose from that activity for the purposes of the anti-SLAPP statute" and "that a cause of action

2   arguably may have been 'triggered' by protected activity does not entail that it is one arising from

3   such").

4          As discussed in SDF's opposition to Bitstamp's anti-SLAPP motion (SDF Bitstamp Opp. at 9-

5   10), *Renewable Resources Coal., Inc. v. Pebble Mines Corp.*, 218 Cal. App. 4th 384, 396 (2013), is

6   directly on point.  Plaintiff, an environmental group, hired a fundraiser to help support a ballot initiative

7   to block a mining development.  After the initiative failed, a fee dispute arose between plaintiff and the

8   fundraiser.  The fundraiser then contacted the attorney for the owners of the mining development, both

9   to pressure plaintiff with the threat of disclosing its confidential campaign correspondence, and to sell

10  the confidential documents to the mine owners.  The attorney paid the fundraiser $50,000 for the

11  documents, and then used the documents to prepare and file a complaint on behalf of the mine owners

12  against plaintiff with the elections commission for alleged election law violations.  As a result of the

13  pending election law proceeding, plaintiff lost grants and incurred costs in defending itself.  Plaintiff

14  then filed a lawsuit against the mine owners, bringing claims for interference with contract and with

15  prospective economic advantage, based on the mine owner's purchase of the confidential documents.

16  The mine owners brought an anti-SLAPP motion, which the trial court granted on the ground that

17  plaintiff's alleged injuries arose from the mine owners' protected petitioning activity in connection with

18  filing the election law complaint.  The Court of Appeal reversed holding that "gravamen of an action is

19  the allegedly wrongful and injury-producing conduct, not the damage which flows from said conduct,"

20  and that a "fair reading" of plaintiff's complaint was that the mine owners "were being sued for

21  wrongfully purchasing [plaintiff's] confidential documents [and] not for prosecuting [the elections law

22  action]."  *Id.* at 397-98. *Renewable Resources Coal* clearly applies here – a fair reading of SDF's

23  complaint is that Frost is being sued for wrongfully engaging in a scheme to prop up the price of

24  Ripple's XRPs, engage in a fraudulent transaction with Stephenson, and to coerce Coinex to place

25  SDF's funds in an account over which Bitstamp could exercise dominion and control and prevent SDF

26

27

28

STELLAR'S OPPOSITION TO FROST'S SPECIAL MOTION TO STRIKE; CASE No.: 3:15-cv-1503 WHO

from access to its own funds, and not for his and Bitstamp's subsequent act of filing the interpleader action.  Frost ignores *Renewable Resources*.[7]

### B.    SDF Has Stated a Legally Sufficient Claim for Unfair Competition Against Frost

Because Frost's motion to strike SDF's claim for unfair competition under the anti-SLAPP statute is premised entirely on legal issues, the Rule 12(b)(6) motion to dismiss standard applies, and all SDF need show to demonstrate a probability of prevailing under the anti-SLAPP statute is that it has stated a legally sufficient claim.  *See Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999); *Nat'l Abortion Fed'n v. Center for Med. Progress*, 2015 U.S. Dist. LEXIS 114851, at *10 (N.D. Cal. Aug. 27, 2015) (Orrick, J); *Restaino v. Bah (In re Bah)*, 321 B.R. 41, 45 n.6 (B.A.P. 9th Cir. 2005); SDF Bitstamp Opp. at 5, 11.[8]  Frost's contention that SDF cannot show a probability of prevailing on this claim is based on the exact same arguments that he asserts in support of his motion to dismiss this claim ("litigation privilege, collateral estoppel, and injury and relief").  Frost Motion at 12-13.  Accordingly, Frost's anti-SLAPP motion fails for the same reasons as his motion to dismiss the unfair competition claim.  *See* Point I.B, *supra*.

---

[7] Finally, the California Supreme Court has held that "where a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action arises from activity by the defendant in furtherance of the defendant's exercise of protected speech or petition rights, but . . . the evidence conclusively  establishes that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action."  *Flatley v. Mauro*, 39 Cal. 4th 299, 320 (2006).  SDF has had no discovery on its allegations, and thus no opportunity to develop evidence to establish that the alleged scheme was illegal as a matter of law.  Accordingly, even if the Court were to determine that SDF's allegations concerning the filing of the interpleader action fit within the "arising from" prong of the anti-SLAPP statute, the Court cannot grant Frost's motion to strike without first allowing SDF to conduct discovery on this issue so that it has an opportunity to make such an evidentiary showing.

[8] If the Court were to determine that Frost's anti-SLAPP motion requires the resolution of any factual issues, the Court must allow SDF to conduct discovery in order to respond to the motion.  *See* SDF's Bitstamp Opp. at 21-24.

1

**III.   IF THE COURT GRANTS FROST'S MOTION, IT MUST ALLOW SDF LEAVE TO AMEND**

2

　　　　If a court dismisses a challenged pleading for failure to state a claim, it must grant leave to

3

amend unless it determines that the pleading could not possibly be cured by the allegation of other facts

4

consistent with the challenged pleading.  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *Schreiber*

5

*Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also* Fed. R. Civ. P.

6

15(a)(2) (leave to amend must be freely given); *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d

7

973, 982-83 (C.D. Cal. 1999) (same standard applies to anti-SLAPP motion premised entirely on legal

8

issues).  Accordingly, if the Court is inclined to grant any part of Frost's motion, SDF must be given an

9

opportunity to amend.

10

**CONCLUSION**

11

　　　　For the reasons set forth above, Frost's motion must be denied in its entirety.

12

13

Dated: November 11, 2015

By: /s/ Adam Belsky
Terry Gross (SBN 103878)
terry@gba-law.com
Adam C. Belsky (SBN 147800)
adam@gba-law.com
GROSS BELSKY ALONSO LLP
One Sansome Street, Suite 3670
San Francisco, CA 94104
Telephone: 415 554-0200
Facsimile: 415 544-0201

Attorneys for Defendant, Counterclaimant, and
Crossclaimant Stellar Development Foundation

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STELLAR'S OPPOSITION TO FROST'S SPECIAL MOTION TO STRIKE; CASE No.: 3:15-cv-1503 WHO**