1   Terry Gross, terry@gba-law.com (SBN 103878)
2   Adam C. Belsky, adam@gba-law.com (SBN 147800)
    GROSS BELSKY ALONSO LLP
3   One Sansome Street, Suite 3670
    San Francisco, CA 94104
4   Tel: (415) 544-0200
    Fax: (415) 544-0201
5
6   Attorneys for Defendant, Counterclaimant, and
    Crossclaimant
7   STELLAR DEVELOPMENT FOUNDATION

8   [*Additional counsel on signature page*]

9                   **UNITED STATES DISTRICT COURT**

10                 **NORTHERN DISTRICT OF CALIFORNIA**

11  | BITSTAMP LTD., a foreign company, | Case No. 15-cv-01503-WHO |
    |---|---|
12  | Plaintiff, | **JOINT CASE MANAGEMENT STATEMENT** |
13  | v. | |
14  | RIPPLE LABS INC., a California Corporation, JACOB STEPHENSON, an individual, NANCY HARRIS, an individual, JED MCCALEB, an individual, and DOES 1 Through 10, Inclusive, | Date:     December 2, 2015<br>Time:     2:00 p.m.<br>Dept.:    Courtroom 2, 17th Floor |
15  | | |
16  | | Judge:  Hon. William H. Orrick |
17  | Defendant. | |
18  | | |
19  | STELLAR DEVELOPMENT FOUNDATION, a Delaware Nonprofit Corporation, | |
20  | Counterclaimant and Crossclaimant, | |
21  | vs. | |
22  | RIPPLE LABS INC. a Delaware Corporation, GEORGE FROST, an individual, BITSTAMP, LTD., a foreign company, and DOES 1-20, inclusive, | |
23  | | |
24  | Cross-Defendants and Counter-Defendant. | |
25  | | |
26
27
28

1    The Parties, through their undersigned counsel, submit this Joint Case Management

2  Statement for the Case Management Conference ("CMC") scheduled for December 2, 2015.  This

3  action has involved three sets of claims:  (1) the Complaint for Interpleader (Dkt. 1), filed on April

4  1, 2015, by Bitstamp Ltd. ("Bitstamp") against Ripple Labs Inc. ("Ripple Labs"), Jed McCaleb,

5  Jacob Stephenson and Nancy Harris (collectively, the "Individual Defendants"), requesting that

6  the Court decide the proper owner of disputed funds in Bitstamp's possession (the "Disputed

7  Funds"); (2) the Cross-Complaint (Dkt. 9), filed on April 29, 2015, by Ripple Labs against Mr.

8  McCaleb for breach of an August 13, 2014 Settlement Agreement, and against Mr. Stephenson for

9  intentional interference with that contract; and (3) the Counterclaim and Crossclaim (Dkt. 122),

10  filed on August 12, 2015, by Stellar Development Foundation ("SDF") against Ripple Labs,

11  Bitstamp, and George Frost, asserting a statutory unfair competition claim against Ripple Labs,

12  Bitstamp, and Mr. Frost, and two claims for interference with economic relations against Ripple

13  Labs and Mr. Frost.

14    **Status of Bitstamp's Interpleader Complaint**

15    On June 5, 2015, the Court entered a Stipulated Order to Deposit Disputed Funds with the

16  Court (Dkt. 60), and $942,138.24 has subsequently been deposited with and is being held by the

17  Court in connection with the interpleader action.[1]  On June 8, 2015, the Court entered an Order

18  granting Bitstamp's motion to be discharged from its Interpleader Complaint (Dkt. 63).  On July

19  29, 2015, the Court entered a Joint Stipulation and Order, providing that Ripple Labs would

20  deposit 96,342,361.6 XRP with the Court's registry (Dkt. 110), and Ripple Labs subsequently

21  effectuated this deposit with the filing under seal of a private key.  On August 6, 2015, the Court

22  entered an Order granting SDF's motion to intervene in the interpleader and authorizing SDF to

23  file its Crossclaim against Ripple Labs and Mr. Frost and Counterclaim against Bitstamp (Dkt.

24  117).  On August 6, 2015, the Court also entered an Order denying Bitstamp's motion for

25  attorney's fees and costs without prejudice to Bitstamp renewing its motion once its involvement

26  in this case has been adjudicated or otherwise resolved (Dkt. 121).

27  ───────────────
[1] Bitstamp initially deposited $1,006,130.94 with the Court.  Pursuant to the Parties' stipulation,
$63,992.70 of the deposited funds were subsequently released and transferred to SDF, reducing
28  the amount deposited with and held by the Court to $942,138.24 (Dkt. 120).

1    The only claimants to the Disputed Funds are SDF, Stephenson, and Ripple Labs.

2    **Status of Ripple Labs' Cross-Complaint Against McCaleb and Stephenson**

3    On August 6, 2015, the Court entered an Order granting Mr. McCaleb and Mr.

4    Stephenson's motion to compel arbitration of Ripple Labs' claims against them, and staying the

5    proceedings as to Ripple Labs' Cross-Complaint pending resolution of the arbitration (Dkt. 119).

6    On September 1, 2015, Ripple Labs filed an arbitration demand with the Judicial Arbitration and

7    Mediation Services ("JAMS").  The Court's Order requires Ripple Labs, SDF, McCaleb,

8    Stephenson, and Harris to file a Joint Status Report every six months apprising the Court of the

9    status of the arbitration.

10   **Status of SDF's Crossclaim Against Ripple Labs and Mediation**

11   On September 8, 2015, Ripple Labs filed an Answer to SDF's Crossclaim against it (Dkt.

12   132).  In early October, Ripple Labs and SDF agreed to mediate this crossclaim, along with the

13   arbitration claims between Ripple Labs, Mr. McCaleb, and Mr. Stephenson.  On October 6, 2015,

14   the Court entered a stipulated Order, staying all proceedings between SDF and Ripple Labs,

15   pending the outcome of the mediation (Dkt. 153).  Mediation sessions with the Hon. David A.

16   Garcia (Ret.) of JAMS were held on October 30, 2015, and November 4, 2015.  Ripple Labs,

17   SDF, McCaleb and Stephenson were unable to reach a resolution during the mediation although

18   they are continuing to engage in settlement discussions.  On November 5, 2015, Ripple Labs filed

19   a Notice and Request to Terminate Stay (Dkt. 161), and on November 10, 2015, the Court entered

20   an order terminating the stay as of November 15, 2015 (Dkt. 162).

21   **Status of SDF's Counterclaim and Crossclaim Against Bitstamp and Frost**

22   On September 1, 2015, Bitstamp filed a Special Motion to Strike SDF's Counterclaim

23   against it under the California anti-SLAPP statute (Dkt. 130).  The motion is fully briefed and

24   scheduled for hearing on December 2, 2015, at the same time as the CMC.  On October 16, 2015,

25   Mr. Frost filed a Special Motion to Strike SDF's unfair competition crossclaim against him, and a

26   motion to dismiss all of SDF's crossclaims against him (Dkt. 157).  Mr. Frost's motion is also

27   scheduled to be heard on December 2, 2015 (Dkt. 159).

28

1   **1.**      **Jurisdiction and Service**

2          This Court has subject matter of this action pursuant to Fed. R. Civ. Proc. 22, 28 U.S.C.

3   § 1332 and 28 U.S.C. § 1367.  The Parties are not aware of any issues with respect to personal

4   jurisdiction or venue.  No Parties remain to be served.

5   **2.**      **Statement of Facts**

6          **A.**      **SDF's Statement**

7          Mr. McCaleb was a co-founder of Ripple Labs.  When Ripple Labs' virtual currency, the

8   XRP, was created in September 2012, he owned 9 billion of the 100 billion XRPs created.  Shortly

9   thereafter, he donated to various philanthropic causes and gave away to friends and various family

10  members a total of approximately 1.5 billion XRPs, leaving McCaleb with the possession, custody

11  or control of approximately 7.5 billion XRP.  After leaving Ripple Labs, Mr. McCaleb co-founded

12  SDF as a nonprofit organization, with a mission to provide access to financial services to

13  underserved populations.  Ripple Labs views SDF as a threat to its business.

14         During July and August 2014, Ripple Labs engaged in negotiations with Mr. McCaleb and

15  SDF to resolve concerns by Ripple Labs related to sales by Mr. McCaleb of his XRPs, resulting in

16  a settlement agreement.  The settlement agreement states that it was intended "to allow Ripple and

17  Stellar Development Foundation to freely operate their businesses without anti-competitive

18  interference from each other."  Among other terms, the agreement placed monthly limits on the

19  XRPs that Mr. McCaleb could sell from the remaining 7.5 billion XRPs that McCaleb owned

20  directly or that were held in the names of his two children.  These monthly limits on McCaleb's

21  7.5 billion XRPs did not apply to the additional 1.5 billion XRPs that McCaleb had previously

22  donated to charities or given away to friends and other family members who were not his children,

23  including Mr. Stephenson.

24         Mr. Frost advised Ripple Labs during these settlement negotiations and had personal

25  knowledge of the agreement's terms, including that Mr. Stephenson's XRP holdings were not

26  subject to the agreement's restrictions on sales of XRP by Mr. McCaleb.  Mr. Frost owns a

27  substantial amount of XRPs, and thus has a personal financial interest in Ripple Labs' success.

28

1   In March 2015, Ripple Labs and Mr. Frost, who at that time was employed as Bitstamp's

2   Chief Legal Officer, saw an opportunity to damage SDF, taking advantage of Mr. Frost's position

3   as a senior executive at Bitstamp.  Mr. Frost and Ripple Labs believed that SDF was in dire

4   financial need. Learning that Mr. Stephenson was offering for sale approximately 96 million

5   XRPs, and that Mr. Stephenson was using proceeds from this sale to purchase STRs (the virtual

6   currency on the Stellar network), Ripple Labs and Frost conspired to prop up the price of Ripple

7   Labs' XRPs and the value of Ripple Labs' shares, and to prevent SDF from receiving funds from

8   the purchase of STRs by Mr. Stephenson."  Ripple Labs and Mr. Frost believed that by preventing

9   SDF from receiving these funds they could deal a crippling blow to SDF.

10   Ripple Labs arranged for one of its "market makers," a man named Alexis Sirkia, to

11   purchase the XRPs on Ripple Labs' behalf.  Mr. Sirkia paid $1,038,172 for the XRPs, but directed

12   Mr. Stephenson to return $74,748 of that price to a side account designated by Mr. Sirkia, such

13   that Mr. Stephenson received $963,424 in proceeds.[2]  Ripple Labs, in turn, received all of Mr.

14   Stephenson's XRP.

15   Ripple Labs and Mr. Frost then learned that Mr. Stephenson transferred the proceeds from

16   that sale to the Coinex virtual currency exchange and used those funds to purchase STRs from

17   SDF.  Although Ripple Labs had received full consideration for its purchase transaction with

18   Stephenson and engaged in its purchase voluntarily, it immediately embarked on a course of

19   conduct with Mr. Frost and Bitstamp designed to prevent SDF from obtaining the funds to which

20   it was entitled. Ripple Labs and Mr. Frost first demanded that Coinex reverse Mr. Stephenson's

21   STR purchase and instead deliver the funds to Ripple Labs.  When Coinex refused, Ripple Labs

22   and Mr. Frost then made improper and illegal threats to Coinex to coerce Coinex into transferring

23   a total of $1,006,000 from SDF's Coinex account into an SDF account on the Bitstamp exchange,

24   a virtual currency exchange operated by Bitstamp on the Ripple network, so that Mr. Frost and

25   Bitstamp could prevent SDF from accessing its funds.  Once SDF's $1,006,000 was under

26   Bitstamp's control, Mr. Frost, acting as Bitstamp's Chief Legal Officer, but also acting on behalf

27

28   [2] Although Mr. Sirkia skimmed $74,478 off the top, Ripple Labs nonetheless sued Mr.
Stephenson, Mr. McCaleb, and SDF for the inflated purchase price of $1,038,172.

1  of Ripple Labs, caused Bitstamp immediately to improperly freeze SDF's account.  Then, to

2  manufacture the appearance of a dispute over the funds, Ripple Labs, with Mr. Frost's knowledge

3  and involvement, sent Bitstamp and Mr. Frost letters demanding that Bitstamp transfer the frozen

4  funds to Ripple Labs.  Ripple Labs and Mr. Frost knew that there was no basis for Ripple Labs'

5  claim in its letters that Ripple Labs was entitled to any ownership or control of these funds.

6  On April 1, 2015, Bitstamp, acting through Mr. Frost, filed this interpleader action,

7  supposedly to resolve questions of ownership concerning SDF's funds.  Despite Ripple Labs', Mr.

8  Frost's, and Bitstamp's knowledge that the alleged disputed funds belonged to SDF, Bitstamp did

9  *not* include SDF in the action, instead naming only Ripple Labs, Mr. McCaleb, Mr. Stephenson

10 and Ms.  Harris.  Mr. McCaleb and Ms. Harris subsequently disavowed any interest in the frozen

11 funds (as did Mr. Stephenson for all but a nominal amount), but even after SDF informed all

12 parties of its interest in the nearly $1 million at issue, Ripple Labs and Bitstamp refused to

13 stipulate to SDF's intervention into the interpleader action.

14 Bitstamp's interpleader complaint goes out of its way to advocate for Ripple Labs, such as

15 by alleging that Mr. Stephenson's account was controlled by Mr. McCaleb, despite having no

16 valid basis for any such assertion, and by including allegations about a "Stellar Auction," an event

17 that is completely irrelevant to whether Bitstamp had received conflicting claims to ownership of

18 the purportedly disputed funds.  These allegations served no purpose other than to try to support

19 Ripple Labs' scheme.  It is SDF's understanding that Mr. Frost is no longer Bitstamp's Chief

20 Legal Officer.

21  ### B.   Ripple Labs' Statement

22 On August 13, 2014, Ripple Labs, on the one hand, and Mr. McCaleb and SDF on the

23 other hand (among others) entered into a Settlement Agreement, whereby Mr. McCaleb agreed to

24 limit his sales of XRP, for the first year of the Agreement, to $10,000 worth of XRP per week.

25 The Interpleader Complaint and Ripple Labs' Cross-Complaint assert, among other things,

26 that (1) beginning on or about August 14, 2014, a Ripple account within Mr. McCaleb's

27 ownership and/or control regularly sold well over the $10,000 worth of XRP per week limit until

28 September 25, 2014, when it ran out of XRP; (2) on September 25, 2014, approximately two hours

1   after the aforementioned account sold all its XRP, a second Ripple account within Mr. McCaleb's

2   ownership and/or control began selling substantial amounts of XRP, selling well over the $10,000

3   worth of XRP per week limit until it ran out of XRP on October 8, 2014; and (3) on March 19,

4   2015, Mr. McCaleb or Mr. Stephenson at the direction of or for the benefit of Mr. McCaleb,

5   offered and sold 96,342,361.6 XRP on the Ripple network.  The Interpleader Complaint and

6   Ripple Labs' Cross Complaint further allege that these sales violated the Settlement Agreement

7   and, to mitigate its damages, Ripple Labs, through its agent, purchased the 96,342,361.6 XRP

8   offered for sale on March 19, 2015.[3]  Allegedly Mr. McCaleb, and/or Mr. Stephenson at the

9   direction of or for the benefit of McCaleb, attempted to use the funds received from the March 19,

10  2015 transaction to purchase STR – the virtual currency offered by SDF.

11         Thereafter, Bitstamp received demands from both Ripple Labs and Mr. Stephenson

12  claiming entitlement to the Disputed Funds.  Bitstamp instituted this Interpleader action, and

13  subsequently deposited the Disputed Funds with the Court, requesting that the Court decide who is

14  actually entitled to the Disputed Funds.  Ripple Labs also deposited the XRP it received from the

15  March 19, 2015 transaction with the Court.  Ripple Labs answered the Interpleader Complaint

16  asserting it was entitled to the Disputed Funds because it purchased the XRP to mitigate its

17  damages caused by Mr. McCaleb's breach of the Settlement Agreement, and filed a Cross-

18  Complaint against Mr. McCaleb for breaching the Settlement Agreement and against Mr.

19  Stephenson for intentionally interfering with the Settlement Agreement.  As noted above, Ripple

20  Labs' Cross-Complaint was stayed in lieu of arbitration and Ripple Labs has asserted those claims,

21  and others, in an arbitration demand filed with JAMS.

22         On August 6, 2015, the Court permitted SDF to intervene in this action and on August 12,

23  2015 SDF filed its Counterclaim and Crossclaim asserting claims against Ripple Labs, Bitstamp,

24  and Mr. Frost, for unfair competition and for interference with economic relations against Ripple

25  Labs and Mr. Frost.  On September 8, 2015, Ripple Labs answered SDF's cross-claims against it

26

27

28
[3] The date in the respective complaints stated that the sale was on or around March 20, 2015,
which the Parties later learned was actually March 19, 2015.

- 6 -

1  largely denying the allegations and asserting numerous affirmative defenses including, good faith,
2  unclean hands, failure to mitigate, lack of standing, no actual damages, and litigation privilege.

3        There are three underlying premises to SDF's claims that it must prove to prevail – all of
4  which are demonstrably false.  First, to prevail on its claims that Ripple Labs violated California
5  Business & Professions Code Section 17200 SDF must prove an independently wrongful act
6  (either unlawful, misrepresentation or fraud).  The first flawed premise that SDF relies upon to
7  satisfy this element is that Ripple Labs' purchase of the approximately 96 million XRP from Mr.
8  Stephenson and alleged communications with Bitstamp and Coinex regarding freezing the funds
9  from the March 19, 2015 transaction were wrongful.  However, Ripple Labs acted in good faith
10  when it reached out to Bitstamp and Coinex to assert its claim to the Disputed Funds and when it
11  purchased the XRP itself.  Even if Ripple Labs fails to ultimately prove its claims against Mr.
12  McCaleb, it is indisputable that if Ripple Labs believed, as it did, that Mr. McCaleb violated the
13  Settlement Agreement, there is no liability.  It is further indisputable that, under California law, if
14  Ripple Labs believed that Mr. McCaleb breached the Settlement Agreement, as it did, Ripple Labs
15  had a right to act to mitigate its damages.

16        Second, to prevail on its claims for intentional interference with economic relations, SDF
17  has to prove that Ripple Labs improperly intended to interfere with SDF's relationships with Mr.
18  Stephenson and Coinex.  SDF attempts to meet this burden by alleging a purported motive for
19  Ripple Labs' efforts at freezing the funds – namely that Ripple Labs was threatened by SDF.
20  However, as it concedes in its Cross-Complaint, "SDF has significantly different goals than Ripple
21  [Labs]."  Dkt. No. 122, p.6 ¶ 13.  Neither Ripple Labs nor SDF would argue with the fact that the
22  companies are targeting completely different markets.  Ripple Labs is focusing on large
23  institutional clients, primarily banks.  And SDF is a purported non-profit focusing on end users
24  interested in buying and selling STR for investment purposes or as an alternative to traditional
25  centralized fiat controlled by the government (*i.e.,* US dollars, Yen, Pesos, etc.).  Because these
26  companies are not competitors, among other reasons, Ripple Labs has no reason to be "threatened"
27  by SDF.
28

- 7 -

Third, also in furtherance of SDF's need to prove malicious intent by Ripple Labs, SDF alleges that Ripple Labs' actions were all part of a "scheme" to prop up the value of XRP because it needed money to fund its operations.  It is counterintuitive that a company struggling financially would spend $1 million dollars to purchase XRP rather than using it to fund its operations.  Nevertheless, to support this theory, SDF insinuates that that Ripple Labs sought to deflect attention from other matters by seizing the Disputed Funds.  Ripple Labs never discussed using Mr. McCaleb, SDF, or the Disputed Funds as a diversion from anything, particularly for the reasons asserted by SDF.

Moreover, SDF cannot prove anything beyond de minimus damages.  The funds were frozen on or around March 20, 2015, and the Interpleader Complaint filed on April 2, 2015.  On June 4, 2015, SDF stipulated to the depositing the funds with the Court (Dkt. No. 55) to avoid McCaleb's deposition, thus capping SDF's damages to the loss of use of $1 million for 76 days.

**C.      Bitstamp's Statement**

Bitstamp is a company based in the United Kingdom that operates a worldwide digital currency exchange.  Bitstamp operates as a gateway for XRP—the math-based currency created by Ripple Labs.  Bitstamp enables the exchange of XRP for other digital currency and fiat currency, including U.S. dollars.  As a general matter, Bitstamp claims no ownership interest in funds transferred or exchanged using Bitstamp.

On March 26, 2015, Bitstamp received a letter from Ripple claiming "sole interest" to funds in Bitstamp's possession, held in Ripple Account "r3Q," which, according to Ripple, was "currently being claimed by Jacob Stephenson."  Ripple informed Bitstamp that account r3Q is "purportedly controlled by Jacob Stephenson, but [] Ripple has evidence [that it] is in fact being controlled by Mr. Stephenson's cousin, Mr. McCaleb."  Ripple claimed that McCaleb was fraudulently manipulating the r3Q account by "using Bitstamp to secretly funnel the proceeds of [a] sale" of 89,999,900 XRP through Stephenson's Ripple account, when "this sale was at the direction of and for the benefit of Mr. McCaleb."  According to Ripple, it had "sent the purchase funds to the r3Q account."  Ripple asserted "its sole interest" in the funds and "demand[ed] the immediate transfer of the $75,000 to Ripple's account."  Ripple concluded its March 26 letter with

1   the following threat:  "Should Bitstamp fail to respond by the specified time, or if it refuses to

2   comply with this demand, Ripple will seek all legal remedies available to it against Bitstamp and

3   others."  Ripple's March 26 letter did not indicate that SDF had any claim on the funds held by

4   "r3Q."

5           On March 30, 2015, Bitstamp received another letter from Ripple informing it that "there

6   is approximately $963,000 of additional funds in Bitstamp's control currently being claimed by

7   Jacob Stephenson or others."  Ripple demanded that Bitstamp not "release these funds or the

8   approximately $75,000 in funds referenced in my March 26th letter [], totaling $1,038,172, to

9   anyone other than Ripple Labs for the reasons set forth in my prior letter to you."  Once again,

10  Ripple's letter did not indicate that SDF had any claim to the $1,038,172 (the "Disputed Funds").

11          Because "r3Q" is a Ripple account, Bitstamp did not know who actually owned or

12  controlled the account (or any other Ripple account).  However, in light of (1) Ripple's claim to

13  "sole interest" in an account purportedly owned by Stephenson but controlled by McCaleb, (2) the

14  triggering of Bitstamp's anti-money laundering policy, (3) Ripple's claim that Bitstamp was being

15  fraudulently used by McCaleb to "secretly funnel" proceeds, and (4) Bitstamp's awareness that

16  McCaleb was the subject of an ongoing criminal investigation by the United States Attorney's

17  Office in connection with his digital currency activities, Bitstamp froze the Disputed Funds on

18  March 31, 2015.  Bitstamp then immediately filed this interpleader action on April 1, 2015,

19  naming Ripple, McCaleb, Stephenson, and Nancy Harris as defendants.  Because Bitstamp did not

20  know which of the possible claimants was entitled to the Disputed Funds and itself made no claim

21  to them, Bitstamp sought the Court's assistance in resolving the competing claims of ownership.

22          Bitstamp did not name SDF as a defendant in the interpleader action because it had no

23  notice that SDF asserted any claim to the Disputed Funds.  Bitstamp was not advised that SDF

24  claimed an interest in the Disputed Funds until May 11, 2015, almost six weeks after Bitstamp

25  filed the interpleader action, when Stephenson emailed Bitstamp, announcing that he did not "have

26  any claim over the Bitstamp USD" and that as far as he knew, "at this point the USD belongs to

27  Stellar Development Foundation."   The same day, SDF's outside counsel, Terry Gross, sent

28  Bitstamp an email in which SDF claimed to be the owner of one of the frozen accounts.

- 9 -

1    Additionally, despite that Stephenson had renounced any claim to the Disputed Funds, on May 20,

2    2015, in the individual defendants' motion to dissolve the Court's TRO preventing distribution of

3    the funds, Stephenson again asserted that he did have a claim to a portion of the Disputed Funds.

4          Once all claimants to the Disputed Funds became known, Bitstamp promptly sought a

5    discharge.  Bitstamp asserted it satisfied the requirements for interpleader because it faced actual

6    and potential competing claims to the Disputed Funds, it asserted no interest in or claim to the

7    Disputed Funds, and it did not create or contribute to the controversy over the disputed funds.

8    SDF filed a 19-page opposition to Bitstamp's discharge, arguing that interpleader was improper,

9    and that Bitstamp was not a disinterested stakeholder but instead "colluded" with Ripple to freeze

10   SDF's funds and harm SDF.

11         Finding that "there is no real question that there are competing claims to the disputed

12   funds" and "Bitstamp faces actual and potential claims to the disputed funds" (Discharge Order

13   (Dkt. 63) at 4), and that Bitstamp was operating in good faith (id. at 5), the Court granted

14   Bitstamp's motion and discharged Bitstamp.  Citing settled Ninth Circuit law, the Court rejected

15   SDF's argument that Bitstamp was required to adjudicate the merits of Ripple's claim to "sole

16   interest" in the Disputed Funds.  Id. at 4.  The Court recognized that "Bitstamp was not required to

17   determine whether Ripple Lab's claim to the disputed funds was colorable"; rather "the presence

18   of adverse claims is sufficient" for interpleader.  Id. at 5.  Importantly, the Court expressly rejected

19   SDF's argument that Bitstamp was not a good faith stakeholder "because its interests coincide

20   with Ripple Lab's interests" and because one of its attorneys represented Ripple at some point.

21   Rejecting SDF's "collusion" theory, the Court observed that the virtual currency market was very

22   intertwined and that Bitstamp had initially sought permission to release the Disputed Funds to

23   SDF.  Id. at 5.

24         SDF filed its counterclaim against Bitstamp on August 12, 2015, making the same

25   allegations that the Court expressly rejected in its Discharge Order, namely that Bitstamp was

26   colluding with Ripple to interfere with SDF's property by freezing and interpleading SDF's funds.

27   SDF's counterclaim asserts a single cause of action against Bitstamp for unfair competition in

28

1  violation of California Business and Professions Code section 17200, and alleges only four

2  paragraphs against Bitstamp.

3          In arguing to the Court that SDF should be permitted to file its counterclaim against

4  Bitstamp notwithstanding the discharge order, SDF's counsel misled the Court to believe that the

5  numerous allegations and the second and third causes of action against Ripple, which were not

6  related to the interpleader action, were also asserted against Bitstamp.  Reporter Tr. ("RT") of July

7  16, 2015 (Mot. to Intervene Hearing) (Dkt. 109) at 17:20-18:4.  In fact, the only allegations

8  against Bitstamp are related to Bitstamp freezing SDF's funds and filing the interpleader action.

9          SDF's frivolous counterclaim is a quintessential SLAPP.  SDF did not file the

10  counterclaim against Bitstamp to vindicate any legal right but rather to retaliate against Bitstamp

11  for exercising its right to petition this Court for relief and to hinder and delay Bitstamp's recovery

12  of its attorneys' fees on the interpleader action.  Indeed, SDF does not have, or even seek, any

13  viable remedy against Bitstamp on its single unfair competition claim, namely an injunction or

14  restitution of property from Bitstamp.  Further, SDF's counterclaim is barred by the doctrine of

15  collateral estoppel and the California litigation privilege and, in any case, SDF cannot meet its

16  burden of establishing with admissible evidence a probability of prevailing on the merits.

17  Accordingly, on September 1, 2015, Bitstamp filed its anti-SLAPP motion to strike SDF's

18  meritless counterclaim.

19          **D.      George Frost's Statement**

20          George Frost has previously served as Chief Legal Officer of Bitstamp and as a legal

21  advisor to Ripple Labs.  He is being sued by SDF here purely for doing so.  Contrary to SDF's

22  Crossclaim, Mr. Frost did not collude with Ripple Labs to conduct fraudulent transactions with

23  Jacob Stephenson (or anyone else), or make "threats" to Coinex concerning SDF's funds, or

24  "cause" Bitstamp to freeze SDF's funds or account, or participate in any other way in the alleged

25  conspiracy to harm SDF or prop up the price of XRPs.

26          Furthermore, SDF is mistaken in its "understanding that Bitstamp has terminated its

27  relationship with Mr. Frost." (see above).  Mr. Frost was a lawyer for Bitstamp then, and remains

28  a lawyer for Bitstamp now.

**3.**       <u>**Legal Issues**</u>

Because the scope of these proceedings and the legal issues involved may change based on the adjudication of Bitstamp's pending anti-SLAPP motion and Mr. Frost's pending anti-SLAPP motion and motion to dismiss, SDF, Bitstamp, and Mr. Frost believe that it is premature to address the disputed points of law until after those motions have been resolved.

**A.**       **Ripple Labs' Statement of Additional Issues**

Ripple Labs believes that the legal issues will include (but will not be necessarily limited to) the following:

a.   Whether Mr. McCaleb executed, directed or benefited from the August through October 2014 and March 19, 2015 XRP transactions;

b.   Whether Mr. Stephenson executed the August through October 2014 and March 19, 2015 XRP transactions at the direction of or for the benefit of Mr. McCaleb;

c.   Whether the August through October 2014 and March 19, 2015 XRP transactions constituted breaches of the Settlement Agreement by Mr. McCaleb;

d.   Whether Ripple Labs had no belief that the March 19, 2015 XRP transaction resulted in a breach of the Settlement Agreement by Mr. McCaleb;

e.   SDF's role in and knowledge of the March 19, 2013 XRP transaction;

f.   Whether Ripple Labs was entitled to mitigate its damages by purchasing the 96,342,361.6 XRP in the March 19, 2015 transaction;

g.   Who is entitled to the Disputed Funds; h.  The amount of monetary damages, if any, suffered by SDF as a result of Ripple Labs' alleged wrongdoing;

i.   Whether actions taken by Ripple Labs, Bitstamp and Mr. Frost in conjunction with instituting the Interpleader Complaint are protected by the litigation privilege;

j.   Whether Ripple Labs' communications with Bitstamp and Coinex and purchase of the 96,342,361.6 XRP was for the purpose of harming SDF; and

k.   Whether Ripple Labs' communications with Bitstamp and Coinex and purchase of the 96,342,361.6 XRP was for a wrongful or fraudulent purpose.

### 4.     **Motions**

Bitstamp filed a Motion for Discharge (Dkt. No. 20), which this Court granted (Dkt. 63). Ripple Labs filed a Motion for a Temporary Restraining Order, Order to Show Cause Why a Preliminary Injunction Should Not Issue, and for Expedited Discovery (Dkt. No. 23), which this Court granted (Dkt. 24).  McCaleb, Stephenson, and Harris filed a Motion to Dissolve or Modify the Temporary Restraining Order (Dkt. 31), which this Court denied (Dkt. 42).  SDF filed a Motion to Intervene (Dkt. 39), which this Court granted (Dkt. 117).  McCaleb and Stephenson filed a Motion to Compel Arbitration (Dkt. No. 40), which this Court granted (Dkt. 119).   SDF, McCaleb, Stephenson, and Harris filed a Motion to Dismiss the interpleader action (Dkt. 41), which they withdrew after the Court granted Bitstamp's discharge motion.  Bitstamp filed a Motion for Attorney's Fees and Costs (Dkt. No. 80), which this Court denied without prejudice (Dkt. 121).  On September 1, 2015, Bitstamp filed a Special Motion to Strike SDF's Counterclaim against it under the California anti-SLAPP statute (Dkt. 130), and on October 16, 2015, Mr. Frost filed a Special Motion to Strike SDF's unfair competition crossclaim against him, and a motion to dismiss all of SDF's crossclaims against him (Dkt. 157).   These motions are set for hearing on December 2, 2015.

### 5.     **Amendment of Pleadings**

As noted above, Bitstamp's motion to strike SDF's counterclaim against it and Mr. Frost's motion to dismiss or strike SDF's crossclaims against him are pending and set for hearing on December 2, 2015.  In opposing these motions, SDF requested that, in the event the Court grants any part of these motions and dismisses any of SDF's claims, SDF be granted leave to amend.

Bitstamp opposes any attempt by SDF to modify its counterclaim.  As courts in this District have repeatedly held, "allowing amendment after an anti-SLAPP motion [has] been granted would eviscerate the purpose of the anti-SLAPP statute and would be inconsistent with the Ninth Circuit's holding in *United States v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963 (9th Cir. 1999)."  *Blackburn v. ABC Legal Servs.,* No. C 11-01298 JSW, 2011 U.S. Dist. LEXIS 109817, at *8 (N.D. Cal. Sept. 27, 2011) (rejecting request for leave to amend complaint dismissed under anti-SLAPP statute where plaintiff failed to meet burden to submit evidence

1   demonstrating probability of success); *see also Tuck Beckstoffer Wines LLC v. Ultimate*

2   *Distributors, Inc.*, 682 F. Supp. 2d 1003, 1016 (N.D. Cal. 2010) ("the cases hold that a litigant

3   cannot avoid the anti-SLAPP statute by amending its pleadings or disguising earlier assertions")

4   (citation omitted); *Smith v. Santa Rosa Democrat*, 2011 WL 5006463, at *7 (N.D. Cal. Oct. 20,

5   2011) ("the purpose of the anti-SLAPP statute is to provide for a speedy resolution of claims

6   which impinge on speech protected by the First Amendment," and "leave to amend is not

7   necessary or appropriate"); *Harper v. Lugbauer*, 2012 WL 1029996, at *6 (N.D. Cal. Mar. 15,

8   2012) ("Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima

9   facie showing has been met would completely undermine the statute by providing the pleader a

10  ready escape from [the anti-SLAPP statute's] quick dismissal remedy.") (quoting *Smith*, 2011 WL

11  5006463, at *7).

12  **6.      Evidence Preservation**

13          The Parties have reviewed the Guidelines Relating to the Discovery of Electronically

14  Stored Information.  Each of the Parties represents that it has taken all appropriate steps to

15  preserve documents and communications that are relevant to the issues reasonably evident in these

16  Actions and the causes of action set forth therein.

17  **7.      Disclosures**

18          A Rule 26(f) conference was held between Ripple Labs and the Individual Defendants on

19  June 25, 2015.  At that time, SDF's motion to intervene had not yet been granted nor had SDF's

20  Counterclaim and Crossclaim been filed (it was filed on August 12, 2015), Bitstamp elected not to

21  participate in this Rule 26(f) conference as its motion for discharge had been granted, and Frost

22  had not yet been named as a party.  On September 1, 2015, SDF and Ripple Labs held a 26(f)

23  conference.[4]  SDF, Bitstamp, Mr. Frost and Ripple Labs have not yet held a joint Rule 26(f)

24  conference with all Parties participating.  Initial disclosures between Ripple Labs and the

25  Individual Defendants were exchanged on July 9, 2015.  Ripple  Labs and SDF are discussing the

26  date to exchange initial disclosures; Ripple Labs is prepared to exchange initial disclosures.  SDF

27  _____

28  [4] Although Bitstamp initially joined the call, it declined to participate in light of its anti-SLAPP
motion filed that day.

1    and Mr. Frost were not parties to these proceedings at the time of these initial disclosures; SDF's

2    Counterclaim and Crossclaim was filed on August 12, 2015.  No initial disclosures have been

3    exchanged with or by Bitstamp or Frost.

4           Ripple Labs and SDF have agreed that they will discuss the exchange of initial disclosures

5    on November 30, 2015, and initial disclosures from Mr. Frost relating to SDF's Crossclaim will be

6    exchanged on December 18, 2015.  If Bitstamp does not prevail on its anti-SLAPP motion, it

7    intends to appeal the ruling to the Ninth Circuit Court of Appeals, and does not agree to exchange

8    initial disclosures unless and until its motion is finally denied.  *DC Comics v. Pacific Pictures*

9    *Corp.*, 706 F.3d 1009 (9th Cir. 2013) (denial of an anti-SLAPP motion is immediately appealable

10   to preserve defendant's rights to be immune from having to defend a SLAPP suit).

11   **8.     Discovery**

12          **A.      Discovery Taken To Date**

13          Ripple Labs has served the following discovery:

14          1.   Requests for Production of Documents to SDF on September 4, 2015;

15          2.   Interrogatories to SDF on November 15, 2015

16          3.   Requests for Admissions to SDF on November 15, 2015;

17          4.   Subpoena for Production of Documents to Stephenson on September 14, 2015;

18          5.   Subpoena for Production of Documents to McCaleb on November 15, 2015;

19          6.   Subpoena for Production of Documents to Harris on November 16, 2015;

20          7.   Subpoena for Production of Documents to Ben Crofoot on November 16, 2015;

21          8.   Deposition Subpoena to McCaleb on November 15, 2015;

22          9.   Deposition Subpoena to Stephenson on November 16, 2015; and

23          10. Deposition Subpoena to Harris on November 16, 2015.

24          No discovery has yet been served by SDF or Frost.

25          Bitstamp's position is that discovery in SDF's counterclaim against Bitstamp is stayed

26   pending final resolution of Bitstamp's anti-SLAPP motion.  Cal. Code Civ. Proc. § 425.16(g); *see*

27   *also Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (defendants

28   must be free "to challenge the legal sufficiency of complaints without subjecting themselves to

- 15 -

1   discovery.…  It is sounder practice to determine whether there is any reasonable likelihood that

2   plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery.")

3   (citations omitted).  SDF does not agree that Bitstamp's filing of its anti-SLAPP motion has stayed

4   discovery.

5        **B.        Stipulated E-Discovery Order**

6        The Parties are meeting and conferring regarding whether to enter into an e-discovery

7   order and along what terms.  As some of the Parties are individual persons, the Parties believe that

8   an ESI order may not be necessary.

9        **C.        Proposed Discovery Plan**

10            **1)    *Changes To Initial Disclosure Requirements Per Rule 26(f)(3)(A)***

11       Initial disclosures between Ripple Labs and the Individual Defendants were exchanged on

12  July 9, 2015.  Ripple Labs and SDF are discussing on what date their initial disclosures will be

13  exchanged.  Initial disclosures from Mr. Frost will be exchanged on December 18, 2015.  No

14  changes to the requirements are necessary at this time.

15       Bitstamp does not agree to exchange initial disclosures unless and until its anti-SLAPP

16  motion is finally denied by the Ninth Circuit Court of Appeals.

17            **2)    *Scope of Anticipated Discovery Per Rule 26(f)(3)(B)***

18       The anticipated scope of discovery is as follows:

19       SDF:

20  1.  Interrogatories, Requests for Production and Requests for Admission to Bitstamp, Ripple

21       Labs and Frost

22  2.  Depositions of Bitstamp and its present and former officers, Ripple Labs and its present

23       and former officers, and Frost

24  3.  Document and deposition subpoenas to third parties, such as Sirkia.

25       Ripple Labs:

26       Ripple Labs has already begun serving discovery as outlined above in 8.A.  In addition to

27  currently outstanding discovery requests referenced above, Ripple Labs intends to take

28  depositions of SDF.  It may also issue additional third party subpoenas for documents, and seek

1    to depose additional third parties, such as Mr. Crofoot, Joyce Kim, and others.

2          Bitstamp:

3          Bitstamp contends this section is not applicable to it.

4          George Frost:

5    1.   Interrogatories, requests for production, and requests for admission to SDF and Jed

6          McCaleb.

7    2.   Depositions of SDF, its executive director, and Jed McCaleb.

8    3.   Other discovery as appropriate as the factual record develops

9              **3)    *Production of E-Discovery Per Rule 26(f)(3)(C)***

10         Ripple Labs and SDF agree to produce electronic documents as single-page TIFF image

11   OPT (Opticon file) for images; excels in native format; and standard Relativity DAT file

12   containing at least the following fields: (a) Beg Prod; (b) End Prod; (c) Beg Prod Attach; (d) End

13   Prod Attach; (e) Date Sent; (f) Date Received; (g) Date Created; (h) Date Modified; (i) Time Sent;

14   (j) Time Received; (k) Time Modified; (l) Subject, (m) Filename, (n) Custodian, (o) Other

15   Custodian, (p) Author, and (q) Extracted Text.

16         Ripple Labs and SDF further agree that electronic documents will be de-duplicated and a

17   field for "Other Custodians" will be included in the metadata produced to account for documents

18   removed during the de-duplication process.  Ripple Labs and SDF further agree that they have the

19   option of employing email threading and producing just the longest email thread and any chains

20   in the email thread with unique attachments.  Ripple Labs and SDF further agree that all emails

21   will be processed in PST.

22         Ripple Labs and SDF each designated an e-discovery liaison.

23             **4)    *Privilege Claims Per Rule 26(f)(3)(D)***

24         The Protective Order entered by this Court (Dkt. No. 61) addresses certain privilege issues.

25   To the extent not addressed therein, the Parties agree that the Federal Rules of Civil Procedure

26   shall govern privilege-related matters.  The Parties further agree that upon discovery of any

27   inadvertently produced privileged document(s) by another Party, the receiving Party or Parties will

28   immediately alert the producing Party and segregate the document(s).  If the producing Party

asserts privilege over the document, the receiving Party or Parties shall immediately return or destroy the document(s) at issue, but retains its right to compel the production of the document.

The Parties agree to abide by the Federal Rules of Civil Procedure and applicable law with respect to claims of privilege and/or work product.  The Parties agree to produce privilege logs prior to the close of fact discovery within 28 days of completion of each Party's document production, which, to the extent such information is available, shall include: (1) a description of each document withheld, (2) the basis for withholding each document, (3) the author, (4) the recipients, and (5) the date created or sent.  The Parties agree that they will make their best effort to produce privilege logs prior to depositions.  The Parties agree that any emails between Ripple Labs' employees and Goodwin Procter, which do not include any other recipients, are not subject to a privilege log.

### 5)   *Proposed Limitations or Modifications of Discovery Rules Per Rule 26(f)(3)(E)*

The Parties agree that discovery shall be conducted in accordance with the default rules of the Federal Rules of Civil Procedure, subject to the following modifications:

a.   Service:  For documents not served via the Court's ECF system, the Parties agree to email service.  Service by email will be considered equivalent to service by hand delivery.

### 6)   *Other Orders the Court Should Issue Per Rule 26(f)(3)(F)*

A Protective Order has already been entered in this action.  (Dkt. No. 61).  The Parties agree that, at this time, no other orders are necessary under Rules 26(c), 16(b) or 16(c).

### D.   **Identified Discovery Disputes**

The Parties are not aware of any discovery disputes at this time.

## 9.   **Class Actions**

This case is not a class action.

## 10.   **Related Cases**

The Parties are not aware of any other cases that are "related" within the meaning of Civil Local Rule 3-12(a).

1

**11.** **Relief**

2

SDF position:

3

SDF's Counterclaim and Crossclaim seeks general and special damages, treble damages,

4

restitution and disgorgement, exemplary damages, injunctive relief, prejudgment interest, costs

5

and expenses, and attorney's fees and expert witness fees incurred in this action.  This includes the

6

release and payment to SDF of the $942,138.24 that has been deposited with and is being held by

7

the Court, payment for lost investment and interest income resulting from the freezing of its funds,

8

damages that SDF has incurred to its reputation and resulting lost funding opportunities as the

9

result of the actions taken by Ripple Labs, Bitstamp and Mr. Frost against SDF, and a permanent

10

injunction against future acts of unfair competition.

11

Bitstamp position:

12

The only remedies available to SDF on its counterclaim against Bitstamp are restitution or

13

injunctive relief; SDF may not recover compensatory or punitive damages.  *Clark v. Superior*

14

*Court*, 50 Cal. 4th 605, 610 (2010).  SDF does not seek injunctive relief and has not lost any

15

money or property that has been acquired by Bitstamp that could be restored to SDF, as the

16

Disputed Funds were deposited with the Court pursuant to SDF's stipulation.

17

Bitstamp seeks its attorneys' fees and costs on the interpleader action, from which it has

18

already been discharged.  In addition, Bitstamp seeks its attorneys' fees and costs on its anti-

19

SLAPP motion.

20

Ripple Labs' position:

21

Ripple Labs denies that SDF is entitled to any relief.

22

**12.** **Settlement and ADR**

23

As discussed above, Ripple Labs, SDF Mr. McCaleb, and Mr. Stephenson participated in

24

two mediation sessions with the Hon. David A. Garcia (Ret.) of JAMS on October 30 and

25

November 4, 2015.  The parties were unable to reach a resolution during the mediation although

26

they are continuing to engage in settlement discussions.  A telephonic ADR Conference with the

27

Court was held on November 4, 2015, with all parties participating.  No resolution was reached.

28

A further telephonic ADR Conference with the Court is set for November 30, 2015.

1    **13.**    <u>**Consent to Magistrate Judge for All Purposes**</u>

2        The Parties do not consent to have a magistrate judge conduct all further proceedings.

3    **14.**    <u>**Other References**</u>

4        The Parties are in discussions about whether a Special Master Discovery Manager would

5 be appropriate for this matter.  The Parties do not believe this case is suitable for reference to

6 binding arbitration or referral to the Judicial Panel on Multidistrict Litigation.

7    **15.**    <u>**Narrowing Issues**</u>

8        The Parties are not aware of any issues that might be narrowed or procedures that may be

9 streamlined at this point.

10    **16.**    <u>**Expedited Schedule**</u>

11        The Parties do not agree to the Expedited Trial Procedure set forth in General Order 64.

12    **17.**    <u>**Scheduling**</u>

13        Bitstamp believes it is premature to discuss scheduling pending final resolution of its anti-

14 SLAPP motion.  If the Court denies Bitstamp's motion, it intends to appeal the denial to the Ninth

15 Circuit Court of Appeals.  *DC Comics v. Pacific Pictures Corp.*, 706 F.3d 1009 (9th Cir. 2013)

16 (denial of an anti-SLAPP motion is immediately appealable to preserve defendant's rights to be

17 immune from having to defend a SLAPP suit).

18        SDF and Ripple Labs have agreed to the following schedule for resolution of SDF's

19 crossclaim against Ripple Labs:

| Proposed Event | Proposed Date |
|---|---|
| Fact Discovery Cutoff | May 2, 2016 |
| Expert Disclosures | June 27, 2016 |
| Expert Discovery Cutoff | August 8, 2016 |
| Last day to file Dispositive Motions | May 16, 2016 |
| Oppositions to Dispositive Motions | June 6, 2016 |
| Reply re Dispositive Motions | June 20, 2016 |

| Proposed Event | Proposed Date |
|---|---|
| Hearing on Dispositive Motions | July 13, 2016 |
| Pretrial Conference | October 5, 2016 |
| Trial | October 31, 2016 |

**18.** **Trial**

SDF has demanded a jury on its claims.  SDF, Ripple Labs and Frost anticipate that the trial of SDF's Crossclaim will last approximately 15 court days.

SDF has asserted a single cause of action against Bitstamp for unfair competition in violation of California Business & Professions Code § 17200.  Because unfair competition claims are equitable in nature, there is no right to a jury trial.  If Bitstamp's anti-SLAPP motion is denied in a final order, Bitstamp intends to seek to sever the SDF's Counterclaim against it, and believes any bench trial on SDF's counterclaim against it should not take more than 2 days.

**19.** **Disclosure of Non-Party Interested Entities or Persons**

SDF filed its "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15.  The content is restated below:

"Pursuant to Civil L.R. 3-15, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

Pursuant to Federal Rule of Civil Procedure 7.1, SDF files this corporate disclosure statement, and hereby discloses, by and through its undersigned counsel, that SDF does not have any parent corporation and no publicly-held corporation owns 10% or more of SDF's stock."

Ripple Labs filed its "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15.  The content is restated below:

"Pursuant to Civil L.R. 3-15, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities other than the Parties themselves are known to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) any other kind of interest that could be substantially affected by the outcome of this proceeding: Bitstamp LTD.

1         Pursuant to Federal Rule of Civil Procedure 7.1, Ripple Labs files this corporate disclosure

2   statement, and hereby discloses, by and through its undersigned counsel, that Ripple Labs does not

3   have any parent corporation and no publicly-held corporation owns 10% or more of Ripple Labs'

4   stock."

5   **20.**   **Professional Conduct**

6         All attorneys of record for the Parties have reviewed the Guidelines for Professional

7   Conduct for the Northern District of California.

8   **21.**   **Other**

9         The Parties agree that all depositions (including subpoenas) will be scheduled by

10   agreement; there will not be unilateral notices.  The Parties are not aware of any additional matters

11   that may facilitate the just, speedy and inexpensive disposition of this case at this time.

12

13   Dated:  November 24, 2015          Respectfully submitted,

14                                         By:   */s/ Grant P. Fondo*

15                                         Grant P. Fondo (SBN 181530)
     *gfondo@goodwinprocter.com*

16                                         Nicole L. Chessari (SBN 259970)
     *nchessari@goodwinprocter.com*

17                                         **GOODWIN PROCTER LLP**
     135 Commonwealth Drive

18                                         Menlo Park, CA 94025-1105
     Tel.:  650.752.3100

19                                         Fax:  650.853.1038

20                                         Richard M. Strassberg (*Pro Hac Vice*)
     *rstrassberg@goodwinprocter.com*

21                                         **GOODWIN PROCTER LLP**
     The New York Times Building

22                                         620 Eighth Avenue
     New York, NY 10018-1405

23                                         Tel.:  212.813.8800
     Fax:  212.355.3333

24                                         *Attorneys for Defendant/Cross-Plaintiff*

25                                         *Ripple Labs Inc.*

26   Dated:  November 24, 2015          Respectfully submitted,

27                                           By:   */s/ Spencer Hosie*

28                                         Spencer Hosie (SBN 101777)
     shosie@hosielaw.com

- 22 -

| | |
|---|---|
| 1 | Diane S. Rice (SBN 118303)<br>drice@hosielaw.com |
| 2 | Anthony K. Lee (SBN 156018)<br>alee@hosielaw.com |
| 3 | Darrell R. Atkinson (SBN 280564)<br>datkinson@hosielaw.com |
| 4 | HOSIE RICE LLP<br>600 Montgomery Street, 34th Floor |
| 5 | San Francisco, CA 94111<br>(415) 247-6000 Tel. |
| 6 | (415) 247-6001 Fax |
| 7 | *Attorneys for Cross-Defendant George Frost* |
| 8 | |

Dated:  November 24, 2015                Respectfully submitted,

                                  By:    */s/ Terry Gross*
                                         Terry Gross (SBN 103878)
                                         *terry@gba-law.com*
                                         Adam C. Belsky (SBN 147800)
                                         *adam@gba-law.com*
                                         **Gross Belsky Alonso LLP**
                                         One Sansome Street, Suite 3670
                                         San Francisco, CA 94104
                                         Telephone: 415 554-0200
                                         Facsimile: 415 544-0201

                                         *Attorneys for Defendant, Counterclaimant, and Crossclaimant Stellar Development Foundation*

- 23 -

1

## CIVIL L.R. 5-1 ATTESTATION

2          I, Terry Gross, am the ECF User whose ID and Password are being used to file this

3  JOINT CASE  MANAGEMENT STATEMENT.  In compliance with Civil L.R. 5-1(i)(3), I

4  hereby attest that Terry Gross, counsel for Stellar Development Foundation and Paul Rugani,

5  counsel for Defendants Jed McCaleb, Jacob Stephenson, and Nancy Harris concurred to its filing.

6  Dated:  November 24, 2015

7                                             /s/  Terry Gross
                                             TERRY GROSS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28